# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br>    Plaintiff,<br><br>    v.<br><br>QUARK, INC., CREO, INC., EASTMAN<br>KODAK COMPANY, and KODAK GRAPHIC<br>COMMUNICATIONS COMPANY,<br>    Defendants. | C.A. No. 06-cv-032-JJF |

## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

OF COUNSEL:
Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

Dated: July 3, 2006

Before R.R. Donnnelly & Sons Company ("RRD") filed the instant motion, counsel for Eastman Kodak Company, Kodak Graphic Communications Company, and Creo, Inc. (collectively "Kodak") informed RRD's counsel that it would supplement its responses as Kodak did not dispute the vast majority of issues raised by RRD. (Ex. A).[1] Kodak has since done so, by filing its supplemental responses (Exs. B and C) simultaneously with the filing of this opposition brief.

One important issue, however, remains. Kodak contends that discovery should be limited to the Darwin software product, the only Kodak product specifically named in the Complaint, and not be unbounded to encompass *any* Kodak hardware and software – which is tantamount to naming most products made by Kodak. The Darwin Software traces its origins to Creo, an Israeli-based Kodak business unit that Kodak acquired in 2005. (Ex. D). The Complaint provides particular allegations only with respect to Creo and Darwin, and even then at only a general level:

> By its actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induced others to infringe [the patents in suit].

(D.I. 1, ¶¶ 27, 32, 37, 42).

In addition to naming Creo, Inc., RRD named Creo Inc.'s parent company, Eastman Kodak Company, as an additional defendant, but provided no specific contentions regarding

---

1    Because the Creo business unit of Kodak is located overseas, and because of the other initial difficulties of organization, Kodak's initial discovery responses required supplementation. Kodak offered to provide a supplemental response by July 3. *Id.* RRD demanded an earlier response – within 1-1/2 days after Kodak's counsel first became aware of RRD's letter threatening its motion to compel. *Id.* (Mr. Badke sent his facsimile letter on June 15, (D.I. 36, at Ex. C), to Mr. Sanok, who was out of the office on June 15 and did not see it until returning to the office on June 19; on June 19, within hours of becoming aware of Mr. Badke's letter, Kodak's outside counsel responded to Mr. Badke's letter.) Kodak was unable to complete its supplementation within that time frame, but has now done so.

any Eastman Kodak Company's hardware or software product. Nevertheless, RRD now claims the right to conduct a fishing expedition of many such products, on the grounds that "[n]othing in the Complaint [or] Federal Rules" limits RRD in any way. (D.I. 36, at 3). For instance, RRD has sought broad discovery on "Defendants Software Products" – defined to include not only Darwin, but also "any other software product designed, marketed, sold, offered for sale, made, used, or imported by Defendants intended to enable Variable Digital Printing." This would include a range of previously-unnamed Kodak Products manufactured by Kodak divisions entirely separate from Creo both in terms of organization and geography.

For example, at other divisions, Kodak manufactures a variety of software and hardware products relating in some direct or indirect fashion to what RRD broadly defines as "Variable Digital Printing." Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer (Ex. E at 4; Ex. F at 4) are examples of such products. The DL-100/DL-1000 products and the Composer product trace their origins to Kodak's Nexpress and Versamark business units, respectively, each of which were also recently acquired by Kodak in separate deals. However, until their acquisition by Kodak, these other companies were entirely independent of and unrelated to Creo.

While RRD is no doubt entitled to reasonable leeway based on notice pleading standards – for instance, to encompass minor variations of products offered under different names or versions – the previously-unnamed products have absolutely nothing to do with Darwin, and thus, are not relevant to any claim or defense. RRD's vague contentions are far too nebulous to place Kodak on notice as to RRD's infringement allegations, especially here where the multiple patents-in-suit contain ill-defined claims. *See Windy City Innovations, Inc. v. America Online, Inc.*, 227 F.R.D. 278, 283 (N.D. Ill. 2005) (granting 12(b)(6) motion where reference in patent infringement complaint to "other" unnamed products was too vague to put alleged infringer on notice); *accord Gen-Probe, Inc. v. Amoco Corp.*, 926 F.

2

Supp. 948, 962 (S.D. Cal. 1996) ("Filing a patent infringement action pointing vaguely to 'products and/or kits' . . . does not provide adequate notice as required by the Rules, and does not reflect the reasonable inquiry required by the Rules.")

Moreover, by defining "Defendants Software Products" to include "any other software product [that] Defendants intend[] to enable Variable Digital Printing" and by further defining "Variable Digital Printing" as "digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied," RRD has blanketed much of the software produced by Kodak without showing how such broad, all-encompassing language is relevant to a claim or defense. "A party may not obtain documents in order to discover whether it has a cause of action." *Caliper Tech. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) (denying, in patentee's motion to compel, request for "all assays that don't use antibodies or radioactive isotopes" as not being relevant to any claim or defense). It is not reasonable to impose such broad discovery obligations on Kodak – a global company with diverse products lines – without providing specific guidance as to the scope of the accused products.

RRD similarly overreaches by seeking discovery on "Defendants Hardware Products," which is defined broadly as "any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing." (Ex. E at 5; Ex. F at 5). RRD's Complaint, however, makes no mention of any hardware products or that its claims would encompass the entire universe of "Variable Digital Printing" activities. Indeed, RRD concedes seeking discovery on variable digital printing generally would result in discovery that "is completely unrelated to this case." (D.I. 35, at 3).

RRD now claims – although not referenced in its Complaint – that Kodak's hardware sales relate to contributory infringement and inducement to infringe. (D.I. 36, ¶ 10). But

turning to the Complaint, there is no reference to such allegations regarding indirect infringement by hardware products. Instead, RRD confusingly alleges that by unspecified "actions" Kodak has both directly infringed and indirectly caused the infringement by "others." (D.I. 1, ¶¶ 27, 32, 37, 42).

Finally, RRD seeks discovery relating to "Third Party Software Products," which is broadly defined as "any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products." (Ex. E at 5; Ex. F at 5). RRD's Complaint makes no reference to third-party software products and its motion to compel fails to offer any explanation of how such products might be relevant to a claim or defense.

For the foregoing reasons, RRD's motion to compel should be denied. First, as to matters on which Kodak has filed supplemental responses, the motion should be denied without prejudice as moot. If RRD has continuing concerns, they should be raised in normal course and Kodak should be given a reasonable opportunity (exceeding the 1 ½ days that RRD would allow when the first dispute arose) to respond. Second, in view of the ambiguous nature by which RRD has alleged infringement, the Court should limit discovery to Darwin, the only specifically-named product in the Complaint, unless and until RRD makes well-founded contentions regarding other specific products.

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated: July 3, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on July 3, 2006, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA   02110

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

EXHIBIT A

## Koide, Brian

**From:** Koide, Brian
**Sent:** Wednesday, June 21, 2006 6:54 PM
**To:** 'Yothers, Stuart'
**Cc:** Badke, Bradford J.
**Subject:** RE: RRD v Kodak

Stuart,

I wanted to follow up on our phone conversation today, as it was somewhat unclear to me if we had fully resolved the issues. For our part, I wanted to be clear about how we are proceeding with regard to the two issues you raised in your fax of June 15. The Creo defendants will be providing supplemental interrogatory responses by July 3 that we believe will address your concern with the "premature" objection previously lodged by the Creo defendants. If possible, we will try to get these responses to you in advance of July 3, but frankly, having taken stock of the various travel schedules of those with whom we must consult, I don't think it is likely that I can get the responses to you before July 3. With respect to your second concern, in the forthcoming supplemental responses, the Creo defendants intend to stand by their objection that the scope of discovery should be limited to Darwin.

We will be serving the supplemental responses regardless of whether or not you determine to file a motion to compel. I would nonetheless appreciate your letting me know if you believe that burdening the court with a motion to compel is still necessary. I remain available, of course, to discuss these issues further, if you would like to do so. Thanks

Brian

---

**From:** Yothers, Stuart [mailto:Stuart.Yothers@ropesgray.com]
**Sent:** Tuesday, June 20, 2006 6:07 PM
**To:** Koide, Brian
**Cc:** Badke, Bradford J.
**Subject:** RRD v Kodak

Brian,

I understand that you spoke with Jim Badke about the insufficiency of Kodak's responses to R.R. Donnelley's first set of discovery requests. We have not heard back from you today.

Please let us know if you intend to provide us with amended responses.

Stuart

Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9176 direct dial
(646) 728-2957 direct facsimile
(212) 596-9000 main reception
www.ropesgray.com

**EXHIBIT B**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

    Plaintiff,

    v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

    Defendants.

C.A. No. 06-cv-032-JJF

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

    Counterclaim-Plaintiffs,

    v.

R.R. DONNELLEY & SONS COMPANY,

    Counterclaim-Defendants,

## CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SUPPLEMENTAL RESPONSE TO R.R. DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") provide the

following first supplemental response to the First Set of Interrogatories to Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphics Communications Company ("the

Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

## I.    GENERAL RESPONSES

Creo's responses to the Interrogatories are made to the best of Creo's current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.    Creo reserves the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Creo objects generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine.  Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Creo objects to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement,

2

expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

    3.     Creo objects to all instructions, definitions, and interrogatories to the extent they seek information not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or interrogatories seek to require more of Creo than any obligation imposed by law, would subject Creo to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### RESPONSE TO INTERROGATORY NO. 1

Subject to the foregoing general objections, RRD has failed to state a claim upon which relief can be granted with respect to (i) direct infringement by any Creo product other than Darwin and (ii) indirect infringement. In its Complaint, RRD vaguely alleges that "[b]y its actions, including the sale of Darwin software, Creo has infringed." *See* Complaint ¶¶, 27, 32, 37, 42. Given that Creo (including Eastman Kodak Company) offers diverse products and services and collectively employs more than 50,000 employees worldwide, a generic reference to unspecified broad claims of direct or indirect infringement involving parties other than Creo and

3

products other than Darwin is not sufficient to satisfy proper notice pleading requirements under

the Rules.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent,
the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally
or under the doctrine of equivalents," including, but not limited to, claim charts that set forth
each claim element that allegedly is not met by Defendants' Software Products, the reasons each
such element is not met (both literally and under the doctrine of equivalents) and the identity of
the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 2

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent

it seeks information defined by the term "Defendants' Software Products." The Complaint only

references "Darwin Desktop." Creo also objects to this interrogatory as a premature contention

interrogatory given that fact discovery has just commenced, RRD has yet to reveal its claim

construction and infringement contentions, and the Court has yet to construe the claims. In

particular, Creo objects to providing claim charts at this time, but would agree to do so within a

reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject

to the foregoing general and specific objections, Creo responds as follows.

With respect to the method claims, Creo does not directly infringe by selling, offering to

sell, or making the Darwin software in the United States and/or importing the software into the

United States. As a matter of law, method claims can only be directly infringed by a "use," not

through the sale, offer for sale, manufacture, or importation of software that allegedly performs

4

the steps. As to "use" contentions, RRD has not yet provided its contentions as to how any Creo

product infringes, and Creo is therefore not able to respond to any such contentions.

Creo does not believe, however, that any of its products infringe. For example, Darwin

software does not "develop[] a master page file," does not "separat[e] master data from position

data," and does not "caus[e] the display device to display the pages." The Darwin software also

does not "determine[e] whether a stored page is to be assembled into the first book . . . wherein a

second number of stored pages to be assembled into the first book is less than the first number"

of stored pages. Creo believes that for these and other reasons, it does not infringe the claims of

the patents in suit when properly construed. Absent more specific contentions from RRD,

however, Creo is not able at this juncture to fully itemize all grounds on which it should be found

not to infringe and reserves its right to further supplement its responses at the appropriate time.

Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi

Jaacobi, and the named inventors of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

**INTERROGATORY NO. 3**

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in
Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim
charts that set forth each claim element that allegedly is not met by Defendants' Software
Products and Third Party Software Products suitable for the use with Defendants' Hardware
Products (including, but not limited to, software products made or developed by XMPie, Atlas
Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such
element is not met (both literally and under the doctrine of equivalents) and the identity of the
persons most knowledgeable about the factual bases for those allegations.

5

## RESPONSE TO INTERROGATORY NO. 3

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it (i) seeks information defined by the terms "Defendants' Software Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Complaint only references "Darwin Desktop." Moreover, Creo objects to being required to answer Interrogatories relating to the operation of the Third Party Software Products, given the absence of any specific allegations by RRD concerning such products. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced. In particular, Creo objects to providing claim charts at this time, but would agree to provide claim charts a reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatory No. 2 with respect to the Darwin software. Creo further responds that it cannot – as a matter of law – be found liable for inducing infringement under 271(b) prior to first becoming aware of the patents in suit. Likewise, Creo is not liable for contributory infringement under 271(c) prior to first becoming aware of the patents in suit. Creo is also not liable for indirect infringement to the extent that no single entity practices each of the steps or elements of the patents in suit, and thus, directly infringes.

Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi Jaacobi, the named inventors of the patents in suit, and users of the Darwin software.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

6

**INTERROGATORY NO. 4**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 4**

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds as follows:

The documents and communications on which Defendants intend to rely include the patents in suit, prior art of record, prosecution histories of the patents in suit, and the prosecution histories of patents related thereto. The prosecution histories include numerous arguments and narrowing amendments that limit the scope of the asserted claims through argument-based estoppel and/or amendment-based estoppel. Ultimately, whether prosecution history estoppel applies will depend on the claim construction and any range of equivalents asserted by RRD. It is premature at this time, with a *Markman* hearing scheduled for 2007, to speculate how RRD will attempt to read the claims and whether RRD will take a position that contradicts the prosecution histories. However, to date, Defendants have identified at least the following actions taken by RRD in the prosecution history that may form estoppels.

**U.S. Patent No. 6,952,801**

- Supplementary Amendment dated May 18, 2000 in U.S. Application Ser. No. 08/802,337 at 2-3 (claim amendments) & 4-5 (arguments to distinguish claims over prior art).

- Amendment A dated November 4, 2002 at 6-7 (arguments to distinguish claims over prior art).

7

- Amendment B dated March 28, 2003 at 2-3 (claim amendments) & 4 (remarks re claim amendments).

- Amendment C dated September 8, 2003 at 4-6 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated March 4, 2004 at 1-5 (remarks re prior art).

- Amendment D dated March 8, 2004 at 2-5 (claim amendments) & 6-7 (arguments to distinguish claims over prior art).

- Amendment E dated Jul 26, 2004 at 2-5 (claim amendments) & 6-8 (arguments to distinguish claims over prior art).

**U.S. Patent No. 6,844,940**

- Preliminary Amendment dated January 12, 2004 at 3-6 (claim amendments) & 7 (remarks).

- Supplemental Preliminary Amendment dated March 29, 2004 at 2-5 (claim amendments) & 6 (remarks).

- Petition to Make Special Under MPEP § 708.02 dated March 29, 2004 at 1-4 (arguments to distinguish claims over prior art).

- Request for Reconsideration of Petition to Make Special dated June 10, 2004 at 1-4 (arguments to distinguish claims over prior art).

**U.S. Patent No. 6,327,599**

- Amendment A dated November 11, 1996 at 2 (claim amendments) & 3 (remarks).

8

- Amendment B dated May 19, 1997 at 1-3 (claim amendments) & 4-8 (arguments to distinguish claims over prior art).

- Amendment C dated November 19, 1997 at 1-2 (claim amendments) & 2-4 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated December 17, 1997 at 1-2 (remarks re prior art).

- Response After Final Rejection dated April 30, 1998 at 1 (claim cancellations and remarks).

- Amendment D dated April 2, 2001 at 1 (claim amendments) & 2-5 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated June 20, 2000 at 1-2 (remarks re prior art).

**U.S. Patent No. 6,205,452**

- Amendment "A" dated January 7, 2000 at 2-3 (claim amendments) & 3-8 (arguments to distinguish claims over prior art).

- Response dated June 27, 2000 at 1-7 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated July 20, 2000 at 1-2 (remarks re prior art).

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit and those individuals involved in the prosecution of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

9

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions or the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**RESPONSE TO INTERROGATORY NO. 5**

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking "identification of *all* facts, documents, prior art . . ., activities, and alleged motivation or suggestion to combine references" and "references to specific portions of the prior art by page, line, figure, or description in claim chart format." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced, RRD has yet to provide its claim construction contentions, and the Court has yet to construe the claims. Subject to the foregoing general and specific objections, Creo responds, at this time, that the claims of the patents in suit are anticipated and/or invalid in view of the prior art, including, but not limited to, the commercial embodiments of DijiComp, Begin, Composer, Catalogic, and Yours Truly. Creo reserves the right to supplement this interrogatory response as further investigation is conducted.

Persons knowledgeable of these facts include Timothy Donahue, Pat McGrew, John Desautels, unknown individuals of Hewlett-Packard, unknown individuals of Quark, Inc.

**INTERROGATORY NO. 6**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their

contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 6

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its response to Interrogatory Nos. 7, 8, 10, 11, and 14. Creo further responds that laches precludes RRD from any alleged damages that may have been incurred due to Creo's actions prior to the time that RRD filed and served its Complaint on January 17, 2006. RRD has contacted several Creo entities regarding one or more of the patents in suit. After these initial contacts, RRD delayed in bringing suit against Creo. During this period, RRD did and continued to do regular business with Creo. RRD knew or should have known of the allegedly infringing aspects of the Darwin software. Given the circumstances, RRD's delay has been unreasonable and inexcusable. Due to RRD's delay in bringing suit, Creo has suffered substantial prejudice. In particular, due to RRD's delay, Creo may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, and the unreliability of memories of long past events. With respect to business prejudice, Creo has continued to invest in the Darwin software as a product line during this delay period.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

11

## INTERROGATORY NO. 7

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 7

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its responses to Interrogatories Nos. 6, 8, 10, 11, and 14. Creo further responds that RRD has dealt with various Creo entities both through business relationships and by participating in various standards-making bodies. In particular, Riyaz Asaria, an RRD employee, co-chaired the CGATS.20. At no time in the course of these business meetings and standards-making bodies did RRD indicate that it intended to assert its patents against Creo. Instead, RRD's representatives remained silent and failed to take any action. RRD's silence and inaction has been misleading. At various points in time, Creo has relied on RRD's silence and inaction and would be materially harmed.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Mary Abbott, Timothy Donahue, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

12

## INTERROGATORY NO. 8

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 8

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatories Nos. 6-7, 10, 11, and 14. Furthermore, as demonstrated by its silence and inactions, RRD voluntarily and intentionally relinquished its rights to pursue Creo with respect to the patents in suit.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Timothy Donahue, Mary Abbott, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 9

State in detail all factual and legal bases for Defendants' allegations set forth in paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 9

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

13

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo responds that at least

claims of the '940 patent and the '801 patents are barred by the doctrine of prosecution history

laches. In particular, RRD filed the earliest application to which these patents in suit claim on

their face priority on June 7, 1995. The application that led to the issuance of the '801 patent

was filed almost six years later; the application that led to the issuance of the '940 patent was

filed 8 1/2 years later. RRD's delay in prosecuting these applications is unreasonable and

unexplained.

Persons knowledgeable of these facts include, but are not limited to, the named inventors

of the patents in suit and persons involved in the prosecution of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 10

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines
of license and/or implied license," including, but not limited to, the identification of all
documents and communications on which Defendants rely to support their contention and the
identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 10

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo incorporates by reference

its response to Interrogatory Nos. 6, 7, 8, 11, and 14.

14

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 11

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 11

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo incorporates by reference its response to Interrogatory Nos. 6, 7, 8, 10, and 14.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

15

## INTERROGATORY NO. 12

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds that RRD has failed to mark products and/or services as required by 35 U.S.C. § 287. Moreover, RRD has failed to provide actual notice to the extent it has failed to charge infringement of specific patents in suit against a specific Kodak accused product and/or service. In particular, RRD has failed to provide any actual notice of any product except for the Darwin software, specifically mentioned in its Complaint. With respect to 35 U.S.C. § 286, RRD is barred from recovering any damages resulting from any infringement committed more than six years prior to the filing of the Complaint on January 17, 2006.

Persons knowledgeable of these facts include, but are not limited to, unknown representative(s) of RRD.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first

16

receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## RESPONSE TO INTERROGATORY NO. 13

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue." Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit. Creo also objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Subject to the foregoing general and specific objections, Creo will respond to this interrogatory by producing business records subject to Federal Rule of Civil Procedure 33(d) sufficient to identify all revenues and profit of Darwin Desktop starting in March 2001.

Persons knowledgeable of these facts include, but are not limited to, Gershon Alon and Ronen Cohen.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

17

## RESPONSE TO INTERROGATORY NO. 14

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds as follows separately with respect to each Creo defendant.

With respect to Creo, Inc., on or about September 4, 2003, Gary B. Cohen, Senior Patent Counsel of Xerox Corporation forwarded RRD correspondence identifying U.S. Pat. Nos. 6,327,599 ("the '599 patent") and 6,205,452 ("the '452 patent) to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. Creo, Inc. became aware of the '599 and '452 patents on or about that date. Creo, Inc. became aware of U.S. Pat. Nos. 6,844,940 ("the '940 patent") and 6,952,801 ("the '801 patent) after Joseph Guiliano of Ropes & Gray sent a letter to Judith Hess, Vice President of Kodak Graphic Communications Group on or about December 19, 2005.

With respect to Kodak Graphic Communications Company and Eastman Kodak Company, both companies became aware of the '599 patent and the '452 patent in connection with the acquisition of NexPress Solutions, LLC ("NexPress"). The NexPress acquisition closed on or about May 3, 2004. Kodak Graphic Communications Company and Eastman Kodak Company both became aware of the '940 patent and the '801 patent after the above-referenced letter from Mr. Guiliano to Ms. Hess.

Persons knowledgeable of these facts include, but are not limited to, Ronny Fogel, Gary B. Cohen, and Joseph Guiliano.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

18

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specified hardware product involved in the use.

## RESPONSE TO INTERROGATORY NO. 15

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Third Party Software Products" and "Defendants' Hardware

Products." Moreover, Creo objects to this interrogatory as overly broad and unduly burdensome

to the extent it seeks information relating to "all use" of Third Party Software Products and

Defendants' Hardware Products. Creo cannot reasonably identify "all use[s]." The Complaint

only references Creo, Inc.'s Darwin Desktop, not any third-party software products. Moreover,

the interrogatory is overly broad as it seeks a description of "all use" of "Third Party Software

Products with Defendants' Hardware Products." At most, Creo will respond in the future by

describing those uses that can be identified after a reasonable investigation.

## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

## RESPONSE TO INTERROGATORY NO. 16

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Defendants' Software Products," "Third Party Software

Products" and "Defendants' Hardware Products." The Complaint only references "Darwin

Desktop." Moreover, Creo cannot reasonably identify "all" of the requested plans, efforts, or

activities. At most, Creo will respond in the future by describing those plans, efforts, or

activities that can be identified after a reasonable investigation.

19

OF COUNSEL:

Richard McMillan, Jr. (admitted pro hac vice)
rmcmillan@crowell.com
Jeffrey D. Sanok (admitted pro hac vice)
jsanok@crowell.com
Brian M. Koide (admitted pro hac vice)
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated:  July 3, 2006

Submitted as to objections,

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899


I hereby certify that on July 3, 2006, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire                     Steven A. Kaufman
Fish & Neave IP Group                          Fish & Neave IP Group
Ropes & Gray                                   Ropes & Gray
1251 Avenue of the Americas                    One International Place
New York, NY   10020                           Boston, MA   02110


Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

**EXHIBIT C**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

     Plaintiff,

     v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

     Defendants.

C.A. No. 06-cv-032-JJF

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

     Counterclaim-Plaintiffs,

     v.

R.R. DONNELLEY & SONS COMPANY,

     Counterclaim-Defendants,

**CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC
COMMUNICATIONS COMPANY'S FIRST SUPPLEMENTAL RESPONSE TO R.R.
DONNELLEY & SONS COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 34 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") provides the

first supplemental response to the First Set of Requests for the Production of Documents and

Things to Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics

Communications Company ("the Requests") propounded by R.R. Donnelley & Sons Company

("RRD"):

## I.    GENERAL RESPONSES

Creo's response to the Requests is made to the best of Creo's current employees' present knowledge, information, and belief. Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Creo reserves the rights to make any use of, or to introduce at any hearing or proceeding, documents responsive to the Requests but discovered subsequent to the date of Creo's initial production, including, but not limited to, any documents obtained in discovery herein.

2.    Creo will respond to each of the Requests with documents currently in its possession, custody, or control. By stating in these responses that Creo will produce non-privileged documents or is searching for documents, Creo does not represent that any document actually exists, but rather that it will make a good-faith search and attempt to ascertain whether documents responsive to the Requests do, in fact, exist.

3.    Creo reserves the right to decide whether the documents produced for inspection shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the Requests, in accordance with Rule 34(b) of the Federal Rules of Civil Procedure.

4.    Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of this response and any document or thing produced in response to the Requests.

- 2 -

5.      Creo reserves the right to object on any ground at any time to such other or supplemental requests for production as defendant may at any time propound involving or relating to the subject matter of the Requests.

## II.    GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth in response to each of the Requests:

1.      Creo objects generally to the Requests insofar as they seek production of documents or information protected by the attorney-client privilege and/or the work product doctrine. Such documents or information shall not be produced in response to any request, and any inadvertent production thereof shall not be deemed a waiver of any privilege with respect to such documents or information or of any work product doctrine which may attach thereto.

2.      Creo objects to the introductory definitions and instructions to the Requests to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific request, on the ground that such enlargement, expansion, or alteration renders the request vague, ambiguous, unintelligible, unduly broad, and uncertain.

3.      Creo objects to all instructions, definitions, and document requests to the extent they seek documents not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or requests seek to require more of Creo than any obligation imposed by law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to defendant.

4.    Creo objects to the requests to the extent they seek "all" documents and things as unduly burdensome and overly broad.  Creo will make a good-faith effort to conduct a reasonable search of documents and things within its possession, custody, or control.  Such good-faith efforts will include identifying – to the best of Creo's ability – relevant Creo individuals with knowledge relevant to the claim or defense of any party or the subject matter of the action, and searching documents of within the possession of those individuals.

5.    Creo objects to Instruction 3 of the Requests as unduly burdensome to the extent it seeks privilege log entries for documents created after the filing of this lawsuit.

6.    Creo objects to the timing of production as unduly burdensome and will produce documents at time and place that is mutually agreeable to the parties.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTIONS

### REQUEST FOR PRODUCTION NO. 1

All documents and things referring to the patents-in-suit.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1

Subject to the foregoing general objections, Creo will produce non-privileged documents and things responsive to the request.

### REQUEST FOR PRODUCTION NO. 2

All documents and things that refer to the claimed subject matter of the patents-in-suit.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2

Creo objects to the term "claimed subject matter" as vague and ambiguous.  Subject to the foregoing general and specific objections, Creo will produce non-privileged documents and things responsive to the request.

## REQUEST FOR PRODUCTION NO. 3

All documents and things that refer to Defendants' knowledge of the patents-in-suit, including but not limited to the circumstances under which Defendants first became aware of the existence of the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3

Subject to the foregoing general objections, Creo will produce non-privileged documents and things responsive to this request.

## REQUEST FOR PRODUCTION NO. 4

All documents and things that refer to the conception, research, design, development, or commercialization of Defendants' Software Products, including but not limited to development meeting notes, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations and specifications.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Moreover, Creo objects to the term "commercialization" as vague and ambiguous. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents and things that refer to the conception, research, design, development, or first commercialization of Darwin software.

## REQUEST FOR PRODUCTION NO. 5

All documents and things that refer to the operation, function, or performance of Defendants' Software Products, including but not limited to all user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, and technical manuals.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5**

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents and things that refer to the operation, function, or performance of Darwin software.

**REQUEST FOR PRODUCTION NO. 6**

Compilable source code for each of Defendants' Software Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6**

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Subject to the foregoing general and specific objections, Creo will produce source code for Darwin software.

**REQUEST FOR PRODUCTION NO. 7**

All documents and things that refer to any instructions, information or directions Defendants provide to any of their customers (including those available on Defendants' websites) concerning how to use each and/or all of Defendants' Software Products, Third Party Software Products, and Defendants' Hardware Products where the hardware instructions refer to any software used for Variable Digital Printing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7**

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information defined by the terms "Defendants' Software Products,

RLF1-3033331-1

Third Party Software Products, and Defendants' Hardware Products" and the reference to

"hardware instructions refer to any software used for Variable Digital Printing." The Complaint

only references "Darwin Desktop" software.

## REQUEST FOR PRODUCTION NO. 8

Defendants' Hardware Products, Defendants' Software Products and any Third Party
Software Products that Defendants mention in any product literature or communication to be
compatible with Defendants' Hardware Products for Variable Digital Printing.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. First, Creo objects to the

request as seeking information defined by the terms "Defendants' Hardware Products,"

"Defendants' Software Products," and "Third Party Software Products." The Complaint only

references "Darwin Desktop" software. Second, Creo objects to the request to the extent it seeks

all such products without any restriction as to providing a representative sample. Third, the cost

and burden of producing even a sample – especially for the hardware products – would be

prohibitive. Creo also objects to this request as vague and ambiguous as to the term

"communication" and "compatible." Subject to the foregoing general and specific objections,

Creo will produce one sample of Darwin software.

## REQUEST FOR PRODUCTION NO. 9

All documents and things that refer to the past, present, or future market for Defendants'
Software Products, Third Party Software Products, and Defendants' Hardware products
including but not limited to business plans, market plans, market analyses, market studies,
commercial studies, product plans, profit plans, and demand studies and surveys.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information defined by the terms "Defendants' Hardware Products,"

"Defendants' Software Products," and "Third Party Software Products." The Complaint only

references "Darwin Desktop" software. Creo also objects to the request as overly broad and

unduly burdensome because there is no reasonable time frame limitation. Subject to the

foregoing general and specific objections, Creo will produce non-privileged documents and

things dated 2001 or later that refer to the market for Darwin software.

## REQUEST FOR PRODUCTION NO. 10

All documents and things that refer to the promotion, marketing or advertising of
Defendants' Software Products and Defendants' Hardware Products, including but not limited to
promotional, marketing, advertising or licensing plans, documents reflecting amounts budgeted
or spent for such promotion, marketing, or advertising, and all advertisements, marketing
materials and promotional materials used by each and/or all of Defendants for each of
Defendants' Software Products and each of Defendants' Hardware Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information defined by the terms "Defendants' Hardware Products,"

and "Defendants' Software Products." The Complaint only references "Darwin Desktop"

software. Moreover, even if limited to Darwin software, the request is overly broad as it seeks

"[a]ll documents and things that refer to the promotion, marketing or advertising." Creo also

objects to the request as overly broad and unduly burdensome because there is no reasonable

time frame limitation. Subject to the foregoing general and specific objections, Creo will

produce promotional, marketing, advertising or licensing plans, and advertisements, marketing

materials and promotional materials that refer to Darwin software, provided that such documents were created or distributed after 2001.

## REQUEST FOR PRODUCTION NO. 11

All documents and things that refer to the promotion, encouragement, marketing, advertising, or efforts to inform the purchase of Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products, including but not limited to promotional, marketing, advertising or licensing plans, documents reflecting amounts budgeted or spent for such promotion, marketing or advertising, and all advertisements, marketing materials and promotional materials used by each and/or all of Defendants for each of the Third Party Software Products disclosed to purchasers or prospective purchasers by Defendants of Defendants' Hardware Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information defined by the terms "Defendants' Hardware Products,"

"Defendants' Software Products," and "Third Party Software Products." The Complaint only

references "Darwin Desktop" software.

## REQUEST FOR PRODUCTION NO. 12

All documents and things that refer to Defendants' existing partnerships or plans to partner with XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream, regarding any software to be used in conjunction with any of Defendants' Hardware Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "XMPie, Atlas Software, Datalogics, GMC

Software, Pageflex, PrintSoft, and Exstream" and "Defendants' Hardware Products." The

Complaint only references "Darwin Desktop" software.

**REQUEST FOR PRODUCTION NO. 13**

All documents and things that refer to amounts budgeted or spent or revenues received in connection with partnering with XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream, to provide or market software for Variable Digital Printing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "XMPie, Atlas Software, Datalogics, GMC

Software, Pageflex, PrintSoft, and Exstream." The Complaint only references "Darwin

Desktop" software.

**REQUEST FOR PRODUCTION NO. 14**

All documents and things concerning actual, estimated and/or projected gross revenues, net revenues, standard costs, incremental costs, gross profit, net profit, and margins related to Defendants' Software Products and Defendants' Hardware Products, in units and dollars, both in the United States, on a monthly, quarterly and annual basis, including but not limited to revenues obtained from contracts or agreements associated with sales of Defendants' Software Products and Defendants' Hardware Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software.

Moreover, Creo objects to the phrase "[a]ll documents and things" as overly broad and unduly

burdensome in this context. Creo also objects to the request as overly broad and unduly

burdensome because there is no reasonable time frame limitation. Subject to the foregoing

general and specific objections, Creo will produce non-privileged documents sufficient to show

and/or sufficient to calculate gross revenues, net revenues, standard costs, incremental costs,

gross profit, net profit, and margins for Darwin software from 2001.

**REQUEST FOR PRODUCTION NO. 15**

All documents and things that refer to pricing or licensing of Defendants' Software Products and Defendants' Hardware Products, including but not limited to documents and things relating to product pricing, licensing strategies, pricing and licensing decisions, price changes, price lists, licensing terms, and license agreements for Defendants' Software Products and Defendants' Hardware Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software.

Moreover, Creo objects to the phrase "[a]ll documents and things" as overly broad and unduly

burdensome in this context. Creo also objects to the request as overly broad and unduly

burdensome because there is no reasonable time frame limitation. Subject to the foregoing

general and specific objections, Creo will produce non-privileged documents sufficient to show

the pricing or licensing of Darwin software from 2001.

**REQUEST FOR PRODUCTION NO. 16**

Documents and things sufficient to establish the sale and license price(s) of Defendants' Software Products and Defendants' Hardware Products (by calendar quarter or the shortest other period by which each and/or all of the Defendants keeps such records).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software.

Creo also objects to the request as overly broad and unduly burdensome because there is no

reasonable time frame limitation. Subject to the foregoing general and specific objections, Creo

- 11 -

will produce non-privileged documents sufficient to show the sales prices and/or license prices

of Darwin software from 2001.

## REQUEST FOR PRODUCTION NO. 17

All press releases that refer to any of Defendants' Software Products and Defendants' Hardware Products, this lawsuit, patent infringement or licensing activities involving Defendants with respect to Variable Digital Printing, Defendants' Variable Digital Printing competitors, or Defendants' Variable Digital Printing customers.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software.

Moreover, Creo further objects to request as seeking documents and things referring to

"Defendants' Variable Digital Printing competitors," "Defendants' Variable Digital Printing

customers," and "patent infringement or licensing activities involving Defendants with respect to

Variable Digital Printing." Creo also objects to the request as overly broad and unduly

burdensome because there is no reasonable time frame limitation. Subject to the foregoing

general and specific objections, Creo will produce press releases that refer to Darwin software or

this lawsuit.

## REQUEST FOR PRODUCTION NO. 18

Documents sufficient to identify, describe, and determine the organizational structure of and corporate relationship among Defendants as defined from January 2000 to present, including the identity of their (a) officers; (b) directors; (c) department heads responsible for research and development, sales, advertising, promotion, and marketing of each of Defendants' Software Products and Defendants' Hardware Products.

- 12 -

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software.

Creo also objects to the request as overly broad and unduly burdensome because there is no

reasonable time frame limitation. Subject to the foregoing general and specific objections, Creo

will produce non-privileged documents sufficient to show the organizational structure of and

corporate relationship among Defendants as defined from January 2001 to present.

## REQUEST FOR PRODUCTION NO. 19

All documents and things that refer to the infringement/noninfringement,
validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the
patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19

Creo objects to this request to the extent it is duplicative of Request No. 1. Subject to the

foregoing general and specific objections, Creo will produce non-privileged documents and

things responsive to the request.

## REQUEST FOR PRODUCTION NO. 20

All documents and things that Defendants contend are prior art with respect to any
contention of invalidity of any of the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 20

Subject to the foregoing general objections, Creo will produce non-privileged documents

and things responsive to the request.

## REQUEST FOR PRODUCTION NO. 21

All documents and things that refer to any discussions, license negotiations, or business
negotiations between any of the Defendants and Plaintiff, including but not limited to discussions

and negotiations relating to the patents-in-suit, Defendants' Software Products, and Variable Digital Printing.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. First, Creo objects to the request as seeking information referring to "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Second, Creo objects to the request to the extent it seeks "[a]ll documents and things that refer to any discussions, license negotiations, or business negotiations between any of the Defendants and Plaintiff Creo" without any limitation. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents that refer to any discussions, license negotiations, or business negotiations between any of the Defendants and Plaintiff, which relate to the patents-in-suit, Darwin software, or Variable Digital Printing.

## REQUEST FOR PRODUCTION NO. 22

All documents and things that refer to any consideration, examination, or analysis conducted on Defendants' Software Products to determine if Defendants' Software Products or the use of Defendants' Software Products infringed or infringes any of the patents-in-suit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 22

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information referring to "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents and things that refer to any consideration, examination, or analysis conducted on Darwin software to determine if Darwin software infringed or infringes any of the patents-in-suit.

- 14 -

**REQUEST FOR PRODUCTION NO. 23**

All documents and things concerning Third Party Software Products that Defendants or others have determined can be used with Defendants' Hardware Products for Variable Digital Printing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking documents and things referring to "Third Party Software Products" and

"Defendants' Hardware Products for Variable Digital Printing." The Complaint only references

"Darwin Desktop" software.

**REQUEST FOR PRODUCTION NO. 24**

All documents and things that refer to any consideration, examination, or analysis conducted on Third Party Software Products to determine if said Third Party Software Products or the use thereof infringed or infringes any of the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking documents and things referring to "Third Party Software Products."

The Complaint only references "Darwin Desktop" software.

**REQUEST FOR PRODUCTION NO. 25**

All documents and things that refer to any oral or written opinions drafted by, requested by, or received by any of Defendants concerning the patents-in-suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25**

Creo objects to this request to the extent it is duplicative of Request No. 1. Subject to the

foregoing general and specific objections, Creo will produce non-privileged documents and

things responsive to the request.

**REQUEST FOR PRODUCTION NO. 26**

     All patent license agreements relating to Variable Digital Printing to which any and/or all of Defendants is a party.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26**

     Subject to the foregoing general objections, Creo will produce non-privileged documents

responsive to this request.

**REQUEST FOR PRODUCTION NO. 27**

     All documents and things that refer or relate to whether:

    (a)    there was one or more long-felt need(s) for the invention(s) claimed in the patents-in-suit;

    (b)    the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents-in-suit;

    (c)    the invention(s) claimed in the patents-in-suit satisfied one or more long-felt need(s);

    (d)    Defendants' Software Products have enjoyed commercial success;

    (e)    products or services of others which compete with Defendants' Software Products have enjoyed commercial success; and

    (f)    the industry has recognized the significance of the invention(s) of the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

     Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action.  In particular, Creo objects

to the request as seeking documents and things referring to "Defendants' Software Products."

Subject to the foregoing general and specific objections, Creo will produce non-privileged

documents responsive to this request, except that Creo will limit is production of parts (d) and (e)

to Darwin software.

**REQUEST FOR PRODUCTION NO. 28**

     All documents and things that refer to any patent infringement indemnification agreements between any and/or all of Defendants and third parties relating to Variable Digital Printing software.

- 16 -

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking documents and things relating to "Variable Digital Printing Software."

The Complaint only references "Darwin Desktop" software. Subject to the foregoing general

and specific objections, Creo will produce non-privileged documents and things that refer to any

patent infringement indemnification agreements between Creo and third parties that relate to this

lawsuit or the subject matter of this lawsuit.

**REQUEST FOR PRODUCTION NO. 29**

All documents and things that refer to Defendants' policies and practices, whether formal
or informal, with respect to document retention or document destruction, including the retention
or destruction of electronic mail.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29**

Creo objects to the request as overly broad and unduly burdensome. In particular, Creo

objects to the request as seeking "[a]ll documents and things" in this context. Creo also objects

to the request as overly broad and unduly burdensome because there is no reasonable time frame

limitation. Creo further objects to "practices" as vague and ambiguous. Subject to the foregoing

general and specific objections, Creo will produce non-privileged documents sufficient to

describe Creo's document retention and document destruction policies from January 2001 to

present.

**REQUEST FOR PRODUCTION NO. 30**

All draft and final versions of Defendants' annual reports, quarterly reports and all other
periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate
to Defendants' Hardware Products, Defendants' Software Products, or Third Party Software
Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Hardware Products,"

"Defendants' Software Products," "Third Party Software Products." The Complaint only

references "Darwin Desktop" software. Furthermore, Creo objects to producing drafts. Creo

also objects to the request as overly broad and unduly burdensome because there is no reasonable

time frame limitation. Creo further objects that the filed reports are publicly available.

**REQUEST FOR PRODUCTION NO. 31**

All documents and things that refer to Defendants' competitors in the Variable Digital
Printing field, including but not limited to comparisons of Defendants' Software Products with
competitors' software products, market share of Defendants and Defendants' competitors and
any competitive analyses or studies.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products." The

Complaint only references "Darwin Desktop" software. Moreover, the request is overly broad

and unduly burdensome because it seeks "[a]ll documents and things that refer to Defendants'

competitors in the Variable Digital Printing field." Creo also objects to the request as overly

broad and unduly burdensome because there is no reasonable time frame limitation. Subject to

the foregoing general and specific objections, Creo will produce non-privileged documents dated

from 2001 relating to comparisons of Darwin software with competitive software products,

market share of Darwin software compared to competitive software products, and any

competitive analyses or studies relating to Darwin software.

## REQUEST FOR PRODUCTION NO. 32

All documents and things that refer to any training courses, classes and seminars for users, installers, operators, testers, or licensees of Defendants' Software Products or Third Party Software Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 32

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and "Third

Party Software Products." The Complaint only references "Darwin Desktop" software. Creo

also objects to the request as overly broad and unduly burdensome because there is no reasonable

time frame limitation. Subject to the foregoing general and specific objections, Creo will

produce non-privileged documents and things dated after 2001 that refer to any training courses,

classes and seminars for users, installers, operators, testers, or licensees of Darwin software.

## REQUEST FOR PRODUCTION NO. 33

All documents and things that refer to any communication between any of Defendants and any other entity or person concerning Plaintiff, any patents now assigned to Plaintiff, including but not limited to the patents-in-suit and/or Defendants' Software Products and/or this lawsuit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products," "any

communication . . . concerning Plaintiff," and "any patents now assigned to Plaintiff." Subject to

the foregoing general and specific objections, Creo will produce non-privileged documents and

things that refer to any communication between Creo and any other entity or person concerning

(i) the patents-in-suit, (ii) Darwin software, and/or (iii) this lawsuit.

## REQUEST FOR PRODUCTION NO. 34

All minutes, presentations, materials or any other records of any meetings of Defendants' boards of directors, or of any formal or informal committee or group thereof, that refer to Plaintiff, patents owned by or assigned to Plaintiff, the patents-in-suit, or this lawsuit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 34

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking documents referring to "patents owned by or assigned to Plaintiff" and

merely to "Plaintiff." Creo also objects to the phrase "or of any formal or informal committee or

group thereof" as vague and ambiguous. Subject to the foregoing general and specific

objections, Creo will produce non-privileged minutes, presentations, materials or any other

records of any meetings of Creo's boards of directors that refer to the patents-in-suit or this

lawsuit.

## REQUEST FOR PRODUCTION NO. 35

Any documents that refer to this lawsuit.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35

Subject to the foregoing general and specific objections, Creo will produce non-

privileged documents and things responsive to the request.

## REQUEST FOR PRODUCTION NO. 36

All documents that refer to displays and demonstrations at any and all trade shows, meetings, and conferences, world-wide, of Defendants' Software Products and Defendants' Hardware Products, and all literature relating thereto passed out or distributed at or in connection with such shows, meetings, or conferences.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and

- 20 -

"Defendants' Hardware Products." The Complaint only references "Darwin Desktop" software. Creo also objects to the request as overly broad and unduly burdensome because there is no reasonable time frame limitation. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents that refer to displays and demonstrations of Darwin software at trade shows, meetings, and conferences occurring in 2001 or later, and all literature relating to Darwin software, which was distributed at or in connection with such shows, meetings, or conferences.

**REQUEST FOR PRODUCTION NO. 37**

All documents and things that refer to any contingent liability reserves or insurance policies maintained by each Defendant in connection with the patents-in-suit or this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**

Creo objects to the term "in connection with" as vague and ambiguous. Subject to the foregoing general and specific objections, Creo will produce non-privileged responsive to this request.

**REQUEST FOR PRODUCTION NO. 38**

All documents and things that refer to Defendants' earliest knowledge of Plaintiffs development work on the subject matter of the patents-in-suit and any actions, responses, and/or efforts undertaken by any Defendant including but not limited to any actions taken concerning the development or decision to develop Defendants' Software Products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38**

Creo objects to the request as overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the request as seeking information referring to "Defendants' Software Products." The Complaint only references "Darwin Desktop" software. Creo objects to the phrase "any actions, responses, and/or efforts undertaken by any Defendant" as vague and ambiguous. Subject to the foregoing general and specific objections, Creo will produce non-privileged documents and

- 21 -

things that refer to Creo's earliest knowledge of RRD's development work on the subject matter

of the patents-in-suit.

## REQUEST FOR PRODUCTION NO. 39

If Defendants contend that any aspect of Defendants' Software Products or Third Party Software Products that Defendants promote for use with Defendants' Hardware Products is the result of a design around of the patents-in-suit, then all documents and things that refer to such a design around effort.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 39

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products," "Third Party

Software Products," and "Defendants' Hardware Products." The Complaint only references

"Darwin Desktop" software.

## REQUEST FOR PRODUCTION NO. 40

All documents and things that refer to relationships between each of Defendants and its customers or licensees, said documents including but not limited to:
   (a)    any indemnification agreements, contracts, licenses, agreements to sublicense, co-promotion agreements or other agreements between each of Defendants and its customers or licensees;
   (b)    documents that refer to, or seek to influence, the decision to use Defendants' Software Products or any Third Party Software Products;
   (c)    documents that refer to a competitive need motivating the development of Defendants' Software Products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products" and "Third

Party Software Products." The Complaint only references "Darwin Desktop" software.

Moreover, the request is overly broad and unduly burdensome as it seeks "[a]ll documents and

things that refer to relationships between each of Defendants and its customers or licensees"

without limitation and further fails to include any reasonable time frame limitation.

## REQUEST FOR PRODUCTION NO. 41

All documents and things concerning communications regarding the patents-in-suit, Defendants' Hardware Products, Defendants' Software Products, Third Party Software Products, and Variable Digital Printing with any person that any or all of Defendants expect to call as a fact or expert witness at any trial, hearing, or other proceeding in this action.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41

Creo objects to the request as overly broad and unduly burdensome and not relevant to

the claim or defense of any party or the subject matter of the action. In particular, Creo objects

to the request as seeking information referring to "Defendants' Software Products," "Third Party

Software Products," and "Defendants' Hardware Products." The Complaint only references

"Darwin Desktop" software. Creo further objects to this request as overly broad and premature

as expert reports will be produced in due course. Subject to this objection, Creo will produce

responsive documents as required by and consistent with Rule 26(a)(2) of the Federal Rules of

Civil Procedure.

## REQUEST FOR PRODUCTION NO. 42

All documents comprising or including English translations of non-English text in any otherwise responsive document.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 42

Subject to the foregoing general objections, Creo will produce non-privileged documents

and things responsive to the request.

## REQUEST FOR PRODUCTION NO. 43

All documents and things that refer to the subject matter of, or the identification of which is sought by, Plaintiff's First Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company, served simultaneously with these requests, including without limitation all documents identified or referred to in Defendants'

responses thereto, and all documents that any or all of Defendants consulted, or upon which any or all of Defendants relied, in framing, compiling or preparing its responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43**

Subject to the foregoing general and specific objections, Creo will produce non-

privileged documents and things responsive to the request.

**REQUEST FOR PRODUCTION NO. 44**

All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents-in-suit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44**

Creo objects to the term "claimed subject matter" as vague and ambiguous. Subject to

the foregoing general and specific objections, Creo will produce non-privileged documents and

things responsive to the request.

OF COUNSEL:

Richard McMillan, Jr. (admitted pro hac vice)
rmcmillan@crowell.com
Jeffrey D. Sanok (admitted pro hac vice)
jsanok@crowell.com
Brian M. Koide (admitted pro hac vice)
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

Dated: July 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899


I hereby certify that on July 3, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY  10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA  02110


Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

**EXHIBIT D**

http://www.kodak.com/global/en/corp/historyOfKodak/2000.jhtml?pq-path=2704

# Kodak

United States [change]    Join / Login

Home    Consumer Photography    Pro Photographer / Lab    Cinematography    Health & Dental    Graphic Communications    Business & Government    Corporate

▶About Kodak    Corporate Responsibility    Press Center    Investor Center    Innovations    Purchasing    Contact Us

Print 🖨    E-mail ✉

## 2000-Present

- **History of Kodak**
  - George Eastman
  - Building the Foundation
  - Broadening the Impact of Pictures
  - Evolution of our brand logo
  - Imaging- the basics
  - Quality and Ethics
  - Milestones- chronology
    - 1878-1929
    - 1930-1959
    - 1960-1979
    - 1980-1989
    - 1990-1999
    - ▶2000-Present
- Kodak External Alliances
- Research & Development
- Careers@Kodak
- CEO Biography
- Kodak Racing

**2000** - Dan Carp became Kodak's CEO in addition to his responsibilities as President. ♦ Kodak's Health Imaging unit introduced 45 new products during the year, including, KODAK InSight Intraoral Dental Film; a dental radiography film that helped dentists reduce radiation exposure to patients while delivering excellent images; and two new digital radiography systems, the KODAK DirectView DR 9000 and DirectViewDR 5000. ♦ Kodak's Entertainment Imaging unit and Qualcomm Inc. launched an initiative to collaborate on testing of core technologies for the creation of a high-quality digital cinema system. ♦ Kodak introduced a new PalmPix camera that turned the Palm m100 handheld into a digital camera. ♦ At year-end, Kodak completed the acquisition of Lumisys, Inc., a leading provider of desktop computed radiography systems and x-ray film digitizers.



KODAK DirectView DR9000 Digital Radiography System

**2001** - Dan Carp became Kodak's Chairman in addition to his responsibilities as President and CEO. ♦ Kodak entered into an alliance with Maytag Corporation, Maytag's Dixie-Narco vending machine division and e-Vend.net that would use vending machines and the Internet to expand the number of locations where consumers could buy film and one-time-use cameras. ♦ The company completed its acquisition of Bell & Howell Company's imaging businesses. ♦ Kodak announced a new worldwide advertising campaign, "Share Moments. Share Life." ♦ The KODAK EASYSHARE System, a new line of digital cameras and docking systems that set the standard for ease of use for digital photography, was launched. ♦ In June, the company acquired Ofoto, Inc., a leading online photography service.



KODAK DX3700 Digital Camera and Camera Dock

**2002** - Kodak finalized the acquisition of Encad, Inc., a wholly owned subsidiary of Kodak, focused exclusively on the wide-format inkjet printing industry. ♦ KODAK PERFECT TOUCH Processing was introduced, which marked the expansion of the company's digital photo processing offering to consumers. By individually scanning and digitally processing each picture, KODAK PERFECT TOUCH Processing removes dark shadows, reveals richer detail, improves sharpness and contrast, and reveals more vibrant color in pictures. ♦ The company introduced the KODAK 8500 Digital Photo Printer, a photo-quality, thermal desktop printer that offers superior productivity vs. inkjet at a competitive price. ♦ KODAK i200 Series Scanners were introduced; a new family of low-volume document scanners that feature much of the technology found in the company's highest-



KODAK OLED display (right) outshines LCD competitor (left)

http://www.kodak.com/global/en/corp/historyOfKodak/2000.jhtml?pq-path=2704

speed scanners, plus the market's first dockable flatbed accessory for scanning documents that need special handling. ♦ Kodak and Sanyo Electric Co. unveiled a prototype fifteen-inch flat-panel display, the next generation of full-color displays based on Kodak's patented organic light-emitting diode (OLED) technology. ♦ The company unveiled KODAK VISION2 motion-picture color negative film, the next generation of its award-winning motion-picture films. KODAK VISION2 is the descendant of the VISION line of films, which were introduced in 1995 and quickly became the most widely used motion-picture films in the world.

**2003** - The KODAK EASYSHARE printer dock 6000, a device that produces durable, borderless 4" x 6" KODAK prints, was introduced. ♦ The company introduced several digital cameras including the KODAK EASYSHARE LS633 zoom digital camera, the first digital camera to feature an organic light-emitting diode (OLED) display, and the KODAK EASYSHARE DX6490 for advanced amateur photographers. ♦ Kodak's U.S. mobile imaging services were introduced to help people store, share, organize and print their digital images. ♦ The KODAK i80 Scanner, which digitizes paper documents 40 percent faster than previous models, was introduced as well as a portfolio of new document imaging products. ♦ Kodak made several acquisitions including PracticeWorks, Inc., a provider of dental practice management software; 20% of Lucky Film Co., Ltd., the largest maker of photo film headquartered in China; Laser-Pacific Media Corporation, a provider of post-production services for filmmakers; Algotec Systems Ltd., developer of picture archiving and communications systems; and Applied Science Fiction's Digital PIC rapid film processing technology. ♦ Antonio Perez joined the company as President and Chief Operating Officer. ♦ In September, the company unveiled a new digitally oriented strategy to accelerate growth to expand into a range of commercial businesses. The company was organized under five primary operations: Commercial Printing, Display & Components, Health Imaging, Digital & Film Imaging Systems, and Commercial Imaging.



EASYSHARE printer dock 6000



EASYSHARE LS633 digital camera



KODAK i80 Scanner

**2004** - KODAK EASYSHARE Digital Cameras ranked highest in customer satisfaction in the $200-$399 and $400-$599 price segments in the J.D. Power and Associates 2004 Digital Camera Satisfaction Study. ♦ Kodak expanded its graphic communications business, becoming sole owner of former joint venture NexPress (a provider of

http://www.kodak.com/global/en/corp/historyOfKodak/2000.jhtml?pq-path=2704

high-end, on-demand color printing systems and black-and-white variable-data printing systems), and Scitex Digital Printing (a leader in high-speed variable data inkjet printing). The latter was renamed Kodak Versamark, Inc. ♦ The company also bought remaining shares of Chinon Industries, a digital camera manufacturer, acquired the imaging sensor business of National Semiconductor, and formed an alliance with IBM to manufacture CMOS image sensors. ♦ To more closely focus on its growth areas, Kodak sold its Remote Sensing Systems business, which served defense and aerospace customers, to ITT Industries. ♦ Kodak and seven other camera manufacturers announced a new IMAGELINK specification to allow various cameras to connect to, and work with, the EASYSHARE Printer Dock. Kodak also introduced the EASYSHARE Printer Dock Plus, which can print pictures from digital cameras, memory cards and wireless transmission. ♦ Construction began on a manufacturing facility at Kodak's Windsor, Colorado site to expand thermal media capacity. This will help meet growing demand for high quality thermal prints from Kodak's popular picture maker kiosks, EASYSHARE Printer Docks and Professional 1400 Digital Photo Printers ♦ With growing demand for digital imaging, Kodak pared its film and paper manufacturing operations, closing its plant in Coburg, Australia, and scaling back operations in several other locations. ♦ The U.S. Food and Drug Administration (FDA) granted approval for Kodak's innovative mammography computer-aided detection system. The system helps identify suspicious areas on digitized mammograms, aiding radiologists in early detection of breast cancer. ♦ KODAK Ultima Picture Paper, with COLORLAST technology, was introduced. When used with the latest inks, photos printed on this inkjet paper will last for more than 100 years in typical home display.



NEXPRESS 2100 Digital Production Color Press



KODAK Ultima Picture Paper

2005- Kodak received a number of industry accolades for its new EASYSHARE-ONE Digital Camera, which provides an unprecedented ability to hold up to 1,500 pictures for instant display and to wirelessly transmit images for printing, e-mailing or online viewing. ♦ Other new EASYSHARE cameras included V-series and P-series models. P-Series cameras offer advanced features for avid photographers. Smaller than a deck of playing cards, V-series cameras blend still and video photography—offering the ability to take print-quality still images from video, or record up to 80 continuous minutes of TV-quality videos with sound. ♦ Building on the success of Kodak's award-winning family of digital cameras and printer docks, the company's OFOTO Online Photo Service changed its name to KODAK EASYSHARE Gallery. ♦ Kodak acquired OREX Computed Radiography Ltd., a leading provider of compact computed radiography systems that digitally acquire x-ray images. ♦ Continuing to grow its Graphic Communications business, the company became sole owner of former joint venture Kodak Polychrome Graphics—a leading supplier of products and services to the graphic communications market; and acquired Creo Inc.— a premier supplier of prepress and



KODAK Mammography CAD System



KODAK EASYSHARE-ONE Digital Camera

http://www.kodak.com/global/en/corp/historyOfKodak/2000.jhtml?pq-path=2704

workflow systems used by commercial printers around the world. ♦ Kodak introduced new offerings for the graphics industry, including the KODAK Enterprise Management Solution (EMS), a complete business workflow solution; and the KODAK VERSAMARK VX5000e printing system, offering an effective resolution twice that available with previous generations of continuous inkjet printheads. ♦ Antonio M. Perez became Kodak CEO, in addition to his role as President. ♦ Kodak announced availability of the first CMOS image sensor (CIS) devices to come from its manufacturing alliance with IBM. ♦ Kodak introduced molecular imaging systems that, through a non-invasive procedure, help identify molecular abnormalities that signal disease at a very early stage. At this point the systems are not intended for human use, but they will aid laboratory researchers in fields like cancer study. ♦ Kodak announced new home printing products including the EASYSHARE Photo Printer 500, for use with virtually any brand of digital camera and recent camera phones. ♦ Kodak launched a global initiative to transform its brand for the digital world. Elements include an advertising campaign set in an art gallery to depict the importance of personal, historic and medical images, and to highlight Kodak's role in creating, sharing and protecting them. ♦ The world's highest-resolution image sensor for professional photography, the 39 million pixel KODAK KAF-39000 Image Sensor, was introduced. ♦ Strengthening its leading position in retail printing, Kodak introduced the KODAK Picture Kiosk G4, offering faster uploading and printing of images. ♦ Kodak's Health Group obtained its largest ever contract for Picture Archiving and Communications Systems (PACS) and Information Management Solutions (IMS) with National Services Scotland.



KODAK VERSAMARK VX5000e Printing System



KODAK Image Station Digital Imaging System-molecular imaging system for non-invasive diagnostic imaging research in fields like cancer study.

**2006 (through April)** - Antonio M. Perez became Chairman of Kodak, in addition to his role as CEO. ♦ The world's first dual-lens digital still camera, the sleek KODAK EASYSHARE V570 zoom digital camera, was introduced. That was followed by introduction of the KODAK EASYSHARE V610 dual lens digital camera, the world's smallest camera to feature a 10x optical zoom. ♦ Kodak updated its brand logo, providing a fresh, contemporary look for today's digital world. ♦ Kodak and Motorola entered a global product, cross licensing and marketing alliance around mobile imaging. ♦ The KODAK Scan Station 100 was announced. It allows office workers to simultaneously scan, store and share documents on an office network, and send them anywhere — without a computer.

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>QUARK, INC., CREO, INC., EASTMAN )<br>KODAK COMPANY, AND KODAK )<br>GRAPHIC COMMUNICATIONS )<br>COMPANY, )<br><br>Defendants. )<br>_____ )<br>CREO, INC., EASTMAN KODAK )<br>COMPANY, AND KODAK GRAPHIC )<br>COMMUNICATIONS COMPANY, )<br><br>Counterclaim-Plaintiffs, )<br><br>v. )<br><br>R.R. DONNELLEY & SONS COMPANY, )<br><br>Counterclaim-Defendant. )<br>_____ ) | C.A. No. 06-cv-032-JJF |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS
CREO, INC., EASTMAN KODAK COMPANY, AND
KODAK GRAPHIC COMMUNICATIONS COMPANY**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff R.R. Donnelley & Sons Company ("Plaintiff") submits the following interrogatories to defendants Creo, Inc. ("Creo"), Eastman Kodak Company ("Kodak"), and Kodak Graphic Communications Company ("KGC"), collectively "Defendants." Plaintiff requests that Defendants answer each interrogatory fully in writing under oath, and that Defendants serve their responses within thirty (30) days after service of these interrogatories.

## DEFINITIONS

1.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any interrogatory any information or documents that might otherwise be construed to be outside its scope.

2.    "Any" shall be read to mean each and every.

3.    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

4.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices. The term "documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

5.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and

the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

6.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, including, but not limited to, Kodak Versamark, Inc., NexPress Solutions, Inc., Creo, and KGCC and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

7.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

8.    "Defendants" means Creo, Kodak, and KGCC, collectively.

9.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

10.    "The '452 patent" means United States Patent No. 6,205,452.

11.    "The '599 patent" means United States Patent No. 6,327,599.

12.    "The '940 patent" means United States Patent No. 6,844,940.

13.    "The '801 patent" means United States Patent No. 6,952,801.

3

14.    The "patents-in-suit" shall refer to the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

15.    The singular shall include the plural and the plural shall include the singular.

16.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

17.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

18.    The term "including" does not limit the scope of the interrogatory. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

19.    The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing.

20.    The term "Defendants' Hardware Products" means any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing, including but not limited to the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System,

4

the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

21.    The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

22.    The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

## INSTRUCTIONS

1.    In answering the interrogatories that follow, Defendants are required to furnish all information available to them, including, but not limited to, information within the possession of Defendants' advisors, associates, agents, consultants, employees, attorneys, and attorneys' consultants and investigators. If Defendants are unable to answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure information to do so, Defendants should so state and answer each such interrogatory to the extent that they are able. In such event, Defendants should specify the portion of the interrogatory that they claim they are unable to answer fully and completely, stating the facts upon which Defendants rely to support their contention that they are unable to answer said interrogatory fully and completely. In such event, Defendants should state further what knowledge, information, and belief Defendants do have concerning the unanswered portion of such interrogatory.

2.    Where an identified document has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction.

3.    Where an identified document is not in Defendants' possession, custody, or control, state the name of the persons who have possession, custody, or control of such

5

document. If such document was in Defendants' possession, custody, or control in the past but is no longer in Defendants' possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

4.    In the event that Defendants claim privilege with respect to any information requested, Defendants shall state the specific ground for each such claim of privilege and shall set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the information; each person to whom such information was distributed or communicated; if the communication requested is embodied in a document, a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times.

5.    In the event that Defendants claim that an interrogatory is overly broad, Defendants shall respond to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is alleged to be overbroad.

6.    In the event that Defendants claim that an interrogatory is unduly burdensome, Defendants shall respond to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is alleged to be unduly burdensome.

7.    Pursuant to Federal Rule of Civil Procedure 26(e), the interrogatories propounded herein shall be deemed continuous up to and following the trial of this proceeding, such that any information requested herein that is either discovered by Defendants, or comes

6

within Defendants' possession, custody, or control, subsequent to Defendants' initial response hereto but prior to the final conclusion of this case should be produced in a supplemental response to these interrogatories immediately upon its discovery or receipt by Defendants or Defendants' counsel.

## INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

### INTERROGATORY NO. 3

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in

Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products and Third Party Software Products suitable for use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 4**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of their Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions of the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**INTERROGATORY NO. 6**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 7**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 8**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 9**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and

9

communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 10**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines of license and/or implied license," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 11**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 12**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 13**

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by Defendants, broken down by product, in connection with each of

Defendants' Software Products and Defendants' Hardware Products (beginning with the first receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specific hardware product involved in the use.

## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
*Attorneys for Plaintiff R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

May 1, 2006

518277

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 1, 2006, upon the following in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

_(#3775)_

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>QUARK, INC., CREO, INC., EASTMAN )<br>KODAK COMPANY, AND KODAK )<br>GRAPHIC COMMUNICATIONS )<br>COMPANY, )<br><br>Defendants. )<br>_____ )<br>CREO, INC., EASTMAN KODAK )<br>COMPANY, AND KODAK GRAPHIC )<br>COMMUNICATIONS COMPANY, )<br><br>Counterclaim-Plaintiffs, )<br><br>v. )<br><br>R.R. DONNELLEY & SONS COMPANY, )<br><br>Counterclaim-Defendant. )<br>_____ ) | C.A. No. 06-cv-032-JJF |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION
OF DOCUMENTS AND THINGS TO DEFENDANTS
CREO, INC., EASTMAN KODAK COMPANY, AND
KODAK GRAPHIC COMMUNICATIONS COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

R.R. Donnelley & Sons Company ("Plaintiff") requests that Defendants Creo, Inc., Eastman

Kodak Company, and Kodak Graphic Communications Company (collectively "Defendants")

each produce for inspection and copying documents and things within the possession, custody or

control of each Defendant that are responsive to the requests set forth below within 30 days after

the service of the following requests. Plaintiff requests that production be made at the offices of Ropes & Gray LLP, 1251 Avenue of the Americas, New York, New York 10020.

## DEFINITIONS

1.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any discovery request any information or documents that might otherwise be construed to be outside its scope.

2.    "Any" shall be read to mean each and every.

3.    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

4.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, documents, things, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. By way of illustration and without limitation, documents include at least the following:  originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices. The term

"documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

5.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

6.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities including, but not limited to, Kodak Versamark, Inc., NexPress Solutions, Inc., Creo, and KGCC, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

7.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

8.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

9.    "Defendants" means Creo, Kodak, and KGCC, collectively.

3

10.    "The '452 patent" means United States Patent No. 6,205,452.

11.    "The '599 patent" means United States Patent No. 6,327,599.

12.    "The '940 patent" means United States Patent No. 6,844,940.

13.    "The '801 patent" means United States Patent No. 6,952,801.

14.    The term "patents-in-suit" means the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

15.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

16.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

17.    The term "including" does not limit the scope of a request. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

18.    The singular shall include the plural and the plural shall include the singular.

19.    The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing.

20. The term "Defendants' Hardware Products" means any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing, including but not limited to the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

21. The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

22. The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

## INSTRUCTIONS

1. The documents requested include all documents in Defendants' possession, custody or control, or in the possession, custody or control of Defendants' present or former attorneys, licensees, officers, directors, employees, agents, representatives, consultants, subsidiaries, affiliates, principals or parents, or any investigators or any other person acting on behalf of Defendants or under the direction or control of Defendants or their attorneys or agents, wherever such documents may be located.

2. Each request for documents seeks production of each document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto. To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided.

3. In the event that Defendants claim privilege with respect to any documents requested, Defendants shall state the specific ground for each such claim of privilege and shall

5

set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the document; each person to whom such requested document was distributed or communicated; a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times. If the claim of privilege applies only to a portion of the document, produce all portions of the document to which the claim does not apply.

4.      Where any document requested has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction.

5.      Where any requested document is not in Defendants' possession, custody, or control, state the name of the persons who have possession, custody, or control of such document. If such document was in Defendants' possession, custody, or control in the past but is no longer in Defendants' possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

6.      If subsequent to the date Defendants produce documents responsive to these document requests, Defendants discover or receive additional documents that are responsive to these requests, promptly produce all such additional documents to the full extent required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.

## REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1**

All documents and things that refer to the patents-in-suit.

**DOCUMENT REQUEST NO. 2**

All documents and things that refer to the claimed subject matter of the patents-in-suit.

**DOCUMENT REQUEST NO. 3**

All documents and things that refer to Defendants' knowledge of the patents-in-suit, including but not limited to the circumstances under which Defendants first became aware of the existence of the patents-in-suit.

**DOCUMENT REQUEST NO. 4**

All documents and things that refer to the conception, research, design, development, or commercialization of Defendants' Software Products, including but not limited to all development meeting notes, status reports, committee meeting minutes, testing reports, simulations, developers' notes and notebooks, project schedules, meeting presentations and specifications.

**DOCUMENT REQUEST NO. 5**

All documents and things that refer to the operation, function, or performance of Defendants' Software Products, including but not limited to all user guides, reference manuals, product manuals, product descriptions, technician's guides, installation guides, and technical manuals.

7

**DOCUMENT REQUEST NO. 6**

Compilable source code for each of Defendants' Software Products.

**DOCUMENT REQUEST NO. 7**

All documents and things that refer to any instructions, information or directions Defendants provide to any of their customers (including those available on Defendants' websites) concerning how to use each and/or all of Defendants' Software Products, Third Party Software Products, and Defendants' Hardware Products where the hardware instructions refer to any software used for Variable Digital Printing.

**DOCUMENT REQUEST NO. 8**

Defendants' Hardware Products, Defendants' Software Products and any Third Party Software Products that Defendants mention in any product literature or communication to be compatible with Defendants' Hardware Products for Variable Digital Printing.

**DOCUMENT REQUEST NO. 9**

All documents and things that refer to the past, present, or future market for Defendants' Software Products, Third Party Software Products, and Defendants' Hardware Products including but not limited to business plans, market plans, market analyses, market studies, commercial studies, product plans, profit plans, and demand studies and surveys.

**DOCUMENT REQUEST NO. 10**

All documents and things that refer to the promotion, marketing or advertising of Defendants' Software Products and Defendants' Hardware Products, including but not limited to promotional, marketing, advertising or licensing plans, documents reflecting amounts budgeted or spent for such promotion, marketing or advertising, and all advertisements, marketing

materials and promotional materials used by each and/or all of Defendants for each of Defendants' Software Products and each of Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 11**

All documents and things that refer to the promotion, encouragement, marketing, advertising, or efforts to inform the purchase of Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products, including but not limited to promotional, marketing, advertising or licensing plans, documents reflecting amounts budgeted or spent for such promotion, marketing or advertising, and all advertisements, marketing materials and promotional materials used by each and/or all of Defendants for each of the Third Party Software Products disclosed to purchasers or prospective purchasers by Defendants of Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 12**

All documents and things that refer to Defendants' existing partnerships or plans to partner with XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream, regarding any software to be used in conjunction with any of Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 13**

All documents and things that refer to amounts budgeted or spent or revenues received in connection with partnering with XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream, to provide or market software for Variable Digital Printing.

**DOCUMENT REQUEST NO. 14**

All documents and things concerning actual, estimated and/or projected gross revenues, net revenues, standard costs, incremental costs, gross profit, net profit, and margins related to Defendants' Software Products and Defendants' Hardware Products, in units and dollars, both in the United States, on a monthly, quarterly and annual basis, including but not limited to revenues obtained from contracts or agreements associated with sales of Defendants' Software Products and Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 15**

All documents and things that refer to pricing or licensing of Defendants' Software Products and Defendants' Hardware Products, including but not limited to documents and things relating to product pricing, licensing strategies, pricing and licensing decisions, price changes, price lists, licensing terms, and license agreements for Defendants' Software Products and Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 16**

Documents and things sufficient to establish the sale and license price(s) of Defendants' Software Products and Defendants' Hardware Products (by calendar quarter or the shortest other period by which each and/or all of the Defendants keeps such records).

**DOCUMENT REQUEST NO. 17**

All press releases that refer to any of Defendants' Software Products and Defendants' Hardware Products, this lawsuit, patent infringement or licensing activities involving Defendants with respect to Variable Digital Printing, Defendants' Variable Digital Printing competitors, or Defendants' Variable Digital Printing customers.

**DOCUMENT REQUEST NO. 18**

Documents sufficient to identify, describe, and determine the organizational structure of and corporate relationship among Defendants as defined from January 2000 to present, including the identity of their (a) officers; (b) directors; (c) department heads responsible for research and development, sales, advertising, promotion, and marketing of each of Defendants' Software Products and Defendants' Hardware Products.

**DOCUMENT REQUEST NO. 19**

All documents and things that refer to the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents-in-suit.

**DOCUMENT REQUEST NO. 20**

All documents and things that Defendants contend are prior art with respect to any contention of invalidity of any of the patents-in-suit.

**DOCUMENT REQUEST NO. 21**

All documents and things that refer to any discussions, license negotiations, or business negotiations between any of the Defendants and Plaintiff, including but not limited to discussions and negotiations relating to the patents-in-suit, Defendants' Software Products, and Variable Digital Printing.

**DOCUMENT REQUEST NO. 22**

All documents and things that refer to any consideration, examination, or analysis conducted on Defendants' Software Products to determine if Defendants' Software Products or the use of Defendants' Software Products infringed or infringes any of the patents-in-suit.

**DOCUMENT REQUEST NO. 23**

All documents and things concerning Third Party Software Products that Defendants or others have determined can be used with Defendants' Hardware Products for Variable Digital Printing.

**DOCUMENT REQUEST NO. 24**

All documents and things that refer to any consideration, examination, or analysis conducted on Third Party Software Products to determine if said Third Party Software Products or the use thereof infringed or infringes any of the patents-in-suit.

**DOCUMENT REQUEST NO. 25**

All documents and things that refer to any oral or written opinions drafted by, requested by, or received by any of Defendants concerning the patents-in-suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/ unenforceability, patentability, scope or interpretation of the patents-in-suit.

**DOCUMENT REQUEST NO. 26**

All patent license agreements relating to Variable Digital Printing to which any and/or all of Defendants is a party.

**DOCUMENT REQUEST NO. 27**

All documents and things that refer or relate to whether:

(a) there was one or more long-felt need(s) for the invention(s) claimed in the patents-in-suit;

(b) the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents-in-suit;

12

(c)    the invention(s) claimed in the patents-in-suit satisfied one or more long-felt need(s);

(d)    Defendants' Software Products have enjoyed commercial success;

(e)    products or services of others which compete with Defendants' Software Products have enjoyed commercial success; and

(f)    the industry has recognized the significance of the invention(s) of the patents-in-suit.

**DOCUMENT REQUEST NO. 28**

All documents and things that refer to any patent infringement indemnification agreements between any and/or all of Defendants and third parties relating to Variable Digital Printing software.

**DOCUMENT REQUEST NO. 29**

All documents and things that refer to Defendants' policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

**DOCUMENT REQUEST NO. 30**

All draft and final versions of Defendants' annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to Defendants' Hardware Products, Defendants' Software Products, or Third Party Software Products.

**DOCUMENT REQUEST NO. 31**

All documents and things that refer to Defendants' competitors in the Variable Digital Printing field, including but not limited to comparisons of Defendants' Software Products

with competitors' software products, market share of Defendants and Defendants' competitors and any competitive analyses or studies.

**DOCUMENT REQUEST NO. 32**

      All documents and things that refer to any training courses, classes and seminars for users, installers, operators, testers, or licensees of Defendants' Software Products or Third Party Software Products.

**DOCUMENT REQUEST NO. 33**

      All documents and things that refer to any communication between any of Defendants and any other entity or person concerning Plaintiff, any patents now assigned to Plaintiff, including but not limited to the patents-in-suit and/or Defendants' Software Products and/or this lawsuit.

**DOCUMENT REQUEST NO. 34**

      All minutes, presentations, materials or any other records of any meetings of Defendants' boards of directors, or of any formal or informal committee or group thereof, that refer to Plaintiff, patents owned by or assigned to Plaintiff, the patents-in-suit, or this lawsuit.

**DOCUMENT REQUEST NO. 35**

      Any documents that refer to this lawsuit.

**DOCUMENT REQUEST NO. 36**

      All documents that refer to displays and demonstrations at any and all trade shows, meetings, and conferences, world-wide, of Defendants' Software Products and Defendants' Hardware Products, and all literature relating thereto passed out or distributed at or in connection with such shows, meetings, or conferences.

**DOCUMENT REQUEST NO. 37**

All documents and things that refer to any contingent liability reserves or insurance policies maintained by each Defendant in connection with the patents-in-suit or this lawsuit.

**DOCUMENT REQUEST NO. 38**

All documents and things that refer to Defendants' earliest knowledge of Plaintiff's development work on the subject matter of the patents-in-suit and any actions, responses, and/or efforts undertaken by any Defendant including but not limited to any actions taken concerning the development or decision to develop Defendants' Software Products.

**DOCUMENT REQUEST NO. 39**

If Defendants contend that any aspect of Defendants' Software Products or Third Party Software Products that Defendants promote for use with Defendants' Hardware Products is the result of a design around of the patents-in-suit, then all documents and things that refer to such a design around effort.

**DOCUMENT REQUEST NO. 40**

All documents and things that refer to relationships between each of Defendants and its customers or licensees, said documents including but not limited to:

(a)     any indemnification agreements, contracts, licenses, agreements to sublicense, co-promotion agreements or other agreements between each of Defendants and its customers or licensees;

(b)     documents that refer to, or seek to influence, the decision to use Defendants' Software Products or any Third Party Software Products; and

(c)    documents that refer to a competitive need motivating the development of Defendants' Software Products.

**DOCUMENT REQUEST NO. 41**

All documents and things concerning communications regarding the patents-in-suit, Defendants' Hardware Products, Defendants' Software Products, Third Party Software Products, and Variable Digital Printing with any person that any or all of Defendants expect to call as a fact or expert witness at any trial, hearing, or other proceeding in this action.

**DOCUMENT REQUEST NO. 42**

All documents comprising or including English translations of non-English text in any otherwise responsive document.

**DOCUMENT REQUEST NO. 43**

All documents and things that refer to the subject matter of, or the identification of which is sought by, Plaintiff's First Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company, served simultaneously with these requests, including without limitation all documents identified or referred to in Defendants' responses thereto, and all documents that any or all of Defendants consulted, or upon which any or all of Defendants relied, in framing, compiling or preparing its responses.

**DOCUMENT REQUEST NO. 44**

All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents-in-suit.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

May 1, 2006

518323

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 1, 2006, upon the following in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

*(#3778)*

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com