IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| | ) | |
| QUARK, INC., CREO, INC., EASTMAN KODAK | ) | |
| COMPANY AND KODAK GRAPHIC | ) | REDACTED - PUBLIC VERSION |
| COMMUNICATIONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO COMPEL DISCOVERY

Plaintiff R.R. Donnelley & Sons Company ("RRD") has violated the Court's order requiring document production to be "completed" by August 31, 2006. Rule 16 Scheduling Order at 2 (D.I. 26) ("Scheduling Order"). On August 31, RRD produced a small volume of approximately 18,000 pages of documents; this production failed to include any electronic documents and lacked entire categories of requested documents, despite RRD's written responses acknowledging that such documents would be produced.[1] Since August 31, RRD has supplemented its production with approximately 1,300 additional pages, but only after defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively "Creo") first identified the gaping holes in RRD's production.[2] Although the Court clearly contemplated supplemental document productions as required by Rule 26(e), the spirit and letter of the Scheduling Order clearly envisions a good-faith effort by the parties to produce

---

[1]    Approximately 6,900 pages – roughly 40% – of this initial production consisted merely of the publicly-available filewrappers of the four patents in suit and related patents.

[2]    In stark contrast, Creo has produced approximately 500,000 pages of documents, including documents that originally existed in both electronic and paper form. Creo continues to maintain that the proper scope of accused products should be limited to the Darwin product, and not include other unrelated Kodak products that RRD failed to name in its complaint. Creo's production has been limited to the Darwin product, pending resolution of RRD's Motion to Compel. (D.I. 36).

all known, responsive, non-privileged documents by August 31, 2006. More than eight weeks after this court-imposed deadline and after multiple protests by Creo, RRD continues to treat the Court's order as a mere suggestion rather than a court-imposed deadline. Recently, for instance, RRD's counsel left Creo's counsel a voicemail message indicating that RRD continues to produce documents on a "rolling basis as they are reviewed."

Pursuant to Fed. R. Civ. P. 37(a), Local Rule 37.1 and paragraph 5 of the Rule 16 Scheduling Order, Creo moves for an order compelling RRD to produce all documents responsive to Creo's First Set of Requests for Production of Documents and Things ("Document Requests"). RRD's responses to the Document Requests were insufficient for the reasons discussed both below, and in the letters attached as Exhibits C through E. The bases for this motion are as follows:

1.    On May 26, 2006, Creo served its Document Requests on RRD. *See* Ex. A.

2.    On July 7, 2006, RRD responded to Creo's Document Requests. *See* Ex. B.

3.    On August 31, 2006, RRD produced under 18,000 pages of documents in response to the Document Requests. RRD's initial production failed to include documents responsive to a large number of Creo's Document Requests. *See* Ex. C. Moreover, RRD failed to produce *any* electronic documents, as requested in the Document Requests and as required by the applicable rules and relevant case law. *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 2002 WL 818061, *7 (D. Del. 2002) (requiring production of all responsive e-mails); *see also* Fed. R. Civ. P. 34(a); Fed. R. Evid. 1001.

4.    On September 19, 2006, Creo wrote to RRD and identified the many deficiencies of RRD's document production. Ex. C

5.    Pursuant to Fed. R. Civ. P. 37(a), counsel for Creo and RRD held a meet-and-confer teleconference on September 28, 2006 to discuss the shortcomings of RRD's document production. During this teleconference, counsel for RRD stated that it was presently unable to ascertain why its production of documents failed to comply with so many of Creo's Requests. Counsel for RRD stated that they would attempt to serve a supplemental production remedying these deficiencies within approximately two weeks, and additionally would serve supplemental written confirmation to the extent

- 1 -

documents sought in any of the Requests did not exist. Creo confirmed the substance of this meet-and-confer teleconference on October 9, 2006. Ex. D [3]

6. After allowing RRD the two week period it had requested to serve a supplemental production, Creo sent RRD another letter on October 13, 2006. Ex. E. Creo requested that RRD commit to serving its supplemental production by October 18, 2006.

7. On October 17, 2006, Creo received a small supplemental production of approximately 1,300 pages of documents from RRD. RRD did not provide any further detail about the state of its production efforts. RRD's supplemental production failed to confirm the extent to which documents sought in the Requests do not exist, as promised, and again failed to include any electronic documents. Moreover, RRD's supplemental production failed to satisfy a number of Creo's specific Document Requests:

a. In its Interrogatory responses, RRD acknowledged a license existed with Barco Graphics, NV for at least one of the patents-in-suit. RRD has failed to produce the Barco Graphics license, as requested in Document Request Nos. 31 and 33 and in Creo's letter dated September 19, 2006. *See* Ex. C at 4; *see also* Ex. F at 14.

b. RRD has failed to produce all prior art of record, as sought in Document Request No. 14 and highlighted in Creo's September 19, 2006 letter. *See* Ex. C at 5; *see also* Ex. D at 4. For instance, RRD's initial production contained less than 200 of the 435 prior art references listed in the patents-in-suit. In contrast to a typical patent case, many of these references are not presently available in the official file wrappers of the United States Patent and Trademark Office ("PTO"), and are not otherwise publicly available. *See* Ex. C at 5.

---

[3] The topics of Creo's discovery correspondence and the meet and confer covered insufficiencies in both RRD's responses to Creo's Document Requests and interrogatories. RRD has recently supplemented their interrogatory responses, and Creo is currently evaluating whether RRD has sufficiently satisfied its discovery obligations with its supplemental response.

- 2 -

c    RRD has failed to comply with a variety of Creo's other Document Requests    For instance, RRD failed to produce all communications regarding this lawsuit, the source code for any commercial embodiment of the patents-in-suit, non-privileged documents and things from the internal file wrappers for the patents-in-suit, foreign counterparts, all draft and final annual reports and other SEC filings referencing the patents-in-suit, minutes and presentations from meetings of RRD's board of directors, documents identifying RRD's organizational structure from 1995 to present and documents regarding RRD's document retention or destruction polices.  *See* Ex. A Nos. 1, 6, 12, 13, 19, 35, 36, 47, and 48; Ex. C at 3-8; Ex. D at 2-6.  RRD's supplemental production failed to rectify these deficiencies.

8       This Court's Rule 16 Scheduling Order entered on May 8, 2006 (D.I. 26) specified that "Document Production shall be commenced so as to be completed by August 31, 2006."  Nearly two months have passed since the expiration of this Court's established deadline for the production of documents, and RRD has yet to fully comply with a substantial number of Creo's Document Requests. Even more egregiously, RRD has failed to produce even a single electronic document in contravention of the applicable rules.

9       RRD has been given more than ample time to fully supplement its production of documents.   Moreover, RRD's failure to comply with the discovery schedule established in the Scheduling Order has and will continue to prejudice Creo.  Both the spirit and letter of the Court's Scheduling Order clearly contemplates an orderly production of documents in advance of deadlines such as the deadline to amend pleadings and the deadline to answer all contention interrogatories.  RRD's foot dragging is severely prejudicing Creo's ability to develop its case.

10.      WHEREFORE, Creo respectfully asks the Court to order RRD to comply with its discovery obligations and supplement its production immediately, including compliance with all issues raised in this motion and in prior Creo discovery correspondence.  A Form of Order is attached hereto.

- 3 -

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
David M. Schnorrenberg
Brian M. Koide
Clyde Findley
Amy W. Ray
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC   20004-2595
(212)624-2500

Dated:  November 1, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company and Kodak*
*Graphic Communications Company*

- 4 -

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for the defendants has discussed the subject of the foregoing motion with counsel for plaintiffs, and that the parties have not been able to reach agreement on the issues raised in the motion.

Gregory E. Stuhlman (#4765)
Stuhlman@rlf.com

Dated: November 1, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| | ) | |
| QUARK, INC., CREO, INC., EASTMAN KODAK | ) | |
| COMPANY AND KODAK GRAPHIC | ) | |
| COMMUNICATIONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

WHEREAS, Defendants Creo, Inc., Eastman Kodak Company and Kodak Graphic

Communications Company (collectively "Creo") having moved this Court (the "Motion") for an

order compelling discovery and the production of documents as required by the Court's Rule 16

Scheduling Order (D.I. 26);

WHEREAS, the Court having considered the arguments in support of the Motion, and

good cause having been shown for the relief sought in the Motion;

IT IS HEREBY ORDERED this _____ day of _____, 2006 that

Defendants' Motion is GRANTED.

_____
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on November 1, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA   02110

Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on November 8, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA  02110

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>QUARK, INC., CREO, INC., EASTMAN<br>KODAK COMPANY, and KODAK<br>GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>     Defendants.<br><br>CREO, INC., EASTMAN KODAK<br>COMPANY, and KODAK GRAPHIC<br>COMMUNICATIONS COMPANY,<br><br>     Counterclaim-Plaintiffs,<br><br>     v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>     Counterclaim-Defendants. | C.A No. 06-032-JJF |

**CREO, INC.'S, EASTMAN KODAK COMPANY'S,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS ON
DIRECTED TO R.R. DONNELLEY & SONS COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") request that

R.R. Donnelley & Sons Company ("RRD") produce for inspection and copying documents and

things within RRD's possession, custody or control that are responsive to the requests set forth

1

below at the law office of Crowell & Moring LLP, 1001 Pennsylvania Ave , N.W., Washington,
DC 20004-2595 within thirty (30) days of service.

## DEFINITIONS

The following definitions shall apply:

A.     "RRD," "you," or "your" means R.R. Donnelley & Sons Company and includes
all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships,
or other business entities, and the officers, directors, agents, employees, partners, and all other
persons acting or purporting to act on behalf of or who are subject to the direction or control of
any of the foregoing.

B.     "Creo Defendants" means Creo, Inc., Eastman Kodak Company and Kodak
Graphic Communications Company.

C.     "Patents in Suit" means United States Patent Numbers 6,205,452; 6,327,599;
6,844,940; and 6,952,801.

D.     "Patent Applications" means the applications that led to the issuance of the
patents in suit, and all applications relied upon for priority by such applications, either directly or
indirectly.

E.     "Foreign Counterpart" means any foreign patent application that claims the
benefit of or priority to any Patent Application.

F.     "Darwin" means Creo Darwin.

G     "Variable Digital Printing" means digital printing in which the content of a page
may be varied or in which the number of pages in a document may be varied in a single press
run.

2

H    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

I.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, documents, things, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices. The term "documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

J.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person

K.    "Including" means including, without limitation.

3

L.    "Any" shall be read to mean each and every

M.    The terms "all" and "each" shall be construed as all and each.

N.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

O.    The use of the singular form of any word includes the plural and vice versa.

P.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

Q.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

## INSTRUCTIONS

R.    These requests for production shall be deemed to be continuing as specified in Rule 26(e)(2) of the Federal Rules of Civil Procedure.

S.    The documents requested include all documents in RRD's possession, custody ,or control, or in the possession, custody or control of RRD's present or former attorneys, licensees, officers, directors, employees, agents, representatives, consultants, subsidiaries, affiliates, principals or parents, or any investigators or any other person acting on behalf of RRD or under the direction or control of RRD or its attorneys or agents, wherever such documents may be located.

T.    Each request for documents seeks production of each document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

4

To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided.

U.    In the event that RRD claims privilege with respect to any documents requested, RRD shall state the specific ground for each such claim of privilege and shall set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the document; each person to whom such requested document was distributed or communicated; a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times, If the claim of privilege applies only to a portion of the document, produce all portions of the document to which the claim does not apply.

V.    Where any document requested has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction

W.    Where any requested document is not in RRD's possession, custody, or control, state the name of the persons who have possession, custody, or control of such document, If such document was in RRD's possession, custody, or control in the past but is no longer in RRD's possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

X.    If subsequent to the date RRD's produce documents responsive to these document requests, RRD discovers or receives additional documents that are responsive to these requests,

5

promptly produce all such additional documents to the full extent required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.

## REQUESTS FOR PRODUCTION

1.    All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit.

2.    All documents and things concerning the patents in suit, including all communications between RRD and any person regarding the patents in suit.

3.    All documents and things concerning the conception of the claimed subject matter of the patents in suit.

4.    All documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit.

5.    All documents and things concerning the research or development of the subject matter claimed or disclosed in the patents in suit.

6.    All documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit.

7.    All documents in the files of named inventors of the patents in suit relating to variable digital printing dated prior to 2002.

8.    All publications authored or co-authored by at least one of the inventors of the patents in suit relating to variable digital printing.

9.    All documents and things concerning any prior art search relating to the patents in suit or the patent applications.

6

10.    All documents and things concerning any decision to file the patent applications.

11.    All documents and things concerning the preparation of the patent applications.

12.    All documents and things concerning prosecution of the patent applications.

13.    All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts.

14.    All prior art to the patents in suit, and all documents and things concerning the same.

15.    All documents and things concerning any publications describing the subject matter disclosed or claimed in the patents in suit.

16.    All documents and things concerning the making of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

17.    All documents and things concerning the sale, offer for sale, commercialization, attempted commercialization, or use of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

18.    All documents and things concerning the advertisement or promotion of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

19.    All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit

7

20. All documents and things that refer or relate to whether:

    (a)    there was one or more long-felt need(s) for the invention(s) claimed in the patents in suit;

    (b)    the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents in suit;

    (c)    the invention(s) claimed in the patents in suit satisfied one or more long felt need(s);

    (d)    commercial success the invention(s) claimed in the patents in suit; and

    (e)    the industry has recognized the significance of the invention(s) of the patents in suit.

21. All documents and things concerning RRD's purported ownership of the patents in suit.

22. All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the Patents in Suit] "

23. All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the Patents in Suit]."

24. All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the Patents in Suit] is, has been, and continues to be willful

8

and deliberate."

25.     All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the Patents in Suit]."

26.     All documents and things concerning construction of the claims of the patents in suit.

27.     All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002 and ISO 16612-1 and ANSI/CGATS.20-2002.

28.     All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same.

29.     All documents and things concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

30.     All documents and things concerning any oral or written opinions concerning the patents in suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/ unenforceability, patentability, scope or interpretation of the patents in suit.

31.     All documents and things concerning any royalties collected from RRD from any license related to the patents in suit.

9

32.    All documents and things concerning any discussions, license negotiations, or business negotiations between RRD and any of the Creo Defendants, including discussions and negotiations relating to the patents in suit.

33.    All documents concerning licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing.

34.    All communications between RRD and the Creo Defendants regarding the patents in suit.

35.    All draft and final versions of RRD's annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing.

36.    All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit.

37.    All documents and things that refer to RRD's earliest knowledge of Darwin.

38.    All documents and things that refer to RRD's earliest knowledge of the operation of Darwin.

39.    All documents and things concerning the value of the patents in suit.

40.    All documents and things concerning RRD providing actual notice of the patents in suit to Creo.

41.    All documents and things concerning RRD products covered by the claims of the patents in suit.

10

42.    All documents and things concerning marking with the numbers of the patents in suit.

43.    All documents and things concerning the requirements of any person to mark any product with the numbers of the patents in suit.

44.    All documents and things concerning the conduct or performance of any person to mark the product with the numbers of the patents in suit.

45.    All documents and things concerning RRD's policies for policing or monitoring the marking of any person authorized to practice the claims of the patents in suit.

46.    All documents and things that refer to the subject matter of, or the identification of which is sought by, Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted, or upon which RRD relied, in framing, compiling or preparing its responses.

47    Documents sufficient to identify, describe, and determine the organizational structure of RRD as defined from 1995 to present, including the identity of their officers and directors.

48.    All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

49.    All documents comprising or including English translations of non-English text in any otherwise responsive document

11

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated: May 26, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 26, 2006, upon the following in the manner indicated:

### BY HAND

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

### BY FEDERAL EXPRESS

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

_____
Gregory E. Stuhlman (#4765)

Dated: May 26, 2006

13

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 06-032-JJF |
| QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Counterclaim-Defendant. | ) ) ) | |

**R.R. DONNELLEY & SONS COMPANY'S RESPONSES TO
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND THINGS TO DEFENDANTS CREO, INC., EASTMAN KODAK COMPANY,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff

R.R. Donnelley & Sons Company ("Plaintiff") responds to Defendants Creo, Inc.'s, Eastman

Kodak Company's, and Kodak Graphic Communications Company's (collectively

"Defendants") First Set of Requests for the Production of Documents and Things to Plaintiff as

follows:

## GENERAL OBJECTIONS

Each of Plaintiff's responses to Defendants' First Set of Requests for the Production of Documents and Things is subject to, and incorporates, the following General Objections. Plaintiff incorporates each of these General Objections into its specific responses to each of Defendants' requests, whether or not each such General Objection is expressly referred to in a specific response. Plaintiff's responses are made without waiving any of these General Objections.

1.      Plaintiff objects to Defendants' requests to the extent they seek to impose requirements or obligations on Plaintiff in addition to, beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure or the Local Civil Rules of the District of Delaware.

2.      Plaintiff objects to these requests to the extent they call for production of confidential information prior to issuance of a suitable protective order. Until a protective order is issued, Plaintiff will produce documents and things on "outside counsel of record only" basis as set forth by Local Rule 26.2.

3.      Plaintiff objects to these requests as unduly burdensome, overly broad and oppressive to the extent they are not reasonably calculated to lead to the discovery of admissible evidence, or seek documents that are not relevant to or are outside the scope of the claims, counterclaims or defenses of any party.

4.      Plaintiff objects to these requests as overly broad and unduly burdensome to the extent they seek production of documents and things that are not in the possession, custody or control of Plaintiff, and therefore, exceed the proper scope of discovery. Plaintiff will produce documents in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of the District of Delaware, located as the result of a reasonable search.

2

5.    Plaintiff objects to these requests to the extent they seek discovery of information subject to the attorney-client privilege, the attorney work product immunity and/or any other privileges or exemptions from production. Plaintiff will exchange with Defendants a Schedule of Withheld Documents at a time agreed to by counsel. Further, to the extent any privileged document is inadvertently produced, Plaintiff reserves all of its privileges with respect to such document, its right to object to inspection and copying of the document, its right to request that such document be returned, and its right to object to the admissibility of such document.

6.    Plaintiff objects to those requests that seek "all" information or documents that refer or relate to a particular subject to the extent it purports to require Plaintiff to seek information or documents from each individual within Plaintiff's organization. Plaintiff objects to conducting a search of this breadth on the grounds of undue burden and expense and not being reasonably calculated to lead to the discovery of admissible evidence. In searching for pertinent information and documents, Plaintiff will make an inquiry of all persons who are reasonably likely to have such information or documents.

7.    Plaintiff objects to these requests as vague and ambiguous to the extent they include terms that are undefined. Plaintiff in its response will assume a reasonable meaning for each such term.

8.    Plaintiff objects to these requests to the extent they call for confidential information of third parties that cannot be disclosed by Plaintiff because of contractual obligation.

9.    Plaintiff objects to these requests to the extent that they seek publicly available information that is equally accessible to Defendants as it is to Plaintiff.

3

10.    Plaintiff objects to each request that is substantially duplicative of another request.

11.    Plaintiff expressly reserves the right to supplement these responses under Rule 26(e)(2), Fed. R. Civ. P., as necessary when discovery has further progressed.

12.    Plaintiff objects to these requests as being overly broad, unduly burdensome and oppressive to the extent they are unlimited in time.

13.    Plaintiff objects to Defendants' Definition A as vague and overly broad to the extent that it includes any corporation, business or entity other than the named Plaintiff in this action.

14.    Plaintiff objects to Defendants' Instruction P as unduly burdensome and oppressive to the extent it seeks to impose any requirement or obligation on Plaintiff beyond the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules, or this Court's Scheduling Order in this action.

## RESPONSES TO DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION 1

All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit.

### RESPONSE TO REQUEST FOR PRODUCTION 1

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

4

## REQUEST FOR PRODUCTION 2

All documents and things concerning the patents in suit, including all communications between RRD and any person regarding the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 2

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. Plaintiff further objects to this request to the extent that it seeks production of patents or published patent applications that are publicly available.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 3

All documents and things concerning the conception of the claimed subject matter of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 3

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 4

All documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 4

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 5

All documents and things concerning the research or development of the subject matter claimed or disclosed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 5

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 6

All documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 6

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 7

All documents in the files of named inventors of the patents in suit relating to variable digital printing dated prior to 2002.

## RESPONSE TO REQUEST FOR PRODUCTION 7

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 8

All publications authored or co-authored by at least one of the inventors of the patents in suit relating to variable digital printing.

## RESPONSE TO REQUEST FOR PRODUCTION 8

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent it seeks production of documents and things that are publicly available.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 9

All documents and things concerning any prior art search relating to the patents in suit or the patent applications.

## RESPONSE TO REQUEST FOR PRODUCTION 9

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 10

All documents and things concerning any decision to file the patent applications.

## RESPONSE TO REQUEST FOR PRODUCTION 10

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 11

All documents and things concerning the preparation of the patent applications.

## RESPONSE TO REQUEST FOR PRODUCTION 11

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

8

## REQUEST FOR PRODUCTION 12

All documents and things concerning prosecution of the patent applications.

## RESPONSE TO REQUEST FOR PRODUCTION 12

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 13

All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts.

## RESPONSE TO REQUEST FOR PRODUCTION 13

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 14

All prior art to the patents in suit, and all documents and things concerning the same.

## RESPONSE TO REQUEST FOR PRODUCTION 14

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the

action nor reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff further

objects to this request to the extent that it requires the production of documents that are immune

from discovery under the attorney-client privilege and/or work product immunity.  Plaintiff also

objects to this request on the basis that the term "prior art" has not been defined by Defendants

and therefore is vague and indefinite.

Subject to its general objections and the foregoing specific objections, Plaintiff

will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 15

All documents and things concerning any publications describing the subject
matter disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 15

Plaintiff objects to this request as overly broad, unduly burdensome and as calling

for documents and things that are neither relevant to the claims, counterclaims or defenses in the

action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will

produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 16

All documents and things concerning the making of any apparatus, product,
device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 16

Plaintiff objects to this request as overly broad, unduly burdensome and as calling

for documents and things that are neither relevant to the claims, counterclaims or defenses in the

action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 17

All documents and things concerning the sale, offer for sale, commercialization, attempted commercialization, or use of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 17

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 18

All documents and things concerning the advertisement or promotion of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 18

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 19

All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 19

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that "concerning the claimed subject matter of the patents in suit" is vague and ambiguous.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 20

All documents and things that refer or relate to whether:

(a)    there was one or more long-felt need(s) for the invention(s) claimed in the patents in suit;

(b)    the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents in suit;

(c)    the invention(s) claimed in the patents in suit satisfied one or more long felt need(s);

(d)    commercial success the invention(s) claimed in the patents in suit; and

(e)    the industry has recognized the significance of the inventions of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 20

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 21

All documents and things concerning RRD's purported ownership of the patents in suit.

12

## RESPONSE TO REQUEST FOR PRODUCTION 21

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 22

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the Patents in Suit]."

## RESPONSE TO REQUEST FOR PRODUCTION 22

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 23

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the Patents in Suit]."

## RESPONSE TO REQUEST FOR PRODUCTION 23

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 24

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the Patents in Suit] is, has been, and continues to be willful and deliberate."

## RESPONSE TO REQUEST FOR PRODUCTION 24

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 25

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the Patents in Suit]."

## RESPONSE TO REQUEST FOR PRODUCTION 25

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

14

**REQUEST FOR PRODUCTION 26**

All documents and things concerning construction of the claims of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 26**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 27**

All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002 and ISO 16612-1 and ANSI/CGATS.20-2002.

**RESPONSE TO REQUEST FOR PRODUCTION 27**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. Plaintiff further objects to this request to the extent that documents are publicly available and equally available to Defendants.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 28**

All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same.

15

## RESPONSE TO REQUEST FOR PRODUCTION 28

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 29

All documents and things concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 29

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 30

All documents and things concerning any oral or written opinions concerning the patents in suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

16

## RESPONSE TO REQUEST FOR PRODUCTION 30

Plaintiff objects to this request because it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

## REQUEST FOR PRODUCTION 31

All documents and things concerning any royalties collected from RRD from any license related to the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 31

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 32

All documents and things concerning any discussions, license negotiations, or business negotiations between RRD and any of the Creo Defendants, including discussions and negotiations relating to the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 32

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 33

All documents concerning licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing.

## RESPONSE TO REQUEST FOR PRODUCTION 33

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence, especially as it pertains to "all patent license agreements in the field of Variable Digital Printing." Plaintiff

further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 34

All communications between RRD and the Creo Defendants regarding the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 34

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 35

All draft and final versions of RRD's annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing.

## RESPONSE TO REQUEST FOR PRODUCTION 35

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 36

All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit.

## RESPONSE TO REQUEST FOR PRODUCTION 36

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 37

All documents and things that refer to RRD's earliest knowledge of Darwin.

## RESPONSE TO REQUEST FOR PRODUCTION 37

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 38

All documents and things that refer to RRD's earliest knowledge of the operation of Darwin.

## RESPONSE TO REQUEST FOR PRODUCTION 38

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

19

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 39

All documents and things concerning the value of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 39

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 40

All documents and things concerning RRD providing actual notice of the patents in suit to Creo.

## RESPONSE TO REQUEST FOR PRODUCTION 40

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 41

All documents and things concerning RRD products covered by the claims of the patents in suit.

20

## RESPONSE TO REQUEST FOR PRODUCTION 41

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 42

All documents and things concerning marking with the numbers of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 42

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 43

All documents and things concerning the requirements of any person to mark any product with the numbers of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 43

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 44

All documents and things concerning the conduct or performance of any person to mark the product with the numbers of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 44

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 45

All documents and things concerning RRD's policies for policing or monitoring the marking of any person authorized to practice the claims of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 45

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 46

All documents and things that refer to the subject matter of, or the identification of which is sought by, Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted, or upon which RRD relied, in framing, compiling or preparing its responses.

## RESPONSE TO REQUEST FOR PRODUCTION 46

Plaintiff objects to this request as vague, indefinite, and unduly burdensome. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 47

Documents sufficient to identify, describe, and determine the organizational structure of RRD as defined from 1995 to present, including the identity of their officers and directors.

## RESPONSE TO REQUEST FOR PRODUCTION 47

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 48

All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

## RESPONSE TO REQUEST FOR PRODUCTION 48

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 49

All documents comprising or including English translations of non-English text in any otherwise responsive document.

## RESPONSE TO REQUEST FOR PRODUCTION 49

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

23

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (1014)
Rodger D. Smith II (3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com

*Attorneys for R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

July 7, 2006

527810

24

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on July 7, 2006, I caused true

and correct copies of the foregoing to be served in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595


_____
Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com

# EXHIBIT C

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



Brian M. Kolde
202-624-2931
BKolde@crowell.com

September 19, 2006

3477:ng
025140.0000051

**VIA ELECTRONIC MAIL**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jim:

I write in regard to R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set of Requests for Production of Documents and Things served by Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Creo"), and RRD's subsequent production of documents on August 31, 2006. First, I seek clarification of several objections contained in RRD's written response to Creo's Requests for Production. In some cases, it appears that RRD may be withholding relevant information based on objections that lack merit. Second, I write to object to the incomplete production of documents by RRD in response to Creo's Requests. I address the objections and production deficiencies below.

## I.    RRD's General and Specific Objections

### A.    General Objection Nos. 3, 8, 10, 12 & 13

All of RRD's responses to Creo's document requests, except for its response to Request for Production No. 30, are made "subject to its general objections." It is unclear whether documents have been withheld from production or not collected based on these general objections. In particular, it is unclear whether documents are being withheld or not collected based on the following General Objections that appear to lack any merit:

- No. 3, objecting to the requests as "unduly burdensome, overly broad and oppressive to the extent they are not reasonably calculated to lead to the discovery of admissible evidence, or seek documents that are outside the scope of the claims, counterclaims or defenses of any party";

- No. 8, objecting to the requests "to the extent they call for confidential information of third parties that cannot be disclosed by Plaintiff because of contractual obligation";

- No. 10, objecting "to each request that is substantially duplicative of another request";

- No. 12, objecting to the requests "as being overly broad, unduly burdensome and oppressive to the extent they are unlimited in time"; and

- No. 13, objecting to "Defendants' Definition A as vague and overly broad to the extent that it includes any corporation, business or entity other than the named Plaintiff in this action."

We ask that RRD clarify whether it has withheld any documents or narrowed its search for documents based on the above General Objections. If it has, we request that RRD promptly produce any withheld or uncollected documents. If no documents have been withheld and RRD's search for responsive documents has not been narrowed, we request confirmation that RRD will not use these objections in the future as a ground for not supplementing its production pursuant to Federal Rule of Civil Procedure 26(e) in the event RRD learns of additional responsive documents.

**B.    Specific Objections in Request for Production Nos. 2, 5, 6, 7, 8, 13, 14, 15, 16, 17, 18, 19, 27, 28, 29, 33, 35, 36, 39, 46 & 47**

RRD's response to document requests 2, 5, 6, 7, 8, 13, 14, 15, 16, 17, 18, 19, 27, 28, 29, 33, 35, 36, 39, 46 and 47 have some form the same boilerplate objection about overbreadth, undue burden, vagueness, indefiniteness, and relevancy. By way of example, RRD objects to Request for Production No. 2 "as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence." The objections to the other requests cited above are either identical or very similar. RRD makes its response to each of the requests cited above "subject to" these "foregoing specific" objections.

We ask that RRD clarify whether it has withheld any documents based on the above "specific objections." If it has, we request that RRD promptly produce any

withheld or uncollected documents. If no documents have been withheld, we request confirmation that RRD will not use the above "specific objections" in the future as a ground for not supplementing its production pursuant to Federal Rule of Civil Procedure 26(e) in the event RRD learns of the existence of additional documents responsive to the above requests.

## II.    RRD's Incomplete Production of Documents

### A.    Failure to Produce Electronic Documents

RRD neglected to produce electronic documents, as requested by Creo pursuant to Federal Rule of Civil Procedure 34(a). Creo explicitly requested the production of electronic documents in its Requests for Production. In the Requests, Creo defined "Communication" to include "e-mail", while it defined "Document" to include "electronic mail, drawings and information in computer-readable format…." RRD's production failed to comply. Further, Instruction T to the Requests stated, "To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided." Aside from hard-copies of a few e-mails from the mid-1990s, RRD failed to produce e-mails or other electronic documents, as requested by Creo. Such a failure to comply is a stark violation of the applicable rules. *See Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 2002 WL 818061, *7 (D. Del. 2002) (requiring production of all responsive e-mails); *see also* Federal Rule of Civil Procedure 34(a); Federal Rule of Evidence 1001.

Moreover, RRD supplied photocopies of two floppy disks (RRD012755 and RRD015021), but only appears to have supplied the contents of the disk pictured in RRD012755. We ask that RRD promptly supplement its production with responsive electronic documents, including all responsive e-mails, and also provide the contents of the floppy disk pictured in RRD015021.

### B.    Inconsistent Bates Labeling

RRD's failed to utilize a consistent system of Bates labeling the documents produced to Creo on August 31, 2006. A substantial portion of RRD's production – 373 pages total – failed to include any Bates number at all. RRD is required to produce documents in a manner consistent with efficient litigation; its failure to utilize a consistent Bates labeling system failed to satisfy this responsibility. Creo asks that RRD promptly supplement its production by reproducing, with Bates numbering, all pages that are currently unlabeled.

### C.    Request for Production No. 1

RRD failed to provide any of the documentation requested in Request for Production No. 1. In that Request, Creo asked for "All documents and things

concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit." RRD produced no such documentation or communications, despite the fact that RRD released at least one press release regarding the lawsuit, on January 17, 2006.[1] We, therefore, request that RRD promptly supplement its production with all such documents and things regarding this lawsuit.

### D.    Requests for Production Nos. 2, 31, and 33

In Requests for Production Nos. 2, 31, and 33, Creo sought production of all documents and things concerning the patents-in-suit, "including all communications between RRD and any person regarding the patents in suit," "any royalties collected from RRD from any license related to the patents in suit," or "licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing." RRD, in its Responses to Creo's First Set of Interrogatories, acknowledged that it had entered "a license to at least one of the patents-in-suit [with] Barco Graphics NV." *See* Response to Interrogatory No. 5. RRD further listed 49 separate instances of correspondence "regarding licensing at least some of the patents-in-suit," with Creo, Kodak, and other third parties. *Id.*

Despite these admissions, RRD failed to produce its license with Barco Graphics, documentation regarding any royalties received from said license, or any of the license-related correspondence with third parties other than Creo or Kodak. Creo clearly requested these documents in the above-numbered Requests for Production. We ask that RRD promptly supplement its production with all documents or things regarding the Barco Graphics license, as well as all documentation of the correspondence identified by RRD in its Response to Creo's Interrogatory No. 5, as well as any other licensing-related correspondence, documents, or things subsequently discovered or identified by RRD.

### E.    Request for Production No. 6

RRD's production of documents failed to satisfy Request for Production No. 6. Creo sought production of "All documents and things concerning any commercial embodiments described in the patents in suit, *including any source code...*" (emphasis added). While RRD apparently produced some documentation regarding its variable data printing software, RRD failed to produce any corresponding source code. We, therefore, request that RRD promptly supplement its production by providing Creo with the source code for all commercial embodiments described in the patents-in-suit.

---

[1]    *See* http://www.rrdonnelley.com/wwwRRD/News/2006/2006_01_17.asp.

**F.    Request for Production No. 12**

Creo requested that RRD produce "All documents and things concerning prosecution of the patent applications." RRD has produced the official file wrappers for each of the four patents-in-suit. However, it does not appear that RRD produced non-privileged documents from the internal file wrappers for the patents-in-suit. Therefore, Creo requests that RRD promptly supplement its production by including all non-privileged documents or things contained in RRD's internal file wrappers for the four patents-in-suit, as well as any other non-privileged documents or things concerning the prosecution of the patent applications. To the extent RRD believes that no such non-privileged documents exist, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered. Obviously, with respect to any document RRD withholds on the ground of privilege, we expect to see its description on a privilege log that RRD will provide.

**G.    Request for Production No. 13**

In Request for Production No. 13, Creo sought "All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts." RRD failed to produce any such foreign counterpart, the file wrapper for any foreign patent application, or any other related documentation. Creo asks that RRD promptly supplement its production by providing all such foreign counterparts and any related documentation. To the extent RRD believes that no such documents exist, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

**H.    Request for Production No. 14**

RRD's production of documents also failed to satisfy Request for Production No. 14. Creo sought the production of "All prior art to the patents in suit, and all documents and things concerning the same." While RRD did produce some documents that could potentially be considered prior art, RRD's production was nevertheless woefully deficient. The four patents-in-suit alone list over 435 different prior art references; it appears that RRD produced fewer than 200 of these references. At a minimum, RRD should have produced all prior art of record. The failure to sufficiently produce prior art of record is particularly troubling as Creo has learned that the official PTO copy of file wrapper is lacking numerous references. Therefore, Creo requests that RRD promptly supplement its production by including all prior art of record, as well as any related documents or things, to the four patents-in-suit.

## I.     Request for Production No. 19

Creo requested that RRD produce "All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit." RRD appears to have produced only third-party, published reports of such industry meetings, etc., along with a few spreadsheets reflecting RRD's budget for such events. Creo, therefore, requests that RRD promptly supplement its production by including all such documents or things. To the extent RRD believes that it does not have any other such documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

## J.     Request for Production Nos. 27 and 28

In Requests 27 and 28, Creo sought "All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002," and "All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same." Aside from the final, public version of the ANSI/CGATS.20-2002 standard, RRD produced no documentation regarding the ISO or ANSI/CGATS standards-making initiatives, nor any other standards-making process. We find RRD's anemic production particularly lacking given that Riyaz Asaria, a RRD employee at the time, served as co-chair to CGATS Subcommittee 6 Task Force 2, which prepared ANSI/CGATS.20-2002, Creo requests that RRD promptly supplement its production by including all documentation regarding the ISO and ANSI/CGATS standards-making processes, in addition to any other standards-making process, including but not limited to documentation in the possession, custody, or control of Riyaz Asaria.

## K.     Request for Production No. 30

In Request for Production No. 30, Creo sought production of all documents and things "concerning" any oral or written opinions regarding the patents in suit. RRD has refused to produce any such documents, stating categorically that all such documents "are immune from discovery under the attorney-client privilege and/or work product immunity." *See* RRD Response to Request for Production 30. But, in fact, Creo has sought production of a wide-variety of potential documents existing outside the scope of the attorney-client or work product privileges. For example, Creo seeks any non-privileged documents relied upon or referenced in any such oral or written opinion. Moreover, the request is not limited to opinions of counsel, but rather seeks the production of opinions of non-lawyers and documents related thereto.

We, therefore, seek clarification from RRD that it has not withheld from production any non-privileged, responsive documents such as the types discussed above. To the extent, RRD has withheld such documents, they should be promptly produced. To the extent RRD believes that it does not have any non-privileged documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive non-privileged documents in the event that the existence of such documents is subsequently discovered. Obviously, with respect to any document RRD withholds on the ground of privilege, Creo expects to see its description on a privilege log that will be supplied by RRD.

### L.    Request for Production No. 35

RRD's production failed to satisfy Request for Production No. 35, through which Creo sought "All draft and final versions of RRD's annual reports, quarterly reports and other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing." RRD did not produce any such draft or final reports. Therefore, Creo request that RRD promptly supplement its production by including any such draft or final reports. To the extent RRD believes that it does not have any such draft or final reports in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

### M.    Request for Production No. 36

In Request for Production No. 36, Creo requested "All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit." RRD does not appear to have produced any minutes or records of any meeting of RRD's board of directors or other committees or groups. Creo requests that RRD promptly supplement its production by including all such minutes, presentations, materials, or other records, to the extent they exist. To the extent RRD believes that it does not have any such documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

### N.    Request for Production No. 47

Creo sought the production of "Documents sufficient to identify … the organizational structure of RRD … from 1995 to present, including the identity of their officers and directors," through Request for Production No. 47. RRD does not appear to have supplied any organizational charts, or other documents sufficient to show the organizational structure of RRD. Creo therefore requests that RRD

promptly supplement its production by including documents sufficient to show the organizational structure of RRD from 1995 to the present, including the identity of officers and directors.

### O.    Request for Production No. 48

RRD also failed to comply with Request for Production No. 48, which requested "All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail." RRD failed to provide any such policies, or any other documents or things referring to RRD's document retention or destruction practices. Therefore, Creo asks that RRD promptly supplement its production by including all documents and things referring to any document retention or destruction policy.

Creo asks that you promptly clarify whether RRD has withheld any documents on the basis of the general and specific objections and promptly correct all of the production deficiencies, as discussed above. Creo intends to file a motion to compel should RRD fail to supplement its production, if necessary. However, we would prefer to reach an amicable resolution without the court's involvement, and propose that counsel for both sides meet-and-confer regarding these issues, pursuant to Federal Rule of Civil Procedure 37(a). Please call me at your earliest convenience to discuss these discovery issues.

Best regards,

Brian M. Koide

cc:  Frederick L. Cottrell III

# EXHIBIT D



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 • p202 624-2500 • f202 628-5116

Brian M. Koide
202-624-2931
BKoide@crowell.com

October 9, 2006

3477:ng
025140.0000051

**VIA FACSIMILE**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

> Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jim:

I write to confirm the substance of our September 28, 2006 meet and confer teleconference regarding R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set of Requests for Production of Documents and Things and the First Set of Interrogatories served by Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Creo").

In its letters of September 6 and 19, Creo has identified improper objections and deficiencies in RRD's discovery responses. As noted below and in response to Creo's particular objections and responses, RRD acknowledged that it will supplement its discovery responses ("Supplemental Responses") by approximately October 12, 2006. RRD confirmed that it could not definitively commit to supplementing by that date, although it would make a good faith effort to do so.

## I.    RRD's Production of Documents

### A.    General Status of RRD's Production

On August 31, 2006, RRD produced approximately 17,248 pages of documents. To date, RRD has not provided any additional supplemental productions.

Bradford J. Badke, Esq.
October 9, 2006
Page 2

### B.    General and Specific Objections

In RRD's July 7, 2006 written response to Creo's Requests for Production, RRD asserted several general and specific objections to Creo's Requests. During the meet and confer, RRD clarified that it – to date – has not withheld any responsive documents on the basis of any of these general or specific objections. Moreover, RRD clarified that it did not narrow its search for documents in anyway based on any of these general or specific objections. Creo maintains its position in its September 19, 2006 letter that certain of these objections are improper and unsupported by the law. RRD represented that its Supplemental Responses would clarify that RRD has not withheld documents or narrowed searches on the basis of these objections.

### C.    Failure to Produce Electronic Documents

RRD's initial production of documents on August 31, 2006 did not include electronic documents. RRD stated during the meet and confer that all responsive, non-privileged electronic documents will be produced, and that RRD believes that the electronic documents will be of a "manageable" volume. For instance, RRD estimated that the volume of electronic documents would be less than the equivalent of 50 boxes of documents. RRD confirmed that it would produce these documents in its Supplemental Production, and that the form of the production will be in Single Page type IV tiffs with an image loadfile, or a similar load file clearly depicting document breaks.

In its initial production, RRD supplied photocopies of two floppy disks (RRD012755 and RRD015021). Please confirm in writing whether the electronic documents stored on both disks have been produced, and, if so, please identify by Bates number range the documents contained on these disk. RRD stated that it would produce the documents contained on the both disks to the extent they have not been produced. RRD represented that it would produce or identify these documents in its Supplemental Responses.

### D.    Request for Production No. 1

RRD's initial production of documents did not include "All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit." RRD stated during the meet and confer that it is investigating why all such documents were not produced. RRD will produce any such non-privileged, responsive documents it finds. If RRD does not find any such documents, it will confirm in writing that none exist. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 3

### E.    Requests for Production Nos. 2, 31, and 33

In Requests for Production Nos. 2, 31, and 33, Creo sought communications involving the patents-in-suit, including the production of all documents and things concerning the licensing of the patents-in-suit. In response to Interrogatory No. 5, RRD has acknowledged the existence of at least one license for at least one of the patents-in-suit and further identified 49 separate instances of correspondence between RRD and other parties concerning the licensing of the patents-in-suit. Nevertheless, RRD did not produce either this license or the 49 instances of correspondence in its initial August 31, 2006 production. RRD stated during the meet and confer that it is investigating to see why these documents were not produced, and will produce all such non-privileged documents in its Supplemental Responses.

### F.    Request for Production No. 6

RRD's initial production of documents included only a small number of documents discussing RRD's commercial embodiments of the patents-in-suit, and did not include any source code from such embodiments. RRD stated during the meet and confer that it does not believe any source code, or other non-produced documents responsive to this Request exist.  Therefore, RRD does not anticipate supplementing its production in response to this Request. If RRD finds any additional documents or source code, they will be produced to the extent they are not privileged.  If RRD does not uncover any other documents or source code responsive to this Request, it will so confirm in its Supplemental Responses.

### G.    Request for Production No. 12

Creo requested that RRD produce "All documents and things concerning prosecution of the patent applications." While RRD produced the official file wrappers for each of the four patents-in-suit in its initial production, it did not produce non-privileged documents from the internal versions of file wrappers for the patents-in-suit (including any internal versions of file wrappers in possession of either RRD or its outside prosecution counsel).  RRD is verifying whether any such documents exist, and will produce such documents to the extent they are not privileged.  During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search, and will confirm whether said firm(s) have any responsive documents.  RRD intends to produce responsive documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 4

### H.    Request for Production No. 13

In Request for Production No. 13, Creo sought "All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts." RRD's initial production did not include any such documents. During the meet and confer, RRD was unable to confirm whether any such non-privileged documents exist, and was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses. RRD will also confirm that RRD's domestic and international patent counsel have been contacted to determine if said counsel has any responsive documents in its possession, and will produce any such responsive, non-privileged documents.

### I.    Request for Production No. 14

Creo requested the production of "All prior art to the patents in suit, and all documents and things concerning the same." RRD produced some prior art documents, but did not produce all prior art of record for the four patents-in-suit. Many of these non-produced references are otherwise unavailable to Creo. During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD confirmed that it is not currently withholding any such documents, and will verify whether other responsive documents exist. RRD will check with its patent prosecution counsel to see if said counsel may have any responsive documents in its possession. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### J.    Request for Production No. 19

Creo requested that RRD produce "All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit." RRD produced only a limited number of such documents in its initial production. RRD was unable to confirm during the meet and confer whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 5

### K.    Request for Production Nos. 27 and 28

In Requests 27 and 28, Creo sought documents regarding the ISO 16612-1 and ANSI/CGATS.20-2002 standards-making initiatives. RRD produced only one such document in its initial production. During the meet and confer, RRD was unable to confirm whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### L.    Request for Production No. 30

In Request for Production No. 30, Creo sought production of all documents and things "concerning" any oral or written opinions regarding the patents in suit. RRD objected to this Request, on the grounds that all such documents "are immune from discovery under the attorney-client privilege and/or work product immunity." See RRD Response to Request for Production 30. Creo maintains its assertion that non-privileged documents responsive to this request could exist, and therefore that the categorical nature of RRD's objection is improper. RRD has agreed to clarify its position. RRD was unable to confirm whether any such responsive, non-privileged documents exist, and will verify whether such documents do in fact exist. Any such documents will be produced by RRD. RRD intends to make this clarification, confirmation, and production (if necessary) in its Supplemental Responses.

### M.    Request for Production No. 35

Creo requested "All draft and final versions of RRD's annual reports, quarterly reports and other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing." RRD did not produce any such reports in its initial production. RRD was unable to confirm during the meet and confer whether any responsive documents exist, and will verify and produce any such non-privileged documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### N.    Request for Production No. 36

In Request for Production No. 36, Creo requested "All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit." RRD did not produce any such documents in its initial production, and was unable to confirm during the meet and confer whether any such documents existed. RRD will verify whether any responsive documents exist, and will produce any such non-privileged documents it finds. RRD intends to produce these

Bradford J. Badke, Esq.
October 9, 2006
Page 6

documents, or in the alternative confirm their non-existence or unavailability, in its
Supplemental Responses.

### O.    Request for Production No. 47

Creo requested the production of "Documents sufficient to identify ... the
organizational structure of RRD ... from 1995 to present, including the identity of
their officers and directors," through Request for Production No. 47. RRD did not
produce any such organizational chart or other documentation in its initial
production. RRD will confirm why no organizational charts or other documents
were produced, and will produce such documents. RRD intends to produce these
documents in approximately two weeks.

### P.    Request for Production No. 48

Creo requested "All documents and things that refer to RRD's policies and
practices, whether formal or informal, with respect to document retention or
document destruction, including the retention or destruction of electronic mail."
RRD did not provide any such documents in its initial production. RRD was unable
to confirm whether any such documents exist during the meet and confer. RRD will
verify whether any responsive documents exist, and will produce any such non-
privileged documents it finds. RRD intends to produce these documents, or in the
alternative confirm their non-existence or unavailability, in its Supplemental
Responses.

### Q.    Inconsistent Bates Labeling

In its September 19, 2006 letter, Creo indicated that RRD had failed to Bates
number several documents in its August 31, 2006 production. Upon further review
by Creo, it appears that all documents produced by RRD were in fact Bates
numbered. The error appears to have been the result of a misunderstanding by
Creo's document production vendor. Creo hereby confirms that no supplementation
by RRD is necessary in this regard.

## II.    RRD's Interrogatory Responses

### A.    Identification of Persons with Knowledge

Creo's Interrogatories requested that RRD "[s]et forth and identify the source
of each answer by identifying each person whom you know has personal knowledge
of the facts or information forming the basis of the answer that you gave." RRD
only provided the name of one such individual in its response to Interrogatory No. 1.
RRD stated that while it cannot guarantee it will be able to provide the names of

Bradford J. Badke, Esq.
October 9, 2006
Page 7

such individuals for each Interrogatory, it will so supplement its response to the
extent possible in its Supplemental Responses.

### B.    RRD's General Objection No. 6

In General Objection No. 6, RRD objected to generating "information that
does not exist, is not used, or is not generated by Plaintiff in the ordinary course of
business." Creo stated that it believed this objection to be improper, as
interrogatory responses require the disclosure of the knowledge of the corporation
and its employees; such knowledge cannot be withheld on the ground that is does
not exist or is not used or generated "in the ordinary course of business." Creo
maintains its position that this objection is improper and unsupported by the law.
RRD stated during the meet and confer that it has not withheld any information to
date on the basis of this objection. RRD agreed to confirm that it is not withholding
any information on this basis, but stated that RRD intends to preserve this
objection for future Interrogatory responses. RRD intends to make this
confirmation in writing in its Supplemental Responses.

### C.    RRD's General Objection No. 7

RRD objected to Creo's interrogatories "to the extent that they seek discovery
of information about ongoing research and development activities of [RRD] that
have not yet been commercialized." Creo stated its belief that such an objection is
improper, as the fact that such activities have not yet been "commercialized" does
not immunize such activities from discovery. Creo maintains its position that this
objection is improper and unsupported by the law. RRD clarified during the meet
and confer that it was not withholding and information or documents on the basis of
this objection. RRD intends to make this confirmation in writing in its
Supplemental Responses.

### D.    RRD's General Objection No. 8

RRD's General Objection No. 8 objects to the identification of any documents
created after the filing of RRD's complaint. RRD suggested that the parties agree to
cut discovery off based on the filing date of RRD's complaint, with an exception for
certain updates (i.e. damages) as needed. Counsel for Creo stated that they needed
to discuss this matter internally, but that they were generally amenable to some
form of such an agreement. Counsel for Creo stated that we would want any
exceptions to this general agreement to be well defined to prevent future
disagreements. Counsel for Creo will consider RRD's proposal internally, and will
further discuss this matter with RRD shortly.

Bradford J. Badke, Esq.
October 9, 2006
Page 8

### E.    Interrogatory No. 1:

In Interrogatory No. 1, Creo asked for "a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents...[and f]or each claim you contend is governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s)...." In its initial response dated July 7, 2006, RRD did not indicate "whether each element is present literally or by equivalents" in its initial response. Creo maintains that the claim charts provided by RRD in its initial response failed to sufficiently detail the alleged infringement by Creo.

RRD stated during the meet and confer that its Supplemental Response will address the deficiencies to RRD's response to Interrogatory No. 1 identified by Creo in its September 6, 2006 letter.

### F.    Interrogatory No. 2:

Interrogatory No. 2 asked RRD to state its claim construction for each asserted claim, and to provide the factual and legal bases for its constructions. RRD conditioned its response to Interrogatory No. 2 on several general and specific objections, and then stated that "based on information now known, infringement is demonstrated by comparing the plain and ordinary English language meaning of the claims to the features of Defendants' accused products and activities," while reserving the right for future refinement.

Creo maintains its position that these objections are improper and unsupported by the law. RRD agreed during the meet and confer to re-examine its response to Interrogatory No. 2, and supplement the response – to the extent that RRD contends that construction is necessary – in its Supplemental Responses.

### G.    Interrogatory No. 3:

Interrogatory No. 3 requested RRD's contentions as to "the earliest priority date that each claim is entitled." In its July 7, 2006 response, RRD stated that because the term "priority date" was undefined, it would interpret "priority date" to mean "the filing date of the earliest filed application to which a particular patent claims priority." Creo responded in its September 6, 2006 letter by stating that the term "priority date" is well defined in Federal Circuit case law.

RRD has agreed to supplement its response to Interrogatory No. 3 by providing the actual priority date for each of the four patents-in-suit in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 9

### H.    Interrogatory No. 4:

Interrogatory No. 4 requested that RRD provide the conception and reduction to practice dates for each patent claim being asserted by RRD, as well as a description of the factual and legal bases supporting RRD's answer. In its July 7, 2006 response, RRD refused to answer "until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit." RRD continues to assert that it is not required to state conception and reduction to practice dates until Creo advances specific pieces of prior art. Creo maintains that because it has asserted that the patents-in-suit are invalid, RRD has an obligation to promptly provide conception and reduction to practice dates. The parties are unable to settle this disagreement. This confirms that the parties have met and conferred on this issue sufficient to satisfy their obligations under the Federal Rule of Civil Procedure 37(a).

### I.    Interrogatory No. 5:

Finally, in Interrogatory No. 5, Creo sought the identification of "each person with whom you, your attorneys, or your representatives have contacted or negotiated regarding licenses or possible licenses for the patents in suit...." In its July 7, 2006 response, RRD identified one license and 49 instances of such correspondence, and stated it would "produce and identify business records sufficient to answer this interrogatory," pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Creo's September 6, 2006 letter noted that RRD had failed to provide sufficient detail to locate and identify the records from which RRD's answer could be ascertained, and further noted that the interrogatory was not limited to written correspondence, but included oral contacts or negotiations. RRD's August 31, 2006 production of documents failed to include the records necessary to answer Interrogatory No. 5.

During the meet and confer, RRD reaffirmed its intention to supplement its document production with documents regarding licensing correspondence and agreements in its Supplemental Responses. RRD further stated that it will provide non-privileged records of any oral contacts or negotiations regarding the licensing of the patents-in-suit, should any exist.

Please let us know at your earliest convenience if you believe any of the above fails to accurately portray our September 28, 2006 meet and confer.

Bradford J. Badke, Esq.
October 9, 2006
Page 10


Best regards,

Brian M. Koide

cc:     Richard McMillan, Jr.
        Frederick L. Cottrell III

# EXHIBIT E

.

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116



Brian M. Kolde
202-624-2931
BKolde@crowell.com

October 13, 2006

3477:ng
025140.0000051

**VIA FACSIMILE**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

      Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jim:

      I write to follow-up on our September 28, 2006 meet and confer teleconference and my letter dated October 9, 2006, regarding R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set of Requests for Production of Documents and Things and the First Set of Interrogatories served by Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Creo").

      During the meet and confer teleconference, RRD represented that it would supplement its discovery responses by approximately October 12, 2006. October 12th has passed, and Creo has yet to receive any supplemental responses. Creo recognizes that RRD – during the meet and confer – was unwilling to definitively commit to supplementing by October 12, but understood that RRD would make a good faith effort to do so. In light of the fact that more than two weeks have passed since the date of the meet and confer, we do need to bring this to a head. We would request your firm commitment that RRD's supplemental responses would be provided no later than October 18, 2006.

Bradford J. Badke, Esq.
October 13, 2006
Page 2

We look forward to your prompt response.

Best regards,

Brian M. Koide

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT F

**REDACTED**