IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| | ) | |
| QUARK, INC., CREO, INC., EASTMAN KODAK | ) | |
| COMPANY AND KODAK GRAPHIC | ) | |
| COMMUNICATIONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR RULE 26(c)(2) PROTECTIVE ORDER

Plaintiff R.R. Donnelley & Sons Company ("RRD") seeks to depose five individual witnesses who currently work and reside in Israel. Yet RRD insists on a United States location for these depositions. Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively "Kodak") move for a protective order situating the Rule 30(b)(1) depositions of Israeli witnesses in Israel.

Previously, RRD served an amended Rule 30(b)(6) notice (D.I. 66) covering subject matters that are disputed in RRD's Motion to Compel (D.I. 36). Accordingly, Kodak moved to restrict the scope of discovery to the subject matter of this lawsuit and to have RRD redraft its topics with greater particularity. *See* Motion for Rule 26(c)(4) Protective Order (D.I. 68).

The same evening that Kodak filed its Motion for Rule 26(c)(4) Protective Order (*id*), plaintiff RRD served five Federal Rule of Civil Procedure 30(b)(1) notices for depositions of individual witnesses Ronny Fogel, Ron Peleg, Ronen Cohen, Gershon Alon, and Nardi Jaacobi (D.I. 69-73). Each of these witnesses has been employed in Israel by Creo, Inc., a business unit that Kodak acquired in 2005. *See* Opposition to Plaintiff's Motion to Compel at 1 (D.I. 41). Kodak objected to Israeli residents traveling to the United States for the 30(b)(1) depositions and offered a schedule making Israeli residents available for deposition in Israel in January 2007. After receiving clarification that RRD would maintain its position that it would not take the depositions in Israel, Kodak brought this motion — pursuant to Federal Rule of

Civil Procedure 26(c)(2) and Local Rule 30.2 — for the Court to enter the protective order attached as Exhibit A. The bases for this motion are as follows:

1.     On November 22, 2006, the evening before Thanksgiving, RRD filed its Notices of Deposition of five witnesses. (D.I. 69-73.) The Notices of Deposition each state that the depositions will commence in Delaware, "or at such other time and place as may be agreed to by counsel." *Id*.

2.     After consulting with the noticed witnesses regarding their availability, counsel for Kodak contacted counsel for RRD on December 6, 2006 and proposed that four of the depositions take place over a two-week period in Herzliya, Israel.[1]  Ex. B.

3.     On December 11, 2006, counsel for RRD responded via teleconference that RRD would not agree to take the Rule 30(b)(1) depositions in Israel.

4.     Kodak moves for a protective order invoking the Court's discretion to change the location of the noticed depositions from Delaware to Israel.[2]  *See* Fed. R. Civ. Pro. 26(c)(2).

5.     In the absence of special circumstances, "a party seeking discovery must go where the desired witnesses are normally located." *Farquhar v Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987) ("Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice.").[3]

---

[1]    The fifth witness, Ronen Cohen, will transfer to Kodak offices in the United States in January 2007. For this reason, counsel for Kodak offered to make Mr. Cohen available at a date after his transfer in a location within the United States mutually convenient to the parties.

[2]    Pursuant to Local Rule 30.2, the filing of this motion stays the depositions until the motion is ruled upon by the Court.

[3]    Kodak respectfully submits that the Court's March 30, 1995 ruling in *Mobil Oil v. Advanced Environmental Recycling Technologies*, Civ. No. 92-351-JJF, is distinguishable. Ex. C. In that action, deposition witnesses were asked to travel from Washington, DC, to Wilmington, Delaware. Here, however, a much heavier travel burden is asked of the Israeli witnesses. Moreover, in contrast to the facts in *South Seas Catamaran, Inc v Motor Vessel LEEWAY*, 120 F.R.D. 17, 21 (D.N.J. 1988), claims as well as counterclaims remain in this action. Further, although Kodak has asserted counterclaims, it had no input into determining the district in which RRD filed suit.

6.      Witnesses Fogel, Peleg, Cohen, Alon, and Jaacobi are employees of Kodak IL Ltd. in Herzliya, Israel. *See* Ex. B.

7.      Depositions of foreign residents have been and will continue to be taken on foreign soil without incident and dispute. *See* Fed. R. Civ. Pro. 28(b) (governing the taking of depositions in foreign countries). Further, courts have routinely ordered that the depositions of foreign witnesses be held at the witnesses' place of residence or business in order to prevent great inconvenience or undue expense to the party or witness. *See Chris-Craft Indus. Prods., Inc. v. Kuraray Co., Ltd.*, 184 F.R.D. 605, 607-8 (N.D. Ill. 1999) (noting that forcing employee witnesses to travel from Japan to Chicago would impose more significant costs than if the depositions were taken in Japan); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 107-8 (S.D.N.Y. 2001) (ordering Rule 30(b)(1) depositions proceed in Japan, country of the witnesses' residence, rather than New York).

8.      Here, taking depositions of four witnesses in the United States would impose great costs upon Kodak as well as severe inconvenience to busy Kodak officials and employees. The travel of a single individual — RRD's counsel — to a single location in Israel would involve considerably less cost and inconvenience. "In any event, the convenience of counsel is less compelling than any hardship to the witnesses." *Devlin v. Transp. Commc'ns Int'l Union*, Nos. 95 Civ. 0752 and 10838 JFK JCF, 2000 WL 28173, at *4 (S.D.N.Y. Jan. 14, 2000), Ex. D.

9.      RRD cannot show that the taking of depositions of these witnesses in Israel poses unusual risks warranting a deviation from the general rule situating these depositions in Herzliya, the Israeli city of Kodak IL, Ltd.'s principal place of business. Nor has RRD made a showing that it intends to depose these witnesses to obtain information related to the Kodak defendants' counterclaims rather than information primarily related to the allegations in RRD's complaint. *See Chris-Craft*, 184 F.R.D. at 607.

10.     For these reasons, witnesses Fogel, Peleg, Alon, and Jaacobi should be deposed in Herzliya, Israel.

11.    WHEREFORE, Kodak respectfully requests that the Court order that Israeli witnesses not

be required to travel from Israel for Rule 30(b)(1) depositions. A Form of Order is attached hereto.


Frederick L. Cottrell, III / Anne Shea Fryo

Frederick L. Cottrell, III (#2555)    (#4013)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company and Kodak*
*Graphic Communications Company*

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Amy W. Ray
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC   20004-2595
(202) 624-2500

Dated:  December 11, 2006

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for the defendants has discussed the subject of the foregoing motion with counsel for plaintiff, and that the parties have not been able to reach agreement on the issues raised in the motion.

Anne Shea Gaza (#4093)
gaza@rlf.com

December 11, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2006, I caused to be served by hand delivery the foregoing and electronically filed the same with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on December 11, 2006, I caused the foregoing to be sent by Federal Express to the following non-registered participants:

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Anne Shea Gaza (#4093)
gaza@rlf.com

RLF1-3091995-1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-032-JJF |
| | ) | |
| QUARK, INC., CREO, INC., EASTMAN KODAK | ) | |
| COMPANY AND KODAK GRAPHIC | ) | |
| COMMUNICATIONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pursuant to Fed. R. Civ. P. 26(c)(2) and Local Rule 30.2, the Court orders that (i)

the depositions of Israeli witnesses shall occur in Israel; (ii) Plaintiff shall amend its Rule

30(b)(1) notices accordingly.

SO ORDERED this ___ day of _____ 2006

_____
United States District Court Judge

# EXHIBIT B



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Amy W. Ray
202-624-2529
aray@crowell.com

December 6, 2006

025140.0000051

**VIA FACSIMILE**

Stuart W. Yothers, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
Facsimile: (212) 596-9090

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Stuart:

As discussed during our conversation this afternoon, I write to confirm that the Rule 30(b)(1) depositions of Ron Peleg (noticed for December 13, 2006), Nardi Jaacobi (noticed for December 18, 2006), Ronen Cohen (noticed for December 22, 2006), Ronny Fogel (noticed for December 27, 2006), and Gershon Alon (noticed for December 29, 2006) will not proceed as noticed.

Each of the aforementioned individuals currently resides in Israel. With respect to Messrs. Peleg, Jaacobi, and Alon and Ms. Fogel, they are available for deposition in Israel between January 7 and 18, 2007. We have contacted those witnesses and propose the following schedule for their Israel depositions: Ms. Fogel on January 7; Mr. Jaacobi on January 11; Mr. Peleg on the mornings and early afternoons of January 14-15; and Mr. Alon on January 18.

Mr. Cohen will be resident in the United States in early 2007, and we will continue to work with you to find a mutually acceptable date and location for his deposition after his move.

Best regards,

Amy W. Ray

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MOBIL OIL CORPORATION,
      Plaintiff,

    v.

ADVANCED ENVIRONMENTAL
RECYCLING TECHNOLOGIES, INC.,
      Defendant.

 

ADVANCED ENVIRONMENTAL
RECYCLING TECHNOLOGIES, INC.,
    Counterclaim Plaintiff,

    v.

MOBIL OIL CORPORATION, MOBIL
CORPORATION, MOBIL CHEMICAL
COMPANY, INC., ARTHUR C.
FERGUSON, and PAUL M. HERBST,
    Counterclaim Defendants.

Civil Action No. 92-351-JJF

## O R D E R

    WHEREAS, on June 1, 1994, Plaintiff Mobil Oil Corporation ("Mobil") filed a Motion for Protective Order to preclude Defendant Advanced Environmental Recycling Technologies, Inc. ("AERT") from requiring Mobil's employees to travel to Wilmington, Delaware, to be deposed on issues relating to AERT's counterclaims (D.I. 444);

    WHEREAS, Mobil argues that AERT should depose Mobil's witnesses in Washington, DC, or at the witnesses' workplace locations;

    WHEREAS, Mobil argues that AERT's counterclaims are the only remaining claims in this case and, therefore, Mobil should be considered the defendant, thus triggering AERT's obligation to

depose Mobil's witnesses in Washington, DC, or at the witnesses' workplace locations;

WHEREAS, Mobil argues that principles of fairness and equity dictate that AERT should depose Mobil's witnesses in Washington, DC, or at their workplace locations because in the initial phase of this case, Mobil brought its witnesses to Wilmington, Delaware, for deposition by AERT;

WHEREAS, AERT opposes Mobil's Motion for a Protective Order and argues that it is a frivolous claim for which an award of reasonable costs should be granted to AERT (D.I. 455);

WHEREAS, AERT argues that the Court's September 22, 1993 Opinion and Order requiring a deposition of a Mobil employee in Wilmington, Delaware, is applicable to this Motion;

WHEREAS, AERT argues that Mobil, as the plaintiff, chose the forum in which to pursue its claims and, therefore, cannot argue that, as the counterclaim defendant, it is inconvenient to depose witnesses in Wilmington, Delaware;

WHEREAS, pursuant to Federal Rule of Civil Procedure 26 (c), the Court for "good cause shown" has the discretion in discovery matters to "make any order which justice requires to protect a party or person . . ." including designation of the time and place of a deposition;

WHEREAS, the Court finds pursuant to South Seas Catamarans, Inc. v. Motor Vessel LEEWAY, 120 F.R.D. 17, 21 (D.N.J. 1988), aff'd, 993 F.2d 878 (3d Cir. 1993), that Mobil must produce its witnesses for depositions in the district where Mobil

instituted the action unless Mobil has shown financial hardship or inability to attend the deposition in that district;

WHEREAS, the Court finds that Mobil initiated this action in the District of Delaware;

WHEREAS, the Court finds that Mobil's argument regarding Mobil's new role as counterclaim defendant has not demonstrated "good cause" as required by Federal Rule of Civil Procedure 26(c);

WHEREAS, the Court finds, pursuant to South Seas Catamarans, 120 F.R.D. at 21, that Mobil has not otherwise demonstrated financial hardship or inability to attend depositions in Wilmington, Delaware;

NOW THEREFORE, IT IS HEREBY ORDERED this _30_ day of March, 1995, that:

1.    Mobil's Motion for a Protective Order (D.I. 444) is DENIED.

2.    AERT's request for reasonable costs is DENIED.

UNITED STATES DISTRICT JUDGE

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                          Page 1
Not Reported in F.Supp.2d, 2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: Not Reported in F.Supp.2d)**

**H**
<u>Briefs and Other Related Documents</u>
Devlin v. Transportation Communications Intern.
UnionS.D.N.Y.,2000.
      United States District Court, S.D. New York.
Robert J. DEVLIN, Andrew Hagan, Thomas Hewson,
      Steven Milone (Mary Milone, his successor in
      interest), Frederick Rinckwitz, Individually, and on
      behalf of the Retired Employees and their
Beneficiaries of the Transportation Communications
      International Union, Plaintiffs,
                             v.
      TRANSPORTATION COMMUNICATIONS
INTERNATIONAL UNION, Robert A. Scardelletti,
      International President, Plan Administrator and
Fiduciary Under the Railway Labor Organizations
Group Life, Hospital, Surgical and Medical Insurance
Plan for Their Officers and Employees, Defendants.
Robert J. DEVLIN, Andrew Hagan, Thomas Hewson,
      Steven Milone (Mary Milone, his successor in
      interest), Frederick Rinckwitz, Individually, and on
      behalf of the Retired Officers, Employees their
Beneficiaries of the Transportation Communications
      International Union, Plaintiffs,
                             v.
      TRANSPORTATION COMMUNICATIONS
      INTERNATIONAL UNION and Robert A.
      Scardelletti, International President, Defendants.
**Nos. 95 Civ. 0752 JFK JCF, 95 Civ. 10838 JFK JC.**

                      Jan. 14, 2000.

              *MEMORANDUM AND ORDER*
FRANCIS, Magistrate J.
*1 These consolidated cases are putative class actions
brought on behalf of retired members and former
officers of the Transportation Communications
International Union (the "Union" or "TCU"). The
actions currently include claims by the plaintiffs
against the TCU and its president, Robert A.
Scardelletti, challenging the Union's termination of
the TCU Death Benefit Fund and the imposition of a
$100 per month fee to participate in the TCU Medical
Benefit Plan. The defendants have moved pursuant to
<u>Rule 26(c) of the Federal Rules of Civil Procedure</u> for
a protective order: (1) requiring the depositions of
defendant Scardelletti and other TCU representatives
to be taken in Maryland; (2) disallowing certain
discovery as irrelevant; and (3) barring the plaintiffs
from revealing certain confidential information to

third parties or using it for purposes beyond the
boundaries of this litigation. The plaintiffs have
cross-moved for sanctions pursuant to Rule 37(c)(1)
on the ground that in their motion the defendants
mischaracterized as confidential certain information
that is publicly available. After setting the factual
context, I will address each of these discovery issues.

                     *Background*

                 A. *Medical Benefits*

The Union traditionally provided both its employees
and its retirees with free medical benefits under the
Railway Labor Organizations Group Life, Hospital,
Surgical and Medical Insurance Plan (the "Medical
Plan"). However, the Medical Plan was modified as of
January 1, 1994 to require retirees to pay a $100 per
month fee in order to maintain their benefits. No such
fee was imposed on active employees.

The plaintiffs challenged this change in the Medical
Plan in the first of the two pending consolidated
actions, 95 Civ. 0742 (S.D.N.Y.1995) (*"Devlin I"* )
They argued that the modification violated the
Employee Retirement Income Security Act, <u>29 U.S.C.</u>
<u>§ § 1001</u> *et seq* ("ERISA"), that it constituted age
discrimination in violation of the New York State
Human Rights Law, <u>N.Y. Exec. Law § § 290</u> *et seq* ,
and that it was a common law breach of contract. In
the second action, 95 Civ. 10838 (S.D.N.Y.1995)
(*"Devlin II"* ), plaintiffs attacked the medical
benefits fee on the additional ground that it violated
the Age Discrimination in Employment Act, <u>29 U.S.C.</u>
<u>§ § 621</u> *et seq* (the "ADEA")

                  B. *Death Benefits*

For many years, the Union paid benefits of $300 to the
family of any employee or retiree who died. However,
at the 1995 TCU convention the Death Benefit Fund
was eliminated, purportedly for financial reasons. In
*Devlin II*, the plaintiffs challenged this decision as a
violation of ERISA and of the ADEA. Further, they
asserted a common law claim for conversion of the
monies in the Death Benefit Fund.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
(Cite as: Not Reported in F.Supp.2d)

### C. Retirement Plan COLA

In 1990, the trustees of the TCU Staff Retirement Plan (the "Retirement Plan"), the Union's pension program, instituted an automatic cost of living adjustment, or COLA. However, in 1995 the current Retirement Plan trustees brought an action in the United States District Court for the District of Maryland alleging that enactment of the COLA violated the fiduciary duty of the prior trustees because it placed too great a financial burden on Union funds. *See Scardelletti v. Bobo, 897 F.Supp. 913 (D.Md.1995).* The court agreed, and held that the current trustees could repeal the 1991 COLA amendment with respect to former employees who retired before 1991. *See Devlin v. Transportation Communications International Union, 175 F.3d 121, 125 (2d Cir.1999)* (explaining *Scardelletti v. Bobo,* Civil No. JFM-95-52, 1997 U.S. Dist. LEXIS 14498, at *29-33 (D.Md. Sept. 8, 1997)).* The trustees did so, and also filed a related case in Maryland seeking a determination that the 1991 COLA amendment was null and void as of the date of its adoption. *See Scardelletti v. Santoro, 97 Civ. 3464 (D.Md.1997).* The defendants in that action are a class of all participants and beneficiaries of the Retirement Plan.

*2 In *Devlin II,* the plaintiffs challenged the elimination of the COLA on the ground that it constituted age discrimination.

### D. Prior Proceedings

The Honorable John F. Keenan, United States District Judge, dismissed the plaintiffs' challenges to the Medical Plan participation fee in *Devlin I.* He found that the state law age discrimination claims were preempted by ERISA, and he granted summary judgment to the defendants on the ERISA claims, finding that the Medical Plan had been properly amended. *See Devlin I, No. 95 Civ. 0742, 1995 WL 380374 (S.D.N.Y. June 26, 1995),* and *1997 WL 570512 (S.D.N.Y. Sept. 15, 1997).*

Judge Keenan also ruled in the defendants' favor in *Devlin II.* He dismissed the medical benefits fee claim on grounds of *res judicata,* relying on his prior decision in *Devlin I.* He further granted summary judgment to the defendants on the death benefits claim, finding that the Death Benefit Fund, if it was governed by ERISA at all, had been properly amended, and that the plaintiffs had failed to demonstrate age discrimination since the elimination of benefits affected employees and retirees of all ages. Finally, Judge Keenan dismissed the COLA claims on the

basis that they were being adjudicated in the district of Maryland. *See Devlin II, No. 95 Civ. 10838, 1997 WL 634179 (S.D.N.Y. Oct. 15, 1997),* and *1998 WL 37545 (S.D.N.Y. Jan. 29, 1998).*

The plaintiffs then appealed Judge Keenan's decisions in both cases. With respect to *Devlin I,* the Second Circuit vacated dismissal of the plaintiffs' state law age discrimination claim relating to the Medical Plan fee, finding that it is not preempted by ERISA. In all other respects, the court affirmed Judge Keenan's decision. *Devlin v. Transportation Communications International Union, 173 F.3d 94, 104 (2d Cir.1999).*

In the appeal of *Devlin II,* the Second Circuit remanded the plaintiffs' claim that elimination of the Death Benefits Fund constituted conversion because this issue had not been considered by Judge Keenan. *Devlin, 175 F.3d at 128.* It also vacated dismissal of the plaintiffs' ADEA challenge to the Medical Plan participation fee and suggested that this claim might be consolidated with *Devlin I. Id.* at 128-30. Finally, the court again affirmed Judge Keenan in all other respects and found in particular that the COLA claim should be adjudicated in the Maryland actions. *Id.* at 130-32.

Thus, the claims remaining in the instant litigation are the claim of conversion with respect to the Death Benefit Plan and the federal and state age discrimination claims as they relate to imposition of a participation fee for the Medical Plan.

### Discussion

### A. Location of Depositions

The first discovery dispute concerns the location for the depositions of TCU representatives. The plaintiffs have noticed the depositions of Mr. Scardelletti, the TCU president, and the unidentified witnesses who will testify as to specific topics pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Both notices identify New York as the place of deposition. (Memorandum in Support of Defendants' Motion for Protective Order ("Def.Memo."), Exhs 1, 2). The defendants argue that these depositions should instead be conducted in Rockville, Maryland, which is the site of the TCU headquarters. That is the place of business of Mr. Scardelletti and of the persons likely to be designated as Rule 30(b)(6) witnesses. (Declaration of LuAnn Taylor dated Aug. 3, 1999, attached as Exh. 3 to Def. Memo. ("Taylor Decl.") ¶¶ 4, 5).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 3

Not Reported in F.Supp.2d, 2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
(Cite as: Not Reported in F.Supp.2d)

*3 The plaintiffs respond that New York is the proper locus for the depositions under the circumstances of this case. They argue that as retirees they have limited resources to conduct depositions outside New York. Further, they contend that the Union has offices in New York and that its representatives travel frequently.

As a general matter, there is a presumption that a defendant or non-party witness shall be deposed in the district where the deponent resides or has a principal place of business. *See Bank of New York v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135, 155 (S.D.N.Y.1997); *Doe v. Karadzic,* Nos. 93 Civ. 878, 93 Civ 1163, 1997 WL 45515, at *3 (S.D.N.Y. Feb. 4, 1997); *Federal Deposit Insurance Co. v. LaAntillana, S.A.,* No. 88 Civ. 2670, 1990 WL 155727, at *2 (S.D.N.Y. Oct. 5, 1990) *("FDIC");* *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989). However, the force of this presumption may be diminished if the plaintiff was constrained in choosing the forum for litigation. *See Doe,* 1997 WL 45515, at *3; *Mill-Run,* 124 F.R.D. at 550. Furthermore, it can be overcome by a showing that factors of cost, convenience, and litigation efficiency militate in favor of holding the deposition somewhere other than the district of the deponent's residence or place of business. *See Doe,* 1997 WL 45515, at *3- *4; *FDIC,* 1990 WL 155727, at *3; *Mill-Run,* 124 F.R.D. at 550-51.

### 1. Choice of Forum

In the instant cases, the plaintiffs have made no argument that they were limited in their ability to choose the forum for litigation. Indeed, as discussed above, some of the same issues initially raised in the complaint here are currently being litigated in Maryland. Therefore, the standard presumption for location of depositions is not weakened.

### 2. Cost

Cost considerations relevant to the location of a deposition may be looked at from two perspectives: the impact that the choice of site has on total costs and the relative ability of the parties to bear the expenses. Here, overall costs would be greater if the depositions were held in New York. While plaintiffs' counsel is based in New York, defendants' attorney works from Washington, D.C., which is close to the TCU headquarters. Thus, the choice of location would have

little effect on the total costs incurred by counsel. The critical additional costs are those that would be generated only if the deponents were required to appear here rather than in the district of their residence.

There is little doubt that any costs are more easily borne by the Union than by any individual plaintiff. However, these cases were filed as class actions. Thus, the plaintiffs implicitly represented that they had the ability to fund the litigation, either through the aggregation of their own resources or on the basis that the plaintiffs' counsel would advance the costs of the lawsuit. *See Weber v. Goodman,* 9 F.Supp.2d 163, 172-73 (E.D.N.Y.1998); *Krueger v. New York Telephone Co.,* 163 F.R.D. 433, 443 n. 6 (S.D.N.Y.1995). Having committed to pursuing a class action, the plaintiffs cannot now complain of the relatively minor cost of funding their attorney's travel from New York to Maryland to take depositions. Thus, the cost factor tips in favor of deposing the TCU representatives in Maryland.

### 3. Convenience

*4 Factors relevant to convenience include any hardship to counsel, the residence of the deponents, and the extent to which the witness' affairs might be disrupted. *See Mill-Run,* 124 F.R.D. at 551. In this case, one attorney or the other will be discommoded, depending upon the choice of site. In any event, the convenience of counsel is less compelling than any hardship to the witnesses.

The witnesses here all work in Maryland and presumably reside near their place of business. (Taylor Decl. ¶ 5). They are all high-ranking TCU officers and employees whose absence from their workplace would have an adverse impact on the functioning of the Union. (Taylor Decl. ¶¶ 1, 4). The plaintiffs argue that the TCU has offices in New York and that the deponents are often absent from Union headquarters attending the TCU convention and conducting union business. But the deponents work in the Union's Maryland headquarters, not in any New York office. And the fact that a deponent is required to travel for business purposes may make it all the more important that he or she be available at the principal place of business at other times. The convenience criteria thus favor conducting the depositions in Maryland.

### 4. Litigation Efficiency

Not Reported in F Supp 2d
Not Reported in F.Supp.2d, 2000 WL 28173 (S D N Y ), 24 Employee Benefits Cas 2721
(Cite as: Not Reported in F.Supp.2d)
Page 4

Considerations of efficient litigation dictate the same result. Relevant Union records that may be referred to during the depositions are likely located in Maryland Furthermore, while judicial supervision of the depositions may be necessary, this can be accomplished by telephone, as would likely be the case even if the depositions were held here. *Cf Mill-Run,* 124 F.R.D. at 551 (judicial supervision by telephone less feasible for overseas depositions).

For all of these reasons, the defendants' application for a protective order designating the District of Maryland as the site for the depositions of TCU representatives is granted.

### B. *Scope of Discovery*

The defendants have raised two general issues concerning limitations on the scope of discovery First, they contend that the TCU Staff Retirement Plan is irrelevant to any issue currently encompassed by the litigation, and discovery related to that program should therefore be disallowed. Second, the defendants argue that the Union's financial information after January 31, 1996 is not a legitimate subject of inquiry.

### 1 *Staff Retirement Plan*

The defendants maintain that the Staff Retirement Plan is now irrelevant because it relates only to the COLA issue which was dismissed from these cases and is being litigated in Maryland. The plaintiffs do not dispute that such discovery would relate only to the COLA claim However, they contend that they should be permitted to amend their complaint to reassert that claim here because a proposed settlement of the Maryland actions threatens their ability to raise it in that forum. (Memorandum of Law In Opposition to Defendants' Motion for Protective Order ("Pl Memo ") at 11-13) The plaintiffs' motion to amend their complaint is currently pending before Judge Keenan

*5 While relevance is broadly construed in the context of discovery, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken. " *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 352 (1978) (footnote omitted). That is the case here Apart from its connection to the dismissed COLA claim, information about the Staff Retirement Plan is only pertinent to the extent that the plaintiffs could use it to attack the proposed settlement

of the Maryland actions But, "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Id. at 352 n. 17* (citations omitted); *see also Southwest Hide Co. v. Goldston,* 127 F.R.D. 481, 484 (N.D.Tex.1989). Therefore, no discovery shall be taken concerning the Staff Retirement Plan, though this determination shall be reconsidered in the event that Judge Keenan allows the plaintiffs to replead the COLA claim.

### 2 *Union Financial Information*

Nor are the plaintiffs entitled to discovery of the Union's financial information for any period after January 31, 1996. The plaintiffs seek such information on the grounds that: (1) "it is directly relevant to tracing what has become of the proceeds of the funds from the .. Death Benefit Fund," (2) it would undermine the Union's claims that it was motivated by financial hardship to impose the Medical Fund participation fee and eliminate the Death Benefit Fund, and (3) it is relevant to the defendants' purported breach of their fiduciary duty. (Pl. Memo. at 14-16).

None of these arguments withstand scrutiny The plaintiffs allege that the decision to eliminate the Death Benefit Fund was made in 1995 and that a conversion took place when the monies were transferred to the Union's general fund by January 1996. Thus, the Union finances after January 31, 1996 cannot be relevant to that claim. Similarly, the decision to impose the $100 fee on retirees for participation in the Medical Plan was made in 1993 and implemented effective January 1, 1994. Any information pertinent to a fiscal rationale for that change would therefore relate to the period prior to 1994 The plaintiffs' vague assertions of breach of fiduciary duty do not relate to any claim currently in their complaint and therefore do not justify broader discovery Finally, until the plaintiffs have prevailed they are not entitled to discovery to trace funds that would be available to satisfy a judgment.

### C. *Specific Discovery Requests*

The defendants further object to certain specific topics of discovery identified in the plaintiffs' Rule 30(b)(6) deposition notice.

First, Request No. 8 seeks information concerning money in the TCU Retirement Plan lost through investment in the Crabbe Huson Small Cap Fund. But

Not Reported in F Supp 2d
Not Reported in F Supp 2d, 2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
(Cite as: Not Reported in F.Supp.2d)

because the request relates to the Staff Retirement Plan, it is relevant only to the dismissed COLA claim. Furthermore, it cannot be pertinent to any defense of financial necessity since the Union itself never invested with Crabbe Huson, and the Staff Retirement Plan did not do so until May 1997. (Taylor Decl ¶ 2) Accordingly, the defendants' objection to Request No. 8 is upheld.

\*6 Next, in Request No. 21, the plaintiffs seek the names and addresses of all participants in the Staff Retirement Plan. While this information would be relevant to the COLA claim, that claim, as discussed above, is not within the pleadings currently before the Court. Nevertheless, the plaintiffs contend that they need to identify all retirees to ascertain "whether TCU engages in a discriminatory pattern or practice in its treatment of its older employees and/or retirees...." (Pl. Memo. at 19) This argument sweeps far too broadly. First, the plaintiffs have not limited their demand to the identity of retirees who have at some time made an allegation of discrimination against the TCU. Nor have they articulated how any of a variety of potential claims of age discrimination by retirees might relate to the subject matter at issue here: the specific decision by the defendants to impose a surcharge on retirees for participation in the Medical Plan. Absent some more direct nexus between the discovery demands and the claims at issue in this litigation, the identity of all participants in the Staff Retirement Plan need not be disclosed.

In Request No. 29, the plaintiffs seek information about the compensation and benefits provided to active employees and TCU officers after January 1989. This information is relevant to any argument by the defendants that the challenged decisions were driven by economic necessity. However, since, as discussed above, those decisions were made prior to February 1996, only information pertaining to the period through January 1996 need be produced.

Plaintiffs' Request No. 30 asks for the identity of TCU officers and employees whose compensation is paid through a Department of Labor manpower training program. The plaintiffs contend that "the amount of money TCU receives from the Department of Labor is directly related to TCU's ability to handle the potential liability it faces due to the Trustees' illegal conversion of the Death Benefit Fund." (Pl. Memo. at 21). But, as discussed above, it is premature to take discovery relevant only to enforcement of a judgment that has not yet been won. Accordingly, the defendants need not produce the requested information.

Similarly, the information demanded in Requests No. 31 and 32-the cost of the TCU's 1999 convention and the source of contributions to the cost of that event-has no relevance to the claims in this case. The convention post-dated the decisions at issue and so cannot be pertinent to arguments of financial necessity. While the plaintiffs argue that they should be permitted to "trace" funds allegedly converted from the Death Benefit Fund, they have not asserted that they have any reason to believe that the alleged converted monies were used to pay for the convention.

Finally, plaintiffs' Requests No. 34, 35, and 36 relate to an escrow account established by the TCU pursuant to a court order in an unrelated case. The plaintiffs have not attempted to justify their demand for such information here, and it therefore need not be disclosed.

### D. Confidentiality Order

\*7 The parties have failed to agree on the appropriate form of a confidentiality order that would govern the dissemination of information obtained through discovery in these cases. The defendants argue that any such order should prevent pretrial disclosure of confidential information and bar the plaintiffs or others from using information obtained through discovery for purposes unrelated to this litigation. In particular, the defendants are concerned about the use or dissemination of the TCU's financial records and its lists of retirees and benefit plan members. The plaintiffs oppose any such restrictions.

Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, a court may issue a protective order providing that confidential information not be revealed in discovery or that it be revealed only in a designated way. The burden is on the party seeking the protective order to demonstrate good cause for its issuance. See In re Agent Orange Products Liability Litigation, 821 F.2d 139, 145 (2d Cir.1987); Pavlovich v. City of New York, No. 91 Civ. 5030, 1992 WL 230472, at *4 (S.D.N.Y. Aug. 31, 1992). Here, the defendants have not met this burden with respect to the full range of restrictions that they seek.

The defendants are concerned that the plaintiffs will use information obtained in this litigation to bolster their position in the Maryland actions or in other proceedings. Therefore, the defendants rely on the Supreme Court's admonition in Oppenheimer Fund, 437 U.S. at 352 n. 17, that pretrial disclosure is not intended to assist in litigation other than that for which

Not Reported in F Supp 2d                                                                    Page 6
Not Reported in F Supp 2d, 2000 WL 28173 (S D N Y ), 24 Employee Benefits Cas. 2721
(Cite as: Not Reported in F.Supp.2d)

the discovery is being taken. But the defendants are confusing the initial determination of whether information should be disclosed with the purposes for which it may thereafter be used. In *Oppenheimer Fund*, the Court was addressing only the circumstance in which a party seeks to *obtain* information irrelevant to the litigation in which it is sought in order to use it elsewhere.

"However, where the discovery sought is relevant to a good faith [claim or] defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992) On the contrary,

[s]o long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery.

*Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 91 (D.N.J.1986) Accordingly, "the mere fact that plaintiffs intend to use these materials outside of this litigation is not 'good cause' to support the protective order, unless defendants can establish that the discovery was not procured in good faith for the purposes of this litigation." *Id.* at 93; *see also Baker v. Liggett Group, Inc.*, 132 F.R.D. 123, 126 (D.Mass.1990) Since I have already precluded discovery of information relevant only to other litigation, such as that concerning the COLA claim, there is no basis for a further limitation on the use of material legitimately discovered here.

*8 The defendants also argue that disclosure of the names and addresses of TCU retirees for purposes other than this litigation would impinge on the privacy rights of these persons [FN1] Indeed, in some circumstances, the privacy rights of non-parties may be invaded if information obtained through discovery was widely disseminated. For example, in *Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 141 (W.D.Pa.1993), the court issued a protective order barring the parties from disclosing information regarding health, financial, or other personal problems of the members of the defendant club, or regarding disciplinary action taken against them.

> FN1. This may not be an immediate concern, since I have denied the plaintiffs' outstanding request for such information. However, the

plaintiffs may reframe their request in a manner that is targeted to more relevant information, and it is therefore appropriate to address this issue in drafting a confidentiality order.

But this is not such a case. Here, the plaintiffs have sought only names and addresses of retirees, presumably to contact them about instances of alleged discrimination. Revealing that someone is a retired employee and perhaps contacting them regarding litigation hardly runs the risk of humiliation that was at issue in *Welch*

This does not mean that there should be unrestricted disclosure of confidential information in this case. It would hardly be appropriate for the plaintiffs to share proprietary TCU financial information with an employer with which the Union is bargaining or to sell the list of TCU retirees to a mail order company. Therefore, any confidential information disclosed in discovery shall be used solely for purposes of this litigation or any related pending or potential litigation. Further, to the extent that such information is shared in connection with other litigation, it shall be subject to all provisions of the confidentiality order entered here. *See Baker*, 132 F.R.D. at 126

### E. Motion for Sanctions

Finally, the plaintiffs seek sanctions on the ground that the defendants misrepresented that the TCU financial records are confidential while at the same time they were making those records public in the Maryland action. This application is apparently based on a misunderstanding of the records that the defendants claim are confidential. They do not seek protection for the audited financial statements that were disclosed in the Maryland action. Rather, they have asserted a claim of confidentiality with respect to the TCU's internal accounting documents such as balance sheets, ledgers, and budget reports that were not publicly disclosed. Therefore there is no inconsistency in the defendants' position and no basis for sanctions.

### Conclusion

For the reasons set forth above, the defendants' motion for a protective order is granted in that: (1) Robert A. Scardelletti and other TCU representatives shall be deposed in Maryland; (2) there shall be no discovery regarding the Staff Retirement Plan; (3) discovery of TCU financial information shall be limited to the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                               Page 7
Not Reported in F.Supp.2d, 2000 WL 28173 (S.D.N.Y.), 24 Employee Benefits Cas. 2721
**(Cite as: Not Reported in F.Supp.2d)**

period prior to February 1, 1996, and (4) the
defendants need not respond to the plaintiffs'
discovery Requests No. 8, 21, 30, 34, 35, or 36 and
shall respond to Request No. 29 only with respect to
information for the period prior to February 1, 1996.
The defendants' application for a protective order
barring the plaintiffs from using confidential
information obtained through discovery for any
purpose outside this litigation is denied. Instead, such
information may be used only for purposes of this
litigation or related or pending or prospective
proceedings, provided that it continue to be subject to
the confidentiality order to be entered here. Counsel
shall submit a draft confidentiality order for my
approval. Finally, plaintiffs' application for sanctions
is denied.

S.D.N.Y.,2000.
Devlin v. Transportation Communications Intern.
Union
Not Reported in F.Supp.2d, 2000 WL 28173
(S.D.N.Y.), 24 Employee Benefits Cas. 2721

Briefs and Other Related Documents (Back to top)

• 1:95cv10838 (Docket) (Dec. 22, 1995)
• 1:95cv00752 (Docket) (Feb. 03, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.