IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY )<br><br>Defendants. ) | C.A. No. 06-032-JJF |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a), plaintiff R.R. Donnelley & Sons Company ("RRD") moves for leave to amend its Complaint.  By its Amended Complaint, RRD seeks, *inter alia*, to add as defendants NexPress Solutions, Inc. and Kodak Versamark, Inc., which are related to one or more of the named defendants, and to add more detail concerning RRD's infringement claims and the applicable software products through which such infringement is conducted, as well as Defendants' inducement of infringement by others through their sale of certain printing presses.  RRD understands that Defendants intends to oppose this motion.

Pursuant to D. Del. L.R. 15.1, attached as Exhibit 1 are two copies of RRD's proposed Amended Complaint, and attached as Exhibit 2 is a copy showing how the amended pleading differs from the original pleading.  The bases for this motion are as follows:

1.    RRD filed this action on January 17, 2006, alleging that Defendants have infringed U.S. Patent No. 6,205,452, entitled "METHOD OF REPRODUCING VARIABLE GRAPHICS IN A VARIABLE IMAGING SYSTEM" ("the '452 patent"), U.S. Patent No. 6,327,599, entitled "APPARATUS FOR CONTROLLING AN ELECTRONIC PRESS TO

PRINT FIXED AND VARIABLE INFORMATION" ("the '599 patent"), U.S. Patent No. 6,952,801, entitled "BOOK ASSEMBLY PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" ("the '801 patent"), and U.S. Patent No. 6,844,940, entitled "IMPOSITION PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" ("the '940 patent").  RRD alleged that Defendants made, offered for sale, and sold infringing software, including Darwin Desktop, a variable digital printing software that directly infringes all four of the patents in suit.  RRD also alleged, *inter alia*, that Defendants induced others to infringe, *e.g.*, through their promotion and sale of the printing presses that accommodate the infringing software of others.

      2.    RRD seeks to amend its Complaint in part to overcome, to the extent possible, the unreasonable refusal by Defendants to provide discovery concerning their software products not specifically identified in the Complaint, or information concerning its printing presses, which are marketed and sold so as to induce others to infringe the patents in suit.

      3.    In its June 21, 2006 Motion to Compel, RRD requested that Defendants be ordered to provide complete responses to RRD's First Set of Requests for the Production of Documents and Things ("Document Requests") and First Set of Interrogatories ("Interrogatories").  In its Document Requests, among other things, RRD sought documents concerning:  (a) Defendants' Software Products for variable digital printing, including Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer; and (b) Defendants' hardware sales (*e.g.*, sales of printing presses), which relate to RRD's allegations of contributory infringement and inducement.  The Motion to Compel also sought responses to

3.

RRD's contention interrogatories relating to Defendants' defenses, including non-infringement and invalidity.

4.    Despite the fact that throughout discovery RRD has identified specific software products and printing presses (*see*, *e.g.*, RRD's response to Defendants' First Set of Interrogatories, No. 1, attached hereto as Exhibit 3), Defendants said they would not provide any discovery on any product not specifically identified in the Complaint, and as a result, have opposed the relief sought in the Motion to Compel.  To further this unreasonable limitation on discovery, Defendants filed a Motion for Rule 26(c)(4) Protective Order on November 22, 2006 seeking to limit discovery to the Darwin Desktop software, thereby seeking to prevent RRD from conducting any Rule 30(b)(6) depositions concerning Defendants' variable digital print software other than Darwin Desktop or their inducement of infringement.

5.    There is no basis in the Complaint, the Federal Rules, or the Local Rules of this Court that allow Defendants to limit discovery in the way they have attempted to do so. The Federal Rules do not require naming even a single infringing product.  *See*, *e.g.*, Fed. R. Civ. P., Form 16.  In fact, "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 335 U.S. 41, 47-48 (1957).

6.    Given the passage of time and Defendants' continued intransigence with respect to discovery, RRD is moving to amend the Complaint in part to add additional detail concerning RRD's infringement allegations in order to persuade Defendants, to the extent possible, to provide the discovery to which RRD has long been entitled.

4.

7.    Fed. R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires."  In *Foman v. Davis*, 371 U.S. 178, 181-82 (1962), the Supreme Court stated that "this mandate is to be heeded":

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

Although the decision to grant or deny leave to amend is committed to the sound discretion of the district court, the Supreme Court has stated that leave to amend should be granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Id.* at 182; *see also Howard v. Snyder*, C.A. No. 01-376-SLR, 2003 WL 365912, at *1 (D. Del. Feb. 13, 2003) ("[T]he Federal Rules of Civil Procedure require leave to amend to be freely granted.").  Fed. R. Civ. P. 21 states that a party may be added to an action "at any stage of the action and on such terms as are just."  The same standard of liberality that applies under Rule 15(a) applies under Rule 21.  *See Clarke v. Fonix Corp.*, 1999 U.S. Dist. LEXIS 2143 (S.D.N.Y. 1999), *aff'd,* 199 F.3d 1321 (2d Cir. 1999).

8.    None of the grounds for denying leave to amend is present here.  RRD is not exercising bad faith or a dilatory motive, nor has this motion been unduly delayed.  Moreover, the proposed amendment will not result in undue prejudice to Defendants.  In contrast, denial of the proposed amendment will result in continued prejudice to RRD through Defendants' unreasonable position concerning the scope of discovery.  The amendment also is not futile because it pleads a valid claim of patent infringement, and there is no question that there is a justiciable controversy.

9.      RRD respectfully requests that its motion for leave to amend its Complaint should be granted.

                                        MORRIS, NICHOLS ARSHT & TUNNELL LLP

                                        */s/ Rodger D. Smith II*
                                        Jack B. Blumenfeld (#1014)
                                        Rodger D. Smith II (#3778)
                                        1201 N. Market Street
                                        P.O. Box 1347
                                        Wilmington, DE 19899-1347
                                        (302) 658-9200
OF COUNSEL:                                 *Attorneys for Plaintiff*
                                            *R.R. DONNELLEY & SONS COMPANY*
Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(617) 951-7000

January 3, 2007

550369

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that counsel for plaintiff has discussed the subject of the foregoing motion with counsel for defendants, and the parties have not been able to reach agreement on the issues raised in the motion.


*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II


January 3, 2007

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on January 3, 2007, he caused the foregoing

to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification

of such filing(s) to the following:

>Frederick L. Cottrell III
>Richards Layton & Finger

I also certify that copies were caused to be served on January 3, 2007, upon the

following in the manner indicated:

>**<u>BY EMAIL AND HAND</u>**
>
>Frederick L. Cottrell III
>Richards Layton & Finger
>One Rodney Square
>920 N. King Street
>Wilmington, DE  19801
>
>
>**<u>BY EMAIL AND FEDERAL EXPRESS</u>**
>
>Richard McMillan, Jr.
>Crowell & Moring LLP
>1001 Pennsylvania Avenue, N.W.
>Washington, DC  20004-2595

>*/s/      Rodger D. Smith II (#3778)*
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE  19899-1347
>(302) 658-9200
>rsmith@mnat.com

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| R.R. DONNELLEY & SONS COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-032-JJF |
| ) | |
| CREO, INC., NEXPRESS SOLUTIONS, ) | |
| INC., KODAK VERSAMARK, INC., ) | **JURY TRIAL DEMANDED** |
| EASTMAN KODAK COMPANY, AND ) | |
| KODAK GRAPHIC COMMUNICATIONS ) | |
| COMPANY ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

Plaintiff R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby alleges and complains as follows:

## PARTIES

1.    R.R. Donnelley is a Delaware Corporation with a principal place of business at 111 South Wacker Drive, Chicago, IL 60606.

2.    Defendants Creo, Inc. ("Creo"), NexPress Solutions, Inc. ("NexPress"), Kodak Versamark, Inc. ("Versamark"), Eastman Kodak Company ("Eastman Kodak"), and Kodak Graphic Communications Company ("KGCC"), collectively referred to hereinafter as "Kodak," are Canadian, Delaware, Delaware, New Jersey and Washington corporations, respectively.

3.    On information and belief, Creo, Inc. has a principal place of business at 3700 Gilmore Way, Burnaby, British Columbia, Canada V5G 4M1.

4.      On information and belief, NexPress Solutions, Inc. has a principal place of business at 2600 Manitou Road, Rochester, NY 14653.

5.      On information and belief, Kodak Versamark, Inc. has a principal place of business at 3000 Research Boulevard, Dayton, OH, 45420.

6.      On information and belief, Eastman Kodak Company has a principal place of business at 343 State Street, Rochester, NY 14650.

7.      On information and belief, Kodak Graphic Communications Company (f.k.a. Creo Americas, Inc.) has a principal place of business at 3 Federal Street, Billerica, MA 01821.

## JURISDICTION AND VENUE

8.      This is a civil action brought by R.R. Donnelley for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), in that events giving rise to R.R. Donnelley's claims occurred in this district, the defendants may be found and/or reside in this district by virtue of their activities in this district, and the defendants have committed acts of patent infringement in this district.

## BACKGROUND

10.     On March 20, 2001, United States Patent No. 6,205,452 ("the '452 patent") -- entitled "METHOD OF REPRODUCING VARIABLE GRAPHICS IN A VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and Daniel W. Beery. A copy of the '452

patent is attached as Exhibit A. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '452 patent, including the right to recover for past infringement thereof.

11.     On December 4, 2001, United States Patent No. 6,327,599 ("the '599 patent") -- entitled "APPARATUS FOR CONTROLLING AN ELECTRONIC PRESS TO PRINT FIXED AND VARIABLE INFORMATION" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus and Mark G. Dreyer. A copy of the '599 patent is attached as Exhibit B. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '599 patent, including the right to recover for past infringement thereof.

12.     On January 18, 2005, United States Patent No. 6,844,940 ("the '940 patent") -- entitled "IMPOSITION PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '940 patent is attached as Exhibit C. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '940 patent, including the right to recover for past infringement thereof.

13.     On October 4, 2005, United States Patent No. 6,952,801 ("the '801 patent") -- entitled "BOOK ASSEMBLY PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '801 patent is attached as Exhibit D. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '801 patent, including the right to recover for past infringement thereof.

14.     The '452 patent, the '599 patent, the '940 patent, and the '801 patent are collectively referred to herein as the "patents-in-suit."

15.    On information and belief, Eastman Kodak has three reportable segments, including the Graphic Communications Group.    On information and belief, the Graphic Communications Group segment consists of Kodak Polychrome Graphics LLC, Creo, NexPress, Versamark, and Encad, Inc.

16.    On information and belief, in 2005, Eastman Kodak purchased Creo, Inc., the maker of Darwin Desktop ("Darwin").    On information and belief, Darwin for QuarkXPress and Adobe InDesign are both now made, offered for sale, and sold by Eastman Kodak and its Kodak Graphic Communications and Creo subsidiaries.

17.    On information and belief, in May 2004, Eastman Kodak acquired Heidelberger Druckmaschinen AG's ("Heidelberg") fifty (50) percent interest in NexPress Solutions LLC, a 50/50 joint venture of Eastman Kodak and Heidelberg.    On information and belief, upon the acquisition, Eastman Kodak renamed its now wholly-owned subsidiary NexPress Solutions, Inc.    On information and belief, NexPress makes, offers for sale, and sells digital presses including the NexPress 2100 Plus Digital Production Color Press and the NexPress 2500 Digital Production Color Press, digital press controllers including the NexStation and variable digital printing software including Kodak NexTreme DL-100 Variable Data Software and Kodak NexTreme DL-1000 Variable Data Software.

18.    On information and belief, in January 2004, Eastman Kodak acquired Scitex Digital Printing and renamed the company Kodak Versamark.    On information and belief, Versamark makes, offers for sale, and sells digital presses including the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, digital press controllers including the CS150, CS300, CS340, CS400, and CS600, and variable digital printing software including Composer.

4

19. As used herein, "Digital Presses" includes the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers: CS150, CS300, CS340, CS400, and CS600.

20. As used herein, "Kodak Software" includes Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer.

21. On information and belief, Kodak may manufacture and offer additional software products and digital presses, provide additional services, and participate in additional activities beyond those expressly identified in this Amended Complaint that infringe the patents-in-suit. Information concerning those products, services, and activities are not reasonably available to R.R. Donnelley, and Defendants have improperly withheld legitimate discovery thus far in this case. R.R. Donnelley believes that appropriate discovery, currently being withheld by Kodak, would lead to a proper identification of any additional infringing products, services, and activities.

## FIRST CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,205,452 BY KODAK

22. R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 21 of this Complaint.

23. On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase,

5

install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '452 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '452 patent.

24.     Kodak has been given notice of the '452 patent.

25.     Kodak's infringement of the '452 patent is, has been, and continues to be willful and deliberate.

26.     R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '452 patent.

## SECOND CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,327,599 BY KODAK

27.     R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 26 of this Complaint.

28.     On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing

6

software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '599 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '599 patent.

29.    Kodak has been given notice of the '599 patent.

30.    Kodak's infringement of the '599 patent is, has been, and continues to be willful and deliberate.

31.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '599 patent.

### THIRD CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 6,844,940 BY KODAK

32.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 31 of this Complaint.

33.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and

7

induced others to infringe, the '940 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '940 patent.

34.    Kodak has been given notice of the '940 patent.

35.    Kodak's infringement of the '940 patent is, has been, and continues to be willful and deliberate.

36.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '940 patent.

### FORTH CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 6,952,801 BY KODAK

37.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 36 of this Complaint.

38.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '801 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '801 patent.

39.    Kodak has been given notice of the '801 patent.

40.    Kodak's infringement of the '801 patent is, has been, and continues to be willful and deliberate.

41.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '801 patent.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff R.R. Donnelley seeks judgment in its favor and against defendant Kodak as follows:

A.    Adjudging and decreeing that Kodak has infringed one or more claims of U.S. Patent Nos. 6,205,452, 6,327,599, 6,844,940, and 6,952,801;

B.    Awarding injunctive relief permanently enjoining Kodak, its officers, agents, servants, employees and attorneys and all persons in active concert or participation with it from making, using, offering to sell, selling, or importing any product, service, or method that would infringe, directly or indirectly, any of the claims of the '452, '599, '940, and '801 patents;

C.    Awarding R.R. Donnelley damages in an amount sufficient to compensate it for Kodak's infringement, together with prejudgment interest and costs of suit;

D.    Adjudging that Kodak's infringement is willful and awarding R.R. Donnelley treble damages under 35 U.S.C. § 284;

E.    Declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and awarding R.R. Donnelley its attorneys' fees, costs and expenses against Kodak; and

F.    Granting such further relief as the Court may deem just and appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
    *Attorneys for Plaintiff*
    *R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January 3, 2007

10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY )<br><br>Plaintiff, )<br><br>v. )<br><br>CREO, INC., NEXPRESS SOLUTIONS, )<br>INC., KODAK VERSAMARK, INC., )<br>EASTMAN KODAK COMPANY, AND )<br>KODAK GRAPHIC COMMUNICATIONS )<br>COMPANY )<br><br>Defendants. ) | C.A. No. 06-032-JJF<br><br>**JURY TRIAL DEMANDED** |

## AMENDED COMPLAINT

Plaintiff R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby alleges and complains as follows:

### PARTIES

1.     R.R. Donnelley is a Delaware Corporation with a principal place of business at 111 South Wacker Drive, Chicago, IL 60606.

2.     Defendants Creo, Inc. ("Creo"), NexPress Solutions, Inc. ("NexPress"), Kodak Versamark, Inc. ("Versamark"), Eastman Kodak Company ("Eastman Kodak"), and Kodak Graphic Communications Company ("KGCC"), collectively referred to hereinafter as "Kodak," are Canadian, Delaware, Delaware, New Jersey and Washington corporations, respectively.

3.     On information and belief, Creo, Inc. has a principal place of business at 3700 Gilmore Way, Burnaby, British Columbia, Canada V5G 4M1.

4.      On information and belief, NexPress Solutions, Inc. has a principal place of business at 2600 Manitou Road, Rochester, NY 14653.

5.      On information and belief, Kodak Versamark, Inc. has a principal place of business at 3000 Research Boulevard, Dayton, OH, 45420.

6.      On information and belief, Eastman Kodak Company has a principal place of business at 343 State Street, Rochester, NY 14650.

7.      On information and belief, Kodak Graphic Communications Company (f.k.a. Creo Americas, Inc.) has a principal place of business at 3 Federal Street, Billerica, MA 01821.

## JURISDICTION AND VENUE

8.      This is a civil action brought by R.R. Donnelley for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), in that events giving rise to R.R. Donnelley's claims occurred in this district, the defendants may be found and/or reside in this district by virtue of their activities in this district, and the defendants have committed acts of patent infringement in this district.

## BACKGROUND

10.     On March 20, 2001, United States Patent No. 6,205,452 ("the '452 patent") -- entitled "METHOD OF REPRODUCING VARIABLE GRAPHICS IN A VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and Daniel W. Beery. A copy of the '452

patent is attached as Exhibit A. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '452 patent, including the right to recover for past infringement thereof.

11.    On December 4, 2001, United States Patent No. 6,327,599 ("the '599 patent") -- entitled "APPARATUS FOR CONTROLLING AN ELECTRONIC PRESS TO PRINT FIXED AND VARIABLE INFORMATION" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus and Mark G. Dreyer. A copy of the '599 patent is attached as Exhibit B. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '599 patent, including the right to recover for past infringement thereof.

12.    On January 18, 2005, United States Patent No. 6,844,940 ("the '940 patent") -- entitled "IMPOSITION PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '940 patent is attached as Exhibit C. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '940 patent, including the right to recover for past infringement thereof.

13.    On October 4, 2005, United States Patent No. 6,952,801 ("the '801 patent") -- entitled "BOOK ASSEMBLY PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '801 patent is attached as Exhibit D. Plaintiff R.R. Donnelley continues to own all rights, title, and interest to the '801 patent, including the right to recover for past infringement thereof.

14.    The '452 patent, the '599 patent, the '940 patent, and the '801 patent are collectively referred to herein as the "patents-in-suit."

15.    On information and belief, Eastman Kodak has three reportable segments, including the Graphic Communications Group.    On information and belief, the Graphic Communications Group segment consists of Kodak Polychrome Graphics LLC, Creo, NexPress, Versamark, and Encad, Inc.

16.    On information and belief, in 2005, Eastman Kodak purchased Creo, Inc., the maker of Darwin Desktop ("Darwin").    On information and belief, Darwin for QuarkXPress and Adobe InDesign are both now made, offered for sale, and sold by Eastman Kodak and its Kodak Graphic Communications and Creo subsidiaries.

17.    On information and belief, in May 2004, Eastman Kodak acquired Heidelberger Druckmaschinen AG's ("Heidelberg") fifty (50) percent interest in NexPress Solutions LLC, a 50/50 joint venture of Eastman Kodak and Heidelberg.    On information and belief, upon the acquisition, Eastman Kodak renamed its now wholly-owned subsidiary NexPress Solutions, Inc.    On information and belief, NexPress makes, offers for sale, and sells digital presses including the NexPress 2100 Plus Digital Production Color Press and the NexPress 2500 Digital Production Color Press, digital press controllers including the NexStation and variable digital printing software including Kodak NexTreme DL-100 Variable Data Software and Kodak NexTreme DL-1000 Variable Data Software.

18.    On information and belief, in January 2004, Eastman Kodak acquired Scitex Digital Printing and renamed the company Kodak Versamark.    On information and belief, Versamark makes, offers for sale, and sells digital presses including the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, digital press controllers including the CS150, CS300, CS340, CS400, and CS600, and variable digital printing software including Composer.

4

19.    As used herein, "Digital Presses" includes the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers: CS150, CS300, CS340, CS400, and CS600.

20.    As used herein, "Kodak Software" includes Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer.

21.    On information and belief, Kodak may manufacture and offer additional software products and digital presses, provide additional services, and participate in additional activities beyond those expressly identified in this Amended Complaint that infringe the patents-in-suit. Information concerning those products, services, and activities are not reasonably available to R.R. Donnelley, and Defendants have improperly withheld legitimate discovery thus far in this case. R.R. Donnelley believes that appropriate discovery, currently being withheld by Kodak, would lead to a proper identification of any additional infringing products, services, and activities.

**FIRST CLAIM FOR RELIEF**
**INFRINGEMENT OF U.S. PATENT NO. 6,205,452 BY KODAK**

22.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 21 of this Complaint.

23.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase,

5

install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '452 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '452 patent.

24.    Kodak has been given notice of the '452 patent.

25.    Kodak's infringement of the '452 patent is, has been, and continues to be willful and deliberate.

26.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '452 patent.

## SECOND CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6.327.599 BY KODAK

27.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 26 of this Complaint.

28.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing

6

software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '599 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '599 patent.

29.    Kodak has been given notice of the '599 patent.

30.    Kodak's infringement of the '599 patent is, has been, and continues to be willful and deliberate.

31.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '599 patent.

### THIRD CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 6,844,940 BY KODAK

32.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 31 of this Complaint.

33.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and

7

induced others to infringe, the '940 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '940 patent.

34.    Kodak has been given notice of the '940 patent.

35.    Kodak's infringement of the '940 patent is, has been, and continues to be willful and deliberate.

36.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '940 patent.

## FORTH CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,952,801 BY KODAK

37.    R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 36 of this Complaint.

38.    On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '801 patent, and continues to infringe, contribute to infringement of and induce others to infringe the '801 patent.

39.    Kodak has been given notice of the '801 patent.

8

40.    Kodak's infringement of the '801 patent is, has been, and continues to be willful and deliberate.

41.    R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless Kodak is enjoined from infringing the '801 patent.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff R.R. Donnelley seeks judgment in its favor and against defendant Kodak as follows:

A.    Adjudging and decreeing that Kodak has infringed one or more claims of U.S. Patent Nos. 6,205,452, 6,327,599, 6,844,940, and 6,952,801;

B.    Awarding injunctive relief permanently enjoining Kodak, its officers, agents, servants, employees and attorneys and all persons in active concert or participation with it from making, using, offering to sell, selling, or importing any product, service, or method that would infringe, directly or indirectly, any of the claims of the '452, '599, '940, and '801 patents;

C.    Awarding R.R. Donnelley damages in an amount sufficient to compensate it for Kodak's infringement, together with prejudgment interest and costs of suit;

D.    Adjudging that Kodak's infringement is willful and awarding R.R. Donnelley treble damages under 35 U.S.C. § 284;

E.    Declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and awarding R.R. Donnelley its attorneys' fees, costs and expenses against Kodak; and

F.    Granting such further relief as the Court may deem just and appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
   *Attorneys for Plaintiff*
   *R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January 3, 2007

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | C.A. No. ——————————06-032- | |
| v. ) | JJF | |
| ) | | |
| ~~QUARK~~CREO, INC., ~~CREO~~NEXPRESS ) | | |
| SOLUTIONS, INC., KODAK ) | | |
| VERSAMARK, INC., EASTMAN KODAK ) | **JURY TRIAL DEMANDED** | |
| COMPANY, AND KODAK GRAPHIC ) | | |
| COMMUNICATIONS COMPANY ) | | |
| ) | | |
| Defendants. ) | | |

### AMENDED COMPLAINT

Plaintiff R.R. Donnelley & Sons Company ("~~RRD~~R.R. Donnelley") hereby alleges and complains as follows:

### PARTIES

1.     ~~RRD~~R.R. Donnelley is a Delaware ~~corporation~~Corporation with a principal place of business at 111 South Wacker Drive, Chicago, IL 60606.

~~2.     Defendant Quark, Inc. ("Quark") is a Colorado corporation.~~

~~3.     On information and belief, Quark has a principal place of business at 1800 Grant Street, Denver, CO 80203.~~

2.     ~~4.~~ Defendants Creo, Inc. ("Creo"), NexPress Solutions, Inc. ("NexPress"), Kodak Versamark, Inc. ("Versamark"), Eastman Kodak Company ("Eastman Kodak"), and Kodak Graphic Communications Company ("KGCC"), collectively referred to hereinafter as

"~~Creo~~")Kodak," are Canadian~~, Delaware, Delaware~~, New Jersey and Washington corporations, respectively.

3. ~~5.~~ On information and belief, Creo, Inc. has a principal place of business at 3700 Gilmore Way, Burnaby, British Columbia, Canada V5G 4M1.

4. On information and belief, NexPress Solutions, Inc. has a principal place of business at 2600 Manitou Road, Rochester, NY 14653.

5. On information and belief, Kodak Versamark, Inc. has a principal place of business at 3000 Research Boulevard, Dayton, OH, 45420.

6. On information and belief, Eastman Kodak Company has a principal place of business at 343 State Street, Rochester, NY 14650.

7. On information and belief, Kodak Graphic Communications Company (f.k.a. Creo Americas, Inc.) has a principal place of business at 3 Federal Street, Billerica, MA 01821.

## JURISDICTION AND VENUE

8. This is a civil action brought by ~~RRD~~R.R. Donnelley for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b), in that events giving rise to ~~RRD~~R.R. Donnelley's claims occurred in this district, the defendants may be found and/or reside in this district by virtue of their activities in this district, and the defendants have committed acts of patent infringement in this district.

## BACKGROUND

10.    On March 20, 2001, United States Patent No. 6,205,452 ("the '452 patent") -- entitled "METHOD OF REPRODUCING VARIABLE GRAPHICS IN A VARIABLE IMAGING SYSTEM" -- duly and legally issued to ~~RRD~~R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and Daniel W. Beery. A copy of the '452 patent is attached as Exhibit A. Plaintiff ~~RRD~~R.R. Donnelley continues to own all rights, title, and interest to the '452 patent, including the right to recover for past infringement thereof.

11.    On December 4, 2001, United States Patent No. 6,327,599 ("the '599 patent") -- entitled "APPARATUS FOR CONTROLLING AN ELECTRONIC PRESS TO PRINT FIXED AND VARIABLE INFORMATION" -- duly and legally issued to ~~RRD~~R.R. Donnelley as assignee of the inventors, James L. Warmus and Mark G. Dreyer. A copy of the '599 patent is attached as Exhibit B. Plaintiff ~~RRD~~R.R. Donnelley continues to own all rights, title, and interest to the '599 patent, including the right to recover for past infringement thereof.

12.    On January 18, 2005, United States Patent No. 6,844,940 ("the '940 patent") -- entitled "IMPOSITION PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to ~~RRD~~R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '940 patent is attached as Exhibit C. Plaintiff ~~RRD~~R.R. Donnelley continues to own all rights, title, and interest to the '940 patent, including the right to recover for past infringement thereof.

13.    On October 4, 2005, United States Patent No. 6,952,801 ("the '801 patent") -- entitled "BOOK ASSEMBLY PROCESS AND APPARATUS FOR VARIABLE IMAGING SYSTEM" -- duly and legally issued to ~~RRD~~R.R. Donnelley as assignee of the inventors, James L. Warmus, Mark G. Dreyer, and J. Thomas Shively. A copy of the '801 patent

is attached as Exhibit D.  Plaintiff ~~RRD~~R.R. Donnelley continues to own all rights, title, and

interest to the '801 patent, including the right to recover for past infringement thereof.

        14.    ~~Quark makes, offers for sale, and sells QuarkXPress and QuarkXClusive, a variable content Xtension for QuarkXPress.~~The '452 patent, the '599 patent, the '940 patent, and the '801 patent are collectively referred to herein as the "patents-in-suit."

        15.    On information and belief, Eastman Kodak has three reportable segments, including the Graphic Communications Group.  On information and belief, the Graphic Communications Group segment consists of Kodak Polychrome Graphics LLC, Creo, NexPress, Versamark, and Encad, Inc.

        16.    ~~15. In~~On information and belief, in 2005, Eastman Kodak purchased Creo, Inc., the maker of Darwin Desktop ("Darwin").  On information and belief, Darwin ~~is~~for QuarkXPress and Adobe InDesign are both now made, offered for sale, and sold by Eastman Kodak and its Kodak Graphic Communications and Creo subsidiaries,

        17.    On information and belief, in May 2004, Eastman Kodak acquired Heidelberger Druckmaschinen AG's ("Heidelberg") fifty (50) percent interest in NexPress Solutions LLC, a 50/50 joint venture of Eastman Kodak and Heidelberg.  On information and belief, upon the acquisition, Eastman Kodak renamed its now wholly-owned subsidiary NexPress Solutions, Inc.  On information and belief, NexPress makes, offers for sale, and sells digital presses including the NexPress 2100 Plus Digital Production Color Press and the NexPress 2500 Digital Production Color Press, digital press controllers including the NexStation and variable digital printing software including Kodak NexTreme DL-100 Variable Data Software and Kodak NexTreme DL-1000 Variable Data Software.

18.    On information and belief, in January 2004, Eastman Kodak acquired Scitex Digital Printing and renamed the company Kodak Versamark. On information and belief, Versamark makes, offers for sale, and sells digital presses including the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, digital press controllers including the CS150, CS300, CS340, CS400, and CS600, and variable digital printing software including Composer.

19.    As used herein, "Digital Presses" includes the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers:  CS150, CS300, CS340, CS400, and CS600.

20.    As used herein, "Kodak Software" includes Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer.

21.    On information and belief, Kodak may manufacture and offer additional software products and digital presses, provide additional services, and participate in additional activities beyond those expressly identified in this Amended Complaint that infringe the patents-in-suit.  Information concerning those products, services, and activities are not reasonably available to R.R. Donnelley, and Defendants have improperly withheld legitimate discovery thus far in this case.  R.R. Donnelley believes that appropriate discovery, currently being withheld by Kodak, would lead to a proper identification of any additional infringing products, services, and activities.

5

**FIRST CLAIM FOR RELIEF**
**INFRINGEMENT OF U.S. PATENT NO. 6,327,599~~6,205,452~~ BY ~~QUARK~~KODAK**

      22.    16. ~~RRD~~R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through ~~15~~21 of this Complaint.

      23.    17. ~~By its actions, including the sale of QuarkXClusive, Quark~~On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '452 patent, and continues to infringe, contribute to infringement of and induce others to infringe~~,~~ the '~~599~~452 patent.

      24.    18. ~~Quark~~Kodak has been given notice of the '~~599~~452 patent.

      25.    19. ~~On information and belief,~~ ~~Quark~~Kodak's infringement of the '~~599~~452 patent is, has been, and continues to be willful and deliberate.

      26.    20. ~~RRD~~R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of ~~Quark~~Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless ~~Quark~~Kodak is enjoined from infringing the '~~599~~452 patent.

**SECOND CLAIM FOR RELIEF**
**INFRINGEMENT OF U.S. PATENT NO. 6,844,940~~6,327,599~~ BY ~~QUARK~~KODAK**

27. ~~21.~~ ~~RRD~~R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through ~~20~~26 of this Complaint.

28. ~~22. By its actions, including the sale of QuarkXClusive, Quark~~On information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '599 patent, and continues to infringe, contribute to infringement of and induce others to infringe~~,~~ the '~~940~~599 patent.

29. ~~23. Quark~~Kodak has been given notice of the '~~940~~599 patent.

30. ~~24. On information and belief, Quark~~Kodak's infringement of the '~~940~~599 patent is, has been, and continues to be willful and deliberate.

31. ~~25.~~ ~~RRD~~R.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of ~~Quark~~Kodak's infringement, and will continue to sustain damages and be irreparably harmed unless ~~Quark~~Kodak is enjoined from infringing the '~~940~~599 patent.

### THIRD CLAIM FOR RELIEF
### INFRINGEMENT OF U.S. PATENT NO. 6,~~205,452~~6,844,940 BY ~~CREO~~KODAK

32. ~~26.~~ ~~RRD~~R.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through ~~25~~31 of this Complaint.

7

33. 27. By its actions, including the sale of Darwin, CreoOn information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '940 patent, and continues to infringe, contribute to infringement of and induce others to infringe, the '452940 patent.

34. 28. CreoKodak has been given notice of the '452940 patent.

35. 29. On information and belief, CreoKodak's infringement of the '452940 patent is, has been, and continues to be willful and deliberate.

36. 30. RRDR.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of CreoKodak's infringement, and will continue to sustain damages and be irreparably harmed unless CreoKodak is enjoined from infringing the '452940 patent.

## FOURTHFORTH CLAIM FOR RELIEF
## INFRINGEMENT OF U.S. PATENT NO. 6,327,599 BY CREO

31. RRD hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 30 of this Complaint.

8

~~32.    By its actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe, the '599 patent.~~

~~33.    Creo has been given notice of the '599 patent.~~

~~34.    On information and belief, Creo's infringement of the '599 patent is, has been, and continues to be willful and deliberate.~~

~~35.    RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing the '599 patent.~~

~~**FIFTH CLAIM FOR RELIEF**~~
~~**INFRINGEMENT OF U.S. PATENT NO. 6,844,940 BY CREO**~~

~~36.    RRD hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 35 of this Complaint.~~

~~37.    By its actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe, the '940 patent.~~

~~38.    Creo has been given notice of the '940 patent.~~

~~39.    On information and belief, Creo's infringement of the '940 patent is, has been, and continues to be willful and deliberate.~~

~~40.    RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing the '940 patent.~~SIXTH ~~CLAIM FOR RELIEF~~

~~INFRINGEMENT OF U.S. PATENT NO. 6,952,801 BY CREO~~KODAK

37. 41. RRDR.R. Donnelley hereby incorporates, as though fully set forth herein, the allegations of paragraphs 1 through 4036 of this Complaint.

38. 42. By its actions, including the sale of Darwin, CreoOn information and belief, by its actions, which include but are not limited to (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses intended for use with infringing software including one or more of the Kodak Software; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages including for use with one or more of the Digital Presses with knowledge of the patents-in-suit; and (iv) providing and supporting its Variable Print Specification ("VPS") to encourage software developers to write infringing software packages to provide output in its VPS page description language including for use with one or more of the Digital Presses, Kodak has infringed, contributed to infringement of and induced others to infringe, the '801 patent, and continues to infringe, contribute to infringement of and induce others to infringe, the '801 patent.

39. 43. CreoKodak has been given notice of the '801 patent.

40. 44. On information and belief, CreoKodak's infringement of the '801 patent is, has been, and continues to be willful and deliberate.

41. 45. RRDR.R. Donnelley has sustained damages and suffered irreparable harm as a consequence of CreoKodak's infringement, and will continue to sustain damages and be irreparably harmed unless CreoKodak is enjoined from infringing the '801 patent.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff RRDR.R. Donnelley seeks judgment in its favor and against defendants Creo and Quarkdefendant Kodak as follows:

10

A.     Adjudging and decreeing that ~~Quark has infringed one or more claims of~~ ~~U.S. Patent Nos. 6,327,599 and 6,844,940;B.~~    Adjudging and decreeing that ~~Creo~~<u>Kodak</u> has infringed one or more claims of U.S. Patent Nos. 6,205,452, 6,327,599, 6,844,940, and 6,952,801;

~~C~~<u>B</u>.     Awarding injunctive relief permanently enjoining ~~Quark~~<u>Kodak</u>, its officers, agents, servants, employees and attorneys and all persons in active concert or participation with it from making, using, offering to sell, selling, or importing any product, service, or method that would infringe ~~any of the claims of the '599 and '940 patents, including~~ ~~but not limited to making, using, offering to sell, selling, importing, operating, providing or~~ ~~displaying to the public, licensing, or offering for license the QuarkXClusive software or any~~ ~~other infringing product or service;D.~~    ~~Awarding injunctive relief permanently enjoining~~ ~~Creo, its officers, agents, servants, employees and attorneys and all persons in active concert or~~ ~~participation with it from making, using, offering to sell, selling, or importing any product,~~ ~~service, or method that would infringe~~, <u>directly or indirectly,</u> any of the claims of the '452, '599, '940, and '801 patents~~, including but not limited to making, using, offering to sell, selling,~~ ~~importing, operating, providing or displaying to the public, licensing, or offering for license the~~ ~~Darwin software or any other infringing product or service;~~

C.     Awarding ~~RRD~~<u>R.R. Donnelley</u> damages in an amount sufficient to compensate it for ~~Quark's and Creo~~<u>Kodak</u>'s infringement, together with prejudgment interest and costs of suit;

D.     Adjudging that ~~Quark's and Creo~~<u>Kodak</u>'s infringement is willful and awarding ~~RRD~~<u>R.R. Donnelley</u> treble damages under 35 U.S.C. § 284;

E.    Declaring this to be an exceptional case pursuant to 35 U.S.C. § 285 and

awarding ~~RRD~~R.R. Donnelley its attorneys' fees, costs and expenses against ~~Quark and~~

~~Cree~~Kodak; and

F.    Granting such further relief as the Court may deem just and appropriate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
   *Attorneys for Plaintiff*
   *R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
~~FISH & NEAVE IP GROUP~~
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
~~FISH & NEAVE IP GROUP~~
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January ~~17, 2006~~3, 2007

~~501528~~

12

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) | **CONFIDENTIAL--**<br>**PURSUANT TO D. DEL. LR 26.2** |
| Defendants. | ) | |
| CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) | |
| Counterclaim-Plaintiffs, | ) | |
| v. | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |

## R.R. DONNELLEY & SONS COMPANY'S RESPONSES TO CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff R.R. Donnelley & Sons Company ("Plaintiff") hereby objects and responds to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's (collectively "Defendants") First Set of Interrogatories To Plaintiff as follows:

## GENERAL OBJECTIONS

Each of Plaintiff's responses to Defendants' First Set of Interrogatories is subject to, and incorporates, the following General Objections. Plaintiff specifically incorporates each of these General Objections into its specific responses to each of Defendants' interrogatories, whether or not each such General Objection is expressly referred to in a specific response. A response to a request shall not work as a waiver of any applicable specific or general objection to a request.

1.    Plaintiff incorporates by reference the General Objections set forth in its responses to Defendants' First Set of Requests for Production of Documents and Things Directed to Plaintiff.

2.    Plaintiff objects to these interrogatories to the extent they seek to impose any requirement or obligation on Plaintiff beyond the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.    Plaintiff objects to these interrogatories to the extent they seek discovery of information that is subject to the attorney-client privilege, the attorney work product immunity or any other privileges or exemptions from production.

4.    Plaintiff objects to these interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

5.    Plaintiff objects to these interrogatories to the extent they seek the identification of persons with knowledge as being overly broad and unduly burdensome because they require Plaintiff to identify each of its employees with knowledge of each interrogatory topic, regardless of the level and nature of the employee's knowledge. In answering these interrogatories, Plaintiff will make an inquiry of those individuals who are reasonably accessible

2

to Plaintiff and who are reasonably likely to have such information and will identify those individuals substantively knowledgeable about each particular interrogatory topic.

6.      Plaintiff objects to these interrogatories to the extent that they seek to compel Plaintiff to generate or create information that does not exist, is not used, or is not generated by Plaintiff in the ordinary course of business.

7.      Plaintiff objects to these interrogatories to the extent that they seek discovery of information about ongoing research and development activities of Plaintiff that have not yet been commercialized.

8.      Plaintiff objects to these interrogatories to the extent that they seek to compel Plaintiff to identify documents created after the filing date of its complaint in this action.

9.      Plaintiff's discovery and investigations of the facts relevant to the subject matter of this action are ongoing. Plaintiff's responses are based upon information and writings presently available to and located by Plaintiff and their attorneys, and are without prejudice to Plaintiff's right to produce evidence of any additional facts. Accordingly, Plaintiff reserves the right to supplement and/or amend these responses when its discovery and investigations are complete.

## RESPONSES TO INTERROGATORIES

These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility.

## INTERROGATORY 1

Identify each accused apparatus, product, device, process, method, act, or other instrumentality that you allege infringes the patents in suit and describe in detail how it infringes. Please include in your answer a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents and whether each Creo Defendant infringes directly, by inducement, or contributorily. For each element you contend is

3

governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s) in each such apparatus, product, device, process, method, act, or other instrumentality.

## RESPONSE TO INTERROGATORY 1

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for a level of detail that is customarily provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request to the extent that it seeks Plaintiff's contentions before discovery is complete. Plaintiff has received incomplete discovery from Defendants regarding the accused products and activities, and thus has not yet completed its discovery and investigation of all of the facts that may eventually be responsive to this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, Defendants infringe at least claim 1 of Warmus et al. U.S. Patent No. 6,205,452 ("the '452 patent"), claim 11 of Warmus et al. U.S. Patent No. 6,327,599 ("the '599 patent"), claim 11 of Warmus et al. U.S. Patent No. 6,844,940 ("the '940 patent"), and claim 1 of Warmus et al. U.S. Patent No. 6,952,801 ("the '801 patent") (collectively, "the patents-in-suit"). The following claim charts compare these claims with one of Defendant's accused products, Darwin Desktop. Plaintiff reserves the right to modify its positions as discovery proceeds and as claim construction proceedings warrant. In accordance with the Court's Scheduling Order, the parties must exchange opening claim construction briefs on February 16, 2007.

Darwin Desktop infringes at least claim 1 of the '452 patent for at least the reasons set forth below:

4

| Claim 1 | Infringing Elements of Darwin Desktop |
|---|---|
| 1. A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | Darwin Desktop includes a tool for controlling a display device to display variable graphics information in graph format (e.g., the Charts tool of Darwin Pilot). Darwin Desktop uses a database having a number of fields, each of which represents variable information or variable graphics information. |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | Darwin Desktop enables the development of a template page file that has master data representing fixed information and placeholders representing an area of a page for variable information. |
| (b) selecting areas of the page for the variable graphics information; | When using Darwin Desktop, a representative chart placeholder appears in the area of the page selected for a chart containing variable graphics information. |
| (c) specifying graph parameters; and | Darwin Desktop allows the specification of graph parameters including, for example, chart type (e.g., pie, column, bar, or line), colors, and labels. |
| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | Darwin Desktop displays pages with the fixed information, the selected variable information from the database, and the selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. |

5

Darwin Desktop infringes at least claim 11 of the '599 patent for at least the
reasons set forth below:

| Claim 11 | Infringing Elements of Darwin Desktop |
|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | Darwin Desktop is used to generate a file that can be used to control an electronic press. |
| (a) developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | Darwin Desktop enables the development of a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page (e.g., using the Darwin Pilot). |
| (b) assembling a database having entries therein each representing variable information to be printed; | Darwin Desktop enables the assembly of a database having entries representing variable information to be printed (e.g., using Database Administration in the Darwin Pilot). |
| (c) developing a master page file from the template file wherein the master page file defines the fixed information; and | Darwin Desktop generates a file (e.g., a page description language file) from the template file that defines the fixed information. |
| (d) converting the template files the database and the master page file into press commands specifying sequence and content of page production by the press. | The file generated from the template file by Darwin Desktop, in conjunction with the database and template file, is used to produce the variable print job. |

6

Darwin Desktop infringes at least claim 11 of the '940 patent for at least the reasons set forth below:

| Claim 11 | Infringing Elements of Darwin Desktop |
|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | Darwin Desktop is used to generate a file that can be used to control an electronic press. |
| (a) developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | Darwin Desktop enables the development of first and second data sets representing associated first and second templates, where each data set has master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed (e.g., using the Darwin Pilot). |
| (b) developing a database having a number of entries each of which represents a variable object; and | Darwin Desktop enables the assembly of a database having entries representing variable objects (e.g., using Database Administration in the Darwin Pilot). |
| (c) causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | Darwin Desktop separates fixed information, which it defines in reusable objects, from position data for each data set in preparation for rasterization. The output generated by Darwin Desktop (e.g., a page description language file) is used to cause an electronic press to print output pages with the reusable objects and variable objects. |

Darwin Desktop infringes at least claim 11 of the '801 patent for at least the reasons set forth below:

| Claim 1 | Infringing Elements of Darwin Desktop |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | Darwin Desktop enables the assembly of first and second different books. |
| (a) storing a first number of pages; | Darwin Desktop stores a first number of pages. |
| (b) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | Darwin Desktop enables a user to specify a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book. |
| (c) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | Darwin Desktop enables a user to specify a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book. |
| (d) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | Darwin Desktop determines whether a stored page is to be assembled into the first book based on the first set of pagination information. A second number of stored pages to be assembled into the first book is less than the first number. |
| (e) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | Darwin Desktop determines whether a stored page is to be assembled into the second book based on the second set of pagination information. A third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number. |

| (f) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | Darwin Desktop generates page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information. |
|---|---|
| (g) producing the first and second books in a single press run. | Darwin Desktop enables the production of the first and second books in a single press run. |

Plaintiff further alleges that Defendants directly infringe the patents-in-suit by making, using, and selling the accused products and services. Defendants contribute to and induce infringement by others who use Defendants' variable digital printing software, including but not limited to Darwin Desktop. On information and belief, Defendants contribute to and induce infringement by others by selling digital presses bundled with infringing variable digital printing software and by promoting third party infringing software packages with the sale of Defendants' digital presses.

In this regard, discovery currently being withheld by Defendants likely will lead to additional information concerning Defendants' infringing products. For example, on information and belief, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing (as defined in Plaintiff's First Set of Interrogatories to Defendants) will also be found to infringe the patents-in-suit. Furthermore, Plaintiff believes that Defendants have been bundling infringing software products with the sale of their digital presses, and that Defendants have been promoting infringing third party software packages with the sale of Defendants' digital presses.

9

Plaintiff has reason to believe that infringing sales or activities (e.g., the inducement of sales of infringing third party software packages) have occurred with respect to Defendants' digital presses, including without limitation the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

Defendants improperly continue to refuse to completely answer Plaintiff's interrogatories and document requests. Thus, Plaintiff is unable to provide all of the details of each and every one of its infringement contentions with respect to each of the products named above at this time. Therefore, Plaintiff expressly reserves the right to supplement its responses to Defendants' interrogatories once Defendants provide the necessary information.

One or more as yet unidentified employees or agents of Defendants will be most knowledgeable about Defendants' infringing products and services. James L. Warmus of R.R. Donnelley & Sons Company may have knowledge regarding Defendants' products and Plaintiff's related claims.

## INTERROGATORY 2

For each claim identified in your response to Interrogatory No. 1, state your constructions of all claim terms, phrases, clauses, or limitations, and the factual and legal bases for your constructions.

## RESPONSE TO INTERROGATORY 2

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for information that is customarily provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request to the extent that it seeks Plaintiff's exhaustive contentions when discovery is just beginning. Plaintiff has received no documents from

10

Defendants regarding the accused products and activities and has not yet completed its discovery and investigation of all of the facts relating to this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, infringement is demonstrated by comparing the plain and ordinary English language meaning of the claims to the features of Defendants' accused products and activities. Plaintiff, however, expressly reserves the right to identify appropriate refinements to and support for a claim construction consistent with the schedule set by the Court. In accordance with the Court's Scheduling Order, the parties must exchange opening claim construction briefs on February 16, 2007.

**INTERROGATORY 3**

For each claim identified in your response to Interrogatory No. 1, state your contentions as to the earliest priority date that each claim is entitled, and describe in detail all factual and legal bases for your contentions.

**RESPONSE TO INTERROGATORY 3**

In addition to its General Objections, Plaintiff objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this interrogatory in that the term "priority date" is undefined. Plaintiff will interpret "priority date" to mean the filing date of the earliest filed application to which a particular patent claims priority. Plaintiff also objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

11

Subject to the foregoing general and specific objections, and subject to Plaintiff's understanding of the term "priority date," Plaintiff responds that each of the '599 patent, the '940 patent, and the '801 patent claim priority to or matured from a patent application that was filed on June 7, 1995. Therefore, the priority date of the asserted claims of these three patents is June 7, 1995.

The application that matured into the '452 patent was filed on October 29, 1997. Therefore, the priority date of the asserted claims of the '452 patent is October 29, 1997.

**INTERROGATORY 4**

For each claim identified in your response to Interrogatory No. 1, state your contentions as to conception dates and reduction to practice dates, and describe in detail all factual and legal bases for your contentions.

**RESPONSE TO INTERROGATORY 4**

In addition to its General Objections, Plaintiff objects to this interrogatory as irrelevant because Defendants have not identified a defense based on prior art under 35 U.S.C. §§ 102(a), (e) or (g). Plaintiff also objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Plaintiff objects to providing the requested information until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit. Plaintiff also objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, until such time as Defendants assert prior art placing the conception date and the reduction to practice date of the asserted claims at issue, the conception and reduction to practice dates of the asserted claims are at least as early as the filing dates of the applications that matured into the

12

patents-in-suit. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the patent application."). Each of the '599 patent, the '940 patent, and the '801 patent claim priority to or matured from a patent application that was filed on June 7, 1995. Therefore, the conception date and reduction to practice date of the asserted claims of these three patents is at least as early as June 7, 1995.

The application that matured into the '452 patent was filed on October 29, 1997. Therefore, the conception date and reduction to practice date of the asserted claims of the '452 patent is at least as early as October 29, 1997.

**INTERROGATORY 5**

Identify each person with whom you, your attorneys, or your representatives have contacted or negotiated regarding licenses or possible licenses for the patents in suit, and provide a detailed description of the contacts or negotiations and the results of the contacts or negotiations, including a detailed description of the terms and conditions of any actual licenses or draft licenses that resulted and an identification of any license agreements.

**RESPONSE TO INTERROGATORY 5**

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that there are no outstanding licenses with third parties regarding the patents-in-suit. The following table identifies correspondence that has taken place with third parties regarding licensing at least some of the patents-in-suit.

13

| Date | Person Contacted | Reply From |
|---|---|---|
| April 11, 2003 | Mr. William Gates, III<br>Chairman and Chief Software Architect<br>Microsoft Corporation | |
| July 11, 2003 | Mr. Brad Smith<br>General Counsel<br>Microsoft Corporation | |
| July 31, 2003 | | Dan Christen<br>Corporate Attorney<br>Microsoft Corporation |
| April 11, 2003 | Mr. Nachum Shamir<br>President and CEO<br>Scitex Digital Printing, Inc. | |
| May 2, 2003 | | Gary L. Froelich<br>Froelich & Weprin Co., L.P.A.<br>(counsel for Scitex) |
| July 11, 2003 | Gary L. Froelich<br>Froelich & Weprin Co., L.P.A.<br>(counsel for Scitex) | |
| December 5, 2005 | Chief Executive Officer<br>Atlas Software B.V. | |
| January 6, 2004 | | Atlas Software B.V. |
| December 5, 2003 | Mr. Donald Belcher<br>Chief Executive Officer<br>Banta Corporation | |
| December 19, 2003 | | Mr. Paul S. Hunter<br>Foley & Lardner |
| December 2, 2003 | | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. |
| December 9, 2003 | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. | |
| January 7, 2004 | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. | |

14

| Date | Person Contacted | Reply From |
|---|---|---|
| January 15, 2004 | | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. |
| December 5, 2003 | Mr. James McNeil<br>President<br>Datalogics, Inc. | |
| December 5, 2003 | Mr. David Marksbury<br>President and CEO<br>Exstream Software | |
| December 5, 2003 | Mr. Darryl Dobin<br>President for the Americas<br>GMC Software Technology, Inc. | |
| December 17, 2003 | | Mr. Darryl Dobin<br>President for the Americas<br>GMC Software Technology, Inc. |
| December 5, 2003 | Mr. Charles Ying<br>Chief Executive Officer<br>Pageflex, Inc. | |
| December 5, 2003 | Mr. Jacob Aizikowitz<br>President and CTO<br>XMPie, Inc. | |
| December 11, 2003 | | Mr. Guy Yonay<br>Eitan, Pearl, Latzer & Cohen<br>Zedek, LLP |
| December 5, 2003 | Mr. Patrick Lytle<br>Chief Executive Officer<br>Lytrod Software, Inc. | |
| January 19, 2003 | Mr. James Langley<br>President Commercial Printing,<br>Senior Vice President<br>Eastman Kodak Company | |
| February 10, 2004 | | Ronald P. Hilst, Esq.<br>Assistant General Counsel<br>Eastman Kodak Company |
| April 11, 2003 | Carly Fiorina<br>Chairman, CEO<br>Hewlett-Packard Company | |

15

| Date | Person Contacted | Reply From |
|---|---|---|
| October 27, 2003 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| October 30, 2003 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| December 19, 2003 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 3, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 3, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 10, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 11, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 17, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 19, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 24, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| March 24, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| April 26, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| April 26, 2005 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| April 11, 2003 | Ms. Anne Mulcahy<br>Chairman and CEO<br>Xerox Corporation | |
| July 11, 2003 | Ms. Christina E. Clayton<br>General Counsel | |

16

| Date | Person Contacted | Reply From |
|---|---|---|
| August 22, 2003 | | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation |
| February 3, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| February 17, 2004 | | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation |
| February 27, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| March 23, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| April 14, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| April 14, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| May 11, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| May 19, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |

At one point in time, a license to at least one of the patents-in-suit was granted to Barco Graphics NV. However, that license agreement has been terminated since at least December 10, 2003. Plaintiff further responds that the burden of deriving specifics is substantially equal for Plaintiff and Defendants. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Plaintiff shall produce and identify business records sufficient to answer this interrogatory.

**INTERROGATORY 6**

State in detail your contentions as to whether RRD is obligated or required to license the patents in suit (either individually or in some combination) on reasonable terms

17

and/or non-discriminatory bases, including whether such obligation or requirement arises from RRD's participation in any standards-making process.

## RESPONSE TO INTERROGATORY 6

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity. Plaintiff further objects to this interrogatory to the extent that the term "standards-making process" was not defined by Defendants, is vague and indefinite, and is susceptible to multiple interpretations.

Subject to the foregoing general and specific objections, Plaintiff responds that it is not obligated or required to license the patents-in-suit -- either individually or in some combination -- on reasonable terms and/or non-discriminatory bases.

## INTERROGATORY 7

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the patents in suit]."

## RESPONSE TO INTERROGATORY 7

See response to Interrogatory No. 1.

## INTERROGATORY 8

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the patents in suit]."

## RESPONSE TO INTERROGATORY 8

Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

18

Subject to its general objections and the foregoing specific objection, Plaintiff responds that Defendants were made aware of the patents-in-suit through at least the following correspondence.

On April 11, 2003, William McCracken, Esq. sent a letter on behalf of Plaintiff to Ms. Anne Mulcahy, Chariman & CEO of Xerox Corporation regarding Plaintiff's variable imaging patent portfolio. That letter specifically referenced at least the '452 and '599 patents. The '940 and '801 patents had not yet issued. Apparently, the April 11, 2003 letter to Xerox was forwarded to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. This was confirmed by Defendants' responses to Plaintiff's First Set of Interrogatories, in which Defendants state that Gary B. Cohen, Esq., Senior Patent Counsel of Xerox Corporation forwarded the April 11, 2003 letter to Mr. Fogel on or about September 4, 2003. Mr. Fogel wrote to Mr. McCracken on December 2, 2003 regarding the April 11, 2003 correspondence with Xerox. Yvonne Sor, Esq., Special Counsel to Mr. McCracken's firm, McCracken & Frank, responded to Mr. Fogel's letter on December 9, 2003. After receiving no response, Ms. Sor sent a second letter to Mr. Fogel on January 7, 2004. Mr. Fogel responded to the January 7 letter in an e-mail dated January 15, 2004.

Also on April 11, 2003, Mr. McCracken sent a letter on behalf of Plaintiff to Mr. Venkat Purushotham, President and CEO of NexPress Solutions LLC. No response was received. NexPress was originally a joint venture between Eastman Kodak Company and Heidelberger Druckmaschinen AG. NexPress Solutions, Inc. is now a wholly-owned subsidiary of Eastman Kodak Company.

Further, on April 11, 2003, Mr. McCracken sent a letter on behalf of Plaintiff to Mr. Nachum Shamir, President and CEO of Scitex Digital Printing, Inc. That letter also

19

specifically referenced at least the '452 and '599 patents. The '940 and '801 patents had not yet issued. According to a May 2, 2003 letter from Gary L. Froelich, Esq. of Froelich & Weprin, Mr. McCracken's April 11, 2003 letter had been referred to him for a response. On July 11, 2003, Mr. McCracken sought Mr. Froelich's response. It appears that no response was ever received. The Eastman Kodak Company acquired the assets of Scitex Digital Printing, Inc. on January 5, 2004. On January 19, 2004, Ms. Sor sent a letter to Mr. James Langley, President Commercial Printing and Senior Vice President of Eastman Kodak Company. Ms. Sor's letter included copies of the prior correspondence with Scitex Digital Printing and NexPress. Her January 19, 2004 letter also included copies of at least the '452 and '599 patents. The '940 and '801 patents had not yet issued.

Joseph Guiliano, Esq. of Ropes & Gray LLP sent a letter to Ms. Judith Hess, Vice President of Kodak Graphic Communications Group on December 19, 2005.

Therefore, Defendants have had direct notice of certain of the patents-in-suit since at least as early as April 11, 2003, and all of the patents-in-suit since at least as early as December 19, 2005. Appropriate documents will be produced and Bates Numbers will be identified in a supplemental response in accordance with Federal Rule of Civil Procedure 33(d).

## INTERROGATORY 9

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the patents in suit] is, has been, and continues to be willful and deliberate."

## RESPONSE TO INTERROGATORY 9

In addition to its General Objections, Plaintiff objects on the basis that it has received no discovery from Defendants regarding the accused products and activities and has not yet completed its discovery and investigation of the facts relating to this interrogatory. Plaintiff

20

further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that Defendants were notified of the patents-in-suit and their infringement thereof, and Defendants continue to infringe, contribute to infringement by others, and induce others to infringe the patents-in-suit even after such notice.

## INTERROGATORY 10

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the patents in suit]."

## RESPONSE TO INTERROGATORY 10

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for a level of detail to be provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request in that Plaintiff has received no discovery from Defendants relating to Plaintiff's damages claims and has not yet completed its discovery and investigation of the facts relating to the subject matter of this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, Defendants have been and continue to dilute the value of Plaintiff's intellectual property by infringing, contributing to infringement by others, and inducing others to infringe the patents-in-suit. On information and belief, not only do Defendants sell infringing software directly to end users, Defendants also bundle infringing

21

software with some of Defendants' digital presses and induce purchasers of Defendants' digital presses to purchase third parties' infringing software. Moreover, Defendants' infringing activities have diminished Plaintiff's own profits by flooding the market with infringing technology. Defendants have placed Plaintiff's proprietary technology directly into the hands of Plaintiff's competitors and have therefore eroded Plaintiff's profits by enabling Plaintiff's competitors to practice the claimed invention.

Plaintiff intends to show that it is at least entitled to a reasonable royalty on all of Defendants' infringing products and activities, if not lost profits. With respect to a reasonable royalty damages theory, Plaintiff will develop and present evidence in accordance with the applicable factors for calculating a reasonable royalty that are set out in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971) and the prevailing practices, customs, and royalty rates in the industry. The *Georgia-Pacific* factors include: (1) royalties received for licensing of the patent-in-suit, proving or tending to prove an established royalty, (2) rates paid for other patents comparable to the patent-in-suit, (3) nature and scope of the license, (4) licensor's established policy and marketing program, (5) the commercial relationship between the licensor and licensee, (6) the effect of selling the patented specialty in promoting sales of other products of the licensee, (7) the duration of the patent and the term of the license, (8) the established profitability of the system made under the patent, its commercial success, and its current popularity, (9) the utility and advantage of the patent property over the old modes and devices, (10) the nature of the patent invention, (11) the extent to which the infringer has made use of the invention, (12) the portion of the profit or selling price that may be customary in the particular business to allow for use of the invention, (13) the portion of the realizable profit that

22

should be credited to the invention as distinguished from non-patented elements, (14) the opinion testimony of qualified experts, and (15) the amount that a prudent licensor and licensee would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement.

Furthermore, Plaintiff is entitled to the profits that have been eroded by Defendants' infringing activities. In this regard, Plaintiff may seek the lost profits for variable digital printing jobs that they would have received but for Defendants' infringing activities enabling Plaintiff's competitors to siphon away customers. Moreover, Plaintiff may have been able to charge higher prices were it not for Defendants enabling so many competitors.

Plaintiff will provide a complete statement of all opinions to be expressed by its damages expert and the bases and reasons therefore, with respect to those issues on which Plaintiffs bear the burden of proof in its expert reports in accordance with the expert discovery schedule entered by the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com

Attorneys for R.R. Donnelley & Sons Company

23

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

July 7, 2006

527819

24

**CERTIFICATE OF SERVICE**

I, Rodger D. Smith II, hereby certify that on July 7, 2006, I caused true

and correct copies of the foregoing to be served in the manner indicated:

**BY HAND**

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801


**BY FEDERAL EXPRESS**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595

Rodger D. Smith II (#3778)
MORRIS,  NICHOLS, ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com