IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-032-JJF |
| ) | |
| QUARK, INC., CREO, INC., EASTMAN ) | |
| KODAK COMPANY, AND KODAK ) | |
| GRAPHIC COMMUNICATIONS ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

---

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO PRECLUDE DEFENDANTS FROM RELYING ON UNDISCLOSED CONTENTIONS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

January 3, 2007

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                                    ii

INTRODUCTION                                                                          1

NATURE AND STAGE OF PROCEEDINGS                                                      2

STATEMENT OF FACTS                                                                    3

    A.    Defendants' Failure To Provide Contention Interrogatory Responses                 3

    B.    Defendants' Other Attempts To Block Discovery                                     6

        1.    Defendants Have Refused To Provide Discovery Concerning Infringing Products    6

        2.    Defendants Have Refused To Produce A Rule 30(b)(6) Witness                      7

        3.    Defendants Have Refused To Produce Their Employees For Depositions In The United States    8

ARGUMENT                                                                              9

I.    DEFENDANTS SHOULD BE PRECLUDED FROM RELYING ON CONTENTIONS THEY FAILED TO DISCLOSE BEFORE THE DECEMBER 11, 2006 COURT-ORDERED DEADLINE    9

II.    IN THE ALTERNATIVE, DEFENDANTS SHOULD BE COMPELLED TO PROVIDE IMMEDIATE AND COMPLETE RESPONSES TO RRD'S CONTENTION INTERROGATORIES    13

CONCLUSION                                                                            14

ii.

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*02 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)          10

*AMEX, LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002)          12

*ArthroCare Corp. v. Smith & Nephew, Inc.*,
    310 F. Supp. 2d 638, 667 (D. Del. 2004),
     2005 U.S. App. LEXIS 8108 (Fed. Cir. May 10, 2005)      12

*ATD Corp. v. Lydall, Inc.*,
    159 F.3d 534 (Fed. Cir. 1998)          11

*Finch v. Hercules Inc.*,
    C.A. No. 92-251-MMS, 1995 WL 785100
    (D. Del. Dec. 22, 1995)          10

*Georgia-Pacific Corp. v. U.S. Gypsum Co.*,
    C.A. No. 94-489-RRM, 1996 U.S. Dist.
    LEXIS 22616 (D. Del. Dec. 27, 1996)          11

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*,
    911 F. Supp. 76 (E.D.N.Y. 1996)          12

*Praxair, Inc. v. ATMI, Inc.*,
    231 F.R.D. 457 (D. Del. 2005)          13

*Saudi v. Valmet-Appleton, Inc.*,
    219 F.R.D. 128 (E.D. Wis. 2003)          10

*Tracinda Corp. v. Daimlerchrysler AG*,
    C.A. No. 00-993-JJF, 2005 U.S. Dist.
    LEXIS 6741 (D. Del. April 20, 2005)          11

*Transclean Corp. v. Bridgewood Servs., Inc.*,
    77 F. Supp. 2d 1045 (D. Minn. 1999)          12

*Wachtel v. Health Net, Inc.*,
    2006 WL 3538935 (D.N.J. Dec. 6, 2006)          11

## TABLE OF AUTHORITIES (CONT'D)

<u>Other Authorities</u>

Fed. R. Civ. P. 26(e)(2)          13, 14

Fed. R. Civ. P. 30(b)(1)          10

Fed. R. Civ. P. 30(b)(6)          9, 10

Fed. R. Civ. P. 37(c)(1)          13

<u>INTRODUCTION</u>

Plaintiff R.R. Donnelley & Sons Company ("RRD") moves to preclude Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants") from relying on contentions that they failed to disclose before the Court-ordered deadline for doing so.

Defendants' failure to provide meaningful contention interrogatory responses before the Court-ordered deadline is just the latest in a string of attempts to frustrate RRD's ability to obtain discovery in this case -- including Defendants' refusal to provide discovery concerning allegedly infringing products, Defendants' refusal to produce a Rule 30(b)(6) witness for deposition, and Defendants' refusal to produce its witnesses for deposition in the United States. Although each of Defendants' refusals to comply with their discovery obligations is the subject of separate motions presently before the Court, those motions demonstrate that Defendants' non-responses to direct and important contention interrogatories is just the latest in a series of ongoing discovery abuses.

As a result of Defendants' conduct, discovery in this case has become a one-way street with Defendants taking depositions of RRD's witnesses because RRD has provided the information requested by Defendants. RRD, on the other hand, has been stymied from pursuing depositions of Defendants, because Defendants have refused to provide documents they are required to produce, refused to answer interrogatories that are critical to the conduct of depositions and the upcoming *Markman* hearing, and because Defendants are refusing to produce their witnesses for depositions on topics relevant to this case or even in the United States.

For the reasons discussed below, the Court should enter an order precluding Defendants from relying on contentions they failed to disclose before the Court-ordered December 11, 2006 deadline for the completion of contention interrogatories.

<u>NATURE AND STAGE OF PROCEEDINGS</u>

RRD filed this action on January 17, 2006, alleging that Defendants infringe four patents related to variable digital printing -- U.S. Patent No. 6,205,452; U.S. Patent No. 6,327,599; U.S. Patent No. 6,844,940; and U.S. Patent No. 6,952,801 (D.I. 1).   In the Complaint, RRD alleged that "[b]y [their] actions, including the sale of Darwin [Desktop software], [Defendants have] infringed, contributed to infringement of and induced others to infringe and continue[] to infringe, contribute to infringement of and induce others to infringe" the patents-in-suit (*id.* at ¶¶ 27, 32, 37, 42).   RRD requested an injunction enjoining Defendants' infringing activities, "including but not limited to making, using, offering to sell, selling, importing, operating, providing or displaying to the public, licensing, or offering for license the Darwin software <u>or any other infringing product or service</u>" (*id.* at ¶ B; emphasis added).

Defendants filed their Answer and Counterclaims on March 8, 2006, asserting affirmative defenses of non-infringement, invalidity, prosecution history estoppel, laches, equitable estoppel, waiver, prosecution laches, license and/or implied license, and unclean hands (D.I. 18 at ¶¶ 47-56).

The Court entered a Scheduling Order on May 9, 2006, which required the parties to complete contention interrogatories by November 30, 2006 (D.I. 26, ¶ 3(b)).   That date was subsequently extended by stipulation until December 7, 2006 (D.I. 74), and until December 11, 2006 (D.I. 81).

Under the Court's Scheduling Order, opening claim construction briefs are due February 16, 2007, and fact discovery must be completed by March 1, 2007 (D.I. 26). A *Markman* hearing is scheduled for April 2, 2007 (*id.*).[1]

## STATEMENT OF FACTS

A.   Defendants' Failure To Provide Contention Interrogatory Responses

RRD served interrogatories on May 1, 2006, seeking Defendants' contentions concerning the defenses raised in Defendants' Answer and Counterclaims, including:

- Non-infringement (including any claim construction contentions) (Interrogatory Nos. 2 and 3);

- Prosecution history estoppel (Interrogatory No. 4);

- Invalidity (Interrogatory No. 5);

- Laches (Interrogatory No. 6);

- Equitable estoppel (Interrogatory No. 7);

- Waiver (Interrogatory No. 8);

- Prosecution laches (Interrogatory No. 9);

- License and/or implied license (Interrogatory No. 10); and

- Unclean hands (Interrogatory No. 11).

(Ex. A).

In their June 12, 2006 responses, Defendants refused to disclose their contentions, objecting to RRD's interrogatories as "premature," and stating that they would respond to RRD's contention interrogatories at "the appropriate time in the litigation" (Ex. B at 3-4).

---

[1]   By separate motion, RRD is seeking to extend these, and other, deadlines by three months, because Defendants' discovery conduct to date has made it impossible to complete discovery and prepare the case for trial within the existing schedule.

The next day, RRD pointed out the deficiencies in Defendants' interrogatory responses, including the improper "prematurity" objection:

> Kodak and Creo have objected to answering many of R.R. Donnelley's interrogatories on the basis that they are "premature" and that "Creo at the appropriate time in the litigation will provide a response." The appropriate time was last Monday, June 12, and defendants' refusal to provide a substantive response is improper. Nor is there, as you are no doubt aware, a "prematurity" objection in the Federal Rules. We assume defendants had a good faith basis for the contentions in their Answer, Affirmative Defenses, and Counterclaim and that discovery from R.R. Donnelley would not be necessary before your clients could give a basis for their contentions.

(Ex. C).

After RRD filed a motion to compel (D.I. 36), Defendants provided "supplemental" interrogatory responses on July 3, 2006 (Ex. D). Defendants continued to object to RRD's contention interrogatories as "premature." *See, e.g., id.* at 6 ("Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced. In particular, Creo objects to providing claim charts at this time . . . .").

Moreover, Defendants' "supplemental" responses failed to provide any details concerning Defendants' contentions. In response to Interrogatory No. 2 concerning Defendants' non-infringement contentions, Defendants listed one element from one claim of each of the patents in suit and stated (in conclusory fashion) that the Darwin software does not perform that element, concluding that "for these and other reasons, it does not infringe . . ." (*id.* at 5). The "other reasons" were never identified, and no claim construction contentions were disclosed in support of Defendants' non-infringement contentions. In response to Interrogatory No. 5 concerning Defendants' invalidity contentions, Defendants listed five "commercial embodiments" as invalidating prior art, but failed to provide any information about those commercial products, or how any of them invalidate the claims of the patents-in-suit (*id.* at 10).

On November 16, 2006, RRD warned Defendants that if they did not disclose their contentions by the Court-ordered deadline for the completion of contention interrogatories, RRD would move to preclude Defendants from relying on any undisclosed contentions:

> Defendants continue to improperly object to R.R. Donnelley's contention interrogatories as 'premature' and otherwise fail to provide meaningful responses . . . . Judge Farnan set a deadline of November 30, 2006 for completing contention interrogatories. That date is rapidly approaching, and yet, Defendants continue to hide behind an objection that has no basis in law. <u>If Defendants do not withdraw this objection and promptly supplement their interrogatory responses, R.R. Donnelley intends to seek to preclude Defendants from asserting the claims and defenses for which they refuse to provide meaningful responses and relying on any evidence not disclosed regarding identified claims and defenses.</u>

(Ex. E at 2; emphasis added).

On November 30, 2006, RRD again reminded Defendants of their obligation to provide meaningful contention interrogatory responses by the Court-ordered deadline:

> R.R. Donnelley expects Defendants to adequately respond to its pending contention interrogatories, including Plaintiff's Interrogatory No. 2 [concerning non-infringement], which necessarily includes providing claim construction contentions. . . . Many of the Delaware Federal District Court judges find early contention interrogatory practice to be beneficial to a case. Indeed, Judge Farnan scheduled their completion three months before the end of fact discovery.

(Ex. F).

On December 11, 2006 -- the Court-ordered deadline for the completion of contention interrogatories -- Defendants served their second "supplemental" responses to RRD's contention interrogatories (Ex. G). Despite the Court-ordered deadline, Defendants refused to provide non-infringement (or claim construction) contentions, responding with no detail about their non-infringement contentions, and stating that they would not disclose their non-infringement contentions until after the Court issues its claim construction decision:

> Creo contends that a person using the Darwin Software does not infringe any of the asserted method claims. Darwin does not perform all elements of each asserted claim, and/or performs certain elements in a manner different from the manner required by the claims. A proper analysis of the bases for noninfringement, however, requires a detailed claim construction by the Court, which has not yet been performed.

(*Id.* at 5). Defendants also failed to provide any details concerning their invalidity contentions by the Court-ordered deadline. Defendants again identified certain commercial embodiments as prior art, but failed to provide any information about those products, or how any of them supposedly invalidate the claims of the patents-in-suit (*id.* at 13).

B.    Defendants' Other Attempts To Block Discovery

To illustrate the way in which Defendants have conducted discovery in this case, RRD briefly describes the other outstanding discovery disputes and Defendants' attempts to avoid providing any real discovery. It is clear from Defendants' conduct in this case that their strategy is to object to every reasonable and customary discovery request unless and until they are compelled to provide responses and documents by the Court. Defendants' strategy has prevented RRD from obtaining critical information for more than six months, while Defendants take all the discovery they want because RRD has complied with its discovery obligations.

1.    Defendants Have Refused To Provide Discovery
       Concerning Infringing Products

In its May 1, 2006 discovery requests, RRD sought discovery concerning Defendants' infringing variable digital printing software. Specifically, RRD sought discovery concerning "Defendants' Software Products," which RRD defined to include four software packages: "Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-

100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer"
(Ex. A at 4).

RRD also sought discovery concerning Defendants' hardware products that
contribute to infringement by others and induce others to infringe the patents-in-suit.
Specifically, RRD sought discovery concerning "Defendants' Hardware Products," which RRD
defined to include four digital presses: "Kodak Versamark V-Series Printing System, the Kodak
Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color
Press, and the Kodak NexPress 2500 Digital Production Color Press" (*id.* at 4-5).

In their June 12, 2006 discovery responses, Defendants refused to provide
discovery concerning any software or hardware products that were not specifically identified in
the Complaint. *See, e.g.,* Ex. B at 10. In response to RRD's motion to compel Defendants to
provide discovery concerning their Software Products and Hardware Products (D.I. 36),
Defendants asked the Court to "limit discovery to Darwin . . . unless and until RRD makes well-
founded contentions regarding other specific products" (D.I. 41 at 4).

Four days later, on July 7, 2006, RRD served its response to Defendants' First Set
of Interrogatories, and specifically identified the four software packages and the four digital
presses by name. Defendants, however, continued to refuse to provide discovery concerning any
products other than Darwin Desktop, arguing that discovery was limited because the Complaint
identified only one accused product.

>           2.      Defendants Have Refused To Produce A
>                   Rule 30(b)(6) Witness

On November 10, 2006, RRD served an Amended Notice of Deposition Pursuant
to Fed. R. Civ. P. 30(b)(6) on Defendants (D.I. 66). Defendants responded by moving for a

8.

protective order (D.I. 68) -- delaying indefinitely RRD's attempts to obtain Rule 30(b)(6) testimony concerning Defendant's infringing products.

Defendants argued that the topics in RRD's Rule 30(b)(6) Notice are "unbounded" and would encompass "previously-unnamed products manufactured by Kodak business units entirely separate from Creo in terms of organization, history, and geography" (*id.* at 1-2). As discussed above, however, RRD has identified four software packages and four digital presses by name.

### 3. Defendants Have Refused To Produce Their Employees For Depositions In The United States

On November 22, 2006, RRD noticed the depositions of several of Defendants' employees (D.I. 69, 70, 71, 72, 73). Defendants again responded by moving for a protective order (D.I. 83) -- further delaying RRD's attempts to obtain deposition testimony in this case.

Defendants seek to have the depositions of their employees taken in Israel. Defendants, however, identified these witnesses in their Initial Disclosures (D.I. 85, Ex. A), and in their First Supplemental Responses to Plaintiff's First Set of Interrogatories (*id.*, Ex. B), as having knowledge concerning Defendants' counterclaims and defenses. Moreover, most, if not all, of the witnesses are managing agents, whose depositions must be taken in this country. Defendants also have not demonstrated an inability to produce the witnesses for depositions in Delaware or elsewhere in the United States. Nor have they demonstrated a financial burden.

<u>ARGUMENT</u>

I.    DEFENDANTS SHOULD BE PRECLUDED FROM RELYING
ON CONTENTIONS THEY FAILED TO DISCLOSE BEFORE
THE DECEMBER 11, 2006 COURT-ORDERED DEADLINE

Defendants initially refused to provide contention interrogatory responses, claiming that RRD's contention interrogatories were "premature." Defendants stated, however, that they would respond to RRD's contention interrogatories at "the appropriate time in the litigation" (Ex. B). The "appropriate time" for responding to contention interrogatories was no later than December 11, 2006 -- the Court-ordered deadline for the completion of contention interrogatories (D.I. 81). It is inappropriate for Defendants to argue, and still argue, that contention interrogatories are premature, while providing essentially no substantive responses, especially when the Court provided a deadline by which contention interrogatories must be completed.[2]

Almost a month before the December 11, 2006 deadline, RRD warned Defendants that if they did not disclose their contentions by the Court-ordered deadline, RRD would move to preclude Defendants from relying on undisclosed contentions: "If Defendants do not . . . promptly supplement their interrogatory responses, R.R. Donnelley intends to seek to preclude Defendants from asserting the claims and defenses for which they refuse to provide meaningful responses and relying on any evidence not disclosed regarding identified claims and defenses" (Ex. E at 2).

Despite the Court-ordered deadline and RRD's clear warning, in their December 11, 2006 "supplemental" contention interrogatory responses, Defendants provided

---

[2]    Although it may be appropriate under Fed. R. Civ. P. 26(e) to supplement interrogatory responses as the case progresses, Defendants have made no attempt by the Court-ordered deadline to disclose what they knew or should have known about their defenses.

conclusory and incomplete non-infringement contentions, stating that "Darwin does not perform all elements of each asserted claim, and/or performs certain elements in a manner different from the manner required by the claim," but not identifying which elements are supposedly different or why. *See* Ex. G at 5. Defendants also failed to provide any details concerning their invalidity contentions, including any information about the prior art products, or how they invalidate the claims of the patents-in-suit (*id.* at 13). Defendants simply listed some supposed prior art without explaining how it allegedly invalidates the patent claims. For Defendants to have a good faith belief that the patents in suit are invalid and not infringed, they must have conducted more analysis than appears in their interrogatory responses.

Defendants' failure to respond to RRD's contention interrogatories violates the Federal Rules and this Court's Scheduling Order, and is without substantial justification. *See Finch v. Hercules Inc.*, C.A. No. 92-251-MMS, 1995 WL 785100, at *9 (D. Del. Dec. 22, 1995) ("fidelity to the constraints of Scheduling Orders and deadlines is critical to the Court's case management responsibilities"); *Saudi v. Valmet-Appleton, Inc.*, 219 F.R.D. 128, 131 (E.D. Wis. 2003) (complying with the Court's Scheduling Order is "not discretionary" and the dates contained therein are not "mere scheduling aspirations").

Defendants' actions are also prejudicial to RRD, and are seriously impairing RRD's ability to develop its case, prepare claim construction arguments, prepare its witnesses for depositions, and complete fact discovery in accordance with the deadlines set by the Court. *See 02 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006) ("[D]iscovery is designed to allow . . . the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case."). In particular, Defendants' failure to disclose their contentions concerning

non-infringement, invalidity, and claim construction makes it difficult (if not impossible) for RRD to identify which, if any, claim terms need to be construed in connection with the upcoming claim construction briefing and *Markman* hearing. It also makes it difficult (if not impossible) for RRD to identify what discovery needs to be taken for RRD to address Defendants' non-infringement and validity contentions.

Defendants' repeated attempts to obstruct discovery in this case -- including failing to provide meaningful contention interrogatory responses before the Court-ordered deadline, refusing to provide discovery concerning allegedly infringing products, refusing to produce a Rule 30(b)(6) witness for deposition, and refusing to produce its witnesses for depositions in the United States -- support the imposition of sanctions here. *See Wachtel v. Health Net, Inc.*, 2006 WL 3538935 (D.N.J. Dec. 6, 2006) ("This Court has considered a wide range of conduct by Defendants in this litigation and concludes that the repeated nature of that conduct and flagrant disregard of the adversary and the Magistrate Judge's Orders warrant strong sanctions.").

Fed. R. Civ. P. 16(f) permits the Court to sanction a party in violation of a pre-trial or scheduling order, and courts have precluded parties, in particular, from relying on prior art and other contentions that were not timely disclosed. *See, e.g., Georgia-Pacific Corp. v. U.S. Gypsum Co.*, C.A. No. 94-489-RRM, 1996 U.S. Dist. LEXIS 22616, at *33-35 (D. Del. Dec. 27, 1996 (precluding defendants from asserting invalidity defenses due to failure to comply with discovery deadlines); *Tracinda Corp. v. Daimlerchrysler AG*, C.A. No. 00-993-JJF, 2005 U.S. Dist. LEXIS 6741, at *6 (D. Del. April 20, 2005) (imposing monetary sanctions for failure to comply with discovery and scheduling orders); *ATD Corp. v. Lydall, Inc*., 159 F.3d 534, 550-51 (Fed. Cir. 1998) (affirming trial court's exclusion of prior art not produced during discovery).

The Federal Rules provide an automatic exclusion sanction for failure to comply with discovery obligations.  Fed. R. Civ. P. 37(c)(1) prohibits the use at trial of information a party has failed to disclose under Fed. R. Civ. P. 26(e)(2) unless such failure is "harmless" or the non-disclosing party can prove "substantial justification" for its failure to disclose the information in a timely manner.  *See ArthroCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 667 (D. Del. 2004), *aff'd in part, vacated in part on other grounds*, 2005 U.S. App. LEXIS 8108 (Fed. Cir. May 10, 2005).

In *AMEX, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002), plaintiff sought to supplement its interrogatory responses after the Court-ordered deadline for the close of fact discovery.  Defendant moved to preclude under Rule 37(c)(1) for failure to provide discovery as required by Rule 26(e)(2).  The court pointed out that the Federal Rules of Civil Procedure are intended to eliminate "surprise" and "trial by ambush," and that Rule 37(c)(1)'s exclusionary sanction seeks to ensure full disclosure during the appropriate discovery period:

> The purpose of these rules is to avoid "surprise" or "trial by ambush."  *See Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061 (D. Minn. 1999) (Rule 26(e)(2) "has a simple but important purpose; namely, to prevent [t]rial by ambush"), *aff'd in relevant part*, 290 F.3d 1364 (Fed. Cir. 2002); *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 911 F. Supp. 76, 79-80 (E.D.N.Y. 1996) (Rule 26(e)(2) is designed to facilitate the objective of the Federal Rules of Civil Procedure by "eliminat[ing] surprise").
>
> Rule 37(c)(1)'s preclusionary sanction is "automatic" absent a determination of either "substantial justification" or "harmlessness." . . .  "Substantial justification means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" . . .  "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." . . .  The burden to prove substantial justification or harmlessness rests with the dilatory party. . . .

*Id.* at 93 (citations omitted). The Court granted the motion to preclude, because: (1) plaintiff failed to identify the asserted claim in response to an interrogatory that specifically sought such an identification until after discovery had closed; (2) defendant's trial preparation was prejudiced because it was deprived of the opportunity to take needed fact discovery unless it was willing to accept a substantial delay in the case; and (3) there was no valid reason why the discovery had not been timely provided. *Id.* at 95-96.

This Court should reach the same result here. The purpose of the Court's Scheduling Order is to move the case forward in an orderly and timely manner. The Scheduling Order (and the parties' subsequent stipulations) specifically provided that contention interrogatories were to be completed no later than December 11, 2006. Defendants should be precluded from relying on any contentions that were not disclosed before that Court-ordered deadline. *See Praxair, Inc. v. ATMI, Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) ("As a sanction for failure to comply with the scheduling order in this case, the court is authorized to exclude evidence proffered by the disobedient party.").

II.   IN THE ALTERNATIVE, DEFENDANTS SHOULD BE
      COMPELLED TO PROVIDE IMMEDIATE AND COMPLETE
      RESPONSES TO RRD'S CONTENTION INTERROGATORIES

If the Court denies RRD's motion to preclude in whole or in part, RRD alternatively requests that the Court instruct Defendants immediately (within seven days) to provide complete responses to RRD's contention interrogatories -- Interrogatory Nos. 2-11 -- as requested in RRD's pending Motion to Compel (D.I. 36). If Defendants continue to refuse to provide complete responses, RRD requests that the Court make clear that it will issue a preclusion order at that time.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants should be precluded from relying on contentions they failed to disclose before the Court-ordered December 11, 2006 deadline for the completion of contention interrogatories.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
   *Attorneys for Plaintiff*
   *R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January 3, 2007
549904

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on January 3, 2007, upon the following in the manner indicated:

### BY EMAIL AND HAND

> Frederick L. Cottrell III
> Richards Layton & Finger
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801

### BY EMAIL AND FEDERAL EXPRESS

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595

*/s/    Rodger D. Smith II (#3778)*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>QUARK, INC., CREO, INC., EASTMAN )<br>KODAK COMPANY, AND KODAK )<br>GRAPHIC COMMUNICATIONS )<br>COMPANY, )<br><br>Defendants. ) | C.A. No. 06-cv-032-JJF |

```
)
CREO, INC., EASTMAN KODAK            )
COMPANY, AND KODAK GRAPHIC           )
COMMUNICATIONS COMPANY,              )
                                     )
            Counterclaim-Plaintiffs, )
                                     )
      v.                             )
                                     )
R.R. DONNELLEY & SONS COMPANY,       )
                                     )
            Counterclaim-Defendant.  )
                                     )
```

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff R.R. Donnelley & Sons Company ("Plaintiff") submits the following interrogatories to defendants Creo, Inc. ("Creo"), Eastman Kodak Company ("Kodak"), and Kodak Graphic Communications Company ("KGC"), collectively "Defendants." Plaintiff requests that Defendants answer each interrogatory fully in writing under oath, and that Defendants serve their responses within thirty (30) days after service of these interrogatories.

### DEFINITIONS

1.    "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any interrogatory any information or documents that might otherwise be construed to be outside its scope.

2.    "Any" shall be read to mean each and every.

3.    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

4.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices. The term "documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

5.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and

the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

6.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, including, but not limited to, Kodak Versamark, Inc., NexPress Solutions, Inc., Creo, and KGCC and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

7.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

8.    "Defendants" means Creo, Kodak, and KGCC, collectively.

9.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

10.    "The '452 patent" means United States Patent No. 6,205,452.

11.    "The '599 patent" means United States Patent No. 6,327,599.

12.    "The '940 patent" means United States Patent No. 6,844,940.

13.    "The '801 patent" means United States Patent No. 6,952,801.

14.    The "patents-in-suit" shall refer to the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

15.    The singular shall include the plural and the plural shall include the singular.

16.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

17.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

18.    The term "including" does not limit the scope of the interrogatory. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

19.    The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing.

20.    The term "Defendants' Hardware Products" means any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing, including but not limited to the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System,

the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

      21.    The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

      22.    The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

## INSTRUCTIONS

      1.    In answering the interrogatories that follow, Defendants are required to furnish all information available to them, including, but not limited to, information within the possession of Defendants' advisors, associates, agents, consultants, employees, attorneys, and attorneys' consultants and investigators.  If Defendants are unable to answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure information to do so, Defendants should so state and answer each such interrogatory to the extent that they are able.  In such event, Defendants should specify the portion of the interrogatory that they claim they are unable to answer fully and completely, stating the facts upon which Defendants rely to support their contention that they are unable to answer said interrogatory fully and completely. In such event, Defendants should state further what knowledge, information, and belief Defendants do have concerning the unanswered portion of such interrogatory.

      2.    Where an identified document has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction.

      3.    Where an identified document is not in Defendants' possession, custody, or control, state the name of the persons who have possession, custody, or control of such

document. If such document was in Defendants' possession, custody, or control in the past but is no longer in Defendants' possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

4.     In the event that Defendants claim privilege with respect to any information requested, Defendants shall state the specific ground for each such claim of privilege and shall set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the information; each person to whom such information was distributed or communicated; if the communication requested is embodied in a document, a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times.

5.     In the event that Defendants claim that an interrogatory is overly broad, Defendants shall respond to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is alleged to be overbroad.

6.     In the event that Defendants claim that an interrogatory is unduly burdensome, Defendants shall respond to that portion of the interrogatory that is unobjectionable and shall specifically identify the respect in which the interrogatory is alleged to be unduly burdensome.

7.     Pursuant to Federal Rule of Civil Procedure 26(e), the interrogatories propounded herein shall be deemed continuous up to and following the trial of this proceeding, such that any information requested herein that is either discovered by Defendants, or comes

within Defendants' possession, custody, or control, subsequent to Defendants' initial response hereto but prior to the final conclusion of this case should be produced in a supplemental response to these interrogatories immediately upon its discovery or receipt by Defendants or Defendants' counsel.

## INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

### INTERROGATORY NO. 3

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in

Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products and Third Party Software Products suitable for use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Exstream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## INTERROGATORY NO. 4

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## INTERROGATORY NO. 5

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of their Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions of the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**INTERROGATORY NO. 6**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 7**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 8**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 9**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and

communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 10**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines of license and/or implied license," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 11**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 12**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**INTERROGATORY NO. 13**

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by Defendants, broken down by product, in connection with each of

Defendants' Software Products and Defendants' Hardware Products (beginning with the first receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specific hardware product involved in the use.

## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
    *Attorneys for Plaintiff R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

May 1, 2006

518277

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 1, 2006, upon the following in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595

_(signature)_ (#3778)

Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>     Defendants. | C. A. No. 06-032-JJF |
| CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>     Counterclaim-Plaintiffs,<br><br>     v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>     Counterclaim-Defendants, | |

### CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSE TO R.R. DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") responds as follows to the First Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics Communications Company ("the Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

## I.     GENERAL RESPONSES

Creo's responses to the Interrogatories are made to the best of Creo's current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.     Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.     Creo reserves the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.     GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.     Creo objects generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine.  Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.     Creo objects to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement,

2

expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

3.        Creo objects to all instructions, definitions, and interrogatories to the extent they seek information not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or interrogatories seek to require more of Creo than any obligation imposed by law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

4.        Creo objects to the Interrogatories as premature as a protective order has not yet been entered.  Responsive, non-privileged documents containing or reflecting information that is private, business confidential, proprietary, trade secret or otherwise protected from disclosure pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure will be produced – to the extent such documents exist – only after the entry of a suitable protective order.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES
### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### RESPONSE TO INTERROGATORY NO. 1

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just

commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 2**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 2**

Creo objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory to the extent it seeks information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory with respect to Darwin Desktop software.

**INTERROGATORY NO. 3**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products and Third Party Software Products suitable for the use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

4

**RESPONSE TO INTERROGATORY NO. 3**

Creo objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory to the extent it (i) seeks information defined by the terms "Defendants' Software Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Complaint only references "Darwin Desktop." Moreover, Creo objects to the extent it lacks information relating to the operation of the Third Party Software Products. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory with respect to Darwin Desktop software.

**INTERROGATORY NO. 4**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 4**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions or the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**RESPONSE TO INTERROGATORY NO. 5**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the "identification of *all* facts, documents, prior art . . ., activities, and alleged motivation or suggestion to combine references." Creo also objects to the interrogatory as unduly burdensome to the extent it seeks "references to specific portions of the prior art by page, line, figure, or description in claim chart format." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will identify factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112."

**INTERROGATORY NO. 6**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

6

**RESPONSE TO INTERROGATORY NO. 6**

      Creo further objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 7**

      State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 7**

      Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 8**

      State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 8**

Creo further objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 9**

State in detail all factual and legal bases for Defendants' allegations set forth in paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 9**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 10**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines of license and/or implied license," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 10**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 11**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 11**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

**INTERROGATORY NO. 12**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced and that RRD – not Creo – initiated suit. Subject to the foregoing general and specific objections, Creo at the appropriate time in the litigation will provide a response to this interrogatory.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## RESPONSE TO INTERROGATORY NO. 13

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue." Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit. Creo also objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Subject to the foregoing general and specific objections, Creo will respond to this interrogatory by producing business records subject to Federal Rule of Civil Procedure 33(d) sufficient to identify all revenues and profit of

10

Darwin Desktop starting in March 2001.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

## RESPONSE TO INTERROGATORY NO. 14

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds as follows separately with respect to each Creo defendant.

With respect to Creo, Inc., on or about September 4, 2003, Gary B. Cohen, Senior Patent Counsel of Xerox Corporation forwarded RRD correspondence identifying U.S. Pat. Nos. 6,327,599 ("the '599 patent") and 6,205,452 ("the '452 patent) to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. Creo, Inc. became aware of the '599 and '452 patents on or about that date. Creo, Inc. became aware of U.S. Pat. Nos. 6,844,940 ("the '940 patent") and 6,952,801 ("the '801 patent) after Joseph Guiliano of Ropes & Gray sent a letter to Judith Hess, Vice President of Kodak Graphic Communications Group on or about December 19, 2005.

With respect to Kodak Graphic Communications Company and Eastman Kodak Company, both companies became aware of the '599 patent and the '452 patent in connection with the acquisition of NexPress Solutions, LLC ("NexPress"). The NexPress acquisition closed on or about May 3, 2004. Kodak Graphic Communications Company and Eastman Kodak Company both became aware of the '940 patent and the '801 patent after the above-referenced letter from Mr. Guiliano to Ms. Hess.

11

As its investigation is still on-going, Creo specifically reserves the right to supplement this response pursuant to Rule 26(e) of the Federal Rule of Civil Procedure.

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identify of each Third Party Software Product used and the specified hardware product involved in the use.

## RESPONSE TO INTERROGATORY NO. 15

Creo objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Third Party Software Products" and "Defendants' Hardware Products." Moreover, Creo objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information relating to "all use" of Third Party Software Products and Defendants' Hardware Products. Creo cannot reasonably identify "all use[s]." The Complaint only references "Darwin Desktop." Moreover, the interrogatory is overly broad as it seeks a description of "all use" of "Third Party Software Products with Defendants' Hardware Products."

## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

## RESPONSE TO INTERROGATORY NO. 16

Creo objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products," "Third Party Software Products" and "Defendants' Hardware Products."

12

The Complaint only references "Darwin Desktop." Moreover, Creo cannot reasonably identify

"all" of the requested plans, efforts, or activities.


OF COUNSEL:                                          Submitted as to objections,

Richard McMillan, Jr. (admitted pro hac vice)        Frederick L. Cottrell, III (#2555)
rmcmillan@crowell.com                                cottrell@rlf.com
Jeffrey D. Sanok (admitted pro hac vice)             Gregory E. Stuhlman (#4765)
jsanok@crowell.com                                   stuhlman@rlf.com
Brian M. Koide (admitted pro hac vice)               Richards, Layton & Finger, P.A.
bkoide@crowell.com                                   One Rodney Square
CROWELL & MORING, LLP                                920 North King Street
1001 Pennsylvania Avenue, N.W.                       Wilmington, Delaware 19801
Washington, DC 20004-2595                            (302) 651-7700
(202) 624-2500                                       Attorneys for Defendants
                                                     Creo, Inc., Eastman Kodak Company
                                                     and Kodak Graphic Communications
                                                     Company


Dated:  June 12, 2006

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be

served on June 12, 2006, upon the following in the manner indicated:

### BY HAND

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

### BY FEDERAL EXPRESS

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA  02110

_____
Gregory E. Stuhlman (#4765)

Dated:  June 12, 2006

EXHIBIT C



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

Bradford J. Badke
212-596-9031
Jim.Badke@ropesgray.com

June 13, 2006

**VIA FACSIMILE**

Jeffrey D. Sanok, Esq.
Crowell & Moring
1001 Pennsylvania Ave. NW
Washington, DC  20004

Re:  R.R. Donnelley & Sons Co. v. Creo, Inc. et al.
06-cv-32-JJF

Dear Jeff:

I write regarding Creo and Kodak's responses to R.R. Donnelley's First Set of Requests for Production and First Set of Interrogatories, which were served on Monday, June 12, 2006.

Kodak and Creo's responses are almost entirely non responsive and fail to comply with your clients' obligations under the Federal Rules of Civil Procedure.  The responses are particularly troubling in view of our consent to an extension of nearly two weeks, which we had assumed would be used to provide us with complete responses.

The deficiencies of the responses are obvious, and should not require a detailed explanation by us.  However, we will point out some of the more obvious defects.  For example, Kodak and Creo have objected to answering many of R.R. Donnelley's interrogatories on the basis that they are "premature" and that "Creo at the appropriate time in the litigation will provide a response."  The appropriate time was last Monday, June 12, and defendants' refusal to provide a substantive response is improper.  Nor is there, as you are no doubt aware, a "prematurity" objection in the Federal Rules.  We assume defendants had a good faith basis for the contentions in their Answer, Affirmative Defenses, and Counterclaim and that discovery from R.R. Donnelley would not be necessary before your clients could give a basis for their contentions.  The fact of "who started it" is irrelevant in responding to discovery under the Federal Rules of Civil Procedure.

Defendants also repeatedly attempt to impermissibly limit discovery by claiming that "[t]he Complaint only references 'Darwin Desktop,'" and that they will therefore only

3229397_1

ROPES & GRAY LLP

Jeffrey D. Sanok, Esq.                    - 2 -                    June 13, 2006

respond with respect to Darwin Desktop.  The Complaint clearly states "[b]y its actions, ***including*** the sale of Darwin, Creo has infringed . . ." (emphasis added).  Nothing in the Complaint limits R.R. Donnelley's claim against Defendants to Darwin Desktop, and nothing in the Federal Rules of Civil Procedure or the Local Rules of this Court permit Defendants to limit discovery in this way.

Given the gross deficiencies of the responses, we see no alternative but to raise this issue immediately with the Court.  If we do not receive by noon on Monday adequate responses to our discovery requests we intend to file a motion to compel.

Sincerely yours,

Bradford J. Badke

BJB:sj

bcc:    Thomas G. Pasternak

EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants.<br><br>CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendants, | C.A. No. 06-cv-032-JJF |

### CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SUPPLEMENTAL RESPONSE TO R.R. DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") provide the

following first supplemental response to the First Set of Interrogatories to Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphics Communications Company ("the

Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

## I.     GENERAL RESPONSES

Creo's responses to the Interrogatories are made to the best of Creo's current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.     Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.     Creo reserves the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.     GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.     Creo objects generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine. Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.     Creo objects to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement,

2

expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

3.    Creo objects to all instructions, definitions, and interrogatories to the extent they seek information not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or interrogatories seek to require more of Creo than any obligation imposed by law, would subject Creo to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### RESPONSE TO INTERROGATORY NO. 1

Subject to the foregoing general objections, RRD has failed to state a claim upon which relief can be granted with respect to (i) direct infringement by any Creo product other than Darwin and (ii) indirect infringement. In its Complaint, RRD vaguely alleges that "[b]y its actions, including the sale of Darwin software, Creo has infringed." *See* Complaint ¶¶, 27, 32, 37, 42. Given that Creo (including Eastman Kodak Company) offers diverse products and services and collectively employs more than 50,000 employees worldwide, a generic reference to unspecified broad claims of direct or indirect infringement involving parties other than Creo and

products other than Darwin is not sufficient to satisfy proper notice pleading requirements under

the Rules.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.


## INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent,
the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally
or under the doctrine of equivalents," including, but not limited to, claim charts that set forth
each claim element that allegedly is not met by Defendants' Software Products, the reasons each
such element is not met (both literally and under the doctrine of equivalents) and the identity of
the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 2

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent

it seeks information defined by the term "Defendants' Software Products." The Complaint only

references "Darwin Desktop." Creo also objects to this interrogatory as a premature contention

interrogatory given that fact discovery has just commenced, RRD has yet to reveal its claim

construction and infringement contentions, and the Court has yet to construe the claims. In

particular, Creo objects to providing claim charts at this time, but would agree to do so within a

reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject

to the foregoing general and specific objections, Creo responds as follows.

With respect to the method claims, Creo does not directly infringe by selling, offering to

sell, or making the Darwin software in the United States and/or importing the software into the

United States. As a matter of law, method claims can only be directly infringed by a "use," not

through the sale, offer for sale, manufacture, or importation of software that allegedly performs

4

the steps. As to "use" contentions, RRD has not yet provided its contentions as to how any Creo product infringes, and Creo is therefore not able to respond to any such contentions.

Creo does not believe, however, that any of its products infringe. For example, Darwin software does not "develop[] a master page file," does not "separat[e] master data from position data," and does not "caus[e] the display device to display the pages." The Darwin software also does not "determine[e] whether a stored page is to be assembled into the first book . . . wherein a second number of stored pages to be assembled into the first book is less than the first number" of stored pages. Creo believes that for these and other reasons, it does not infringe the claims of the patents in suit when properly construed. Absent more specific contentions from RRD, however, Creo is not able at this juncture to fully itemize all grounds on which it should be found not to infringe and reserves its right to further supplement its responses at the appropriate time.

Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi Jaacobi, and the named inventors of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

**INTERROGATORY NO. 3**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products and Third Party Software Products suitable for the use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

RLF1-3033329-1

**RESPONSE TO INTERROGATORY NO. 3**

      Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it (i) seeks information defined by the terms "Defendants' Software Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Complaint only references "Darwin Desktop." Moreover, Creo objects to being required to answer Interrogatories relating to the operation of the Third Party Software Products, given the absence of any specific allegations by RRD concerning such products. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced. In particular, Creo objects to providing claim charts at this time, but would agree to provide claim charts a reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatory No. 2 with respect to the Darwin software. Creo further responds that it cannot – as a matter of law – be found liable for inducing infringement under 271(b) prior to first becoming aware of the patents in suit. Likewise, Creo is not liable for contributory infringement under 271(c) prior to first becoming aware of the patents in suit. Creo is also not liable for indirect infringement to the extent that no single entity practices each of the steps or elements of the patents in suit, and thus, directly infringes.

      Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi Jaacobi, the named inventors of the patents in suit, and users of the Darwin software.

      Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 4

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 4

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds as follows:

The documents and communications on which Defendants intend to rely include the patents in suit, prior art of record, prosecution histories of the patents in suit, and the prosecution histories of patents related thereto. The prosecution histories include numerous arguments and narrowing amendments that limit the scope of the asserted claims through argument-based estoppel and/or amendment-based estoppel. Ultimately, whether prosecution history estoppel applies will depend on the claim construction and any range of equivalents asserted by RRD. It is premature at this time, with a *Markman* hearing scheduled for 2007, to speculate how RRD will attempt to read the claims and whether RRD will take a position that contradicts the prosecution histories. However, to date, Defendants have identified at least the following actions taken by RRD in the prosecution history that may form estoppels.

## U.S. Patent No. 6,952,801

- Supplementary Amendment dated May 18, 2000 in U.S. Application Ser. No. 08/802,337 at 2-3 (claim amendments) & 4-5 (arguments to distinguish claims over prior art).

- Amendment A dated November 4, 2002 at 6-7 (arguments to distinguish claims over prior art).

7

- Amendment B dated March 28, 2003 at 2-3 (claim amendments) & 4 (remarks re claim amendments).

- Amendment C dated September 8, 2003 at 4-6 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated March 4, 2004 at 1-5 (remarks re prior art).

- Amendment D dated March 8, 2004 at 2-5 (claim amendments) & 6-7 (arguments to distinguish claims over prior art).

- Amendment E dated Jul 26, 2004 at 2-5 (claim amendments) & 6-8 (arguments to distinguish claims over prior art).

**U.S. Patent No. 6,844,940**

- Preliminary Amendment dated January 12, 2004 at 3-6 (claim amendments) & 7 (remarks).

- Supplemental Preliminary Amendment dated March 29, 2004 at 2-5 (claim amendments) & 6 (remarks).

- Petition to Make Special Under MPEP § 708.02 dated March 29, 2004 at 1-4 (arguments to distinguish claims over prior art).

- Request for Reconsideration of Petition to Make Special dated June 10, 2004 at 1-4 (arguments to distinguish claims over prior art).

**U.S. Patent No. 6,327,599**

- Amendment A dated November 11, 1996 at 2 (claim amendments) & 3 (remarks).

8

- Amendment B dated May 19, 1997 at 1-3 (claim amendments) & 4-8 (arguments to distinguish claims over prior art).

- Amendment C dated November 19, 1997 at 1-2 (claim amendments) & 2-4 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated December 17, 1997 at 1-2 (remarks re prior art).

- Response After Final Rejection dated April 30, 1998 at 1 (claim cancellations and remarks).

- Amendment D dated April 2, 2001 at 1 (claim amendments) & 2-5 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated June 20, 2000 at 1-2 (remarks re prior art).

**U.S. Patent No. 6,205,452**

- Amendment "A" dated January 7, 2000 at 2-3 (claim amendments) & 3-8 (arguments to distinguish claims over prior art).

- Response dated June 27, 2000 at 1-7 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated July 20, 2000 at 1-2 (remarks re prior art).

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit and those individuals involved in the prosecution of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

9

## INTERROGATORY NO. 5

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions or the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

## RESPONSE TO INTERROGATORY NO. 5

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking "identification of *all* facts, documents, prior art . . ., activities, and alleged motivation or suggestion to combine references" and "references to specific portions of the prior art by page, line, figure, or description in claim chart format." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced, RRD has yet to provide its claim construction contentions, and the Court has yet to construe the claims. Subject to the foregoing general and specific objections, Creo responds, at this time, that the claims of the patents in suit are anticipated and/or invalid in view of the prior art, including, but not limited to, the commercial embodiments of DijiComp, Begin, Composer, Catalogic, and Yours Truly. Creo reserves the right to supplement this interrogatory response as further investigation is conducted.

Persons knowledgeable of these facts include Timothy Donahue, Pat McGrew, John Desautels, unknown individuals of Hewlett-Packard, unknown individuals of Quark, Inc.

## INTERROGATORY NO. 6

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their

10

contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 6

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its response to Interrogatory Nos. 7, 8, 10, 11, and 14. Creo further responds that laches precludes RRD from any alleged damages that may have been incurred due to Creo's actions prior to the time that RRD filed and served its Complaint on January 17, 2006. RRD has contacted several Creo entities regarding one or more of the patents in suit. After these initial contacts, RRD delayed in bringing suit against Creo. During this period, RRD did and continued to do regular business with Creo. RRD knew or should have known of the allegedly infringing aspects of the Darwin software. Given the circumstances, RRD's delay has been unreasonable and inexcusable. Due to RRD's delay in bringing suit, Creo has suffered substantial prejudice. In particular, due to RRD's delay, Creo may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, and the unreliability of memories of long past events. With respect to business prejudice, Creo has continued to invest in the Darwin software as a product line during this delay period.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

11

## INTERROGATORY NO. 7

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 7

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its responses to Interrogatories Nos. 6, 8, 10, 11, and 14. Creo further responds that RRD has dealt with various Creo entities both through business relationships and by participating in various standards-making bodies. In particular, Riyaz Asaria, an RRD employee, co-chaired the CGATS.20. At no time in the course of these business meetings and standards-making bodies did RRD indicate that it intended to assert its patents against Creo. Instead, RRD's representatives remained silent and failed to take any action. RRD's silence and inaction has been misleading. At various points in time, Creo has relied on RRD's silence and inaction and would be materially harmed.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Mary Abbott, Timothy Donahue, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

12

## INTERROGATORY NO. 8

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 8

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo responds by incorporating

by reference its response to Interrogatories Nos. 6-7, 10, 11, and 14. Furthermore, as

demonstrated by its silence and inactions, RRD voluntarily and intentionally relinquished its

rights to pursue Creo with respect to the patents in suit.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria,

Timothy Donahue, Mary Abbott, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 9

State in detail all factual and legal bases for Defendants' allegations set forth in paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 9

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

13

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo responds that at least

claims of the '940 patent and the '801 patents are barred by the doctrine of prosecution history

laches. In particular, RRD filed the earliest application to which these patents in suit claim on

their face priority on June 7, 1995. The application that led to the issuance of the '801 patent

was filed almost six years later; the application that led to the issuance of the '940 patent was

filed 8 1/2 years later. RRD's delay in prosecuting these applications is unreasonable and

unexplained.

 Persons knowledgeable of these facts include, but are not limited to, the named inventors

of the patents in suit and persons involved in the prosecution of the patents in suit.

 Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 10

 State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines
of license and/or implied license," including, but not limited to, the identification of all
documents and communications on which Defendants rely to support their contention and the
identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 10

 Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo incorporates by reference

its response to Interrogatory Nos. 6, 7, 8, 11, and 14.

14

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen,

Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.


**INTERROGATORY NO. 11**

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of
unclean hands," including, but not limited to, the identification of all documents and
communications on which Defendants rely to support their contention and the identity of the
persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 11**

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo incorporates by reference

its response to Interrogatory Nos. 6, 7, 8, 10, and 14.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen,

Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 12

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds that RRD has failed to mark products and/or services as required by 35 U.S.C. § 287. Moreover, RRD has failed to provide actual notice to the extent it has failed to charge infringement of specific patents in suit against a specific Kodak accused product and/or service. In particular, RRD has failed to provide any actual notice of any product except for the Darwin software, specifically mentioned in its Complaint. With respect to 35 U.S.C. § 286, RRD is barred from recovering any damages resulting from any infringement committed more than six years prior to the filing of the Complaint on January 17, 2006.

Persons knowledgeable of these facts include, but are not limited to, unknown representative(s) of RRD.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first

16

receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## RESPONSE TO INTERROGATORY NO. 13

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue." Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit. Creo also objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Subject to the foregoing general and specific objections, Creo will respond to this interrogatory by producing business records subject to Federal Rule of Civil Procedure 33(d) sufficient to identify all revenues and profit of Darwin Desktop starting in March 2001.

Persons knowledgeable of these facts include, but are not limited to, Gershon Alon and Ronen Cohen.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

**RESPONSE TO INTERROGATORY NO. 14**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds as follows separately with respect to each Creo defendant.

With respect to Creo, Inc., on or about September 4, 2003, Gary B. Cohen, Senior Patent Counsel of Xerox Corporation forwarded RRD correspondence identifying U.S. Pat. Nos. 6,327,599 ("the '599 patent") and 6,205,452 ("the '452 patent) to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. Creo, Inc. became aware of the '599 and '452 patents on or about that date. Creo, Inc. became aware of U.S. Pat. Nos. 6,844,940 ("the '940 patent") and 6,952,801 ("the '801 patent) after Joseph Guiliano of Ropes & Gray sent a letter to Judith Hess, Vice President of Kodak Graphic Communications Group on or about December 19, 2005.

With respect to Kodak Graphic Communications Company and Eastman Kodak Company, both companies became aware of the '599 patent and the '452 patent in connection with the acquisition of NexPress Solutions, LLC ("NexPress"). The NexPress acquisition closed on or about May 3, 2004. Kodak Graphic Communications Company and Eastman Kodak Company both became aware of the '940 patent and the '801 patent after the above-referenced letter from Mr. Guiliano to Ms. Hess.

Persons knowledgeable of these facts include, but are not limited to, Ronny Fogel, Gary B. Cohen, and Joseph Guiliano.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specified hardware product involved in the use.

## RESPONSE TO INTERROGATORY NO. 15

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Third Party Software Products" and "Defendants' Hardware

Products." Moreover, Creo objects to this interrogatory as overly broad and unduly burdensome

to the extent it seeks information relating to "all use" of Third Party Software Products and

Defendants' Hardware Products. Creo cannot reasonably identify "all use[s]." The Complaint

only references Creo, Inc.'s Darwin Desktop, not any third-party software products. Moreover,

the interrogatory is overly broad as it seeks a description of "all use" of "Third Party Software

Products with Defendants' Hardware Products." At most, Creo will respond in the future by

describing those uses that can be identified after a reasonable investigation.


## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

## RESPONSE TO INTERROGATORY NO. 16

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Defendants' Software Products," "Third Party Software

Products" and "Defendants' Hardware Products." The Complaint only references "Darwin

Desktop." Moreover, Creo cannot reasonably identify "all" of the requested plans, efforts, or

activities. At most, Creo will respond in the future by describing those plans, efforts, or

activities that can be identified after a reasonable investigation.

19

OF COUNSEL:                                Submitted as to objections,


Richard McMillan, Jr. (admitted pro hac vice)    Frederick L. Cottrell, III (#2555)
rmcmillan@crowell.com                      cottrell@rlf.com
Jeffrey D. Sanok (admitted pro hac vice)    Gregory E. Stuhlman (#4765)
jsanok@crowell.com                         stuhlman@rlf.com
Brian M. Koide (admitted pro hac vice)      Richards, Layton & Finger, P.A.
bkoide@crowell.com                         One Rodney Square
CROWELL & MORING, LLP                      920 North King Street
1001 Pennsylvania Avenue, N.W.             Wilmington, Delaware 19801
Washington, DC 20004-2595                  (302) 651-7700
(202) 624-2500                             Attorneys for Defendants
                                           Creo, Inc., Eastman Kodak Company
                                           and Kodak Graphic Communications
                                           Company


Dated:  July 3, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899

I hereby certify that on July 3, 2006, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY  10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA  02110

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

RLF1-3020098-1

EXHIBIT E

# ROPES & GRAY

## FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    f 212-596-9090

BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

Bradford J. Badke
212-596-9031
212-596-9090 fax
Jim.Badke@ropesgray.com

November 16, 2006

**BY FACSIMILE**

Brian M. Koide, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Re:    *RR Donnelley & Sons Co. v. Quark, Inc. et al.*
D. Del. Civ. No. 06-032 (JJF)

Dear Brian:

I write regarding the initial responses and supplemental responses of Creo, Inc.,
Eastman Kodak Company, and Kodak Graphic Communications Company (collectively,
"Defendants") to the First Set of Interrogatories served by R.R. Donnelley & Sons Co. ("R.R.
Donnelley"). Defendants' repeated assertions that discovery should be limited to information
pertaining to Darwin Desktop and that certain discovery is premature are without merit, and
Defendants are creating undue delay and interfering with R.R. Donnelley's ability to conduct the
discovery to which it is entitled.

Defendants continue to misconstrue the "scope of the Complaint" and the
relevance of discoverable information to the claims and defenses of the parties. In its Complaint,
R.R. Donnelley asserted that by its actions, including the sale of Darwin, Defendants have
infringed, contributed to infringement of and induced others to infringe, and continue to infringe,
contribute to infringement of and induce others to infringe, the patents-in-suit. By the Complaint
itself, Defendants were provided with the requisite notice for a patent case. Assuming there was
any doubt -- which R.R. Donnelley does not concede -- Defendants have been provided with
ample notice of the issues in this case by way of R.R. Donnelley's first set of discovery requests
of Defendants -- served on the first day of discovery -- and by way of R.R. Donnelley's
responses to Defendants' first set of discovery requests. In its July 7, 2006 Responses to
Defendants' First Set of Interrogatories over four months ago, R.R. Donnelley stated that:

Defendants contribute to and induce infringement by others who use Defendants'
variable digital printing software, including but not limited to Darwin Desktop.

ROPES & GRAY LLP

Brian M. Koide, Esq.                          - 2 -                        November 16, 2006

>On information and belief, Defendants contribute to and induce infringement by
others by selling digital presses bundled with infringing variable digital printing
software and by promoting third party infringing software packages with the sale
of Defendants' digital presses.

>In this regard, discovery currently being withheld by Defendants likely will lead
to additional information concerning Defendants' infringing products. For
example, on information and belief, Kodak NexTreme DL-100 Variable Data
Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and
any other software product designed, marketed, sold, offered for sale, made, used
or imported by Defendants intended to enable Variable Digital Printing (as
defined in Plaintiff's First Set of Interrogatories to Defendants) will also be found
to infringe the patents-in-suit. Furthermore, Plaintiff believes that Defendants
have been bundling infringing software products with the sale of their digital
presses, and that Defendants have been promoting infringing third party software
packages with the sale of Defendants' digital presses.

>Plaintiff has reason to believe that infringing sales or activities (e.g., the
inducement of sales of infringing third party software packages) have occurred
with respect to Defendants' digital presses, including without limitation the
Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series
Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press,
and the Kodak NexPress 2500 Digital Production Color Press.

The scope of accused products and the issues in this case have been clear since the beginning of
discovery -- indeed, they have been clear since the case was filed. Defendants' continued refusal
to satisfy R.R. Donnelley's legitimate requests for discovery is frustrating the progress of this
case, and we intend to use Defendants' litigation conduct as further evidence of willfulness.

Furthermore, Defendants continue to improperly object to R.R. Donnelley's
contention interrogatories as "premature" and otherwise fail to provide meaningful responses
(see, e.g., Defendants' objections to Interrogation Nos. 2-12). Judge Farnan set a deadline of
November 30, 2006 for completing contention interrogatories. That date is rapidly approaching,
and yet, Defendants continue to hide behind an objection that has no basis in law. If Defendants
do not withdraw this objection and promptly supplement their interrogatory responses, R.R.
Donnelley intends to seek to preclude Defendants from asserting the claims and defenses for
which they refuse to provide meaningful responses and relying on any evidence not disclosed
regarding identified claims and defenses.

R.R. Donnelley requests that Defendants agree to supplement their interrogatory
responses no later than November 27, 2006. Examples of the deficiencies of some of
Defendants' interrogatory responses are outlined below.

Case 1:06-cv-00032-JJF    Document 95-2    Filed 01/03/2007    Page 58 of 93

ROPES & GRAY LLP

Brian M. Koide, Esq.                      - 3 -                      November 16, 2006

### A. Interrogatory No. 1

Defendants' response to Interrogatory No. 1 is insufficient on its face. R.R. Donnelley asked that Defendants state "in detail all factual and legal bases" for Defendants' contention that "R.R. Donnelley has failed to state a claim upon which relief may be granted." Defendants merely responded that the allegation of infringement is too broad. Defendants failed to provide factual or legal bases for their contention.

### B. Interrogatory No. 2

Defendants' response to Interrogatory No. 2 is insufficient. In its response to Interrogatory No. 2, Defendants failed to provide a claim chart setting forth the claim elements that Defendants contend are not met by Defendants' software products along with the reasons such elements are not met (both literally and under the doctrine of equivalents). Rather, Defendants simply added a "does not" in front of the claim language if various elements, but otherwise failed to respond in any meaningful way to this interrogatory.

### C. Interrogatory No. 3

Defendants' response to Interrogatory No. 3 is insufficient. Again, Defendants failed to provide claim charts identifying any factual or legal bases for their contention that they do not indirectly infringe the patents-in-suit. R.R. Donnelley specifically requested such a response in its interrogatory.

### D. Interrogatory No. 4

Defendants' assertion that Interrogatory No. 4 is premature is unpersuasive and unsupported at law. Defendants have failed to provide any specifics regarding their claim of prosecution history estoppel. Instead, they merely cite the remarks sections of several amendments without identifying any specifics. Surely before making such a claim Defendants had some factual and legal bases for doing so. R.R. Donnelly's interrogatory requested that Defendants provide these bases.

### E. Interrogatory No. 5

Defendants again improperly assert a prematurity argument. Defendants also assert that this interrogatory is overly broad and unduly burdensome. Pursuant to Instructions numbered 5 and 6 of R.R. Donnelley's First Set of Interrogatories, Defendants must still respond to the portion of the interrogatory that is unobjectionable and must specifically identify the respect in which the interrogatory is alleged to be overbroad or unduly burdensome. In alleged support of their invalidity contentions, Defendants merely list five "commercial embodiments" without providing any specifics about the "commercial embodiments" or how or why they

ROPES & GRAY LLP

Brian M. Koide, Esq.                        - 4 -                        November 16, 2006

invalidate any claim of the patents-in-suit. Defendants' response to Interrogatory No. 5 is
insufficient.

### F. Interrogatory No. 6

Defendants allege that R.R. Donnelley delayed in bringing suit and that this delay
was "unreasonable and inexcusable." However, in response to R.R. Donnelly's interrogatory,
Defendants offer no factual or legal bases that a delay occurred which would give rise to laches.
Thus, Defendants' response to Interrogatory No. 6 is inadequate, or Defendants' defense relating
to laches was improper and should not have been raised.

### G. Interrogatory No. 7

In response to this interrogatory, Defendants have failed to provide any factual or
legal bases for their contention that R.R. Donnelly's "claims are barred, in whole or part, by the
doctrine of equitable estoppel." Defendants should withdraw their related allegations or come
forward with the factual and legal bases for their defense.

### H. Interrogatory No. 8

Defendants' response to Interrogatory No. 8 is inadequate. Defendants have not
alleged any factual or legal bases to support a contention that R.R. Donnelley has waived its
rights to bring an action against Defendants for infringement of the patents-in-suit.

### I. Interrogatory Nos. 10-12

Defendants' responses to Interrogatory Nos. 10-12 are wholly inadequate and
ignore R.R. Donnelley's Instructions numbered 5 and 6. In their responses to Interrogatory Nos.
10 and 11, Defendants merely incorporate other interrogatory responses into their answer
without providing any meaningful response. If Defendants had any real bases to make such
claims, Defendants should have responded with factual and legal bases for such claims, as
requested.

### J. Interrogatory No. 13

Defendants have improperly limited the dates of discoverable information. R.R.
Donnelley is entitled to business records for the entire time Defendants have profited from
Defendants' infringing products. Furthermore, Defendants stated that they would supplement
their response by identifying specific documents pursuant to Fed. R. Civ. P. 33(d). Defendants
have not identified any documents.

ROPES & GRAY LLP

Brian M. Koide, Esq.                    - 5 -                    November 16, 2006

      K.  <u>Interrogatory Nos. 15 and 16</u>

        Defendants' responses indicate that they will, "at most," provide information in the future "after a reasonable investigation." Yet, Defendants' supplemental responses have failed to do even that. R.R. Donnelley has now waited over six months for responses to these interrogatories.

        Please confirm that Defendants will be providing supplemental interrogatory responses on or before November 27, 2006.

        Sincerely,

        Bradford J. Badke

BJB:jbs

cc:  Jack B. Blumenfeld, Esq.
      Frederick L. Cottrell, Esq.

EXHIBIT F

 FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212 596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC.    www.ropesgray.com

November 30, 2006

Stuart W. Yothers
212-596-9176
Stuart.Yothers@ropesgray.com

**VIA FACSIMILE**

Brian M. Koide
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Re:    *R. R. Donnelley & Sons, Co. v. Quark, Inc. et al.*
       D. Del. Civ. No. 06-032 (JJF)

Dear Brian:

I write further to our telephone conversation of Tuesday, November 28, 2006 and in response to your e-mail of Wednesday, November 29, 2006.

R. R. Donnelley does not agree to the terms that Defendants are proposing with respect to the exchange of claim terms and proposed preliminary constructions. First, regarding the completion of contention interrogatories, R. R. Donnelley intends to comply with the December 7, 2006 deadline for responding to contention interrogatories. On or before December 7, 2006, R. R. Donnelley intends to provide Defendants with supplemental responses to contention interrogatories directed to claim construction and infringement (i.e., Defendant's Interrogatory Nos. 1 and 2) – as well as any other contention interrogatories that may require supplementation in accordance with the Court's Scheduling Order. R. R. Donnelley expects Defendants to adequately respond to its pending contention interrogatories, including Plaintiff's Interrogatory No. 2, which necessarily includes providing claim construction contentions. Stipulating that no infringement, non-infringement and claim construction contentions need be made until January 19, 2006 will only serve to further delay discovery in this case. Many of the Delaware Federal District Court judges find early contention interrogatory practice to be beneficial to a case. Indeed, Judge Farnan scheduled their completion three months before the end of fact discovery.

A sufficient response to R. R. Donnelley's Interrogatory No. 2 – which is directed to Defendants' non-infringement contentions – must necessarily include claim construction contentions. Performing an infringement analysis is a two step process: (i) first the claims are construed, and (ii) second, "the properly construed claims are compared to the allegedly infringing device." Abraxis Bioscience, Inc. v. Mayne Pharma, Inc., 2006 U.S. App. LEXIS 28199, No. 06-1118, *9(Fed. Cir. 2006) (internal citations omitted). In response to your e-mail

3305036_1

ROPES & GRAY LLP

Brian M. Koide                                – 2 –                        November 30, 2006

proposal, R. R. Donnelley will not agree to wait until January 19, 2007 for Defendants' non-infringement contentions – including the necessary claim construction contentions.

Furthermore, R. R. Donnelley will not agree to assert only the claims it had asserted as of October 24, 2006. Since discovery began, Defendants have been withholding a substantial amount of relevant and legitimate discovery. Therefore, R. R. Donnelley reserves its right to amend its interrogatory responses and assert additional claims as discovery proceeds.

Additionally, regarding deposition scheduling, Mr. Warmus is being offered in both his individual and 30(b)(6) capacities. Most, if not all, of the information that Mr. Warmus has regarding this case will overlap between those capacities. Accordingly, R. R. Donnelley believes that Defendants can complete their examination of Mr. Warmus in the seven hours provided for in the Federal Rules. Defendants have been provided ample notice of the topics for which Mr. Warmus has been designated, and if defendants do not proceed with the 30(b)(6) deposition at Mr. Warmus' scheduled deposition, we will consider Defendants to have waived their right to obtain testimony on the topics for which we have designated Mr. Warmus to provide testimony on behalf of RRD. Please let us know immediately if Defendants intend to proceed with Mr. Warmus' deposition on Monday. If we do not hear from you by tomorrow at noon, we will assume that Defendants do not wish to proceed with Mr. Warmus' deposition on Tuesday.

Sincerely yours,

Stuart W. Yothers/jrr

Stuart W. Yothers

SWY:jrr

Copy to:     Jack B. Blumenfeld, Esq.
             Frederick L. Cottell, III, Esq.

3305036_1

EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, | |
| Plaintiff, | |
| v. | C. A. No. 06-cv-032-JJF |
| QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | |
| Defendants. | |
| CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| R.R. DONNELLEY & SONS COMPANY, | |
| Counterclaim-Defendants, | |

**CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC
COMMUNICATIONS COMPANY'S SECOND SUPPLEMENTAL RESPONSE TO R.R.
DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company (collectively "Creo")

provide the following second supplemental response to the First Set of Interrogatories to

Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics Communications

Company (the "Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

RLF1-3092016-1

## I.    GENERAL RESPONSES

Creo's responses to the Interrogatories are made to the best of Creo's current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.    Creo reserves the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Creo objects generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine.  Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Creo objects to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement,

2

expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

      3.      Creo objects to all instructions, definitions, and interrogatories to the extent they seek information not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or interrogatories seek to require more of Creo than any obligation imposed by law, would subject Creo to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### RESPONSE TO INTERROGATORY NO. 1

Subject to the foregoing general objections, RRD has failed to state a claim upon which relief can be granted with respect to (i) direct infringement by any Creo product other than Darwin and (ii) indirect infringement. In its Complaint, RRD vaguely alleges that "[b]y its actions, including the sale of Darwin software, Creo has infringed." *See* Complaint ¶¶, 27, 32, 37, 42. Given that Creo, and its parent Eastman Kodak Company, offer diverse products and services and collectively employ more than 50,000 employees worldwide, a generic reference to unspecified broad claims of direct or indirect infringement involving parties other than Creo and products other than Darwin is not sufficient to satisfy proper notice pleading requirements under the Rules.

3

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 2

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it seeks information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop."

Creo also objects to this interrogatory as premature. For its part, RRD has objected to providing its contentions relating to noninfringement "before discovery is complete" and contentions relating to claim construction before the exchange of opening briefs on February 10, 2007. *See* RRD's Supplemental Responses to Creo's Interrogatory Nos. 1-3 and 5, at 2 and 8. To resolve this dispute, Creo has since attempted to reach an agreement whereby claim construction contentions would be exchanged January 19, 2006, approximately one month before the exchange of opening briefs. Creo also proposed to an exchange of any contentions relating to noninfringement or infringement to coincide with the proposed deadline January 19, 2007. Creo made this offer to facilitate an orderly claim construction briefing, despite the fact that RRD has – unlike Creo – not propounded interrogatories relating to claim construction. RRD declined Creo's offer. Therefore, subject to the foregoing general and specific objections, Creo responds as follows:

4

As a matter of law, method claims can only be directly infringed by a "use," not through the sale, offer for sale, manufacture, or importation of software which allegedly performs the steps, regardless of whether the sale, offer for sale, and manufacture occur within the United States, or whether the software is imported into the U.S.

Creo contends that a person using the Darwin Software does not infringe any of the asserted method claims. Darwin does not perform all elements of each asserted claim, and/or performs certain elements in a manner different from the manner required by the claims. A proper analysis of the bases for noninfringement, however, requires a detailed claim construction by the Court, which has not yet been performed. Creo has offered to make an exchange of claim construction contentions in advance of the Court's determination, to facilitate an exchange between the parties regarding their current contentions concerning why each of the patents is or is not infringed. RRD has to date declined this offer. Creo remains willing at any time to make this exchange, but in the absence of an orderly mutual exchange, Creo objects to this interrogatory as premature.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Ron Peleg, Ronit Konfidan, Nardi Jaacobi, Gershon Alon, and the named inventors of the patents in suit.

Creo reserves the right to further supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 3

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products and Third Party Software Products suitable for the use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas

Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 3

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it (i) seeks information defined by the terms "Defendants' Software Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Complaint only references "Darwin Desktop." Moreover, Creo objects to being required to answer Interrogatories relating to the operation of the Third Party Software Products, given the absence of any specific allegations by RRD concerning such products. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatory No. 2 with respect to the Darwin Software. Creo further responds that it cannot – as a matter of law – be found liable for inducing infringement under 271(b) prior to first becoming aware of the patents in suit. Likewise, Creo is not liable for contributory infringement under 271(c) prior to first becoming aware of the patents in suit. Creo is also not liable for indirect infringement to the extent that no single entity practices each of the steps or elements of the patents in suit, and thus, directly infringes.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Ron Peleg, Ronit Konfidan, Nardi Jaacobi, Gershon Alon, the named inventors of the patents in suit, and users of the Darwin Software.

Creo reserves the right to further supplement its response to this interrogatory at appropriate times in this litigation.

6

RLF1-3092016-1

**INTERROGATORY NO. 4**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 4**

Creo objects that this interrogatory is overly broad and unduly burdensome. Subject to the foregoing general and specific objections, Creo responds as follows:

The documents and communications on which Defendants intend to rely include the patents in suit, prior art of record, prosecution histories of the patents in suit, and the prosecution histories of patents related thereto. The prosecution histories include numerous arguments and narrowing amendments that limit the scope of the asserted claims through argument-based estoppel and/or amendment-based estoppel. Ultimately, whether prosecution history estoppel applies will depend on the claim construction and any range of equivalents asserted by RRD. It is premature at this time, with a *Markman* hearing scheduled for 2007, to speculate how RRD will attempt to read the claims and whether RRD will take a position that contradicts the prosecution histories. However, to date, Defendants have identified at least the following actions taken by RRD in the prosecution history that may form estoppels.

**U.S. Patent No. 6,952,801**

- Supplementary Amendment dated May 18, 2000 in U.S. Application Ser. No. 08/802,337 at 2-3 (claim amendments) & 4-5 (arguments to distinguish claims over prior art).

- Amendment A dated November 4, 2002 at 6-7 (arguments to distinguish claims over prior art).

7

- Amendment B dated March 28, 2003 at 2-3 (claim amendments) & 4 (remarks re claim amendments).

- Amendment C dated September 8, 2003 at 4-6 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated March 4, 2004 at 1-5 (remarks re prior art).

- Amendment D dated March 8, 2004 at 2-5 (claim amendments) & 6-7 (arguments to distinguish claims over prior art).

- Amendment E dated Jul 26, 2004 at 2-5 (claim amendments) & 6-8 (arguments to distinguish claims over prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 1 of the '801 patent:

| Claim Language | Estoppel |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | Amendment D (amendment) |
| (A) storing a first number of pages; | Amendment B (amendment; argument); Amendment C (argument) |
| (B) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment D (amendment); Amendment E (amendment) |
| (C) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment E (amendment) |
| (D) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment D (amendment); Amendment E (amendment; argument) |
| (E) determining whether a stored page is to be assembled into the second book based on the | Amendment A (argument); Amendment B (amendment; argument); Amendment C |

8

| | | |
|---|---|---|
| | second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | (argument); Amendment E (amendment; argument) |
| (F) | generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | Amendment C (argument); Amendment D (amendment; argument); Amendment E (amendment; argument) |
| (G) | producing the first and second books in a single press run. | Amendment D (amendment; argument); Amendment E (amendment; argument) |

## U.S. Patent No. 6,844,940

- Preliminary Amendment dated January 12, 2004 at 3-6 (claim amendments) & 7 (remarks).

- Supplemental Preliminary Amendment dated March 29, 2004 at 2-5 (claim amendments) & 6 (remarks).

- Petition to Make Special Under MPEP § 708.02 dated March 29, 2004 at 1-4 (arguments to distinguish claims over prior art).

- Request for Reconsideration of Petition to Make Special dated June 10, 2004 at 1-4 (arguments to distinguish claims over prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 11 of the '940 patent:

| Claim Language | Estoppel |
|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | |
| developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | Supplemental Preliminary Amendment (amendment) |
| developing a database having a number of entries each of which represents a variable object; and | Supplemental Preliminary Amendment (amendment) |

9

| causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | Petition to Make Special (argument); Request for Reconsideration (argument) |
|---|---|

## U.S. Patent No. 6,327,599

- Amendment A dated November 11, 1996 at 2 (claim amendments) & 3 (remarks).

- Amendment B dated May 19, 1997 at 1-3 (claim amendments) & 4-8 (arguments to distinguish claims over prior art).

- Amendment C dated November 19, 1997 at 1-2 (claim amendments) & 2-4 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated December 17, 1997 at 1-2 (remarks re prior art).

- Response After Final Rejection dated April 30, 1998 at 1 (claim cancellations and remarks).

- Amendment D dated April 2, 2001 at 1 (claim amendments) & 2-5 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated June 20, 2000 at 1-2 (remarks re prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 11 of the '599 patent:

| Claim Language | Estoppel |
|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | Amendment A (amendment; argument) |
| developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | |

| | |
|---|---|
| assembling a database having entries therein each representing variable information to be printed; | |
| developing a master page file from the template file wherein the master page file defines the fixed information; and | Amendment B (argument) |
| converting the template files the database and the master page file into press commands specifying sequence and content of page production by the press. | Amendment B (amendment; argument); Amendment D (argument) |

## U.S. Patent No. 6,205,452

- Amendment "A" dated January 7, 2000 at 2-3 (claim amendments) & 3-8 (arguments to distinguish claims over prior art).

- Response dated June 27, 2000 at 1-7 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated July 20, 2000 at 1-2 (remarks re prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 1 of the '452 patent:

| Claim Language | Estoppel |
|---|---|
| 1. A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | Amendment A (argument) |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | |
| (b) selecting areas of the page for the variable graphics information; | Amendment A (argument); Response (argument) |
| (c) specifying graph parameters; and | |
| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and | Amendment A (argument); Response (argument) |

11

| selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | |

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit and those individuals involved in the prosecution of the patents in suit, including William E. McCracken, G. Christopher Braidwood, Danielle M. Holmes, Trevor B. Joike, Mark G. Hanley, and Erin J. Fox.

Creo reserves the right to supplement its response to this interrogatory after receipt of RRD's claim construction and infringement contentions, the Court's order on claim construction, and at other appropriate times in this litigation.

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions or the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**RESPONSE TO INTERROGATORY NO. 5**

Creo objects that this interrogatory is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the "identification of all facts, documents, prior art . . ., activities, and alleged motivation or suggestion to combine references." Creo also objects to the interrogatory as unduly burdensome to the extent it seeks "references to specific portions of the prior art by page, line, figure, or description in claim chart format."

Subject to the foregoing general and specific objections, Creo responds that the asserted claims of the patents in suit may be invalid under the patent laws of the United States, 35 U.S.C.

§ 1 et seq. Creo asserts that, depending upon how the claims are construed, claim 11 of the '599 patent and claim 11 of the '940 patent may be invalid under 35 U.S.C. §§ 102(b) and/or 103(a) by a variable printing application called "Begin," sometimes known as "DijiComp PC," which was developed and used by a subsidiary of Kodak in the 1980s and 1990s. To the extent the asserted claims are interpreted to read on Darwin (as RRD has contended in its responses to Creo's Interrogatory No. 1), the asserted claims must also read on Begin, which renders the claims invalid. Creo also asserts that claims 1, 2 and 8 of the '452 patent may be invalid under 35 U.S.C. §§ 102(b) and/or 103(a) in view of the reporting and graphing capabilities of software applications such as Crystal Reports and Microsoft Access. In addition, Creo asserts that claims 1, 2 and 8 of the '452 patent are obvious under 35 U.S.C. § 103(a) in view of the '599 patent and the '940 patent, in combination with OLE programming techniques known to those skilled in the art at the time the application for the '452 patent was filed. Further, Creo asserts that claim 1 of the '801 patent is invalid under 35 U.S.C. § 112, because the patent fails to provide written description support for certain limitations of claim 1.

Persons knowledgeable of these facts include Timothy Donahue, Pat McGrew, John Desautels, and unknown individuals of Quark, Inc. Documents describing invalidating prior art speak for themselves.

Creo reserves the right to further supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 6

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations

13

**RESPONSE TO INTERROGATORY NO. 6**

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its response to Interrogatory Nos. 7, 8, 10, 11, and 14. Creo further responds that the doctrine of laches precludes RRD from any alleged damages that may have been incurred due to Creo's actions prior to the time that RRD filed and served its Complaint on January 17, 2006. RRD first had knowledge of Creo's Darwin software at least as early as 1997. *See* RRD017937. RRD thus knew, or should have known, of the allegedly infringing aspects of the Darwin software as of 1997.

RRD contacted Kodak, Creo, and several related entities, regarding one or more of the patents in suit in 2003 and early-2004. After these initial contacts, RRD did not contact Creo again until December 2005. RRD thus delayed in bringing suit against Creo by waiting over 4 years from the issuance of the '599 and '452 patents, and over two years since its early-2004 license-related correspondence with Kodak or Creo, to file suit. During this period, RRD did, and continued to do, regular business with Creo. At no point during this delay did RRD provide Creo with any indication that it ever intended to file suit for patent infringement. Given the circumstances, RRD's delay was unreasonable and inexcusable.

Due to RRD's delay in bringing suit, Creo has suffered substantial prejudice. By way of example, due to RRD's delay, Creo may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, the destruction of third-party documents, and the unreliability of

14

memories of long past events. With respect to business prejudice, Creo has continued to invest in and develop the Darwin software as a product line during this delay period.

Persons knowledgeable of these facts include, but are not limited to, William E. McCracken, Ronen Cohen, Gershon Alon, and Ronny Fogel. Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 7

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 7

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its responses to Interrogatories Nos. 6, 8, 10, 11, and 14. Creo further responds that RRD engaged in misleading conduct during both its business relationships with Creo, and its participation in various standards-making bodies.

For instance, RRD contacted Kodak, Creo, and several related entities, regarding one or more of the patents in suit in 2003 and early-2004. After these initial contacts, RRD did not contact Creo again until December 2005. RRD thus delayed in bringing suit against Creo by waiting over 4 years from the issuance of the '599 and '452 patents, and over two years since its early-2004 license-related correspondence with Kodak or Creo, to file suit. During this period, RRD did, and continued to do, regular business with Creo. At no point during this delay did RRD provide Creo with any indication that it ever intended to file suit for patent infringement. Given the circumstances, RRD's conduct was misleading.

15

Further, RRD engaged in misleading conduct while participating in the CGATS.20 standard-making process. Specifically, during the CGATS.20 standard-making procedure, RRD filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National Standard." K00388563-K00388565. In this document, RRD stated that it would "provide a license under any [of the above-listed] patents to the producer and/or user of any [products complying with an American National Standard Institute (ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564. Moreover, at no time in the course of the CGATS.20 standard-making process did RRD indicate that it intended to assert its patents against Creo or any other entity. RRD's filing of the Patent Holder Statement and subsequent silence regarding its litigation intentions during the CGATS.20 standards-making process was misleading.

Creo relied on RRD's misleading conduct when deciding to continue to invest in and develop the Darwin software as a product line. Creo now faces material prejudice as a result of RRD's misleading conduct. In particular, due to RRD's misleading conduct, Creo may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, the destruction of third-party documents, and the unreliability of memories of long past events. Creo will also experience material economic prejudice, as a result of Creo's continuing investment in and development of the Darwin software .

Persons knowledgeable of these facts include, but are not limited to, William E. McCracken, Riyaz Asaria, Mary Abbott, Timothy Donahue, Ronen Cohen, Gershon Alon, and Ronny Fogel.

16

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 8

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 8

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatories Nos. 6-7, 10, 11, and 14.

RRD voluntarily and intentionally relinquished its rights against Creo with respect to the patents in suit, when it failed to pursue litigation against for more than 4 years after the issuance of the '599 and '452 patents. RRD neglected to file suit, despite having been aware of Creo's Darwin software since as early as 1997. *See* RRD017937. Moreover, RRD waited over two years after its early-2004 license-related correspondence with Creo, Kodak, or related entities to file suit. During this period, RRD did, and continued to do, regular business with Creo. Creo reasonably understood RRD's silence and inaction to be a waiver of any allegations of infringement of the patents in suit.

RRD also waived its right to pursue claims of infringement of the patents in suit against Creo by virtue of its participation on the CGATS.20 standard-making committee. Specifically, during the CGATS.20 standard-making procedure, RRD filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National

17

Standard." K00388563-K00388565. In this document, RRD stated that it would "provide a license under any [of the above-listed] patents to the producer and/or user of any [products complying with an American National Standard Institute (ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564. Moreover, at no time in the course of the CGATS.20 standard-making process did RRD indicate that it intended to assert its patents against Creo or any other entity. Therefore, RRD has waived the right to seek more than a license under reasonable terms and conditions for the patents in suit.

Finally, RRD has waived its right to pursue patent infringement claims against Creo by virtue of agreements signed by RRD with Scitex. From 1987 through 2005, RRD signed a series of non-disclosure, product evaluation, and field test agreements with Scitex, including agreements regarding Scitex's Begin and DijiComp PC variable data printing software. *See* K00926853-K00926892. In these agreements, RRD waived certain rights, including the right to enforce patent rights against Scitex or its customers. *See, e.g.,* K00926884-K00926889 ("[RRD] agrees not to enforce against Scitex or customers of Scitex any patent rights the scope of which includes a product utilizing Software delivered hereunder by Scitex...."). Kodak has subsequently acquired Scitex, and therefore has acquired the rights that RRD waived in these agreements. Moreover, Communicolor, which was subsequently acquired by RRD, evaluated for licensing Scitex's Begin software as early as October 1995. K00560685-88. RRD has assumed any waivers by Communicolor, by virtue of RRD's 1999 acquisition of Communicolor.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Paul Lovern, Jim Gibson, Chloma Jarrett, Michael Spaul, William E. McCracken, Timothy Donahue, Mary Abbott, Ronen Cohen, Gershon Alon, and Ronny Fogel.

18

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

**INTERROGATORY NO. 9**

State in detail all factual and legal bases for Defendants' allegations set forth in paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 9**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds that at least claims of the '599 patent, '940 patent and '801 patent are barred by the doctrine of prosecution laches.

In the prosecution of the '599 patent, a Notice of Allowability issued on May 12, 1998, but RRD delayed the issuance of the allowed claims for over three and a half years by withdrawing the patent application from issue and filing successive Continued Prosecution Applications. *See* RRD004598-RRD004815. The delay was unreasonable and inexcusable, and Creo will experience material economic prejudice as a result of its continued investment in and development of the Darwin software during the period of delay without knowledge of RRD's intention to patent the subject matter of the '599 patent claims.

Regarding the '940 patent and '801 patent, RRD filed the earliest application to which these patents in suit claim on their face priority on June 7, 1995. The application that led to the issuance of the '801 patent was filed almost six years later; the application that led to the issuance of the '940 patent was filed 8 1/2 years later. RRD's delay in prosecuting these applications is unreasonable and unexplained, and Creo will experience material economic prejudice as a result of its continued investment in and development of the Darwin software

19

during the period of delay without knowledge of RRD's intention to patent the subject matter of

the '940 and '801 patent claims.

Persons knowledgeable of these facts include, but are not limited to, the named inventors

of the patents in suit, persons involved in the prosecution of the patents in suit, and Ron Peleg

and Nardi Jaacobi.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

**INTERROGATORY NO. 10**

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines
of license and/or implied license," including, but not limited to, the identification of all
documents and communications on which Defendants rely to support their contention and the
identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 10**

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as premature to the extent that discovery remains ongoing. Subject to the

foregoing general and specific objections, Creo incorporates by reference its response to

Interrogatory Nos. 6, 7, 8, 11, and 14. Creo responds that there are two methods by which RRD

has effected an implied license to Creo.

First, RRD has granted Creo an implied license to the patents in suit through equitable

estoppel. RRD has had knowledge of Creo's Darwin software since at least 1997, and Darwin

has since been developed to be compatible with the CGATS.20 standard-making committee

standard. As further detailed in Creo's responses to Interrogatory No. 7, RRD disclosed the

existence of the patents in suit and/or their applications in RRD's "Statement of Patent Holder

Concerning the Use of Patented Device or Design in Conjunction With an American National

20

Standard" to CGATS 20. K00388563-K00388565. In the statement, RRD represented that it would provide a license to the patents in suit "under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564. Not until November 2003, however, did RRD object to Creo's alleged unlicensed use of the patents in suit. Because RRD did not seek to attempt to license the patents in suit until November 2003, Creo reasonably inferred that RRD did not intend to enforce its patents. Having relied on RRD's conduct, Creo will be materially prejudiced for its continued investment in and development of Darwin if RRD is allowed to proceed with its infringement claims.

Second, an implied license arose from the course of conduct between RRD and Creo. RRD has used and had access to various Creo technologies, including those of Scitex Digital Printing ("Scitex"). Scitex was purchased by Versamark and has since been acquired by Kodak Graphics Communications Company. RRD licensed Scitex's Begin Front-End Software Package as early as July 15, 1996. K00926861-K00926865. Also, Communicolor, which was subsequently acquired by RRD, evaluated for licensing Scitex's Begin software as early as October 1995. K00560685-88. Similarly, RRD licensed Scitex's DijiComp 8.03 Version Software Package as early as May 1996. K00926856-K00926860. RRD licensed these variable data software programs without ever raising patent infringement issues. The reasonable expectations of the parties and the dictates of fairness and equity support an implied license when RRD and its assigns acquiesced in the development of this variable data software.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, Ronny Fogel, Timothy Donahue, Paul Lovern, Jim Gibson, Chloma Jarrett, Michael Spaul, Riyaz Asaria, Mary Abbott, and unknown representative(s) of RRD.

21

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 11

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 11

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo incorporates by reference its response to Interrogatory Nos. 6, 7, 8, 10, and 14.

RRD engaged in unconscionable and inequitable conduct during the prosecution of the patents in suit. Specifically, RRD deceived the Patent and Trademark Office ("PTO"), by withholding material prior art references and other information known to RRD. By way of example, such withheld material includes the over 50 prior art references that were not disclosed by RRD to the PTO during the prosecution of the '599 patent, but were subsequently identified during the prosecution of the '452 patent. Moreover, RRD failed to disclose material information known to RRD regarding the commercial activities and public disclosures of Barco Graphics and Xeikon that occurred prior to the filing dates of the patents in suit. Further, RRD intentionally deceived the PTO by "burying" material references during the prosecution of the patents in suit, and by submitting only selected excerpts of cited references while withholding from the PTO non-cumulative material information disclosed elsewhere in the cited references.

22

RRD is also engaged in unconscionable and inequitable conduct in light of its participation on the CGATS.20 standard-making committee. Specifically, during the CGATS.20 standard-making procedure, RRD filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National Standard." K00388563-K00388565. In this document, RRD stated that it would "provide a license under any [of the above-listed] patents to the producer and/or user of any [products complying with an American National Standard Institute (ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564. Moreover, at no time in the course of the CGATS.20 standard-making process did RRD indicate that it intended to assert its patents against Creo or any other entity. Therefore, it is inequitable and unconscionable for RRD to now seek more than a license under reasonable terms and conditions for the patents in suit.

By engaging in such unconscionable and inequitable conduct, RRD claims are barred by the doctrine of unclean hands.

Persons knowledgeable of these facts include, but are not limited to, persons involved in the prosecution of the patents in suit, Ronen Cohen, Gershon Alon, Ronny Fogel, Charles Cornelius, Paul Notredame, Rob Haak, Karel Tavernier, Grant Miller, Stefaan De Smedt, Francois Kremer, Brian L. Michaelis, Yves Vanhauwaert, Mary Lee Schneider, Ronnie Sarkar, Stella Shaw, Jim Turner, Barb Schetter, Jack Oberhill, Daryl P. Jones, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 12

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or

23

part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as premature to the extent that discovery remains ongoing. Further, it is premature at this time, given that Creo's rebuttal expert report including its damages analysis is not due under the Court's Rule 16 Scheduling Order until June 1, 2007. Subject to the foregoing general and specific objections, Creo responds that RRD has failed to mark products and/or services as required by 35 U.S.C. § 287. Moreover, RRD has failed to provide actual notice to the extent it has failed to charge infringement of specific patents in suit against a specific Kodak accused product and/or service. In particular, RRD has failed to provide any actual notice of any product except for the Darwin software, specifically mentioned in its Complaint. With respect to 35 U.S.C. § 286, RRD is barred from recovering any damages resulting from any infringement committed more than six years prior to the filing of the Complaint on January 17, 2006.

Persons knowledgeable of these facts include, but are not limited to, unknown representative(s) of RRD.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

**RESPONSE TO INTERROGATORY NO. 13**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue." Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit. Creo also objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Subject to the foregoing general and specific objections, Creo will respond to this interrogatory by producing business records subject to Federal Rule of Civil Procedure 33(d) sufficient to identify all revenues and profit of Darwin Desktop starting in March 2001.

Persons knowledgeable of these facts include, but are not limited to, Gershon Alon and Ronen Cohen.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

**INTERROGATORY NO. 14**

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

**RESPONSE TO INTERROGATORY NO. 14**

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds as follows separately with respect to each Creo

25

defendant.

With respect to Creo, Inc., on or about September 4, 2003, Gary B. Cohen, Senior Patent Counsel of Xerox Corporation forwarded RRD correspondence identifying U.S. Pat. Nos. 6,327,599 ("the '599 patent") and 6,205,452 ("the '452 patent) to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. Creo, Inc. became aware of the '599 and '452 patents on or about that date. Creo, Inc. became aware of U.S. Pat. Nos. 6,844,940 ("the '940 patent") and 6,952,801 ("the '801 patent) after Joseph Guiliano of Ropes & Gray sent a letter to Judith Hess, Vice President of Kodak Graphic Communications Group on or about December 19, 2005.

With respect to Kodak Graphic Communications Company and Eastman Kodak Company, both companies became aware of the '599 patent and the '452 patent in connection with the acquisition of NexPress Solutions, LLC ("NexPress"). The NexPress acquisition closed on or about May 3, 2004. Kodak Graphic Communications Company and Eastman Kodak Company both became aware of the '940 patent and the '801 patent after the above-referenced letter from Mr. Guiliano to Ms. Hess.

Persons knowledgeable of these facts include, but are not limited to, Ronny Fogel, Gary B. Cohen, and Joseph Guiliano.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specified hardware product involved in the use.

26

**RESPONSE TO INTERROGATORY NO. 15**

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking information defined by the terms "Third Party Software Products" and "Defendants' Hardware Products." Moreover, Creo objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks information relating to "all use" of Third Party Software Products and Defendants' Hardware Products. Creo cannot reasonably identify "all use[s]." The Complaint only references Creo, Inc.'s Darwin Desktop, not any third-party software products. Moreover, the interrogatory is overly broad as it seeks a description of "all use" of "Third Party Software Products with Defendants' Hardware Products." At most, Creo will respond in the future by describing those uses that can be identified after a reasonable investigation.

**INTERROGATORY NO. 16**
Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

**RESPONSE TO INTERROGATORY NO. 16**

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking information defined by the terms "Defendants' Software Products," "Third Party Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Moreover, Creo cannot reasonably identify "all" of the requested plans, efforts, or activities. At most, Creo will respond in the future by describing those plans, efforts, or activities that can be identified after a reasonable investigation.

27

As to objections only,

_Frederick L. Cottrell, III /als_ (#4093)
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

OF COUNSEL:
Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated:        December 11, 2006

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2006, I served the foregoing on counsel as follows:

## BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Bradford J. Badke, Esquire                    Steven A. Kaufman
Fish & Neave IP Group                          Fish & Neave IP Group
Ropes & Gray                                        Ropes & Gray
1251 Avenue of the Americas             One International Place
New York, NY   10020                           Boston, MA  02110

Anne Shea Gaza (#4093)
gaza@rlf.com