IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-032-JJF |
| QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENT
TO ITS MOTION TO COMPEL (D.I. 36)

Plaintiff R.R. Donnelley & Sons Co. ("RRD") hereby moves the Court for leave to file a Supplement to its June 21, 2006 Motion to Compel (D.I. 36), as attached hereto as Exhibit A, to bring to the Court's attention additional information concerning the status of discovery in this case during the six months since RRD filed its original Motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*
_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
   *R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January 3, 2007

550371

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that counsel for plaintiff has discussed the subject of the foregoing motion with counsel for defendants, and the parties have not been able to reach agreement on the issues raised in the motion.


*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II


January 3, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 3, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on January 3, 2007, upon the following in the manner indicated:

### BY EMAIL AND HAND

> Frederick L. Cottrell III
> Richards Layton & Finger
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801

### BY EMAIL AND FEDERAL EXPRESS

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595

> */s/     Rodger D. Smith II (#3778)*
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899-1347
> (302) 658-9200
> rsmith@mnat.com

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ | ) | |
| R.R. DONNELLEY & SONS COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| | ) | |
| CREO, INC., EASTMAN KODAK | ) | |
| COMPANY, AND KODAK GRAPHIC | ) | |
| COMMUNICATIONS COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**SUPPLEMENT TO PLAINTIFF'S
MOTION TO COMPEL DISCOVERY DATED JUNE 21, 2006 (D.I. 36)**

Over six months have passed since Plaintiff R.R. Donnelley & Sons Company ("RRD") filed its June 21, 2006 Motion to Compel Discovery (D.I. 36), seeking to compel defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively "Defendants") to provide complete responses to RRD's First Set of Requests for the Production of Documents and Things (hereinafter "Document Requests") and First Set of Interrogatories (hereinafter "Interrogatories"). RRD submits this brief to supplement the record on the status of the underlying dispute in an attempt to expedite the litigation of this matter:

1.    From the beginning of discovery in this case, RRD has identified specific Variable Digital Printing ("VDP") software products and hardware presses, including in its discovery requests. RRD's May 1, 2006 discovery requests identify specific VDP software and digital presses for which it seeks discovery. RRD seeks discovery about four software products:

(1) Creo Darwin, for both QuarkXPress and Adobe InDesign; (2) Kodak NexTreme DL-100 Variable Data Software; (3) Kodak NexTreme DL-1000 Variable Data Software; and (4) Composer; and four digital presses:   (1) Kodak Versamark V-Series Printing System; (2) Kodak Versamark D-Series Printing System; (3) Kodak NexPress 2100 Plus Digital Production Color Press; and (4) Kodak NexPress 2500 Digital Production Color Press.   Based on information and belief, and despite the limited discovery Defendants have provided to date, RRD believes that Defendants likely generate products other than these four software products and four hardware products that infringe or induce infringement of the patents in suit.   RRD therefore seeks discovery on all eight of the aforementioned products and any other of Defendants' VDP software or hardware products.

2.      Defendants limited their June 12, 2006 responses (D.I. 36, Ex. A & B) to the Darwin Desktop software, claiming that because RRD named only Darwin Desktop in its Complaint, RRD was entitled to discovery only on this single software product.   Defendants said they would not provide any discovery concerning other software products or the printing presses underlying RRD's inducement claim.   On June 21, 2006, RRD filed its motion to compel Defendants to comply with their discovery obligations (D.I. 36), and in the intervening six and one-half months, Defendants have not changed their position.

3.      On July 7, 2006, RRD responded to Defendants' First Set of Interrogatories (attached hereto as Exhibit 1) by identifying at least four of Defendants' software packages by name (Creo Darwin Desktop, for both QuarkXPress and Adobe InDesign; Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer) and specifying that Defendants' sales and other activities with respect to at least four specific models of Defendants' digital presses induce infringement (the Kodak Versamark

V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press) (Ex. 1 at 10).

4. Despite having knowledge of specific software products and presses for which RRD sought discovery for more than six months, Defendants have continued to proceed as if RRD had only identified Darwin Desktop. In their July 3, 2006 Opposition to RRD's Motion to Compel Discovery (D.I. 41), Defendants specifically asked the Court to "limit discovery to Darwin . . . unless and until RRD makes well-founded contentions regarding other specific products" (*id.* at 4). RRD has long since made known to Defendants its "well-founded" contentions about the other software products and digital presses listed above.

5. Over the course of the last six months, Defendants said they would not provide any information concerning any product other than Darwin Desktop. RRD's infringement claims are simply not limited to the one product identified in the Complaint. Indeed, the Federal Rules of Civil Procedure do not even require naming a single product in the Complaint, *see*, *e.g.*, Fed. R. Civ. P., Form 16, and "all the Rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48. Notice pleading in patent cases is made possible by the liberal discovery mechanisms permitted by the Federal Rules, which are used to define more precisely the grounds for both parties' claims and defenses and to narrow the disputed facts and issues in a case. *Id.*

6. Defendants have also refused to produce witnesses. In response to RRD's August 28, 2006 Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), Defendants objected and refused to produce witnesses on topics beyond the Darwin product (D.I. 52). On

November 22, 2006, Defendants filed a Motion for Rule 26(c)(4) Protective Order (D.I. 68) seeking to limit discovery to the Darwin Desktop software product.

7.     Defendants' continued intransigence has severely limited RRD's ability to litigate the other issues in this case.  They have also refused to provide responses to RRD's contention interrogatories.  Defendants in their responses to these interrogatories in June 2006 and their supplemental responses in July and December 2006 provided essentially no substantive responses on the basis that such contentions were "premature."  After six months, such contentions cannot remain "premature," and a response -- which Defendants have yet to provide -- is long overdue.  In an effort to obtain that result, RRD included a request for Defendants' contention interrogatory responses in RRD's original motion to compel.  Defendants' continuing failure to provide adequate responses is the subject of RRD's Motion to Preclude Defendants from relying on undisclosed contentions, filed concurrently with this motion.

8.     In an attempt to advance this case, RRD's counsel sent letters on November 16 and December 19, 2006 to Defendants' counsel requesting discovery responses beyond the Darwin Desktop software (attached hereto as Exhibit 2 and Exhibit 3, respectively).  To date, Defendants have not responded.

9.     Given the passage of time without the benefit of critical discovery, RRD has also, simultaneously with the filing of this supplement, filed a motion to amend its Complaint.  In its Amended Complaint, RRD has provided additional detail concerning its infringement claims, despite having no obligation to do so under the Federal Rules, to obtain the scope of discovery it seeks.  In so doing, RRD seeks to dislodge Defendants' unreasonable and legally unsupportable discovery position that only the Darwin software is at issue in this case.

Given the amendment, Defendants cannot credibly claim a moment longer that they need not produce information concerning their other VDP products.

10.    Defendants' refusal to provide appropriate discovery has resulted in prejudicial delay.  RRD therefore respectfully requests that the Court grant its Motion to Compel Discovery (D.I. 36) and order Defendants to comply with their discovery obligations with respect to Defendants' VDP software and hardware products, including, *but not limited to*, these software products:  (1) Creo Darwin Desktop, for both QuarkXPress and Adobe InDesign; (2) Kodak NexTreme DL-100 Variable Data Software; (3) Kodak NexTreme DL-1000 Variable Data Software; and (4) Composer; and these digital presses:  (1) Kodak Versamark V-Series Printing System; (2) Kodak Versamark D-Series Printing System; (3) Kodak NexPress 2100 Plus Digital Production Color Press; and (4) Kodak NexPress 2500 Digital Production Color Press.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
    *R.R. Donnelley & Sons Co.*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

January 3, 2007
550373

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY, )
                             )
      Plaintiff,          )
                             )
    v.                  )     C.A. No. 06-032-JJF
                             )
QUARK, INC., CREO, INC., EASTMAN )    **CONFIDENTIAL—**
KODAK COMPANY, AND KODAK   )    **PURSUANT TO D. DEL. LR 26.2**
GRAPHIC COMMUNICATIONS     )
COMPANY,                 )
                             )
      Defendants.      )
                             )
                             )
CREO, INC., EASTMAN KODAK     )
COMPANY, AND KODAK GRAPHIC  )
COMMUNICATIONS COMPANY,    )
                             )
      Counterclaim-Plaintiffs, )
                             )
    v.                  )
                             )
R.R. DONNELLEY & SONS COMPANY, )
                             )
      Counterclaim-Defendant. )
                             )

## R.R. DONNELLEY & SONS COMPANY'S RESPONSES TO CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SET OF INTERROGATORIES

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

R.R. Donnelley & Sons Company ("Plaintiff") hereby objects and responds to Creo, Inc.'s,

Eastman Kodak Company's, and Kodak Graphic Communications Company's (collectively

"Defendants") First Set of Interrogatories To Plaintiff as follows:

## GENERAL OBJECTIONS

Each of Plaintiff's responses to Defendants' First Set of Interrogatories is subject to, and incorporates, the following General Objections. Plaintiff specifically incorporates each of these General Objections into its specific responses to each of Defendants' interrogatories, whether or not each such General Objection is expressly referred to in a specific response. A response to a request shall not work as a waiver of any applicable specific or general objection to a request.

1.    Plaintiff incorporates by reference the General Objections set forth in its responses to Defendants' First Set of Requests for Production of Documents and Things Directed to Plaintiff.

2.    Plaintiff objects to these interrogatories to the extent they seek to impose any requirement or obligation on Plaintiff beyond the requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.

3.    Plaintiff objects to these interrogatories to the extent they seek discovery of information that is subject to the attorney-client privilege, the attorney work product immunity or any other privileges or exemptions from production.

4.    Plaintiff objects to these interrogatories to the extent that they are not reasonably calculated to lead to the discovery of admissible evidence.

5.    Plaintiff objects to these interrogatories to the extent they seek the identification of persons with knowledge as being overly broad and unduly burdensome because they require Plaintiff to identify each of its employees with knowledge of each interrogatory topic, regardless of the level and nature of the employee's knowledge. In answering these interrogatories, Plaintiff will make an inquiry of those individuals who are reasonably accessible

2

to Plaintiff and who are reasonably likely to have such information and will identify those individuals substantively knowledgeable about each particular interrogatory topic.

6.      Plaintiff objects to these interrogatories to the extent that they seek to compel Plaintiff to generate or create information that does not exist, is not used, or is not generated by Plaintiff in the ordinary course of business.

7.      Plaintiff objects to these interrogatories to the extent that they seek discovery of information about ongoing research and development activities of Plaintiff that have not yet been commercialized.

8.      Plaintiff objects to these interrogatories to the extent that they seek to compel Plaintiff to identify documents created after the filing date of its complaint in this action.

9.      Plaintiff's discovery and investigations of the facts relevant to the subject matter of this action are ongoing. Plaintiff's responses are based upon information and writings presently available to and located by Plaintiff and their attorneys, and are without prejudice to Plaintiff's right to produce evidence of any additional facts. Accordingly, Plaintiff reserves the right to supplement and/or amend these responses when its discovery and investigations are complete.

## RESPONSES TO INTERROGATORIES

These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility.

## INTERROGATORY 1

Identify each accused apparatus, product, device, process, method, act, or other instrumentality that you allege infringes the patents in suit and describe in detail how it infringes. Please include in your answer a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents and whether each Creo Defendant infringes directly, by inducement, or contributorily. For each element you contend is

3

governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s) in each such apparatus, product, device, process, method, act, or other instrumentality.

## RESPONSE TO INTERROGATORY 1

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for a level of detail that is customarily provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request to the extent that it seeks Plaintiff's contentions before discovery is complete. Plaintiff has received incomplete discovery from Defendants regarding the accused products and activities, and thus has not yet completed its discovery and investigation of all of the facts that may eventually be responsive to this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, Defendants infringe at least claim 1 of Warmus et al. U.S. Patent No. 6,205,452 ("the '452 patent"), claim 11 of Warmus et al. U.S. Patent No. 6,327,599 ("the '599 patent"), claim 11 of Warmus et al. U.S. Patent No. 6,844,940 ("the '940 patent"), and claim 1 of Warmus et al. U.S. Patent No. 6,952,801 ("the '801 patent") (collectively, "the patents-in-suit"). The following claim charts compare these claims with one of Defendant's accused products, Darwin Desktop. Plaintiff reserves the right to modify its positions as discovery proceeds and as claim construction proceedings warrant. In accordance with the Court's Scheduling Order, the parties must exchange opening claim construction briefs on February 16, 2007.

Darwin Desktop infringes at least claim 1 of the '452 patent for at least the reasons set forth below:

4

| Claim 1 | Infringing Elements of Darwin Desktop |
|---|---|
| 1. A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | Darwin Desktop includes a tool for controlling a display device to display variable graphics information in graph format (e.g., the Charts tool of Darwin Pilot). Darwin Desktop uses a database having a number of fields, each of which represents variable information or variable graphics information. |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | Darwin Desktop enables the development of a template page file that has master data representing fixed information and placeholders representing an area of a page for variable information. |
| (b) selecting areas of the page for the variable graphics information; | When using Darwin Desktop, a representative chart placeholder appears in the area of the page selected for a chart containing variable graphics information. |
| (c) specifying graph parameters; and | Darwin Desktop allows the specification of graph parameters including, for example, chart type (e.g., pie, column, bar, or line), colors, and labels. |
| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | Darwin Desktop displays pages with the fixed information, the selected variable information from the database, and the selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. |

5

Darwin Desktop infringes at least claim 11 of the '599 patent for at least the reasons set forth below:

| Claim 11 | Infringing Elements of Darwin Desktop |
|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | Darwin Desktop is used to generate a file that can be used to control an electronic press. |
| (a) developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | Darwin Desktop enables the development of a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page (e.g., using the Darwin Pilot). |
| (b) assembling a database having entries therein each representing variable information to be printed; | Darwin Desktop enables the assembly of a database having entries representing variable information to be printed (e.g., using Database Administration in the Darwin Pilot). |
| (c) developing a master page file from the template file wherein the master page file defines the fixed information; and | Darwin Desktop generates a file (e.g., a page description language file) from the template file that defines the fixed information. |
| (d) converting the template files the database and the master page file into press commands specifying sequence and content of page production by the press. | The file generated from the template file by Darwin Desktop, in conjunction with the database and template file, is used to produce the variable print job. |

Darwin Desktop infringes at least claim 11 of the '940 patent for at least the reasons set forth below:

| Claim 11 | Infringing Elements of Darwin Desktop |
|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | Darwin Desktop is used to generate a file that can be used to control an electronic press. |
| (a) developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | Darwin Desktop enables the development of first and second data sets representing associated first and second templates, where each data set has master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed (e.g., using the Darwin Pilot). |
| (b) developing a database having a number of entries each of which represents a variable object; and | Darwin Desktop enables the assembly of a database having entries representing variable objects (e.g., using Database Administration in the Darwin Pilot). |
| (c) causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | Darwin Desktop separates fixed information, which it defines in reusable objects, from position data for each data set in preparation for rasterization. The output generated by Darwin Desktop (e.g., a page description language file) is used to cause an electronic press to print output pages with the reusable objects and variable objects. |

Darwin Desktop infringes at least claim 11 of the '801 patent for at least the reasons set forth below:

| Claim 1 | Infringing Elements of Darwin Desktop |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | Darwin Desktop enables the assembly of first and second different books. |
| (a) storing a first number of pages; | Darwin Desktop stores a first number of pages. |
| (b) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | Darwin Desktop enables a user to specify a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book. |
| (c) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | Darwin Desktop enables a user to specify a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book. |
| (d) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | Darwin Desktop determines whether a stored page is to be assembled into the first book based on the first set of pagination information. A second number of stored pages to be assembled into the first book is less than the first number. |
| (e) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | Darwin Desktop determines whether a stored page is to be assembled into the second book based on the second set of pagination information. A third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number. |

8

| (f) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | Darwin Desktop generates page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information. |
|---|---|
| (g) producing the first and second books in a single press run. | Darwin Desktop enables the production of the first and second books in a single press run. |

Plaintiff further alleges that Defendants directly infringe the patents-in-suit by making, using, and selling the accused products and services. Defendants contribute to and induce infringement by others who use Defendants' variable digital printing software, including but not limited to Darwin Desktop. On information and belief, Defendants contribute to and induce infringement by others by selling digital presses bundled with infringing variable digital printing software and by promoting third party infringing software packages with the sale of Defendants' digital presses.

In this regard, discovery currently being withheld by Defendants likely will lead to additional information concerning Defendants' infringing products. For example, on information and belief, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing (as defined in Plaintiff's First Set of Interrogatories to Defendants) will also be found to infringe the patents-in-suit. Furthermore, Plaintiff believes that Defendants have been bundling infringing software products with the sale of their digital presses, and that Defendants have been promoting infringing third party software packages with the sale of Defendants' digital presses.

Plaintiff has reason to believe that infringing sales or activities (e.g., the inducement of sales of infringing third party software packages) have occurred with respect to Defendants' digital presses, including without limitation the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

Defendants improperly continue to refuse to completely answer Plaintiff's interrogatories and document requests. Thus, Plaintiff is unable to provide all of the details of each and every one of its infringement contentions with respect to each of the products named above at this time. Therefore, Plaintiff expressly reserves the right to supplement its responses to Defendants' interrogatories once Defendants provide the necessary information.

One or more as yet unidentified employees or agents of Defendants will be most knowledgeable about Defendants' infringing products and services. James L. Warmus of R.R. Donnelley & Sons Company may have knowledge regarding Defendants' products and Plaintiff's related claims.

**INTERROGATORY 2**

For each claim identified in your response to Interrogatory No. 1, state your constructions of all claim terms, phrases, clauses, or limitations, and the factual and legal bases for your constructions.

**RESPONSE TO INTERROGATORY 2**

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for information that is customarily provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request to the extent that it seeks Plaintiff's exhaustive contentions when discovery is just beginning. Plaintiff has received no documents from

10

Defendants regarding the accused products and activities and has not yet completed its discovery and investigation of all of the facts relating to this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, infringement is demonstrated by comparing the plain and ordinary English language meaning of the claims to the features of Defendants' accused products and activities. Plaintiff, however, expressly reserves the right to identify appropriate refinements to and support for a claim construction consistent with the schedule set by the Court. In accordance with the Court's Scheduling Order, the parties must exchange opening claim construction briefs on February 16, 2007.

## INTERROGATORY 3

For each claim identified in your response to Interrogatory No. 1, state your contentions as to the earliest priority date that each claim is entitled, and describe in detail all factual and legal bases for your contentions.

## RESPONSE TO INTERROGATORY 3

In addition to its General Objections, Plaintiff objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this interrogatory in that the term "priority date" is undefined. Plaintiff will interpret "priority date" to mean the filing date of the earliest filed application to which a particular patent claims priority. Plaintiff also objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

11

Subject to the foregoing general and specific objections, and subject to Plaintiff's understanding of the term "priority date," Plaintiff responds that each of the '599 patent, the '940 patent, and the '801 patent claim priority to or matured from a patent application that was filed on June 7, 1995. Therefore, the priority date of the asserted claims of these three patents is June 7, 1995.

The application that matured into the '452 patent was filed on October 29, 1997. Therefore, the priority date of the asserted claims of the '452 patent is October 29, 1997.

## INTERROGATORY 4

For each claim identified in your response to Interrogatory No. 1, state your contentions as to conception dates and reduction to practice dates, and describe in detail all factual and legal bases for your contentions.

## RESPONSE TO INTERROGATORY 4

In addition to its General Objections, Plaintiff objects to this interrogatory as irrelevant because Defendants have not identified a defense based on prior art under 35 U.S.C. §§ 102(a), (e) or (g). Plaintiff also objects to this interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Plaintiff objects to providing the requested information until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit. Plaintiff also objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, until such time as Defendants assert prior art placing the conception date and the reduction to practice date of the asserted claims at issue, the conception and reduction to practice dates of the asserted claims are at least as early as the filing dates of the applications that matured into the

12

patents-in-suit. *See Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The filing of a patent application serves as conception and constructive reduction to practice of the subject matter described in the patent application."). Each of the '599 patent, the '940 patent, and the '801 patent claim priority to or matured from a patent application that was filed on June 7, 1995. Therefore, the conception date and reduction to practice date of the asserted claims of these three patents is at least as early as June 7, 1995.

The application that matured into the '452 patent was filed on October 29, 1997. Therefore, the conception date and reduction to practice date of the asserted claims of the '452 patent is at least as early as October 29, 1997.

## INTERROGATORY 5

Identify each person with whom you, your attorneys, or your representatives have contacted or negotiated regarding licenses or possible licenses for the patents in suit, and provide a detailed description of the contacts or negotiations and the results of the contacts or negotiations, including a detailed description of the terms and conditions of any actual licenses or draft licenses that resulted and an identification of any license agreements.

## RESPONSE TO INTERROGATORY 5

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that there are no outstanding licenses with third parties regarding the patents-in-suit. The following table identifies correspondence that has taken place with third parties regarding licensing at least some of the patents-in-suit.

13

| Date | Person Contacted | Reply From |
|------|------------------|------------|
| April 11, 2003 | Mr. William Gates, III<br>Chairman and Chief Software<br>Architect<br>Microsoft Corporation | |
| July 11, 2003 | Mr. Brad Smith<br>General Counsel<br>Microsoft Corporation | |
| July 31, 2003 | | Dan Christen<br>Corporate Attorney<br>Microsoft Corporation |
| April 11, 2003 | Mr. Nachum Shamir<br>President and CEO<br>Scitex Digital Printing, Inc. | |
| May 2, 2003 | | Gary L. Froelich<br>Froelich & Weprin Co., L.P.A.<br>(counsel for Scitex) |
| July 11, 2003 | Gary L. Froelich<br>Froelich & Weprin Co., L.P.A.<br>(counsel for Scitex) | |
| December 5, 2005 | Chief Executive Officer<br>Atlas Software B.V. | |
| January 6, 2004 | | Atlas Software B.V. |
| December 5, 2003 | Mr. Donald Belcher<br>Chief Executive Officer<br>Banta Corporation | |
| December 19, 2003 | | Mr. Paul S. Hunter<br>Foley & Lardner |
| December 2, 2003 | | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. |
| December 9, 2003 | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. | |
| January 7, 2004 | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. | |

14

| Date | Person Contacted | Reply From |
|---|---|---|
| January 15, 2004 | | Mr. Ronny Fogel<br>Director of IP<br>Creo IL Ltd. |
| December 5, 2003 | Mr. James McNeil<br>President<br>Datalogics, Inc. | |
| December 5, 2003 | Mr. David Marksbury<br>President and CEO<br>Exstream Software | |
| December 5, 2003 | Mr. Darryl Dobin<br>President for the Americas<br>GMC Software Technology, Inc. | |
| December 17, 2003 | | Mr. Darryl Dobin<br>President for the Americas<br>GMC Software Technology, Inc. |
| December 5, 2003 | Mr. Charles Ying<br>Chief Executive Officer<br>Pageflex, Inc. | |
| December 5, 2003 | Mr. Jacob Aizikowitz<br>President and CTO<br>XMPie, Inc. | |
| December 11, 2003 | | Mr. Guy Yonay<br>Eitan, Pearl, Latzer & Cohen<br>Zedek, LLP |
| December 5, 2003 | Mr. Patrick Lytle<br>Chief Executive Officer<br>Lytrod Software, Inc. | |
| January 19, 2003 | Mr. James Langley<br>President Commercial Printing,<br>Senior Vice President<br>Eastman Kodak Company | |
| February 10, 2004 | | Ronald P. Hilst, Esq.<br>Assistant General Counsel<br>Eastman Kodak Company |
| April 11, 2003 | Carly Fiorina<br>Chairman, CEO<br>Hewlett-Packard Company | |

15

| Date | Person Contacted | Reply From |
|---|---|---|
| October 27, 2003 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| October 30, 2003 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| December 19, 2003 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 3, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 3, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 10, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 11, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 17, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| February 19, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| February 24, 2004 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| March 24, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| April 26, 2004 | | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company |
| April 26, 2005 | Peter Yennadhiou<br>Senior Counsel, IP<br>Hewlett-Packard Company | |
| April 11, 2003 | Ms. Anne Mulcahy<br>Chairman and CEO<br>Xerox Corporation | |
| July 11, 2003 | Ms. Christina E. Clayton<br>General Counsel | |

16

| Date | Person Contacted | Reply From |
|---|---|---|
| August 22, 2003 | | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation |
| February 3, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| February 17, 2004 | | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation |
| February 27, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| March 23, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| April 14, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| April 14, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| May 11, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |
| May 19, 2004 | Gary B. Cohen, Esq. Senior Patent Counsel Xerox Corporation | |

At one point in time, a license to at least one of the patents-in-suit was granted to Barco Graphics NV. However, that license agreement has been terminated since at least December 10, 2003. Plaintiff further responds that the burden of deriving specifics is substantially equal for Plaintiff and Defendants. Therefore, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Plaintiff shall produce and identify business records sufficient to answer this interrogatory.

**INTERROGATORY 6**

State in detail your contentions as to whether RRD is obligated or required to license the patents in suit (either individually or in some combination) on reasonable terms

17

and/or non-discriminatory bases, including whether such obligation or requirement arises from RRD's participation in any standards-making process.

## RESPONSE TO INTERROGATORY 6

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity. Plaintiff further objects to this interrogatory to the extent that the term "standards-making process" was not defined by Defendants, is vague and indefinite, and is susceptible to multiple interpretations.

Subject to the foregoing general and specific objections, Plaintiff responds that it is not obligated or required to license the patents-in-suit -- either individually or in some combination -- on reasonable terms and/or non-discriminatory bases.

## INTERROGATORY 7

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the patents in suit]."

## RESPONSE TO INTERROGATORY 7

See response to Interrogatory No. 1.

## INTERROGATORY 8

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the patents in suit]."

## RESPONSE TO INTERROGATORY 8

Plaintiff objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

18

Subject to its general objections and the foregoing specific objection, Plaintiff responds that Defendants were made aware of the patents-in-suit through at least the following correspondence.

On April 11, 2003, William McCracken, Esq. sent a letter on behalf of Plaintiff to Ms. Anne Mulcahy, Chariman & CEO of Xerox Corporation regarding Plaintiff's variable imaging patent portfolio. That letter specifically referenced at least the '452 and '599 patents. The '940 and '801 patents had not yet issued. Apparently, the April 11, 2003 letter to Xerox was forwarded to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. This was confirmed by Defendants' responses to Plaintiff's First Set of Interrogatories, in which Defendants state that Gary B. Cohen, Esq., Senior Patent Counsel of Xerox Corporation forwarded the April 11, 2003 letter to Mr. Fogel on or about September 4, 2003. Mr. Fogel wrote to Mr. McCracken on December 2, 2003 regarding the April 11, 2003 correspondence with Xerox. Yvonne Sor, Esq., Special Counsel to Mr. McCracken's firm, McCracken & Frank, responded to Mr. Fogel's letter on December 9, 2003. After receiving no response, Ms. Sor sent a second letter to Mr. Fogel on January 7, 2004. Mr. Fogel responded to the January 7 letter in an e-mail dated January 15, 2004.

Also on April 11, 2003, Mr. McCracken sent a letter on behalf of Plaintiff to Mr. Venkat Purushotham, President and CEO of NexPress Solutions LLC. No response was received. NexPress was originally a joint venture between Eastman Kodak Company and Heidelberger Druckmaschinen AG. NexPress Solutions, Inc. is now a wholly-owned subsidiary of Eastman Kodak Company.

Further, on April 11, 2003, Mr. McCracken sent a letter on behalf of Plaintiff to Mr. Nachum Shamir, President and CEO of Scitex Digital Printing, Inc. That letter also

19

specifically referenced at least the '452 and '599 patents. The '940 and '801 patents had not yet issued. According to a May 2, 2003 letter from Gary L. Froelich, Esq. of Froelich & Weprin, Mr. McCracken's April 11, 2003 letter had been referred to him for a response. On July 11, 2003, Mr. McCracken sought Mr. Froelich's response. It appears that no response was ever received. The Eastman Kodak Company acquired the assets of Scitex Digital Printing, Inc. on January 5, 2004. On January 19, 2004, Ms. Sor sent a letter to Mr. James Langley, President Commercial Printing and Senior Vice President of Eastman Kodak Company. Ms. Sor's letter included copies of the prior correspondence with Scitex Digital Printing and NexPress. Her January 19, 2004 letter also included copies of at least the '452 and '599 patents. The '940 and '801 patents had not yet issued.

Joseph Guiliano, Esq. of Ropes & Gray LLP sent a letter to Ms. Judith Hess, Vice President of Kodak Graphic Communications Group on December 19, 2005.

Therefore, Defendants have had direct notice of certain of the patents-in-suit since at least as early as April 11, 2003, and all of the patents-in-suit since at least as early as December 19, 2005. Appropriate documents will be produced and Bates Numbers will be identified in a supplemental response in accordance with Federal Rule of Civil Procedure 33(d).

## INTERROGATORY 9

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the patents in suit] is, has been, and continues to be willful and deliberate."

## RESPONSE TO INTERROGATORY 9

In addition to its General Objections, Plaintiff objects on the basis that it has received no discovery from Defendants regarding the accused products and activities and has not yet completed its discovery and investigation of the facts relating to this interrogatory. Plaintiff

20

further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that Defendants were notified of the patents-in-suit and their infringement thereof, and Defendants continue to infringe, contribute to infringement by others, and induce others to infringe the patents-in-suit even after such notice.

**INTERROGATORY 10**

State in detail all factual and legal bases for RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the patents in suit]."

**RESPONSE TO INTERROGATORY 10**

In addition to its General Objections, Plaintiff objects to this interrogatory to the extent that it calls for a level of detail to be provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until May 1, 2007. Plaintiff further objects to this request in that Plaintiff has received no discovery from Defendants relating to Plaintiff's damages claims and has not yet completed its discovery and investigation of the facts relating to the subject matter of this interrogatory. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, Defendants have been and continue to dilute the value of Plaintiff's intellectual property by infringing, contributing to infringement by others, and inducing others to infringe the patents-in-suit. On information and belief, not only do Defendants sell infringing software directly to end users, Defendants also bundle infringing

software with some of Defendants' digital presses and induce purchasers of Defendants' digital presses to purchase third parties' infringing software.  Moreover, Defendants' infringing activities have diminished Plaintiff's own profits by flooding the market with infringing technology.  Defendants have placed Plaintiff's proprietary technology directly into the hands of Plaintiff's competitors and have therefore eroded Plaintiff's profits by enabling Plaintiff's competitors to practice the claimed invention.

Plaintiff intends to show that it is at least entitled to a reasonable royalty on all of Defendants' infringing products and activities, if not lost profits.  With respect to a reasonable royalty damages theory, Plaintiff will develop and present evidence in accordance with the applicable factors for calculating a reasonable royalty that are set out in *Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers*, 318 F. Supp. 1116 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971) and the prevailing practices, customs, and royalty rates in the industry.  The *Georgia-Pacific* factors include: (1) royalties received for licensing of the patent-in-suit, proving or tending to prove an established royalty, (2) rates paid for other patents comparable to the patent-in-suit, (3) nature and scope of the license, (4) licensor's established policy and marketing program, (5) the commercial relationship between the licensor and licensee, (6) the effect of selling the patented specialty in promoting sales of other products of the licensee, (7) the duration of the patent and the term of the license, (8) the established profitability of the system made under the patent, its commercial success, and its current popularity, (9) the utility and advantage of the patent property over the old modes and devices, (10) the nature of the patent invention, (11) the extent to which the infringer has made use of the invention, (12) the portion of the profit or selling price that may be customary in the particular business to allow for use of the invention, (13) the portion of the realizable profit that

22

should be credited to the invention as distinguished from non-patented elements, (14) the opinion testimony of qualified experts, and (15) the amount that a prudent licensor and licensee would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement.

Furthermore, Plaintiff is entitled to the profits that have been eroded by Defendants' infringing activities. In this regard, Plaintiff may seek the lost profits for variable digital printing jobs that they would have received but for Defendants' infringing activities enabling Plaintiff's competitors to siphon away customers. Moreover, Plaintiff may have been able to charge higher prices were it not for Defendants enabling so many competitors.

Plaintiff will provide a complete statement of all opinions to be expressed by its damages expert and the bases and reasons therefore, with respect to those issues on which Plaintiffs bear the burden of proof in its expert reports in accordance with the expert discovery schedule entered by the Court.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com

Attorneys for R.R. Donnelley & Sons Company

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

July 7, 2006

527819

24

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on July 7, 2006, I caused true

and correct copies of the foregoing to be served in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com

EXHIBIT 2



FISH & NEAVE IP GROUP

ROPES & GRAY LLP

1251 AVENUE OF THE AMERICAS     NEW YORK, NY 10020-1104     212-596-9000     F 212-596-9090

BOSTON     NEW YORK     PALO ALTO     SAN FRANCISCO     WASHINGTON, DC     www.ropesgray.com

Bradford J. Badke
212-596-9031
212-596-9090 fax
Jim.Badke@ropesgray.com

November 16, 2006

**BY FACSIMILE**

Brian M. Koide, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Re:     *RR Donnelley & Sons Co. v. Quark, Inc. et al.*
D. Del. Civ. No. 06-032 (JJF)

Dear Brian:

I write regarding the initial responses and supplemental responses of Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants") to the First Set of Interrogatories served by R.R. Donnelley & Sons Co. ("R.R. Donnelley"). Defendants' repeated assertions that discovery should be limited to information pertaining to Darwin Desktop and that certain discovery is premature are without merit, and Defendants are creating undue delay and interfering with R.R. Donnelley's ability to conduct the discovery to which it is entitled.

Defendants continue to misconstrue the "scope of the Complaint" and the relevance of discoverable information to the claims and defenses of the parties. In its Complaint, R.R. Donnelley asserted that by its actions, including the sale of Darwin, Defendants have infringed, contributed to infringement of and induced others to infringe, and continue to infringe, contribute to infringement of and induce others to infringe, the patents-in-suit. By the Complaint itself, Defendants were provided with the requisite notice for a patent case. Assuming there was any doubt -- which R.R. Donnelley does not concede -- Defendants have been provided with ample notice of the issues in this case by way of R.R. Donnelley's first set of discovery requests of Defendants -- served on the first day of discovery -- and by way of R.R. Donnelley's responses to Defendants' first set of discovery requests. In its July 7, 2006 Responses to Defendants' First Set of Interrogatories over four months ago, R.R. Donnelley stated that:

Defendants contribute to and induce infringement by others who use Defendants' variable digital printing software, including but not limited to Darwin Desktop.

ROPES & GRAY LLP

Brian M. Koide, Esq.                    - 2 -                    November 16, 2006

On information and belief, Defendants contribute to and induce infringement by others by selling digital presses bundled with infringing variable digital printing software and by promoting third party infringing software packages with the sale of Defendants' digital presses.

In this regard, discovery currently being withheld by Defendants likely will lead to additional information concerning Defendants' infringing products. For example, on information and belief, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing (as defined in Plaintiff's First Set of Interrogatories to Defendants) will also be found to infringe the patents-in-suit. Furthermore, Plaintiff believes that Defendants have been bundling infringing software products with the sale of their digital presses, and that Defendants have been promoting infringing third party software packages with the sale of Defendants' digital presses.

Plaintiff has reason to believe that infringing sales or activities (e.g., the inducement of sales of infringing third party software packages) have occurred with respect to Defendants' digital presses, including without limitation the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

The scope of accused products and the issues in this case have been clear since the beginning of discovery -- indeed, they have been clear since the case was filed. Defendants' continued refusal to satisfy R.R. Donnelley's legitimate requests for discovery is frustrating the progress of this case, and we intend to use Defendants' litigation conduct as further evidence of willfulness.

Furthermore, Defendants continue to improperly object to R.R. Donnelley's contention interrogatories as "premature" and otherwise fail to provide meaningful responses (see, e.g., Defendants' objections to Interrogation Nos. 2-12). Judge Farnan set a deadline of November 30, 2006 for completing contention interrogatories. That date is rapidly approaching, and yet, Defendants continue to hide behind an objection that has no basis in law. If Defendants do not withdraw this objection and promptly supplement their interrogatory responses, R.R. Donnelley intends to seek to preclude Defendants from asserting the claims and defenses for which they refuse to provide meaningful responses and relying on any evidence not disclosed regarding identified claims and defenses.

R.R. Donnelley requests that Defendants agree to supplement their interrogatory responses no later than November 27, 2006. Examples of the deficiencies of some of Defendants' interrogatory responses are outlined below.

ROPES & GRAY LLP

Brian M. Koide, Esq.                    - 3 -                    November 16, 2006

### A. Interrogatory No. 1

Defendants' response to Interrogatory No. 1 is insufficient on its face. R.R. Donnelley asked that Defendants state "in detail all factual and legal bases" for Defendants' contention that "R.R. Donnelley has failed to state a claim upon which relief may be granted." Defendants merely responded that the allegation of infringement is too broad. Defendants failed to provide factual or legal bases for their contention.

### B. Interrogatory No. 2

Defendants' response to Interrogatory No. 2 is insufficient. In its response to Interrogatory No. 2, Defendants failed to provide a claim chart setting forth the claim elements that Defendants contend are not met by Defendants' software products along with the reasons such elements are not met (both literally and under the doctrine of equivalents). Rather, Defendants simply added a "does not" in front of the claim language if various elements, but otherwise failed to respond in any meaningful way to this interrogatory.

### C. Interrogatory No. 3

Defendants' response to Interrogatory No. 3 is insufficient. Again, Defendants failed to provide claim charts identifying any factual or legal bases for their contention that they do not indirectly infringe the patents-in-suit. R.R. Donnelley specifically requested such a response in its interrogatory.

### D. Interrogatory No. 4

Defendants' assertion that Interrogatory No. 4 is premature is unpersuasive and unsupported at law. Defendants have failed to provide any specifics regarding their claim of prosecution history estoppel. Instead, they merely cite the remarks sections of several amendments without identifying any specifics. Surely before making such a claim Defendants had some factual and legal bases for doing so. R.R. Donnelly's interrogatory requested that Defendants provide these bases.

### E. Interrogatory No. 5

Defendants again improperly assert a prematurity argument. Defendants also assert that this interrogatory is overly broad and unduly burdensome. Pursuant to Instructions numbered 5 and 6 of R.R. Donnelley's First Set of Interrogatories, Defendants must still respond to the portion of the interrogatory that is unobjectionable and must specifically identify the respect in which the interrogatory is alleged to be overbroad or unduly burdensome. In alleged support of their invalidity contentions, Defendants merely list five "commercial embodiments" without providing any specifics about the "commercial embodiments" or how or why they

ROPES & GRAY LLP

Brian M. Koide, Esq.                  - 4 -                  November 16, 2006

invalidate any claim of the patents-in-suit. Defendants' response to Interrogatory No. 5 is insufficient.

      F.  Interrogatory No. 6

Defendants allege that R.R. Donnelley delayed in bringing suit and that this delay was "unreasonable and inexcusable." However, in response to R.R. Donnelly's interrogatory, Defendants offer no factual or legal bases that a delay occurred which would give rise to laches. Thus, Defendants' response to Interrogatory No. 6 is inadequate, or Defendants' defense relating to laches was improper and should not have been raised.

      G.  Interrogatory No. 7

In response to this interrogatory, Defendants have failed to provide any factual or legal bases for their contention that R.R. Donnelley's "claims are barred, in whole or part, by the doctrine of equitable estoppel." Defendants should withdraw their related allegations or come forward with the factual and legal bases for their defense.

      H.  Interrogatory No. 8

Defendants' response to Interrogatory No. 8 is inadequate. Defendants have not alleged any factual or legal bases to support a contention that R.R. Donnelley has waived its rights to bring an action against Defendants for infringement of the patents-in-suit.

      I.  Interrogatory Nos. 10-12

Defendants' responses to Interrogatory Nos. 10-12 are wholly inadequate and ignore R.R. Donnelley's Instructions numbered 5 and 6. In their responses to Interrogatory Nos. 10 and 11, Defendants merely incorporate other interrogatory responses into their answer without providing any meaningful response. If Defendants had any real bases to make such claims, Defendants should have responded with factual and legal bases for such claims, as requested.

      J.  Interrogatory No. 13

Defendants have improperly limited the dates of discoverable information. R.R. Donnelley is entitled to business records for the entire time Defendants have profited from Defendants' infringing products. Furthermore, Defendants stated that they would supplement their response by identifying specific documents pursuant to Fed. R. Civ. P. 33(d). Defendants have not identified any documents.

ROPES & GRAY LLP

Brian M. Koide, Esq.                    - 5 -                    November 16, 2006

K.  <u>Interrogatory Nos. 15 and 16</u>

Defendants' responses indicate that they will, "at most," provide information in the future "after a reasonable investigation." Yet, Defendants' supplemental responses have failed to do even that. R.R. Donnelley has now waited over six months for responses to these interrogatories.

Please confirm that Defendants will be providing supplemental interrogatory responses on or before November 27, 2006.

Sincerely,

Bradford J. Badke

BJB:jbs

cc:    Jack B. Blumenfeld, Esq.
       Frederick L. Cottrell, Esq.

EXHIBIT 3



FISH & NEAVE IP GROUP

ROPES & GRAY LLP
1251 AVENUE OF THE AMERICAS    NEW YORK, NY 10020-1104    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

Patricia M. Festin
212-596-9391
Patricia.Festin@ropesgray.com

December 19, 2006

**BY E-MAIL**

Nathaniel Grow, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

Re:    *R. R. Donnelley & Sons, Co. v. Quark, Inc. et al.*
       <u>D. Del. Civ. No. 06-032 (JJF)</u>

Dear Nathaniel:

   I write in response to your letter of December 12, 2006, regarding the status of R.R. Donnelley & Sons Co.'s ("RRD") document production.

   With respect to RRD's privilege log, a significant number of documents have been identified as attorney-client privileged and/or covered by the work product doctrine. RRD anticipates producing the log to Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co. ("Creo") mid- to late January 2007.

   With respect to Creo's inquiry into further supplemental productions, RRD has performed a diligent search and is not aware of any additional responsive documents – electronic or otherwise – at this time. However, consistent with the obligations under the Federal Rules of Civil Procedure, RRD will supplement its document production if any further responsive documents come to RRD's attention.

   Over and above these responses to Creo's inquiries into RRD's production, RRD again finds Creo's recent discovery responses inadequate. Despite RRD's request that it cure the defects in its responses (*see* November 16, 2006 letter from Badke to Koide), Creo's December 12, 2006 responses again improperly objected to RRD's contention interrogatories as "premature" and otherwise failed to provide meaningful responses. Please let RRD know if Creo intends to supplement these responses.

- 2 -                                December 19, 2006

Please let me know if you have any questions.

Sincerely,

Patricia M. Festin

PMF/kl
cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III
       Amy W. Ray
       Bradford J. Badke
       Stuart Yothers