IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 06-032-JJF |
| QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) | **REDACTED VERSION** |
| Defendants. | ) ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR RULE 26(C)(2) PROTECTIVE ORDER

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

Original Filing Date: December 18, 2006
Redacted Filing Date: January 5, 2007

R.R. Donnelley & Sons Company ("Plaintiff") opposes Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's (collectively "Defendants") Motion For Rule 26(c)(2) Protective Order and seeks an order compelling that the depositions of foreign witnesses be taken in the United States because they are depositions of Defendants as contemplated by Fed. R. Civ. P. 32(a)(2), and the equities as to the location of depositions favor Plaintiff. Either basis alone is sufficient to deny Defendants' motion. Defendants have failed to satisfy, and indeed ignored, their burden to show good cause.

Moreover, Defendants seek to have these depositions in Israel despite the fact that Defendants themselves have identified these same witnesses in both Defendants' Initial Disclosures (Exh. A) as being knowledgeable about Defendants' counterclaims and defenses and in Defendants' First Supplemental Responses to Plaintiff's First Set of Interrogatories (Exh. B).

## Defendants Have Not Satisfied Their Burden

Filing for a protective order imposes a burden on Defendants to show "good cause." Defendants have not demonstrated, however, an inability to produce the witnesses for depositions in Delaware or elsewhere in the United States. Nor have they demonstrated a financial burden. *South Seas Catamaran, Inc. v. Motor Vessell LEEWAY*, 120 F.R.D. 17, 21 (D.N.J. 1988). Defendants thus have failed to submit the kind of detailed support, such as affidavit support, for their generic assertions of hardship and inconvenience necessary to prevail on a motion for a protective order. *See Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 551 (S.D.N.Y. 1989). On this basis alone, the motion should be denied.

## These Are Proper 30(b)(1) Depositions Of Defendants

The depositions sought by Plaintiff, effectively, are depositions of Defendants. As such, they must be held in this country.

A party seeking to take the deposition of a corporation can either notice the deposition by a particular officer, director, or managing agent pursuant to Fed. R. Civ. P. 30(b)(1) or present the corporation with topics pursuant to Fed. R. Civ. P. 30(b)(6). *GTE Products Corp. v. Gee*, 115 F.R.D. 67, 68 (D. Mass. 1987). In either case, the general rule requires that the depositions be taken at the corporation's principal place of business. *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982). Defendant Kodak is headquartered in Rochester, New York, and Defendants have conceded this rule's proper application in this case by agreeing to produce their future Rule 30(b)(6) designees from Israel in the United States (Exh. C at footnotes 1 & 2).[1]

This same rule properly applies to the Rule 30(b)(1) depositions at issue in this motion. Plaintiff appropriately has relied on Defendants' initial disclosure to identify the proper corporate representatives for Rule 30(b)(1) notices. *See* 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2110 (2d ed. 1987). These witnesses have been identified in Defendants' initial disclosures as being knowledgeable about Defendants' "counterclaims and defenses," and a search of Defendants' document production and website (Exh. D) reveals that certain of the deponents have held or do hold the titles of: Director of Intellectual Property (Fogel); General Manager of Print-on-Demand Systems Group (Cohen); Director of Marketing (Alon); and Director of On-Demand Applications (Alon).[2] Thus, these witnesses are directors and/or officers as contemplated by Fed. R. Civ. P. 30(a)(2).

---

[1] Defendants' pending motion for protective order concerns the scope of the Rule 30(b)(6) notice, not the location of the depositions.

[2] Defendants have offered to produce Cohen in the United States, but only after he has completed his move from Israel (Exh. E). This may delay his deposition for several months.

In addition, all witnesses at issue are managing agents, whose depositions are required to be taken in this country. Documents indicate that these witnesses exercise discretion and judgment in corporate matters, will be reliable in giving testimony if so directed, and identify with Defendants' interests. *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985). Close questions during discovery regarding an individual's status as a corporate agent are resolved in favor of the examining party. *Id.* at 171.

## Factors Relevant To The Court's Broad Discretion Support A Domestic Location

It is well settled that a district court has great discretion in designating the location of depositions. *Thompson v. Sun Oil Company*, 523 F.2d 647, 650 (8th Cir. 1975) *citing Terry V. Modern Woodmen of Am.*, 57 F.R.D. 141 (W.D. Mo. 1972). Each situation must be considered on its own facts and equities. *Terry*, 57 F.R.D. at 143. Here, the relevant factors strongly support Plaintiff's position that the depositions should be taken in the United States.

Unfortunately, Defendants have tried to limit the scope of discovery in this case at every turn. It is entirely possible that Defendants' counsel may seek to limit questioning of these witnesses. Litigation efficiency is therefore a compelling factor in favor of domestic depositions. *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 551 (S.D.N.Y. 1989). The absence of a federal judge or magistrate would make it difficult, even in the age of modern technology, to rule on objections at a foreign deposition and increases the risk of long interruptions. *Id.* Defendants have not set out the legal requirements or constraints for taking the depositions in Israel, and there can be no dispute that taking depositions domestically would better facilitate the gathering of evidence as contemplated by the Federal Rules. *See Triple Crown Am., Inc. v. Biosynth AG*, NO. CIV.A. 96-7476, 1998 WL 227886, at *3-4 (E.D. Pa. April 30, 1998).[3]

---

[3]    Plaintiff also notes that Israel is currently considered unsafe for travel by American citizens as indicated by the Department of State's Travel Warning (Exh. F).

Cost and convenience also support domestic depositions. *See Mill-Run*, 124 F.R.D. at 550-51. Accounting for billing rates and the gaps of time between depositions that Defendants are insisting on (*i.e.*, four depositions over two weeks), the total cost will be significant for both Plaintiff's and Defendants' attorneys. The Court should take into consideration attorneys' time and expense incurred in traveling to a distant location. *Id.* at 551. Moreover, Plaintiff could not have chosen a more convenient forum for deponents who reside in Israel. *Id.* at 550.

Defendants have identified these witnesses as being knowledgeable about Defendants' counterclaims and defenses. The counterclaims are directed to non-infringement and invalidity. Clearly, Plaintiff intends to focus these depositions in significant part on the merits of Defendants' counterclaims. *See Chris-Craft Indus. Prods., Inc. v. Kuraray Co, Ltd.*, 187 F.R.D. 605, 607 (N.D. Ill. 1999).

For the reasons stated above, these depositions should occur domestically, preferably in Delaware.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY  10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA  02110
(617) 951-7000

Original Filing Date:  December 18, 2006

Redacted Filing Date:  January 5, 2007

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 5, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger

I also certify that copies were caused to be served on January 5, 2007, upon the following in the manner indicated:

**BY EMAIL AND HAND**

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

**BY EMAIL AND FEDERAL EXPRESS**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

*/s/    Rodger D. Smith II (#3778)*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
rsmith@mnat.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

    Plaintiff,

    v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

    Defendants.

                    C.A. No. 06-032-JJF

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

    Counterclaim-Plaintiffs,

    v.

R.R. DONNELLEY & SONS COMPANY,

    Counterclaim-Defendants,

**ENTERED IN DOCKET**

5/23/06 MTC

**INITIAL DISCLOSURES OF CREO, INC., EASTMAN KODAK COMPANY,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY
PURSUANT TO FED. R. CIV. P. 26(a)(1)**

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Creo, Inc., Eastman Kodak
Company, and Kodak Graphic Communications Company ("Creo") hereby makes the following
initial disclosures. These Initial Disclosures are based upon information reasonably available to
Creo at the present early stage of this litigation, and Creo reserves the right to supplement as
provided in Fed. R. Civ. P. 26(e) based on further investigation and discovery, to the extent
further disclosures are not mooted.

RLF1-3017289-1

## I.    Individuals Likely to Have Discoverable Information

The following individuals, presently known to Creo, are likely to have discoverable information that Creo may use to support its anticipated counterclaims and/or defenses, unless solely for impeachment:

| Individual | Address & Telephone (if Known) | Subjects |
|---|---|---|
| Abbott, Mary | NPES® The Association for Suppliers of Printing , Publishing and Converting Technologies 1899 Preston White Drive Reston, Virginia 20191-4367 Tel:  (703) 264-7200 | Standards relating to the patents in suit |
| Alon, Gershon | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel:  011-972-9-959-7222 | Darwin |
| Asaria, Riyaz | | Standards relating to the patents in suit |
| Beery, Daniel W. | | The patents in suit |
| Cohen, Ronen | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel:  011-972-9-959-7222 | Darwin |
| Donahue, Timothy | NexPress Solutions, Inc. 2600 Manitou Road Rochester, NY 14653 Tel:  (800) 913-6796 | Standards relating to the patents in suit |
| Dreyer, Mark G. | | U.S. Pat. Nos. 6,205,452; 6,327,599; 6,844,940; 6,952,801 |

| | | |
|---|---|---|
| Fogel, Ronny | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel: 011-972-9-959-7222 | Communications with plaintiff regarding the patents in suit |
| Jaacobi, Nardi | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel: 011-972-9-959-7222 | Darwin |
| Konfidan, Ronit | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel: 011-972-9-959-7222 | Darwin |
| Peleg, Ron | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel: 011-972-9-959-7222 | Darwin |
| Quark, Inc. (unknown representatives) | c/o Goodwin Procter | Damages |
| Shively, Thomas | | The patents in suit |
| Sivan, Ilan | Creo IL, a subsidiary of Eastman Kodak Company P.O. Box 330 Herzlia Industrial Park Herzlia B 46103 Israel Tel: 011-972-9-959-7222 | Darwin |
| Talby, Mooki | Creo Americas, a subisidary of Eastman Kodak Company 3 Federal St. Billerica, MA 01821 Tel: (978) 439-7212 | Darwin |
| Warmus, James L. | | The patents in suit |

- 3 -

## II. Documents, Data Compilations, and Tangible Things

Creo identifies the following categories of documents, data compilations, and tangible things that are in the possession, custody, or control of Creo that Creo may use to support its counterclaims or defenses, unless solely for impeachment:

1. Documents relating to the Darwin may be located at Creo offices in Herzlia, Israel; Billerica, MA; Vancouver, British Columbia; Rochester, NY; and Utrecht, Netherlands.

2. Documents relating to the patents in suit may be located at Creo offices in Herzlia, Israel; Billerica, MA; Vancouver, British Columbia; and Rochester, NY.

## III. COMPUTATION OF DAMAGES

Creo seeks costs and attorneys fees in defending this action and in pursuing its counterclaim, as set forth in the Answer, Affirmative Defenses, and Counterclaim of Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics Communications Company.

## IV. INSURANCE AGREEMENTS

Creo does not have any insurance agreements as required by Fed. R. Civ. P. 26(a)(1)(D).

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

Dated: May 23, 2006

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

    Plaintiff,

    v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

    Defendants.

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

    Counterclaim-Plaintiffs,

    v.

R.R. DONNELLEY & SONS COMPANY,

    Counterclaim-Defendants,

C. A. No. 06- 032-JJF

ENTERED IN DOCKET
5/23/06 MTC

## NOTICE OF SERVICE

**IT IS HEREBY CERTIFIED** that on May 23, 2006 Initial Disclosures of Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company Pursuant To Fed. R.

Civ. P. 26(a)(1) was served upon the below-named counsel of record:

## BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

**VIA FEDERAL EXPRESS**

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company*

Dated: May 23, 2006

-2-

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899

I hereby certify that on May 23, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY  10020

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>QUARK, INC., CREO, INC., EASTMAN<br>KODAK COMPANY, and KODAK<br>GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>　　　Defendants. | C. A. No. 06- 032-JJF |
| CREO, INC., EASTMAN KODAK<br>COMPANY, and KODAK GRAPHIC<br>COMMUNICATIONS COMPANY,<br><br>　　　Counterclaim-Plaintiffs,<br><br>　　　v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>　　　Counterclaim-Defendants, | |

## NOTICE OF SERVICE

**IT IS HEREBY CERTIFIED** that on May 23, 2006 Initial Disclosures of Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company Pursuant To Fed. R.

Civ. P. 26(a)(1) was served upon the below-named counsel of record:

## BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899

RLF1-3017339-1

**VIA FEDERAL EXPRESS**

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020


OF COUNSEL:


Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated: May 23, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

RLF1-3017339-1

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2006, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899


I hereby certify that on May 23, 2006, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020


Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

RLF1-2989206-1

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>  Plaintiff,<br><br>  v.<br><br>QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>  Defendants.<br><br>CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>  Counterclaim-Plaintiffs,<br><br>  v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>  Counterclaim-Defendants, | C.A. No. 06-cv-032-JJF<br><br><br>**ENTERED IN DOCKET**<br>7/3/06 HTC |

### CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SUPPLEMENTAL RESPONSE TO R.R. DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") provide the

following first supplemental response to the First Set of Interrogatories to Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphics Communications Company ("the

Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

**EXTRA COPY**<br>NO NEED TO RETURN<br>TO DOCKETING OR FILES

## I.    GENERAL RESPONSES

Creo's responses to the Interrogatories are made to the best of Creo's current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Creo's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Creo reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.    Creo reserves the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Creo makes the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Creo objects generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine. Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Creo objects to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement,

2

expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

3. Creo objects to all instructions, definitions, and interrogatories to the extent they seek information not currently in Creo's possession, custody, or control, or refer to persons, entities, or events not known to Creo, on the grounds that such instructions, definitions, or interrogatories seek to require more of Creo than any obligation imposed by law, would subject Creo to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Creo an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

## III. SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### RESPONSE TO INTERROGATORY NO. 1

Subject to the foregoing general objections, RRD has failed to state a claim upon which relief can be granted with respect to (i) direct infringement by any Creo product other than Darwin and (ii) indirect infringement. In its Complaint, RRD vaguely alleges that "[b]y its actions, including the sale of Darwin software, Creo has infringed." *See* Complaint ¶¶, 27, 32, 37, 42. Given that Creo (including Eastman Kodak Company) offers diverse products and services and collectively employs more than 50,000 employees worldwide, a generic reference to unspecified broad claims of direct or indirect infringement involving parties other than Creo and

RLF1-3033329-1

products other than Darwin is not sufficient to satisfy proper notice pleading requirements under the Rules.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 2

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it seeks information defined by the term "Defendants' Software Products." The Complaint only references "Darwin Desktop." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced, RRD has yet to reveal its claim construction and infringement contentions, and the Court has yet to construe the claims. In particular, Creo objects to providing claim charts at this time, but would agree to do so within a reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject to the foregoing general and specific objections, Creo responds as follows.

With respect to the method claims, Creo does not directly infringe by selling, offering to sell, or making the Darwin software in the United States and/or importing the software into the United States. As a matter of law, method claims can only be directly infringed by a "use," not through the sale, offer for sale, manufacture, or importation of software that allegedly performs

4

the steps.  As to "use" contentions, RRD has not yet provided its contentions as to how any Creo

product infringes, and Creo is therefore not able to respond to any such contentions.

Creo does not believe, however, that any of its products infringe.  For example, Darwin

software does not "develop[] a master page file," does not "separat[e] master data from position

data," and does not "caus[e] the display device to display the pages."  The Darwin software also

does not "determine[e] whether a stored page is to be assembled into the first book . . . wherein a

second number of stored pages to be assembled into the first book is less than the first number"

of stored pages.  Creo believes that for these and other reasons, it does not infringe the claims of

the patents in suit when properly construed.  Absent more specific contentions from RRD,

however, Creo is not able at this juncture to fully itemize all grounds on which it should be found

not to infringe and reserves its right to further supplement its responses at the appropriate time.

Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi

Jaacobi, and the named inventors of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

**INTERROGATORY NO. 3**

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in
Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim
charts that set forth each claim element that allegedly is not met by Defendants' Software
Products and Third Party Software Products suitable for the use with Defendants' Hardware
Products (including, but not limited to, software products made or developed by XMPie, Atlas
Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such
element is not met (both literally and under the doctrine of equivalents) and the identity of the
persons most knowledgeable about the factual bases for those allegations.

5

## RESPONSE TO INTERROGATORY NO. 3

Creo objects that this interrogatory is overly broad and unduly burdensome to the extent it (i) seeks information defined by the terms "Defendants' Software Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Complaint only references "Darwin Desktop." Moreover, Creo objects to being required to answer Interrogatories relating to the operation of the Third Party Software Products, given the absence of any specific allegations by RRD concerning such products. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced. In particular, Creo objects to providing claim charts at this time, but would agree to provide claim charts a reasonable time after receiving RRD's responses to Creo's First Set of Interrogatories. Subject to the foregoing general and specific objections, Creo responds by incorporating by reference its response to Interrogatory No. 2 with respect to the Darwin software. Creo further responds that it cannot – as a matter of law – be found liable for inducing infringement under 271(b) prior to first becoming aware of the patents in suit. Likewise, Creo is not liable for contributory infringement under 271(c) prior to first becoming aware of the patents in suit. Creo is also not liable for indirect infringement to the extent that no single entity practices each of the steps or elements of the patents in suit, and thus, directly infringes.

Persons knowledgeable of these facts include, but are not limited to, Ron Peleg, Nardi Jaacobi, the named inventors of the patents in suit, and users of the Darwin software.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

6

## INTERROGATORY NO. 4

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 4

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds as follows:

The documents and communications on which Defendants intend to rely include the patents in suit, prior art of record, prosecution histories of the patents in suit, and the prosecution histories of patents related thereto. The prosecution histories include numerous arguments and narrowing amendments that limit the scope of the asserted claims through argument-based estoppel and/or amendment-based estoppel. Ultimately, whether prosecution history estoppel applies will depend on the claim construction and any range of equivalents asserted by RRD. It is premature at this time, with a *Markman* hearing scheduled for 2007, to speculate how RRD will attempt to read the claims and whether RRD will take a position that contradicts the prosecution histories. However, to date, Defendants have identified at least the following actions taken by RRD in the prosecution history that may form estoppels.

### U.S. Patent No. 6,952,801

- Supplementary Amendment dated May 18, 2000 in U.S. Application Ser. No. 08/802,337 at 2-3 (claim amendments) & 4-5 (arguments to distinguish claims over prior art).

- Amendment A dated November 4, 2002 at 6-7 (arguments to distinguish claims over prior art).

7

- Amendment B dated March 28, 2003 at 2-3 (claim amendments) & 4 (remarks re claim amendments).

- Amendment C dated September 8, 2003 at 4-6 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated March 4, 2004 at 1-5 (remarks re prior art).

- Amendment D dated March 8, 2004 at 2-5 (claim amendments) & 6-7 (arguments to distinguish claims over prior art).

- Amendment E dated Jul 26, 2004 at 2-5 (claim amendments) & 6-8 (arguments to distinguish claims over prior art).

## U.S. Patent No. 6,844,940

- Preliminary Amendment dated January 12, 2004 at 3-6 (claim amendments) & 7 (remarks).

- Supplemental Preliminary Amendment dated March 29, 2004 at 2-5 (claim amendments) & 6 (remarks).

- Petition to Make Special Under MPEP § 708.02 dated March 29, 2004 at 1-4 (arguments to distinguish claims over prior art).

- Request for Reconsideration of Petition to Make Special dated June 10, 2004 at 1-4 (arguments to distinguish claims over prior art).

## U.S. Patent No. 6,327,599

- Amendment A dated November 11, 1996 at 2 (claim amendments) & 3 (remarks).

RLFI-3033329-1

- Amendment B dated May 19, 1997 at 1-3 (claim amendments) & 4-8 (arguments to distinguish claims over prior art).

- Amendment C dated November 19, 1997 at 1-2 (claim amendments) & 2-4 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated December 17, 1997 at 1-2 (remarks re prior art).

- Response After Final Rejection dated April 30, 1998 at 1 (claim cancellations and remarks).

- Amendment D dated April 2, 2001 at 1 (claim amendments) & 2-5 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated June 20, 2000 at 1-2 (remarks re prior art).

**U.S. Patent No. 6,205,452**

- Amendment "A" dated January 7, 2000 at 2-3 (claim amendments) & 3-8 (arguments to distinguish claims over prior art).

- Response dated June 27, 2000 at 1-7 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated July 20, 2000 at 1-2 (remarks re prior art).

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit and those individuals involved in the prosecution of the patents in suit.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

9

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts, documents, prior art (with references to specific portions or the prior art by page, line, figure, or description in claim chart format), activities, and alleged motivation or suggestion to combine references.

**RESPONSE TO INTERROGATORY NO. 5**

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking "identification of *all* facts, documents, prior art . . ., activities, and alleged motivation or suggestion to combine references" and "references to specific portions of the prior art by page, line, figure, or description in claim chart format." Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery has just commenced, RRD has yet to provide its claim construction contentions, and the Court has yet to construe the claims. Subject to the foregoing general and specific objections, Creo responds, at this time, that the claims of the patents in suit are anticipated and/or invalid in view of the prior art, including, but not limited to, the commercial embodiments of DijiComp, Begin, Composer, Catalogic, and Yours Truly. Creo reserves the right to supplement this interrogatory response as further investigation is conducted.

Persons knowledgeable of these facts include Timothy Donahue, Pat McGrew, John Desautels, unknown individuals of Hewlett-Packard, unknown individuals of Quark, Inc.

**INTERROGATORY NO. 6**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their

RLF1-3033329-1

contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 6

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its response to Interrogatory Nos. 7, 8, 10, 11, and 14. Creo further responds that laches precludes RRD from any alleged damages that may have been incurred due to Creo's actions prior to the time that RRD filed and served its Complaint on January 17, 2006. RRD has contacted several Creo entities regarding one or more of the patents in suit. After these initial contacts, RRD delayed in bringing suit against Creo. During this period, RRD did and continued to do regular business with Creo. RRD knew or should have known of the allegedly infringing aspects of the Darwin software. Given the circumstances, RRD's delay has been unreasonable and inexcusable. Due to RRD's delay in bringing suit, Creo has suffered substantial prejudice. In particular, due to RRD's delay, Creo may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, and the unreliability of memories of long past events. With respect to business prejudice, Creo has continued to invest in the Darwin software as a product line during this delay period.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

11

## INTERROGATORY NO. 7

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 7

Creo objects that this interrogatory is overly broad and unduly burdensome and as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo responds by incorporating its responses to Interrogatories Nos. 6, 8, 10, 11, and 14. Creo further responds that RRD has dealt with various Creo entities both through business relationships and by participating in various standards-making bodies. In particular, Riyaz Asaria, an RRD employee, co-chaired the CGATS.20. At no time in the course of these business meetings and standards-making bodies did RRD indicate that it intended to assert its patents against Creo. Instead, RRD's representatives remained silent and failed to take any action. RRD's silence and inaction has been misleading. At various points in time, Creo has relied on RRD's silence and inaction and would be materially harmed.

Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Mary Abbott, Timothy Donahue, Ronen Cohen, Gershon Alon, and Ronny Fogel.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

12

RLF1-3033329-1

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 11

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of unclean hands," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 11

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this interrogatory as a premature contention interrogatory given that fact discovery is in its early stages. Subject to the foregoing general and specific objections, Creo incorporates by reference its response to Interrogatory Nos. 6, 7, 8, 10, and 14.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Gershon Alon, Ronny Fogel, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

15

RLF1-3033329-1

## INTERROGATORY NO. 12

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Creo objects that this interrogatory is overly broad and unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Creo also objects to this

interrogatory as a premature contention interrogatory given that fact discovery is in its early

stages. Subject to the foregoing general and specific objections, Creo responds that RRD has

failed to mark products and/or services as required by 35 U.S.C. § 287. Moreover, RRD has

failed to provide actual notice to the extent it has failed to charge infringement of specific patents

in suit against a specific Kodak accused product and/or service. In particular, RRD has failed to

provide any actual notice of any product except for the Darwin software, specifically mentioned

in its Complaint. With respect to 35 U.S.C. § 286, RRD is barred from recovering any damages

resulting from any infringement committed more than six years prior to the filing of the

Complaint on January 17, 2006.

Persons knowledgeable of these facts include, but are not limited to, unknown

representative(s) of RRD.

Creo reserves the right to supplement its response to this interrogatory at appropriate

times in this litigation.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first

16

RLF1-3033329-1

receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## RESPONSE TO INTERROGATORY NO. 13

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, Creo objects to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue." Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit. Creo also objects that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of any party or the subject matter of the action. In particular, Creo objects to the interrogatory as seeking information defined by the terms "Defendants' Software Products" and "Defendants' Hardware Products." The Complaint only references "Darwin Desktop." Subject to the foregoing general and specific objections, Creo will respond to this interrogatory by producing business records subject to Federal Rule of Civil Procedure 33(d) sufficient to identify all revenues and profit of Darwin Desktop starting in March 2001.

Persons knowledgeable of these facts include, but are not limited to, Gershon Alon and Ronen Cohen.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 14

Describe the circumstances concerning Defendants first awareness of the patents-in-suit including, but not limited to the identity of the person(s) involved and the identification of all documents which refer or relate to this first awareness and the date of such first awareness.

17

RLF1-3033329-1

## RESPONSE TO INTERROGATORY NO. 14

Creo objects that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Creo responds as follows separately with respect to each Creo defendant.

With respect to Creo, Inc., on or about September 4, 2003, Gary B. Cohen, Senior Patent Counsel of Xerox Corporation forwarded RRD correspondence identifying U.S. Pat. Nos. 6,327,599 ("the '599 patent") and 6,205,452 ("the '452 patent) to Ronny Fogel, Director, Intellectual Property of Creo IL, Ltd. Creo, Inc. became aware of the '599 and '452 patents on or about that date. Creo, Inc. became aware of U.S. Pat. Nos. 6,844,940 ("the '940 patent") and 6,952,801 ("the '801 patent) after Joseph Guiliano of Ropes & Gray sent a letter to Judith Hess, Vice President of Kodak Graphic Communications Group on or about December 19, 2005.

With respect to Kodak Graphic Communications Company and Eastman Kodak Company, both companies became aware of the '599 patent and the '452 patent in connection with the acquisition of NexPress Solutions, LLC ("NexPress"). The NexPress acquisition closed on or about May 3, 2004. Kodak Graphic Communications Company and Eastman Kodak Company both became aware of the '940 patent and the '801 patent after the above-referenced letter from Mr. Guiliano to Ms. Hess.

Persons knowledgeable of these facts include, but are not limited to, Ronny Fogel, Gary B. Cohen, and Joseph Guiliano.

Creo reserves the right to supplement its response to this interrogatory at appropriate times in this litigation.

18

## INTERROGATORY NO. 15

Describe in detail all use, including testing, of Third Party Software Products with Defendants' Hardware Products including, but not limited to, the identification of all persons involved in such use, where the use occurred, the identity of each Third Party Software Product used and the specified hardware product involved in the use.

## RESPONSE TO INTERROGATORY NO. 15

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Third Party Software Products" and "Defendants' Hardware

Products." Moreover, Creo objects to this interrogatory as overly broad and unduly burdensome

to the extent it seeks information relating to "all use" of Third Party Software Products and

Defendants' Hardware Products. Creo cannot reasonably identify "all use[s]." The Complaint

only references Creo, Inc.'s Darwin Desktop, not any third-party software products. Moreover,

the interrogatory is overly broad as it seeks a description of "all use" of "Third Party Software

Products with Defendants' Hardware Products." At most, Creo will respond in the future by

describing those uses that can be identified after a reasonable investigation.

## INTERROGATORY NO. 16

Describe in detail all plans, efforts, or activities used to promote, encourage, or inform the purchase of Defendants' Software Products or Third Party Software Products by purchasers or prospective purchasers of Defendants' Hardware Products.

## RESPONSE TO INTERROGATORY NO. 16

Creo objects that this interrogatory is overly broad and unduly burdensome as seeking

information defined by the terms "Defendants' Software Products," "Third Party Software

Products" and "Defendants' Hardware Products." The Complaint only references "Darwin

Desktop." Moreover, Creo cannot reasonably identify "all" of the requested plans, efforts, or

activities. At most, Creo will respond in the future by describing those plans, efforts, or

activities that can be identified after a reasonable investigation.

19

RLF1-3033329-1

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of

Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on July 3, 2006, the foregoing document was sent to the following

non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA   02110

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

RLF1-3020098-1

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on July 3, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire
Fish & Neave IP Group
Ropes & Gray
1251 Avenue of the Americas
New York, NY   10020

Steven A. Kaufman
Fish & Neave IP Group
Ropes & Gray
One International Place
Boston, MA   02110

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

RLF1-3020098-1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-032-JJF |
| | ) | |
| QUARK, INC., CREO, INC., EASTMAN KODAK | ) | |
| COMPANY AND KODAK GRAPHIC | ) | |
| COMMUNICATIONS COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR RULE 26(c)(4) PROTECTIVE ORDER

This motion is a follow-on to an earlier and still-pending motion filed by plaintiff R.R. Donnelley

& Sons Company ("RRD"), which defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic

Communications Company (collectively "Kodak") oppose seeking a Court determination that discovery

be limited to the Darwin software product – the only Kodak product specifically named in the Complaint

– and not be unbounded to encompass a wide range of other Kodak products. *See, e.g.*, Opposition to

Plaintiff's Motion to Compel at 1 (D.I. 41). The earlier motion concerns written discovery. This follow-

on motion concerns RRD's attempt to take similar discovery through the vehicle of Federal Rule of Civil

Procedure 30(b)(6).

The Darwin software product was developed in Israel by Creo, an Israeli-based business unit that

Kodak acquired in 2005. *Id.* Darwin relates to a type of printing known as variable digital printing.

RRD has seized on the variable data printing connection to seek broad discovery from other Kodak

business units, simply because those business units also have "variable digital printing" products. But

these other products were developed in an entirely different fashion, by entirely different companies – in

fact, by companies that were only recently acquired by Kodak and certainly had no prior relationship with

Creo in Israel. RRD has made no allegation in its Complaint specifically directed to these products, and

has given no indication – in its Complaint or otherwise – that it has done an investigation to demonstrate

any basis for claims of infringement directed at any of these products.

Nevertheless, in its earlier interrogatories and requests for production, RRD sought discovery on any Kodak software product "intended to enable Variable Digital Printing." *Id* at 2. This would capture previously-unnamed products manufactured by Kodak business units entirely separate from Creo in terms of organization, history, and geography. For these and other reasons, Kodak opposed – and continues to oppose – RRD's Motion to Compel (D.I. 36).

Accordingly, when plaintiff RRD served its original 30(b)(6) notice seeking nearly-identical discovery that is disputed in RRD's Motion to Compel, Kodak offered to provide witnesses knowledgeable about aspects of the topics relating to the Darwin software product, but objected to providing witnesses knowledgeable about aspects of the topics relating to any other products. After Kodak clarified that RRD elected to not take the witnesses being offered by Kodak and instead opted to maintain that the depositions should go forward on all topics "as noticed," Kodak brought the present motion – pursuant to Federal Rules of Civil Procedure 26(c)(4) and Local Rule 30.2 – for the Court to enter the protective order attached as Exhibit A. The bases for this Motion are as follows:

1.    On August 28, 2006, RRD served its Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("RRD's Original Notice") (D.I. 47):

a.    RRD's Original Notice covered the subject matters that are disputed in RRD's Motion to Compel (D.I. 36), currently pending before this Court. For instance, RRD's Original Notice covered subject matters relating to "Defendants' Software Products," "Defendants' Hardware Products," and "Third Party Software Products," all of which were similarly defined as in RRD's requests for production and interrogatories and which Kodak contends are not discoverable subject matters in opposing RRD's Motion to Compel. *Compare* (D.I. 47, Sch A at 3) *with* (D.I. 41, Ex. E at 4-5).

b.    RRD's Original Notice also included several broad, amorphous topics, including "Promotion or sales by Defendants . . . of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products." (D.I. 47, Sch A at 9).

- 2 -

    c.  RRD noticed its deposition in New York to start on September 28, 2006 "or at such other

time and place as may be agreed to by counsel." (D.I. 47 at 1).

    2.      On September 13, 2006, Kodak served its Responses and Objections to RRD's Original

Notice, offering to provide witnesses subject to its objections. *See* Ex. B.

    a.  With respect to those topics that sought discovery beyond the Darwin product, Kodak offered

to provide witnesses on Darwin, but objected that the topics otherwise related to products that

had nothing to do with this lawsuit. *See* Ex. B (Topics 1 and 4-9); Ex. C at 1.

    b.  Kodak also objected to the amorphous RRD topics as failing to be described with "reasonable

particularity." Ex. B (Topics 1 and 4-9). Kodak clarified in its cover letter that it would not

be feasible for Kodak to prepare witnesses for the topics as drafted and offered to identify

witnesses if RRD would make its topics more particular. Ex. C at 1-2.

    c.  Kodak offered to work with RRD to identify mutually agreeable dates and locations for the

depositions after the parties resolved issues 2.a and 2.b, above. Ex. C at 1.

    3.      RRD failed to respond or even acknowledge Kodak's responses and objections for seven

weeks. On October 31, 2006, RRD responded by summarily concluding – without providing any

explanation – that Kodak's objections were "without merit." Ex. D at 1.

    4.      In response, Kodak on November 7, 2006, reiterated its offer to provide witnesses subject

to its objections. Ex. E at 1. Kodak also informed RRD that it anticipated at least one of its designees

resides in Israel.[1] *Id*

    5.      On November 10, 2006, RRD served an Amended Notice of Deposition of Defendants

Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("RRD's Amended Notice"). (D.I. 66). RRD's

Amended Notice is nearly identical to its Original Notice except that RRD has renoticed the date of the

---

[1]    Kodak initially offered to produce its witnesses in Israel, but has since accepted RRD's proposal
to produce 30(b)(6) witnesses in Washington, DC, one of the locations RRD proposed. Kodak also
notified RRD that it would be more realistic to anticipate the depositions going forward in the first half of
December as opposed to the week before Thanksgiving that RRD proposed. Pursuant to Local Rule 30.2,
the filing of this Motion stays the deposition until the Motion is ruled upon by the Court.

deposition from September 28, 2006 to November 29, 2006 and changed the deposition location from New York to Delaware  *Id*  at 2.  Unlike its Original Notice, however, RRD's Amended Notice is inflexible as to the deposition time and place [2]

> 6      On November 15, 2006, Kodak served its Objections and Responses to RRD's Amended Notice, and again offered to produce witnesses subject to its objections.  (D.I. 67).

> 7.      On November 16, 2006, counsel for Kodak asked counsel for RRD to clarify whether RRD intended to go forward with the witnesses being offered by Kodak or whether RRD maintained that Kodak must produce a witness or witnesses on all topics as noticed by RRD.

> 8.      On November 17, 2006, RRD responded by demanding that "witness(es) on the topics as noticed [] appear in Wilmington, DE on November 29, 2006." Ex. F.

> 9.      Kodak moves for a protective order for the following reasons.  First, with respect to the scope of discovery, because RRD's Amended Notice seeks the same non-Darwin discovery in dispute in RRD's Motion to Compel (D.I. 36), Kodak refers to the reasoning in its Opposition to RRD's Motion to Compel (D.I. 41) to avoid repetition.  The attached protective order (Ex. A) precludes RRD from seeking any discovery beyond the subject matter of this lawsuit.

> 10.      Second, Kodak seeks protection from RRD's 30(b)(6) topics that are not described with "reasonable particularity."  Fed. R. Civ. P. 30(b)(6) (requiring 30(b)(6) notices to "describe with reasonable particularity the matters on which examination is requested").  Given the breadth of the subject matter requested by most of RRD's listed topics, it is not feasible for Kodak to find or prepare a person or persons to testify regarding the topics as drafted.  The attached protective order (Ex. A) would require RRD to modify its Amended 30(b)(6) Notice to describe its topics with more particularity.

> 11.      WHEREFORE, Kodak respectfully asks the Court to enter the Form of Order attached hereto as Exhibit A.

---

[2]      Despite RRD's apparent withdrawal of its offer to take its deposition in Washington, DC, Kodak would agree to produce its 30(b)(6) witnesses in Delaware if the remaining issues could be resolved by the Court or the parties.

-4-

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Amy W. Ray
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(202) 624-2500

Dated:  November 22, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., Eastman Kodak Company and Kodak*
*Graphic Communications Company*

- 5 -

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for the defendants has discussed the subject of the foregoing motion with counsel for plaintiffs, and that the parties have not been able to reach agreement on the issues raised in the motion.

Frederick L. Cottrell, III

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

### BY HAND DELIVERY

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I hereby certify that on November 22, 2006, I have caused the foregoing to be sent by Federal Express to the following non-registered participants:

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Alyssa M. Schwartz (#4351)
schwartz@rlf.com

RLF1-3085445-1

# EXHIBIT D

CONFIDENTIAL PORTION OF
EXHIBIT REDACTED

Home I Contact Us I Care

**Products & Solutions** ⋅ **Partners** ⋅ **Support** ⋅ **About Us**

Home > About Us > Press Releases > 2005 Press Releases >

| **About Us** |
| --- |

˅ Press Releases
  ˃ 2006 Press Releases
  ˃ 2005 Press Releases
  ˃ 2004 Press Releases
  ˃ 2003 Press Releases
  ˃ 2002 Press Releases
˃ Press Room
˃ Events
˃ Careers
˃ Contact Us

### Creo Print On-Demand Solutions Congratulates SPIRE Color Server Use Printing Innovation with Xerox Imaging (PIXI) Awards

*PRINT 05, Chicago, IL (September 13, 2005)* – The Creo Print On-Demand Solu congratulates SPIRE color server and Xerox customers who received 11 of the : Printing Innovation with Xerox Imaging (PIXI) Awards during PRINT 05 in Chica awards, including the 'Best of Show' Award to Lorraine Press, a Salt Lake City, printing operation, were presented to Creo Print On-Demand Solutions custome SPIRE color servers to drive their XEROX digital color presses, and the DARWIN information (VI) authoring tool to produce variable information (VI) documents

The PIXI Awards program was created by Xerox to recognize innovation and ex digital printing applications. It spotlights true digital innovators and VI creators the new business of digital printing by creating superior marketing and variable communications, books, manuals and exceptional short-run materials. This pro recognizes the valuable and productive relationships established between creat and their customers.

Digital printers from Canada , Latin America, and the United States submitted ( jobs for the PIXI Awards, which were judged by an independent panel of indust representing key segments of the graphic arts industry. This year's competition 250 entries, the largest number in its four-year history. Each entry was evaluat aesthetics, use of digital technology, business effectiveness, and degree of inno

The panel awarded Lorraine Press with the 'Best of Show' award for the highes ratings for its winning piece, the "Marvello Flipbook Invitation". Printed on a XE DOCUCOLOR 8000 Digital Press using a CREO CXP8000 color server and the D/ authoring tool, the innovative direct-mail piece invited potential customers to tl open house. Four different colorful versions were created and each copy was pe the recipient.

## Buy Online On-Demand Applications

> Click here



All 11 wining entries used the SPIRE color server. It enables users to increase p grow their business with superior quality color output, efficient processing, enh management, and advanced variable data printing capabilities. Supporting all k formats and authoring tools, the SPIRE color server's robust processing capabil essential for the production of complex VI jobs.

Five of the winning entries also used the Creo DARWIN VI authoring tool for the design, authoring, and management of VI documents. Darwin 's advanced VI fe graphic arts professionals to develop full-color personalized documents for crea one-to-one marketing communications.

"We are very pleased that our digital solutions have contributed to our custome said Gershon Alon , Director of Marketing, Creo Print On-Demand Solutions. "Tl tribute to innovative printers who have created applications that not only push of digital printing in terms of creativity, but also demonstrate how digital printe successfully grow and diversify their businesses and increase their bottom line.

Creo Print On-Demand Solutions group is a unit of Kodak GCG.

**About Eastman Kodak Company**
Kodak is the leader in helping people take, share, print, and view images – for memor
information, for business, and for entertainment. With sales of $13.5 billion in 2004,
committed to a digitally oriented growth strategy focused on four businesses: Digital
Systems – providing consumers, professionals, and cinematographers with digital and
products and services; Health – supplying the medical and dental professions with tra
digital imaging and information systems, IT solutions, and services; Graphic Commun
 providing customers with a range of solutions for prepress, traditional and digital prin
scanning, and multi-vendor IT services; and Display & Components – supplying origin
manufacturers with imaging sensors as well as intellectual property and materials for
emitting diode (OLED) and LCD display industries. More information about Kodak (NY
available at www.kodak.com.


Media Contact

Gershon Alon
M. +1.646.752.2158 (during Print 05)
T +011.972.9.959.7631
Gershon.alon@creo.com

Site Map  |  Copyright  |  Legal  |  Privacy Policy

CONFIDENTIAL PORTION OF
EXHIBIT REDACTED

# EXHIBIT E

DEC-06-2006 18:56 From:CROWELL & MORING    202 628 5116    To:+2125969096    P.2/2



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ■ p202 624-2500 ■ f202 628-5116

Amy W. Ray
202-624-2529
aray@crowell.com

December 6, 2006

025140.0000051

**VIA FACSIMILE**

Stuart W. Yothers, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
Facsimile:  (212) 596-9090

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Stuart:

As discussed during our conversation this afternoon, I write to confirm that the Rule 30(b)(1) depositions of Ron Peleg (noticed for December 13, 2006), Nardi Jaacobi (noticed for December 18, 2006), Ronen Cohen (noticed for December 22, 2006), Ronny Fogel (noticed for December 27, 2006), and Gershon Alon (noticed for December 29, 2006) will not proceed as noticed.

Each of the aforementioned individuals currently resides in Israel.  With respect to Messrs. Peleg, Jaacobi, and Alon and Ms. Fogel, they are available for deposition in Israel between January 7 and 18, 2007.  We have contacted those witnesses and propose the following schedule for their Israel depositions:  Ms. Fogel on January 7; Mr. Jaacobi on January 11; Mr. Peleg on the mornings and early afternoons of January 14-15; and Mr. Alon on January 18.

Mr. Cohen will be resident in the United States in early 2007, and we will continue to work with you to find a mutually acceptable date and location for his deposition after his move.

Best regards,

Amy W. Ray

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

Crowell & Moring LLP ■ www.crowell.com ■ Washington ■ Irvine ■ London ■ Brussels

# EXHIBIT F

Monday December 18, 2006

# Travel Warning
## United States Department of State
### *Bureau of Consular Affairs*
### *Washington, DC 20520*

---

*This information is current as of today, Mon Dec 18 15:14:50 2006.*

## ISRAEL, THE WEST BANK AND GAZA

**August 29, 2006**

This Travel Warning is being issued to update information on the general security environment in Israel, Jerusalem, the West Bank, and the Gaza Strip, and to reiterate threats to American citizens and U.S. interests in those locations. The security situation in northern Israel has improved, with a halt to rocket firing into Israel from southern Lebanon following the August 14 cessation of hostilities between Israel and Hizballah as called for by UN Security Council Resolution 1701. While the cessation of hostilities largely has been honored by both sides, the situation remains tense and a possible resumption of sporadic violence cannot be ruled out. Violent demonstrations and armed conflicts between supporters of the Hamas and Fatah factions and clashes between the Israeli army and Palestinian militants have increased in the Gaza Strip and the West Bank. Overall conditions of lawlessness prevail in the Gaza Strip, including the recent kidnapping of journalists. Areas of violent conflict shift rapidly and unpredictably. This warning supersedes the Travel Warning issued July 19, 2006.

Security conditions have improved in northern Israel with a halt to rocket firing into Israel from southern Lebanon following the August 14 cessation of hostilities between Israel and Hizballah as called for by UN Security Council Resolution 1701. The cessation of hostilities largely has been honored by both sides. However, because the situation remains tense and a possible resumption of sporadic violence cannot be ruled out, the Department of State urges U.S. citizens to remain mindful of security factors when considering travel to Israel and Jerusalem at this time. In addition, the Department of State urges U.S. citizens to defer travel to the West Bank and to avoid all travel to the Gaza Strip.

American citizens in the Gaza Strip should depart immediately, a recommendation the State Department has maintained since the deadly roadside bombing of a U.S. Embassy convoy in Gaza on October 15, 2003. This recommendation includes American journalists and aid workers. U.S. government personnel are currently prohibited from all travel in Gaza. Militants have abducted Western citizens recently, including an American citizen television journalist and a New Zealand citizen cameraman who were working for an American news organization, and terrorist organizations have threatened attacks against U.S. interests.

Violence between the Israeli Defense Forces (IDF) and militant groups based in the Gaza Strip and the West Bank can flare up without notice in the form of rocket attacks into Israel by Palestinian militants, targeted assassinations of Palestinians in the Gaza Strip by Israeli forces, and ongoing IDF security operations in Gaza and the West Bank. The uncertain security conditions within the West Bank and Gaza continue as well, with the potential for violent protests, kidnappings, including of foreign nationals, and fighting between various armed factions. Daily inter-Palestinian violence in

the Gaza Strip has spread to the West Bank.  An American citizen was kidnapped and held captive for several hours by armed militants in the West Bank in June 2006.

In recent months, citizens of Western nations, including Americans, involved in pro-Palestinian volunteer efforts were assaulted and injured in the Occupied Territories by Israeli settlers and harassed by the IDF.  Those taking part in demonstrations, non-violent resistance, and "direct action," are advised to cease such activity for their own safety.

For safety and security reasons, U.S. Government American personnel and dependents are prohibited from traveling to any cities, towns or settlements in the West Bank, except for mission-essential business or other approved purposes.  For limited, personal travel, U.S. government personnel and family members are permitted to travel through the West Bank, using only Routes 1 and 90, to reach the Allenby/King Hussein Bridge or the Dead Sea coast near Ein Gedi and Masada.  Each such transit requires prior notification to the Consulate General's security office and must occur during daylight hours.  U.S. Government personnel and family members are permitted personal travel on Route 443 between Modi'in and Jerusalem during daylight hours only, also with prior notification.  Travel to the Gaza Strip by U.S. Government personnel is prohibited.  Private American citizens also should avoid travel to these areas.

All travelers who enter or travel in the Gaza Strip or the West Bank should exercise particular care when approaching and traveling through checkpoints and should expect delays and difficulties.  Travelers should also be aware they might not be allowed passage through checkpoints.

Israeli authorities are concerned about a possible increase in suicide bombings in Israel.  The April 17 and January 19 suicide bombings in Tel Aviv, the December 5, 2005 suicide bombing in Netanya and a similar incident in Hadera in October 2005 are reminders of the precarious security environment.  The U.S. Government has received information indicating that American interests within Israel could be the focus of terrorist attacks.  For that reason, American citizens are cautioned that a greater danger may exist in the vicinity of restaurants, businesses, and other places associated with U.S. interests and/or located near U.S. official buildings, such as the U.S. Embassy in Tel Aviv and the U.S. Consulate General in Jerusalem.

Violent confrontation in Israel between organized criminal elements in public places have involved the use of bombs, grenades, anti-tank missiles, and small arms fire, and have taken place in cities frequented by tourists.  In the past several years, some of these incidents have led to the death and injury of innocent bystanders.

The State Department urges American citizens to remain vigilant while traveling anywhere in Jerusalem, especially within the commercial and downtown areas of West Jerusalem.  Israeli security services report that they continue to receive information of planned terrorist attacks in and around Jerusalem.  In addition, American citizens should stay away from demonstrations and generally avoid crowded public places, such as restaurants and cafes, shopping and market areas and malls, pedestrian zones, public transportation of all kinds, including buses and trains and their respective stations/terminals, and the areas around them.  Spontaneous or planned protests within the Old City are possible, especially after Friday prayers.  Some of these protests have led to violent clashes.

U.S. government personnel are prohibited from using all public transportation.  The Old City of Jerusalem is off-limits to them after dark during the entire week and between the hours of 11:00 A.M. and 2:00 P.M. on Fridays.  U.S. government employees are also forbidden from patronizing discos and nightclubs.

Any American Citizen who intends to travel to Israel, Jerusalem, the West Bank or the Gaza Strip in

spite of this and prior warnings should carefully review the Consular Information Sheet for Israel, the West Bank and the Gaza Strip. That reference describes other potential dangers and difficulties and offers detailed security recommendations. Palestinian-Americans face many additional obstacles and regulations that are described in that document.

Americans who remain in Israel, Jerusalem, the West Bank and the Gaza Strip are strongly encouraged to register with the Consular Section of the U.S. Embassy in Tel Aviv or the Consular Section of U.S. Consulate General in Jerusalem through the State Department's travel registration website, https://travelregistration.state.gov. U.S. citizens who require emergency services may telephone the Consulate General in Jerusalem at (972) (2) 622-7250 or the Embassy in Tel Aviv at (972) (3) 519-7355.

Periodically the Embassy and Consulate General may temporarily suspend public services to review their security posture. As a consequence of the current limitations on official travel to the West Bank, and the prohibition on travel by U.S. government employees to the Gaza Strip, the ability of consular staff to offer timely assistance to U.S. citizens in these areas is extremely limited.

Current information on travel and security in Israel, Jerusalem, the Gaza Strip, and the West Bank may be obtained from the Department of State by calling 1-888-407-4747 within the United States, or, from overseas, 1-202-501-4444. U.S. citizens should consult the Consular Information Sheet for Israel, the West Bank and the Gaza Strip; the Middle East and North Africa Public Announcement; and the Worldwide Caution Public Announcement at the Department's Internet website at http://travel.state.gov. Up-to-date information on security conditions can also be accessed at http://usembassy-israel.org.il or http://jerusalem.usconsulate.gov.



This site is managed by the Bureau of Consular Affairs, U.S. Department of State. External links to other Internet sites should not be construed as an endorsement of the views contained therein. Copyright Information   Disclaimers