## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>    Defendants. | C.A. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendant, | |

## MOTION TO COMPEL DISCOVERY

Defendants move to compel Plaintiff R.R. Donnelley & Sons Company ("RRD") to respond to document requests which RRD has promised to respond to for months, but for which adequate responses still have not been received. As this dispute illustrates, RRD has failed to approach discovery in an equitable manner, serving broad and burdensome discovery requests on Defendants and all corporate entities within their control, while nevertheless seeking to limit RRD's own discovery obligations based on fine corporate distinctions. These issues were essentially resolved when RRD was represented by its prior counsel, Ropes & Gray; since

changing counsel, however, RRD has backpedaled and attempted to distance itself from promises previously made. Defendants ask the Court to correct this inequity and require that RRD produce its long-promised, complete responses.

Many months ago (in October 2006), RRD, under its former counsel, acknowledged its obligation to produce responsive documents both in the possession, custody or control of corporate entities related to the named plaintiff R.R. Donnelley & Sons Co. (including all controlled entities in the RRD family, such as subsidiaries), as well as responsive documents naming, discussing, or relating to RRD-entities other than just the named plaintiff. Now, nine months later, RRD has retreated from this position under its new counsel, Sidley Austin, objecting to Defendants discovery requests that define "RRD" as anything more than just R.R. Donnelley & Sons Co. In an analogous issue, in January 2007, RRD agreed to search for highly-relevant documents in the possession of the recently-acquired Banta Corporation ("Banta"). Five months later, RRD has yet to produce a single responsive document from Banta, with its new counsel speculating that such a production would be "highly burdensome." [1]  As such, Defendants have been left with no option but to move for an order compelling RRD to produce responsive documents in the possession, custody, or control of related RRD-entities (including Banta), and to produce responsive documents naming, discussing, or relating to such entities. The bases for this motion are as follows:

1.    On May 26, 2006, Defendants served their First Set of Document Requests. Ex. A. RRD responded on July 7, 2006, pursuant to an agreed-upon extension. *See* Ex. B.

---

[1]    RRD's claim of burden rings hollow when the Defendants have collectively produced more than 2.4 million pages – well over ten times the size of RRD's document production. Moreover, Defendants have never stood on the fine corporate distinctions on which RRD now relies. For instance, Defendants have produced documents and agreed to produce witnesses from one of its Israeli subsidiaries.

2.      On September 19, 2006, Defendants wrote to RRD to address deficiencies in RRD's document production. Ex. C. Specifically, Defendants explained that RRD's objection to Defendants' definition of "RRD" was improper.[2]  *Id.* at 2. Notably, RRD had used a substantially similar definition for the Defendant entities in its own document requests. During a subsequent meet-and-confer teleconference, RRD's former counsel clarified that RRD had not withheld any responsive documents, or narrowed its search for documents, in anyway on the basis of its objection. Defendants confirmed this position in a letter dated October 9, 2006. Ex. D at 2.

3.      On January 5, 2007, counsel for Defendants took the 30(b)(6) deposition of Robert Nieland, an in-house attorney for RRD, and RRD's designated witness for the topic of document production. Ex. E. During this deposition, Defendants asked Mr. Nieland whether RRD would search the files of three companies recently- or soon-to-be-acquired by RRD (Banta, Perry Judds, and Von Hoffman) for responsive documents. Mr. Nieland answered that RRD would do so, once RRD had closed on the acquisitions, and to the extent RRD believed the companies would have responsive documents. Ex. F at 73:10 – 74:17.

4.      On January 9, 2007, RRD completed its acquisition of Banta. *See* Ex. G.

5.      On January 24, 2007, Defendants wrote to RRD's counsel to confirm that RRD would search the files of Banta, Perry Judds, and Von Hoffman for responsive documents. Ex. H at 2.

6.      On January 25, 2007, RRD completed its acquisition of Perry Judds. *See* Ex. I.

---

[2]      Defendants defined RRD to include the named Plaintiff and "all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing." Ex. A at 2.

7.     On March 14, 2007, former counsel for RRD responded to Defendants' January 24th letter, stating that RRD "does intend to search for responsive documents once [the] deals are closed. The Banta … and Perry Judds acquisitions have closed, and we are in the process of coordinating an appropriate search." Ex. J at 1.

8.     On or about March 19, 2007, the law firm of Sidley Austin replaced Ropes & Gray as counsel for RRD.

9.     On April 3, 2007, RRD's new counsel wrote to Defendants, retracting RRD's prior position and objecting to any request for responsive documents from Banta, Perry Judds, or Von Hoffman. Ex. K at 2.

10.     In a teleconference held on April 4, 2007, Defendants explained the relevance of documents formerly in the possession of Banta and Perry Judds. For instance, Banta was apparently engaged in providing variable digital printing services and developing its own proprietary variable digital printing software – the precise subject matter of this litigation – since at least the 1990s. Ex. L at 2. Defendants noted that this Banta activity may predate the filing dates of some of the patents in suit, and thus could constitute prior art. Moreover, RRD had targeted Banta in licensing discussions for the patents in suit. *Id.* Further, Defendants explained that because these documents were now in RRD's possession, custody, or control, RRD was obligated to produce the documents under Fed. R. Civ. P. 34 and 26(e). *Id.* Nevertheless, RRD's new counsel refused to be bound by the promises made earlier in the litigation – without so much as a written objection to the production of such documents now controlled and owned by RRD.

11.     Over the subsequent weeks, Defendants made multiple compromise offers to RRD regarding the production of Banta and Perry Judds documents. In the first effort,

- 3 -

Defendants offered to forego Perry Judds documents if RRD agreed to produce all responsive documents formerly in Banta's possession. Ex. M at 2. Next, Defendants further offered to reduce by 20% the number of document requests to which RRD needed to produce responsive documents formerly in the possession of Banta. Ex. N at 2. Counsel for RRD refused to accept this proposal, offering instead to limit the production of Banta documents to three specific categories. Ex. O at 2. Defendants responded that RRD's proposal would turn the discovery process on its head, requiring Defendants to guess at what types of responsive documents Banta may have had in its possession. Ex. P at 1-2. Nevertheless, Defendants offered a further compromise proposal, reducing by nearly 45% the number of document requests to which RRD needed to produce responsive documents formerly in the possession of Banta. Id. at 2. Multiple inquiries by Defendants over the next month regarding this proposal went unanswered.

12.    Meanwhile, in mid-April 2007, RRD delivered multiple supplemental document productions to Defendants. These supplemental productions contained over 190,000 pages[3] – yet not a single document formerly in the possession of Banta or Perry Judds was produced.

13.    On May 1, 2007, Defendants served a narrowly-tailored Second Set of Requests for Production ("Second Document Request"). After RRD allowed its original response deadline to pass, Defendants granted RRD a three-week extension to serve its written responses, which RRD ultimately served on June 21, 2007. See Ex. Q. Included in RRD's written response was an objection to Defendants' definition of "RRD." RRD's objection attempted to limit the definition of "RRD" to encompass only the corporate parent, R.R. Donnelley & Sons Co., while not including any relevant, related-RRD corporate entities. Id. at 4. RRD's objection had two

---

[3]    RRD subsequently recalled over 72,000 of the more than 190,000 pages produced on privilege and non-responsiveness grounds after Defendants notified RRD that some of the produced documents appeared to be privileged.

implications: 1) the objection potentially limited the number of RRD entities which would be searched for responsive documents to just one – the parent corporation; and 2) the objection limited RRD's duty to produce documents to only those specifically naming the RRD parent corporation, but not documents naming, discussing, or referring to other highly relevant, related-RRD entities.

14.    On June 12, 2007, RRD finally responded to Defendants' May 10th letter regarding Banta documents, stating that counsel for RRD was "still investigating the scope of responsive materials in the possession of Banta," and was not yet in a position to respond to the offer made by Defendants over a month before. Ex. R at 1. Counsel for RRD again stated that they were still investigating the issue during a meet-and-confer conference held on June 21, 2007.

15.    On June 28, 2007, RRD again wrote to Defendants regarding the production of Banta documents. Ex. S. RRD stated that it had learned that Banta "does not *likely* have any prior art relevant to this lawsuit." *Id* at 1 (emphasis added). RRD's response fails to reflect that prior art dates are often in dispute, and forecloses any possibility for Defendants to conduct their own analysis. Moreover, RRD could only qualify that Banta was not involved in variable digital printing on a "*commercial* basis before 1998." *Id* (emphasis added). However, Banta's use of a technology on a "commercial" basis is only one basis upon which its use can be considered prior art. For instance, a public use under Section 102(b) of the patent statute can include non-commercial activity. In addition, prior art includes non-public, non-commercial activities, such as certain patent applications qualifying as prior inventions under Section 102(g).

16.    Also on June 28, 2007, Defendants wrote to RRD's counsel identifying a number of insufficiencies in RRD's written response to Defendants' Second Document Request.[4] Ex. T. In particular, Defendants addressed RRD's objection to the definition of "RRD." Defendants explained that because RRD has acquired a number of companies which have purchased and used anticipatory prior art, highly-relevant documents may be in the possession of, or refer to, RRD-entities other than the ultimate parent corporation. For instance, Defendants have identified the "Begin" software as a prior art invalidating reference, a product used by Communicolor, a company acquired by RRD. RRD's position would shield any responsive documents relating to Communicolor's use of Begin. Defendants further noted that RRD's former counsel had already renounced a similar objection 8 months before. Id. at 2.

17.    RRD responded to Defendants' letter regarding the definition of "RRD" on July 6, 2007. RRD's response failed to address Defendants' primary concerns. Instead, RRD argued that it is not required "to search for every last document that may be responsive to Defendants' requests from every last person at every single [RRD] subsidiary, successor, predecessor, etc." Ex. U at 1. RRD's response was, of course, a strawman; Defendants have never sought "every last document" from "every single person" employed by RRD. Instead, Defendants have asked that RRD undertake a reasonable search for responsive documents and things within RRD's possession, custody, or control. Under the circumstances, a reasonable search would include not only the identification of potentially responsive documents located at RRD subsidiary and successor entities, but also searching for responsive documents referencing such subsidiary,

---

[4]    Defendants continue to work with RRD to resolve many of the disputes in their June 28th letter. However, because the issue of defining "RRD" has broad implications on the rest of RRD's discovery responses, and had seemingly previously been resolved with RRD's prior counsel, Defendants raise this definitional issue now. Defendants reserve the right to file a future motion related to the remaining issues identified in their June 28th letter.

predecessor, and successor entities. To date, RRD's new counsel has not agreed to undertake such a search.

## Conclusion

18.    RRD should not be permitted to continue its inequitable discovery practices. Despite confirmation from RRD's prior counsel that it would search related RRD-entities, including Banta, for responsive documents, RRD's new counsel has taken the reverse position. Counsel for Defendants have made multiple attempts to try and work with RRD to reach a compromise solution to these disputes. RRD's failure to provide relevant documentation has and will continue to prejudice Defendants' ability to develop their case.

19.    WHEREFORE, Defendants respectfully ask the Court to order RRD to comply with its discovery obligations and supplement its document production including compliance with all issues raised in this motion. A proposed form of order is attached hereto.


OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500


Dated:  July 10, 2007

*Frederick L. Cottrell* /s/ */ Annie Shea Sige*
Frederick L. Cottrell, III (#2555)   (#4093)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants Creo, Inc,*
*NexPress Solutions, Inc, Kodak Versamark,*
*Inc, Eastman Kodak Company and Kodak*
*Graphic Communications Company*

- 7 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2007, I electronically filed the foregoing with the Clerk

of Court using CM/ECF which will send notification of such filing(s) to the following and which

has also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899


I hereby certify that on July 10, 2007, the foregoing was sent to the following non-

registered participants in the manner indicated:

### VIA FEDERAL EXPRESS

Douglas I. Lewis                         John G. Hutchinson
Jamie L. Secord                          Sidley Austin, LLP
Sidley Austin, LLP                       787 Seventh Avenue
One South Dearborn Street                New York, NY   10019
Chicago, IL   60603

*Anne Shea Gaza*

Anne Shea Gaza (#4093)
gaza@rlf.com

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that counsel for the defendants contacted counsel for plaintiffs and attempted to meet and confer on the issues raised in the motion, but were not able to do so.

_Anne Shea Gaza_
Anne Shea Gaza (#4093)

Dated:  July 10, 2007

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>    Defendants. | C.A. No. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendant, | |

**ORDER**

WHEREAS, Defendants having moved this Court (the "Motion") for an order compelling discovery and the production of documents pursuant to Fed. R. Civ. P. 37(a), Local Rule 37.1, and paragraph 5 of the Rule 16 Scheduling Order (D.I. 26);

WHEREAS, the Court having considered the arguments in support of the Motion, and good cause having been shown for the relief sought in the Motion;

IT IS HEREBY ORDERED this _____ day of _____, 2007 that Defendants' Motion is GRANTED.  Accordingly, Plaintiff shall produce all

documents responsive to Defendants' First and Second Set of Requests for Production of Documents and Things, including documents in the possession, custody, or control of, or naming, discussing, or referring to, Plaintiff's subsidiary, successor, and predecessor entities. Plaintiff shall produce all such documents forthwith, including all documents formerly in the possession of Banta Corporation responsive to the requests identified in Defendants' May 10, 2007 letter.

_____
United States District Court Judge

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants.<br><br>CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendants. | C.A No. 06-032-JJF |

**CREO, INC.'S, EASTMAN KODAK COMPANY'S,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS ON
<u>DIRECTED TO R.R. DONNELLEY & SONS COMPANY</u>**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") request that

R.R. Donnelley & Sons Company ("RRD") produce for inspection and copying documents and

things within RRD's possession, custody or control that are responsive to the requests set forth

1

below at the law office of Crowell & Moring LLP, 1001 Pennsylvania Ave., N.W., Washington, DC 20004-2595 within thirty (30) days of service.

## DEFINITIONS

The following definitions shall apply:

A.    "RRD," "you," or "your" means R.R. Donnelley & Sons Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

B.    "Creo Defendants" means Creo, Inc., Eastman Kodak Company and Kodak Graphic Communications Company.

C.    "Patents in Suit" means United States Patent Numbers 6,205,452; 6,327,599; 6,844,940; and 6,952,801.

D.    "Patent Applications" means the applications that led to the issuance of the patents in suit, and all applications relied upon for priority by such applications, either directly or indirectly.

E.    "Foreign Counterpart" means any foreign patent application that claims the benefit of or priority to any Patent Application.

F.    "Darwin" means Creo Darwin.

G.    "Variable Digital Printing" means digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied in a single press run.

2

H.    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

I.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, documents, things, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence.  By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices.  The term "documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

J.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

K.    "Including" means including, without limitation.

3

L.    "Any" shall be read to mean each and every.

M.    The terms "all" and "each" shall be construed as all and each.

N.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

O.    The use of the singular form of any word includes the plural and vice versa.

P.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

Q.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

## INSTRUCTIONS

R.    These requests for production shall be deemed to be continuing as specified in Rule 26(e)(2) of the Federal Rules of Civil Procedure.

S.    The documents requested include all documents in RRD's possession, custody ,or control, or in the possession, custody or control of RRD's present or former attorneys, licensees, officers, directors, employees, agents, representatives, consultants, subsidiaries, affiliates, principals or parents, or any investigators or any other person acting on behalf of RRD or under the direction or control of RRD or its attorneys or agents, wherever such documents may be located.

T.    Each request for documents seeks production of each document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

4

RLF1-3019053-1

To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided.

U.    In the event that RRD claims privilege with respect to any documents requested, RRD shall state the specific ground for each such claim of privilege and shall set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the document; each person to whom such requested document was distributed or communicated; a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times, If the claim of privilege applies only to a portion of the document, produce all portions of the document to which the claim does not apply.

V.    Where any document requested has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction.

W.    Where any requested document is not in RRD's possession, custody, or control, state the name of the persons who have possession, custody, or control of such document, If such document was in RRD's possession, custody, or control in the past but is no longer in RRD's possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

X.    If subsequent to the date RRD's produce documents responsive to these document requests, RRD discovers or receives additional documents that are responsive to these requests,

RLF1-3019053-1

promptly produce all such additional documents to the full extent required by the Federal Rules

of Civil Procedure and the Local Rules of the United States District Court for the District of

Delaware.

## REQUESTS FOR PRODUCTION

1. All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit.

2. All documents and things concerning the patents in suit, including all communications between RRD and any person regarding the patents in suit.

3. All documents and things concerning the conception of the claimed subject matter of the patents in suit.

4. All documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit.

5. All documents and things concerning the research or development of the subject matter claimed or disclosed in the patents in suit.

6. All documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit.

7. All documents in the files of named inventors of the patents in suit relating to variable digital printing dated prior to 2002.

8. All publications authored or co-authored by at least one of the inventors of the patents in suit relating to variable digital printing.

9. All documents and things concerning any prior art search relating to the patents in suit or the patent applications.

6

10.    All documents and things concerning any decision to file the patent applications.

11.    All documents and things concerning the preparation of the patent applications.

12.    All documents and things concerning prosecution of the patent applications.

13.    All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts.

14.    All prior art to the patents in suit, and all documents and things concerning the same.

15.    All documents and things concerning any publications describing the subject matter disclosed or claimed in the patents in suit.

16.    All documents and things concerning the making of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

17.    All documents and things concerning the sale, offer for sale, commercialization, attempted commercialization, or use of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

18.    All documents and things concerning the advertisement or promotion of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

19.    All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit.

RLF1-3019053-1

20.    All documents and things that refer or relate to whether:

    (a)    there was one or more long-felt need(s) for the invention(s) claimed in the

        patents in suit;

    (b)    the art failed to solve the problems which are the subjects of the invention(s)

        claimed in the patents in suit;

    (c)    the invention(s) claimed in the patents in suit satisfied one or more long felt

        need(s);

    (d)    commercial success the invention(s) claimed in the patents in suit; and

    (e)    the industry has recognized the significance of the invention(s) of the patents

        in suit.

21.    All documents and things concerning RRD's purported ownership of the patents in suit.

22.    All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the Patents in Suit]."

23.    All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the Patents in Suit]."

24.    All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the Patents in Suit] is, has been, and continues to be willful

and deliberate."

25.    All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the Patents in Suit]."

26.    All documents and things concerning construction of the claims of the patents in suit.

27.    All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002 and ISO 16612-1 and ANSI/CGATS.20-2002.

28.    All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same.

29.    All documents and things concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

30.    All documents and things concerning any oral or written opinions concerning the patents in suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/ unenforceability, patentability, scope or interpretation of the patents in suit.

31.    All documents and things concerning any royalties collected from RRD from any license related to the patents in suit.

9

32.    All documents and things concerning any discussions, license negotiations, or business negotiations between RRD and any of the Creo Defendants, including discussions and negotiations relating to the patents in suit.

33.    All documents concerning licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing.

34.    All communications between RRD and the Creo Defendants regarding the patents in suit.

35.    All draft and final versions of RRD's annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing.

36.    All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit.

37.    All documents and things that refer to RRD's earliest knowledge of Darwin.

38.    All documents and things that refer to RRD's earliest knowledge of the operation of Darwin.

39.    All documents and things concerning the value of the patents in suit.

40.    All documents and things concerning RRD providing actual notice of the patents in suit to Creo.

41.    All documents and things concerning RRD products covered by the claims of the patents in suit.

10

42.    All documents and things concerning marking with the numbers of the patents in suit.

43.    All documents and things concerning the requirements of any person to mark any product with the numbers of the patents in suit.

44.    All documents and things concerning the conduct or performance of any person to mark the product with the numbers of the patents in suit.

45.    All documents and things concerning RRD's policies for policing or monitoring the marking of any person authorized to practice the claims of the patents in suit.

46.    All documents and things that refer to the subject matter of, or the identification of which is sought by, Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted, or upon which RRD relied, in framing, compiling or preparing its responses.

47.    Documents sufficient to identify, describe, and determine the organizational structure of RRD as defined from 1995 to present, including the identity of their officers and directors.

48.    All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

49.    All documents comprising or including English translations of non-English text in any otherwise responsive document.

11

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

Dated: May 26, 2006

12

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 26, 2006, upon the following in the manner indicated:

**BY HAND**

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

**BY FEDERAL EXPRESS**

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Gregory E. Stuhlman (#4765)

Dated: May 26, 2006

13

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>QUARK, INC., CREO, INC., EASTMAN )<br>KODAK COMPANY, AND KODAK )<br>GRAPHIC COMMUNICATIONS )<br>COMPANY, )<br><br>Defendants. )<br>_____ )<br><br>CREO, INC., EASTMAN KODAK )<br>COMPANY, AND KODAK GRAPHIC )<br>COMMUNICATIONS COMPANY, )<br><br>Counterclaim-Plaintiffs, )<br><br>v. )<br><br>R.R. DONNELLEY & SONS COMPANY, )<br><br>Counterclaim-Defendant. )<br>_____ ) | C.A. No. 06-032-JJF |

**R.R. DONNELLEY & SONS COMPANY'S RESPONSES TO
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
AND THINGS TO DEFENDANTS CREO, INC., EASTMAN KODAK COMPANY,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiff

R.R. Donnelley & Sons Company ("Plaintiff") responds to Defendants Creo, Inc.'s, Eastman

Kodak Company's, and Kodak Graphic Communications Company's (collectively

"Defendants") First Set of Requests for the Production of Documents and Things to Plaintiff as

follows:

## GENERAL OBJECTIONS

Each of Plaintiff's responses to Defendants' First Set of Requests for the Production of Documents and Things is subject to, and incorporates, the following General Objections. Plaintiff incorporates each of these General Objections into its specific responses to each of Defendants' requests, whether or not each such General Objection is expressly referred to in a specific response. Plaintiff's responses are made without waiving any of these General Objections.

1.  Plaintiff objects to Defendants' requests to the extent they seek to impose requirements or obligations on Plaintiff in addition to, beyond the scope of, or different from those imposed by the Federal Rules of Civil Procedure or the Local Civil Rules of the District of Delaware.

2.  Plaintiff objects to these requests to the extent they call for production of confidential information prior to issuance of a suitable protective order. Until a protective order is issued, Plaintiff will produce documents and things on "outside counsel of record only" basis as set forth by Local Rule 26.2.

3.  Plaintiff objects to these requests as unduly burdensome, overly broad and oppressive to the extent they are not reasonably calculated to lead to the discovery of admissible evidence, or seek documents that are not relevant to or are outside the scope of the claims, counterclaims or defenses of any party.

4.  Plaintiff objects to these requests as overly broad and unduly burdensome to the extent they seek production of documents and things that are not in the possession, custody or control of Plaintiff, and therefore, exceed the proper scope of discovery. Plaintiff will produce documents in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Civil Rules of the District of Delaware, located as the result of a reasonable search.

2

5.      Plaintiff objects to these requests to the extent they seek discovery of information subject to the attorney-client privilege, the attorney work product immunity and/or any other privileges or exemptions from production. Plaintiff will exchange with Defendants a Schedule of Withheld Documents at a time agreed to by counsel. Further, to the extent any privileged document is inadvertently produced, Plaintiff reserves all of its privileges with respect to such document, its right to object to inspection and copying of the document, its right to request that such document be returned, and its right to object to the admissibility of such document.

6.      Plaintiff objects to those requests that seek "all" information or documents that refer or relate to a particular subject to the extent it purports to require Plaintiff to seek information or documents from each individual within Plaintiff's organization. Plaintiff objects to conducting a search of this breadth on the grounds of undue burden and expense and not being reasonably calculated to lead to the discovery of admissible evidence. In searching for pertinent information and documents, Plaintiff will make an inquiry of all persons who are reasonably likely to have such information or documents.

7.      Plaintiff objects to these requests as vague and ambiguous to the extent they include terms that are undefined. Plaintiff in its response will assume a reasonable meaning for each such term.

8.      Plaintiff objects to these requests to the extent they call for confidential information of third parties that cannot be disclosed by Plaintiff because of contractual obligation.

9.      Plaintiff objects to these requests to the extent that they seek publicly available information that is equally accessible to Defendants as it is to Plaintiff.

3

10.    Plaintiff objects to each request that is substantially duplicative of another request.

11.    Plaintiff expressly reserves the right to supplement these responses under Rule 26(e)(2), Fed. R. Civ. P., as necessary when discovery has further progressed.

12.    Plaintiff objects to these requests as being overly broad, unduly burdensome and oppressive to the extent they are unlimited in time.

13.    Plaintiff objects to Defendants' Definition A as vague and overly broad to the extent that it includes any corporation, business or entity other than the named Plaintiff in this action.

14.    Plaintiff objects to Defendants' Instruction P as unduly burdensome and oppressive to the extent it seeks to impose any requirement or obligation on Plaintiff beyond the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules, or this Court's Scheduling Order in this action.

## RESPONSES TO DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION 1

All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit.

### RESPONSE TO REQUEST FOR PRODUCTION 1

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

4

**REQUEST FOR PRODUCTION 2**

All documents and things concerning the patents in suit, including all communications between RRD and any person regarding the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 2**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. Plaintiff further objects to this request to the extent that it seeks production of patents or published patent applications that are publicly available.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 3**

All documents and things concerning the conception of the claimed subject matter of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 3**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 4**

All documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 4**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 5**

All documents and things concerning the research or development of the subject matter claimed or disclosed in the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 5**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 6**

All documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 6**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 7**

All documents in the files of named inventors of the patents in suit relating to variable digital printing dated prior to 2002.

**RESPONSE TO REQUEST FOR PRODUCTION 7**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 8**

All publications authored or co-authored by at least one of the inventors of the patents in suit relating to variable digital printing.

**RESPONSE TO REQUEST FOR PRODUCTION 8**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent it seeks production of documents and things that are publicly available.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 9**

All documents and things concerning any prior art search relating to the patents in suit or the patent applications.

7

**RESPONSE TO REQUEST FOR PRODUCTION 9**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 10**

All documents and things concerning any decision to file the patent applications.

**RESPONSE TO REQUEST FOR PRODUCTION 10**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 11**

All documents and things concerning the preparation of the patent applications.

**RESPONSE TO REQUEST FOR PRODUCTION 11**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

8

**REQUEST FOR PRODUCTION 12**

All documents and things concerning prosecution of the patent applications.

**RESPONSE TO REQUEST FOR PRODUCTION 12**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 13**

All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts.

**RESPONSE TO REQUEST FOR PRODUCTION 13**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably likely to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 14**

All prior art to the patents in suit, and all documents and things concerning the same.

**RESPONSE TO REQUEST FOR PRODUCTION 14**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the

action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. Plaintiff also objects to this request on the basis that the term "prior art" has not been defined by Defendants and therefore is vague and indefinite.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 15**

All documents and things concerning any publications describing the subject matter disclosed or claimed in the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 15**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 16**

All documents and things concerning the making of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 16**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 17

All documents and things concerning the sale, offer for sale, commercialization, attempted commercialization, or use of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 17

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 18

All documents and things concerning the advertisement or promotion of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 18

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 19

All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 19**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that "concerning the claimed subject matter of the patents in suit" is vague and ambiguous.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 20**

All documents and things that refer or relate to whether:

(a)    there was one or more long-felt need(s) for the invention(s) claimed in the patents in suit;

(b)    the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents in suit;

(c)    the invention(s) claimed in the patents in suit satisfied one or more long felt need(s);

(d)    commercial success the invention(s) claimed in the patents in suit; and

(e)    the industry has recognized the significance of the inventions of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 20**

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 21**

All documents and things concerning RRD's purported ownership of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 21

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 22

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the Patents in Suit]."

## RESPONSE TO REQUEST FOR PRODUCTION 22

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 23

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the Patents in Suit]."

## RESPONSE TO REQUEST FOR PRODUCTION 23

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 24**

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the Patents in Suit] is, has been, and continues to be willful and deliberate."

**RESPONSE TO REQUEST FOR PRODUCTION 24**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 25**

All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the Patents in Suit]."

**RESPONSE TO REQUEST FOR PRODUCTION 25**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

14

**REQUEST FOR PRODUCTION 26**

   All documents and things concerning construction of the claims of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 26**

   Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

   Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 27**

   All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002 and ISO 16612-1 and ANSI/CGATS.20-2002.

**RESPONSE TO REQUEST FOR PRODUCTION 27**

   Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. Plaintiff further objects to this request to the extent that documents are publicly available and equally available to Defendants.

   Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 28**

   All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same.

**RESPONSE TO REQUEST FOR PRODUCTION 28**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 29**

All documents and things concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 29**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 30**

All documents and things concerning any oral or written opinions concerning the patents in suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 30**

Plaintiff objects to this request because it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

**REQUEST FOR PRODUCTION 31**

All documents and things concerning any royalties collected from RRD from any license related to the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 31**

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 32**

All documents and things concerning any discussions, license negotiations, or business negotiations between RRD and any of the Creo Defendants, including discussions and negotiations relating to the patents in suit.

**RESPONSE TO REQUEST FOR PRODUCTION 32**

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 33**

All documents concerning licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing.

**RESPONSE TO REQUEST FOR PRODUCTION 33**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence, especially as it pertains to "all patent license agreements in the field of Variable Digital Printing." Plaintiff

17

further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 34

All communications between RRD and the Creo Defendants regarding the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 34

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 35

All draft and final versions of RRD's annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing.

## RESPONSE TO REQUEST FOR PRODUCTION 35

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 36

All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit.

**RESPONSE TO REQUEST FOR PRODUCTION 36**

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 37**

All documents and things that refer to RRD's earliest knowledge of Darwin.

**RESPONSE TO REQUEST FOR PRODUCTION 37**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

**REQUEST FOR PRODUCTION 38**

All documents and things that refer to RRD's earliest knowledge of the operation of Darwin.

**RESPONSE TO REQUEST FOR PRODUCTION 38**

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

19

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 39

All documents and things concerning the value of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 39

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 40

All documents and things concerning RRD providing actual notice of the patents in suit to Creo.

## RESPONSE TO REQUEST FOR PRODUCTION 40

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 41

All documents and things concerning RRD products covered by the claims of the patents in suit.

20

## RESPONSE TO REQUEST FOR PRODUCTION 41

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 42

All documents and things concerning marking with the numbers of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 42

Plaintiff objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 43

All documents and things concerning the requirements of any person to mark any product with the numbers of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 43

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 44

All documents and things concerning the conduct or performance of any person to mark the product with the numbers of the patents in suit.

21

## RESPONSE TO REQUEST FOR PRODUCTION 44

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 45

All documents and things concerning RRD's policies for policing or monitoring the marking of any person authorized to practice the claims of the patents in suit.

## RESPONSE TO REQUEST FOR PRODUCTION 45

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 46

All documents and things that refer to the subject matter of, or the identification of which is sought by, Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted, or upon which RRD relied, in framing, compiling or preparing its responses.

## RESPONSE TO REQUEST FOR PRODUCTION 46

Plaintiff objects to this request as vague, indefinite, and unduly burdensome. Plaintiff further objects to this request to the extent that it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to its general objections and the foregoing specific objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 47

Documents sufficient to identify, describe, and determine the organizational structure of RRD as defined from 1995 to present, including the identity of their officers and directors.

## RESPONSE TO REQUEST FOR PRODUCTION 47

Plaintiff objects to this request as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to its general objections and the foregoing specific objection, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 48

All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

## RESPONSE TO REQUEST FOR PRODUCTION 48

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

## REQUEST FOR PRODUCTION 49

All documents comprising or including English translations of non-English text in any otherwise responsive document.

## RESPONSE TO REQUEST FOR PRODUCTION 49

Subject to its general objections, Plaintiff will produce non-privileged, non-immune documents, if any, that are responsive to this request.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (1014)
Rodger D. Smith II (3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
rsmith@mnat.com

*Attorneys for R.R. Donnelley & Sons Company*

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, New York 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

July 7, 2006

527810

24

## CERTIFICATE OF SERVICE

I, Rodger D. Smith II, hereby certify that on July 7, 2006, I caused true

and correct copies of the foregoing to be served in the manner indicated:

### BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595

Rodger D. Smith II (#3778)
MORRIS,  NICHOLS,  ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com

# EXHIBIT C



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Brian M. Koide
202-624-2931
BKoide@crowell.com

September 19, 2006

3477:ng
025140.0000051

**VIA ELECTRONIC MAIL**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

  Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
      *Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
      JJF)

Dear Jim:

  I write in regard to R.R. Donnelley & Sons Co.'s ("RRD") responses to the
First Set of Requests for Production of Documents and Things served by Creo, Inc.,
Eastman Kodak Company, and Kodak Graphic Communications Company
(collectively, "Creo"), and RRD's subsequent production of documents on August 31,
2006. First, I seek clarification of several objections contained in RRD's written
response to Creo's Requests for Production. In some cases, it appears that RRD
may be withholding relevant information based on objections that lack merit.
Second, I write to object to the incomplete production of documents by RRD in
response to Creo's Requests. I address the objections and production deficiencies
below.

**I.**  **RRD's General and Specific Objections**

  **A.**  **General Objection Nos. 3, 8, 10, 12 & 13**

  All of RRD's responses to Creo's document requests, except for its response to
Request for Production No. 30, are made "subject to its general objections." It is
unclear whether documents have been withheld from production or not collected
based on these general objections. In particular, it is unclear whether documents
are being withheld or not collected based on the following General Objections that
appear to lack any merit:

- No. 3, objecting to the requests as "unduly burdensome, overly broad and oppressive to the extent they are not reasonably calculated to lead to the discovery of admissible evidence, or seek documents that are outside the scope of the claims, counterclaims or defenses of any party";

- No. 8, objecting to the requests "to the extent they call for confidential information of third parties that cannot be disclosed by Plaintiff because of contractual obligation";

- No. 10, objecting "to each request that is substantially duplicative of another request";

- No. 12, objecting to the requests "as being overly broad, unduly burdensome and oppressive to the extent they are unlimited in time"; and

- No. 13, objecting to "Defendants' Definition A as vague and overly broad to the extent that it includes any corporation, business or entity other than the named Plaintiff in this action."

We ask that RRD clarify whether it has withheld any documents or narrowed its search for documents based on the above General Objections. If it has, we request that RRD promptly produce any withheld or uncollected documents. If no documents have been withheld and RRD's search for responsive documents has not been narrowed, we request confirmation that RRD will not use these objections in the future as a ground for not supplementing its production pursuant to Federal Rule of Civil Procedure 26(e) in the event RRD learns of additional responsive documents.

**B.      Specific Objections in Request for Production Nos. 2, 5, 6, 7, 8, 13, 14, 15, 16, 17, 18, 19, 27, 28, 29, 33, 35, 36, 39, 46 & 47**

RRD's response to document requests 2, 5, 6, 7, 8, 13, 14, 15, 16, 17, 18, 19, 27, 28, 29, 33, 35, 36, 39, 46 and 47 have some form the same boilerplate objection about overbreadth, undue burden, vagueness, indefiniteness, and relevancy. By way of example, RRD objects to Request for Production No. 2 "as overly broad, unduly burdensome and as calling for documents and things that are neither relevant to the claims, counterclaims or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence." The objections to the other requests cited above are either identical or very similar. RRD makes its response to each of the requests cited above "subject to" these "foregoing specific" objections.

We ask that RRD clarify whether it has withheld any documents based on the above "specific objections." If it has, we request that RRD promptly produce any

withheld or uncollected documents. If no documents have been withheld, we request confirmation that RRD will not use the above "specific objections" in the future as a ground for not supplementing its production pursuant to Federal Rule of Civil Procedure 26(e) in the event RRD learns of the existence of additional documents responsive to the above requests.

## II.    RRD's Incomplete Production of Documents

### A.    Failure to Produce Electronic Documents

RRD neglected to produce electronic documents, as requested by Creo pursuant to Federal Rule of Civil Procedure 34(a). Creo explicitly requested the production of electronic documents in its Requests for Production. In the Requests, Creo defined "Communication" to include "e-mail", while it defined "Document" to include "electronic mail, drawings and information in computer-readable format...." RRD's production failed to comply. Further, Instruction T to the Requests stated, "To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided." Aside from hard-copies of a few e-mails from the mid-1990s, RRD failed to produce e-mails or other electronic documents, as requested by Creo. Such a failure to comply is a stark violation of the applicable rules. *See Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 2002 WL 818061, *7 (D. Del. 2002) (requiring production of all responsive e-mails); *see also* Federal Rule of Civil Procedure 34(a); Federal Rule of Evidence 1001.

Moreover, RRD supplied photocopies of two floppy disks (RRD012755 and RRD015021), but only appears to have supplied the contents of the disk pictured in RRD012755. We ask that RRD promptly supplement its production with responsive electronic documents, including all responsive e-mails, and also provide the contents of the floppy disk pictured in RRD015021.

### B.    Inconsistent Bates Labeling

RRD's failed to utilize a consistent system of Bates labeling the documents produced to Creo on August 31, 2006. A substantial portion of RRD's production – 373 pages total – failed to include any Bates number at all. RRD is required to produce documents in a manner consistent with efficient litigation; its failure to utilize a consistent Bates labeling system failed to satisfy this responsibility. Creo asks that RRD promptly supplement its production by reproducing, with Bates numbering, all pages that are currently unlabeled.

### C.    Request for Production No. 1

RRD failed to provide any of the documentation requested in Request for Production No. 1. In that Request, Creo asked for "All documents and things

concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit." RRD produced no such documentation or communications, despite the fact that RRD released at least one press release regarding the lawsuit, on January 17, 2006.[1] We, therefore, request that RRD promptly supplement its production with all such documents and things regarding this lawsuit.

### D.    Requests for Production Nos. 2, 31, and 33

In Requests for Production Nos. 2, 31, and 33, Creo sought production of all documents and things concerning the patents-in-suit, "including all communications between RRD and any person regarding the patents in suit," "any royalties collected from RRD from any license related to the patents in suit," or "licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing." RRD, in its Responses to Creo's First Set of Interrogatories, acknowledged that it had entered "a license to at least one of the patents-in-suit [with] Barco Graphics NV." *See* Response to Interrogatory No. 5. RRD further listed 49 separate instances of correspondence "regarding licensing at least some of the patents-in-suit," with Creo, Kodak, and other third parties. *Id.*

Despite these admissions, RRD failed to produce its license with Barco Graphics, documentation regarding any royalties received from said license, or any of the license-related correspondence with third parties other than Creo or Kodak. Creo clearly requested these documents in the above-numbered Requests for Production. We ask that RRD promptly supplement its production with all documents or things regarding the Barco Graphics license, as well as all documentation of the correspondence identified by RRD in its Response to Creo's Interrogatory No. 5, as well as any other licensing-related correspondence, documents, or things subsequently discovered or identified by RRD.

### E.    Request for Production No. 6

RRD's production of documents failed to satisfy Request for Production No. 6. Creo sought production of "All documents and things concerning any commercial embodiments described in the patents in suit, *including any source code...*" (emphasis added). While RRD apparently produced some documentation regarding its variable data printing software, RRD failed to produce any corresponding source code. We, therefore, request that RRD promptly supplement its production by providing Creo with the source code for all commercial embodiments described in the patents-in-suit.

---

[1]    *See* http://www.rrdonnelley.com/wwwRRD/News/2006/2006_01_17.asp.

### F.    Request for Production No. 12

Creo requested that RRD produce "All documents and things concerning prosecution of the patent applications." RRD has produced the official file wrappers for each of the four patents-in-suit. However, it does not appear that RRD produced non-privileged documents from the internal file wrappers for the patents-in-suit. Therefore, Creo requests that RRD promptly supplement its production by including all non-privileged documents or things contained in RRD's internal file wrappers for the four patents-in-suit, as well as any other non-privileged documents or things concerning the prosecution of the patent applications. To the extent RRD believes that no such non-privileged documents exist, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered. Obviously, with respect to any document RRD withholds on the ground of privilege, we expect to see its description on a privilege log that RRD will provide.

### G.    Request for Production No. 13

In Request for Production No. 13, Creo sought "All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts." RRD failed to produce any such foreign counterpart, the file wrapper for any foreign patent application, or any other related documentation. Creo asks that RRD promptly supplement its production by providing all such foreign counterparts and any related documentation. To the extent RRD believes that no such documents exist, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

### H.    Request for Production No. 14

RRD's production of documents also failed to satisfy Request for Production No. 14. Creo sought the production of "All prior art to the patents in suit, and all documents and things concerning the same." While RRD did produce some documents that could potentially be considered prior art, RRD's production was nevertheless woefully deficient. The four patents-in-suit alone list over 435 different prior art references; it appears that RRD produced fewer than 200 of these references. At a minimum, RRD should have produced all prior art of record. The failure to sufficiently produce prior art of record is particularly troubling as Creo has learned that the official PTO copy of file wrapper is lacking numerous references. Therefore, Creo requests that RRD promptly supplement its production by including all prior art of record, as well as any related documents or things, to the four patents-in-suit.

## I.    Request for Production No. 19

Creo requested that RRD produce "All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit." RRD appears to have produced only third-party, published reports of such industry meetings, etc., along with a few spreadsheets reflecting RRD's budget for such events. Creo, therefore, requests that RRD promptly supplement its production by including all such documents or things. To the extent RRD believes that it does not have any other such documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

## J.    Request for Production Nos. 27 and 28

In Requests 27 and 28, Creo sought "All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002," and "All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same." Aside from the final, public version of the ANSI/CGATS.20-2002 standard, RRD produced no documentation regarding the ISO or ANSI/CGATS standards-making initiatives, nor any other standards-making process. We find RRD's anemic production particularly lacking given that Riyaz Asaria, a RRD employee at the time, served as co-chair to CGATS Subcommittee 6 Task Force 2, which prepared ANSI/CGATS.20-2002, Creo requests that RRD promptly supplement its production by including all documentation regarding the ISO and ANSI/CGATS standards-making processes, in addition to any other standards-making process, including but not limited to documentation in the possession, custody, or control of Riyaz Asaria.

## K.    Request for Production No. 30

In Request for Production No. 30, Creo sought production of all documents and things "concerning" any oral or written opinions regarding the patents in suit. RRD has refused to produce any such documents, stating categorically that all such documents "are immune from discovery under the attorney-client privilege and/or work product immunity." *See* RRD Response to Request for Production 30. But, in fact, Creo has sought production of a wide-variety of potential documents existing outside the scope of the attorney-client or work product privileges. For example, Creo seeks any non-privileged documents relied upon or referenced in any such oral or written opinion. Moreover, the request is not limited to opinions of counsel, but rather seeks the production of opinions of non-lawyers and documents related thereto.

We, therefore, seek clarification from RRD that it has not withheld from production any non-privileged, responsive documents such as the types discussed above. To the extent, RRD has withheld such documents, they should be promptly produced. To the extent RRD believes that it does not have any non-privileged documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive non-privileged documents in the event that the existence of such documents is subsequently discovered. Obviously, with respect to any document RRD withholds on the ground of privilege, Creo expects to see its description on a privilege log that will be supplied by RRD.

### L.    Request for Production No. 35

RRD's production failed to satisfy Request for Production No. 35, through which Creo sought "All draft and final versions of RRD's annual reports, quarterly reports and other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing." RRD did not produce any such draft or final reports. Therefore, Creo request that RRD promptly supplement its production by including any such draft or final reports. To the extent RRD believes that it does not have any such draft or final reports in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

### M.    Request for Production No. 36

In Request for Production No. 36, Creo requested "All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit." RRD does not appear to have produced any minutes or records of any meeting of RRD's board of directors or other committees or groups. Creo requests that RRD promptly supplement its production by including all such minutes, presentations, materials, or other records, to the extent they exist. To the extent RRD believes that it does not have any such documents in its possession, custody or control, please so inform us and confirm that RRD will supplement its production with any responsive documents in the event that the existence of such documents is subsequently discovered.

### N.    Request for Production No. 47

Creo sought the production of "Documents sufficient to identify ... the organizational structure of RRD ... from 1995 to present, including the identity of their officers and directors," through Request for Production No. 47. RRD does not appear to have supplied any organizational charts, or other documents sufficient to show the organizational structure of RRD. Creo therefore requests that RRD

promptly supplement its production by including documents sufficient to show the organizational structure of RRD from 1995 to the present, including the identity of officers and directors.

### O.    Request for Production No. 48

RRD also failed to comply with Request for Production No. 48, which requested "All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail." RRD failed to provide any such policies, or any other documents or things referring to RRD's document retention or destruction practices. Therefore, Creo asks that RRD promptly supplement its production by including all documents and things referring to any document retention or destruction policy.

Creo asks that you promptly clarify whether RRD has withheld any documents on the basis of the general and specific objections and promptly correct all of the production deficiencies, as discussed above. Creo intends to file a motion to compel should RRD fail to supplement its production, if necessary. However, we would prefer to reach an amicable resolution without the court's involvement, and propose that counsel for both sides meet-and-confer regarding these issues, pursuant to Federal Rule of Civil Procedure 37(a). Please call me at your earliest convenience to discuss these discovery issues.

Best regards,

Brian M. Koide

cc: Frederick L. Cottrell III

# EXHIBIT D



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Brian M. Koide
202-624-2931
BKoide@crowell.com

October 9, 2006

3477:ng
025140.0000051

**VIA FACSIMILE**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

      Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
             *Kodak Graphic Communications Co., (D. Del.) (Civil Action No. 06-032-*
             *JJF)*

Dear Jim:

        I write to confirm the substance of our September 28, 2006 meet and confer teleconference regarding R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set of Requests for Production of Documents and Things and the First Set of Interrogatories served by Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Creo").

        In its letters of September 6 and 19, Creo has identified improper objections and deficiencies in RRD's discovery responses. As noted below and in response to Creo's particular objections and responses, RRD acknowledged that it will supplement its discovery responses ("Supplemental Responses") by approximately October 12, 2006. RRD confirmed that it could not definitively commit to supplementing by that date, although it would make a good faith effort to do so.

## I.    RRD's Production of Documents

### A.    General Status of RRD's Production

        On August 31, 2006, RRD produced approximately 17,248 pages of documents. To date, RRD has not provided any additional supplemental productions.

Bradford J. Badke, Esq.
October 9, 2006
Page 2

### B.    General and Specific Objections

In RRD's July 7, 2006 written response to Creo's Requests for Production, RRD asserted several general and specific objections to Creo's Requests. During the meet and confer, RRD clarified that it – to date – has not withheld any responsive documents on the basis of any of these general or specific objections. Moreover, RRD clarified that it did not narrow its search for documents in anyway based on any of these general or specific objections. Creo maintains its position in its September 19, 2006 letter that certain of these objections are improper and unsupported by the law. RRD represented that its Supplemental Responses would clarify that RRD has not withheld documents or narrowed searches on the basis of these objections.

### C.    Failure to Produce Electronic Documents

RRD's initial production of documents on August 31, 2006 did not include electronic documents. RRD stated during the meet and confer that all responsive, non-privileged electronic documents will be produced, and that RRD believes that the electronic documents will be of a "manageable" volume. For instance, RRD estimated that the volume of electronic documents would be less than the equivalent of 50 boxes of documents. RRD confirmed that it would produce these documents in its Supplemental Production, and that the form of the production will be in Single Page type IV tiffs with an image loadfile, or a similar load file clearly depicting document breaks.

In its initial production, RRD supplied photocopies of two floppy disks (RRD012755 and RRD015021). Please confirm in writing whether the electronic documents stored on both disks have been produced, and, if so, please identify by Bates number range the documents contained on these disk. RRD stated that it would produce the documents contained on the both disks to the extent they have not been produced. RRD represented that it would produce or identify these documents in its Supplemental Responses.

### D.    Request for Production No. 1

RRD's initial production of documents did not include "All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit." RRD stated during the meet and confer that it is investigating why all such documents were not produced. RRD will produce any such non-privileged, responsive documents it finds. If RRD does not find any such documents, it will confirm in writing that none exist. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 3

E.     **Requests for Production Nos. 2, 31, and 33**

In Requests for Production Nos. 2, 31, and 33, Creo sought communications involving the patents-in-suit, including the production of all documents and things concerning the licensing of the patents-in-suit. In response to Interrogatory No. 5, RRD has acknowledged the existence of at least one license for at least one of the patents-in-suit and further identified 49 separate instances of correspondence between RRD and other parties concerning the licensing of the patents-in-suit. Nevertheless, RRD did not produce either this license or the 49 instances of correspondence in its initial August 31, 2006 production. RRD stated during the meet and confer that it is investigating to see why these documents were not produced, and will produce all such non-privileged documents in its Supplemental Responses.

F.     **Request for Production No. 6**

RRD's initial production of documents included only a small number of documents discussing RRD's commercial embodiments of the patents-in-suit, and did not include any source code from such embodiments. RRD stated during the meet and confer that it does not believe any source code, or other non-produced documents responsive to this Request exist. Therefore, RRD does not anticipate supplementing its production in response to this Request. If RRD finds any additional documents or source code, they will be produced to the extent they are not privileged. If RRD does not uncover any other documents or source code responsive to this Request, it will so confirm in its Supplemental Responses.

G.     **Request for Production No. 12**

Creo requested that RRD produce "All documents and things concerning prosecution of the patent applications." While RRD produced the official file wrappers for each of the four patents-in-suit in its initial production, it did not produce non-privileged documents from the internal versions of file wrappers for the patents-in-suit (including any internal versions of file wrappers in possession of either RRD or its outside prosecution counsel). RRD is verifying whether any such documents exist, and will produce such documents to the extent they are not privileged. During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search, and will confirm whether said firm(s) have any responsive documents. RRD intends to produce responsive documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 4

### H.    Request for Production No. 13

In Request for Production No. 13, Creo sought "All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts." RRD's initial production did not include any such documents. During the meet and confer, RRD was unable to confirm whether any such non-privileged documents exist, and was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses. RRD will also confirm that RRD's domestic and international patent counsel have been contacted to determine if said counsel has any responsive documents in its possession, and will produce any such responsive, non-privileged documents.

### I.    Request for Production No. 14

Creo requested the production of "All prior art to the patents in suit, and all documents and things concerning the same." RRD produced some prior art documents, but did not produce all prior art of record for the four patents-in-suit. Many of these non-produced references are otherwise unavailable to Creo. During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD confirmed that it is not currently withholding any such documents, and will verify whether other responsive documents exist. RRD will check with its patent prosecution counsel to see if said counsel may have any responsive documents in its possession. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### J.    Request for Production No. 19

Creo requested that RRD produce "All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit." RRD produced only a limited number of such documents in its initial production. RRD was unable to confirm during the meet and confer whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 5

### K.    Request for Production Nos. 27 and 28

In Requests 27 and 28, Creo sought documents regarding the ISO 16612-1 and ANSI/CGATS.20-2002 standards-making initiatives. RRD produced only one such document in its initial production. During the meet and confer, RRD was unable to confirm whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### L.    Request for Production No. 30

In Request for Production No. 30, Creo sought production of all documents and things "concerning" any oral or written opinions regarding the patents in suit. RRD objected to this Request, on the grounds that all such documents "are immune from discovery under the attorney-client privilege and/or work product immunity." *See* RRD Response to Request for Production 30. Creo maintains its assertion that non-privileged documents responsive to this request could exist, and therefore that the categorical nature of RRD's objection is improper. RRD has agreed to clarify its position. RRD was unable to confirm whether any such responsive, non-privileged documents exist, and will verify whether such documents do in fact exist. Any such documents will be produced by RRD. RRD intends to make this clarification, confirmation, and production (if necessary) in its Supplemental Responses.

### M.    Request for Production No. 35

Creo requested "All draft and final versions of RRD's annual reports, quarterly reports and other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing." RRD did not produce any such reports in its initial production. RRD was unable to confirm during the meet and confer whether any responsive documents exist, and will verify and produce any such non-privileged documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### N.    Request for Production No. 36

In Request for Production No. 36, Creo requested "All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit." RRD did not produce any such documents in its initial production, and was unable to confirm during the meet and confer whether any such documents existed. RRD will verify whether any responsive documents exist, and will produce any such non-privileged documents it finds. RRD intends to produce these

Bradford J. Badke, Esq.
October 9, 2006
Page 6

documents, or in the alternative confirm their non-existence or unavailability, in its
Supplemental Responses.

### O.    Request for Production No. 47

Creo requested the production of "Documents sufficient to identify ... the
organizational structure of RRD ... from 1995 to present, including the identity of
their officers and directors," through Request for Production No. 47. RRD did not
produce any such organizational chart or other documentation in its initial
production. RRD will confirm why no organizational charts or other documents
were produced, and will produce such documents. RRD intends to produce these
documents in approximately two weeks.

### P.    Request for Production No. 48

Creo requested "All documents and things that refer to RRD's policies and
practices, whether formal or informal, with respect to document retention or
document destruction, including the retention or destruction of electronic mail."
RRD did not provide any such documents in its initial production. RRD was unable
to confirm whether any such documents exist during the meet and confer. RRD will
verify whether any responsive documents exist, and will produce any such non-
privileged documents it finds. RRD intends to produce these documents, or in the
alternative confirm their non-existence or unavailability, in its Supplemental
Responses.

### Q.    Inconsistent Bates Labeling

In its September 19, 2006 letter, Creo indicated that RRD had failed to Bates
number several documents in its August 31, 2006 production. Upon further review
by Creo, it appears that all documents produced by RRD were in fact Bates
numbered. The error appears to have been the result of a misunderstanding by
Creo's document production vendor. Creo hereby confirms that no supplementation
by RRD is necessary in this regard.

## II.    RRD's Interrogatory Responses

### A.    Identification of Persons with Knowledge

Creo's Interrogatories requested that RRD "[s]et forth and identify the source
of each answer by identifying each person whom you know has personal knowledge
of the facts or information forming the basis of the answer that you gave." RRD
only provided the name of one such individual in its response to Interrogatory No. 1.
RRD stated that while it cannot guarantee it will be able to provide the names of

Bradford J. Badke, Esq.
October 9, 2006
Page 7

such individuals for each Interrogatory, it will so supplement its response to the extent possible in its Supplemental Responses.

### B.    RRD's General Objection No. 6

In General Objection No. 6, RRD objected to generating "information that does not exist, is not used, or is not generated by Plaintiff in the ordinary course of business." Creo stated that it believed this objection to be improper, as interrogatory responses require the disclosure of the knowledge of the corporation and its employees; such knowledge cannot be withheld on the ground that is does not exist or is not used or generated "in the ordinary course of business." Creo maintains its position that this objection is improper and unsupported by the law. RRD stated during the meet and confer that it has not withheld any information to date on the basis of this objection. RRD agreed to confirm that it is not withholding any information on this basis, but stated that RRD intends to preserve this objection for future Interrogatory responses. RRD intends to make this confirmation in writing in its Supplemental Responses.

### C.    RRD's General Objection No. 7

RRD objected to Creo's interrogatories "to the extent that they seek discovery of information about ongoing research and development activities of [RRD] that have not yet been commercialized." Creo stated its belief that such an objection is improper, as the fact that such activities have not yet been "commercialized" does not immunize such activities from discovery. Creo maintains its position that this objection is improper and unsupported by the law. RRD clarified during the meet and confer that it was not withholding and information or documents on the basis of this objection. RRD intends to make this confirmation in writing in its Supplemental Responses.

### D.    RRD's General Objection No. 8

RRD's General Objection No. 8 objects to the identification of any documents created after the filing of RRD's complaint. RRD suggested that the parties agree to cut discovery off based on the filing date of RRD's complaint, with an exception for certain updates (i.e. damages) as needed. Counsel for Creo stated that they needed to discuss this matter internally, but that they were generally amenable to some form of such an agreement. Counsel for Creo stated that we would want any exceptions to this general agreement to be well defined to prevent future disagreements. Counsel for Creo will consider RRD's proposal internally, and will further discuss this matter with RRD shortly.

Bradford J. Badke, Esq.
October 9, 2006
Page 8

### E.    Interrogatory No. 1:

In Interrogatory No. 1, Creo asked for "a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents...[and f]or each claim you contend is governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s)...." In its initial response dated July 7, 2006, RRD did not indicate "whether each element is present literally or by equivalents" in its initial response. Creo maintains that the claim charts provided by RRD in its initial response failed to sufficiently detail the alleged infringement by Creo.

RRD stated during the meet and confer that its Supplemental Response will address the deficiencies to RRD's response to Interrogatory No. 1 identified by Creo in its September 6, 2006 letter.

### F.    Interrogatory No. 2:

Interrogatory No. 2 asked RRD to state its claim construction for each asserted claim, and to provide the factual and legal bases for its constructions. RRD conditioned its response to Interrogatory No. 2 on several general and specific objections, and then stated that "based on information now known, infringement is demonstrated by comparing the plain and ordinary English language meaning of the claims to the features of Defendants' accused products and activities," while reserving the right for future refinement.

Creo maintains its position that these objections are improper and unsupported by the law. RRD agreed during the meet and confer to re-examine its response to Interrogatory No. 2, and supplement the response – to the extent that RRD contends that construction is necessary – in its Supplemental Responses.

### G.    Interrogatory No. 3:

Interrogatory No. 3 requested RRD's contentions as to "the earliest priority date that each claim is entitled." In its July 7, 2006 response, RRD stated that because the term "priority date" was undefined, it would interpret "priority date" to mean "the filing date of the earliest filed application to which a particular patent claims priority." Creo responded in its September 6, 2006 letter by stating that the term "priority date" is well defined in Federal Circuit case law.

RRD has agreed to supplement its response to Interrogatory No. 3 by providing the actual priority date for each of the four patents-in-suit in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 9

### H.    Interrogatory No. 4:

Interrogatory No. 4 requested that RRD provide the conception and reduction to practice dates for each patent claim being asserted by RRD, as well as a description of the factual and legal bases supporting RRD's answer. In its July 7, 2006 response, RRD refused to answer "until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit." RRD continues to assert that it is not required to state conception and reduction to practice dates until Creo advances specific pieces of prior art. Creo maintains that because it has asserted that the patents-in-suit are invalid, RRD has an obligation to promptly provide conception and reduction to practice dates. The parties are unable to settle this disagreement. This confirms that the parties have met and conferred on this issue sufficient to satisfy their obligations under the Federal Rule of Civil Procedure 37(a).

### I.    Interrogatory No. 5:

Finally, in Interrogatory No. 5, Creo sought the identification of "each person with whom you, your attorneys, or your representatives have contacted or negotiated regarding licenses or possible licenses for the patents in suit...." In its July 7, 2006 response, RRD identified one license and 49 instances of such correspondence, and stated it would "produce and identify business records sufficient to answer this interrogatory," pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Creo's September 6, 2006 letter noted that RRD had failed to provide sufficient detail to locate and identify the records from which RRD's answer could be ascertained, and further noted that the interrogatory was not limited to written correspondence, but included oral contacts or negotiations. RRD's August 31, 2006 production of documents failed to include the records necessary to answer Interrogatory No. 5.

During the meet and confer, RRD reaffirmed its intention to supplement its document production with documents regarding licensing correspondence and agreements in its Supplemental Responses. RRD further stated that it will provide non-privileged records of any oral contacts or negotiations regarding the licensing of the patents-in-suit, should any exist.

Please let us know at your earliest convenience if you believe any of the above fails to accurately portray our September 28, 2006 meet and confer.

Bradford J. Badke, Esq.
October 9, 2006
Page 10

Best regards,

Brian M. Koide

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>    Defendants. | C. A. No. 06-cv-032-JJF |
| CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>    Counterclaim-Plaintiffs,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendants, | |

## CREO, INC.'S, EASTMAN KODAK COMPANY'S AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST NOTICE OF DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendants Creo, Inc., Eastman Kodak Company and Kodak Graphic

Communications Company (collectively, "Creo") will take the deposition upon oral examination

of Plaintiff R.R. Donnelley & Sons Company ("RRD") on the topics set forth in the attached

Schedule A, through one or more of RRD's officers, directors or managing agents, or other

persons who consent to testify on RRD's behalf, commencing on December 13, 2006 at 9:00

a.m. Creo requests that RRD identify in writing at least five (5) business days in advance of the deposition the person(s) designated by RRD, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will take place at the offices of Crowell & Moring LLP, 1001 Pennsylvania Avenue, NW, Washington, DC 20004 beginning on the date and time specified above. Alternatively, the deposition may commence at such other time and place as may be agreed upon by counsel. The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by stenographic and/or videographic means. The deposition will continue from day to day until completed.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
Nathaniel Grow
ngrow@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

- 2 -

## SCHEDULE A

## **DEFINITIONS & INSTRUCTIONS**

The following definitions shall apply:

A.     "RRD" means R.R. Donnelley & Sons Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of any of the foregoing.

B.     "Patents in Suit" means United States Patent Numbers 6,205,452; 6,327,599; 6,844,940; and 6,952,801.

C.     "Practice of the Patents in Suit" means any activity by (i) RRD to practice, use, obtain revenues based on the use of, offer services that use, commercialize, offer for sale, promote, sell, distribute, or make any subject matter claimed by the Patents in Suit and/or (ii) any other entity authorized by RRD to practice, use, obtain revenues based on the use of, offer services that use, commercialize, offer for sale, promote, sell, distribute, or make any subject matter claimed by the Patents in Suit.

D.     "Barco-Xeikon Entity" means Barco Graphics N.V. and/or Xeikon N.V., and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations of either entity, partnerships, or other business entities of both entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

E.     "Barco-Xeikon Components" means the following, either individually and/or in some combination:  (i) the Barco PrintStreamer electronic collation system; (ii) the Barco

FastRIP image processor; (iii) the Barco FastRIP/X image processor; and (iv) the Xeikon DCP-1 digital press.

    F.    "Darwin" means Creo Darwin.

    G.    "Variable Digital Printing" means digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied in a single press run.

    H.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, documents, things, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by rule 1001 of the Federal Rules of Evidence  By way of illustration and without limitation, documents include at least the following:  originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices.  The term "Document" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

    I.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture,

- 2 -

unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

## TOPICS

1.    RRD's licensing or attempted licensing of the Patents in Suit.

2.    The Practice of the Patents in Suit.

3.    Any royalties collected from any license concerning the Patents in Suit and/or the Practice of the Patents in Suit.

4.    RRD's first acquisition, use, receipt and purchase of each Barco-Xeikon Component.

5.    RRD's collaboration, joint development, partnership, relationship and/or work with any Barco-Xeikon Entity concerning Variable Digital Printing, including work on "Project 16."

6.    RRD's gross revenues, net revenues, standard costs, incremental costs, gross profit, net profit and margins concerning the Practice of the Patents in Suit.

7.    RRD's awareness of and participation in the development of standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002.

8.    RRD's earliest knowledge of Darwin.

9.    RRD's marking of the Practice of the Patents in Suit.

10.    RRD's requirements that third parties mark the Practice of the Patents in Suit.

- 3 -

11.    The organizational structure of RRD from 1995 to the present.

12.    RRD's policies and practices, whether formal or informal, with respect to Document retention or Document destruction.

13.    The process by which RRD identified, collected and produced Documents in response to any request for Documents and things pursuant to Federal Rule of Civil Procedure 34, including Creo's First Set of Requests for Production of Documents and Things to RRD.

- 4 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2006, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on November 10, 2006, the foregoing document was sent to the following non-registered participants in the manner indicated:

## VIA FEDERAL EXPRESS

Bradford J. Badke, Esquire                     Steven A. Kaufman
Fish & Neave IP Group                          Fish & Neave IP Group
Ropes & Gray                                   Ropes & Gray
1251 Avenue of the Americas                    One International Place
New York, NY   10020                           Boston, MA  02110

_____
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

# EXHIBIT F

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY, )
                               )
          Plaintiff,           )
                               )CIVIL ACTION NO.
     vs.                       )06-CV-032-JJF
                               )
QUARK, INC., CREO, INC.,       )
EASTMAN KODAK COMPANY, and     )
KODAK GRAPHIC COMMUNICATIONS   )
COMPANY,                       )
                               )
          Defendants.          )

          Videotaped Deposition of ROBERT GLENN

NIELAND, taken before JANYCE W. BOOTH, CSR, RMR,

CRR, and Notary Public, pursuant to the Federal

Rules of Civil Procedure for the United States

District Courts pertaining to the taking of

depositions, at 233 South Wacker Drive, 58th

Floor, Chicago, Illinois, commencing at 9:33 a.m.

on the 5th day of January, A.D., 2007.

832e5402-4dcd-4530-b192-c9033448afc2

Page 73

1    **Moore Wallace employee now.**

2        Q.    And if I asked in my letter for a list of

3    the individuals from whom you collected documents,

4    you could give that to me?

5        MR. BADKE:  Why don't you -- why don't you put

6    your request in writing, and we'll consider that.

7    We consider that technically privileged I believe,

8    but -- so we'll consider that.

9        MS. RAY:  Okay.

10       MS. RAY:  Q  And what about Donnelley's

11   soon-to-be corporate affiliates.  You mentioned

12   that there are three companies with whom Donnelley

13   is merging.

14       **A.    Mm-hmm.**

15       Q.    And which are those three companies?

16       **A.    Banta Corporation, Perry Judds, and**

17   **Von Hoffman.**

18       Q.    Could you spell the last two, please?

19       **A.    Perry Judds is P-E-R-R-Y, and then as a**

20   **separate word, J-U-D-D-S.  And Von Hoffman is**

21   **V-O-N, and then the separate word H-O-F-F-M-A-N.**

22       Q.    Would the files of Banta have responsive

23   documents?

24       **A.    I'd have to look at the request for**

Thompson Court Reporters, Inc. (312) 346-3377

Page 74

1    production again.

2         Q.    Would you be willing to search the files

3    of Banta to see if there were --

4         A.    If we thought they had some responsive

5    documents, sure.  We don't own them yet.

6         Q.    When will you own them?

7         A.    I don't know.  Probably in the first

8    quarter.

9         Q.    What about Perry Judds?  When will

10   Donnelley --

11        A.    I don't know when that will close.  These

12   are all just announced within the last two weeks.

13        Q.    Okay.

14        A.    Banta was announced in November.  We had

15   to get regulatory approval.  They have to have a

16   shareholders' meeting to approve the acquisition.

17   And until that takes place, we can't close.

18        Q.    You mentioned that Donnelley has searched

19   or asked for documents from some of its former

20   counsel.

21        A.    Yes.

22        Q.    After the deposition today and the

23   questions, can you think of any additional former

24   counsel whose files --

# EXHIBIT G

**RR DONNELLEY** 

# NEWS RELEASE

## RR Donnelley Completes Purchase of Banta Corporation

CHICAGO, Jan. 9 /PRNewswire-FirstCall/ -- R.R. Donnelley & Sons Company (NYSE: RRD) today announced that it has completed its previously announced purchase of Wisconsin-based Banta Corporation, a provider of printing, supply chain management and related services. The $1.3 billion acquisition agreement was announced on October 31, 2006.

**About RR Donnelley**
RR Donnelley (NYSE: RRD) is the world's premier full-service provider of print and related services, including business process outsourcing. Founded more than 140 years ago, the company provides solutions in commercial printing, direct mail, financial printing, print fulfillment, labels, forms, logistics, call centers, transactional print-and-mail, print management, online services, digital photography, color services, and content and database management to customers in the publishing, healthcare, advertising, retail, technology, financial services and many other industries. The largest companies in the world and others rely on RR Donnelley's scale, scope and insight through a comprehensive range of online tools, variable printing services and market-specific solutions. For more information, visit the company's web site at www.rrdonnelley.com.

**Use of Forward-Looking Statements**
This news release may contain "forward-looking statements" as defined in the U.S. Private Securities Litigation Reform Act of 1995. Readers are cautioned not to place undue reliance on these forward-looking statements and any such forward-looking statements are qualified in their entirety by reference to the following cautionary statements. All forward-looking statements speak only as of the date of this news release and are based on current expectations and involve a number of assumptions, risks and uncertainties that could cause the actual results to differ materially from such forward-looking statements. Readers are strongly encouraged to read the full cautionary statements contained in RR Donnelley's filings with the SEC. RR Donnelley disclaims any obligation to update or revise any forward-looking statements.

**RR Donnelley Investor Contact:**
Dan Leib
Senior Vice President
Finance
312.326.7710
dan.leib@rrd.com

**RR Donnelley Media Contact:**
Doug Fitzgerald
Executive Vice President
Marketing & Communications
630.322.6830
doug.fitzgerald@rrd.com

# EXHIBIT H



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Amy W. Ray
202-624-2529
aray@crowell.com

January 24, 2007

025140.0000051

**VIA FACSIMILE & U.S. MAIL**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY  10036-8704
Facsimile:  (212) 596-9090

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jim:

I write on behalf of Creo, Inc., Eastman Kodak Company and Kodak Graphic Communications Company ("Defendants") to follow up on a few issues raised during the Rule 30(b)(6) deposition of Robert Nieland.

First, Defendants request that R.R. Donnelley & Sons. Co. ("Donnelley") search the files of its patent prosecution counsel for the prior art references listed in Exhibit A. Each piece of prior art appears in one or more of the patents-in-suit but has not been produced by Donnelley to date. Moreover, Defendants are seeking only those references that Defendants have not been able to obtain or those items that Defendants are not able confirm are the same references relied upon during prosecution of the patents. As Mr. Nieland indicated during his deposition, Donnelley's patent prosecution counsel "tends to keep all of the detail on patent applications and issued patents." (Nieland Dep. 25:18-20, Jan. 5, 2007; *see id.* at 26:3-15 and 28:14-18.) For this reason, it is reasonable for Donnelley to conduct a search of the files of its patent prosecution counsel with file wrappers for the patents-in-suit and produce, to the extent they exist in those files, the prior art references listed in Exhibit A.

Second, please confirm that documents have been collected and produced from the files of Grant Miller. Mr. Nieland's testimony was unclear as to whether Mr. Miller's files were simply not produced as part of the collection of files from the Digital Division, or whether Mr. Miller's files were not collected or produced at all. (Nieland Dep. 54:14-55:3 ("Grant Miller -- actually, no. Grant was not a member of the digital division").) Because Donnelley has designated Mr. Miller as its 30(b)(6) designee for topics 1-5 and 8-11 (Jan. 3, 2007 letter from Festin to Koide), Defendants believe Mr. Miller is likely the custodian of responsive documentation.

Bradford J. Badke, Esq.
January 24, 2007
Page 2

Third, during the 30(b)(6) deposition, Mr. Nieland was unaware of the extent of Donnelley's efforts to collect paper documents from off-site storage facilities. (Nieland Dep. 59:21-60:10.) As suggested by Mr. Nieland (*id.* at 66:23-67:3), please confirm off-site storage facilities were searched for responsive documents. If off-site facilities were not searched, please produce any responsive documents in such off-site storage facilities.

Fourth, as Mr. Nieland indicated during his deposition, Donnelley did not conduct a search of its Intranet or Internet sites for documents responsive to Defendants' requests. (*Id.* at 66:16-20.) Please produce responsive, non-privileged documents resulting from Donnelley's search of its Intranet and Internet sites, or confirm that these sites contain no additional responsive documents.

Fifth, please let me know whether Donnelley preserved metadata while collecting e-mail and electronic files of its employees.

Sixth, does Donnelley intend to search for responsive documents in the possession, custody, or control of Banta Corporation, Perry Judds, and Von Hoffman? If so, when can Defendants expect documents from these companies that are in the process of merging with Donnelley?

Lastly, I would appreciate an update as to when Defendants can expect to receive Donnelley's privilege log.

Please do not hesitate to contact me with questions.

Best regards,

Amy W. Ray

cc:   Richard McMillan, Jr.
      Frederick L. Cottrell III

**Exhibit A**

**List of Requested Prior Art**

| 1 | Bob Neubauer, Ink-jet gets Personal, Print Impress (Jan. 1993) (3 pages). |
|---|---|
| 2 | Continuous scanning. Start right here., Kodak Digital Science (1999) (2 pages). |
| 3 | DPS Internet Website, at www.databasepub.com/bottom.html (Oct. 31, 1998). |
| 4 | DPS Internet Website: Applications, at www.databasepub.com/left.html (Oct. 31, 1998). |
| 5 | History of Kodak: Milestones 1933 to 1979, at http://www.kodak.com/US/en/corp/aboutKodak/kodakHistory/milestones33to79.shtml (pp. 5-6). |
| 6 | Kodak, The Seybold Report on Publishing Systems, p. 26 (Sep. 9, 1996). |
| 7 | Kristin Nelson, Merger mania: Wordperfect mail merge, Pennprintout, vol. 8:5, pp. 1-3 (Feb. 1992). |
| 8 | LED Printing Bids for a Place in EDP/LED Arrays Challenge Laser Printing, Canadian DataSystems (Dec. 1986) (2 pages). |
| 9 | LED v. Laser, Computer Data (Mar. 1987) (1 page). |
| 10 | Output Devices and Systems, The Seybold Report on Publishing Systems, vol. 24:16, pp. 1-4 (Apr. 17, 1995). |
| 11 | Revisions made easy, American Printer (Apr. 1992) (4 pages). |

# EXHIBIT I

**RR DONNELLEY**     

# NEWS RELEASE

## RR Donnelley Completes Purchase of Perry-Judd's Holdings, Inc.

**CHICAGO, Jan. 25 /PRNewswire-FirstCall/ -- R.R. Donnelley & Sons Company (NYSE: RRD)** today announced that it has completed its previously announced purchase of Wisconsin-based Perry-Judd's Holdings, Inc., a privately-owned printer of magazines and catalogs. The $176 million acquisition was announced on December 20, 2006. In connection with the closing of the purchase, Perry- Judd's Holdings, Inc. sent a notice to holders of its 10 5/8% Senior Subordinated Notes due 2007 that those notes would be redeemed on February 28, 2007 at 101% of their principal amount plus accrued interest.

### About RR Donnelley
RR Donnelley (NYSE: RRD) is the world's premier full-service provider of print and related services, including business process outsourcing. Founded more than 140 years ago, the company provides solutions in commercial printing, direct mail, financial printing, print fulfillment, labels, forms, logistics, call centers, transactional print-and-mail, print management, online services, digital photography, color services, and content and database management to customers in the publishing, healthcare, advertising, retail, technology, financial services and many other industries. The largest companies in the world and others rely on RR Donnelley's scale, scope and insight through a comprehensive range of online tools, variable printing services and market-specific solutions. For more information, visit the company's web site at www.rrdonnelley.com.

### Use of Forward-Looking Statements
This news release may contain "forward-looking statements" as defined in the U.S. Private Securities Litigation Reform Act of 1995. Readers are cautioned not to place undue reliance on these forward-looking statements and any such forward-looking statements are qualified in their entirety by reference to the following cautionary statements. All forward-looking statements speak only as of the date of this news release and are based on current expectations and involve a number of assumptions, risks and uncertainties that could cause the actual results to differ materially from such forward-looking statements. Readers are strongly encouraged to read the full cautionary statements contained in RR Donnelley's filings with the SEC. RR Donnelley disclaims any obligation to update or revise any forward-looking statements.

**RR Donnelley Investor Contact:**
Dan Leib
Senior Vice President
Finance
312.326.7710
dan.leib@rrd.com

**RR Donnelley Media Contact:**
Doug Fitzgerald
Executive Vice President
Marketing & Communications
630.322.6830
doug.fitzgerald@rrd.com

# EXHIBIT J

# ROPES & GRAY

ROPES & GRAY LLP

1211 AVENUE OF THE AMERICAS    NEW YORK, NY 10036-8704    212-596-9000    F 212-596-9090
BOSTON    NEW YORK    PALO ALTO    SAN FRANCISCO    WASHINGTON, DC    www.ropesgray.com

Stuart W. Yothers
212-596-9176
Stuart.Yothers@ropesgray.com

March 14, 2007

**BY FACSIMILE**

Amy W. Ray, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Re:    *R. R. Donnelley & Sons, Co. v. Quark, Inc. et al.*
       *D. Del. Civ. No. 06-032 (JJF)*

Dear Amy:

I write in response to your January 24, 2007 letter to Jim Badke.

To the extent that the documents listed in Appendix A of your letter were located, they will be included in R.R. Donnelley's upcoming supplemental production.

Regarding Grant Miller's files, any responsive documents collected from his files have been produced.

Additionally, you inquired about documents that may be kept in off-site storage facilities. Those facilities were checked, and any responsive documents have been produced.

With respect to R.R. Donnelley's Internet and Intranet, any further responsive documents will be produced in the near future.

During the collection of email and electronic files of its employees, R.R. Donnelley did preserve underlying metadata.

Regarding R.R. Donnelley's acquisition of Banta Corporation, Perry Judds, and Von Hoffman, R.R. Donnelley does intend to search for responsive documents once those deals are closed. The Banta Corporation and Perry Judds acquisitions have closed, and we are in the process of coordinating an appropriate search. With respect to Von Hoffman, we will coordinate

ROPES & GRAY LLP

Amy W. Ray, Esq.                    - 2 -                    March 14, 2007

an appropriate search after the transaction is finalized. Until then, no documents of Von Hoffman are in R.R. Donnelley's possession, custody, or control.

       With respect to the privilege log, Plaintiff served Defendants with Plaintiff's First Schedule of Withheld Documents on January 31, 2007 as represented in Patricia Festin's letter to Nathaniel Grow dated December 19, 2006. R.R. Donnelley intends to supplement the schedule of withheld documents when it completes its supplemental production in the near future. R.R. Donnelley reserves the right to supplement or amend its Schedule of Withheld Documents as appropriate.

                  Sincerely yours,

                  Stuart W. Yothers

SWY:

cc:     Jack B. Blumenfeld, Esq.
        Frederick L. Cottrell III Esq.

# EXHIBIT K



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsecord@sidley.com
(312) 853-2206

BEIJING        GENEVA        SAN FRANCISCO
BRUSSELS       HONG KONG     SHANGHAI
CHICAGO        LONDON        SINGAPORE
DALLAS         LOS ANGELES   TOKYO
FRANKFURT      NEW YORK      WASHINGTON, D.C.

FOUNDED 1866

April 3, 2007

**Via Facsimile and U.S. Mail**

Brian M. Koide
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2931 (telephone)
202-628-5116 (facsimile)

     Re:    *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Brian:

        This letter responds to your March 27, 2007 letter and follows up on discovery issues raised in previous correspondence between R.R. Donnelley & Sons Company's ("RRD") former counsel of record, Ropes & Gray LLP, and your firm.

Deposition Scheduling

        We have reviewed the deposition transcript of James Warmus and fail to see why defendants should be entitled to any additional testimony. Defendants already had a full seven hours to depose Mr. Warmus. Defendants cannot take more of Mr. Warmus' time just because they now realize that they did not ask the questions they wished they had. Moreover, defendants certainly were aware at the time of Mr. Warmus' deposition that they would be adding an inequitable conduct defense shortly thereafter.

        Nonetheless, to avoid involving the parties and Court in costly and time intensive motion practice, RRD offers the following compromise. We will agree to allow the continuation of Mr. Warmus' deposition alone, and not the continuation of any of the other inventors, for two additional hours and only on the subject of inequitable conduct. We do not agree to continue Mr. Warmus' deposition for any purpose other than questioning directly related to alleged inequitable conduct.

        On a separate issue, please let us know when defendants will identify 30(b)(6) witnesses for topics covering software and hardware products other than Darwin (including Nextreme DL-100 and DL-1000, Spire, Composer, NexPress, and Versamark) pursuant to the Court's January 2007 order.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3792449v.1


SIDLEY AUSTIN LLP

Letter to Brian M. Koide
April 3, 2007
Page 2

Document Production

      RRD will supplement its document production shortly. Given that Ropes & Gray LLP is still transferring files related to the above-referenced action to Sidley Austin LLP, we cannot give you an exact date by which the supplemental production will occur. Be assured that we will work diligently to produce any supplemental materials.

      We fail to see the relevance, however, of documents from third parties recently acquired by RRD, such as Banta and Perry Judds. Such a request is overly broad, unduly burdensome, and seeks information not relevant to the claims and defenses of any party. Please clarify why defendants believe they are entitled to discover such documents.

      RRD will supplement its privilege log consistent with the Federal Rules of Civil Procedure and applicable local rules. We expect that defendants will do the same.

      Your colleague Mr. Grow stated in his March 16, 2007 letter that defendants are in the process of obtaining additional production materials related to products at issue in this case. Please let us know when those materials will be produced and whether defendants' document production will be complete at that time. In particular, please let us know when defendants intend to complete their production of materials relating to products and hardware at issue besides Darwin (including Nextreme DL-100 and DL-1000, Spire, Composer, NexPress, and Versamark), as required by the Court's January 2007 order. We doubt that the Court will look favorably on defendants taking over three months to comply with his order.

      Regarding the materials defendants have made available for inspection at your office, defendants must make copies of those materials available to RRD pursuant to Fed. R. Civ. P. 34. It appears that defendants are refusing to provide copies of the accused software products. Considering that defendants sell that software and can make copies at will, we do not believe that the Court will look fondly on defendants' refusal to provide copies. In addition, most of the other material held at your office for inspection appears to be owned by Kodak. Thus, there should be no copyright or ownership issues that would preclude the copying of such materials. Finally, the remaining materials relate to alleged prior art. Accordingly, the materials are highly relevant and copies must be made available. Please confirm whether and when we can expect copies of the materials currently available only for inspection.

Defendants' Interrogatory Responses

      Please confirm whether and when defendants intend to supplement their response to RRD's Interrogatory No. 5. Ropes attorney Stuart Yothers wrote your colleague Amy Ray a letter regarding this issue on March 13, 2007. It does not appear that RRD has received a response.

CH1 3792449v.1


SIDLEY AUSTIN LLP

Letter to Brian M. Koide
April 3, 2007
Page 3


     Please also let us know when defendants will supplement their interrogatory responses based upon the Court's January 2007 order requiring defendants to produce information about products and hardware besides Darwin (including Nextreme DL-100 and DL-1000, Spire, Composer, NexPress, and Versamark).

* * *

     Given that RRD has been seeking responses to the issues set forth in this letter for many weeks now, and in light of the Court's procedure for filing motions, we require a response on the pending discovery issues identified in this letter by Wednesday, April 4, 2007. I am available for a discovery conference any time on Wednesday if you prefer to discuss these issues via conference call.

     Sincerely,

     *Jamie L. Secord*

     Jamie L. Secord

CH1 3792449v.1

# EXHIBIT L



Brian M. Koide
202-624-2391
bkoide@crowell.com

April 4, 2007

025140.0000051

**VIA EMAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

      Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

      I write in response to your letter of last night, and to confirm our conversation last night and the conversation that you, Doug Lewis, Nathaniel Grow, and I had this afternoon. As I mentioned, it appears that most of the issues raised in your letter are based on misunderstandings of the prior correspondence, and are no doubt attributable in part to not receiving a full set of files from Ropes & Gray. As I mentioned today, please call us in the future if you need further clarification or appear to be missing a response from us.

### Document Production

      For instance, as I noted in your call today, your letter fails to mention the prior discussions between the parties regarding Banta, Perry Judds, and Von Hoffmann. To reiterate our position, we are merely asking for RRD to comply with Fed. R. Civ. P. 34 and 26(e) by producing responsive documents that are now in RRD's possession, custody, or control, including those that were formerly in the possession of RRD's acquisition targets.[1] As I pointed out, Robert Nieland, RRD's 30(b)(6) designee and an in-house attorney, has already stated on the record that

---

[1] Ltr. from Ray to Yothers of 01/24/07.

Jamie Secord
April 4, 2007
Page 2 of 5

RRD would search for such documents,[2] and RRD further confirmed through Ropes & Gray, its then-current counsel, that the search was in progress as of the middle of March.[3]

In your letter, you conclude that Banta and Perry Judds documents "are not relevant to the claims or defenses of any party," and today Doug Lewis stated on the call that there is no connection between RRD and Banta. We believe that the relevance will become more apparent after your firm has received a complete set of files from Ropes & Gray. For instance, we understand that Banta has been in the variable digital printing field since at least the 1990s, had developed and/or commercialized a variable-digital printing software called DesignMerge, and had ordered a Barco PrintStreamer – a component referenced the patents in suit – around the same time RRD filed the earliest application for the patents in suit.[4] Further, RRD engaged Banta in licensing discussions regarding the patents in suit, and Banta represented that it would investigate how the patents in suit impact Banta's variable print composition systems.[5]

It appears that you have also misunderstood the Defendants' position with respect to prior art software that is being made available for inspection. While we agree that the prior art software will likely be "highly relevant" to this case, we have attempted to preserve the software programs as we have obtained them through public sales channels. We have not, for instance, installed any of the software programs or opened any of the sealed packages. We are also unwilling to have either party unilaterally install the software – by using either an original disk or a copy – in the event that the installation process would modify the installation disk contents or expend a licensing key or code that would prevent the other party from installing the software.

Similarly, the other materials made for inspection include third-party software programs. Defendants do not currently have a license or other permission to make copies of this software, and therefore cannot produce additional copies. As we mentioned in earlier correspondence, we would be willing to discuss procedures for installing this software on a stand-alone computer in our offices, and making that computer available for inspection. Alternatively, we believe that RRD could also obtain its own copies of the prior art and third-party software through

---

[2] Nieland Tr. at 73:22 – 74:5.

[3] Ltr. from Yothers to Ray of 03/14/07.

[4] Esko 00023.

[5] RRD047931-32 and RRD047936-37.

Jamie Secord
April 4, 2007
Page 3 of 5

commercial channels or from the third parties directly.[6]  As we discussed this afternoon, Defendants will supply RRD with a list of these prior art and third-party materials.

Further, there are materials, which as you note, are "owned" by Kodak. Much of this material is older versions of software once – but no longer – produced by Kodak entities.  Therefore, the availability of additional copies of such materials is limited.  As we indicated today, Defendants will provide single copies of these materials to RRD no later than April 9th.

As we explained today, however, it appears that you have misunderstood Defendants' position with regards to the accused software products.  First, Defendants have previously produced copies of the accused software products to RRD.  Defendants sent Ropes & Gray a copy of Darwin on August 31, 2006.[7] Additionally, Spire was sent to Ropes & Gray on March 7, 2007.[8]  Similarly, copies of Nextreme DL-100 and Nextreme DL-1000 were made available for inspection on January 22, 2007.[9]  RRD made no effort to inspect any of the materials made available for inspection until yesterday.

As we mentioned today, it also appears that your files lacked our prior correspondence in which we agreed to provide RRD with a total of three (3) copies of Darwin, DL-100, DL-1000, Spire, and Composer.[10]  On April 9th, RRD will be receiving two (2) additional copies of Spire; three (3) copies of DL-100; three (3) copies of DL-1000; and one (1) copy of Darwin for InDesign.  As we mentioned, we expect to receive an additional two copies of both Darwin for InDesign and Darwin for QuarkXPress from Israel after the Passover holiday.  As we further mentioned today, Defendants will provide Composer to RRD as soon as possible, hopefully next week.   Please be advised that the copies being should only be used for the purposes of this litigation.

---

[6] We respectfully disagree with your assertion that a producing party "must make copies" of materials being made available for inspection under Fed. R. Civ. P. 34. The Defendants have satisfied Rule 34 by making the prior art software available for inspection in their offices.  We would agree to produce copies of the printed software documentation if RRD agrees not to object to authenticity or foundation.

[7] Ltr. from Koide to Badke of 8/31/06.

[8] Ltr. from Ray to Festin of 3/7/07.

[9] Ltr. from Grow to Badke of 1/22/07 (discussing K01114230 and K01114232).

[10] Ltr. from Grow to Yothers of 3/16/07.

Jamie Secord
April 4, 2007
Page 4 of 5

As we mentioned today, Defendants intend to produce all known, responsive documents by April 18, 2007. RRD should be receiving a portion of this supplemental production tomorrow, April 5th, and a second portion by Monday, April 9th. Defendants intend to make an additional supplementation, within approximately two weeks, in conjunction with the supplementation of its privilege log. Defendants will, of course, continue to supplement as required by Rule 26(e).

As we noted, your letter could be read as suggesting that Defendants have not produced any documents relating "to products and hardware at issue besides Darwin." Defendants' previous supplemental productions have contained responsive documents regarding these other products and hardware.

With respect to the timing of RRD's supplemental production — while we appreciate that your firm has still not received all files from Ropes & Gray — several of our follow-up requests have been pending for over six months. For instance, the Defendants first raised their request for the missing prior art of record in September 2006,[11] and later in January 2007.[12] From our conversation of this afternoon, Defendants understand that RRD will be producing all known, responsive documents as soon as possible, but in any event hope to produce the documents by April 18, 2007.

## Deposition Scheduling

Today and yesterday we discussed the possible compromise of Defendants' request for additional deposition testimony from Mr. Warmus. I understand RRD would agree to produce Mr. Warmus for an additional two hours of deposition testimony, and that such examination would not be limited to the subject matter of inequitable conduct. We understand that RRD is only willing to make this offer if the Defendants agree to not take additional deposition testimony from Messrs. Dreyer, Beery, and Shiveley. We will get back to with our position.

As we pointed out in today's conversation, Defendants have previously agreed to provide 30(b)(6) witnesses for both the Versamark and Nexpress business units, in addition to the Creo business unit. The 30(b)(6) objections that you were referring to during today's call were amended accordingly on March 8, 2007, and copies of the amended objections were served to both Morris, Nichols, Arsht & Tunnell, as well as Ropes & Gray on that date.

---

[11] Ltr. from Koide to Badke of 9/19/06.

[12] Ltr. from Ray to Badke of 1/24/07.

Jamie Secord
April 4, 2007
Page 5 of 5

Moreover, Defendants previously offered to make John Desautels available for a 30(b)(6) deposition on his designated topic in late-March, but RRD did not respond to this offer. To initiate scheduling discussion between the parties, however, Defendants provide the following preliminary list of Kodak 30(b)(6) designees. Kodak reserves the right to change its designations, although it believes the below table to be an accurate list.

| Topic | Defendants' Designees |
|-------|-----------------------|
| 1 | Ron Peleg, Roger D. Parrett, John Desautels, William Sullivan |
| 2 | Tim Donahue |
| 4 | Ron Peleg, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 5 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 6 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 7 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Schweinfurth |
| 8 | Gershon Alon, Benny Shimshoni, John Desautels, John Peck |
| 9 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Schweinfurth |

Please let us know when you are ready to discuss scheduling of these witnesses.

## Defendants' Interrogatory Responses

On March 14, Amy Ray responded to Stuart Yothers' March 13 letter. As discussed during this afternoon's call, Defendants intend to serve supplemental interrogatory responses by April 13, 2007.

Best regards,

Brian M. Koide

cc:    Richard McMillan, Jr.
       Fredrick L. Cottrell III

# EXHIBIT M



**1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116**

Nathaniel Grow
202-624-2709
ngrow@crowell.com

April 13, 2007

025140.0000051

**VIA FACSIMILE**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in response to your April 9, 2007 letter to Brian Koide. I will address your points in turn.

## Document Production

Defendants produced accused software products for inspection and copying back in January, and RRD did nothing to inspect the software for nearly three months. Had RRD inspected these materials back in January, we would have made any reasonable accommodations – as we are today – to make them operable. We therefore disagree with your contentions regarding late production, but note in any event that the matter is now resolved.

With regards to FusionPro, Defendants produced a copy of FusionPro software in its supplemental production of April 6, 2007. *See* K01866764. Defendants have previously produced related, responsive documents, and will continue to do so to the extent additional documents are located. Defendants anticipate that all known, responsive documents will be produced by April 18, 2007. We are not prepared, however, to produce all "successor products", inasmuch as that seems overly broad and undefined.

With respect to RRD's production of Banta and Perry Judds documents, Defendants continue to believe the files of both companies are likely to contain responsive, relevant documents. As noted in Brian Koide's letter of April 4th, there

Jamie Secord
April 13, 2007
Page 2

are a number of reasons to believe that Banta is in possession of highly relevant documents, ranging from Banta's invalidity analysis regarding the patents in suit, to Banta's possible prior art variable data printing software system, DesignMerge. Nor do Defendants believe that our requests are unnecessarily burdensome. Indeed, to put the matter in context, Defendants have produced well over 1 million pages of documents at considerable expense, from business units located both domestically and abroad.  RRD's production is somewhere in the neighborhood of 50,000 pages.  RRD's current claims of burden thus ring a bit hollow.

However, in the interest of compromise, Defendants are willing to forego production of documents from Perry Judds at this time, if RRD agrees to produce all responsive documents in the possession of Banta.  This proposal is without prejudice to Defendants' right to revisit the issue of production of Perry Judds document, should future developments in the litigation warrant.

## Deposition of Mr. Warmus

Defendants will agree to the following regarding the resumption of Mr. Warmus' deposition.  Defendants will limit the continuation of the deposition to an additional two hours.  Defendants will be free to examine Mr. Warmus regarding any relevant subject areas, provided however that Defendants will agree not to ask questions that are merely repetitive of the earlier examination.  Defendants further agree not to seek additional deposition testimony from Messrs. Dreyer, Beery, and Shively, except upon leave of court for good cause shown based upon newly produced or discovered information.

## Work Product of Expert Witnesses

As you requested, we attach our initial proposal regarding the discoverability of expert witness work product with RRD.  The parties have currently only agreed to paragraph 2 of the draft agreement.  *See* Ltr. from Badke to Koide of 11/8/06.

Best regards,

Nathaniel Grow

Enclosure

cc:    Richard McMillan, Jr.
      Brian M. Koide
      Fredrick L. Cottrell III

# EXHIBIT N



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**Nathaniel Grow**
**202-624-2709**
**ngrow@crowell.com**

April 24, 2007

025140.0000051

**VIA FACSIMILE**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in response to your April 19, 2007 letter, as well as Benedict Frey's letter of April 17, 2007.  I will address your points in turn.

### Document Production

*Defendants' Document Production*

Defendants have recently discovered a limited number of additional responsive documents.  Defendants are currently processing these documents, and will produce them to RRD as soon as possible.  Defendants anticipate that they will be produced to RRD by Monday, April 30th, barring any unforeseen processing issues.

As indicated in earlier correspondence, RRD should have received three (3) copies of Composer on Monday morning.  Please let me know if the shipment did not arrive.

Regarding activation codes for the previously produced copy of Darwin Pro for QuarkXPress, Defendants believe that RRD is in possession of everything necessary to install the software.  In order to assist you, please describe the technical difficulties RRD is experiencing.

Jamie Secord
April 24, 2007
Page 2

*RRD's Document Production*

With respect to RRD's production of Banta and Perry Judds documents, Defendants understand that RRD completed its acquisition of both Banta and Perry Judds several months ago.[1]  We are thus somewhat puzzled by your continued reference to both Banta and Perry Judds as "third parties".  If this is not accurate, please clarify accordingly.  For this reason, Defendants do not believe any narrowing of its document requests is necessary; RRD is now in possession, custody, and/or control of documents formerly belonging to Banta and Perry Judds, and must produce all responsive documents.  Notably, both RRD's former counsel and its in-house attorney serving as RRD's 30(b)(6) witness on the topic of document production have previously agreed.[2]  Moreover, RRD has failed to cite any case law to the contrary.

Nevertheless, in the continued interest of compromise, Defendants have offered to forego production of documents formerly in the possession of Perry Judds, on the condition that RRD agree to produce documents formerly in the possession, custody, or control of Banta.  Defendants will further agree that RRD need only produce documents formerly in the possession, custody, or control of Banta which are responsive to requests for production 1-6, 8-9, 14-31, 33, 37-39, 41-46, and 49.

**Deposition of Mr. Warmus**

This serves as confirmation that the parties have agreed to resume Mr. Warmus' deposition for an additional two hours, regarding any relevant subject areas.  Defendants will not seek additional deposition testimony from Messrs. Dreyer, Beery, and Shively, except upon leave of court for good cause shown based upon newly produced or discovered information.  Please let us know when Mr. Warmus is available for the resumed deposition.

---

[1] *See* Press Releases, R.R. Donnelley & Sons Co., "R.R. Donnelley Completes Purchase of Banta Corporation" (Jan. 9, 2007) (http://www.banta.com/wwwRRD/News/ 2007/2007_01_09.asp) and "RR Donnelley Completes Purchase of Perry-Judd's Holdings, Inc." (Jan. 25, 2007) (http://www.banta.com/wwwRRD/News/ 2007/2007_01_25.asp).

[2] *See* Ltr. from Koide to Secord of April 4, 2007.

Jamie Secord
April 24, 2007
Page 3

## Work Product of Expert Witnesses

In follow-up to our conversation of Monday morning, and your letter from Monday afternoon, Defendants agree to your counter-proposal regarding the discoverability of expert witness work product. Once you have obtained final approval from your client, please send Defendants a written agreement to sign.

## RRD's Recall of Documents

Finally, Defendants are still awaiting clarification of the issues raised in my letter to you of April 3, 2007, regarding allegedly privileged documents that you said had been inadvertently produced. Given your silence, Defendants assume that you no longer wish to recall the documents at issue. If this is not the case, please promptly notify Defendants of the factual basis for RRD's assertion of privilege, and confirm that notice was provided to Defendants within 10 days of the date the inadvertent disclosure was discovered.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.
       Brian M. Koide
       Fredrick L. Cottrell III

# EXHIBIT O



SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

apuri@sidley.com
(212) 839-5852

| BEIJING | GENEVA | SAN FRANCISCO |
| BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO | LONDON | SINGAPORE |
| DALLAS | LOS ANGELES | TOKYO |
| FRANKFURT | NEW YORK | WASHINGTON, D.C. |

FOUNDED 1866

May 1, 2007

**Via Fax and U.S. Mail**

Mr. Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

     Re:    *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

     I write in response to your April 24, 2007 letter to address the outstanding document production issues and to confirm our agreement with regard to the time limit of Mr. Warmus's deposition. I also write to formalize our agreement concerning the discovery of work product of the expert witnesses.

**Document Production**

     You stated that Defendants expected to produce additional documents by Monday, April 30, 2007. Please confirm whether this production will be Defendants' last production, with the exception of course of any deficiencies R.R. Donnelley & Sons Company may identify in Defendants' production.

     In your April 24 letter, you propose to forego production of documents from Perry Judds, provided that R.R. Donnelley agrees to produce documents from Banta's files. As we have previously stated, given that you have not been able to identify any potential connection between Perry Judds and the subject matter of the present litigation, and our preliminary investigation shows no connection, we do not believe Defendants have any reasonable basis to pursue the production of documents from Perry Judds.

     Despite R.R. Donnelley's willingness to reach compromises with Defendants to avoid costly and time intensive motion practice, Defendants seem unwilling to do so themselves. They still seek documents from a third party only recently acquired by R.R. Donnelley related to nearly 40 separate document requests. Many of these requests are wholly inapplicable and/or unreasonable as they relate to Banta. For example, you seek discovery from Banta of materials published by the inventors, when in fact none of the inventors were Banta employees. *See* Request No. 8. Moreover, you seek broad discovery concerning the Patents in Suit from Banta

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

# SIDLEY
SIDLEY AUSTIN LLP

Nathaniel Grow
May 1, 2007
Page 2

(including the commercialization of the patents, and all printed publications and seminars concerning the patents), when in fact Banta never owned the patents. *See, e.g.*, Request Nos. 14-21. You also seek discovery from Banta concerning the claims asserted by R.R. Donnelley in its Complaint, when in fact Banta had no involvement in the filing of the Complaint. *See, e.g.*, Request Nos. 22-25. Nevertheless, Plaintiff is willing to undertake a search of documents relating to Design Merge; the Barco PrintStreamer; and any licensing discussions between Banta and R.R. Donnelley, as you requested in your April 4, 2007 letter. Our offer, however, is a compromise and is only available if Defendants agree to seek no more documents from Banta.

## Deposition of Mr. Warmus

As we have previously stated, Defendants have already had a full seven hours to depose Mr. Warmus. Defendants are therefore not entitled to any additional time to depose him under the applicable rules. In the spirit of compromise, however, and to avoid costly and time intensive motion practice before the Court, R.R. Donnelley has tried to reach an agreement to allow Defendants an additional two hours to depose Mr. Warmus. That compromise was expressly contingent upon Defendants' agreement not to seek additional deposition time from any of the other inventors or additional time beyond the extra two hours from Mr. Warmus, except upon leave of court and for good cause shown based upon newly produced or discovered information.

In your April 24 letter, in restating the alleged agreement between the parties on this issue, you neglected to include language stating that Defendants would not seek additional time with Mr. Warmus beyond the extra two hours, except upon leave of court and for good cause shown based upon newly produced or discovered information. To date, we have received no confirmation from Defendants that they will not seek additional time with Mr. Warmus beyond the additional two hours. Please confirm whether Defendants agree with the compromise as previously set forth in our correspondence. *See, e.g.*, April 19, 2007 Ltr. from Secord to Grow, at 2.

## Work Product of Expert Witnesses

We appreciate Defendants' acceptance of the expert work product agreement that we proposed on April 23, 2007. Our client has authorized approval of the agreement. Accordingly, subject to the exception in the next sentence, the Plaintiff and Defendants in the above-referenced action herein agree that, notwithstanding any provisions of the Federal Rules or Civil Procedure or the Local Rules of the District of Delaware, the parties in this action will not seek discovery of written or electronic versions of: (1) draft expert reports, (2) experts' notes, or (3) communications or correspondence between experts and counsel. The exception to this agreement is that, in the event that an expert is relying on a fact or document provided to him or


SIDLEY AUSTIN LLP

Nathaniel Grow
May 1, 2007
Page 3

her by counsel in expressing his or her opinions or in giving testimony, the fact or document upon which the expert is relying shall be discoverable.

     Please countersign your agreement below and return a copy to me.

                    Sincerely,

                    Asheesh P. Puri


Countersignature For Agreement Regarding Discoverability of Experts Witnesses' Work Product



_____    _____

Nathaniel Grow               Date


CH1 3855316v.1

# EXHIBIT P



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
NGrow@crowell.com

May 10, 2007

3477:ng
025140.0000051

**VIA FACSIMILE AND FEDERAL EXPRESS**

Asheesh P. Puri, Esquire
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

Re:     *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
        Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
        JJF)

Dear Asheesh:

        We wish to respond to the issues raised in your May 1st letter.

**Document Production**

        Defendants have recently identified a single additional responsive document
which is currently being processed for production.  Defendants hope to produce this
document to RRD by May 18.  Defendants have not identified any other responsive
documents that have yet to be produced to RRD.

        Defendants cannot agree to your current proposal regarding the production of
Banta documents.  The topics to which RRD would limit production – DesignMerge,
Barco Print Streamer, and RRD-Banta licensing discussions – were merely
identified by us as exemplary topics based on publicly-available information and
prior discovery in this case.  Defendants cannot fully catalog every topic that might
implicate Banta documents because – as you no doubt appreciate – such documents
(and knowledge) are in the possession, custody, and/or control of RRD, not
Defendants.  Indeed, the logic of your proposal turns the discovery process on its
head.  In essence, you are asking us to "guess" what type of Banta documents RRD
might have in its possession, custody, or control, and then only produce what we
have identified.  To raise one simple example, we now understand that Banta
Integrated Media had – in addition to DesignMerge – also developed a second
variable digital printing application called "PageForm" and had offered database-

driven printing services.  Documents relating to PageForm would clearly be responsive, but RRD would not be obligated to produce under your proposal.

Despite RRD's clear duty to produce these documents, Defendants have not only offered to forego the production of documents formerly in the possession of Perry Judds, but have further offered to cut by 20% the number of document requests for which RRD must produce responsive documents formerly in the possession of Banta.  *See* Ltr. from Grow to Secord of April 24.  Nevertheless, Defendants will propose to forego the production of documents from Perry Judds, so long as RRD agrees to produce all documents formerly in the possession of Banta (or any of its affiliates including, but not limited to, Banta Integrated Media) responsive to requests 1-6, 9, 14-21, 26-31, 33, 39, 41, 46, and 49, from Defendants' First Set of Requests for Production.  This proposal further reduces any alleged burden to RRD by an additional 11 requests, and in total eliminates nearly 45% of the requests in Defendants' First Set of Requests for Production.  However, this proposal is offered only in an attempt to reach a compromise.  If forced to seek court intervention, Defendants will seek all responsive documents in RRD's possession, custody, or control, including former Banta and Perry Judds documents.

## Deposition of Mr. Warmus

Defendants agreed to RRD's counter-proposal regarding the continued deposition of Mr. Warmus.  In exchange for the continuation of Mr. Warmus' deposition for an additional two hours, Defendants agree to only seek additional deposition testimony from Messrs. Warmus, Dreyer, Beery, and Shively, upon leave of court for good cause shown based upon newly produced or discovered information.  Please let us know when Mr. Warmus is available for the resumed deposition.

## Work Product of Expert Witnesses

A signed copy of the parties' agreement is attached.

Best regards,

Nathaniel Grow

Enclosure

cc:    Richard McMillan, Jr.

# EXHIBIT Q

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-032-JJF |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| EASTMAN KODAK COMPANY, | ) ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Counterclaim-Defendant. | ) ) ) ) | |

**R.R. DONNELLEY & SONS COMPANY'S RESPONSES TO DEFENDANTS CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS (NOS. 50-67)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby responds to Defendants Creo,

Inc.'s, Nexpress Solutions, Inc.'s, Kodak Versamark, Inc.'s, Eastman Kodak Company's, and

Kodak Graphic Communications Company's (collectively, "Defendants") Second Set of Requests for Production of Documents and Things as follows:

## GENERAL OBJECTIONS

Each of R.R. Donnelley's responses to Defendants' Second Set of Requests for the Production of Documents and Things is subject to, and incorporates, the following General Objections. R.R. Donnelley incorporates each of these General Objections into its specific responses to each of Defendants' Requests, whether or not each such General Objection is expressly referred to in a specific response. R.R. Donnelley's responses are made without waiving any applicable Specific or General objections to a Request.

1.     R.R. Donnelley incorporates by reference the General Objections set forth in its responses to Defendants' First Set of Requests for Production of Documents and Things Directed to Plaintiff.

2.     R.R. Donnelley objects to the Requests, including the Definitions and Instructions therein, on the ground and to the extent that they purport to impose obligations beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable law. R.R. Donnelley will construe and respond to the Requests only in a manner consistent with the Federal Rules of Civil Procedure, the Local Rules, and other applicable law.

3.     R.R. Donnelley objects to the Requests on the ground and to the extent that they purport to seek discovery of documents or things protected from disclosure by a privilege or immunity, including without limitation the attorney-client privilege, the work-product doctrine, and the Federal Rules of Civil Procedure. R.R. Donnelley hereby asserts all such applicable privileges and protections, and excludes privileged and protected documents or

things. Any disclosure of such privileged or protected documents or things is inadvertent and is not intended to waive those privileges or protections.

4.      R.R. Donnelley objects to the Requests to the extent they seek documents or things that R.R. Donnelley is not permitted to disclose pursuant to confidentiality obligations or agreements with third parties.

5.      R.R. Donnelley objects to the Requests to the extent that they seek to compel R.R. Donnelley to generate or create documents or things that do not exist, are not used, or are not generated by R.R. Donnelley in the ordinary course of business.

6.      R.R. Donnelley objects to the Requests to the extent that they seek discovery of documents or things about ongoing research and development activities of R.R. Donnelley that have not yet been commercialized.

7.      R.R. Donnelley objects to the Requests to the extent they seek documents or things that are publicly available, are as readily available to Kodak as they are to R.R. Donnelley, or are already in Kodak's possession, custody, or control.

8.      R.R. Donnelley objects to the Requests as vague, ambiguous, and overly broad in scope to the extent the Requests contain no time limitations.

9.      R.R. Donnelley objects to the Requests as vague, ambiguous, unduly burdensome, overly broad in scope, not relevant to the claims or defenses of the parties in this action and not reasonably calculated to lead to the discovery of admissible evidence.

10.     R.R. Donnelley's discovery and investigation of the facts relevant to the subject matter of this action are ongoing. R.R. Donnelley's responses are based upon documents or things presently available to and located by R.R. Donnelley and their attorneys, and are without prejudice to R.R. Donnelley's right to produce evidence of any additional facts.

Accordingly, R.R. Donnelley reserves the right to supplement and/or amend these responses when its discovery and investigations are complete.

        11.    R.R. Donnelley expressly reserves the right to supplement these responses under Fed. R. Civ. P. 26(e)(2) as necessary when discovery has further progressed.

        12.    R.R. Donnelley objects to Defendants' Definition A as vague and overly broad to the extent that it includes any corporation, business, or entity other than the named R.R. Donnelley in this action.

        13.    R.R. Donnelley objects to Defendants' Instruction P as unduly burdensome and oppressive to the extent it seeks to impose any requirement or obligation on R.R. Donnelley beyond the requirements set forth in the Federal Rules of Civil Procedure, the Local Rules, or this Court's Scheduling Order in this action.

        14.    R.R. Donnelley objects to Defendants' Definition Z as vague and overly broad to the extent that it includes any corporation, business, or entity other than Barco Graphics N.V. and Xeikon N.V.

        15.    R.R. Donnelley objects to Defendants' Definition CC as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.  In particular, R.R. Donnelley objects to Defendants' Definition CC insofar as it incorporates Defendants' Interrogatory Nos. 21-22, which seek information related to lost profits.  As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at this time R.R. Donnelley does not intend to seek damages based on lost profits. R.R. Donnelley further objects to Defendants' Definition CC as overly broad, unduly burdensome, and seeking information that is not relevant to the

claims or defenses of the Parties in this action or the subject matter of this action and not

reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks

information regarding *"any activity, apparatus, process, product, device, method, act,*

*technology, platform, solution, or service"* that falls within the claims of the Patents in Suit.

R.R. Donnelley will define "Covered Lines of Business" to mean only R.R. Donnelley's

activities, apparatuses, processes, products, devices, methods, acts, technologies, platforms,

solutions, or services that fall within the claims of the Patents in Suit.

16.    R.R. Donnelley objects to Defendants' Definition DD as vague and overly

broad to the extent that it includes any corporation, business, or entity other than the named

Defendants in this action.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

### REQUEST FOR PRODUCTION 50

All documents regarding the settlement, resolution, or conclusion of the Barco
Suit.

### RESPONSE TO REQUEST NO. 50:

R.R. Donnelley hereby incorporates by reference the foregoing General

Objections and Objections to Definitions and Instructions as though fully set forth herein.

R.R. Donnelley objects to this Request as seeking information that is neither relevant to the

claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery

of admissible evidence.  R.R. Donnelley objects to this Request as overly broad and unduly

burdensome insofar as it seeks *"all documents* regarding the settlement, resolution, or conclusion

of the Barco Suit."  R.R. Donnelley also objects to this Request as overly broad and unduly

burdensome because there is no reasonable time frame limitation.  R.R. Donnelley further

objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show the settlement, resolution, or conclusion of the Barco Suit to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 51

All communications between any Barco-Xeikon Entity and RRD, including any communication received by or sent from counsel for any Barco-Xeikon Entity or RRD, regarding the inventorship, validity, invalidity, enforceability, unenforceability, ownership, conception, or reduction to practice of the Patents in Suit and/or U.S. Patent No. 5,963,968, and all documents that reference, discuss, consider, analyze, investigate, or examine any such communication.

## RESPONSE TO REQUEST NO. 51:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks *"all communications* between any Barco-Xeikon Entity and RRD," regardless of the subject matter or time period of such communications. R.R. Donnelley also objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

6

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged communications between R.R. Donnelley and Barco Graphics N.V. or Xeikon N.V. regarding the inventorship, validity, alleged invalidity, enforceability, alleged unenforceability, ownership, conception, or reduction to practice of the Patents in Suit and/or U.S. Patent No. 5,963,968, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 52

All draft or final agreements between RRD and any Barco-Xeikon Entity concerning (a) any Barco-Xeikon Component, (b) the Patents in Suit, or (c) the Barco Suit, including but not limited to all draft or final agreements identified by RRD when responding to Interrogatory No. 11 in the Defendants' Second Set of Interrogatories.

## RESPONSE TO REQUEST NO. 52:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley also hereby incorporates by reference the General Objections to Defendants' Second Set of Interrogatories, Objections to Definitions and Instructions to Defendants' Second Set of Interrogatories, and Specific Objections to Defendants' Second Set of Interrogatories as though fully set forth herein.

R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*all draft or final agreements* between RRD and any Barco-Xeikon Entity" regarding any Barco-Xeikon Component, the Patents in Suit, or the Barco Suit. R.R. Donnelley also objects to this Request as overly broad and unduly burdensome

7

because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged draft or final agreements between R.R. Donnelley and Barco Graphics N.V. or Xeikon N.V. regarding the subject matter of the Patents in Suit, the Patents in Suit, or the Barco Suit, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 53

All strategic, business, competitive, or marketing plans, reports, studies, summaries, analyses, or presentations which discuss, analyze, address, or mention any Covered Lines of Business for which RRD is claiming lost profits.

## RESPONSE TO REQUEST NO. 53:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll strategic, business, competitive, or marketing plans, reports, studies, summaries, analyses, or presentations*" regarding "any Covered Lines of Business for which RRD is claiming lost profits." R.R. Donnelley also objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of

8

documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

R.R. Donnelley further objects to this Request as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks information related to lost profits. As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at this time R.R. Donnelley does not intend to seek damages based on lost profits.

## REQUEST FOR PRODUCTION 54

Documents that summarize, memorialize, describe, outline, or define RRD's patent licensing practices, policies, and procedures, whether formal or informal, including documents identified by RRD when responding to Interrogatory No. 11 in the Defendants' Second Set of Interrogatories.

## RESPONSE TO REQUEST NO. 54:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley also hereby incorporates by reference the General Objections to Defendants' Second Set of Interrogatories, Objections to Definitions and Instructions to Defendants' Second Set of Interrogatories, and Specific Objections to Defendants' Second Set of Interrogatories as though fully set forth herein.

R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley also objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of

9

documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents that summarize, memorialize, describe, outline, or define R.R. Donnelley's licensing practices, policies, and procedures relating to the Patents in Suit from 2000 to present, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

**REQUEST FOR PRODUCTION 55**

Documents most closely and accurately showing RRD's revenues, costs, and profits on a monthly, quarterly, and annual basis generated by or resulting from any Covered Lines of Business since 2000.

**RESPONSE TO REQUEST NO. 55:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

R.R. Donnelley further objects to this Request as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks information related to lost profits.

10

As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at

this time R.R. Donnelley does not intend to seek damages based on lost profits.

## REQUEST FOR PRODUCTION 56

All draft or final agreements, and any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements, between (i) RRD and (ii) any Kodak Entity regarding the use of any of the following software products: Begin, Composer, Darwin, DijiComp, DL-100, DL-1000, FormsMerge, FusionPro, KEEPs, or Mailscape.

## RESPONSE TO REQUEST NO. 56:

R.R. Donnelley hereby incorporates by reference the foregoing General

Objections and Objections to Definitions and Instructions as though fully set forth herein.

R.R. Donnelley objects to this Request as seeking information that is neither relevant to the

claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery

of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly

burdensome insofar as it seeks "*[a]ll draft or final agreements, and any documents or notes*

*reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such*

*agreements*" between R.R. Donnelley and "any Kodak Entity" related to the enumerated

products, regardless of the subject matter or time period of such agreements, documents, or

notes. R.R. Donnelley objects to this Request as overly broad and unduly burdensome because

there is no reasonable time frame limitation. R.R. Donnelley also objects to this Request

because it seeks information that is as readily available to Kodak to Defendants as it is to

R.R. Donnelley, or that is already in Kodak's possession, custody, or control. R.R. Donnelley

further objects to this Request to the extent it requires the production of documents that are

immune from discovery under the attorney-client privilege and/or work product immunity.

11

**REQUEST FOR PRODUCTION 57**

All plans, reports, studies, summaries, analyses, or presentations discussing, considering, or reporting the prices charged by RRD, or any factors affecting the determination of the prices charged, for any Covered Lines of Business.

**RESPONSE TO REQUEST NO. 57:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll plans, reports, studies, summaries, analyses, or presentations* discussing, considering, or reporting the prices charged by RRD, or any factors affecting the determination of the prices charged, for any Covered Lines of Business." R.R. Donnelley objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

R.R. Donnelley further objects to this Request as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks information related to lost profits. As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at this time R.R. Donnelley does not intend to seek damages based on lost profits.

**REQUEST FOR PRODUCTION 58**

For each calendar year from 2000 to present, documents most closely and accurately showing both (i) the number of print jobs, orders or contracts processed, serviced or completed by RRD in any Covered Lines of Business (including, if available, both the total number of pages printed and the total number of orders, contracts or jobs processed or completed), and (ii) the total number of all print jobs, orders, or contracts processed, serviced or completed by RRD on digital presses (including, if available, both the total number of pages printed and the total number of orders, contracts or jobs processed, serviced or completed).

**RESPONSE TO REQUEST NO. 58:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

R.R. Donnelley further objects to this Request as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks information related to lost profits. As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at this time R.R. Donnelley does not intend to seek damages based on lost profits.

**REQUEST FOR PRODUCTION 59**

All documents demonstrating, discussing, summarizing, analyzing, reporting, or referring to any competition for all Covered Lines of Business, including but not limited to lost jobs, contracts, or revenue.

**RESPONSE TO REQUEST NO. 59:**

        R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents* demonstrating, discussing, summarizing, analyzing, reporting, or referring to any competition for all Covered Lines of Business." R.R. Donnelley objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

        R.R. Donnelley further objects to this Request as overly broad, unduly burdensome, and seeking information that is not relevant to the claims or defenses of the Parties in this action or the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks information related to lost profits. As indicated in the May 17, 2007 letter from R.R. Donnelley's counsel to Kodak's counsel, at this time R.R. Donnelley does not intend to seek damages based on lost profits.

**REQUEST FOR PRODUCTION 60**

        All documents that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit, including all documents that refer to any such consideration, analysis, examination, investigation, or allegation.

**RESPONSE TO REQUEST NO. 60:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents* that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit." R.R. Donnelley objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. R.R. Donnelley also objects to this Request to the extent it calls for confidential information of third parties that cannot be disclosed by R.R. Donnelley because of contractual obligation. R.R. Donnelley further objects to this request insofar as it calls for the production of documents tendered in confidentiality under the terms of the Protective Order in the Tesseron Suit. The Protective Order in the Tesseron Suit prohibits the production outside the Tesseron Suit of documents marked confidential.

R.R. Donnelley further objects to this Request as premature insofar as discovery only recently commenced in the Tesseron Suit and R.R. Donnelley's investigation and analysis of prior art is ongoing. Subject to and without waiving its General and Specific Objections, and subject to the Protective Order in the Tesseron Suit, R.R. Donnelley will produce responsive, non-privileged documents reflecting prior art that R.R. Donnelley produces or identifies to Tesseron in the Tesseron Suit after R.R. Donnelley produces or identifies such prior art in the Tesseron Suit, to the extent such documents have not already been produced in the present litigation and are located through a reasonable search.

15

**REQUEST FOR PRODUCTION 61**

All documents that are alleged by any party to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit.

**RESPONSE TO REQUEST NO. 61:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad, unduly burdensome, and seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents* that are alleged by any party to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit." R.R. Donnelley objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. R.R. Donnelley also objects to this Request to the extent it calls for confidential information of third parties that cannot be disclosed by R.R. Donnelley because of contractual obligation. R.R. Donnelley further objects to this request insofar as it calls for the production of documents tendered in confidentiality under the terms of the Protective Order in the Tesseron Suit. The Protective Order in the Tesseron Suit prohibits the production outside the Tesseron Suit of documents marked confidential.

R.R. Donnelley further objects to this Request as premature insofar as discovery only recently commenced in the Tesseron Suit and R.R. Donnelley's investigation and analysis of Tesseron's claim for damages is ongoing. Subject to and without waiving its General and Specific Objections, and subject to the Protective Order in the Tesseron Suit, R.R. Donnelley will produce responsive, non-privileged documents supporting R.R. Donnelley's refutation of

Tesseron's damages claim after R.R. Donnelley produces such information in the Tesseron Suit, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 62

All documents and things related to any communication between RRD and any Kodak Entity regarding the Patents in Suit.

## RESPONSE TO REQUEST NO. 62:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents and things* related to *any communication* between RRD and any Kodak Entity regarding the Patents in Suit.*" R.R. Donnelley objects to this Request as overly broad and unduly burdensome because there is no reasonable time frame limitation. R.R. Donnelley also objects to this Request because it seeks information that is as readily available to Kodak to Defendants as it is to R.R. Donnelley, or that is already in Kodak's possession, custody, or control. R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged communications between R.R. Donnelley and the named Defendants regarding the Patents in Suit from 2000 to present to

the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 63

All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product.

## RESPONSE TO REQUEST NO. 63:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as seeking information that is neither relevant to the claims, counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product.*" R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. R.R. Donnelley further objects to Defendants' Definition of "RRD" as vague and overly broad to the extent that it includes any corporation, business, or entity other than the named R.R. Donnelley in this action and to the extent that it includes every individual employed by R.R. Donnelley regardless of his or her job or responsibilities with respect to investigating infringement of R.R. Donnelley patents.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show earliest knowledge of the operation of any Accused Software Product by any R.R. Donnelley employee whose job or responsibilities included investigating infringement of R.R. Donnelley patents, to

the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 64

All documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product.

## RESPONSE TO REQUEST NO. 64:

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents and things* that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product." R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity. R.R. Donnelley further objects to Defendants' Definition of "RRD" as vague and overly broad to the extent that it includes any corporation, business, or entity other than the named R.R. Donnelley in this action and to the extent that it includes every individual employed by R.R. Donnelley regardless of his or her job or responsibilities with respect to investigating infringement of R.R. Donnelley patents.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show earliest knowledge of the operation of any Accused Software Product by any R.R. Donnelley employee whose job or responsibilities included investigating infringement of R.R. Donnelley patents, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

19

**REQUEST FOR PRODUCTION 65**

All documents and things concerning RRD providing actual notice of the Patents in Suit to any Kodak Entity.

**RESPONSE TO REQUEST NO. 65:**

R.R. Donnelley also objects to this Request because it seeks information that is as readily available to Kodak to Defendants as it is to R.R. Donnelley, or that is already in Kodak's possession, custody, or control. Subject to and without waiving its General or Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents reflecting R.R. Donnelley's actual notice of the Patents in Suit to the named Defendants to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

**REQUEST FOR PRODUCTION 66**

All documents discussing, describing, estimating, analyzing, computing, or otherwise reporting the value or estimated value of the Patents in Suit.

**RESPONSE TO REQUEST NO. 66:**

R.R. Donnelley hereby incorporates by reference the foregoing General Objections and Objections to Definitions and Instructions as though fully set forth herein. R.R. Donnelley objects to this Request as overly broad and unduly burdensome insofar as it seeks "[a]ll documents discussing, describing, estimating, analyzing, computing, or otherwise reporting the value or estimated value of the Patents in Suit." R.R. Donnelley further objects to this Request to the extent it requires the production of documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show the value

or estimated value of the Patents in Suit, to the extent such documents exist, have not already

been produced in the present litigation, and are located through a reasonable search.

## REQUEST FOR PRODUCTION 67

All documents and things that refer to the subject matter of, or the identification of which is sought by, the Defendants' Second Set of Interrogatories (Nos. 11-20), or Third Set of Interrogatories (Nos. 21-23), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted or upon which RRD relied, in framing, compiling or preparing its responses.

## RESPONSE TO REQUEST NO. 67:

R.R. Donnelley hereby incorporates by reference the foregoing General

Objections and Objections to Definitions and Instructions as though fully set forth herein.

R.R. Donnelley also hereby incorporates by reference the General Objections to Defendants'

Second Set of Interrogatories, Objections to Definitions and Instructions to Defendants' Second

Set of Interrogatories, Specific Objections to Defendants' Second Set of Interrogatories, General

Objections to Defendants' Third Set of Interrogatories, Objections to Definitions and Instructions

to Defendants' Third Set of Interrogatories, and Specific Objections to Defendants' Third Set of

Interrogatories as though fully set forth herein.

R.R. Donnelley objects to this Request as vague, ambiguous, and seeking

information that is neither relevant to the claims, counterclaims, or defenses in the action nor

reasonably calculated to lead to the discovery of admissible evidence. R.R. Donnelley objects to

this Request as overly broad and unduly burdensome insofar as it seeks "*[a]ll documents and*

*things* that refer to the subject matter of, or the identification of which is sought by, the

Defendants' Second Set of Interrogatories (Nos. 11-20), or Third Set of Interrogatories (Nos. 21-

23)." R.R. Donnelley further objects to this Request to the extent it requires the production of

documents that are immune from discovery under the attorney-client privilege and/or work product immunity.

Subject to and without waiving its General and Specific Objections, R.R. Donnelley will produce responsive, non-privileged documents identified or referred to in its responses to Defendants' Second Set of Interrogatories (Nos. 11-20) or Third Set of Interrogatories (Nos. 21-23) to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036

June 21, 2007

867152.1

22

### CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2007, I caused a copy of R.R. DONNELLEY &

SONS COMPANY'S RESPONSES TO DEFENDANTS' SECOND SET OF REQUESTS FOR

PRODUCTION OF DOCUMENTS AND THINGS to be served as follows:

#### BY EMAIL AND HAND

Frederick L. Cottrell, III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com

#### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
rmcmillan@crowell.com

Rodger D. Smith II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com

# EXHIBIT R



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsecord@sidley.com
(312) 853-2206

| BEIJING | LOS ANGELES |
| BRUSSELS | NEW YORK |
| CHICAGO | SAN FRANCISCO |
| DALLAS | SHANGHAI |
| FRANKFURT | SINGAPORE |
| GENEVA | SYDNEY |
| HONG KONG | TOKYO |
| LONDON | WASHINGTON, D.C. |

FOUNDED 1866

June 12, 2007

**Via Facsimile and U.S. Mail**

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2709 (telephone)
202-628-5116 (facsimile)

Re:     *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

This letter responds to your letter of June 8, 2007.

**Banta/Perry Judds Documents**

R.R. Donnelley & Sons Company ("R.R. Donnelley") is still investigating the scope of responsive materials in the possession of Banta. We expect to be in a position next week to respond to your May 10, 2007 letter.

With respect to Perry Judds, we have confirmed that Perry Judds did not engage in variable digital printing.

**R.R. Donnelley's Supplemental Interrogatory Responses**

In response to your May 23, 2007 request that R.R. Donnelley supplement its interrogatory responses, we intend to supplement R.R. Donnelley's interrogatory responses shortly. Indeed, we are hopeful that we will be in a position to do so within the next week, although we cannot guarantee an exact date in light of the breadth of materials recently produced by Defendants, including as recently as May 22, 2007. As stated in my May 17, 2007 letter to you, given that Defendants only recently produced most of the accused software products and more than one million other production pages[1] — even though the Court ordered the production

---

[1] *See, e.g.*, Ltr. from N. Grow to J. Secord of May 22, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of May 15, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of May 10, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of May 9, 2007 (producing accused software); Ltr.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3904747v.1


SIDLEY AUSTIN LLP

Nathaniel Grow
June 12, 2007
Page 2

of such materials on January 4, 2007 — R.R. Donnelley required time to study Defendants'
production before supplementing its interrogatory responses.

### R.R. Donnelley's Supplemental Production

In response to your May 15, 2007 letter suggesting that R.R. Donnelley somehow
delayed in producing supplemental materials, be assured that R.R. Donnelley did not delay in
producing its supplemental materials. Indeed, R.R. Donnelley did not wait more than three
months after receiving a Court order to produce materials, as Defendants did. Defendants have
already taken a 30(b)(6) deposition on R.R. Donnelley's document collection. As demonstrated
in that deposition, R.R. Donnelley conducted a reasonable and diligent search for responsive
documents. Given that Defendants only recently produced most of the accused software
products and more than one million other production pages,[2] we are confused by your letter.

*       *       *

Presumably the above alleviates your concerns. Nonetheless, please feel free to
call if you wish to discuss these matters further.

Sincerely,

Jamie L. Secord

---

from N. Grow to J. Secord of May 4, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of Apr. 27,
2007 (producing additional documents); Ltr. from N. Grow to J. Secord of Apr. 26, 2007 (producing accused
software); Ltr. from N. Grow to J. Secord of Apr. 18, 2007 (producing additional documents); Ltr. from N. Grow to
J. Secord of Apr. 9, 2007 (producing additional documents).
[2] *See supra* n.1.

CHI 3904747v.1

# EXHIBIT S



| | |
|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| ONE SOUTH DEARBORN | BRUSSELS | NEW YORK |
| CHICAGO, IL 60603 | CHICAGO | SAN FRANCISCO |
| (312) 853 7000 | DALLAS | SHANGHAI |
| (312) 853 7036 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |

jsecord@sidley.com
(312) 853-2208                              FOUNDED 1866

June 28, 2007

**Via Facsimile and U.S. Mail**

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2709 (telephone)
202-628-5116 (facsimile)

Re:  *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and
Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

R.R. Donnelley & Sons Company ("R.R. Donnelley") has conducted a reasonable
search for relevant documents in the possession of Banta, a separate company only recently
acquired by R.R. Donnelley. As a result of its investigation, R.R. Donnelley has learned the
following:

- Banta was not involved in variable digital printing on a commercial basis
  before 1998. Therefore, Banta does not likely have any prior art relevant to
  this lawsuit.

- After a reasonable search, Banta did not locate any documents related to the
  Patents in Suit, this lawsuit, opinions of counsel concerning the claimed
  subject matter of the Patents in Suit, prior art searches concerning the Patents
  in Suit, standards relating to variable digital printing, or any patent license
  agreements in the field of variable digital printing.

- Although Banta is now involved in variable digital printing, Banta does not
  use proprietary software tools for such printing. Banta uses only third-party
  software products for variable digital printing.

Given that Banta was not active in variable digital printing until at least after
1998, we do not see how any documents related to Banta's recent activities in the variable
printing area are relevant to the claims or defenses of the parties in this litigation, particularly in
light of the fact that until recently Banta was an entirely separate company from R.R. Donnelley.
Please let me know why Defendants believe that these documents would be relevant.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CHI 3920189v.1



Nathaniel Grow
June 28, 2007
Page 2


        Moreover, we have been advised that documents related to Banta's recent
activities are voluminous, and there is no central database for Banta's recent variable digital
printing activities. Thus, any searches for such recent documents would need to be conducted on
a plant-by-plant basis, which is highly burdensome.

        Please contact me if you would like to further address the issues discussed in this
letter.

                        Sincerely,

                        Jamie L. Secord


CHI 3920189v.1

# EXHIBIT T



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
NGrow@crowell.com

June 28, 2007

3477:ng
025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie L. Secord, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 606030

   Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
     *Kodak Graphic Communications Co., (D. Del.) (Civil Action No. 06-032-*
     *JJF)*

Dear Jamie:

   I write to point out the many deficiencies in RRD's responses to Defendants'
Second Set of Requests for Production:

### RRD's Improper Objection to the Definition of "RRD"

   RRD improperly objects to Defendants' Definition A, which defines "RRD" or
"you." By narrowly limiting RRD to just "R.R. Donnelley & Sons Co." – the ultimate
parent of a corporate family – RRD stands solely on corporate formalities to
suppress relevant, responsive documents relating to its subsidiaries, predecessors,
and affiliates. At the same time, RRD has itself defined "Creo," "Kodak," and
"KGCC" broadly to include parent, subsidiary, sister, predecessor, or successor
companies, and other affiliates. *See, e.g.,* RRD's First Set of Requests for Production
at 3. In addition to being unsupported by the law, the inequities of RRD's
untenable position are – quite frankly – troubling, and we doubt that the Court
would approve of RRD's actions.[1]

---

[1]  We understand RRD's objection as only being limited to the scope of the term
"RRD" or "you," and not taking the position that RRD does not have control over its
subsidiaries and affiliates. To the extent RRD maintains that it is only required to

(continued...)

Jamie Secord, Esq.
June 28, 2007
Page 2

        In its recent corporate history, RRD has acquired companies that purchased
and used anticipatory prior art.  Rather than produce relevant documents on these
topics, RRD instead attempts to hide the ball.  For instance, Communicolor (a
company that RRD acquired) purchased and used versions of the Begin software – a
prior art invalidating reference.  *See* Defendants' Response to Interrogatory No. 5.
Communicolor's use of Begin was discussed in information disclosure statements
filed with the PTO.  Based on public documents, we understand that Communicolor
was first acquired by RRD, and later became part of the Moore Wallace family of
companies (all of which are subsidiaries of RRD).  Thus, RRD's position would
shield any responsive documents relating to Communicolor's (or Moore Wallace's)
use of Begin.  Given that RRD has acquired other commercial printing operations,
we would expect that other uses of prior art may exist.

        RRD has also acquired companies that developed – prior to the acquisition –
technologies that either anticipated the patents in suit and/or are now accused by
RRD of infringing.  With respect to prior art and/or accused devices, Banta – which
has also been acquired by RRD – developed and commercialized DesignMerge, a
potential prior art reference.  Indeed, a senior RRD vice-president describes Banta's
DesignMerge as "something we may have patented."  RRD089286.  DesignMerge is
also a third party software product which may fall within RRD's allegations of
infringement.[2]

        Moreover, this is a yet another issue on which the parties had already
reached a prior consensus with RRD's former counsel.  Almost a year ago, RRD –
through its former counsel – asserted a substantially similar objection in RRD's
response to Defendants' First Set of Requests for Production.  *See* RRD's Response
at **4**.  After Defendants explained to RRD that this objection was improper, RRD's
former counsel confirmed that it had not narrowed its search or otherwise withheld
responsive documents on the basis of such objection, and stated that RRD would so
clarify in a future response.  *See* Ltrs. from Koide to Badke of Sept. 19, 2006 and
*Oct. 9, 2006.*

---

(continued)

search for documents in the direct possession, custody, or control of R.R. Donnelley
& Sons Co., Defendants would note that this is also improper.

[2]      Banta is relevant to other issues as documented in prior correspondence.  *See,
e.g.*, April 4th Ltr. from Koide to Secord, and May 10th Ltr. from Grow to Puri.

Jamie Secord, Esq.
June 28, 2007
Page 3

Accordingly, Defendants once again ask RRD to withdraw this improper objection and also confirm that RRD will conduct (and has previously conducted) a reasonable search throughout any entity that it controls for documents responsive to Defendants' Requests for Production.

## RRD's Improper Objection to the Definition of "Barco-Xeikon Entity"

Similarly, RRD has improperly objected to Defendants' Definition Z of "Barco-Xeikon Entity." Under its objection, RRD would limit "Barco-Xeikon Entity" to just Barco Graphics N.V. and Xeikon N.V. But RRD has already produced documents showing that other Barco entities, such as Barco N.V. (*see, e.g.*, RRD015813, RRD042356) and Barco Inc. (RRD015840) are relevant to the claims or defenses at issue in this litigation. Further, RRD has previously produced documents regarding royalty payments it was owed by Esko Graphics (RRD046122), an apparent successor in interest to Barco Graphics' license with RRD.

Please confirm that RRD will produce documents relating to all known Barco-Xeikon entities, and responsive to Request for Production Nos. 51 and 52.

## RRD's Improper Use of "Sufficient to Show"

RRD improperly relies on producing documents "sufficient to show" for Requests for Production Nos. 50, 63, and 66, which relate to the following topics:

- **Request No. 50:** "[a]ll documents regarding the settlement, resolution, or conclusion of the Barco Suit";

- **Request No. 63:** "[a]ll documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product";

- **Request No. 64:** "[a]ll documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product"; and

- **Request No. 66:** "[a]ll documents discussing, describing, estimating, analyzing, computing, or otherwise reporting the value or estimated value of the Patents in Suit."

While producing documents "sufficient to show" is sometimes permissible when the response can be summarized objectively and the underlying facts are not likely to be relevant, it is improper to simply produce document "sufficient to show" otherwise. None of the above-listed requests cover topics that can be adequately

Jamie Secord, Esq.
June 28, 2007
Page 4

summarized with a "sufficient to show" response. As but one example, Defendants are entitled to all documents that discuss the value or estimated value of the Patents in Suit – not just those documents RRD determines "sufficiently show" such value – as different valuations and underlying calculations are relevant to damages.

Please confirm that RRD will produce all documents responsive to the above-listed topics.

## Request for Production 54

RRD has inappropriately limited the scope of its response to Request No. 54. Defendants asked for "[d]ocuments that summarize, memorialize, describe, outline, or define RRD's patent licensing practices, policies, and procedures, whether formal or informal." In response, RRD has only stated it will produce such documents "relating to the Patents in Suit from 2000 to present." Defendants are entitled to documents regarding RRD's patent licensing practices, policies, or procedures for patents other than the Patents in Suit. Defendants are also entitled to such documents dated prior to 2000. All such policies are relevant for the computation of a reasonable royalty.

Please confirm that RRD will produce documents summarizing, memorializing, describing, outlining, or defining its patent licensing practices, policies, and procedures, with respect to all patents RRD may own.

## Request for Production 56

In Request No. 56, Defendants sought "[d]raft or final agreements, and any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements, between (i) RRD and (ii) any Kodak Entity regarding the use of" 10 software products. In its written response, RRD refused to produce any such documents, asserting that the request is "overly broad and unduly burdensome because there is no reasonable time frame limitation," and "because it seeks information that is as readily available to Kodak to Defendants [sic] as it is to" RRD. RRD's response is incorrect and inadequate.

First, Defendants have requested not only draft or final agreements, but also any documents or notes related to the negotiation of such agreements. Such documents are not as readily available to Defendants as they are to RRD. In many cases, Defendants will never have received copies of such documents or notes, in which case they will only reside with RRD.

Jamie Secord, Esq.
June 28, 2007
Page 5

However, even with regard to the draft or final agreements themselves, RRD's response is insufficient. RRD has done business with Defendants for many years, and some of the agreements at issue may be as many as 20 years old. These agreements are relevant to Defendants' defenses, including, but not limited to, laches, equitable estoppel, and waiver. RRD has further purchased a number of entities which may have also entered into agreements with Defendants for the software products at issue. Defendants cannot track RRD's acquisitions nearly as easily as RRD can itself.

Finally, as a result of RRD's extended delay in filing suit, Defendants' records may be incomplete. Defendants have themselves produced responsive documents to RRD regardless of whether the information was as readily available to RRD as it was to Defendants. Under the circumstances, RRD is required to do the same.

Please confirm that RRD will fully comply with Request No. 56, and will produce all draft or final agreements between RRD and any Kodak Entity relating to the software products identified in the Request, along with any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related thereto.

## Request for Production 60

RRD's response to Request No. 60 is also insufficient. Defendants sought the production of "[a]ll documents that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit, including all documents that refer to any such consideration, [etc.]." RRD's response is insufficient for several reasons.

First, RRD incorrectly asserts that its production of documents responsive to this Request may be limited by the protective order in the Tesseron Suit. This argument is a red herring; the protective order in the Tesseron Suit has nothing to do with RRD's ability to produce such documents. Request No. 60 seeks only those documents that **RRD** considers, analyzes, examines, or investigates as prior art. These documents are largely public, and to the extent they aren't, the Protective Order in this litigation provides RRD with more than sufficient protection for any confidential material. The Tesseron protective order does not tie RRD's hands in waiving confidentiality for RRD confidential documents. In this Request, Defendants have not asked for any materials produced by Tesseron.

Moreover, RRD has stated it will only produce documents responsive to this Request "after [RRD] produces or identifies such prior art in the Tesseron Suit." There is absolutely no basis for such delay. Once RRD considers, analyzes,

Jamie Secord, Esq.
June 28, 2007
Page 6

examines, or investigates a document as prior art it should be produced. Similarly, any non-privileged document referring to such consideration, etc., should be produced once it is created.

Please confirm that RRD will produce all documents it or its counsel considers, analyzes, examines, or investigates as prior art in the Tesseron Suit, along with all related documents, as soon as such documents are identified or created.

## Request for Production 61

Similarly, RRD's response to Request No. 61 is also insufficient. In this Request, Defendants sought "[a]ll documents that are alleged ... to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit." As above, there is no reason why RRD cannot produce to Defendants here all documents it alleges refute Tesseron's claim for damages, since the Protective Order in this litigation more than sufficiently protects RRD's confidential information. Further, there is no basis for RRD delaying such production until such time as it "produces such information in the Tesseron Suit." RRD should produce such information as soon as it is identified by RRD.

Please confirm that RRD will produce all documents that are alleged to support or refute, in whole or part, Tesseron's claim for damages, as soon as such documents are identified.

## Request for Production 63

In Request No. 63, Defendants seek "[a]ll documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product." This specific information is relevant to Defendants' asserted defenses, including laches, and equitable estoppel. In response, RRD states only that it will provide documents relating to "the operation of any Accused Software Product by any [RRD] employee whose job or responsibilities included investigating infringement of [RRD] patents." RRD's response, once again, is woefully insufficient.

First, RRD has inappropriately attempted to limit its production of documents under this Request to those regarding RRD's "earliest knowledge *of the operation* of any Accused Software Product." This is the subject matter of Defendants' Request No. 64. Defendants are entitled to documents regarding both RRD's earliest knowledge of the accused products, and RRD's earliest knowledge of the operation of the accused products. Both aspects may relate to laches and other

Jamie Secord, Esq.
June 28, 2007
Page 7

equitable defenses. RRD's attempt to limit its production to only the latter is inappropriate and unjustified.

Second, RRD has inappropriately attempted to limit its search for such responsive documents. By only agreeing to produce documents showing the earliest knowledge of "any [RRD] employee whose job or responsibilities included investigating infringement of [RRD] patents," RRD attempts to cut-out a large number of individuals that may have relevant knowledge. By way of example, individuals tasked with software purchasing or competitive intelligence may very well have had RRD's earliest knowledge of the accused software products. Such knowledge is highly relevant for Defendants' equitable defenses. Defendants are entitled to documents indicating or referring to RRD's earliest knowledge of the accused products wherever it may have resided.

Please confirm that RRD will produce all documents and things indicating or referring to RRD's earliest knowledge of any Accused Software Product.

**Request for Production 64**

RRD's response to Request No. 64 is similarly insufficient. Defendants are again entitled to documents evidencing such knowledge from individuals other than only those "whose job or responsibilities included investigating infringement of [RRD] patents."

Please confirm that RRD will produce all documents and things indicating or referring to RRD's earliest knowledge of the operation of any Accused Software Product.

Defendants request that RRD respond to this letter no later than Tuesday July 3rd. Additionally, Defendants request that a meet-and-confer conference be scheduled on Friday July 6th, to discuss any disputes that may remain after Defendants receive RRD's response.

Please let me know if you have any questions.

Jamie Secord, Esq.
June 28, 2007
Page 8

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT U



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsscord@sidley.com
(312) 853-2205

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

FOUNDED 1866

July 6, 2007

**Via Facsimile and U.S. Mail**

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2709 (telephone)
202-628-5116 (facsimile)

Re:   *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and
Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

This letter responds to your letter of June 28, 2007.

**R.R. Donnelley's Objection to Definition of "RRD"**

R.R. Donnelley objected to Defendants' Definition A, which defines "RRD" or
"you," as overly broad insofar as Defendants are attempting to require R.R. Donnelley to search
for every last document that may be responsive to Defendants' requests from every last person at
every single R.R. Donnelley subsidiary, successor, predecessor, etc. The Federal Rules of Civil
Procedure do not require such an unduly burdensome and overly broad search, as Defendants
have acknowledged. Indeed, Defendants included the following "General Objection" in their
responses to R.R. Donnelley's requests for production:

> 4.   . . . Creo will make a good-faith effort to conduct a
> reasonable search of documents and things within its
> possession, custody, or control. Such good-faith efforts
> will include identifying – to the best of Creo's ability –
> relevant Creo individuals with knowledge relevant to the
> claim or defense of any party or the subject matter of the
> action and searching documents of [sic] within the
> possession of those individuals.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3927655v.1



Nathaniel Grow
July 6, 2007
Page 2

*See, e.g.,* Defs.' Second Supp. Resp. to R.R. Donnelley's First Request for Production of Documents, dated Jan. 19, 2007, at 4.

      R.R. Donnelley has made a good-faith effort to conduct a reasonable search of documents within its possession, custody, or control. In doing so, R.R. Donnelley identified relevant individuals with knowledge relevant to the claims, counterclaims, and defenses of the parties or the subject matter of the action, and searched for documents within the possession of those individuals, as Defendants themselves agreed to do. *See id.*

### R.R. Donnelley's Objection to Definition of "Barco-Xeikon Entity"

      R.R. Donnelley objected to Defendants' Definition Z, which defines "Barco-Xeikon Entity," as overly broad because Defendants are seeking documents related to *"all* parent, subsidiary, sister, predecessor, or successor companies, corporations of either [Barco or Xeikon], partnerships, or other business entities of either entity, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing." Barco and Xeikon are two entirely separate companies from R.R. Donnelley. We have no knowledge of Barco's and Xeikon's corporate structures or of "all" individuals serving as officers, directors, agents, employees, partners, etc. of those companies.

      Nevertheless, and subject to and without waiving its objections, as part of R.R. Donnelley's reasonable search of documents within its possession, custody, or control, R.R. Donnelley also searched for and produced documents from other Barco entities, including Barco N.V., Barco Inc., and Esko Graphics, as you note in your letter.

### R.R. Donnelley's Use of "Sufficient to Show"

      Defendants concede that it may be permissible to use "sufficient to show" when the response can be "summarized objectively." (Ltr. from N. Grow to J. Secord at 3.) Given such a concession, we do not understand why – under Defendants' own interpretation of when a "sufficient to show" response is appropriate – such a response is somehow "improper" with respect to at least Request Nos. 63 and 64. Those requests seek a summary of when R.R. Donnelley first knew of or first knew about the operation of any accused software product.

      Nonetheless, and subject to and without waiving its objections, pursuant to Request Nos. 50, 63, 64, and 66, R.R. Donnelley made a good-faith effort to conduct a

CH1 3927655v.1



Nathaniel Grow
July 6, 2007
Page 3

reasonable search of documents within its possession, custody, or control and has produced or
will produce non-privileged documents identified as a result of its search.[1]

### Defendants' Request for Production 54

Defendants argue that they are entitled to "[d]ocuments that summarize,
memorialize, describe, outline, or define R.R. Donnelley's patent licensing practices, policies,
and procedures, whether formal or informal" without regard to the time period such documents
were created, even though the Patents in Suit did not issue until 2001 or later. (Ltr. from N.
Grow to J. Secord at 4.) Request No. 54 seeks information that is neither relevant to the claims,
counterclaims, or defenses in the action nor reasonably calculated to lead to the discovery of
admissible evidence. Moreover, Request No. 54 is overly broad and unduly burdensome because
there is no reasonable time frame limitation.

R.R. Donnelley previously offered a reasonable date by agreeing to search for
responsive documents relating to the Patents in Suit from 2000 to present. In the spirit of
compromise, and subject to and without waiving its objections, R.R. Donnelley agrees to
produce non-privileged documents that summarize, memorialize, describe, outline, or define
R.R. Donnelley's patent licensing practices, policies, and procedures from 1997 to present, to the
extent such documents exist, have not already been produced in the present litigation, and are
located through a reasonable search.

### Defendants' Request for Production 56

Defendants' Request No. 56 is clearly unreasonable. Defendants acknowledge
they should already have at least draft or final agreements between RRD and any Kodak entity
regarding the use of the 10 software products enumerated in Request No. 56. At the same time,
however, Defendants inexplicably claim that "[s]uch documents are not as readily available to
Defendants as they are to RRD." (Ltr. from N. Grow to J. Secord at 4.) Defendants appear to be
placing the burden on R.R. Donnelley to search for such agreements because Defendants do not
wish to shoulder the cost and burden of searching for such documents themselves.

Moreover, as exemplified by Defendants' statement that "some of the agreements
at issue may be as many as 20 years old" (Ltr. from N. Grow to J. Secord at 5), Request No. 56
seeks information that is neither relevant to the claims, counterclaims, or defenses in the action
nor reasonably calculated to lead to the discovery of admissible evidence. Please explain how
the requested documents are relevant to the claims, counterclaims, or defenses of the parties.

---

[1] There is further discussion below of R.R. Donnelley's search for documents in response to Request Nos. 63 and
64.

CHI 3927655v.1



Nathaniel Grow
July 6, 2007
Page 4

With respect to "any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements," such materials are similarly not relevant to the claims, counterclaims, or defenses in the action and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, such documents are likely privileged and a search for any non-privileged documents or notes would be unduly burdensome. Please explain why R.R. Donnelley should undertake a burdensome search for such irrelevant materials.

Subject to and without waiving R.R. Donnelley's objections, we agree to discuss with our client whether it would be unduly burdensome to undertake a search for final agreements between R.R. Donnelley and Kodak regarding the use of the 10 software products enumerated in Request No. 56 from 2000 to present. Given the Fourth of July holiday this week, we do not expect to have a response until next week.

### Defendants' Request for Production 60

Defendants' Request No. 60 is premature, as stated in R.R. Donnelley's objections. There is a pending dispute in the Tesseron Suit as to which accused products are even at issue. Moreover, Defendants' request seeks information largely protected by the work product doctrine and attorney-client privilege.

To the extent Defendants' request calls for third-party or Tesseron materials that are subject to the Protective Order in the Tesseron Suit, R.R. Donnelley's ability to produce such materials is also limited by the Protective Order in that case. For example, documents showing the inner workings of a publicly available Tesseron or third-party product might be prior art but could still be confidential to Tesseron or that third-party. The Protective Order in our case does not overrule the Protective Order in the Tesseron case. We would be happy to send you a copy of the Tesseron Protective Order if you would like to review it.

R.R. Donnelley is subject to the same Federal Rules of Civil Procedure in the Tesseron litigation that it is subject to in the pending litigation with Defendants. Therefore, to the extent that the requested documents are identified for production in the Tesseron Suit, and without waiving its objections and subject to the Protective Order in the Tesseron Suit, R.R. Donnelley will produce responsive, non-privileged documents, to the extent such documents have not already been produced in the present litigation and are located through a reasonable search.

CH1 3927655v.1



Nathaniel Grow
July 6, 2007
Page 5

## Defendants' Request for Production 61

Defendants' Request No. 61 is similarly premature, as stated in R.R. Donnelley's objections. Tesseron has not even alleged a damages claim in the Tesseron Suit. Moreover, Defendants' request seeks information largely protected by the work product doctrine and attorney-client privilege.

To the extent Defendants' request calls for third-party or Tesseron materials that are subject to the Protective Order in the Tesseron Suit, R.R. Donnelley's ability to produce such materials is also limited by the Protective Order in that case. As mentioned above, we would be happy to send you a copy of that Protective Order if you would like to review it.

Also as stated above, R.R. Donnelley is subject to the same Federal Rules of Civil Procedure in the Tesseron litigation that it is subject to in the pending litigation with Defendants. Therefore, to the extent that the requested documents are identified for production in the Tesseron Suit, and without waiving its objections and subject to the Protective Order in the Tesseron Suit, R.R. Donnelley will produce responsive, non-privileged documents, to the extent such documents have not already been produced in the present litigation and are located through a reasonable search.

## Defendants' Request for Production 63

In response to R.R. Donnelley's requests for the production of documents, Defendants stated that they would "make a good-faith effort to conduct a reasonable search of documents and things within its possession, custody, or control. Such good-faith efforts will include identifying . . . relevant . . . individuals with knowledge relevant to the claim or defense of any party or the subject matter of the action and searching documents of [sic] within the possession of those individuals." *See, e.g.,* Defs.' Second Supp. Resp. to R.R. Donnelley's First Request for Production of Documents, dated Jan. 19, 2007, at 4.

R.R. Donnelley took the same approach in response to Defendants' Request No. 63. R.R. Donnelley agreed to undertake a reasonable search of documents within its possession, custody, or control to look for documents related to R.R. Donnelley's earliest knowledge of any accused software product. As part of its reasonable search, R.R. Donnelley agreed to identify relevant R.R. Donnelley individuals with knowledge relevant to the claims, counterclaims, and defenses of the parties or the subject matter of the action (*i.e.,* those R.R. Donnelley employees likely to have knowledge of the Patents in Suit and/or of Defendants' infringing activities).

Subject to and without waiving its objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show earliest knowledge of any accused

CH1 3927655v.1



Nathaniel Grow
July 6, 2007
Page 6

software product, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search as identified above.

### Defendants' Request for Production 64

R.R. Donnelley incorporates by reference the language above relating to Defendants' Request No. 63. R.R. Donnelley further states that subject to and without waiving its objections, R.R. Donnelley will produce responsive, non-privileged documents sufficient to show earliest knowledge of the operation any accused software product, to the extent such documents exist, have not already been produced in the present litigation, and are located through a reasonable search as identified above.

\* \* \*

As stated in my letter of July 3, 2007, we are generally available for a meet and confer on July 10 or 11, 2007, should you wish to conduct such a conference.

Sincerely,

*Jamie L. Secord* /vk

Jamie L. Secord

CH1 3927655v.1