IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants.<br><br>EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant. | C.A. No. 06-cv-032-JJF |

## PLAINTIFF'S RESPONSE TO MOTION TO COMPEL DISCOVERY

Plaintiff R.R. Donnelley & Sons Company ("R.R. Donnelley") hereby responds to Defendants' Motion To Compel Discovery (D.I. 148).

1. The Court should deny Defendants' Motion because R.R. Donnelley has already done exactly what Defendants request. Defendants demand that R.R. Donnelley "undertake a reasonable search for responsive documents and things within RRD's possession, custody, or control" (D.I. 148 at 6). R.R. Donnelley has already done that.

2.     Defendants' Motion is filed with empty rhetoric about how "RRD has failed to approach discovery in an equitable manner" and how "RRD has backpedaled and attempted to distance itself from promises previously made" (*id.* at 1-2).  The Motion itself, however, is somewhat unclear about the relief Defendants are seeking beyond what R.R. Donnelley has already provided in discovery.  For the purposes of clarity, R.R. Donnelley understands Defendants to be asking for two things:  (1) responsive documents in the possession, custody, or control of Banta; and (2) documents from Communicolor relating to the Begin software.

3.     Defendants request that R.R. Donnelley be compelled to produce "all documents formerly in the possession of Banta Corporation responsive to the requests identified in Defendants' May 10, 2007 letter" (D.I. 148).  In their May 10, 2007 letter, Defendants demanded that R.R. Donnelley "produce all documents formerly in the possession of Banta . . . responsive to requests 1-6, 9, 14-21, 26-31, 33, 39, 41, 46 and 49" (D.I. 148, Ex. P at 2).

4.     R.R. Donnelley told Defendants that it would conduct a reasonable search to determine whether Banta has any responsive documents, and communicated the results of that search to Defendants.

5.     On June 12, 2007, R.R. Donnelley told Defendants that it was "investigating the scope of responsive materials in the possession of Banta" (D.I. 148, Ex. R).

6.     On June 21, 2007, R.R. Donnelley told Defendants that "our investigation continues into the scope of variable digital printing-related documents that Banta has in its possession . . . .  [W]e indicated discussions with Banta were continuing today on this very issue, and that we would contact Defendants as soon as we completed our investigation. . . ." (Ex. A at 2).

7. On June 28, 2007, R.R. Donnelley reported on the results of its investigation (D.I. 148, Ex. S; emphasis added):

> **R.R. Donnelley & Sons Company ("R.R. Donnelley") has conducted a reasonable search for relevant documents in the possession of Banta**, a separate company only recently acquired by R.R. Donnelley. As a result of its investigation, R.R. Donnelley has learned the following:
>
> - Banta was not involved in variable digital printing on a commercial basis before 1998. Therefore, Banta does not likely have any prior art relevant to this lawsuit.
>
> - **After a reasonable search, Banta did not locate any documents related to the Patents in Suit, this lawsuit, opinions of counsel concerning the claimed subject matter of the Patents in Suit, prior art search concerning the Patents in Suit, standards relating to variable digital printing, or any patent license agreements in the field of variable digital printing.**
>
> - Although Banta is now involved in variable digital printing, Banta does not use proprietary software tools for such printing. Banta uses only third-party software products for variable digital printing.
>
> Given that Banta was not active in variable digital printing until at least after 1998, we do not see how any documents related to Banta's recent activities in the variable digital printing area are relevant to the claims or defenses of the parties in this litigation.
> . . .

8. Despite receiving the above report on R.R. Donnelley's investigation, Defendants are not satisfied, arguing that "Banta's use of a technology on a 'commercial' basis is only one basis upon which its use can be considered prior art" (D.I. 148 at 5). Defendants -- with no indication that Banta might have any prior art or lead they wish R.R. Donnelley to investigate -- seek to have R.R. Donnelley undertake a wild goose chase through Banta's files to see if some

relevant, non-commercial prior art activities exist. This is well beyond a reasonable search, especially of a company that was until earlier this year not even related to the patentee.[1]

9. In support of their motion, Defendants claim that they reduced the documents they are seeking "by nearly 45%" from their original request to R.R. Donnelley (D.I. 148 at 4). What Defendants do not tell the Court is how, after repeated requests from R.R. Donnelley, they finally agreed to forego document requests that could not possibly relate to Banta.[2] Indeed, even some of Defendants' remaining requests are unrelated to documents that Banta could possibly have in its possession.[3] R.R. Donnelley has repeatedly asked Defendants to identify what documents they really need from Banta, a company that was, by Defendants' own admission, an independent company until a few months ago. Clearly, Banta cannot have documents related to the patents-in-suit or RRD's activities before it was acquired. Defendants' request that R.R. Donnelley search Banta's voluminous files for these documents is nothing

---

[1] The original parent applications leading to the patents-in-suit were filed in 1995 and 1997.

[2] These requests include "the files of the named inventors" (RFP No. 7), "the decision to file the patent applications" (No. 10), "the preparation of the patent applications" (No. 11), RRD's assertions in this case (Nos. 22-25), "communications between RRD and the Creo Defendants" (No. 34), RRD's securities filings and board minutes (Nos. 35, 36), RRD's knowledge of the accused products (Nos. 37-38), and notice to Defendants and marking (Nos. 40, 42-45).

[3] For example, No. 3 ("all documents and things concerning the conception of the claimed subject matter of the patents in suit"), No. 4 ("all documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit"), No. 6 ("all documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit"), No. 21 ("all documents and things concerning RRD's purported ownership of the patents in suit), No. 28 ("all communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same"), No. 31 ("all documents and things concerning any royalties collected from RRD from any license related to the patents in suit"), and No. 41 ("all documents and things concerning RRD products covered by the claims of the patents in suit").

more than a request that R.R. Donnelley search for something that it, and Defendants, already know is not there.

10. Regarding the "Begin" software from Communicolor, R.R. Donnelley is investigating whether it has within its possession, custody or control any responsive documents concerning the "Begin" software allegedly used by Communicolor (*see* D.I. 148 at 6), and will produce any such documents promptly.

11. As for the other third parties recently acquired by R.R. Donnelley, Defendants have indicated they "are willing to forego production of documents from Perry Judds . . ." (D.I. 148, Ex. M at 2). Moreover, R.R. Donnelley has independently determined that there is no connection between Perry Judds and the subject matter of this litigation. *See* D.I. 148, Ex. R ("[W]e have confirmed that Perry Judds did not engage in variable digital printing.").

12. R.R. Donnelley has not withheld documents based on "fine corporate distinctions," as Defendants suggest (D.I. 148 at 1). As R.R. Donnelley told Defendants on July 6, 2007, "R.R. Donnelley has made a good-faith effort to conduct a reasonable search of documents within its possession, custody, or control. In doing so, R.R. Donnelley identified relevant individuals with knowledge relevant to the claims, counterclaims, and defenses of the parties or the subject matter of the action, and searched for documents within the possession of those individuals" (D.I. 148, Ex. U at 2).

13. Notably, this explanation tracks what Defendants, in their motion claim to want -- "that RRD undertake a reasonable search for responsive documents and things within RRD's possession, custody, or control" (D.I. 148 at 6). Defendants have yet to explain how companies that were independent until a short time ago -- and acquired long after the patents-in-

suit were filed -- could possibly have relevant documents on more than a few subjects. R.R. Donnelley has conducted a reasonable search for relevant documents from those companies.[4]

14. Although R.R. Donnelley conducted a proper "reasonable search" for responsive documents, Defendants seek an ostensibly "reasonable search" that would lead to nothing more than a huge waste of resources with little likelihood of finding relevant, responsive documents. Defendants claim a "reasonable search" "would include not only the identification of potentially responsive documents located at RRD subsidiary and successor entities, but also search for responsive documents referencing such subsidiary, predecessor, and successor entities" (D.I. 148 at 6). As discussed above, as part of the reasonable search conducted by R.R. Donnelley, "R.R. Donnelley identified relevant individuals with knowledge relevant to the claims, counterclaims, and defenses of the parties or the subject matter of the action, and searched for documents within the possession of those individuals" (D.I. 148, Ex. U at 2).

15. R.R. Donnelley's approach is the common, acceptable manner of conducting a litigation search for documents and, in fact, is the same exact approach taken by Defendants. As Defendants themselves stated in their responses to R.R. Donnelley's requests for production:

> . . . Creo will make a good-faith effort to conduct a reasonable search of documents and things within its possession, custody, or control. Such good-faith efforts will include identifying -- to the best of Creo's ability -- relevant Creo individuals with knowledge relevant to the claim or defense of any party or the subject matter of the action and searching documents of [sic] within the possession of those individuals.

---

[4] Defendants claim that R.R. Donnelley's current counsel changed R.R. Donnelley's position on this issue (D.I. 148 at 1-2, 3). Defendants, ignore, however, that prior counsel expressly stated that R.R. Donnelley would conduct "an appropriate search." This is exactly the search for responsive documents described above that R.R. Donnelley has conducted.

*See* Defendants' Second Supp. Resp. to R.R. Donnelley's First RFP, dated Jan. 19, 2007, at 4.

        16.     Defendants' Motion to Compel Discovery should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 24, 2007

978536

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on July 24, 2007, upon the following in the manner indicated:

### BY EMAIL AND BY HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com


       */s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT A



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| ONE SOUTH DEARBORN | BRUSSELS | NEW YORK |
| CHICAGO, IL 60603 | CHICAGO | SAN FRANCISCO |
| (312) 853 7000 | DALLAS | SHANGHAI |
| (312) 853 7036 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| jsecord@sidley.com | | |
| (312) 853-2206 | FOUNDED 1866 | |

June 21, 2007

<u>Via Facsimile and U.S. Mail</u>

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2709 (telephone)
202-628-5116 (facsimile)

Re: *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

This letter follows up on our "meet and confer" telephone discussion of earlier today.

**<u>Defendants' Responses to R.R. Donnelley's Interrogatory Nos. 18 and 19</u>**

Following up on my June 5, 2007 letter, I inquired when Defendants intended to identify or produce documents in response to R.R. Donnelley's Interrogatory Nos. 18 and 19. Defendants merely stated in their responses that they would "provide RRD with documents pursuant to [Fed. R. Civ. P. 33(d)]." Defendants did not identify particular documents or indicate when such documents would be forthcoming.

Although you have withheld these documents with no mention of why, today you and your colleague Brian Koide informed me that you were holding at least a portion of the requested data (relating to Creo and Versamark) and would produce it immediately *but only if* we agreed to restrict R.R. Donnelley in-house attorney Paul Rodriguez from inspecting such information at any location other than the Chicago office of Sidley Austin LLP. Defendants have already argued to the Court that R.R. Donnelley's Chief Patent Counsel should be precluded from viewing allegedly sensitive materials, and the Court ruled that Mr. Rodriguez may review "Confidential" and "Attorneys' Eyes Only" information pursuant to the terms of the Protective Order. *See* Order of Jan. 4, 2007 at 3 & n.1. Thus, Defendants' withholding of responsive data is in clear disregard of the Court's prior ruling on this very issue.

Nevertheless, without waiving its right to take this matter to the Court in the future, and to expedite discovery in this litigation, R.R. Donnelley will agree to permit Mr.

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3915528v.1



Nathaniel Grow
June 21, 2007
Page 2

Rodriguez to inspect only at our office the Attorneys' Eyes Only information produced pursuant to R.R. Donnelley's Interrogatory Nos. 18 and 19. Be assured, however, that R.R. Donnelley will raise this issue the next time we are before the Court.

Accordingly, please immediately produce the information requested in R.R. Donnelley's Interrogatory Nos. 18 and 19. Defendants stated that the requested NexPress data would be forthcoming next week.

**Depositions of Defendants' Witnesses**

In response to my query about why Defendants have not yet provided availability of their witnesses for depositions, despite my May 23 and June 5, 2007 letters requesting such information, Defendants indicated that they would send a letter tomorrow, June 22, 2007, providing dates for at least five witnesses. For now, however, Defendants are only making one witness available each week from the second week of July through the second week of August. As I stated during the call, given that fact discovery is scheduled to close on August 31, 2007, we need the remaining witnesses' availability as soon as possible, and we would like to schedule more than one witness per week for efficiency and cost effectiveness.

**Defendants' Request for Documents from Banta**

In response to Defendants' request for a broad array of documents from Banta, a third party only recently acquired by R.R. Donnelley, we informed Defendants that our investigation continues into the scope of variable digital printing-related documents that Banta has in its possession and the burdensomeness of searching for and producing them. Indeed, we indicated discussions with Banta were continuing today on this very issue, and that we would contact Defendants as soon as we completed our investigation. In sum, we are searching for a possible compromise on this issue but need further information about this newly acquired company before proposing a possible solution.

As we have previously informed you, Defendants' requests for documents from Banta are overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Indeed, Defendants have asked for numerous documents from Banta that cannot be relevant to this case because R.R. Donnelley just acquired the company. Should you decide to file a motion with the Court on this issue, R.R. Donnelley will oppose Defendants' efforts to seek discovery from Banta.

CH1 3915528v.1



Nathaniel Grow
June 21, 2007
Page 3


**R.R. Donnelley's Supplemental Interrogatory Responses**

      In response to your request that R.R. Donnelley supplement its interrogatory responses, I today informed you that R.R. Donnelley would do so by July 2, 2007. I reminded you that, as stated in my May 17, 2007 letter to you, Defendants only recently produced most of the accused software products and more than one million other production pages[1] — even though the Court ordered the production of such materials on January 4, 2007. Thus, R.R. Donnelley required time to study Defendants' production before supplementing its interrogatory responses. Please understand that, if Defendants decide to move to compel on this issue, we will place this dispute in context by informing the Court of Defendants' dilatory attitude toward its January 2007 order.

* * *

      Please contact me if you would like to further address the issues discussed in this letter.

Sincerely,

*Jamie J Secord*

Jamie L. Secord

---

[1] *See, e.g.,* Ltr. from N. Grow to J. Secord of May 22, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of May 15, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of May 10, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of May 9, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of May 4, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of Apr. 27, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of Apr. 26, 2007 (producing accused software); Ltr. from N. Grow to J. Secord of Apr. 18, 2007 (producing additional documents); Ltr. from N. Grow to J. Secord of Apr. 9, 2007 (producing additional documents).

CH1 3915528v.1