**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>     Defendants. | C.A. No. 06-32-JJF |
| EASTMAN KODAK COMPANY,<br><br>     Counterclaim-Plaintiff,<br><br>     v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>     Counterclaim-Defendant. | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
DEFENDANTS TO COMPLY WITH DISCOVERY OBLIGATIONS
WITHIN THE FACT DISCOVERY PERIOD**

In this suit, Plaintiff R.R. Donnelley & Sons Co. ("RRD") has specifically accused at

least nine separate software and hardware products of direct or indirect patent infringement.[1]

---

[1]    RRD has specifically accused the following software products: Darwin, Composer, DL-100, DL-1000 and FusionPro. RRD has also specifically accused the following hardware products: Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing Systems, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

Complicating the matter, these nine products originate from three recently-acquired Kodak business units – Creo, Versamark, and NexPress Solutions – all of which largely developed and/or commercialized their respective accused products independently, and well prior to being acquired by Kodak over the last three years.

Because each business unit's accused products have separate development and commercialization histories, throughout this case Defendants[2] have collected and produced documents from separate and diverse business units located in the United States, Israel, and Canada (totaling more than 2.4 million pages). Similarly, because the products each operate differently and have been sold through different sales channels, Defendants have – in many instances – had to designate as many as three different witnesses for each of RRD's fifteen Rule 30(b)(6) deposition topics. For instance, Defendants have designated three Rule 30(b)(6) witnesses to testify on how the accused software products from the three business units operate. Defendants repeatedly notified RRD that these increased layers of complexity were requiring more coordination and investigation than is typical, and that they would provide the requested discovery in a timely fashion. Despite this notice, RRD nevertheless filed the instant motion, which – pursuant to Defendants' commitments before the motion was filed – have been rendered moot:

- Defendants have provided RRD with deposition dates for all witnesses and Rule 30(b)(6) topics RRD sought in its Motion;[3] and

---

[2]    Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphics Communications Company (collectively "Defendants").

[3]    To date, RRD has itself failed to provide Defendants with dates for Defendants' Rule 30(b)(6) deposition topics 6, 14, and 15. *See* Ex. A.

- Defendants have produced documents pursuant to Rule 33(d) by their self-imposed deadline of July 25, 2007, which they had conveyed to RRD before the filing of RRD's motion.

Accordingly, because RRD's Motion has been rendered moot, it should be denied.

## I.    DEFENDANTS HAVE PROVIDED DATES FOR ALL WITNESSES

In the instant motion, RRD sought deposition dates for both Defendants' individual and Rule 30(b)(6) witnesses. Because the individual and 30(b)(6) witnesses implicate different facts and issues, Defendants will address the two sets of witnesses separately, below.

### A.    Rule 30(b)(6) Witnesses

Defendants have provided RRD with deposition dates for all Defendants' Rule 30(b)(6) designees, subject to Defendants' objections.[4]   RRD's motion, however, fails to acknowledge the existence of Defendants' objections, and in many instances fails to acknowledge that RRD acquiesced to these objections by failing to respond for up to ten months.

#### 1.    Third-Party Software Products – Unnamed & Unaccused Systems

The parties do not dispute that the nine accused products identified in footnote 1 fall within the scope of discovery. The 30(b)(6) dispute relates to whether RRD should be entitled to take Rule 30(b)(6) depositions on topics relating to third parties and "Third Party Software Products" that have not been specifically accused of infringement or even named.

Specifically, Defendants have objected to five of RRD's Rule 30(b)(6) topics for failing to satisfy the requirement of reasonable particularity.[5] These topics seek testimony regarding "Third Party Software Products" created and sold by unnamed and unaccused third parties, including the "output produced by," "marketing and promotional materials for," and "data stored

---

[4]   *See* Ex. B; Ex. C; Ex. D; Ex. E; Ex. F.

[5]   Topic 8 of RRD's First Notice, Topics 1, 8, and 9 of RRD's Second Notice, and Topic 1 of RRD's Third Notice. Ex. G at 5; Ex. H at 3-4; and Ex. I at 3.

- 3 -

by … Third Party Software Products."[6] Throughout the course of this litigation, RRD has refused to identify a single specific third-party product that would fall within the scope of the depositions on these topics; instead, RRD has defined "Third Party Software Products" and its referenced term "Variable Digital Printing" functionally:

S.    The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

T.    The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

Ex. J at 6.

Recognizing the amorphous nature of the term "Third Party Software Products," RRD itself acknowledged the validity of Defendants' objection in its letter of May 23, 2007, in which RRD limited its request for Rule 30(b)(6) deposition dates to only "the pending Rule 30(b)(6) Topics that do not relate to Third Party Software Products." Ex. M. RRD stated it would "be in a better position to identify the Third Party Software Products about which [RRD] will ask Defendants' witness(es)" after receiving Defendants' response to RRD's Interrogatory No. 21. *Id.* Defendants responded to Interrogatory No. 21 on June 21, 2007. Ex. N. Despite multiple inquiries by Defendants,[7] RRD has never specifically identified the third parties or products to be discussed at the depositions. Because RRD has failed to define these five Rule 30(b)(6) topics with reasonable particularity, Defendants have not designated witnesses to testify on these topics

---

[6]    *See* Ex. J at 8, Ex. K at 4-5, and Ex. L at 4.

[7]    *See, e.g.*, Ex. E and Ex. F.

to the extent they relate to third-party products.[8]  *See Sheehy v. Ridge Tool Co.*, 2007 WL 1548976, *4 (D. Conn. 2007) (finding that a Rule 30(b)(6) deposition notice must "detail the issues and topics to be covered during that particular deposition"); *see also Heron v. Potter*, 2006 WL 3703693 (D. Del. 2006) (granting protective order when party failed to satisfy Rule 30(b)(6)'s reasonable particularity requirement).

In an ironic twist, within the past month, the Northern District of Ohio has addressed a nearly-identical issue in a case where RRD has itself been accused of patent infringement. *Tesseron, Ltd. v. R. R. Donnelley & Sons Co.*, 2007 WL 2034286 (N.D. Ohio Jul. 10, 2007).  The *Tesseron* case involves the same technical field (variable data printing), and one of the same parties (RRD), who is represented by the very same counsel (Sidley Austin LLP) as in the present case.  The *Tesseron* court summarized the issue presented as follows:

> Tesseron seeks discovery of the Donnelley's [sic] systems not now identified or accused of infringement. Tesseron bases its request on an assumption that Donnelley cannot generate its end product without using an infringing system. Donnelley opposes this discovery as irrelevant to the claims presented and overly burdensome. Should the Court order discovery of unidentified and unaccused systems without further specification of the systems in question and of the components, characteristics, or elements allegedly causing infringement?

*Id.* at *1.

The discovery requests in *Tesseron* were as equally as broad as those that RRD has asserted here and are based on the similar definition "Variable Data Printing Systems:"

> Variable Data Printing System: Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or

---

[8]   RRD's failure to identify "Third Party Software Products" has severely hampered Defendants' ability to schedule 30(b)(6) depositions.  Due to the large number of accused products, business units, and 30(b)(6) topics, Defendants had hoped to designate witnesses to testify on as many topics as possible.  In many cases, Defendants wished to designate the same witnesses for topics relating to both third party and non-third party products.  RRD's refusal to identify the third parties and third party products at issue made this impossible.

in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

*Id.* at *2.

Like this case, Tesseron and RRD agreed that certain specifically identified accused products fell within the scope of discovery. But RRD – having had the tables turned from the role of patentee to one of accused infringer – predictably cried foul when Tesseron sought discovery on products that they could not specifically name or accuse. Ex. O at 2 (arguing that "Tesseron's patent claims . . . are nowhere near as broad as its discovery requests" and characterizing the discovery requests as "imprecise and overreaching discovery that would require RRD to expend vast and unnecessary resources in time and money").

After the parties exchanged letter briefs, the *Tesseron* court – having completed a thorough analysis of the case law – formulated the following rule:

> Although under the standards of Civil Rule 26(b)(1) discovery of unidentified and unaccused systems is theoretically possible, certain threshold requirements must be satisfied to permit such discovery to go forward. Specifically, the party seeking such discovery must first identify with requisite specificity the type of product or system at issue. Second, the party must also identify with specificity the component, characteristic, or element of the product or system that the claimants believes [sic] will render the product or system infringing.
>
> Absent satisfaction of these threshold requirements, the discovery request will fail to be sufficiently relevant to a pending claim or defense and the burden and expense of producing the discovery may well outweigh its likely benefit.

*Tesseron*, 2007 WL 2034286, at *3-4. Applying this rule, the *Tesseron* court held that RRD need not respond to the discovery as framed. *Id.* at *5.

Here, RRD fails to meet both requirements of the test above. First, RRD has never identified – "with specificity" or otherwise – any "Third Party Software Products." More than a year and a half into the case, with essentially less than a month of fact discovery remaining, RRD

has never accused – in formal discovery or otherwise – a single specific "Third Party Software Product" of infringement. Indeed, RRD's most-recent contention interrogatory response merely makes a passing reference that Defendants indirectly infringe "by promoting third party infringing software packages with the sale of Defendants' digital presses." Ex. P at 4. Second, RRD has never identified – with specificity or otherwise – "the component, characteristic, or element of the product or system that the claimants believes [sic] will render the product or system infringing." *See Tesseron*, 2007 WL 2034286, at *3. Despite requests from Defendants,[9] RRD has not provided any claim charts regarding third-party software, and has not sought any discovery from third-parties regarding such third-party software. Accordingly, Defendants' objections should stand, and they should not be required to designate Rule 30(b)(6) witnesses for Topic 8 of RRD's First Notice, Topics 1, 8, and 9 of RRD's Second Notice, and Topic 1 of RRD's Third Notice, as they relate to third parties and "Third Party Software Products."

### 2.    Privilege Issues

Topic 3 of RRD's First 30(b)(6) Notice relates to Defendants' analysis of accused products "that relate in any way to determining whether that product infringes the patents-in-suit." Since as early as September 13, 2006, Defendants have objected to one of RRD's Rule 30(b)(6) topics – Topic 3 of RRD's First Notice – on the grounds that all information sought by the topic is protected by the attorney-client privilege and/or work-product immunity.[10] Ex. R at 3. Nearly a year later, RRD has never addressed Defendants' privilege objection, nor was

---

[9]    *See* Ex. Q at 3.

[10]    The Topic covers "Any consideration, examination, analysis, or test conducted on Defendants' Software Products or Defendants' Hardware Products that relates in any way to determining whether that product infringes the patents-in-suit."

Defendants' objection mentioned in the instant motion. Pragmatically, it makes no sense to require Defendants to designate a witness that cannot answer any questions based on privilege or work product grounds. Thus, Defendants' objection should stand.

**B.    Individual Witnesses**

The provision of deposition dates for Defendants' individual witnesses is not properly before the Court at this time. RRD never conducted, nor sought to schedule, a meet-and-confer conference on this issue; thus, RRD failed to satisfy Local Rule 7.1.1. In fact, RRD's Motion represents the first time it had mentioned the scheduling of any individual witnesses (by name or categorically) in over seven months. Nevertheless, Defendants have provided deposition dates for all individual witnesses sought in RRD's motion.

Specifically, RRD noticed Rule 30(b)(1) depositions for five Israel-based witnesses in November 2006.[11] In early-December 2006, Defendants proposed a deposition schedule under which all individual witnesses would be deposed in the United States in early-January 2007. Ex. S. RRD did not accept Defendants' proposal. In light of RRD's position, Defendants wrote to former counsel for RRD, Ropes & Gray,[12] on December 15, 2006, reiterating Defendants' availability and willingness to work with RRD to reach a mutually acceptable schedule for the depositions of the individual witnesses, once the Court ruled as to the proper location for the depositions. Ex. T.

Despite Defendants' offer to schedule the individual depositions, RRD never again approached Defendants to discuss the issue. Not only did RRD fail to raise the issue of

---

[11]    Of these five individual witnesses, Defendants have designated two – Ron Peleg and Gershon Alon – in June to serve as Defendants' Rule 30(b)(6) designees for certain topics. Ex. B.

[12]    On or about March 19, 2007, the law firm of Sidley Austin replaced Ropes & Gray as counsel for RRD.

scheduling the individual depositions in its correspondence or conference calls with Defendants,

but RRD also failed to hold a meet-and-confer conference on the issue. Instead, RRD simply

moved to compel dates for all Defendants' witnesses – both Rule 30(b)(6) and individual – seven

months later.[13]

Although the instant motion fails to specifically identify the individuals whose

depositions RRD seeks to take, Defendants quickly reacted to the motion by investigating the

availability of the witnesses whose depositions Defendants suspected RRD sought. During the

course of this investigation, counsel for Defendants learned that one of the individual witnesses,

Ronny Fogel, was retiring from Defendants' employ on July 31, 2007. On July 17, Defendants

immediately notified RRD of Ms. Fogel's employment status. Ex. U. Defendants wrote to RRD

again on July 19, 2007, further explaining that Ms. Fogel had only three working days remaining

at Kodak IL, her employer, and that due to a variety of scheduling conflicts, Ms. Fogel was

unavailable to travel to the United States for a deposition prior to the close of fact discovery on

August 31, 2007.[14] Ex. V. In order to accommodate RRD, Defendants offered to make Ms.

Fogel available to be deposed in Israel, either in person or via telephone, in August. *Id.* RRD

did not accept this proposal. Finally, on July 26, 2007, Defendants notified RRD that Ms. Fogel

---

[13]  In subsequent correspondence, RRD has pointed to its letter of May 23, 2007, as putting Defendants on notice of RRD's intent to take the depositions of the three remaining individual witnesses. A quick examination of the letter in question clearly proves this assertion incorrect. The letter does not discuss any individual witnesses, either specifically or generally; instead, the letter discusses only the scheduling of Defendants' Rule 30(b)(6) witnesses. Ex. M.

[14]  Defendants explained that Ms. Fogel's availability to travel is limited due to conflicts including: 1) training her successor at Kodak IL, 2) forming a start-up software company with a number of deadlines upcoming through the end of August, 3) other, unrelated consulting obligations, 4) studying for the Israeli patent attorney exam, and 5) planning and attending her daughter's wedding. Ex. V.

had subsequently agreed to travel to the United States in late-September 2007 for her deposition, the earliest date her schedule allows. Ex. W.

In addition to Ms. Fogel, Defendants also investigated the availability of the two remaining individual witnesses RRD had noticed, Nardi Jaacobi and Ronen Cohen. Defendants proposed dates for both depositions by letter of July 25, 2007. Ex. F.

On July 19, 2007, subsequent to filing its motion, RRD served additional Rule 30(b)(1) depositions notices on four more individuals: Benny Shimshoni, William Schweinfurth, John Peck, and John Desautels.[15] Because these notices were filed nearly a week after RRD's Motion to Compel, and thus the parties never met-and-conferred on the subject of these notices, they fall outside the scope of the present motion.[16] Nevertheless, Defendants provided RRD with dates for all four witnesses on July 25, 2007. Ex. F.

Due to the short notice provided by RRD, and a number of pre-existing personal commitments, Defendants were unable to propose a deposition date for Benny Shimshoni before the close of fact discovery on August 31, 2007. Instead, Defendants offered to make Mr. Shimshoni available for deposition in the United States on September 5, 2007, just five days after the close of fact discovery. Ex. F at 2.

Therefore, despite the fact that RRD failed to satisfy the Local Rules by not seeking a meet-and-confer conference with Defendants, Defendants have nevertheless mooted RRD's

---

[15] *See* Ex. X; Ex. Y; Ex. Z; Ex. AA.

[16] Defendants had at one time indicated that these individuals may serve as Rule 30(b)(6) designees, while expressly reserving the right to change the designations. Ex. BB at 5. Defendants subsequently determined that only Mr. Schweinfurth needed to be so designated.

concerns by providing deposition dates for all unobjected-to Rule 30(b)(6) topics and all

individual witnesses.[17]  RRD's Motion is now moot and should be denied in its entirety.

## II.     **DEFENDANTS' PRODUCTION OF BUSINESS RECORDS**

The second issue raised in RRD's Motion has also been rendered moot; Defendants have

already produced the documents sought by RRD, namely financial business records for NexPress

Solutions, Inc. relied on by Defendants in answering RRD's Interrogatory Nos. 18 and 19. On

July 13, 2007 – before RRD's Motion was filed with the Court – Defendants faxed a letter to

RRD stating that Defendants anticipated that the requested data would be "produced to RRD on

or before Wednesday July 25th." Ex. EE. As promised, Defendants produced the materials to

RRD on July 24, 2007. Ex. FF.

The documents produced to RRD consist of summarized financial information drawn

from thousands of individual business records – as opposed to the production of the thousands of

individual records themselves. As Defendants have previously informed RRD, the provision of

this data for the NexPress business unit required Defendants to compile information from a

number of different databases, many of which were not readily-accessible to Defendants given

the passage of time. Because many of these databases are no longer active, Defendants were

forced to incur out-of-pocket costs of several thousand dollars to bring retired databases back on-

line, a process which could only be completed with the help of outside vendors.

Therefore, this portion of RRD's Motion has been completely rendered moot.[18]

---

[17]   RRD noticed another individual witness – Peter Rudak – on July 24, 2007, 11 days after the instant motion was filed. Ex. CC. Despite the short notice, Defendants have also provided RRD with a proposed date for Mr. Rudak's deposition. Ex. DD.

[18]   Because RRD is a major customer of Defendants' products, Defendants were understandably concerned about turning over this comprehensive, distilled financial data regarding the accused

(continued...)

## CONCLUSION

For the foregoing reasons, RRD's motion to compel should be denied. First, as to the scheduling of depositions for Defendants' individual and Rule 30(b)(6) witnesses, the motion should be denied as moot. Second, because Defendants – as promised – have produced the business records they relied on in answers to Interrogatories Nos. 18 and 19, the motion should again be denied as moot.

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500


Dated:  July 30, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company and Kodak Graphic Communications Company*

---

(continued)

software and hardware products. Accordingly, while Defendants permitted RRD's in-house attorney to review the data, Defendants reasonably requested that RRD maintain this data only at the office of its outside counsel, Sidley Austin. Ex. GG. Based on RRD's representations in its brief, Defendants have subsequently informed RRD that this highly-sensitive material can leave the office of RRD's outside counsel pursuant to the Protective Order. Ex. HH.

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following, who have also been served as noted:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on July 30, 2007, the foregoing was sent to the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

Douglas I. Lewis
Jamie L. Secord
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL   60603

John G. Hutchinson
Sidley Austin, LLP
787 Seventh Avenue
New York, NY   10019

Jameson A. L. Tweedie (#4927)
tweedie@rlf.com

# EXHIBIT A



SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

bfrey@sidley.com
(312) 853-7294

| | | |
|---|---|---|
| BEIJING | GENEVA | SAN FRANCISCO |
| BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO | LONDON | SINGAPORE |
| DALLAS | LOS ANGELES | TOKYO |
| FRANKFURT | NEW YORK | WASHINGTON, D.C. |

FOUNDED 1866

July 27, 2007

**Via E-Mail and U.S. Mail**

Mr. Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Re:     *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

This letter responds to your recent requests for depositions of R.R. Donnelley witnesses, including James Warmus, Grant Miller and Mary Lee Schneider, and to your request to reschedule the deposition of Lewis Waltman. Mr. Warmus is available on Wednesday, August 15 or Wednesday, August 22, 2007, in Chicago. Please note that, pursuant to our agreement, R.R. Donnelley is offering Mr. Warmus for two hours on the given day.

Mr. Miller is available on Tuesday, August 7, 2007. Should Defendants need additional time to complete Mr. Miller's deposition, he is available on Wednesday, August 8 as well, provided that his Rule 30(b)(6) deposition is completed on August 7.

Ms. Schneider is available on Monday, August 20, 2007, in Chicago. We would be happy to provide a conference room at our office for Mr. Warmus', Mr. Miller's, and Ms. Schneider's depositions.

In response to your recent request to reschedule Lewis Waltman's deposition because you do not believe Mr. Asaria's deposition to last past noon, R.R. Donnelley is willing to move Mr. Waltman's deposition to Thursday, August 2, at 1:30 p.m. We offer the same conference room as Mr. Asaria's deposition earlier that day.

Finally, in response to your statement of July 25 that R.R. Donnelley has not provided any dates for witnesses designated for Topics 1-11, please note that Mr. Miller has been designated for Topics 1-5 and 8-11. Defendants have already designated Riyaz M. Asaria, whose deposition is scheduled for Thursday, August 2, to testify on Topic 7. This leaves only Topic 6: "RRD's gross revenues, net revenues, standard costs, incremental costs, gross profit, net profit and margins concerning the Practice of the Patents in Suit." Given the fact that the Digital Division has not been in operation for several years, R.R. Donnelley is still attempting to identify



Nathaniel Grow
July 27, 2007
Page 2


a witness with knowledge of the revenues, costs and profits concerning the Patents in Suit.  R.R.
Donnelley expects to be able to designate a witness for Topic 6 shortly.




Sincerely,

Benedict F. Frey

# EXHIBIT B

# crowell ❪moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

June 22, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

> Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

At this time, Defendants offer the following 30(b)(6) witnesses on the following topics and dates, with depositions to be held at Crowell & Moring's Washington D.C. office:

| Witness | Topic(s) | Dates |
|---|---|---|
| Tim Donahue | Topic 2 (First Notice) | July 12 |
| Ron Peleg | Topics 1, 4, and 5 (Second Notice) and Topic 1 (Third Notice) as they relate to Darwin | August 8 |
| Gershon Alon | Topics 6, 7, 8, and 9 (Second Notice) as they relate to Darwin | August 9 |

Additionally, each witness will also be designated for Topics 10 and 11 (First Notice), as related to their above-listed topics.

Defendants make these witnesses available pursuant to your June 13th letter, in which you stated that depositions of these individuals in their personal capacity will be short, and therefore RRD need only schedule each witness for one (1) day. Accordingly, Defendants have proposed one day for each of the witnesses listed above; Defendants cannot agree to produce a given witness a second time at a later date.

As I explained to you yesterday, scheduling has been compounded by RRD's failure to identify any Third Party Software and its agreement to defer 30(b)(6)

Jamie Secord
June 22, 2007
Page 2

topics relating to Third Party Software (e.g., topics 1, 8, and 9 (Second Notice))[1]
until such time as RRD can identify the specific third party software products at
issue in the litigation. As you know, Defendants intend to designate witnesses to
testify on multiple topics – including both Third Party Software topics and non-
Third Party Software topics. Some of the individuals designated to testify
regarding Third Party Software may also be designated to testify regarding non-
Third Party Software. As a result, at this time Defendants can only schedule the
depositions of those witnesses who will not potentially testify with regards to Third
Party Software.

Please let us know if the above-listed dates work for you.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

---

[1]     Because both RRD's Topic 8 (First Notice) and Topic 1 (Third Notice) also
relates to Third Party Software, Defendants assume that RRD agrees to postpone
depositions relating to these topic as well, to the extent they discuss Third Party
Software.

# EXHIBIT C



**1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116**

Nathaniel Grow
202-624-2709
ngrow@crowell.com

June 26, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

> Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

   At this time, Defendants offer the following 30(b)(6) witnesses on the following topics and dates, with depositions to be held at Crowell & Moring's Washington D.C. office:

| Witness | Topic(s) | Dates |
|---------|----------|-------|
| William Sullivan | Topics 1, 4, 5, 6, and 7 (Second Notice) and Topic 1 (Third Notice) as they relate to DL-100, DL-1000, FusionPro, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press | July 19 |
| Roger Parrett | Topics 1, 4, 5, 6, 7, 8, and 9 (Second Notice) and Topic 1 (Third Notice) as they relate to Composer, the Kodak Versamark V-Series Printing Systems, and the Kodak Versamark D-Series Printing System | July 27 |

   Additionally, each witness will also be designated for Topics 10 and 11 (First Notice), as related to their above-listed topics.

   Defendants make these witnesses available pursuant to your June 13th letter, in which you stated that depositions of these individuals in their personal capacity will be short, and therefore RRD need only schedule each witness for one (1) day.  Accordingly, Defendants have proposed one day for each of the witnesses

Jamie Secord
June 26, 2007
Page 2

listed above; Defendants cannot agree to produce a given witness a second time at a
later date.

      Please let us know if the above-listed dates work for you.

                              Best regards,

                              Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT D



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 6, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in regards to Defendants' 30(b)(6) witnesses. As I noted in my e-mail yesterday, the Defendants are offering Timothy F. Donahue, Senior Scientist, to serve as their witness for Topic 2 of RRD's First 30(b)(6) Notice. Mr. Donahue will appear at Sidley Austin's Washington, D.C. office at 9 am on July 12, 2007.

As for Defendants' other 30(b)(6) witnesses, Defendants had relied on the attestation in your June 13, 2007 letter in which you proposed "scheduling a day for each of these [30(b)(6)] witnesses, with the understanding that [RRD] may go beyond 7 hours in one day." RRD is now taking the position that these depositions may take more than one day to complete. Due to your change in position on this issue, Defendants can no longer offer Roger Parrett on July 27. Instead, Defendants can offer:

| Witness | Topic(s) | Dates |
|---|---|---|
| Roger D. Parrett | Topics 1, 4, 5, 6, 7, 8, and 9 (Second Notice) and Topic 1 (Third Notice) as they relate to Composer, the Kodak Versamark V-Series Printing Systems, and the Kodak Versamark D-Series Printing System | August 16 |

Additionally, Mr. Parrett will also be designated for Topics 10 and 11 (First Notice), as related to his above-listed topics. Please let us know at your earliest convenience if the above-listed date works for you.

Jamie Secord
July 6, 2007
Page 2

With regards to Topic 2 of RRD's Second 30(b)(6) Notice, Defendants do not have any "inbound [or] outbound patent licenses relating to Variable Digital Printing," and therefore do not have a witness to offer on this topic.

Please let me know if you have any questions.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT E

# crowell (moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 18, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:     *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
        *Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
        JJF)

Dear Jamie:

Defendants offer the following 30(b)(6) witnesses on the following topics and dates:

| Witness | Topic(s) | Dates |
|---------|----------|-------|
| Patricia C. Izor | Topic 3 (Second Notice) | Aug. 17 |
| Sheila L. Popowych | Topic 2 (First Notice) as it relates to all named Defendants except NexPress Solutions, Inc. | Aug. 21 |

Additionally, each witness will also be designated for Topics 10 and 11 (First Notice), as related to their above-listed topics. Defendants offer Ms. Popowych to be deposed in Rochester, NY, and Ms. Izor to be deposed in Dayton, OH.

Defendants are still awaiting a response from RRD as to whether RRD is available to depose Roger D. Parrett on August 16th, as proposed in my July 6th letter. Defendants now offer Mr. Parrett to be deposed in Dayton, OH on August 16th, one day prior to Ms. Izor's deposition at the same location.

Defendants have now provided dates for all 30(b)(6) witnesses we are able to schedule at this time. As noted in my letter of July 6th, Defendants do not have any "inbound [or] outbound patent licenses relating to Variable Digital Printing," and therefore do not have a witness to offer on Topic 2 (Second Notice). Meanwhile, Defendants have previously objected to Topic 3 (First Notice) on the grounds that all responsive information is protected from disclosure by the attorney-client and/or

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ California ▪ New York ▪ London ▪ Brussels

Jamie Secord
July 18, 2007
Page 2

attorney work product privileges, and accordingly Defendants will not be producing a witness to testify to that topic.  Finally, Defendants objected to Topic 8 (First Notice), Topics 1, 8, and 9 (Second Notice) and Topic 1 (Third Notice) to the extent they include Third Party Software Products, on notice grounds.  Defendants are still awaiting – over 18 months into the litigation – notice as to the specific Third Party Software Products that RRD alleges are at issue in this litigation, and that will be discussed during the 30(b)(6) depositions for Topic 8 (First Notice), Topics 1, 8, and 9 (Second Notice) and Topic 1 (Third Notice).

Defendants had previously indicated that John Desautels, Benny Shimshoni, William Schweinfurth, and John Peck may be designated to testify on behalf of Defendants.  However, Defendants have no current plans to designate these four individuals at this time.

Please let us know as soon as possible if the above-listed dates work for you.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT F

# crowell❘moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595  ▪  p202 624-2500  ▪  f202 628-5116

**Nathaniel Grow**
202-624-2709
ngrow@crowell.com

July 25, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
       Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
       JJF)

Dear Jamie:

Defendants offer the following 30(b)(1) witnesses on the following dates, with
depositions to be held in Washington D.C.:

| Witness | Date |
|---|---|
| Ronen Cohen | August 10, 2007 |
| Nardi Jaacobi | August 23, 2007 |
| John Desautels | August 27, 2007 |
| John Peck | August 29, 2007 |
| Benny Shimshoni | September 5, 2007 |

As I explained in my July 17th letter, the scheduling of 30(b)(1) depositions
has been hampered by RRD's delay in contacting Defendants. With regards to the
depositions of Mr. Cohen and Mr. Jaacobi, Defendants wrote to RRD on December
15, 2006, stating that once the Court ruled as to the proper location for the
depositions of witnesses located in Israel, Defendants would cooperate with RRD in
reaching a schedule for these depositions. *See* Ltr. from Ray to Festin of Dec. 15.
The Court issued its opinion on February 2, 2007. RRD did not raise the scheduling
of these depositions – either specifically or generally – until filing its Motion to
Compel on July 13.

This situation has further been complicated by RRD's delay in noticing the
individual depositions of Messrs. Desautels, Peck, and Shimshoni. RRD first
noticed these individuals for deposition on July 20, 2007. Because RRD provided

Jamie Secord
July 25, 2007
Page 2

such short notice for these depositions, Mr. Shimshoni, a resident of Israel, is unavailable to travel to the United States until September 5th. Mr. Shimshoni has a number of business and family commitments preventing him from traveling abroad in August.

Defendants recognize that the proposed date for Mr. Shimshoni's deposition – September 5 – falls five days after the close of fact discovery. From our earlier discussions with you and Doug Lewis, Defendants understand that RRD is unwilling to extend the remaining discovery deadlines at this time. Under the circumstances, however, Defendants would propose that RRD stipulate to allow the parties to take discovery – including Mr. Shimshoni's deposition – up to and including September 5, or any other mutually-agreeable date.

Additionally, Defendants are prepared to offer additional Rule 30(b)(6) designees:

| Witness | Topic(s) | Dates |
|---|---|---|
| Sheila L. Popowych | Topic 2 (First Notice) as it relates to all named Defendants except NexPress Solutions, Inc. and Topic 2 (Second Notice) as it relates to all named Defendants | Aug. 17 |
| William Schweinfurth | Topics 8 and 9 (Second Notice) as they relate to DL-100, DL-1000, FusionPro, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press | Aug. 24 |

Ms. Popowych had previously been designated for Topic 2 (First Notice), but will now be serving as designee for Topic 2 (Second Notice) as well. Although Ms. Popowych's deposition had initially been set for Rochester, NY, Defendants now ask that both Ms. Popowych's and Mr. Schweinfurth's depositions be held in Washington D.C.

Defendants have now provided dates for all 30(b)(6) witnesses we are able to schedule at this time. As noted in my letter of July 18th, Defendants will not be offering a witness for Topic 3 (First Notice), due to the attorney-client privilege. As also explained in my July 18 letter, Defendants will not be offering a witness for Topic 8 (First Notice), Topics 1, 8, and 9 (Second Notice), and Topic 1 (Third Notice), as those topics relate to third parties and third party software, due to the lack of notice.

In order to finalize the scheduling of these depositions, Defendants ask that RRD immediately let us know if the above-listed dates work for you.

Jamie Secord
July 25, 2007
Page 3

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants. | C.A. No. 06-32-JJF |
| EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant. | |

### CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S AMENDED RESPONSES AND OBJECTIONS TO R.R. DONNELLEY'S AMENDED NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants") hereby submit an amended response to R.R. Donnelley & Sons Company's ("RRD") Amended Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) (hereinafter, "Deposition Notice").

Regarding the Deposition Notice, Defendants will work with RRD to identify a mutually acceptable date or date(s) and location or location(s). Defendants will use their best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications and objections set forth below. Defendants, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed. Defendants reserve all objections, in this or any other proceeding, with respect to the relevance, materiality, and admissibility of any deposition topics or responses to the topics.

Defendants will supplement their document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Defendants do not intend to produce additional documents.

Defendants will produce testimony regarding events since 2001. The Deposition Notice does not include a reasonable time frame limitation.

## II.    SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

### TOPIC NO. 1

The design, operation, functionality, features, structure, performance, and technical characteristics of Defendants' Software Products.

### RESPONSE TO TOPIC NO. 1

Defendants will produce a witness or witnesses to testify to the design, functionality and features of Defendants' Software Products insofar as Defendants have knowledge regarding products that they did not design and/or develop. However, Defendants object to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 1 does not do so, Defendants object and will not prepare or produce a witness or witnesses as to such topic.

RLF1-3181039-1

## TOPIC NO. 2

Defendants' earliest knowledge of the patents-in-suit or of the patent applications leading to the patents-in-suit.

## RESPONSE TO TOPIC NO. 2

Subject to their objections, Defendants will produce a witness or witnesses to testify

regarding this topic.

## TOPIC NO. 3

Any consideration, examination, analysis, or test conducted on Defendants' Software Products or Defendants' Hardware Products that relates in any way to determining whether that product infringes the patents-in-suit.

## RESPONSE TO TOPIC NO. 3

The only responsive information Defendants have regarding this topic is protected from

disclosure by the attorney-client and/or attorney work product privilege, and, accordingly,

Defendants will not produce a witness to testify to or documents responsive to this topic.

## TOPIC NO. 4

The conception, design, development, and commercialization of Defendants' Software Products.

## RESPONSE TO TOPIC NO. 4

Defendants will produce a witness or witnesses to testify to the conception, development

and commercialization of Defendants' Software Products insofar as Defendants have knowledge

regarding products that they did not design and/or develop. This topic otherwise is duplicative of

Topic No. 1. However, Defendants object to the topic as stated because it is overly broad and if

read literally, would encompass many aspects of the products in question having nothing to do

with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity."

To the extent that Topic No. 4 does not do so, Defendants object and will not prepare or produce

a witness as to such topic.

- 3 -

## TOPIC NO. 5

The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation), including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

## RESPONSE TO TOPIC NO. 5

Defendants will produce a witness or witnesses to testify to the users' guides, reference

manuals and product manuals for Defendants' Software Products and Defendants' Hardware

Products insofar as Defendants have knowledge regarding products that they did not design

and/or develop. However, Defendants object to the topic as stated because it is overly broad and

if read literally, would encompass many aspects of the products in question having nothing to do

with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity."

To the extent that Topic No. 5 does not do so, Defendants object and will not prepare or produce

a witness as to such topic.

## TOPIC NO. 6

Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products.

## RESPONSE TO TOPIC NO. 6

Defendants will produce a witness or witnesses to testify to the instructions provided to

users of Defendants' Software Products and Defendants' Hardware Products. However,

Defendants object to the topic as stated because it is overly broad and if read literally, would

encompass many aspects of the products in question having nothing to do with this lawsuit. Rule

30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that

Topic No. 6 does not do so, Defendants object and will not prepare or produce a witness as to

such topic.

RLF1-3181039-1

## TOPIC NO. 7

The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

## RESPONSE TO TOPIC NO. 7

Defendants will produce a witness or witnesses to testify to the marketing and

promotional materials for Defendants' Software Products, Defendants' Hardware Products, and

Third Party Software Products. However, Defendants object to the topic as stated because it is

overly broad and if read literally, would encompass many aspects of the products in question

having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with

"reasonable particularity." To the extent that Topic No. 7 does not do so, Defendants object and

will not prepare or produce a witness as to such topic.

## TOPIC NO. 8

Partnerships, joint ventures, co-promotions, joint research, and the like between Defendants and third party makers of software for Variable Digital Printing.

## RESPONSE TO TOPIC NO. 8

As noted in Defendants' letter to RRD of June 22, 2007 (Ltr. from Grow to Secord of

June 22), the Amended Notice fails to identify "third party makers of software for Variable

Digital Printing" with "reasonable particularity" as required by Rule 30(b)(6). RRD's Amended

Notice of Deposition dated November 10, 2006, fails to define the term, and fails to properly

place Defendants on notice as to the third parties to be covered at the deposition. The Amended

Notice also fails to define the scope of this topic with "reasonable particularity," to the extent it

includes the imprecise term "and the like." The Amended Notice is thus vague and ambiguous.

Therefore, Defendants object and will not prepare or produce a witness or witnesses for this topic

at this time.

## TOPIC NO. 9

Promotion or sales by defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

## RESPONSE TO TOPIC NO. 9

Defendants will produce a witness or witnesses to testify to sales of Defendants'

Software Products, Defendants' Hardware Products, and Third Party Software Products.

However, Defendants object to the topic as stated because it is overly broad and if read literally,

would encompass many aspects of the products in question having nothing to do with this

lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the

extent that Topic No. 9 does not do so, Defendants object and will not prepare or produce a

witness as to such topic.

## TOPIC NO. 10

The identity and location of all documents and things concerning the foregoing topics.

## RESPONSE TO TOPIC NO. 10

Subject to the foregoing objections, Defendants will produce a witness or witnesses to

testify to the identity and location of non-privileged documents and things responsive to the

topics above for which Defendants have agreed to produce a witness. Defendants do not have

any non-privileged documents responsive to this document request.

## TOPIC NO. 11

The identity and location of all persons knowledgeable about the foregoing topics.

## RESPONSE TO TOPIC NO. 11

Subject to the foregoing objections, Defendants will produce a witness or witnesses to

testify to the identity and location of persons knowledgeable about non-privileged information, if

any, responsive to the topics above for which Defendants have agreed to produce a witness.

RLF1-3181039-1

Defendants do not have any non-privileged documents responsive to this document request.

OF COUNSEL:
Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC   20004-2595
(202) 624-2500

Dated:  July 23, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,*
*NexPress Solutions, Inc., Kodak Versamark,*
*Inc., Eastman Kodak Company and Kodak*
*Graphic Communications Company*

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>     Defendants. | C. A. 06-32-JJF |
| EASTMAN KODAK COMPANY,<br><br>     Counterclaim-Plaintiff,<br><br>     v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>     Counterclaim-Defendant. | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S,
EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS
COMPANY'S RESPONSES AND OBJECTIONS TO R.R. DONNELLEY'S SECOND
NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 30(b)(6)**

Defendants Creo, Inc., Nexpress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak

Company, and Kodak Graphic Communications Company (collectively, "Defendants") hereby

respond to R.R. Donnelley & Sons Company's ("RRD") Second Notice of Deposition of

Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) (hereinafter, "Deposition

Notice").

Regarding the Deposition Notice, Defendants will work with RRD to identify a mutually acceptable date or date(s) and location or location(s). Defendants will use their best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications set forth below. Defendants, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed. Defendants reserve all objections, in this or any other proceeding, with respect to the relevance, materiality, and admissibility of any deposition topics or responses to the topics.

Defendants will supplement their document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Defendants do not intend to produce additional documents.

## I.    GENERAL OBJECTIONS TO TOPICS AND REQUESTS FOR PRODUCTION

Defendants make the following objections, whether or not separately set forth, in response to each of the topics:

1.    Defendants object to the Deposition Notice to the extent it fails to provide a reasonable time frame limitation. Defendants will produce testimony regarding events since 2001.

2.    Defendants object to the Deposition Notice to the extent it fails to identify "Defendants' Software Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "Defendants' Software Products" includes any "software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing." The term "Variable Digital Printing" is also broadly defined by RRD as "digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied." RRD's definition for "Defendants' Software Products" is overly broad, vague and ambiguous,

and fails to properly place Defendants on notice of all software products to be covered at the deposition.   RRD has, itself, admitted that this broad definition encompasses technologies completely unrelated to the subject matter of this suit, such as "the ink jet printer sitting in many homes today." (D.I. 35 at 2.) Defendants will only prepare and produce a witness or witnesses to testify regarding software products specifically identified by RRD, and only then insofar as Defendants have knowledge regarding products that they did not design and/or develop.  To date, RRD has only specifically identified Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro.

       3.     Defendants object to the Deposition Notice to the extent it fails to identify "Defendants' Hardware Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "Defendants' Hardware Products" include "any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing."  This definition is vague and ambiguous, and fails to properly place Defendants on notice as to all hardware products to be covered at the deposition.  Defendants will only prepare and produce a witness or witnesses to testify regarding hardware products specifically identified by RRD.  To date, RRD has only specifically identified the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

       4.     Defendants object to the Deposition Notice to the extent it fails to identify "Third Party Software Products" with "reasonable particularity" as required by Rule 30(b)(6).   As

- 3 -

defined in RRD's Amended Notice of Deposition dated November 10, 2006, "'Third Party Software Products' means any software product meant to enable Variable Digital Printing." This definition is overly broad, as Defendants cannot possibly identify, let alone prepare witnesses to testify about, all software products intended by third party producers "to enable Variable Digital Printing." Defendants also cannot be expected to produce a witness or witnesses to testify as to software products which Defendants did not design and/or develop. Moreover, the definition of "Third Party Software Products" is vague and ambiguous, and fails to properly place Defendants on notice as to all software products to be covered at the deposition. The Deposition Notice has not specifically identified any "Third Party Software Products." Therefore, Defendants object and will not prepare or produce a witness or witnesses for any topic to the extent it includes "Third Party Software Products."

## II.   SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

### TOPIC NO. 1

The output produced by Defendants' Software Products and by Third Party Software Products, including but not limited to the organization and formatting of static and variable data in such output.

### RESPONSE TO TOPIC NO. 1

Defendants object to the topic as stated because it is overly broad and, if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 1 does not do so, Defendants object and will not prepare or produce a witness or witnesses as to such topic.

Subject to the foregoing general and specific objections, Defendants will produce a witness or witnesses to testify to the output produced by Darwin Desktop for QuarkXPress,

Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and Fusion Pro, as they relate to Variable Digital Printing, insofar as Defendants have knowledge regarding products that they did not design and/or develop.

**TOPIC NO. 2**

Defendants' inbound and outbound patent licenses relating to Variable Digital Printing.

**RESPONSE TO TOPIC NO. 2**

Defendants object to the topic to the extent it seeks testimony regarding any responsive information protected from disclosure by the attorney-client and/or attorney work product privileges.

Subject to the foregoing general and specific objections, Defendants will produce a witness or witnesses to testify to Defendants' inbound and outbound patent licenses relating to Variable Digital Printing, to the extent such licenses exist.

**TOPIC NO. 3**

Defendants' sales, both in units and dollar amounts, revenue, costs, and profits relating to Defendants' Software Products and Defendants' Hardware Products.

**RESPONSE TO TOPIC NO. 3**

Subject to the foregoing general objections, Defendants will produce a witness or witnesses to testify regarding Defendants' sales, revenue, costs, and profits relating to Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the

Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500

Digital Production Color Press, to the extent and in the manner in which such information is

maintained by Defendants.

## TOPIC NO. 4

The design, operation, functionality, features, structure, performance, and technical
characteristics of Defendants' Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 4

Subject to the foregoing objections, Defendants will produce a witness or witnesses to

testify regarding the design, functionality and features of Darwin Desktop for QuarkXPress,

Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin

Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign

(Windows), DL-100, DL-1000, Composer, and FusionPro, as they relate to Variable Digital

Printing, insofar as Defendants have knowledge.

## TOPIC NO. 5

The conception, design, development, and commercialization of Defendants' Software
Products relating to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 5

Subject to the foregoing objections, Defendants will produce a witness or witnesses to

testify regarding the conception, development and commercialization of Darwin Desktop for

QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign

(Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro

for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro, insofar as Defendants

have knowledge. This topic otherwise is duplicative of Topic No. 4.

RLF1-3142429-1

## TOPIC NO. 6

The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation) relating to Variable Digital Printing, including but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

## RESPONSE TO TOPIC NO. 6

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the users' guides, reference manuals and product manuals for Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, relating to Variable Digital Printing, insofar as Defendants have knowledge.

## TOPIC NO. 7

Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products relating to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 7

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the instructions provided to users of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, related to Variable Digital Printing, insofar as Defendants have knowledge.

RLF1-3142429-1

## TOPIC NO. 8

The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 8

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the marketing and promotional materials for Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, as they relate to Variable Digital Printing.

## TOPIC NO. 9

Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 9

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the sales of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, as they relate to Variable Digital Printing.

- 8 -

OF COUNSEL:
Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated:  April 23, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendant and
Counterclaim-Plaintiff Eastman
Kodak Company and Defendants Creo, Inc.,
NexPress Solutions, Inc., Kodak Versamark,
Inc., and Kodak Graphic Communications
Company*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2007, I served the foregoing on counsel as follows:

### BY HAND AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

### VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

| | | |
|---|---|---|
| Douglas I. Lewis | John G. Hutchinson | Jamie L. Secord |
| SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP |
| One South Dearborn Street | 787 Seventh Avenue | One South Dearborn Street |
| Chicago, IL 60603 | New York, NY 10019 | Chicago, IL 60603 |
| (312) 853-4169 | (212)839-5398 | (312) 853-2206 |
| dilewis@sidley.com | jhutchinson@sidley.com | jsecord@sidley.com |

Gregory E. Stuhlman(#4765)
stuhlman@rlf.com

# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>     Plaintiff,<br><br>     v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>     Defendants.<br><hr>EASTMAN KODAK COMPANY,<br><br>     Counterclaim-Plaintiff,<br><br>     v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>     Counterclaim-Defendant. | C. A. No. 06-32-JJF |

## CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSES AND OBJECTIONS TO R.R. DONNELLEY'S THIRD NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

Defendants Creo, Inc., Nexpress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants") hereby respond to R.R. Donnelley & Sons Company's ("RRD") Third Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) (hereinafter, "Deposition Notice").

Regarding the Deposition Notice, Defendants will work with RRD to identify a mutually acceptable date or date(s) and location or location(s). Defendants will use their best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications set forth below. Defendants, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed. Defendants reserve all objections, in this or any other proceeding, with respect to the relevance, materiality, and admissibility of any deposition topics or responses to the topics.

Defendants will supplement their document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Defendants do not intend to produce additional documents.

## I.    GENERAL OBJECTIONS TO TOPICS AND REQUESTS FOR PRODUCTION

Defendants make the following objections, whether or not separately set forth, in response to each of the topics:

1.    Defendants object to the Deposition Notice to the extent it fails to provide a reasonable time frame limitation. Defendants will produce testimony regarding events since 2001.

2.    Defendants object to the Deposition Notice to the extent it fails to identify "Defendants' Software Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "Defendants' Software Products" includes any "software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing." The term "Variable Digital Printing" is also broadly defined by RRD as "digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied." RRD's definition for "Defendants' Software Products" is overly broad, vague and ambiguous,

- 2 -

and fails to properly place Defendants on notice of all software products to be covered at the deposition. RRD has, itself, admitted that this broad definition encompasses technologies completely unrelated to the subject matter of this suit, such as "the ink jet printer sitting in many homes today." (D.I. 35 at 2.) Defendants will only prepare and produce a witness or witnesses to testify regarding software products specifically identified by RRD, and only then insofar as Defendants have knowledge regarding products that they did not design and/or develop. To date, RRD has only specifically identified Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro.

       2.        Defendants object to the Deposition Notice to the extent it fails to identify "Third Party Software Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "'Third Party Software Products' means any software product meant to enable Variable Digital Printing." This definition is overly broad, as Defendants cannot possibly identify, let alone prepare witnesses to testify about, all software products intended by third party producers "to enable Variable Digital Printing." Defendants also cannot be expected to produce a witness or witnesses to testify as to software products which Defendants did not design and/or develop. Moreover, the definition of "Third Party Software Products" is vague and ambiguous, and fails to properly place Defendants on notice as to all software products to be covered at the deposition. The Deposition Notice has not specifically identified any "Third Party Software Products." Therefore, Defendants object and will not prepare or produce a witness or witnesses for any topic to the extent it includes "Third Party Software Products."

- 3 -

## II.    SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

### TOPIC NO. 1

The identification of, meaning of, and use of data stored by Defendants' Software Products and by Third Party Software Products, including but not limited to temporary data (whether written to a file or not) used in Variable Digital Printing and data stored in databases or in files (including but not limited to the Primebase database) during Variable Digital Printing.

### RESPONSE TO TOPIC NO. 1

Defendants object to the topic as stated because it is overly broad and, if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 1 does not do so, Defendants object and will not prepare or produce a witness or witnesses as to such topic. The topic is also vague and overly broad as "data" is undefined, and could include data that relates to a specific print job.

Subject to the foregoing general and specific objections, Defendants will produce a witness or witnesses to testify to the identification of, meaning of, and use of the data structures stored by Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and Fusion Pro, as they relate to Variable Digital Printing, insofar as Defendants have knowledge regarding products that they did not design and/or develop.

OF COUNSEL:
Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated: June 8, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendant and
Counterclaim-Plaintiff Eastman
Kodak Company and Defendants Creo, Inc.,
NexPress Solutions, Inc., Kodak Versamark,
Inc., and Kodak Graphic Communications
Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2007, I served the foregoing on counsel as follows:

### BY HAND AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

### VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Douglas I. Lewis                John G. Hutchinson
Jamie L. Secord                 SIDLEY AUSTIN, LLP
SIDLEY AUSTIN, LLP              787 Seventh Avenue
One South Dearborn Street       New York, NY 10019
Chicago, IL 60603               (212)839-5398
(312) 853-4169                  jhutchinson@sidley.com
dilewis@sidley.com
jsecord@sidley.com

_____
Jameson A.L. Tweedie(#4927)
tweedie@rlf.com

# EXHIBIT J

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R DONNELLEY & SONS COMPANY )<br><br>Plaintiff, )<br><br>v. )<br><br>QUARK, INC., CREO, INC., EASTMAN )<br>KODAK COMPANY, AND KODAK )<br>GRAPHIC COMMUNICATIONS )<br>COMPANY )<br><br>Defendants. ) | C.A. No.: 06-CV-032-JJF |

### R.R. DONNELLEY'S AMENDED NOTICE OF DEPOSITION OF DEFENDANTS
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

To:   Richard McMillan, Jr.          Frederick L. Cottrell, III
      Jeffrey D. Sanok               Gregory E. Stuhlman
      Brian M. Koide                 Richards Layton & Finger, P.A.
      Crowell & Moring LLP           One Rodney Square
      1001 Pennsylvania Avenue, N.W.  920 North King Street
      Washington, D.C. 20004         Wilmington, DE 19801

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Fed. R. Civ. P., plaintiff

R.R. Donnelley & Sons Company ("R.R. Donnelley") will take the deposition upon oral

examination of defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphic

Communications Company (collectively "Defendants") on the topics set forth in the attached

Schedule A, through one or more of its officers, directors, or managing agents, or other persons

who consent to testify on Defendants' behalf, commencing on November 29, 2006 at 9:30 a.m.

R.R. Donnelley requests that Defendants identify in writing at least five (5) business days in

advance of the deposition the person(s) designated by Defendants, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19899-1347 beginning on the date and time specified above. The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by stenographic and/or videographic means. The deposition will continue from day to day until completed.

At least five (5) business days in advance of the scheduled deposition or 30 days from service of this Notice, whichever is earlier, Defendants are requested to produce all documents and things referenced in or related to the topics in Schedule A to the extent not previously produced.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

2

OF COUNSEL:

Bradford J. Badke
Stuart W. Yothers
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020
(212) 596-9000

Steven A. Kaufman
ROPES & GRAY LLP
One International Place
Boston, MA 02110
(617) 951-7000

November 10, 2006

545203

3

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

A.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject tot he direction or control of any of the foregoing.

B.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, including, but not limited to, Kodak Versamark, Inc., NexPress Solutions, Inc., Creo, and KGCC and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

C.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the directions or control of any of the foregoing.

D.    "Defendants" means Creo, Kodak, and KGCC, collectively.

E.    The term "document" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including documents in electronic form, and physical objects and things within the meaning of that Rule, such as research and development samples, prototypes, production samples and the like. A draft or non-identical copy is a separate document within the meaning of this term.

4

F.    The term "thing" refers to any physical specimen or tangible item in the possession, custody, or control of Defendants.

G.    The term "concerning" means relating to, referring to, regarding, discussing, describing, evidencing, constituting, supporting, or refuting.

H.    "The '452 patent" means United States Patent No. 6,205,452.

I.    "The '599 patent" means United States Patent No. 6,327,599.

J.    "The '940 patent" means United States Patent No. 6,844,940.

K.    "The '801 patent" means United States Patent No. 6,952,801.

L.    The "patents-in-suit" shall refer to the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

M.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

N.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

O.    The term "including" does not limit the scope of a request. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

5

P.    The singular shall include the plural and the plural shall include the singular.

Q.    The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing.

R.    The term "Defendants' Hardware Products" means any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing, including but not limited to the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

S.    The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

T.    The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

U.    All documents related to the topics in Schedule A shall be produced to R.R. Donnelley in the same file or organizational environment in which they were maintained. For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket, or other grouping responsive to said request, in the same order or manner of arrangement as the original. A document that is stapled, clipped or otherwise bound should be produced in the same manner as the original.

V.    The request for documents and things related to the topics in Schedule A shall be deemed to be continuing and, in accordance with Fed. R. Civ. P. 26(e), if, after responding to the request, Defendants acquire knowledge or information regarding additional information responsive to the request, Defendants shall provide R.R. Donnelley with a statement of such additional information.

## TOPICS

1.    The design, operation, functionality, features, structure, performance, and technical characteristics of Defendants' Software Products.

2.    Defendants earliest knowledge of the patents-in-suit or of the patent applications leading to the patents-in-suit.

3.    Any consideration, examination, analysis, or test conducted on Defendants' Software Products or Defendants' Hardware Products that relates in any way to determining whether that product infringes the patents-in-suit.

4.    The conception, design, development, and commercialization of Defendants' Software Products.

5.    The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation), including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

6.    Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products.

7.    The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

8.    Partnerships, joint ventures, co-promotions, joint research, and the like between Defendants and third party makers of software for Variable Digital Printing.

8

9.    Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

10.    The identity and location of all documents and things concerning the foregoing topics.

11.    The identity and location of all persons knowledgeable about the foregoing topics.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 10, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on November 10, 2006, upon the following in the manner indicated:

### BY HAND

> Frederick L. Cottrell III
> Richards Layton & Finger
> One Rodney Square
> 920 N. King Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, NW
> Washington, DC 20004-2595

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,  )
)
Plaintiff,     )
)
v.        )      C.A. No. 06-cv-032-JJF
)
CREO, INC., NEXPRESS SOLUTIONS,  )
INC., KODAK VERSAMARK, INC.,  )
EASTMAN KODAK COMPANY, AND  )
KODAK GRAPHIC COMMUNICATIONS )
COMPANY,     )
)
Defendants.    )
)
_____ )
)
EASTMAN KODAK COMPANY ,  )
)
Counterclaim-Plaintiff,   )
)
v.        )
)
R.R. DONNELLEY & SONS COMPANY,  )
)
Counterclaim-Defendant.   )
)
_____ )

### R.R. DONNELLEY'S SECOND NOTICE OF DEPOSITION OF DEFENDANTS
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

To:    Richard McMillan, Jr.      Frederick L. Cottrell, III
       Jeffrey D. Sanok         Gregory E. Stuhlman
       Brian M. Koide          Richards Layton & Finger, P.A.
       Crowell & Moring LLP      One Rodney Square
       1001 Pennsylvania Avenue, N.W.  920 North King Street
       Washington, D.C. 20004      Wilmington, DE 19801

       PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Fed. R. Civ. P., plaintiff

R.R. Donnelley & Sons Company ("R.R. Donnelley") will take the deposition upon oral

examination of Defendants Creo, Inc. ("Creo"), NexPress Solutions, Inc. ("NexPress"), Kodak

Versamark, Inc. ("Kodak Versamark"), Eastman Kodak Company ("Kodak"), and Kodak

Graphic Communications Company ("KGCC"), collectively "Defendants," on the topics set forth in the attached Schedule A, through one or more of its officers, directors, or managing agents, or other persons who consent to testify on Defendants' behalf, commencing on May 2, 2007 at 9:30 a.m.

R.R. Donnelley requests that Defendants identify in writing at least five (5) business days in advance of the deposition the person(s) designated by Defendants, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19899-1347, beginning on the date and time specified above. The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by stenographic and/or videographic means. The deposition will continue from day to day until completed. At least five (5) business days in advance of the scheduled deposition or 30 days from service of this Notice, whichever is earlier, Defendants are requested to produce all documents and things referenced in or related to the topics in Schedule A to the extent not previously produced.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

2

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

April 12, 2007

798709

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

R.R. Donnelley incorporates herein the Definitions and Instructions in "R.R. DONNELLEY'S AMENDED NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)" dated November 10, 2006.

### TOPICS

1.      The output produced by Defendants' Software Products and by Third Party Software Products, including but not limited to the organization and formatting of static and variable data in such output.

2.      Defendants' inbound and outbound patent licenses relating to Variable Digital Printing.

3.      Defendants' sales, both in units and dollar amounts, revenue, costs, and profits relating to Defendants' Software Products and Defendants' Hardware Products.

4.      The design, operation, functionality, features, structure, performance, and technical characteristics of Defendants' Software Products as they relate to Variable Digital Printing.

5.      The conception, design, development, and commercialization of Defendants' Software Products relating to Variable Digital Printing.

6.      The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation) relating to Variable Digital Printing, including but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

4

7.    Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products relating to Variable Digital Printing.

8.    The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

9.    Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 12, 2007, the foregoing R.R. DONNELLEY'S SECOND NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6) was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing(s) to the following counsel:

> Frederick L. Cottrell III
> Richards Layton & Finger

In addition, the undersigned hereby certifies that on April 12, 2007, copies of the foregoing was caused to be served in the manner indicated upon the following:

### BY EMAIL AND HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com

*/s/ Rodger D. Smith II*
Rodger D. Smith II (# 3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
(302) 658-9200
rsmith@mnat.com

# EXHIBIT L

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY, )
                                      )
         Plaintiff,              )
                                        )
       v.                       )              C.A. No. 06-032-JJF
                                        )
CREO, INC., NEXPRESS SOLUTIONS, )
INC., KODAK VERSAMARK, INC., )
EASTMAN KODAK COMPANY, AND )
KODAK GRAPHIC COMMUNICATIONS )
COMPANY,                     )
                                        )
         Defendants.         )

_____

                                        )
EASTMAN KODAK COMPANY,       )
                                         )
         Counterclaim-Plaintiff,    )
                                         )
       v.                       )
                                         )
R.R. DONNELLEY & SONS COMPANY, )
                                         )
         Counterclaim-Defendant.    )
                                         )

**R.R. DONNELLEY'S THIRD NOTICE OF DEPOSITION OF DEFENDANTS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

        PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Fed. R. Civ. P., plaintiff

R.R. Donnelley & Sons Company ("R.R. Donnelley") will take the deposition upon oral

examination of defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman

Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants")

on the topics set forth in the attached Schedule A, through one or more of their officers,

directors, or managing agents, or other persons who consent to testify on Defendants' behalf,

commencing on July 2, 2007 at 9:30 a.m.

R.R. Donnelley requests that Defendants identify in writing at least five (5) business days in advance of the deposition the person(s) designated by Defendants, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19899-1347, beginning on the date and time specified above. The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by stenographic and/or videographic means. The deposition will continue from day to day until completed. At least five (5) business days in advance of the scheduled deposition or 30 days from service of this Notice, whichever is earlier, Defendants are requested to produce all documents and things referenced in or related to the topics in Schedule A to the extent not previously produced.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
   *Attorneys for Plaintiff*
   *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

2

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

June 4, 2007

**SCHEDULE A**

**DEFINITIONS AND INSTRUCTIONS**

R.R. Donnelley incorporates herein the Definitions and Instructions in "R.R. DONNELLEY'S AMENDED NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)," dated November 10, 2006.

**TOPICS**

1.    The identification of, meaning of, and use of data stored by Defendants' Software Products and by Third Party Software Products, including but not limited to temporary data (whether written to a file or not) used in Variable Digital Printing and data stored in databases or in files (including but not limited to the Primebase database) during Variable Digital Printing.

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 4, 2007, he caused the foregoing to

be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of

such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on June 4, 2007, upon the

following in the manner indicated:

### BY EMAIL AND BY HAND

> Frederick L. Cottrell III
> Richards Layton & Finger
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

### BY EMAIL

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

> /s/    Rodger D. Smith II (#3778)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com

# EXHIBIT M



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsecord@sidley.com
(312) 853-2206

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

FOUNDED 1866

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

May 23, 2007

**Via Facsimile and U.S. Mail**
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-624-2709 (telephone)
202-628-5116 (facsimile)

Re:    *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and
Kodak Graphic Communications Company,* No. 06-032-JJF (D. Del.)

Dear Nathaniel:

This letter responds to your letter to Asheesh Puri of May 9, 2007 regarding Defendants' Rule 30(b)(6) objections to the aspects of Topics 1, 8, and 9 that relate to Third Party Software Products. R.R. Donnelley & Sons Company ("R.R. Donnelley") recently issued an interrogatory to Defendants seeking more information about the Third Party Software Products that Defendants have offered, sold, marketed, or promoted for use with Defendants' Hardware Products since 2001. Once R.R. Donnelley receives the information about those Third Party Software Products, R.R. Donnelley will be in a better position to identify the Third Party Software Products about which R.R. Donnelley will ask Defendants' witness(es) in the Rule 30(b)(6) deposition.

In the meantime, please provide the availability of Defendants' Rule 30(b)(6) witnesses regarding all aspects of the pending Rule 30(b)(6) Topics that do not relate to Third Party Software Products. R.R. Donnelley would like to take depositions related to the accused Darwin software during the last two weeks of June 2007; depositions related to the accused DL software during the first two weeks of July 2007; and depositions related to the accused Composer software during the last two weeks of July 2007.

Sincerely,

Jamie L. Secord

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CHI 3879561v.1

# EXHIBIT N

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants. | C. A. No. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant, | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSE TO R.R. DONNELLEY & SONS THIRD SET OF INTERROGATORIES**

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure and the Court's January 4, 2007 Order, Creo, Inc., NexPress Solutions, Inc., Kodak VersaMark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company ("Defendants") provide the following response to the Third Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics Communications Company ("the Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

## I.    GENERAL RESPONSES

Defendants' responses to the Interrogatories are made to the best of Defendants' current employees' present knowledge, information, and belief.  Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendants' recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.    Defendants reserve the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Defendants make the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Defendants object generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine.  Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Defendants object to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in

2

any way the plain meaning and scope of any specific interrogatory, on the ground that such

enlargement, expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible,

unduly broad, and uncertain.

    3.      Defendants object to all instructions, definitions, and interrogatories to the extent

they seek information not currently in Defendants' possession, custody, or control, or refer to

persons, entities, or events not known to Defendants, on the grounds that such instructions,

definitions, or interrogatories seek to require more of Defendants than any obligation imposed by

law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and

would seek to impose upon Defendants an obligation to investigate or discover information or

materials from third parties or sources who are equally accessible to RRD.

    4.      Defendants object to all instructions, definitions, and interrogatories to the extent

they rely on the term "Defendants' Hardware Products." As defined, the term "Defendants'

Hardware Products" is vague and ambiguous, to the extent it includes "successor" hardware

products. "Successor" hardware products are undefined in the interrogatories, and therefore

vague and ambiguous. Accordingly, Defendants will only answer the interrogatories with

regards to the hardware products specifically identified in the interrogatories.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 21

    Identify all Third Party Software Products that Defendants have offered, sold, marketed,
or promoted for use with Defendants' Hardware Products since 2001 and, for each Third Party
Software Product identified, provide the name, owner, version, and year that Defendants offered,
sold, marketed, or promoted the Third Party Software Product.

3

**RESPONSE TO INTERROGATORY NO. 21**

Defendants object to this Interrogatory to the extent that it seeks information related to Third Party Software Products that are not relevant to the claims or defenses of any party or the subject matter of the action. In particular, RRD has yet to identify even a single specific Third Party Software Product in its pleadings, discovery, or correspondence. Defendants also object to the term "owner" as ambiguous with respect to Third Party Software Products. When providing ownership information concerning a Third Party Software Product, Defendants will supply information sufficient to describe a manufacturer and/or distributor, to the best of Defendants' knowledge and information. Defendants further object to the undefined terms "marketed" or "promoted" as overly broad and ambiguous. Defendants are aware that Third Party Software Products exist that are, to varying degrees, compatible with Defendants' products. By identifying such Software Products below, Defendants are not asserting that they sell, offer to sell, market, or promote each of these products, but are merely indicating that Defendants believe such products may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products. Subject to the foregoing general and specific objections, Defendants respond by identifying the following Third Party Software Products since 2001:

| Name and Version (to the extent the version number is known) | Manufacturer and/or Distributor | Year |
|---|---|---|
| AUTOGRAPH | Document Sciences Corporation | 2006 to 2007 |
| DesignMerge Pro | Meadows Publishing Solutions | 2007 to 2007 |
| Dialogue | Exstream Software | 2006 to 2007 |
| DIRECTSMILE Connectivity Suite | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Document | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Generator | DirectSmile | 2006 to 2007 |
| DOC1 | Group1 Software Europe Ltd. | 2006 to 2007 |
| .EDIT | Pageflex | 2004 to 2007 |
| FUSE | L2 Solutions | 2006 to 2007 |
| IPM System | Techno Design BV | 2006 to 2007 |
| iWay Prime | Press-Sense | 2006 to 2007 |
| Media Manager | Factotum Media | 2007 to 2007 |

4

| Mpower | Pageflex | 2004 to 2007 |
| NEWLEAF | PrintSoft | 2006 to 2007 |
| Open Print | Sefas Innovation | 2006 to 2007 |
| OPUS | Elixir Technologies Corporation | 2006 to 2007 |
| Papyrus | ISIS | 2006 to 2007 |
| pdfExpress | Lexigraph Software | 2006 to 2007 |
| PERSONA | Pageflex | 2006 to 2007 |
| Personal Effect | XMPie | 2003 to 2007 |
| Personalizer-X, v3.1 | TechnoDesign BV | 2002 to 2007 |
| PlanetPress, v 4, v 5, v 6 | Objectif Lune | 2005 to 2007 |
| PReS | PrintSoft | 2006 to 2007 |
| PrintNet T | GMC Software Technology | 2003 to 2007 |
| PrintShop Mail, v 1 – v5 | Atlas Software | 2002 to 2007 |
| Proform Designer | Lytrod Software,Inc. | 2007 to 2007 |
| Remake | Sefas Innovation | 2006 to 2007 |
| STOREFRONT | Pageflex | 2007 to 2007 |
| VIP | Emtex | 2006 to 2007 |
| VITESSE | Elixir Technologies Corporation | 2006 to 2007 |
| XPRESSION | Document Sciences Corporation | 2006 to 2007 |

Defendants reserve the right to supplement its response to this interrogatory at appropriate times in this litigation.

As to objections only,

Frederick L. Cottrell, III (#2555)
  cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
  tweedie@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,*
*NexPress Solutions, Inc., Kodak*
*VersaMark, Inc., Eastman Kodak*
*Company, and Kodak Graphic*
*Communications Company*

OF COUNSEL:
Richard McMillan, Jr.
  rmcmillan@crowell.com
Jeffrey D. Sanok
  jsanok@crowell.com
Brian M. Koide
  bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated:  June 21, 2007

5

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2007, I served the foregoing on counsel as follows:

**BY HAND DELIVERY AND ELECTRONIC MAIL**

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Douglas I. Lewis                     John G. Hutchinson
Jamie L. Secord                      SIDLEY AUSTIN, LLP
SIDLEY AUSTIN, LLP                   787 Seventh Avenue
One South Dearborn Street            New York, NY 10019
Chicago, IL 60603                    (212)839-5398
(312) 853-4169                       jhutchinson@sidley.com
dilewis@sidley.com
jsecord@sidley.com

_____
Jameson A.L. Tweedie(#4927)
tweedie@rlf.com

# EXHIBIT O



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL  60603
(312) 853 7000
(312) 853 7036 FAX

dilewis@sidley.com
(312) 853-4169

| BEIJING | GENEVA | SAN FRANCISCO |
| BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO | LONDON | SINGAPORE |
| DALLAS | LOS ANGELES | TOKYO |
| FRANKFURT | NEW YORK | WASHINGTON, DC |

FOUNDED 1866

June 4, 2007


Honorable William H. Baughman
United States District Court for the North District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1846

Re:    Tesseron, Ltd., v. R.R. Donnelley & Sons Company, 1:06-CV-2909 (N.D. Ohio)

Dear Judge Baughman:

        R.R. Donnelley & Sons Co. ("RRD") submits this letter in response to Tesseron
Ltd.'s counsel's May 30, 2007 letter to Judge Boyko ("Ltr."), ostensibly seeking a discovery
conference but in reality moving to compel.  Ex. A, Ltr. at 1.

    **A.  Introduction**

        Tesseron asks the Court to allow it unbridled discovery with no relationship to the
issues in this case or its infringement allegations.  Indeed, Tesseron seeks to have RRD root
around a large, global company with multiple businesses and over 500 locations worldwide,
expending vast amounts of time and money, to collect, process, and produce documents so that it
can determine whether it has a patent infringement claim.

        In a patent case, discovery is limited to products or systems accused of
infringement, and the plaintiff cannot use discovery to determine if it has an infringement claim
against particular products or systems. *Honeywell Intern. Inc. v. Audiovox Comm. Corp.*, 2005
WL 3988905 at *1, n. 2 (D. Del. 2005).  A patentee must have a reasonable basis to bring an
infringement claim, and only identified products or systems can logically meet that standard.
*View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F. 3d 981, 984 (Fed. Cir. 2000).  Here, Tesseron has
identified only two systems – an EFI Fiery Controller and a system disclosed in a 1995 RRD
patent – but seeks much broader discovery.

        To be clear, the parties' primary dispute does not relate to discovery about these
identified systems.  Rather, the parties dispute whether Tesseron can take discovery about other,
unnamed and unaccused systems.  Tesseron seeks broad discovery of "any and all documents"
relating to any system (and its components) that can produce "variable and/or personalized
content."  Indeed, Tesseron even seeks "any and all documents" relating to any system "capable"
of such functionality.  Tesseron's definition is so broad that it includes, for example, the personal

## SIDLEY

SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 2

computer, printer and software that produced this letter (*i.e.*, a system and its components that can produce "variable and/or personalized content," such as the content in this letter).

Tesseron's patent claims, however, are nowhere near as broad as its discovery requests.[1] It is extremely unlikely that Tesseron will accuse every system falling within its requests (and every component thereof) of infringing -- or even most of them. And, importantly, complying with Tesseron's imprecise and overreaching discovery would require RRD to expend vast and unnecessary resources in time and money.

RRD has met and conferred with Tesseron and explained why its discovery requests are grossly overbroad. Tesseron is uninterested, however, in focusing its discovery on its actual claims and the accused systems it has identified (*i.e.,* the EFI Fiery Controller and the system disclosed in a 1995 RRD patent). Instead, turning discovery into a quest for a claim, Tesseron's discovery requests seek voluminous documents having no relation to this case. RRD could not casually agree to produce such irrelevant documents at great expense to itself. RRD simply had no choice but to object to Tesseron's overbroad and unduly burdensome discovery requests.

The discovery dispute here is therefore two-fold: (1) whether Tesseron can force RRD to expend substantial resources searching for documents relating to unidentified and unaccused systems; and (2) if so, whether Tesseron has appropriately defined the scope of such a search. Because Tesseron can take discovery only with respect to the identified and accused products and because the discovery Tesseron seeks is hopelessly imprecise and overbroad, the Court should deny Tesseron's request that RRD be ordered to comply with Tesseron's discovery requests.

### B. Background

Tesseron filed this suit last December claiming that RRD infringes four Tesseron patents. Although Tesseron describes the patents-in-suit as "pioneering" (Ltr. at 2), variable printing existed long before Tesseron filed its first patent application, especially as "variable printing" is described by the definition Tesseron uses in its discovery requests. Indeed, as the face of Tesseron's patents shows, the Patent Office cited numerous prior art references against the patents-in-suit. Ex. C-F, U.S. Patents No. 5,729,665; 5,937,153; 6,381,028; and 6,687,016 (the "patents-in-suit"). During prosecution of the patents-in-suit, Tesseron had to amend its claims repeatedly before the Patent Office would allow the patents-in-suit. *See e.g.,* Ex, G, Amendment A ('665 patent file history) (amending claims to include additional elements); Ex. H, Amendment B ('665 patent file history) (adding claim limitations). Moreover, in obtaining

---

[1] To show patent infringement, Tesseron must prove that an RRD system contains every single feature described in at least one of its patent claims. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 n. 3 (Fed. Cir. 1989) (citing the all elements rule).

SIDLEY AUSTIN LLP

# SIDLEY

Judge William H. Baughman
June 4, 2007
Page 3

the patents-in-suit, Tesseron argued to the Patent Office that its patents had limited scope in
many areas. *See e.g.*, Ex. G, Amendment A at 9-18 (arguing for narrower scope of page
description code and variable data bit map, among others); Ex. H, Amendment B at 7-12
(arguing that the graphics state must be reserved and must be applied to variable data). And
although RRD is still seeking details, Tesseron's predecessor sued Scitex under at least one of
the patents-in-suit and lost, indicating that the patents-in-suit are far more limited that Tesseron
now asserts. Ex. I, *Varis Corp. v. SCITEX Digital Inc.*, No. 3:99-cv-00336 (S.D. Ohio), Order of
Feb. 13, 2002 (entering finding of non-infringement and dismissing plaintiff's claims).

In its Complaint, Tesseron did not identify any RRD systems or activities that
supposedly infringe the patents-in-suit, thereby taking generous advantage of notice pleading.
When on February 20, 2007, Tesseron served its initial disclosures, it again failed to identify any
accused RRD systems or activities.

Tesseron served discovery requests on April 5, 2007 and once again failed to
identify any accused RRD systems or activities. Instead of identifying particular accused
systems and seeking discovery about those systems, Tesseron sought essentially every document
(*i.e.*, "any and all documents") relating to "variable data printing systems," which it defined to
include any system (or component of such a system) even "capable" of creating "variable and/or
personalized content." As explained below, this imprecise and overbroad definition
encompasses numerous systems that Tesseron cannot possibly intend to accuse of infringing,
including systems unrelated to its claims, prior art, and licensed systems.

On May 10, 2007, RRD served its objections to Tesseron's discovery requests.
Up to that time, months after filing suit, Tesseron still had not identified a single RRD system or
activity of infringing. Tesseron's discovery requests were so grossly inappropriate that RRD had
no choice but to object to the requests in their entirety. In other words, Tesseron's complete
failure to identify a single allegedly infringing system more than justified RRD's refusal to
produce every document relating to any system "capable" of "variable and/or personalized"
printing as Tesseron sought.

On the same day, May 10, 2007,[2] Tesseron responded to RRD's interrogatory
seeking Tesseron's infringement allegations with two claim charts finally identifying systems
that allegedly infringe the patents-in-suit: (1) an EFI Fiery Controller and (2) a system disclosed
in an RRD patent filed in 1995. After receiving this information, RRD informed Tesseron that
the only EFI Controller it uses for variable printing was purchased from Tesseron's licensee,
Xerox, and has asked for Tesseron's license with Xerox. RRD has also asked Tesseron whether
it intends to maintain its infringement claim against this system. With regard to the system

---

[2] RRD received this response on May 14, 2007, the following Monday.

SIDLEY AUSTIN LLP
# SIDLEY

Judge William H. Baughman
June 4, 2007
Page 4

described in the RRD patent, RRD informed Tesseron (both recently and in July 2004 in response to letters from Tesseron) that it does not currently use this system.

Importantly, after receiving Tesseron's accusations relating to these two systems, RRD agreed to supplement its discovery responses. *See* Ex. J, RRD's counsel's May 23, 2007 letter to Tesseron Ltd.'s counsel. Given that Tesseron should have identified these systems far earlier, RRD needed some time to investigate and therefore offered to provide supplemented discovery responses 30 days after receiving Tesseron's identification of these accused systems.

### C. Tesseron Cannot Take Discovery About Unnamed And Unidentified Systems That It Has Not Accused of Infringing.

The parties' dispute does not relate to Tesseron's right to discovery about the two systems that Tesseron belatedly identified as allegedly infringing the patents-in-suit. Rather, RRD disputes Tesseron's right to seek, as summarized in the title of one section in its letter to the Court, "Discovery on <u>All</u> Variable-data Printing Systems and Services Used by R.R. Donnelley." Ltr. at 4 (emphasis added). Such discovery is inappropriate because it seeks documents far in excess of what is relevant to the claims or defenses of either party.

As an initial matter, Tesseron bears the burden of showing that it seeks relevant discovery. *Hughes v. Guanciale*, 2006 WL 689114 at *1 (S.D. Ohio 2006). Tesseron has made no attempt to do this beyond its conclusory and implausible statement that everything RRD does infringes. Nonetheless, even if Tesseron could be said to have satisfied its burden, RRD shows herein why the information requested is not relevant and why Tesseron's discovery should be limited. *See id.*

Only discovery relating to identified accused systems is relevant to the parties' claims or defenses. *See* Fed. R. Civ. P. 26(b)(1).[3] To accuse a system of patent infringement,

---

[3] Tesseron's discovery is inappropriate for numerous other reasons as well. For example, although the statute of limitations prohibits Tesseron from obtaining damages before December 4, 2000, it seeks "[a]ny and all documents relating to the design or operation of Defendant's variable data printing systems <u>since January 1, 1993</u>, including but not limited to any and all software code." Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Document Request No. 10 at 17 (April 5, 2007) (emphasis added). Other requests have similarly inappropriate dates. *See e.g., id.* at Document Requests No. 12, 19, 20, 21, 23, 24, 25 and 26. Other requests seek "any and all documents" when a far smaller set would accomplish the allowed purpose. *See e.g., id.* at Document Requests No. 12 (seeking "any and all documents relating to the gross number of finished pages produced"); Plaintiff's Document Request No. 19 (seeking "any and all documents which constitute or relate to an organizational chart" for Defendant).

SIDLEY AUSTIN LLP
**SIDLEY**

Judge William H. Baughman
June 4, 2007
Page 5

Tesseron must have analyzed it and have a reasonable basis to believe it infringes. *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("Before filing counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").

For this reason, courts have repeatedly refused to order discovery beyond the systems accused of infringement. Exactly describing what Tesseron seeks to do here, one court stated that "[a] party may not obtain documents in order to discover whether it has a cause of action." *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) (denying patentee's request for production of sales documents relating to products other than the accused products for failure to show relevance). Indeed, the Federal Circuit has held that a "district court correctly refused to allow [the patentee] to conduct 'fishing expeditions in hopes of finding products that might be infringing' to oppose summary judgment." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000) (citation omitted) (upholding the district court's grant of summary judgment of non-infringement and refusal to allow additional discovery into other products because patentee failed to show the relevance of supplementing discovery requests to seek discovery relating to additional products).

And in a case quite similar to this one, the court in *Honeywell Intern., Inc. v. Audiovox Comms.*, 2005 WL 3988905 (D. Del. 2005), refused to order discovery when, after the plaintiff identified a few of defendants' cell phone models as infringing, the plaintiff sought broad discovery on all defendants' cell phone models to force the defendants to demonstrate their cell phones were not infringing. The court denied such broad discovery and expressed its disapproval of plaintiff's attempt to force defendants to produce documents on all of their products without having analyzed them. *Id.* at *1.

Conversely, the cases that Tesseron cites are off-point and do not mandate, or even suggest, that Tesseron can take broad discovery about systems it has not accused of infringing. *See* Ltr. at 5. Unlike Tesseron, the plaintiff in *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815 (E.D. Texas 2006), had identified the accused website. The parties' dispute related to which features of that website corresponded to the patent claims and the requisite level of detail in the patentee's infringement allegations. Similarly, the patentee in *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005), had identified the accused products. There too, the parties' dispute related to the level of detail in the patentee's infringement allegations.[4] Finally, in *Pierce v. Submarine Signal Co.*, 25 F. Supp. 862 (D. Mass.

---

[4] Both cases were in the Eastern District of Texas whose local rules require the patentee to provide Preliminary Infringement Contentions ("PICs"). Indeed, those local rules expressly require the patentee to identify the "accused instrumentality." *See* Ex. L, E.D. Texas P.R. 3-1(b).

SIDLEY AUSTIN LLP
**SIDLEY**

Judge William H. Baughman
June 4, 2007
Page 6

1939), an early case after the adoption of the Federal Rules, the plaintiff had identified the accused product -- a "Dorsey Fathometer."

Lacking the law, Tesseron appeals to an imagined practicality. Tesseron claims that "in infringement cases involving non-public information such as software cases, there is a pragmatic limitation on the ability of a plaintiff to provide detailed assertions at preliminary stages of the litigation, when the plaintiff does not have the necessary access to non-public information which is needed to make such assertions." Ltr. at 5. First, Tesseron confuses "detailed assertions" about identified, accused systems with identifying the accused systems in the first place. As in the Eastern District of Texas cases Tesseron cites, courts do not require detail about infringement allegations before discovery; they do, however, require identifying the accused systems. *See* Ex. L, E.D. Texas P.R. 3-1(b); Ex. M, N.D. Cal. LR 3-1(b). Second, Tesseron must offer more than general statements before the rules allow it to force RRD to expend vast resources collecting documents; Tesseron must actually bring a system into the case and certify that it has a reasonable basis to assert infringement. *See View Eng'g*, 208 F. 3d at 984. For any systems it cannot identify, Tesseron clearly has not performed the required analysis.

Tesseron then accuses RRD of being insufficiently public in its business practices. Tesseron defends its request for broad, unfettered discovery because RRD is supposedly "extremely protective concerning disclosure of its variable-data printing systems and services" and that "information concerning R.R. Donnelley's variable-data printing systems and services is not available to the public." Ltr. at 5. First, RRD would have a tough time selling its services if no one knew about them. Indeed, RRD's services are described on its website – which contrary to Tesseron's allegations, is "available to the public." *See* http://www.rrdonnelley.com (*e.g.*, menus for Segments, Services, Tools). Second, like most companies in the printing industry, RRD uses RIPs[5] and presses from well-known vendors, such as HP, Xerox, Scitex, etc. Some of these companies publicly announce when companies such as RRD purchase their equipment. *See e.g.*, Ex. N, HP news release, July 25, 2002, *available at* http://h30267.www3.hp.com/country/us/en/news/1003829.html?jumpid=reg_R1002_USEN (announcing that RRD purchased an HP press). At the least, Tesseron could identify the equipment it has a reasonable basis to believe infringes.

Tesseron simply fails to satisfy its burden in a motion to compel, asking RRD and the Court to simply accept that it has a reasonable basis to believe that nearly everything RRD does infringes – even though Tesseron cannot identify why or how. Ltr. at 4. Tesseron could

The Northern District of California has a similar rule. *See* Ex. M, N.D. Cal. Local Rule 3-1(b).

[5] "RIP" is an acronym for raster image processor. A RIP converts data describing a printed page into a map of the dots of ink actually comprising that page. (A raster is a single line of these dots.) A press needs this map of dots, commonly referred to as a bitmap, to print the page.



Judge William H. Baughman
June 4, 2007
Page 7

have done much more research and actually developed a list of accused systems. Has Tesseron analyzed any vendors' systems (*e.g.*, HP, etc.)? Does it believe any infringe? Does it agree that any do not infringe and therefore can be easily excluded? Without the hint of an infringement analysis and with no infringement allegations with respect to these unidentified systems, the law does not require RRD to undertake an expensive and wasteful search for documents relating to systems not accused of infringing.

**D. Because They Rely on An Overbroad Definition of "Variable Data Printing Systems," Tesseron's Discovery Requests Are Imprecise and Indiscriminately Overbroad.**

As explained above, the Court should limit Tesseron's discovery to systems actually accused of infringing. But in any case, the discovery Tesseron seeks is overbroad, encompassing "any and all documents" relating to any "variable data printing system" – which Tesseron defines to include vast portions of RRD's business. Tesseron's discovery requests are so broad and imprecise it cannot possibly satisfy its burden to show that such discovery seeks relevant information. *See Hughes*, 2006 WL 689114 at *1. Indeed, Tesseron offers its overbroad requests with the admitted goal of searching for an infringement claim. Ltr. at 5.

Specifically, Tesseron seeks discovery of "any and all documents" relating to any "variable data printing system," which it defines as follows:[6]

> Variable Data Printing System: Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Definition K at 4.

---

[6] Sample requests include Document Request No. 10, "[a]ny and all documents relating to the design or operation of Defendant's variable data printing systems since January 1, 1993, including but not limited to any and all software code" and No. 11, "[a]ny and all variable data print job source files utilized by Defendant since March 17, 1998." Ex. K, Plaintiff's First Set of Interrogatories and Document Requests at 17. Note too that both requests seek documents far pre-dating the six year statute of limitations in patent cases, which prohibits Tesseron from collecting damages on activities before December 4, 2000. Other requests using this definition or definitions derived from it include Nos. 12, 14, 15, 16, 19, 20, 21, 23, 24, 25, 26, 28, and 29. Ex. K.

SIDLEY AUSTIN LLP
# SIDLEY|

Judge William H. Baughman
June 4, 2007
Page 8

       Tesseron's patent claims are nowhere near as broad as this definition, with one exemplary claim, claim 1 of U.S. Patent No. 5,729,665, reproduced in the footnote below and the remainder in Exhibits C-F.[7]  To prove patent infringement, Tesseron must prove that an accused RRD system contains every element of a patent claim.  *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 n. 3 (Fed. Cir. 1989).  As the Court can see, Tesseron's definition of "variable data printing system" ignores most of the specific and required elements recited in its claims.  Systems that lack even one element of Tesseron's claims cannot infringe and, therefore, should not be the subject of the requested discovery.

       For this reason, Tesseron is extremely unlikely to accuse many common examples of "variable and/or personalized content" in the printing business, although it nonetheless seeks discovery about them.  For example, Tesseron's definition sweeps in systems for printing addresses on preprinted documents, such as magazines.  In most cases, magazines are printed without any variable or personalized content after which each copy is overprinted with each subscriber's name and address.  Similar systems are also used to add "personalized" information to preprinted form letters.  Similarly, Tesseron's definition of "variable data printing system" describes volume check or bill printing because each check or bill has "variable and/or personalized content" even if the system printing such documents has no relation, even in Tesseron's view, to its patent claims, or may have been in use for years before the patents-in-suit were filed.

---

[7] 1. A method for generating multiple bit maps suitable for high-speed printing or plate-making comprising the steps of:
(a) generating a page description code representing a template, said page description code defining at least one variable data area and said page description code further defining a graphics state corresponding to said variable data area, said graphics state including at least one attribute which controls the appearance of variable data in said variable data area;
(b) executing said page description code to generate a bit map of said template, and during said execution, identifying said variable data area defined by said page description code and reserving said graphics state corresponding to said variable data area upon said identification;
(c) retrieving variable data;
(d) associating said variable data with said graphics state corresponding to said variable data area;
(e) applying said graphics state corresponding to said variable data area to said variable data to generate a variable data bit map; and
(f) merging said variable data bit map with said bit map of said template;
wherein said graphics state corresponding to said variable data area is applied repeatedly to variable data to generate a multitude of variable data bit maps without the need to repeat said executing step (b).

SIDLEY AUSTIN LLP
**SIDLEY**

Judge William H. Baughman
June 4, 2007
Page 9

Tesseron's definition, moreover, is so broad and imprecise that it includes any letter typed on a personal computer – with the addressee's name and address being "personalized content" – and any systems or components of systems used to produce that letter. Similarly, every email any RRD employee has ever sent or received contains "personalized content" in its address information and, likely, content. Tesseron's definition even covers word processing mail merges, which are indisputably prior art. Although it seeks literally every document relating to these systems, Tesseron is extremely unlikely to accuse such systems of infringing.

Indeed, Tesseron's discovery is even broader than these examples illustrate. Tesserson seeks discovery (and of every single document) relating to any system "capable by itself or in conjunction with a printing or imaging device" of printing "variable and/or personalized content." In other words, any RRD equipment not used to print "variable and/or personalized content," but that could be so used, falls within Tesseron's discovery requests, and Tesseron wants full discovery relating to that equipment.[8] Beyond the reasons stated above, such discovery is clearly inappropriate because a system does not infringe simply because it is capable of infringing. *See High Tech Med. Instruments, Inc. v. New Image Indus., Inc.* 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[T]hat a device could have been made to do something else does not of itself establish infringement.")[9]

Although it seeks vast and broad discovery, Tesseron offers no support that it has a good faith infringement claim that is correspondingly broad. Although Tesseron makes the blanket statement "that most, if not all, of the variable-data printing systems and services used by R.R. Donnelley infringe one or more claims of each of the patents-in-suit" (Ltr. at 1), it offers no proof, and in fact, Tesseron's claims of ignorance as to RRD's systems belie this assertion. *See* Ltr. at 5-6.[10] Similarly, although Tesseron tries to reassure the Court that it seeks "discovery aimed at obtaining information and documents concerning the full range of infringing systems and services used by R.R. Donnelley" (Ltr. at 6), Tesseron really seeks indiscriminate discovery

---

[8] One example would be a digital press not used for variable printing.

[9] Actually, that is not all. Tesseron seeks broad discovery of any system (or component thereof) capable of "variable and/or personalized content at any stage of the production or generation." Tesseron's overreaching discovery therefore seeks every single document about any equipment anywhere in the production chain when some other piece of equipment in that chain is capable of "variable and/or personalized content." Such discovery is simply far beyond what the Federal Rules allow.

[10] Indeed, it appears doubtful that Tesserson has done any pre-suit investigation of RRD's alleged infringement at all. RRD has requested documents relating to this investigation. Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Document Request No. 8 at 17; Defendant's Ltr. So far, Tesseron has refused to produce such documents. *See* Ex. B, Defendant's Response to Plaintiff's Document Request No. 8 at 16 (objecting to request as premature, vague and ambiguous, overly broad and unduly burdensome).

# SIDLEY
SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 10

about every system (and every component thereof) within RRD that is even "capable" of producing "variable and/or personalized content." As explained above, this discovery encompasses material far in excess of what could be fairly characterized as relevant to this case – *i.e.*, what systems could, even in Tesseron's view, contain each and every element of Tesseron's patent claims.[11]

Producing "any and all documents" relating to every system capable of producing "variable and/or personalized content," when they are not even accused of infringement, would be excessively expensive and wasteful. In a related context, the Federal Circuit noted that "[a] patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). RRD would have to search vast portions of an extremely large company to comply. RRD has more than 50,000 employees worldwide and hundreds of presses that perform variable digital printing in various locations around the country. Tesseron makes no attempt to narrow its discovery by, for example, defining the characteristics that RRD's systems would need to fall within its view of the patents-in-suit or offering specifics about what it is really interested in, such as a list of vendors or which of their specific products that it has a reasonable basis to believe infringe. Nor does Tesseron identify particular RRD services that it believes infringe. Nor has Tesseron attempted to exclude prior art systems[12] or systems that it cannot possibly intend to accuse of infringement because they clearly lack elements of its claims. And amazingly, Tesseron seeks broad discovery even on systems it has licensed. *See* Section E.

Tesseron's discovery requests are so egregiously improper, and its overbroad definition of "variable data printing system" so pervasive, that RRD had no option but to object *in toto*. Indeed, at the time of RRD's objections, Tesseron had not accused a single RRD system of infringing. Tesseron then, during the meet and confer process, refused to engage in any discussion of the proper scope of discovery, instead demanding the inappropriately broad discovery sought in its discovery requests. *See* Ex. J, RRD's counsel's May 23, 2007 letter to Tesseron Ltd.'s counsel; Ex. O, Tesseron Ltd.'s counsel's May 24, 2007 letter to RRD's counsel. Tesseron has made no effort to modify its discovery requests or the above definition of "variable

---

[11] Consistent with its other unsupported statements, Tesseron argues that "[w]here, as here, the plaintiff has good reason to believe that the defendant is violating the plaintiff's patent rights, a broader latitude is allowed in compelling disclosure by the defendants," citing *Pierce*, which, as explained above, says no such thing. Ltr. at 4-5 (emphasis omitted). But what is Tesseron's "good reason to believe" RRD is infringing? Tesseron has offered no evidence – whether claim charts, proof of research done, or anything else – showing that it has any reason to believe that RRD is violating its patent rights.

[12] If Tesseron's claims cover the prior art, they are invalid.

# SIDLEY
SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 11

data printing system." The Court should reject Tesseron's request for inappropriately broad and burdensome discovery.

### E. Tesseron's Discovery Requests Are Also Overbroad and Unduly Burdensome Because They Make No Attempt to Exclude Licensed Systems.

Tesseron has also made no attempt to exclude <u>licensed</u> systems, further making its discovery requests improper. To the contrary, Tesseron unabashedly seeks broad discovery of virtually every document even remotely related to systems Tesseron itself has licensed without regard to RRD's expenditures to collect and to produce those documents.

By its own admission, Tesseron has licensed Canon, Xerox, and GMC under the patents-in-suit. *See* Ex. B, Plaintiff's Response to Defendant's Interrogatory No. 5 at 8-9. To date, Tesseron has not produced its licenses with these companies, although RRD has asked for them. Nonetheless, Tesseron's licenses are extremely likely to apply to these companies' customers' – *i.e.*, RRD's – use of their products.

Indeed, RRD purchased the only accused system that it currently uses – an EFI Fiery Controller – from Xerox. RRD provided Tesseron its purchase order for this unit, showing that it was purchased from Xerox. But RRD has quite properly refused to expend resources searching for and producing "any and all documents" relating to this system as it appears to be licensed. RRD has asked Tesseron to state whether it intends to maintain its infringement claims against this system but received no answer.

But that is not all. Tesseron's predecessor in interest, Varis, lost a patent infringement suit against Scitex in 2002. RRD uses many Scitex products. Tesseron, however, cannot accuse Scitex products of infringing the patents that were asserted in that prior suit and is apparently enjoined from doing so. *See* Ex. I, *Varis Corp. v. SCITEX Digital Inc.*, No. 3:99-cv-00336 (S.D. Ohio), Order of Feb. 13, 2002 (enjoining plaintiff from asserting that Scitex infringed patent-in-suit). Consistent with its blanket approach to discovery, Tesseron's discovery requests make no such distinction, leaving RRD to pay the bill for Tesseron's indiscriminate discovery.

### F. Conclusion

Tesseron's discovery requests would require RRD, a large, global multi-faceted company with numerous locations, to expend unreasonable resources searching for and producing documents utterly unrelated to this case. Tesseron should be allowed discovery only with respect to systems for which it has a reasonable basis to believe infringe and which it has identified as such. The Court should deny Tesseron's overbroad request for further discovery.

**SIDLEY** SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 12

Sincerely,

Douglas I. Lewis

# EXHIBIT P

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| | ) | |
| CREO, INC., NEXPRESS SOLUTIONS, | ) | **CONFIDENTIAL -- PURSUANT TO** |
| INC., KODAK VERSAMARK, INC., | ) | **PROTECTIVE ORDER** |
| EASTMAN KODAK COMPANY, and | ) | |
| KODAK GRAPHIC COMMUNICATIONS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

**PLAINTIFF'S THIRD SUPPLEMENTAL RESPONSES TO DEFENDANTS'
INTERROGATORY NOS. 1 AND 2, SECOND SUPPLEMENTAL RESPONSES TO
DEFENDANTS' INTERROGATORY NOS. 3, 4, 7 AND 9, AND SUPPLEMENTAL
RESPONSES TO DEFENDANTS' INTERROGATORY NOS. 10, 11, 13, 15, 16 AND 20**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

R.R. Donnelley & Sons Company ("Plaintiff") hereby supplements its responses to Creo, Inc.'s,

Eastman Kodak Company's, and Kodak Graphic Communications Company's (collectively,

"Defendants") First and Second Sets of Interrogatories To Plaintiff as follows:

## RESPONSES TO INTERROGATORIES

These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety and admissibility and incorporates by reference all general and specific objections in "R.R. Donnelley & Sons Company's Responses to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories" (July 7, 2006), in "R.R. Donnelley & Sons Company's Supplemental Responses to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's Interrogatory Nos. 1-3 and 5" (October 24, 2006), and in "Plaintiff's Second Supplemental Responses To Defendants' Interrogatory Nos. 1 And 2 And Supplemental Responses To Interrogatory Nos. 4, 7, And 9" (December 11, 2006).

## INTERROGATORY 1

Identify each accused apparatus, product, device, process, method, act, or other instrumentality that you allege infringes the patents in suit and describe in detail how it infringes. Please include in your answer a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents and whether each Creo Defendant infringes directly, by inducement, or contributorily. For each element you contend is governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s) in each such apparatus, product, device, process, method, act, or other instrumentality.

## INCORPORATION OF PREVIOUS RESPONSES:

Plaintiff incorporates herein its Response to Interrogatory No. 1 in "R.R. Donnelley & Sons Company's Responses to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories" (July 7, 2006), its Supplemental Response to Interrogatory No. 1 in "R.R. Donnelley & Sons Company's Supplemental Responses to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's Interrogatory Nos. 1-3 and 5" (October 24, 2006), and its Second Supplemental Response to Interrogatory No. 1 in "Plaintiff's Second Supplemental Responses

2

To Defendants' Interrogatory Nos. 1 and 2 and Supplemental Responses To Interrogatory Nos. 4, 7, And 9" (December 11, 2006).

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY 1:**

In addition to its general objections, Plaintiff objects to this interrogatory to the extent that it calls for a level of detail that is customarily provided in experts' reports under Rule 26(a)(2)(B). Under the Court's Scheduling Order, such experts' reports are not due until October 9, 2007. Plaintiff further objects to this request to the extent it seeks Plaintiff's contentions before discovery is complete. Plaintiff has received incomplete discovery from Defendants regarding the accused products and activities, and thus has not yet completed its discovery and investigation of all the facts that may eventually be responsive to this interrogatory. Moreover, Defendants' discovery has been tardy and incomplete. Plaintiff further objects to this interrogatory to the extent it seeks discovery of information subject to a claim of attorney-client privilege and/or work product immunity.

Subject to the foregoing general and specific objections, Plaintiff responds that, based on information now known, Defendants literally infringe at least claims 1, 2, 7-10, and 12 of Warmus et al. U.S. Patent No. 6,205,452 ("the '452 patent"), claims 1 and 11 of Warmus et al. U.S. Patent No. 6,327,599 ("the '599 patent"), claims 1-3, 7-12, 15, and 17-22 of Warmus et al. U.S. Patent No. 6,844,940 ("the '940 patent"), and claims 1, 3-5, 12, 13, 15-17, 24, and 25 of Warmus et al. U.S. Patent No. 6,952,801 ("the '801 patent") (collectively, "the Patents in Suit"). The claim charts attached as Exhibit A compare these claims with one of Defendants' accused products, Darwin. The claim charts attached as Exhibit B compare these claims with DL-100 and DL-1000 (DL-1000 includes DL-100). The claim charts attached as Exhibit C compare these claims with FusionPro. The claim charts attached as Exhibit D compare these claims with

3

Composer. Plaintiff reserves the right to modify its positions as discovery proceeds and as claim construction proceedings warrant. Plaintiff also reserves the right to supplement its infringement allegations and claim charts to demonstrate infringement under the doctrine of equivalents if claim construction or other circumstances change its understanding of the asserted claims.

Plaintiff further alleges that Defendants directly infringe the Patents in Suit by making, using, and selling the accused products and services. Defendants contribute to and induce infringement by others who use Defendants' variable digital printing software, including but not limited to Darwin, DL-100, DL-1000, FusionPro, and Composer. Defendants contribute to and induce infringement by others by selling digital presses, including without limitation the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, which are bundled with infringing variable digital printing software and by promoting third party infringing software packages with the sale of Defendants' digital presses. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Plaintiff identifies responsive documents that include, but are not limited to, the following, bearing the Bates ranges K00046193-94, K00051953-57, K00100198-99, K00180313-30, K00184282-83, K00237937-38, K00238646-47, K00294043-44, K00294333-34, K00308490, K00308496-97, K00308712, K00317023-24, K00319774-87, K00349274, K00350423-24, K00354292-95, K00354300-02, K00354305-06, K00354389-90, K00354461-63, K00354502-05, K00354676-79, K00354815-17, K00435540-43, K00439297-98, K00531140-45, K00531207-12, K00531694-706, K00532869-81, K00694654-770, K00758397-404, K00870821-66, K00878347-75, K00917086-89, K00917090-92, K00917101-03, K00917488-89, K00918595-634, K00925397-434, K00956789-91, K00958741-42, K00958756-K00958777, K00963079,

4

K00963101-02,   K00966347-K00966349,   K01062827-28,   K01063435,   K01081958-59, K01082006,  K01082058,  K01109553-54,  K01112404-05,  K01112406-07,  K01112768, K01113543-62, K01193731-33, K01193774-76, K01193787-88, K01193795-96, K01194981-82, K01194983-84, K01198634-36, K01198637-39, K01199439, K01199440.  Defendants also teach and instruct their customers to use variable digital printing software in an infringing manner.  Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Plaintiff identifies responsive documents that include, but are not limited to, the following, bearing the Bates ranges K00627971-8108,   K00814117-288,   K00439297-98,   K00956789-91,   K01112404-07, K01112768.

Plaintiff expressly reserves the right to supplement its responses to Defendants' interrogatories.

One or more as yet unidentified employees or agents of Defendants will be most knowledgeable about Defendants' infringing products and services.  James L. Warmus of R.R. Donnelley & Sons Company may have knowledge regarding Defendants' products and Plaintiff's related claims.

## INTERROGATORY 2

For each claim identified in your response to Interrogatory No. 1, state your constructions of all claim terms, phrases, clauses, or limitations, and the factual and legal bases for your constructions.

## INCORPORATION OF PREVIOUS RESPONSES:

Plaintiff incorporates herein its Response to Interrogatory No. 2 in "R.R. Donnelley & Sons Company's Responses to Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories" (July 7, 2006), its Supplemental Response to Interrogatory No. 1 in "R.R. Donnelley & Sons Company's

# EXHIBIT Q





1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**Nathaniel Grow**
202-624-2709
NGrow@crowell.com

April 30, 2007

3477:ng
025140.0000051

**VIA FACSIMILE AND FEDERAL EXPRESS**

Jamie L. Secord
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in regards to R.R. Donnelley & Sons Co.'s ("RRD") responses to the First and Second Sets of Interrogatories served by Defendants. Many of RRD's responses are incomplete. Some of the insufficiencies identified below have previously been discussed with RRD's former counsel of record, Ropes & Gray. Ropes & Gray had attested that RRD would correct most of these insufficiencies, but it has yet to do so. *See* Ltr. From Koide to Badke of Oct. 9, 2006 (attached).

**A.    Identification of Persons with Knowledge**

RRD fails to identify any individuals with knowledge in response to Interrogatory Nos. 9, 10, 14, 15, and 16, as requested in Instruction O. Moreover, RRD provides only provides the name of one or two individuals in response to Interrogatory Nos. 1, 7, 11, 12, and 13. RRD's responses are insufficient. For instance, in response to Interrogatory No. 12, RRD fails to list Charles Cornelius, despite the fact that he appears to be a current or former employee of RRD, and regularly corresponded with Barco. *See* RRD049985, RRD049750. Similarly, in response to Interrogatory No. 13 RRD failed to identify all but one of the individuals listed on RRD017286, despite the fact that they all apparently attended a meeting discussing the Service Merchandise presentation and contract. Further, to the extent that RRD has identified individuals, it fails to provide the information required under Instruction K (both present or last known address and place of

Jamie L. Secord, Esq.
April 30, 2007
Page 2 of 6

employment).  RRD's failure to provide such basic information prejudices Defendants' ability to prepare its case.  RRD had previously committed to provide the names of individuals with knowledge.  *See* Oct. 9, 2006 letter at 6-7. Defendants ask that RRD abide by its commitment, and identify all individuals with personal knowledge relevant to RRD's response to each Interrogatory.

### B.    RRD's General Objections

RRD's interrogatory responses continue to assert several improper objections, namely General Objection Nos. 6 and 7.  Defendants have previously objected to each.  *See* Ltr. from Schnorrenberg to Badke of Sept. 6, 2006 at 2-3 (attached).  In response, RRD agreed to confirm in writing that it was not withholding any information or documents on the basis of these improper objections.  *See* Oct. 9, 2006 Letter at 7.  RRD has failed to provide this confirmation in either its subsequent supplemental interrogatory responses, or any other written correspondence.  Defendants ask that RRD confirm in writing that no information or documents were withheld on the basis of these improper objections or, if any information or documents have been withheld on this basis, Defendants ask that RRD produce such information and/or documents immediately.

### C.    Interrogatory No. 1:

RRD's Second Supplemental Response to Interrogatory 1 is insufficient.  In Interrogatory No. 1, Defendants requested that RRD "[i]dentify each accused apparatus, product, device, process, method, act, or other instrumentality that you allege infringes the patents in suit and describe in detail how it infringes." Defendants asked RRD to provide a "claim chart for each claim allegedly infringed", and asked that RRD indicate whether Defendant is alleged to infringe "directly, by inducement, or contributorily."

To date, RRD has only provided such information for one accused product, Creo's "Darwin Desktop."  *See* Second Supplemental Response to Interrogatory No. 1 at 7.  RRD has not provided detailed claim charts for DL-100, DL-1000, Spire, Composer, or Darwin Pro.  Moreover, RRD has failed to specify whether its infringement allegations for Darwin Desktop reference Darwin Desktop for QuarkXPress or InDesign.  Under Rule 11, RRD was obligated to form its allegations "after an inquiry reasonable under the circumstances."  Therefore, RRD should have had a basis for its allegations that DL-100, DL-1000, Spire, Composer, and Darwin Pro infringed at least as early as January 16, 2007, the date it filed its amended complaint.  Defendants are entitled to know the basis for RRD's allegations; RRD's refusal to provide detailed claim charts regarding each accused product prejudices Defendants.

Jamie L. Secord, Esq.
April 30, 2007
Page 3 of 6

Moreover, RRD's Second Supplemental Response fails to provide sufficient information about RRD's inducement and contributory infringement allegations. RRD alleges that "Defendants contribute to and induce infringement by others by selling digital presses bundled with infringing variable digital printing software and by promoting third party infringing software packages with the sale of Defendants' digital presses." *See* Second Supplemental Response at 8. This response is woefully insufficient. Not only does RRD fail to provide claim charts explaining how the "third party infringing software packages" infringe the patents-in-suit, RRD does not even identify which specific third party software is at issue. Further, with respect to RRD's allegations concerning Defendants' digital presses, RRD has failed to provide the specific information necessary to make out a claim of inducement or contributory infringement. RRD has provided no detail regarding what specific acts, documents, or other evidence support these allegations.

Defendants, therefore, request prompt supplementation of RRD's responses to comply fully with this interrogatory. Specifically, Defendants request that RRD provide the following by no later than Monday, May 14, 2007:

- detailed claim charts for all accused software products;
- specific identification of all "third party infringing software packages" it asserts Defendants "contribute to or induce infringement" of, including claim charts identifying how each of these identified packages are alleged to infringe the patents in suit; and
- all specific information supporting its claims of inducement or contributory infringement by Defendants with regards to Defendants' digital presses.

D.     Interrogatory No. 3:

RRD's Supplemental Response to Interrogatory No. 3 also remains inadequate. As Defendants have previously noted, the term "priority date" has a well defined meaning in Federal Circuit case law. *See* Sept. 6, 2006 Letter at 5. RRD has previously agreed to supplement its response accordingly. *See* Oct. 9, 2006 Letter at 8. However, RRD maintains its improper definition of "priority date." RRD continues to state that until "put at issue," the '940 and '801 patents are both entitled to the priority date of June 7, 1995, merely because those patents "matured" from an application filed on that date. *See* RRD's First Supplemental Response at 9. RRD's answer neglects to satisfy its agreed upon obligation as memorialized in the October 9th letter, and fails to comply with the claim-by-claim analysis required by the case law detailing when the subject matter first appeared in the patent disclosures. Defendants are entitled to this information.

Jamie L. Secord, Esq.
April 30, 2007
Page 4 of 6

### E.    Interrogatory No. 4:

Interrogatory No. 4 asks that RRD provide the conception and reduction to practice dates for each asserted claim of the patents in suit, and provide a description of the factual and legal bases supporting RRD's answer. RRD continues to improperly refuse to answer this Interrogatory "until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit." *See* First Supplemental Response to Interrogatory No. 4 at 13. Defendants have done so. RRD's former counsel of record, Ropes & Gray, had previously met and conferred on this subject with Defendants. The parties were unable to come to an agreement on this issue. *See* Oct. 9, 2006 Letter at 9. Defendants ask that in the interest of compromise, RRD reconsider the stance of its former counsel, and provide the conception and reduction to practice dates for each asserted claim of the patents in suit.

### F.    Interrogatory No. 10:

RRD's Response to Interrogatory No. 10 is also inadequate. Defendants sought "all factual and legal bases" for RRD's damages allegations. RRD's initial response provided no such detail, and RRD has not subsequently supplemented its answer. Instead, RRD simply provides only general allegations such as "Defendants have been and continue to dilute the value of Plaintiff's intellectual property by infringing," and "Plaintiff may seek the lost profits for variable printing jobs that they would have received but for Defendants' infringing activities...." *See* RRD's Initial Interrogatory Response at 21-23.

This is insufficient. RRD has failed to provide any factual bases for its claims of the dilution of the value of RRD's intellectual property, a reasonable royalty, or lost profits. For instance, RRD has yet to provide any evidence identifying a single "variable digital printing jobs that [RRD] would have received but for" Defendants' allegedly infringing activities. Defendants request that RRD provide the factual and legal bases for its damages allegations.

### G.    Interrogatory No. 13:

In Interrogatory No. 13, Defendants asked RRD to provide the earliest date in which RRD had offered for sale, advertised, promoted, sold, etc., the subject matter claimed in each asserted claim of the patents in suit. In response, RRD has simply responded that it made a presentation to, and signed a contract with Service Merchandise to provide its "variable digital printing capabilities" in 1995. This response is wholly insufficient. Not only has RRD failed to provide the claim-by-claim analysis requested by the Interrogatory, but RRD has not even provided

Jamie L. Secord, Esq.
April 30, 2007
Page 5 of 6

Defendants with an explanation of the types of services provided to Service Merchandise.

Therefore, unless RRD notifies Defendants forthwith that it intends to supplement its response to Interrogatory No. 13, Defendants will interpret RRD's response to mean that the subject matter for each asserted claim of each of the patents in suit was sold by RRD to Service Merchandise in 1995. If RRD elects to supplement its response, Defendants ask that RRD provides the information requested for each asserted claim of the patents in suit.

## H.    Interrogatory No. 14:

RRD's response to Interrogatory No. 14 is also insufficient. Defendants sought a detailed description of each activity by RRD, or its licensee(s), which practiced, used, offered services for, etc., any subject matter claimed by the patents in suit. RRD failed to provide any such information. Instead, RRD simply provided an abbreviated history of RRD's failed Digital Division, without discussing which elements of the patents in suit, if any, were utilized. This response is inadequate and non-responsive. To the extent that RRD is seeking lost profit damages, Defendants are entitled to know the services, sales, or print jobs on which RRD alleges it has lost profits; in order to evaluate such allegations, Defendants need to know all activities by RRD which utilize the subject matter claimed in any asserted claim.

For instance, Defendants are aware that RRD provided a "Target-It" variable digital printing service to customers at least as early as September 1995 (RRD013244), and a "PowerPass" system as early as June 1996 (RRD013215). Therefore, Defendants request that RRD promptly supplement its response to describe in detail all activity it, or its licensee(s), have engaged in utilizing the subject matter of the Patents in Suit, including the nature of such activity, the name of such activity, and the dates when such activity commenced and ended.

## I.    Interrogatory Nos. 19 and 20:

In Interrogatory No. 19, Defendants sought the identity and role of each person "involved with or knowledgeable about the conception and reduction to practice of the claimed subject matter of the Patents in Suit." In response, RRD only identified the four named inventors of the patents in suit, Messrs. James Warmus, Mark Dreyer, Thomas Shively, and Daniel Beery. Similarly, in Interrogatory No. 20, Defendants sought the identity of "each person who owed a duty of disclosure to the U.S. Patent and Trademark Office" during the prosecution of the patents in suit. RRD responded by only identifying the same four inventors, along with William McCracken, Esq.

Jamie L. Secord, Esq.
April 30, 2007
Page 6 of 6

Defendants Interrogatories sought the identity of all applicable persons. To this extent, Defendants believe that RRD's response to at least Interrogatory No. 20 is incomplete, in that G. Christopher Braidwood, Paul V. Del Giudice, Mark G. Hanley, and Patrick D. Ertel also all signed documents filed with the PTO during the prosecution of the patents in suit that placed them under a duty to disclose to the PTO. *See, e.g.,* RRD004642, RRD004732, RRD004659, RRD004757, and RRD004809.

Therefore, Defendants ask that RRD supplement its responses to Interrogatory Nos. 19 and 20, so as to identify all applicable individuals. To the extent that RRD believes it has identified all such individuals, please so confirm in writing.

Defendants request that RRD supplement its response to Interrogatory No. 1 no later than Monday, May 14, 2007. Defendants also request that the parties meet and confer on the remaining insufficiencies described above. Please let me know at your earliest convenience when you are available for a conference on these issues.

Best regards,

Nathaniel Grow

Enclosures

cc:    Richard McMillan
       Brian M. Koide
       Frederick L. Cottrell III

Attachments



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Brian M. Koide
202-624-2931
BKoide@crowell.com

October 9, 2006

3477:ng
025140.0000051

**VIA FACSIMILE**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

> Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jim:

I write to confirm the substance of our September 28, 2006 meet and confer teleconference regarding R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set of Requests for Production of Documents and Things and the First Set of Interrogatories served by Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Creo").

In its letters of September 6 and 19, Creo has identified improper objections and deficiencies in RRD's discovery responses. As noted below and in response to Creo's particular objections and responses, RRD acknowledged that it will supplement its discovery responses ("Supplemental Responses") by approximately October 12, 2006. RRD confirmed that it could not definitively commit to supplementing by that date, although it would make a good faith effort to do so.

## I.  RRD's Production of Documents

### A.  General Status of RRD's Production

On August 31, 2006, RRD produced approximately 17,248 pages of documents. To date, RRD has not provided any additional supplemental productions.

Bradford J. Badke, Esq.
October 9, 2006
Page 2

### B.    General and Specific Objections

In RRD's July 7, 2006 written response to Creo's Requests for Production, RRD asserted several general and specific objections to Creo's Requests. During the meet and confer, RRD clarified that it – to date – has not withheld any responsive documents on the basis of any of these general or specific objections. Moreover, RRD clarified that it did not narrow its search for documents in anyway based on any of these general or specific objections. Creo maintains its position in its September 19, 2006 letter that certain of these objections are improper and unsupported by the law. RRD represented that its Supplemental Responses would clarify that RRD has not withheld documents or narrowed searches on the basis of these objections.

### C.    Failure to Produce Electronic Documents

RRD's initial production of documents on August 31, 2006 did not include electronic documents. RRD stated during the meet and confer that all responsive, non-privileged electronic documents will be produced, and that RRD believes that the electronic documents will be of a "manageable" volume. For instance, RRD estimated that the volume of electronic documents would be less than the equivalent of 50 boxes of documents. RRD confirmed that it would produce these documents in its Supplemental Production, and that the form of the production will be in Single Page type IV tiffs with an image loadfile, or a similar load file clearly depicting document breaks.

In its initial production, RRD supplied photocopies of two floppy disks (RRD012755 and RRD015021). Please confirm in writing whether the electronic documents stored on both disks have been produced, and, if so, please identify by Bates number range the documents contained on these disk. RRD stated that it would produce the documents contained on the both disks to the extent they have not been produced. RRD represented that it would produce or identify these documents in its Supplemental Responses.

### D.    Request for Production No. 1

RRD's initial production of documents did not include "All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit." RRD stated during the meet and confer that it is investigating why all such documents were not produced. RRD will produce any such non-privileged, responsive documents it finds. If RRD does not find any such documents, it will confirm in writing that none exist. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 3

### E.    Requests for Production Nos. 2, 31, and 33

In Requests for Production Nos. 2, 31, and 33, Creo sought communications involving the patents-in-suit, including the production of all documents and things concerning the licensing of the patents-in-suit. In response to Interrogatory No. 5, RRD has acknowledged the existence of at least one license for at least one of the patents-in-suit and further identified 49 separate instances of correspondence between RRD and other parties concerning the licensing of the patents-in-suit. Nevertheless, RRD did not produce either this license or the 49 instances of correspondence in its initial August 31, 2006 production. RRD stated during the meet and confer that it is investigating to see why these documents were not produced, and will produce all such non-privileged documents in its Supplemental Responses.

### F.    Request for Production No. 6

RRD's initial production of documents included only a small number of documents discussing RRD's commercial embodiments of the patents-in-suit, and did not include any source code from such embodiments. RRD stated during the meet and confer that it does not believe any source code, or other non-produced documents responsive to this Request exist. Therefore, RRD does not anticipate supplementing its production in response to this Request. If RRD finds any additional documents or source code, they will be produced to the extent they are not privileged. If RRD does not uncover any other documents or source code responsive to this Request, it will so confirm in its Supplemental Responses.

### G.    Request for Production No. 12

Creo requested that RRD produce "All documents and things concerning prosecution of the patent applications." While RRD produced the official file wrappers for each of the four patents-in-suit in its initial production, it did not produce non-privileged documents from the internal versions of file wrappers for the patents-in-suit (including any internal versions of file wrappers in possession of either RRD or its outside prosecution counsel). RRD is verifying whether any such documents exist, and will produce such documents to the extent they are not privileged. During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search, and will confirm whether said firm(s) have any responsive documents. RRD intends to produce responsive documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 4

### H.    Request for Production No. 13

In Request for Production No. 13, Creo sought "All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts." RRD's initial production did not include any such documents. During the meet and confer, RRD was unable to confirm whether any such non-privileged documents exist, and was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses. RRD will also confirm that RRD's domestic and international patent counsel have been contacted to determine if said counsel has any responsive documents in its possession, and will produce any such responsive, non-privileged documents.

### I.    Request for Production No. 14

Creo requested the production of "All prior art to the patents in suit, and all documents and things concerning the same." RRD produced some prior art documents, but did not produce all prior art of record for the four patents-in-suit. Many of these non-produced references are otherwise unavailable to Creo. During the meet and confer, RRD was unable to confirm whether RRD's patent prosecution law firm(s) were contacted in regards to this search. RRD confirmed that it is not currently withholding any such documents, and will verify whether other responsive documents exist. RRD will check with its patent prosecution counsel to see if said counsel may have any responsive documents in its possession. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### J.    Request for Production No. 19

Creo requested that RRD produce "All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit." RRD produced only a limited number of such documents in its initial production. RRD was unable to confirm during the meet and confer whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 5

### K.    Request for Production Nos. 27 and 28

In Requests 27 and 28, Creo sought documents regarding the ISO 16612-1 and ANSI/CGATS.20-2002 standards-making initiatives. RRD produced only one such document in its initial production. During the meet and confer, RRD was unable to confirm whether any more responsive documents exist. RRD will verify whether any such non-privileged documents exist, and will produce any such documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### L.    Request for Production No. 30

In Request for Production No. 30, Creo sought production of all documents and things "concerning" any oral or written opinions regarding the patents in suit. RRD objected to this Request, on the grounds that all such documents "are immune from discovery under the attorney-client privilege and/or work product immunity." *See* RRD Response to Request for Production 30. Creo maintains its assertion that non-privileged documents responsive to this request could exist, and therefore that the categorical nature of RRD's objection is improper. RRD has agreed to clarify its position. RRD was unable to confirm whether any such responsive, non-privileged documents exist, and will verify whether such documents do in fact exist. Any such documents will be produced by RRD. RRD intends to make this clarification, confirmation, and production (if necessary) in its Supplemental Responses.

### M.    Request for Production No. 35

Creo requested "All draft and final versions of RRD's annual reports, quarterly reports and other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing." RRD did not produce any such reports in its initial production. RRD was unable to confirm during the meet and confer whether any responsive documents exist, and will verify and produce any such non-privileged documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### N.    Request for Production No. 36

In Request for Production No. 36, Creo requested "All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit." RRD did not produce any such documents in its initial production, and was unable to confirm during the meet and confer whether any such documents existed. RRD will verify whether any responsive documents exist, and will produce any such non-privileged documents it finds. RRD intends to produce these

Bradford J. Badke, Esq.
October 9, 2006
Page 6

documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### O.    Request for Production No. 47

Creo requested the production of "Documents sufficient to identify ... the organizational structure of RRD ... from 1995 to present, including the identity of their officers and directors," through Request for Production No. 47. RRD did not produce any such organizational chart or other documentation in its initial production. RRD will confirm why no organizational charts or other documents were produced, and will produce such documents. RRD intends to produce these documents in approximately two weeks.

### P.    Request for Production No. 48

Creo requested "All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail." RRD did not provide any such documents in its initial production. RRD was unable to confirm whether any such documents exist during the meet and confer. RRD will verify whether any responsive documents exist, and will produce any such non-privileged documents it finds. RRD intends to produce these documents, or in the alternative confirm their non-existence or unavailability, in its Supplemental Responses.

### Q.    Inconsistent Bates Labeling

In its September 19, 2006 letter, Creo indicated that RRD had failed to Bates number several documents in its August 31, 2006 production. Upon further review by Creo, it appears that all documents produced by RRD were in fact Bates numbered. The error appears to have been the result of a misunderstanding by Creo's document production vendor. Creo hereby confirms that no supplementation by RRD is necessary in this regard.

## II.    RRD's Interrogatory Responses

### A.    Identification of Persons with Knowledge

Creo's Interrogatories requested that RRD "[s]et forth and identify the source of each answer by identifying each person whom you know has personal knowledge of the facts or information forming the basis of the answer that you gave." RRD only provided the name of one such individual in its response to Interrogatory No. 1. RRD stated that while it cannot guarantee it will be able to provide the names of

Bradford J. Badke, Esq.
October 9, 2006
Page 7

such individuals for each Interrogatory, it will so supplement its response to the extent possible in its Supplemental Responses.

### B.    RRD's General Objection No. 6

In General Objection No. 6, RRD objected to generating "information that does not exist, is not used, or is not generated by Plaintiff in the ordinary course of business." Creo stated that it believed this objection to be improper, as interrogatory responses require the disclosure of the knowledge of the corporation and its employees; such knowledge cannot be withheld on the ground that is does not exist or is not used or generated "in the ordinary course of business." Creo maintains its position that this objection is improper and unsupported by the law. RRD stated during the meet and confer that it has not withheld any information to date on the basis of this objection. RRD agreed to confirm that it is not withholding any information on this basis, but stated that RRD intends to preserve this objection for future Interrogatory responses. RRD intends to make this confirmation in writing in its Supplemental Responses.

### C.    RRD's General Objection No. 7

RRD objected to Creo's interrogatories "to the extent that they seek discovery of information about ongoing research and development activities of [RRD] that have not yet been commercialized." Creo stated its belief that such an objection is improper, as the fact that such activities have not yet been "commercialized" does not immunize such activities from discovery. Creo maintains its position that this objection is improper and unsupported by the law. RRD clarified during the meet and confer that it was not withholding and information or documents on the basis of this objection. RRD intends to make this confirmation in writing in its Supplemental Responses.

### D.    RRD's General Objection No. 8

RRD's General Objection No. 8 objects to the identification of any documents created after the filing of RRD's complaint. RRD suggested that the parties agree to cut discovery off based on the filing date of RRD's complaint, with an exception for certain updates (i.e. damages) as needed. Counsel for Creo stated that they needed to discuss this matter internally, but that they were generally amenable to some form of such an agreement. Counsel for Creo stated that we would want any exceptions to this general agreement to be well defined to prevent future disagreements. Counsel for Creo will consider RRD's proposal internally, and will further discuss this matter with RRD shortly.

Bradford J. Badke, Esq.
October 9, 2006
Page 8

### E.    Interrogatory No. 1:

In Interrogatory No. 1, Creo asked for "a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents…[and f]or each claim you contend is governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s)…." In its initial response dated July 7, 2006, RRD did not indicate "whether each element is present literally or by equivalents" in its initial response. Creo maintains that the claim charts provided by RRD in its initial response failed to sufficiently detail the alleged infringement by Creo.

RRD stated during the meet and confer that its Supplemental Response will address the deficiencies to RRD's response to Interrogatory No. 1 identified by Creo in its September 6, 2006 letter.

### F.    Interrogatory No. 2:

Interrogatory No. 2 asked RRD to state its claim construction for each asserted claim, and to provide the factual and legal bases for its constructions. RRD conditioned its response to Interrogatory No. 2 on several general and specific objections, and then stated that "based on information now known, infringement is demonstrated by comparing the plain and ordinary English language meaning of the claims to the features of Defendants' accused products and activities," while reserving the right for future refinement.

Creo maintains its position that these objections are improper and unsupported by the law. RRD agreed during the meet and confer to re-examine its response to Interrogatory No. 2, and supplement the response – to the extent that RRD contends that construction is necessary – in its Supplemental Responses.

### G.    Interrogatory No. 3:

Interrogatory No. 3 requested RRD's contentions as to "the earliest priority date that each claim is entitled." In its July 7, 2006 response, RRD stated that because the term "priority date" was undefined, it would interpret "priority date" to mean "the filing date of the earliest filed application to which a particular patent claims priority." Creo responded in its September 6, 2006 letter by stating that the term "priority date" is well defined in Federal Circuit case law.

RRD has agreed to supplement its response to Interrogatory No. 3 by providing the actual priority date for each of the four patents-in-suit in its Supplemental Responses.

Bradford J. Badke, Esq.
October 9, 2006
Page 9

### H.    Interrogatory No. 4:

Interrogatory No. 4 requested that RRD provide the conception and reduction to practice dates for each patent claim being asserted by RRD, as well as a description of the factual and legal bases supporting RRD's answer. In its July 7, 2006 response, RRD refused to answer "until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit." RRD continues to assert that it is not required to state conception and reduction to practice dates until Creo advances specific pieces of prior art. Creo maintains that because it has asserted that the patents-in-suit are invalid, RRD has an obligation to promptly provide conception and reduction to practice dates. The parties are unable to settle this disagreement. This confirms that the parties have met and conferred on this issue sufficient to satisfy their obligations under the Federal Rule of Civil Procedure 37(a).

### I.    Interrogatory No. 5:

Finally, in Interrogatory No. 5, Creo sought the identification of "each person with whom you, your attorneys, or your representatives have contacted or negotiated regarding licenses or possible licenses for the patents in suit...." In its July 7, 2006 response, RRD identified one license and 49 instances of such correspondence, and stated it would "produce and identify business records sufficient to answer this interrogatory," pursuant to Rule 33(d) of the Federal Rules of Civil Procedure. Creo's September 6, 2006 letter noted that RRD had failed to provide sufficient detail to locate and identify the records from which RRD's answer could be ascertained, and further noted that the interrogatory was not limited to written correspondence, but included oral contacts or negotiations. RRD's August 31, 2006 production of documents failed to include the records necessary to answer Interrogatory No. 5.

During the meet and confer, RRD reaffirmed its intention to supplement its document production with documents regarding licensing correspondence and agreements in its Supplemental Responses. RRD further stated that it will provide non-privileged records of any oral contacts or negotiations regarding the licensing of the patents-in-suit, should any exist.

Please let us know at your earliest convenience if you believe any of the above fails to accurately portray our September 28, 2006 meet and confer.

Bradford J. Badke, Esq.
October 9, 2006
Page 10

Best regards,

Brian M. Koide

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**David M. Schnorrenberg**
202-624-2664
DSchnorrenberg@crowell.com

September 6, 2006

3477:ng
025140.0000051

**VIA ELECTRONIC MAIL**

Bradford J. Badke, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020

> Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
> Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
> JJF)

Dear Jim:

I write about R.R. Donnelley & Sons Co.'s ("RRD") responses to the First Set
of Interrogatories served by Creo, Inc., Eastman Kodak Company, and Kodak
Graphic Communications Company (collectively, "Creo"). We seek clarification of
various objections contained in RRD's response to Creo's Interrogatories. In some
cases, it also appears that RRD is withholding relevant information based on
objections that lack merit. In other cases, it appears that RRD's responses are
simply incomplete. We address the objections and responses below.

> A.   **RRD's General Objection No. 5 and Failure to Comply
> with Interrogatory Instruction O**

Instruction O to Creo's interrogatories requested that RRD "[s]et forth and
identify the source of each answer by identifying each person whom you know has
personal knowledge of the facts or information forming the basis of the answer that
you gave." With the exception of RRD's Response to Interrogatory No. 1, RRD fails
to name any individuals in its interrogatory responses. Apparently RRD is relying
on its General Objection No. 5 to justify its failure to comply with Instruction O.
RRD claims that a request for identification of witnesses with knowledge on a
particular topic is overly broad and would impose an undue burden on RRD. This
objection lacks merit. It is well-accepted litigation practice to use interrogatories to

Bradford J. Badke, Esq.
September 6, 2006
Page 2

learn the identity of potential witnesses.  If RRD finds it too burdensome to identify witnesses, then it should not have commenced this litigation.  Therefore, Creo asks that RRD supplement its interrogatory responses by identifying those person(s) with personal knowledge of the facts or information forming the basis of RRD's responses.  The supplemental responses should also identify the persons' present or last known address and place of employment for all such persons, pursuant to Instruction K of Creo's interrogatories.

### B.    RRD's General Objection No. 6

In General Objection No. 6, RRD objects to generating "information that does not exist, is not used, or is not generated by Plaintiff in the ordinary course of business."  It is not clear what RRD intends by this objection.  Interrogatory responses require the disclosure of the knowledge of the corporation and its employees.  Knowledge cannot be withheld on the ground that is does not exist or is not used or generated "in the ordinary course of business."

It is unclear whether RRD actually withheld any information based on General Objection No. 6.  Accordingly, Creo requests clarification from RRD as to whether any information was withheld based on this objection.  If so, please promptly supplement RRD's interrogatory responses with the withheld information.  If not, please confirm that this objection will not be used in the future to withhold any information that would otherwise require supplementation of RRD's interrogatory responses pursuant to Federal Rule of Civil Procedure 26(e).

### C.    RRD's General Objection No. 7

RRD improperly objects to Creo's interrogatories "to the extent that they seek discovery of information about ongoing research and development activities of [RRD] that have not yet been commercialized."  *See* General Objection No. 7.  Such an objection has no basis in the Federal Rules of Civil Procedure, Local Rules, or substantive patent law.  That certain RRD activities might not yet have been "commercialized" does not immunize such activities from discovery.  As but one example, RRD would be required to state its contentions relating to conception and reduction to practice – *see* Interrogatory No. 4 – even if RRD had not commercialized the embodiments described in its patents.  Finally, because documents exchanged in discovery in this case are protected under Del. Local Rule 26.2, and will be protected under the protective order negotiated by the parties, any potential concerns about the confidentiality of proprietary information is unfounded.

Despite the text of General Objection No. 7, it is unclear whether RRD actually withheld any information based on this objection.  Accordingly, Creo

Bradford J. Badke, Esq.
September 6, 2006
Page 3

requests clarification from RRD as to whether any information was withheld based on this objection. If so, please promptly supplement RRD's interrogatory responses with the withheld information. If not, please confirm that this objection will not be used in the future to withhold any information that would otherwise require supplementation of RRD's interrogatory responses pursuant to Federal Rule of Civil Procedure 26(e).

### D.    RRD's General Objection No. 8

General Objection No. 8 objects to the identification of any documents created after the filing of RRD's complaint. RRD does not provide a basis for this objection. The Federal Rules of Civil Procedure certainly do not support such an objection. To the contrary, they require the production of all documents, regardless of when created, that are relevant to the claims and defenses of the parties.

It is unclear whether RRD actually withheld any information based on General Objection No. 8. Accordingly, Creo requests clarification from RRD as to whether any information was withheld based on this objection. If so, please promptly supplement RRD's interrogatory responses with the withheld information. If not, please confirm that this objection will not be used in the future to withhold any information that would otherwise require supplementation of RRD's interrogatory responses pursuant to Federal Rule of Civil Procedure 26(e).

### E.    Interrogatory No. 1:

RRD's Response to Interrogatory 1 is insufficient. Creo asked for "a detailed claim chart for each claim allegedly infringed, including an indication whether each element is present literally or by equivalents…[and f]or each claim you contend is governed by 35 U.S.C. § 112(6), identify the claimed function and the corresponding structure(s), act(s), or material(s).…"

First, RRD has failed to indicate "whether each element is present literally or by equivalents." Please supplement the response to indicate whether RRD contends that each element is present literally or by equivalents.

Second, the claim charts fail to provide any detail as to the alleged infringement by Creo. Instead, RRD has simply parroted back the language of the four asserted claims, stating generally that Darwin Desktop completes each step. Under Federal Rule of Civil Procedure 11, counsel for RRD represented to the court that the allegations against Creo were supported by evidence. This response fails to offer the detail or guidance to which Creo is entitled. For instance, RRD's response fails to identify which file within Darwin Desktop is asserted to be the "template page file" in claim 1 of the '425 patent, or the "master page file" in claim 11 of the

Bradford J. Badke, Esq.
September 6, 2006
Page 4

'599 patent. Furthermore, RRD's response fails to identify how, or at what point, Darwin Desktop is alleged to "stor[e] a first number of pages" or "determin[e] whether a stored page is to be assembled into the first book based on the first set of pagination information," as required in claim 1 of the '801 patent. RRD's response also fails to explain how the step of "converting the template files, the database, and the master page file into press commands" in claim 11 of the '599 patent is performed. The claim charts are thus inadequate for purposes of detailing RRD's infringement allegations. We, therefore, request prompt supplementation of RRD's responses to comply fully with this interrogatory.

### F.    Interrogatory No. 2:

With regard to RRD's Response to Interrogatory No. 2, none of RRD's proffered objections justify its failure to supply an initial claim construction. RRD objected to the interrogatory first on the grounds "it seeks Plaintiff's exhaustive contentions when discovery is just beginning" and that RRD "has not yet completed its . . . investigation of all the facts relating to this interrogatory." However, Rule 11 requires "that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement." *Antonious v. Spaulding & Evenflo Companies*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). Thus, RRD was required to have conducted an initial claim construction analysis **before** filing suit. Moreover, RRD's objection to answering the interrogatory before receiving Creo's document production likewise lacks any merit. Patent claims are not construed by reference to the accused device. *See, e.g., NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002). Thus, there was no need to wait for discovery from Creo to prepare RRD's interrogatory response. Finally, RRD's objection to the request as premature before expert reports are due is similarly unavailing. That an expert may address an issue does not immunize that issue from fact discovery.

RRD's Response to Interrogatory No. 2 is made subject to each of the objections discussed in the preceding paragraph. It is not clear whether RRD has withheld information based on these objections or instead is taking the position that none of the terms in the four patent claims being asserted by RRD in this litigation require construction. We ask that RRD clarify its position. If information is being withheld, we request a prompt supplementation of RRD's response to Interrogatory No. 2 to provide the withheld information. If not, we request confirmation that the above objections will not serve as the basis in the future for withholding prompt supplementation of RRD's response when RRD determines a claim term requires construction.

Bradford J. Badke, Esq.
September 6, 2006
Page 5

### G.     Interrogatory No. 3:

RRD's Response to Interrogatory No. 3 is also inadequate.  Interrogatory No. 3 asked for RRD's contentions as to "the earliest priority date that each claim is entitled."  RRD claims not to know the meaning of "priority date," and thereby justifies its adoption of a definition of "priority date" that deviates from its standard use in patent law, as reflected in decisions of the Federal Circuit and other courts.  *See, e.g., Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, (Fed. Cir. 1999) ("Thus, the decision on the proper priority date - the parent application date or the CIP application date - for subject matter claimed in a CIP application depends on when that subject matter first appeared in the patent disclosures.").

Based on its improper definition of "priority date," RRD states that the '940 and '801 patents are both entitled to the priority date of June 7, 1995 merely because their applications "claim priority to . . . a patent application that was filed on June 7, 1995."  RRD's answer does not comply with the claim-by-claim analysis required by the case law as to when the subject matter first appeared in the patent disclosures.  The '801 patent was a Divisional Application, based on application No. 08/802,337, which was itself a Continuation-in-Part of Applications No. 08/478,397 and 08/627,724.  The '940 patent was a Continuation of the '801 patent's application.  Therefore, RRD is obligated to identify its contentions on a claim-by-claim basis as to both the '801 and '940 patents.  Please confirm that RRD will so supplement its response.

### H.     Interrogatory No. 4:

Interrogatory No. 4 asks that RRD provide the conception and reduction to practice dates for each patent claim being asserted by RRD and a description of the factual and legal bases supporting RRD's answer.  RRD has refused to answer "until such time, if any, that Defendants put at issue the conception date or the reduction to practice date of the claims of the patents-in-suit."  However, RRD overlooks that Creo has already put the conception dates and reduction to practice dates at issue by asserting that the patents-in-suit are invalid.  Therefore, RRD has an obligation to provide conception and reduction to practice dates.  Simply stating that these dates are "at least as early as" the patent filing dates is insufficient.  *See, e.g., Invacare Corp. v. Sunrise Medical Holdings, Inc.*, 2005 WL 1750271, *3-4 (N.D. Ohio 2005) (finding interrogatory answers insufficient when they failed to specify "the earliest date on which the invention was conceived and reduced to practice").  Please indicate whether RRD will supplement its response by providing the conception and reduction practice dates, as well as the factual and legal bases for such dates, for each of the four asserted claims.  If not, Creo will understand that the filing dates are the earliest dates RRD will rely upon in this lawsuit for the conception and reduction to practice dates for each patent-in-suit.

Bradford J. Badke, Esq.
September 6, 2006
Page 6

I.    **Interrogatory No. 5:**

Finally, RRD's Response to Interrogatory No. 5 is incomplete. First, RRD proposes to answer the interrogatory largely by relying on the production of business records pursuant to Federal Rule of Civil Procedure 33(d). However, RRD does nothing to "specify the records from which the answer may be derived," let alone provide "sufficient detail to permit the interrogating party to locate and identify, as readily as can the party served, the records from which the answer can be ascertained." These are requirements of Rule 33(d). Accordingly, RRD must supplement its responses to comply with the Rule by providing, at a minimum, the production numbers of the documents on which it relies to answer the interrogatory.

Second, the interrogatory is not limited to written "contacts or negotiations." RRD's response incorporates a chart that identifies only correspondence, not any oral "contacts or negotiations." Similarly, the attempt to answer the interrogatory's request for "a detailed description of the contacts or negotiations" by reference to Rule 33(d) appears to fail to address oral contacts or negotiations. Please either confirm that RRD engaged in no responsive oral "contacts or negotiations" or supplement the response to provide the withheld information.

Please call me at your earliest convenience to discuss each of the above-listed discovery issues.

Best regards,

David M. Schnorrenberg

cc:  Frederick L. Cottrell III

# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

    Plaintiff,

    v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

    Defendants.

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

    Counterclaim-Plaintiffs,

    v.

R.R. DONNELLEY & SONS COMPANY,

    Counterclaim-Defendants,

CIVIL ACTION No. 06-cv-032-JJF

**CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC
COMMUNICATIONS COMPANY'S RESPONSES AND OBJECTIONS TO
R.R. DONNELLEY'S NOTICE OF DEPOSITION
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)</u>**

Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company

(collectively, "Creo") hereby respond to R.R. Donnelley & Sons Company's ("RRD") Notice of

Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) (hereinafter,

"Deposition Notice").

Regarding the Deposition Notice, Creo will work with RRD to identify a mutually acceptable date or date(s) and location or location(s). Creo will use its best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications set forth below. Creo, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed. Creo reserves all objections, in this or any other proceeding, with respect to the relevance, materiality, and admissibility of any deposition topics or responses to the topics.

Creo will supplement its document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Creo does not intend to produce additional documents.

Creo will produce testimony regarding events since 2001. The Deposition Notice does not include a reasonable time frame limitation.

## II.    SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

### TOPIC NO. 1

The design, operation, functionality, features, structure, performance, and technical characteristics of Defendants' Software Products.

### RESPONSE TO TOPIC NO. 1

Creo will produce a witness to testify to the design, functionality and features of Creo's Darwin software identified in the Complaint insofar as related to the alleged infringement. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 1 does not do so, Creo objects and will not prepare or produce a witness as to such topic.

- 2 -

**TOPIC NO. 2**

Defendants' earliest knowledge of the patents-in-suit or of the patent applications leading to the patents-in-suit.

**RESPONSE TO TOPIC NO. 2**

Subject to its objections, Creo will produce a witness to testify regarding this topic.

**TOPIC NO. 3**

Any consideration, examination, analysis, or test conducted on Defendants' Software Products or Defendants' Hardware Products that relates in any way to determining whether that product infringes the patents-in-suit.

**RESPONSE TO TOPIC NO. 3**

The only responsive information Creo has regarding this topic is protected from disclosure by the attorney-client and/or attorney work product privilege, and, accordingly, Creo will not produce a witness to testify to or documents responsive to this topic.

**TOPIC NO. 4**

The conception, design, development, and commercialization of Defendants' Software Products.

**RESPONSE TO TOPIC NO. 4**

Creo will produce a witness to testify to the conception, development and commercialization of Creo's Darwin software identified in the *Complaint* insofar as related to the alleged infringement. This topic otherwise is duplicative of Topic No. 1. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 4 does not do so, Creo objects and will not prepare or produce a witness as to such topic.

RLF1-3057988-1

<u>**TOPIC NO. 5**</u>

The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation), including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

<u>**RESPONSE TO TOPIC NO. 5**</u>

Creo will produce a witness to testify to the users' guides, reference manuals and product manuals for Creo's Darwin software identified in the Complaint insofar as related to the alleged infringement. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 5 does not do so, Creo objects and will not prepare or produce a witness as to such topic.

<u>**TOPIC NO. 6**</u>

Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products.

<u>**RESPONSE TO TOPIC NO. 6**</u>

Creo will produce a witness to testify to the instructions provided to users of Creo's Darwin software identified in the Complaint insofar as related to the alleged infringement. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 6 does not do so, Creo objects and will not prepare or produce a witness as to such topic. Creo will not provide testimony regarding "Defendants' Hardware Products" on the grounds that such information is not within the scope of the Complaint.

**TOPIC NO. 7**

The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

**RESPONSE TO TOPIC NO. 7**

Creo will produce a witness to testify to the marketing and promotional materials for Creo's Darwin software identified in the Complaint insofar as related to the alleged infringement. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 7 does not do so, Creo objects and will not prepare or produce a witness as to such topic. Creo will not provide testimony regarding "Defendants' Hardware Products" or "Third Party Software Products" on the grounds that such information is not within the scope of the Complaint.

**TOPIC NO. 8**

Partnerships, joint ventures, co-promotions, joint research, and the like between Defendants and third party makers of software for Variable Digital Printing.

**RESPONSE TO TOPIC NO. 8**

This topic as stated asks Creo to identify and prepare a witness for a topic that is not relevant to the claims or defenses of the parties. It also fails to meet the "reasonable particularity" requirement of Rule 30(b)(6). Accordingly, Creo will not produce a witness to testify to or documents responsive to this topic.

**TOPIC NO. 9**

Promotion or sales by defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products.

- 5 -

**RESPONSE TO TOPIC NO. 9**

Creo will produce a witness to testify to sales of Creo's Darwin software identified in the Complaint insofar as related to the alleged infringement. However, Creo objects to the topic as stated because it is overly broad and if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 9 does not do so, Creo objects and will not prepare or produce a witness as to such topic. Creo will not provide testimony regarding "Defendants' Hardware Products" or "Third Party Software Products" on the grounds that such information is not within the scope of the Complaint.

**TOPIC NO. 10**

The identity and location of all documents and things concerning the foregoing topics.

**RESPONSE TO TOPIC NO. 10**

Subject to the foregoing objections, Creo will produce a witness to testify to the identity and location of non-privileged documents and things responsive to the topics above for which Creo has agreed to produce a witness. Creo does not have any non-privileged documents responsive to this document request.

**TOPIC NO. 11**

The identity and location of all persons knowledgeable about the foregoing topics.

**RESPONSE TO TOPIC NO. 11**

Subject to the foregoing objections, Creo will produce a witness to testify to the identity and location of persons knowledgeable about non-privileged information, if any, responsive to the topics above for which Creo has agreed to produce a witness. Creo does not have any non-privileged documents responsive to this document request.

RLF1-3057988-1

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated:  September 13, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company*

RLF1-3057988-1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be

served on September 13, 2006, upon the following in the manner indicated:

### BY HAND

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

### BY FEDERAL EXPRESS

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA  02110

_____
Gregory E. Stuhlman (#4765)

Dated:  September 13, 2006

# EXHIBIT S



**crowell moring**

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Amy W. Ray
202-624-2529
aray@crowell.com

December 6, 2006

025140.0000051

<u>**VIA FACSIMILE**</u>

Stuart W. Yothers, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY 10020
Facsimile: (212) 596-9090

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak
       Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Stuart:

    As discussed during our conversation this afternoon, I write to confirm that the Rule 30(b)(1) depositions of Ron Peleg (noticed for December 13, 2006), Nardi Jaacobi (noticed for December 18, 2006), Ronen Cohen (noticed for December 22, 2006), Ronny Fogel (noticed for December 27, 2006), and Gershon Alon (noticed for December 29, 2006) will not proceed as noticed.

    Each of the aforementioned individuals currently resides in Israel. With respect to Messrs. Peleg, Jaacobi, and Alon and Ms. Fogel, they are available for deposition in Israel between January 7 and 18, 2007. We have contacted those witnesses and propose the following schedule for their Israel depositions: Ms. Fogel on January 7; Mr. Jaacobi on January 11; Mr. Peleg on the mornings and early afternoons of January 14-15; and Mr. Alon on January 18.

    Mr. Cohen will be resident in the United States in early 2007, and we will continue to work with you to find a mutually acceptable date and location for his deposition after his move.

                       Best regards,

                       Amy W. Ray

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT T

# crowell ❰moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Amy W. Ray
202-624-2529
aray@crowell.com

December 15, 2006

025140.0000051

**VIA FACSIMILE**

Patricia M. Festin, Esquire
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY  10020
Facsimile:  (646) 728-2945

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Patricia:

This is to confirm that R.R. Donnelley ("RRD") will not move forward with the 30(b)(1) witness schedule offered in my letter of December 6, 2006.  That proposed January 2007 schedule situated the depositions of four witnesses in Israel.

In the event the Court rules on Kodak's motion for a protective order regarding the location of the 30(b)(1) depositions or in the event RRD subsequently seeks to depose the 30(b)(1) witnesses in Israel, we agreed that the parties would cooperate in setting a mutually acceptable new schedule accounting for the individual witnesses' availability.

Please do not hesitate to contact me with questions.

Best regards,

Amy W. Ray

cc:    Richard McMillan, Jr.
       Frederick L. Cottrell III

# EXHIBIT U



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**Nathaniel Grow**
**202-624-2709**
ngrow@crowell.com

July 17, 2007

025140.0000051

## VIA FACSIMILE AND U.S. MAIL

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

> Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

During our telephone conversation yesterday, Defendants asked RRD to identify the individuals and 30(b)(6) topics for which RRD seeks deposition dates in its recently-filed Motion to Compel. Defendants are still awaiting word from RRD on this issue.

However, Defendants suspect that one of the witnesses whose deposition RRD may wish to schedule is Ronny Fogel. RRD has previously served a 30(b)(1) notice of deposition for Ms. Fogel. On December 15, 2006, Defendants wrote to RRD stating that once the Court ruled as to the proper location for the depositions of witnesses located in Israel (including Ms. Fogel), Defendants would cooperate with RRD in reaching a schedule for the noticed 30(b)(1) depositions. *See* Ltr. from Ray to Festin of Dec. 15. The Court issued its opinion on February 2, 2007. RRD remained silent regarding the scheduling of these depositions until filing its Motion to Compel on July 13.

Defendants have now been informed that Ms. Fogel will be leaving Defendants' employ at the end of the month. Because Ms. Fogel resides in Israel, scheduling her deposition in the United States before the end of the month may be impossible.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ California ▪ New York ▪ London ▪ Brussels

Jamie Secord
July 17, 2007
Page 2

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT V

# crowell ( moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 19, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

Defendants write in regards to the scheduling of Ronny Fogel's 30(b)(1) deposition.

As you know, Ms. Fogel is a resident of Israel and an employee of Kodak IL. Ms. Fogel is terminating her employment with Kodak IL on July 31, 2007. Ms. Fogel currently works for Kodak IL only on a part-time, two days per-week basis; thus, Ms. Fogel has only has three working days left at the company. Given Ms. Fogel's many responsibilities and obligations, she is currently unavailable to travel to the United States at this time. Ms. Fogel's unavailability to travel to the U.S. results from a number of scheduling conflicts, including: 1) training her successor at Kodak IL, 2) forming a start-up software company, resulting in many deadlines over the next 6 weeks, 3) additional, unrelated technology consulting obligations, 4) studying for the Israeli patent attorney exam, and 5) obligations resulting from the planning of her daughter's upcoming wedding. Nevertheless, Ms. Fogel is willing to make herself available to be deposed either by telephone or in person in Israel before August 31, 2007.

Defendants also wish to clarify the record, as your letter of July 18th contained several misstatements. Defendants have been extremely cooperative in attempting to schedule the depositions of the 30(b)(1) depositions, including that of Ms. Fogel:

Jamie Secord
July 19, 2007
Page 2

- On December 6, 2006, Defendants wrote to RRD offering dates for all Israel-based witnesses, including Ms. Fogel. *See* Letter from Ray to Yothers of Dec. 6. RRD rejected this proposal.

- On December 15, 2006, Defendants reiterated our availability to discuss the scheduling of the depositions, including the deposition of Ms. Fogel. *See* Letter from Ray to Festin of Dec. 15.

- Despite this offer, Defendants never heard back from RRD regarding any 30(b)(1) witnesses – until the filing of RRD's Motion to Compel at 9 p.m. on Friday July 13. Even in the Motion to Compel, Ms. Fogel was not directly mentioned.

- On the morning of Monday July 16th, Defendants contacted counsel for RRD asking for clarification of the specific individuals and 30(b)(6) topics for which RRD sought deposition dates in its Motion to Compel. Defendants are still awaiting RRD's response.

Even without a response from RRD, Defendants immediately began to investigate the availability of its individual witnesses, including Ms. Fogel, to travel to the United States for deposition; it was during this investigation that we learned of Ms. Fogel's July 31st departure date for the first time. Defendants then immediately notified RRD of Ms. Fogel's anticipated departure from Kodak IL.

Contrary to the assertion in your letter of July 18, RRD has not been "asking for a date for Ms. Fogel's deposition since May 23, 2007," either expressly or otherwise. All inquiries from RRD regarding deposition scheduling, including your letter of May 23, 2007, were in regards to 30(b)(6) depositions only, not 30(b)(1) depositions. Neither Ms. Fogel's name, nor the 30(b)(1) depositions, were mentioned in any of the deposition-related correspondence or conference calls between the parties since December 2006. In fact, RRD only specifically mentioned Ms. Fogel after receiving Defendants' July 17 letter, notifying RRD of Ms. Fogel's employment status. Thus, RRD remained silent about the deposition of Ms. Fogel and the other 30(b)(1) deponents for nearly 7 months, until filing its Motion to Compel. Moreover, the 30(b)(1) depositions were noticed while RRD was represented by Ropes & Gray; RRD has never raised the issue of the 30(b)(1) depositions since it has been represented by Sidley Austin. RRD has not properly attempted to meet and confer on this issue, and, under the circumstances, has all but acquiesced to forgoing the 30(b)(1) depositions.

Nonetheless, as mentioned at the outset, Ms. Fogel is willing to make herself available to be deposed either by telephone or in person in Israel before August 31, 2007. Please let us know as soon as possible how RRD wishes to proceed.

Jamie Secord
July 19, 2007
Page 3


Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ California ▪ New York ▪ London ▪ Brussels

# EXHIBIT W



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 26, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

  Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
    *Kodak Graphic Communications Co., (D. Del.) (Civil Action No. 06-032-*
    *JJF)*

Dear Jamie:

  Defendants write in regards to the scheduling of Ronny Fogel's 30(b)(1)
deposition. In my letter of July 19, Defendants explained that Ms. Fogel – a
resident of Israel – had only three working days remaining before leaving Kodak IL
on July 31, 2007, and that Ms. Fogel has a number of scheduling conflicts
preventing her from traveling abroad in August. Defendants, however, noted that
Ms. Fogel had offered to make herself available to be deposed in Israel – either in
person or via telephone – before August 31, 2007. Defendants assume that RRD is
not interested in pursuing this offer, since you failed to mention it in your July 19
response.

  In light of RRD's inflexibility on this issue, Ms. Fogel has offered to travel to
the United States to be deposed in late-September. For the many reasons identified
in my July 19 letter, Ms. Fogel is unavailable to travel before that time. Under the
circumstances, Defendants would stipulate that Ms. Fogel's deposition may occur
after the close of fact discovery. Alternatively, Ms. Fogel remains available to be
deposed in Israel before the end of August.

  With respect to the additional information requested in your letter of July 19,
Ms. Fogel is retiring from Kodak IL (not Creo, Inc. as stated in your letter), and
pursuing a new business venture. As stated in my July 17, 2007 letter, we began
investigating Ms. Fogel's availability after receiving RRD's motion to compel; we
first learned of Ms. Fogel's departure date on July 16.

Jamie Secord
July 26, 2007
Page 2

Please let us know as soon as possible how RRD wishes to proceed.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT X

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| | ) | |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

## NOTICE OF DEPOSITION OF BENNY SHIMSHONI

To:    Richard McMillan, Jr.          Frederick L. Cottrell, III
       Jeffrey D. Sanok              RICHARDS, LAYTON & FINGER, P.A.
       Brian M. Koide                One Rodney Square
       CROWELL & MORING, LLP         920 North King Street
       1001 Pennsylvania Avenue, N.W. Wilmington, DE 19801
       Washington, D.C. 20004

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(1), Fed. R. Civ. P.,

plaintiff R.R. Donnelley & Sons Company will take the deposition upon oral examination of

Benny Shimshoni.

The deposition will commence immediately after the witness sits for a deposition as a designee under Rule 30(b)(6) (or if the witness does not so sit, on a date mutually agreed to by the parties), and continue day to day until completed, at the offices of Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005, or at such other time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by sound, video and/or stenographic means.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ Rodger D. Smith II (#3778)_
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
   Attorneys for Plaintiff
   R.R. Donnelley & Sons Company

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 20, 2007
972085.1

- 2 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on July 20, 2007, upon the following in the manner indicated:

**BY EMAIL AND BY HAND**

Frederick L. Cottrell III
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

**BY EMAIL**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT Y

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| EASTMAN KODAK COMPANY, | ) ) | |
| Counterclaim-Plaintiff, | ) ) | |
| v. | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) ) | |
| Counterclaim-Defendant. | ) ) ) | |

### NOTICE OF DEPOSITION OF WILLIAM SCHWEINFURTH

To:    Richard McMillan, Jr.             Frederick L. Cottrell, III
       Jeffrey D. Sanok                  RICHARDS, LAYTON & FINGER, P.A.
       Brian M. Koide                    One Rodney Square
       CROWELL & MORING, LLP             920 North King Street
       1001 Pennsylvania Avenue, N.W.    Wilmington, DE 19801
       Washington, D.C. 20004

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(1), Fed. R. Civ. P.,

plaintiff R.R. Donnelley & Sons Company will take the deposition upon oral examination of

William Schweinfurth.

The deposition will commence immediately after the witness sits for a deposition as a designee under Rule 30(b)(6) (or if the witness does not so sit, on a date mutually agreed to by the parties), and continue day to day until completed, at the offices of Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005, or at such other time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by sound, video and/or stenographic means.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
    Attorneys for Plaintiff
    R.R. Donnelley & Sons Company

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 20, 2007
972081.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Frederick L. Cottrell III
>Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on July 20, 2007, upon the following in the manner indicated:

>### BY EMAIL AND BY HAND
>Frederick L. Cottrell III
>Richards Layton & Finger, P.A.
>One Rodney Square
>920 N. King Street
>Wilmington, DE 19801
>cottrell@rlf.com
>
>### BY EMAIL
>Richard McMillan, Jr.
>Crowell & Moring LLP
>1001 Pennsylvania Avenue, N.W.
>Washington, DC 20004-2595
>rmcmillan@crowell.com

>>*/s/ Rodger D. Smith II (#3778)*
>>Morris, Nichols, Arsht & Tunnell LLP
>>1201 N. Market Street
>>P.O. Box 1347
>>Wilmington, DE 19899
>>(302) 658-9200
>>rsmith@mnat.com

# EXHIBIT Z

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| | ) | |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

## NOTICE OF DEPOSITION OF JOHN PECK

To:    Richard McMillan, Jr.         Frederick L. Cottrell, III
        Jeffrey D. Sanok               RICHARDS, LAYTON & FINGER, P.A.
        Brian M. Koide                One Rodney Square
        CROWELL & MORING, LLP     920 North King Street
        1001 Pennsylvania Avenue, N.W.  Wilmington, DE 19801
        Washington, D.C. 20004

PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(1), Fed. R. Civ. P.,

plaintiff R.R. Donnelley & Sons Company will take the deposition upon oral examination of

John Peck.

The deposition will commence immediately after the witness sits for a deposition as a designee under Rule 30(b)(6) (or if the witness does not so sit, on a date mutually agreed to by the parties), and continue day to day until completed, at the offices of Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005, or at such other time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by sound, video and/or stenographic means.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
  Attorneys for Plaintiff
  R.R. Donnelley & Sons Company

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 20, 2007
972077.1

- 2 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on July 20, 2007 upon the following in the manner indicated:

**BY EMAIL AND BY HAND**

Frederick L. Cottrell III
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com

**BY EMAIL**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
rmcmillan@crowell.com

_/s/ Rodger D. Smith II (#3778)_
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT AA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| | ) | |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |

## NOTICE OF DEPOSITION OF JOHN DESAUTELS

To:    Richard McMillan, Jr.              Frederick L. Cottrell, III
       Jeffrey D. Sanok                   RICHARDS, LAYTON & FINGER, P.A.
       Brian M. Koide                     One Rodney Square
       CROWELL & MORING, LLP              920 North King Street
       1001 Pennsylvania Avenue, N.W.     Wilmington, DE 19801
       Washington, D.C. 20004

       PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(1), Fed. R. Civ. P.,

plaintiff R.R. Donnelley & Sons Company will take the deposition upon oral examination of

John Desautels.

The deposition will commence immediately after the witness sits for a deposition as a designee under Rule 30(b)(6) (or if the witness does not so sit, on a date mutually agreed to by the parties), and continue day to day until completed, at the offices of Sidley Austin LLP, 1501 K Street, N.W., Washington, D.C. 20005, or at such other time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by sound, video and/or stenographic means.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
    Attorneys for Plaintiff
    R.R. Donnelley & Sons Company

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 20, 2007
972059.1

- 2 -

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 20, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on July 20, 2007, upon the following in the manner indicated:

**BY EMAIL AND BY HAND**

Frederick L. Cottrell III
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

**BY EMAIL**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT BB



Brian M. Koide
202-624-2391
bkoide@crowell.com

April 4, 2007

025140.0000051

**VIA EMAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

> Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in response to your letter of last night, and to confirm our conversation last night and the conversation that you, Doug Lewis, Nathaniel Grow, and I had this afternoon. As I mentioned, it appears that most of the issues raised in your letter are based on misunderstandings of the prior correspondence, and are no doubt attributable in part to not receiving a full set of files from Ropes & Gray. As I mentioned today, please call us in the future if you need further clarification or appear to be missing a response from us.

**Document Production**

For instance, as I noted in your call today, your letter fails to mention the prior discussions between the parties regarding Banta, Perry Judds, and Von Hoffmann. To reiterate our position, we are merely asking for RRD to comply with Fed. R. Civ. P. 34 and 26(e) by producing responsive documents that are now in RRD's possession, custody, or control, including those that were formerly in the possession of RRD's acquisition targets.[1] As I pointed out, Robert Nieland, RRD's 30(b)(6) designee and an in-house attorney, has already stated on the record that

---

[1] Ltr. from Ray to Yothers of 01/24/07.

Jamie Secord
April 4, 2007
Page 2 of 5

RRD would search for such documents,[2] and RRD further confirmed through Ropes & Gray, its then-current counsel, that the search was in progress as of the middle of March.[3]

In your letter, you conclude that Banta and Perry Judds documents "are not relevant to the claims or defenses of any party," and today Doug Lewis stated on the call that there is no connection between RRD and Banta. We believe that the relevance will become more apparent after your firm has received a complete set of files from Ropes & Gray. For instance, we understand that Banta has been in the variable digital printing field since at least the 1990s, had developed and/or commercialized a variable-digital printing software called DesignMerge, and had ordered a Barco PrintStreamer – a component referenced the patents in suit – around the same time RRD filed the earliest application for the patents in suit.[4] Further, RRD engaged Banta in licensing discussions regarding the patents in suit, and Banta represented that it would investigate how the patents in suit impact Banta's variable print composition systems.[5]

It appears that you have also misunderstood the Defendants' position with respect to prior art software that is being made available for inspection. While we agree that the prior art software will likely be "highly relevant" to this case, we have attempted to preserve the software programs as we have obtained them through public sales channels. We have not, for instance, installed any of the software programs or opened any of the sealed packages. We are also unwilling to have either party unilaterally install the software – by using either an original disk or a copy – in the event that the installation process would modify the installation disk contents or expend a licensing key or code that would prevent the other party from installing the software.

Similarly, the other materials made for inspection include third-party software programs. Defendants do not currently have a license or other permission to make copies of this software, and therefore cannot produce additional copies. As we mentioned in earlier correspondence, we would be willing to discuss procedures for installing this software on a stand-alone computer in our offices, and making that computer available for inspection. Alternatively, we believe that RRD could also obtain its own copies of the prior art and third-party software through

---

[2] Nieland Tr. at 73:22 – 74:5.

[3] Ltr. from Yothers to Ray of 03/14/07.

[4] Esko 00023.

[5] RRD047931-32 and RRD047936-37.

Jamie Secord
April 4, 2007
Page 3 of 5

commercial channels or from the third parties directly.[6]  As we discussed this afternoon, Defendants will supply RRD with a list of these prior art and third-party materials.

Further, there are materials, which as you note, are "owned" by Kodak. Much of this material is older versions of software once – but no longer – produced by Kodak entities.  Therefore, the availability of additional copies of such materials is limited.  As we indicated today, Defendants will provide single copies of these materials to RRD no later than April 9th.

As we explained today, however, it appears that you have misunderstood Defendants' position with regards to the accused software products.  First, Defendants have previously produced copies of the accused software products to RRD.  Defendants sent Ropes & Gray a copy of Darwin on August 31, 2006.[7] Additionally, Spire was sent to Ropes & Gray on March 7, 2007.[8]  Similarly, copies of Nextreme DL-100 and Nextreme DL-1000 were made available for inspection on January 22, 2007.[9]  RRD made no effort to inspect any of the materials made available for inspection until yesterday.

As we mentioned today, it also appears that your files lacked our prior correspondence in which we agreed to provide RRD with a total of three (3) copies of Darwin, DL-100, DL-1000, Spire, and Composer.[10]  On April 9th, RRD will be receiving two (2) additional copies of Spire; three (3) copies of DL-100; three (3) copies of DL-1000; and one (1) copy of Darwin for InDesign.  As we mentioned, we expect to receive an additional two copies of both Darwin for InDesign and Darwin for QuarkXPress from Israel after the Passover holiday.  As we further mentioned today, Defendants will provide Composer to RRD as soon as possible, hopefully next week.   Please be advised that the copies being should only be used for the purposes of this litigation.

---

[6] We respectfully disagree with your assertion that a producing party "must make copies" of materials being made available for inspection under Fed. R. Civ. P. 34. The Defendants have satisfied Rule 34 by making the prior art software available for inspection in their offices.  We would agree to produce copies of the printed software documentation if RRD agrees not to object to authenticity or foundation.

[7] Ltr. from Koide to Badke of 8/31/06.

[8] Ltr. from Ray to Festin of 3/7/07.

[9] Ltr. from Grow to Badke of 1/22/07 (discussing K01114230 and K01114232).

[10] Ltr. from Grow to Yothers of 3/16/07.

Jamie Secord
April 4, 2007
Page 4 of 5

As we mentioned today, Defendants intend to produce all known, responsive documents by April 18, 2007. RRD should be receiving a portion of this supplemental production tomorrow, April 5th, and a second portion by Monday, April 9th. Defendants intend to make an additional supplementation, within approximately two weeks, in conjunction with the supplementation of its privilege log. Defendants will, of course, continue to supplement as required by Rule 26(e).

As we noted, your letter could be read as suggesting that Defendants have not produced any documents relating "to products and hardware at issue besides Darwin." Defendants' previous supplemental productions have contained responsive documents regarding these other products and hardware.

With respect to the timing of RRD's supplemental production — while we appreciate that your firm has still not received all files from Ropes & Gray — several of our follow-up requests have been pending for over six months. For instance, the Defendants first raised their request for the missing prior art of record in September 2006,[11] and later in January 2007.[12] From our conversation of this afternoon, Defendants understand that RRD will be producing all known, responsive documents as soon as possible, but in any event hope to produce the documents by April 18, 2007.

## Deposition Scheduling

Today and yesterday we discussed the possible compromise of Defendants' request for additional deposition testimony from Mr. Warmus. I understand RRD would agree to produce Mr. Warmus for an additional two hours of deposition testimony, and that such examination would not be limited to the subject matter of inequitable conduct. We understand that RRD is only willing to make this offer if the Defendants agree to not take additional deposition testimony from Messrs. Dreyer, Beery, and Shiveley. We will get back to with our position.

As we pointed out in today's conversation, Defendants have previously agreed to provide 30(b)(6) witnesses for both the Versamark and Nexpress business units, in addition to the Creo business unit. The 30(b)(6) objections that you were referring to during today's call were amended accordingly on March 8, 2007, and copies of the amended objections were served to both Morris, Nichols, Arsht & Tunnell, as well as Ropes & Gray on that date.

---

[11] Ltr. from Koide to Badke of 9/19/06.

[12] Ltr. from Ray to Badke of 1/24/07.

Jamie Secord
April 4, 2007
Page 5 of 5

    Moreover, Defendants previously offered to make John Desautels available for a 30(b)(6) deposition on his designated topic in late-March, but RRD did not respond to this offer.  To initiate scheduling discussion between the parties, however, Defendants provide the following preliminary list of Kodak 30(b)(6) designees.  Kodak reserves the right to change its designations, although it believes the below table to be an accurate list.

| Topic | Defendants' Designees |
|:-----:|:---------------------|
| 1 | Ron Peleg, Roger D. Parrett, John Desautels, William Sullivan |
| 2 | Tim Donahue |
| 4 | Ron Peleg, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 5 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 6 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Sullivan |
| 7 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Schweinfurth |
| 8 | Gershon Alon, Benny Shimshoni, John Desautels, John Peck |
| 9 | Gershon Alon, Benny Shimshoni, Roger D. Parrett, William Schweinfurth |

    Please let us know when you are ready to discuss scheduling of these witnesses.

**Defendants' Interrogatory Responses**

    On March 14, Amy Ray responded to Stuart Yothers' March 13 letter.  As discussed during this afternoon's call, Defendants intend to serve supplemental interrogatory responses by April 13, 2007.

Best regards,

Brian M. Koide

cc:   Richard McMillan, Jr.
       Fredrick L. Cottrell III

# EXHIBIT CC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| | ) | |
| CREO, INC., NEXPRESS SOLUTIONS, | ) | |
| INC., KODAK VERSAMARK, INC., | ) | |
| EASTMAN KODAK COMPANY, and | ) | |
| KODAK GRAPHIC COMMUNICATIONS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| EASTMAN KODAK COMPANY, | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |
| | ) | |

## <u>NOTICE OF DEPOSITION OF PETER RUDAK</u>

To:  Richard McMillan, Jr.               Frederick L. Cottrell, III
     Jeffrey D. Sanok                    RICHARDS, LAYTON & FINGER, P.A.
     Brian M. Koide                      One Rodney Square
     CROWELL & MORING, LLP               920 North King Street
     1001 Pennsylvania Avenue, N.W.      Wilmington, DE 19801
     Washington, D.C. 20004              (302) 651-7700
     (202) 624-2500

         PLEASE TAKE NOTICE that pursuant to Rules 26 and 30(b)(1), Fed. R. Civ. P.,

plaintiff R.R. Donnelley & Sons Company will take the deposition upon oral examination of

Peter Rudak.

The deposition will commence at 9:00 a.m. on August 10, 2007, and continue day to day until completed, at the offices of Sidley Austin LLP, 1501 K Street N.W., Washington, D.C. 20005, or at such other time and place as may be agreed to by counsel.

The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by sound, video and/or stenographic means.

You are invited to attend.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

July 24, 2007
981174.1

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on July 24, 2007, upon the following in the manner indicated:

### BY EMAIL AND BY HAND

Frederick L. Cottrell III
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com


*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT DD

# crowell ( moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 27, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
JJF)

Dear Jamie:

Defendants write in regards to the scheduling of Peter Rudak's deposition.
Mr. Rudak is not available for deposition on August 10.  However, Mr. Rudak is
available to be deposed on Thursday August 30, in Rochester, NY.

Please let us know as soon as possible if RRD is available on this date.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT EE

# crowell ◖moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595  ▪ p202 624-2500  ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 13, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

  Defendants will not be producing data in response to RRD's Interrogatory Nos. 18 and 19 for NexPress Solutions, Inc. today.  Defendants anticipate that this data will be produced to RRD on or before Wednesday July 25th.

  Please let me know if you have any questions.

Best regards,

Nathaniel Grow

cc: Richard McMillan, Jr.

Crowell & Moring LLP  ▪  www.crowell.com  ▪  Washington, DC  ▪  California  ▪  New York  ▪  London  ▪  Brussels

Message Confirmation Report                    JUL-13-2007 05:45 PM FRI

Fax Number    :    202 628 5116
Name          :    CROWELL & MORING

Name/Number   :    913128537036#8627
Page          :    2
Start Time    :    JUL-13-2007 05:45PM FRI
Elapsed Time  :    00'41"
Mode          :    STD ECM
Results       :    [O.K]

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 • p202 624-2500 • f202 628-5116

crowell moring

## FACSIMILE COVER PAGE

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL
TO WHOM, OR ENTITY TO WHICH, IT IS ADDRESSED AND MAY CONTAIN
INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT
FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message
is not the intended recipient or the employee or agent responsible for delivering this
message to the intended recipient, you are hereby notified that any dissemination,
distribution, or copying of this communication is prohibited. If you have received this
communication in error, please notify us immediately by telephone (collect), and
return the original message to us at the address listed above via the U.S. Postal
Service.

Thank You

FAX TELEPHONE NUMBER: (202) 628-5116

Date:    July 13, 2007

To:    Jamie Secord                          Phone: 312.853.2206

Firm:  Sidley Austin LLP

Facsimile Telephone Number:    312.853.7036

Total Number of Pages (Includes Cover Sheet):    2

From:  Nathaniel Grow              Telephone Number:  202-624-2709

UserID: _____      Cam Number: _____        Fax Job Code: _____

Hard Copy to Follow:  ☐ Yes    ☐ No

Message: _____

Crowell & Moring LLP • www.crowell.com • Washington • Irvine • London • Brussels          C&M Form #7

# EXHIBIT FF

# crowell ( moring

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
NGrow@crowell.com

July 24, 2007

3477:ng
025140.0000051

**VIA FEDERAL EXPRESS**

Jamie L. Secord, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

Defendants provide the enclosed supplemental document production, labeled K02446627 through K02447893. These documents are produced subject to Defendants' written objections.

The first CD-ROM (K-049) contains supplemental information, including business records for NexPress Solutions, Inc., relied on by Defendants in response to RRD's Interrogatory Nos. 18 and 19. Materials on this disk are produced pursuant to the conditions set forth in my June 26, 2007 letter.

Please let me know if you have any questions.

Best regards,

Nathaniel Grow

Enclosures

cc:    Richard McMillan, Jr.

# EXHIBIT GG



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
NGrow@crowell.com

June 26, 2007

3477:ng
025140.0000051

**VIA FEDERAL EXPRESS**

Jamie L. Secord, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

> Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and*
> *Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-
> JJF)

Dear Jamie:

Please find enclosed two (2) CD-ROMs containing Defendants' supplemental production. The first CD-ROM (K-046) contains Bates ranges K02445569-K02445641. The second CD-ROM (K-047) contains Bates ranges K02445642-K02445644. These disks contain materials for the Creo and Versamark business units referenced in Defendants' responses to Interrogatory Nos. 18 and 19.

These materials are being produced subject to Defendants' written objections, as well as your agreement to maintain these materials only at the offices of Sidley Austin. Pursuant to your June 21, 2007 letter, Mr. Paul Rodriquez will only inspect and access these materials at your offices, and he will not keep any copies.

Please let me know if you have any questions.

Sincerely,

Nathaniel Grow

Enclosures

cc:    Richard McMillan, Jr.

# EXHIBIT HH



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ■ p202 624-2500 ■ f202 628-5116

Nathaniel Grow
202-624-2709
NGrow@crowell.com

July 30, 2007

3477:ng
025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie L. Secord, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Re:  *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write in regards to the documents Bates labeled K02445569 through K02445644, and K02446627 through K02446723, which were relied on by Defendants in responding to RRD's Interrogatory Nos. 18 and 19.

Defendants maintain that in light of the highly-sensitive nature of the documents, it is reasonable for RRD to maintain these documents only at the offices of Sidley Austin.  Nevertheless, Defendants will agree that these documents may leave the offices of Sidley Austin pursuant to the terms of the Protective Order.

Please let me know if you have any questions.

Best regards,

Nathaniel Grow

cc:   Richard McMillan, Jr.