IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants.<br><br>EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant. | C.A. 06-032-JJF<br><br>**REDACTED - PUBLIC VERSION** |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY

In opposing Defendants' Motion to Compel, R.R. Donnelley & Sons Co. ("RRD") claims to have already conducted a "reasonable search." (D.I 163 at 6). At bottom, however, the parties dispute what constitutes a "reasonable" search under the circumstances.

To provide context, both RRD and Eastman Kodak Company ("Kodak") are the ultimate parents of large corporate families. In their recent corporate pasts, both parties have acquired a number of companies that provided variable-data printing ("VDP") services or products. Kodak acquired its Creo, NexPress, and Versamark business units, each of which provided three separate software product lines now accused of infringement by RRD. RRD acquired and/or

merged with companies including Banta, Communicolor, and Moore Business Forms. Each of these three RRD entities developed and/or used VDP technologies that RRD itself (a) accused of infringement and/or (b) identified as a prior art reference.

A fundamental tenet of patent law states: "[t]hat which infringes if later anticipates if earlier." *Polaroid Corp v. Eastman Kodak Co*, 789 F.2d 1556, 1573 (Fed. Cir. 1986) (citing *Peters v Active Mfg. Co*, 129 U.S. 530, 537 (1889)). Thus, the activities and developments of these companies are highly relevant – as discussed in detail below – to the invalidity and infringement defenses that are core to any patent litigation. The irony here is that by acquiring these companies, RRD has likely also acquired vast amounts of prior art that invalidates its patents and thus undermines its case against Kodak. As a result, RRD has begun to dance around the issue by trying to have it both ways. It wants to be able to accuse a product of infringement, and then ignore evidence relating to whether the same product anticipates RRD's patents. Kodak is entitled to discovery from RRD relating to the Banta, Communicolor, and Moore Business Forms prior art references.[1]

Moreover, RRD's opposition attempts to limit the scope of Defendants' Motion to Compel to only the previously-discussed Begin and Communicolor business units. RRD's approach is symptomatic of its overall approach regarding discovery – to first object on corporate distinctions and then only search for the topics and RRD business units specifically identified by Defendants. But RRD's approach turns the discovery process on its head, and ignores the fact that RRD – not Defendants – have the best understanding of its corporate structure, the relevant business units likely to have responsive documents, and the knowledge of

---

[1] As noted in Defendants' Motion to Compel, documents from these RRD entities are relevant to other issues. (D.I. 148). This reply focuses on prior art.

those business units. Kodak should not be required to guess what responsive documents might exist within the large RRD corporate family—particularly where RRD delayed filing this suit for years and years all the while transforming its corporate structure. For these reasons, Defendants did not limit their Motion to Compel to particular business units, but instead expect RRD to comply with their discovery obligations for all documents within their possession, custody, or control, including such documents within the possession, custody, or control of any company within the RRD corporate family.[2]

### A.   Banta

Banta offered DesignMerge, a software package that worked with QuarkXPress and "allow[ed] each copy of a printed document to be personalized." Ex V. By 1998 -- before the asserted patents issued and before RRD acquired Banta -- RRD employees, including one of the inventors of the asserted patents (Mark Dreyer) – had set DesignMerge in their sights as a potential infringement target.[3] By 2003, Grant Miller, a senior RRD vice president emailed Mr. Dreyer and another inventor, James Warmus, and concluded that DesignMerge "sounds like something we may have patented." *Id.*                     REDACTED

---

[2] Defendants do not, of course, ask that RRD search "for every last document that may be responsive to Defendants' requests from every last person at every single [RRD] subsidiary, successor, predecessor, etc.," as RRD has indicated in correspondence on the issue. D.I. 148, Ex. U at 1. Instead, Defendants ask that RRD search the files of those individuals likely to have responsive documents, regardless of which RRD-entity for which they work. To date, RRD has refused to do so.

[3] This product was initially released under the name "DataMerge." By 2001, the product name had been changed to DesignMerge. Although once offered by Banta through its Banta Integrated Media division, DesignMerge is now offered by Meadows Publishing Systems ("Meadows"). In addition to seeking DesignMerge documents from RRD (and Banta), Defendants have also sought third-party discovery from Meadows.

- 3 -

REDACTED

Despite being aware of these facts, RRD has concluded unilaterally – after conducting its own independent "investigation" – that Banta "was not involved in variable digital printing on a *commercial* basis before 1998."[4] D.I. 148, Ex. S, at 1. A recently-produced RRD document casts serious doubts on the veracity of RRD's investigation.

REDACTED

Accordingly, the most RRD was able to sheepishly offer was that "Banta does not *likely* have any prior art relevant to this law suit."[5] D.I. 148, Ex. S at 1 (emphasis added). But it is clear from RRD's careful use of qualifiers – "likely" and "commercial" – that RRD itself does not know whether Banta possesses prior art. The only excuse that RRD can muster is that any searches for prior art would be burdensome because they would be "conducted on a plant-by-plant basis." *Id* at 2.

Having been brought into this suit against their will, Defendants – quite frankly – have little sympathy for RRD's claim of burden. As noted in separate motion papers, Defendants have collected documents from three separate business units located in the United States, Israel, and Canada, and produced more than 2.4 million pages, more than 10 times the volume produced by RRD. D.I. 166 at 2. As plaintiff, RRD should not be permitted to ignore likely sources of

---

[4] RRD does not dispute that non-commercial sources of prior art may exist. *See* D.I. 163 at 3-4.

[5] Indeed, RRD acknowledged that DesignMerge (previously DataMerge) constituted at least potential prior art by disclosing its existence to the United States Patent and Trademark Office ("PTO"). But RRD merely provided high-level marketing descriptions of the Banta product; there was no detailed disclosure of the underlying operation.

- 4 -

prior art merely based on inconvenience. The fact that VDP use was pervasive throughout many Banta plants merely increases the chance that one of the Banta plants antedated RRD's allegedly inventive concept.

Moreover, a careful reading of RRD's position reveals that Banta's "reasonable search" – which supposedly found an absence of a whole host of other categories of documents – apparently failed to include any documents stored in non-central locations, such as documents on non-networked computers and paper documents in individual offices. D.I. 148, Ex. S at 2 (claiming that "we have been advised that . . . there is no central database for Banta's recent variable digital printing techniques . . . any searches would need to be conducted on a plant-by-plant basis"). The Court should order RRD to produce all responsive documents in the possession of Banta.[6]

### B. Communicolor

According to public information, RRD acquired Communicolor in 1999 and merged it with other business units to form RRD Direct. Prior to its acquisition, Communicolor had used Begin software, which had been developed and commercialized by a predecessor to Kodak's Versamark business unit. Ex. Z at 2. In discovery responses, Defendants have provided claim charts showing how the Begin software invalidates claims of the asserted patents. Today, the Kodak Versamark unit offers the same core functionality of Begin in its follow-on Composer software product, which RRD presently accuses of infringement.

---

[6] RRD's opposition includes numerous inaccuracies regarding Banta. For instance, RRD baldly states that "[c]learly, Banta cannot have documents related to the patents-in-suit." D.I. 163 at 4.
REDACTED
Thus, Banta likely has documents relating to the asserted patents.

RLF1-3184708-1

In its opposition, RRD feigns ignorance of Communicolor's use of Begin. D.I. 163 at 5 (stating that Communicolor "allegedly" used Begin). But RRD fails to apprise the Court that in prosecuting the asserted patents, it submitted a Supplemental Information Disclosure Statement ("IDS") where it was forced to admit that Communicolor not only used Begin, but used it as early as 1994. Ex. Z at 2.[7] The 1994 date is problematic for RRD because it filed its earliest application for the asserted patents in June 1995, and its earliest claimed invention date is November 1994. Faced with an unfavorable date, RRD mischaracterized the operation of Begin to the PTO, creating potential inequitable conduct land mines that it must now address in this litigation.

Communicolor's use of Begin also suggests that Communicolor may have also used other prior art systems that antedate RRD's invention. Accordingly, RRD should be required to produce all responsive documents from the present-day Communicolor business unit.

### C.  Moore Wallace

RRD's opposition attempts to limit the scope of Defendants' Motion to Compel to the previously-discussed Begin and Communicolor business units. However, the scope of responsive documents in the possession, custody, or control or RRD subsidiaries is not so limited.

Indeed, as but one example, Moore Business Forms – before it was acquired by RRD – offered its XL Data System at least as early as June 1992. Moore Business Forms filed for a patent covering aspects of the system on July 1995, well before some of the later filing dates of the asserted patents. See U.S. Pat. No. 5,796,491. Based on publicly-available information,

---

[7] The IDS refers to RRD Direct's use of Begin, but this is apparently meant to refer to the earlier use by Communicolor.

Defendants understand that Moore Business Forms became part of Moore Wallace, which is now an RRD subsidiary                REDACTED

Defendants list Moore Business Forms as but one example of a larger problem. The record reflects that the VDP technology that RRD claims as its invention was used by many companies at or before the time RRD claims to have developed its invention. The fact that RRD has acquired many of these companies – though ironic – provides no excuse for RRD to not produce documents within its corporate custody, possession, or control.

It is respectfully suggested that the Court should grant Defendants' motion.

| OF COUNSEL: | /s/ Frederick L. Cottrell, III |
|---|---|
| | Frederick L. Cottrell, III (#2555) |
| Richard McMillan, Jr. | cottrell@rlf.com |
| Jeffrey D. Sanok | Jameson A.L. Tweedie (#4927) |
| Brian M. Koide | tweedie@rlf.com |
| Clyde Findley | Richards, Layton & Finger |
| Nathaniel Grow | One Rodney Square |
| Crowell & Moring LLP | P. O. Box 551 |
| 1001 Pennsylvania Avenue, NW | Wilmington, DE 19899 |
| Washington, DC 20004-2595 | (302) 651-7700 |
| (212) 624-2500 | *Attorneys for Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company and Kodak Graphic Communications Company* |
| Dated: August 1, 2007 | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following, who have also been served as noted:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE  19899

I hereby certify that on August 8, 2007, the foregoing was sent to the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

| | |
|---|---|
| Douglas I. Lewis<br>Jamie L. Secord<br>Sidley Austin, LLP<br>One South Dearborn Street<br>Chicago, IL  60603 | John G. Hutchinson<br>Sidley Austin, LLP<br>787 Seventh Avenue<br>New York, NY  10019 |

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

# EXHIBIT V

| | |
|---|---|
| From: | Grant L. Miller |
| Sent: | Wednesday, October 22, 2003 8:11 PM |
| To: | warmusj; Bob C Stolz; Riyazhassan M Asaria; Mark G Dreyer; Dennis J Oblak |
| Subject: | Banta solution - IP conflict??? |

From recent news releases ... sounds like something we may have patented.
What do you think?

Banta Corporation, a technology and market leader in printing and supply-chain management, today announced that its Integrated Media subsidiary released the latest version of its variable data software, DesignMerge ₣v 5.0.
DesignMerge is an add-on component for the desktop publishing application QuarkXPress₣v, which allows users to create customized 1:1 marketing documents by linking a QuarkXPress document to a database file. The software allows each copy of a printed document to be personalized, changing items such as name, address and graphics, which can be output in a variety of different formats. DesignMerge 5.0 contains a new rules module for Macintosh users, which provides a suite of powerful, conditional processing features.
Conditional processing (if-then-else statements) provide the ability to perform specific actions based upon the contents of one of more database fields. The conditional processing capability provides a menu-driven user interface with no need to ₣&hand code₣8 conditional statements and rules can be applied to individual variable links, boxes or QuarkXPress document pages.
In addition, the module allows users to define up to six unique actions either directly through DesignMerge or using AppleScript, which provides users complete control of the document layout. ₣&Banta has really outdone itself with the if-then-else conditional elements,₣8 said Brad Rice, graphic/Web designer at HKM, a DesignMerge 5.0 beta tester.
₣&The new conditional logic built in to DesignMerge allows us to make changes directly in our Quark templates without having to redesign our database. It really saves us a lot of time and money.₣8

1

# EXHIBIT W
# REDACTED

# EXHIBIT X

# REDACTED

# EXHIBIT Y

# REDACTED

# EXHIBIT Z

2176

PATENT
Atty. Docket No. 27600/M239A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant(s): James L. Warmus et al. ) | **Certificate of Mailing** |
| ) | |
| Serial No.: 09/852,581 ) | I hereby certify that this paper is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450 on this date: |
| ) | |
| Filed: May 10, 2001 ) | |
| ) | |
| Title: IMPOSITION PROCESS AND ) | |
| APPARATUS FOR VARIABLE ) | March 4, 2004 |
| IMAGING ) | |
| ) | Erin J. Fox |
| Group Art Unit: 2176 ) | Registration No. 52,261 |
| ) | |
| Examiner: Stephen S. Hong ) | |

SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

RECEIVED
MAR 11 2004
Technology Center 2100

Sir:

The patents, publications and other documents listed on the enclosed PTO Form 1449 are submitted pursuant to 37 CFR §§ 1.56, 1.97, and 1.98. Copies of the documents are enclosed as necessary.

In April of 2003, applicants' assignee, RR Donnelley (hereinafter "RRD") offered to license or sell a portfolio of patents to several companies, including Xerox Corporation of Stamford, Connecticut (hereinafter "Xerox"). The patents in the portfolio included the U.S. Patents cited as A183, A184, A186, A187, A190, A192, A193, A196, A199, A200, and A202 in the accompanying PTO Form 1449. In a letter dated December 2, 2003, Mr. Ronny Fogel, Director of Intellectual Property of Creo IL Ltd., of Herzlia, Israel (hereinafter "Creo," who purchased Scitex Digital Printing (SDP), believed to be the owner and/or developer of a software product known as "Darwin") responded on behalf of Xerox and stated that: "the

RRD006355

-2-

following prior art precludes valid assertion of the pertinent patents against Darwin: Kodak 3500; Kodak's Ektaprint 1392; Scitex Digital Printing's Begin; and The Mail Merger function running under WordPerfect 5.1." (These items of art are hereinafter referred to as the "Creo-cited art") Mr. Fogel's letter of December 2, 2003 did not include any documents or other information describing any of the Creo-cited art. On December 9, 2003, a letter was sent by the law firm of the undersigned requesting any and all documentation Mr. Fogel had in connection with the Creo-cited art. To date, no documents or information have been received from Creo concerning the Creo-cited art.

In an attempt to locate documentation and/or other information relating to the Creo-cited art, applicants' assignee conducted searches that ultimately located the documents identified as A114, A116, A178, A182, A188, and C99-C115 in the accompanying PTO Form 1449. In addition, in December 2003, RRD sought to determine whether any employee of RRD had any knowledge of the Creo-cited art. Upon investigation, it was found that two employees of RRD Direct (a wholly-owned subsidiary of RRD), Messrs. Bijukutty John and Thomas Sagenbrecht, had worked with the Begin software starting in 1994 or 1995. (Mr. John resigned from RRD Direct on or about February 25, 2004). In addition, a former RRD employee, Mr. Paul Kaminskas, was found to have worked with the Begin software at RRD Direct in approximately late 1997 or early 1998 to address a customer's requirements to reduce production cycle time and manage the use of several print providers. None of these gentlemen was an inventor of any of the subject matter claimed in the present application or any of the applications that issued as the patents noted in the attached PTO Form 1449, nor was any an attorney or agent who prepared or prosecuted any such applications, nor were any of these gentlemen substantively involved with the preparation or prosecution of any such applications. A summary of the understandings of Messrs. John, Sagenbrecht, and Kaminskas relative to the Begin software is set forth below.

A portion of the Begin software was initially programmed for an Apple Macintosh as a Quark XPress Xtension, and was later ported over to the Windows operating system. The remainder of the software was run on a Sun workstation, as noted in greater detail below.

The Begin software was purchased and tested by RRD Direct in an attempt to commercially create documents having fixed and variable data thereon. Specifically, the workflow that was envisioned for use with the Begin software began with the creation by a designer of separate fixed and variable image portions (the variable image portion was typically referred to as an "imaging plane." For convenience, the fixed image portion will

-3-

hereinafter be referred to as a "fixed plane.") Also, a database was assembled containing the variable data. The fixed plane was used to produce plates for a conventional four-color offset press that produced a printed paper web comprising pages of fixed information. Thereafter, the printed paper web was passed under an SDP 3000 Series inkjet printer separate from the offset press. (The web after printing by the offset press was either immediately sent to the inkjet printer in an on-line process, or was stored and later sent to the inkjet printer in an off-line process.) The inkjet printer included inkjet heads that were controlled in accordance with signals developed by the Sun workstation. Specifically, the Sun workstation merged the data stored in the database with the data defining the imaging plane. The merged data were then sent to a collator/raster image processor unit that, in turn, provided command signals to the heads of the inkjet printer to cause the inkjet printer to print variable information.

According to Messrs. John, Sagenbrecht, and Kaminskas, RRD Direct was unable to get the Begin software to work at commercial speeds, even after repeated testing and after numerous visits by and/or consultations with SDP representatives. This was apparently due to the fact that all of the data of the imaging plane had to be raster image processed (or RIP'd) in preparation for printing of each page. In other words, the entire imaging plane had to be RIP'd for every page printed by the ink jet printer. This limitation resulted in extreme overhead requirements on the collator/raster image processor unit, thereby slowing production speeds unacceptably.

The document C105 identified in the accompanying PTO Form 1449 mentions three basic tasks for the Begin software: "The software sets up the position of the print heads on the web, lays out the pages and merges the variable data." *Scitex Digital Printing looks to Quark Xpress*, THE SEYBOLD REPORT ON PUBLISHING SYSTEMS, July 20, 1994, Volume 23:20, page 34. The document C101 describes:

> two modules: a web layout/page composition module designed to run on a PC under MS DOS®/Windows®; and a data merge module that runs on a Sun® SPARCstation® computer with the UNIX® operating system. The web layout/page composition module operates within QuarkXPress™ for Windows, and gives designers a large array of graphic design tools from which to choose. Proofing stations allow the designer to see exactly what the finished product will look like. Once data merge files have been created in the design process, they are transferred to the data merge module

RRD006357

-4-

*Form 20-F,* Scitex SEC Report, 1997 (Page 15).

The document C105 further discloses that:

The page layout may contain fixed as well as variable items. Fixed text boxes can be rotated freely or modified in any other way that Xpress permits. They will be "prerasterized" before printing takes place and transferred to the printer as a bitmap that will be printed on every page.

*Scitex Digital Printing looks to Quark Xpress,* THE SEYBOLD REPORT ON PUBLISHING SYSTEMS, July 20, 1994, Volume 23:20, page 35.

Also according to these documents, once data merge files have been created in the design process, they are transferred to the data merge module. The number of design stations linked to the data merge process can be expanded. During the merging task, the variable data for each page are composed and written to an output tape that drives the printer.

Applicants, undersigned applicants' attorneys, those substantively associated with the prosecution of the present application, and Messrs. John, Sagenbrecht, and Kaminskas have been unable to find any evidence that the Begin software ever operated in a manner to RIP reusable portions of an imaging plane and reuse the resulting bitmap multiple times to create multiple pages. In fact, as noted above, it is RRD Direct's understanding, as embodied in the recollections of Messrs. John, Sagenbrecht, and Kaminskas, that all portions of the imaging plane (whether reusable or not) had to be re-RIP'd after merging thereof with the data in the database.

According to the recollection of Mr. Kaminskas, and contrary to the quoted language from the document C101 above, there were no offline proofing capabilities available at least in late 1997 or early 1998 directly from the Begin software. Proofs had to be created on the SDP 3000 series printer. At that time, SPD was apparently looking into adding proofing capabilities, possibly through third-party software.

Also in accordance with Mr. Kaminskas' recollection, although customer QuarkXPress™ files could be used with the Begin software, QuarkXPress™ files could not be created from the Begin software. As an example, a customer could provide a QuarkXPress™ file with their layout for the imaging layer which contained QuarkXPress™ features that Begin did not support. These items could be corrected so that they complied with Begin, but the modified layout could not be sent back to the customer as a QuarkXPress™ file for their review unless the same changes were made independently under QuarkXPress™. If there were a number of changes, this could be an error-prone process.

-5-

Still further in accordance with Mr. Kaminskas' recollection, the Data Merge task was performed on the Sun Workstation using fonts for the variable fields that were defined by the Begin software. These fonts were resident on the Sun workstation. The fonts used by the fixed fields of the imaging layer were on the computer that ran the Begin software. There could be differences in a font between the UNIX and Macintosh (or Windows) environments. This would be most apparent when a variable field was embedded within a surrounding fixed field using the same font.

Mr. Kaminskas further recalls that reflowing of variable text within fixed text was not undertaken because it was simply too time consuming. This is addressed in document C17, page 35, 2nd paragraph under the "Laying out pages" section.

Mr. Kaminskas' recollections as set forth above are not inconsistent with the recollections of Messrs John and Sagenbrecht.

This information disclosure statement is being filed after the mailing date of a first Office but, to the best of the undersigned's knowledge, before the mailing date of a final action under 37 CFR § 1.113 or notice of allowance under 37 CFR § 1.311. Therefore, in accordance with 37 CFR § 1.97(c), submitted herewith is the fee set forth in 37 CFR § 1.17 (p) for submission of an information disclosure statement under 37 CFR § 1.97(c).

An early and favorable action on the merits is respectfully requested.

Respectfully submitted,

McCracken & Frank LLP
200 W. Adams
Suite 2150
Chicago, Illinois 60606
(312) 263-4700
Customer No.: 29471

By: *[signature]*
Erin J. Fox
Registration No. 52,261

March 4, 2004

# EXHIBIT AA
# REDACTED