IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     C.A. No. 06-032 (JJF) |
| | ) |
| CREO, INC., NEXPRESS SOLUTIONS, | ) |
| INC., KODAK VERSAMARK, INC., | ) |
| EASTMAN KODAK COMPANY AND | ) |
| KODAK GRAPHIC COMMUNICATIONS | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| R.R. DONNELLEY & SONS COMPANY, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

**PLAINTIFF R.R. DONNELLEY & SONS COMPANY'S
MOTION TO COMPEL DEFENDANTS'
ANSWER TO PLAINTIFF'S INTERROGATORY NUMBER 21**

Plaintiff R.R. Donnelley & Sons Company ("RRD") respectfully moves this

Court to compel defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Defendants") to

answer RRD's Interrogatory No. 21. The parties have exchanged letters regarding this matter

and have held a meet-and-confer on August 15, 2007, but have been unable to reach an

agreement.

**The Discovery in Dispute**

1.    Interrogatory No. 21 asks Defendants to identify all "Third Party Software Products" that Defendants have "offered, sold, marketed, or promoted for use...." RRD's Third Set of Interrogs., Ex. A, at 7. Defendants have claimed difficulty understanding or responding to the terms "offered, sold, marketed, or promoted for use." Def. Resp. to RRD's Third Set of Interrogs., Ex. B, at 4. For the terms "marketed" and "promoted," they objected because the terms were "overly broad and ambiguous." *Id*. at 4. For the terms "offered" and "sold," they did not object. *Id*.

2.    It seems that because of their alleged difficulty in understanding the terms "marketed" and "promoted," rather than answering the question RRD asked, Defendants responded to a different question, one that they posed to themselves: which Third Party Software Products "Defendants believe ... may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products." Ex. B, at 4. The parties disagree whether this answers RRD's Interrogatory No. 21.

**Defendants did not object to the terms "offered" or "sold," yet they never responded to the interrogatory regarding those terms.**

3.    Defendants never objected to the terms "offered" or "sold." They should have at least answered the interrogatory for these terms. But they did not.

4.    In their interrogatory response, Defendants carefully state that they "are not asserting that they sell, offer to sell, market, or promote" the Third Party Software Products that they list. Ex. B, at 4. Defendants are "merely indicating that Defendants believe such products may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products." *Id*.

5.    RRD did not ask Defendants for a list of compatible products.  RRD asked, *inter alia*, for products Defendants had "offered" or "sold."  Defendants do not even claim that they do not understand these terms.

6.    Defendants justify their action with this reasoning:    "Given the imprecision of 'marketed' and 'promoted' … Defendants were faced with two options:  (1) to object to the terms 'marketed' and 'promoted' and only identify what was 'offered' or 'sold' or (2) to object to the definitions, but nevertheless identify the universe of third party products that may be compatible with Defendants' Hardware Products."  Defendants' Letter to RRD, dated August 15, 2007, Ex. C, at 1.

7.    Defendants seem to believe they could choose either (1) to answer the portion of the interrogatory that was, in their view, non-objectionable, or (2) to answer a different question than the one RRD posed.  They apparently chose option (2) and answered a different question.

8.    Defendants' refusal to answer Interrogatory No. 21 with respect to products sold or offered is without justification.

**The terms "marketed" and "promoted" are common business terms, which Defendants likely understand.**

9.    Defendants have picked a curious set of terms to find objectionable or ambiguous:  marketed and promoted.  These are common business terms.  It seems likely that Defendants understand these common terms.

10.    Defendants likely have sales and marketing departments that market and promote products.  In short, Defendants' claim that they do not understand these terms rings hollow.

**Defendants used the terms "marketed" and "promoted" in their own interrogatories.**

11.     Although Defendants now claim that they cannot understand the terms "marketed" and "promoted," they issued interrogatories and document requests using those terms.   Presumably, Defendants understood what they were asking for in their own interrogatories and document requests.

12.     Defendants, in their Interrogatory Nos. 13 and 15 and Document Request No. 18, use the same terms in the same way that they object to here.

13.     In Interrogatory No. 13, they ask for the "earliest date that RRD first offered for sale, advertised, promoted, [or] sold … the claimed subject matter." Ex. D, at 3.  In Interrogatory No. 15, they request all "marketing plans concerning the Patents in Suit." Ex. D, at 3.  And in Defendants' Request for Production No. 18, they request all documents concerning "the advertisement or promotion" of any product disclosed or claimed in the patents in suit. Ex. E, at 7.

14.     When RRD pointed out that Defendants appeared to understand these terms enough to issue discovery utilizing them, Defendants wrote in an August 15, 2007, letter that "[w]hile Defendants may have themselves requested marketing materials or advertisements from RRD, RRD did not object to these terms, and even if it had done so, the context would be different."  Defendants' Letter to RRD, dated August 15, 2007, Ex. C, at 1-2.  Defendants have been unable to explain how the "context" would have been different.

**In short, Defendants did not answer the interrogatory.**

15.     At bottom, the issue here is that Defendants have refused to answer the question that RRD presented:  to "[i]dentify all Third Party Software Products that Defendants have offered, sold, marketed, or promoted for use with Defendants' Hardware Products since

2001...." Ex. A, at 7. Instead, Defendants created and answered a different question involving which Third Party Software Products "may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products." Ex. B, at 4.

16.    Defendants argue that their new question and answer is justified because "marketing" and "promoted" are ambiguous terms and that RRD has defined "Third Party Software Products" in a "functional way." Defendants' Letter to RRD, dated July 30, 2007, Ex. F. Thus, "Defendants provided an answer that was consistent with the broadest possible reading -- essentially identifying all third-party software products that Defendants might have addressed and/or dealt with over the relevant time period." *Id.* Strangely, defining "Third Party Software Products" in a "functional way" did not prevent Defendants from answering an unasked question relating to those Third Party Software Products.

17.    The fact remains that Defendants have not answered the question that RRD asked. Answering a different question is not sufficient. Defendants should be required to answer the actual question asked.

**Defendants should not be allowed, without penalty, to provide a responsive answer to RRD's Interrogatory No. 21 after RRD files this Motion.**

18.    The parties have exchanged letters and met and conferred about the issue in this motion. Defendants have therefore had the opportunity to do the right thing and to respond properly to RRD's discovery. Defendants have declined to do so.

19.    RRD is concerned that Defendants, as they have done before, may provide an adequate response to Interrogatory No. 21 only after RRD has filed this motion. Should this again be the case, RRD respectfully requests the Court award RRD its attorneys' fees for preparing and filing this motion.

WHEREFORE, RRD respectfully requests this Court to order Defendants to answer RRD's Interrogatory No. 21.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
 (212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

August 23, 2007
1219587

## **RULE 7.1.1 CERTIFICATE**

I hereby certify that counsel for plaintiff has discussed the subject of the foregoing motion with counsel for defendants, and the parties have not been able to reach agreement on the issues raised in the motion.

*/s/ Rodger D. Smith II*
_____

Rodger D. Smith II

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 23, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on August 23, 2007, upon the following in the manner indicated:

### BY EMAIL & HAND

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

### BY EMAIL

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

*/s/ Rodger D. Smith II*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 06-cv-032-JJF |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) | |
| Defendants. | ) | |
| EASTMAN KODAK COMPANY , | ) | |
| Counterclaim-Plaintiff, | ) | |
| v. | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| Counterclaim-Defendant. | ) | |

## PLAINTIFF'S THIRD SET OF INTERROGATORIES TO DEFENDANTS CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff R.R. Donnelley & Sons Company ("R.R. Donnelley") submits the following interrogatories to defendants Creo, Inc. ("Creo"), NexPress Solutions, Inc. ("NexPress"), Kodak Versamark, Inc. ("Kodak Versamark"), Eastman Kodak Company ("Kodak"), and Kodak Graphic Communications Company ("KGCC"), collectively "Defendants." R.R. Donnelley requests that

Defendants answer each Interrogatory fully in writing under oath, and that Defendants serve their responses within thirty (30) days after service of these interrogatories.

## DEFINITIONS

1. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of any Interrogatory any information or documents that might otherwise be construed to be outside its scope.

2. "Any" shall be read to mean each and every.

3. "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

4. "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence. By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices. The term "document" shall also be

construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

5.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

6.    "NexPress" means NexPress Solutions Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

7.    "Kodak Versamark" means Kodak Versamark, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

8.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, including, but not limited to, Kodak Versamark, NexPress, Creo, and KGCC and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

9.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or

other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

10. "Defendants" means Creo, NexPress, Kodak Versamark, Kodak, and KGCC, collectively.

11. "R.R. Donnelley" means R.R. Donnelley & Sons Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

12. "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government writ or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

13. "The '452 patent" means United States Patent No. 6,205,452.

14. "The '599 patent" means United States Patent No. 6,327,599.

15. "The '940 patent" means United States Patent No. 6,844,940.

16. "The '801 patent" means United States Patent No. 6,952,801.

17. The "Patents-in-Suit" shall refer to the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

18. "PTO" refers to the United States Patent and Trademark Office.

4

19. The singular shall include the plural and the plural shall include the singular.

20. The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

21. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

22. The term "including" does not limit the scope of the Interrogatory. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

23. The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-l00 Variable Data Software, Kodak NexTreme DL-l000 Variable Data Software, Composer, and any successors of the afore-mentioned Software Products, including without limitation Fusion Pro.

24. The term "Defendants' Hardware Products" means the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, the Kodak NexPress 2500 Digital Production Color Press, and any successors of the afore-mentioned Hardware Products.

25. The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

26. The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

# INSTRUCTIONS

1.      Read and interpret these Interrogatories in accordance with the Definitions and Instructions set forth herein.

2.      Answer each Interrogatory fully in writing and under oath in accordance with Fed. R. Civ. P. 11 and 33.

3.      Answer each Interrogatory separately and as completely as possible.  The omission of any name, fact, or other item of information from the answers shall be deemed a representation that such information is not known to Defendants or their agents, counsel, or other representatives, or otherwise within Defendants' possession, custody, or control, at the time of the service of the answers or thereafter.  If an Interrogatory cannot be answered completely, answer it to the greatest extent possible.

4.      If Defendants cannot answer any Interrogatory fully within thirty (30) days despite the exercise of reasonable diligence, furnish as complete an answer as possible and explain in detail the reasons why a complete answer cannot be provided.  If the reason Defendants cannot give a complete response is due in whole or in part to inability to gather all responsive information within thirty (30) days, then answer within thirty (30) days stating what additional efforts are necessary to answer fully and estimate when Defendants will be able to complete those additional efforts and provide a complete response.

5.      If Defendants claim that an Interrogatory is in any way objectionable, respond to the portion of the Interrogatory believed to be unobjectionable and specifically identify that aspect of the Interrogatory that Defendants claim to be objectionable and why.

6.      If Defendants claim that information requested or required in response to a given Interrogatory is also responsive to another Interrogatory, Defendants may not answer the

Interrogatory by referring to the answer to another Interrogatory unless the answer to the Interrogatory being referred to supplies a complete and accurate response to the Interrogatory being answered.

      7.     If Defendants object to any Interrogatory on the ground that it is vague and/or ambiguous, identify the particular words, terms, or phrases that Defendants assert make such request vague and/or ambiguous.

      8.     Separately with respect to each piece of information called for by this Third Set of Interrogatories that Defendants withhold under a claim of privilege or otherwise, state that Defendants are withholding it and explain why, including a description of the information withheld in accordance with Fed. R. Civ. P. 26(b)(5).

      9.     Pursuant to Fed. R. Civ. P. 26(e), these Interrogatories are continuing in nature and require Defendants to furnish supplemental answers whenever they obtain different or additional knowledge, information, or belief in relation to these Interrogatories.

## **INTERROGATORIES**

### **INTERROGATORY NO. 21**

      Identify all Third Party Software Products that Defendants have offered, sold, marketed, or promoted for use with Defendants' Hardware Products since 2001 and, for each Third Party Software Product identified, provide the name, owner, version, and year that Defendants offered, sold, marketed, or promoted the Third Party Software Product.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

May 18, 2007
831732

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 18, 2007, upon the following in the manner indicated:

### BY EMAIL AND HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801
cottrell@rlf.com

### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
rmcmillan@crowell.com

Rodger D. Smith II

EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, | |
| Plaintiff, | |
| v. | C. A. No. 06-032-JJF |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | |
| Defendants. | |
| EASTMAN KODAK COMPANY, | |
| Counterclaim-Plaintiff, | |
| v. | |
| R.R. DONNELLEY & SONS COMPANY, | |
| Counterclaim-Defendant, | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSE TO R.R. DONNELLEY & SONS THIRD SET OF INTERROGATORIES**

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure and the Court's

January 4, 2007 Order, Creo, Inc., NexPress Solutions, Inc., Kodak VersaMark, Inc., Eastman

Kodak Company, and Kodak Graphic Communications Company ("Defendants") provide the

following response to the Third Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak

Company, and Kodak Graphics Communications Company ("the Interrogatories") propounded

by R.R. Donnelley & Sons Company ("RRD"):

1

## I.    GENERAL RESPONSES

Defendants' responses to the Interrogatories are made to the best of Defendants' current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendants' recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.    Defendants reserve the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Defendants make the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Defendants object generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine. Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Defendants object to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in

2

any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement, expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

3.      Defendants object to all instructions, definitions, and interrogatories to the extent they seek information not currently in Defendants' possession, custody, or control, or refer to persons, entities, or events not known to Defendants, on the grounds that such instructions, definitions, or interrogatories seek to require more of Defendants than any obligation imposed by law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Defendants an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

4.      Defendants object to all instructions, definitions, and interrogatories to the extent they rely on the term "Defendants' Hardware Products." As defined, the term "Defendants' Hardware Products" is vague and ambiguous, to the extent it includes "successor" hardware products. "Successor" hardware products are undefined in the interrogatories, and therefore vague and ambiguous. Accordingly, Defendants will only answer the interrogatories with regards to the hardware products specifically identified in the interrogatories.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 21

Identify all Third Party Software Products that Defendants have offered, sold, marketed, or promoted for use with Defendants' Hardware Products since 2001 and, for each Third Party Software Product identified, provide the name, owner, version, and year that Defendants offered, sold, marketed, or promoted the Third Party Software Product.

3

## RESPONSE TO INTERROGATORY NO. 21

Defendants object to this Interrogatory to the extent that it seeks information related to

Third Party Software Products that are not relevant to the claims or defenses of any party or the

subject matter of the action. In particular, RRD has yet to identify even a single specific Third

Party Software Product in its pleadings, discovery, or correspondence. Defendants also object to

the term "owner" as ambiguous with respect to Third Party Software Products. When providing

ownership information concerning a Third Party Software Product, Defendants will supply

information sufficient to describe a manufacturer and/or distributor, to the best of Defendants'

knowledge and information. Defendants further object to the undefined terms "marketed" or

"promoted" as overly broad and ambiguous. Defendants are aware that Third Party Software

Products exist that are, to varying degrees, compatible with Defendants' products. By

identifying such Software Products below, Defendants are not asserting that they sell, offer to

sell, market, or promote each of these products, but are merely indicating that Defendants believe

such products may (or, depending on their configuration, may not) be compatible with

Defendants' Hardware Products. Subject to the foregoing general and specific objections,

Defendants respond by identifying the following Third Party Software Products since 2001:

| Name and Version (to the extent the version number is known) | Manufacturer and/or Distributor | Year |
|---|---|---|
| AUTOGRAPH | Document Sciences Corporation | 2006 to 2007 |
| DesignMerge Pro | Meadows Publishing Solutions | 2007 to 2007 |
| Dialogue | Exstream Software | 2006 to 2007 |
| DIRECTSMILE Connectivity Suite | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Document | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Generator | DirectSmile | 2006 to 2007 |
| DOC1 | Group1 Software Europe Ltd. | 2006 to 2007 |
| .EDIT | Pageflex | 2004 to 2007 |
| FUSE | L2 Solutions | 2006 to 2007 |
| IPM System | Techno Design BV | 2006 to 2007 |
| iWay Prime | Press-Sense | 2006 to 2007 |
| Media Manager | Factotum Media | 2007 to 2007 |

4

| Mpower | Pageflex | 2004 to 2007 |
|---|---|---|
| NEWLEAF | PrintSoft | 2006 to 2007 |
| Open Print | Sefas Innovation | 2006 to 2007 |
| OPUS | Elixir Technologies Corporation | 2006 to 2007 |
| Papyrus | ISIS | 2006 to 2007 |
| pdfExpress | Lexigraph Software | 2006 to 2007 |
| PERSONA | Pageflex | 2006 to 2007 |
| Personal Effect | XMPie | 2003 to 2007 |
| Personalizer-X, v3.1 | TechnoDesign BV | 2002 to 2007 |
| PlanetPress, v 4, v 5, v 6 | Objectif Lune | 2005 to 2007 |
| PReS | PrintSoft | 2006 to 2007 |
| PrintNet T | GMC Software Technology | 2003 to 2007 |
| PrintShop Mail, v 1 – v5 | Atlas Software | 2002 to 2007 |
| Proform Designer | Lytrod Software,Inc. | 2007 to 2007 |
| Remake | Sefas Innovation | 2006 to 2007 |
| STOREFRONT | Pageflex | 2007 to 2007 |
| VIP | Emtex | 2006 to 2007 |
| VITESSE | Elixir Technologies Corporation | 2006 to 2007 |
| XPRESSION | Document Sciences Corporation | 2006 to 2007 |

Defendants reserve the right to supplement its response to this interrogatory at

appropriate times in this litigation.

As to objections only,

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,*
*NexPress Solutions, Inc., Kodak*
*VersaMark, Inc., Eastman Kodak*
*Company, and Kodak Graphic*
*Communications Company*

OF COUNSEL:
Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated:  June 21, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2007, I served the foregoing on counsel as follows:

## BY HAND DELIVERY AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-4169
dilewis@sidley.com
jsecord@sidley.com

John G. Hutchinson
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
(212)839-5398
jhutchinson@sidley.com

Jameson A.L. Tweedie(#4927)
tweedie@rlf.com

EXHIBIT C



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ∎ p202 624-2500 ∎ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

August 15, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

> Re:   *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

I write to confirm this morning's meet and confer conference.

**RRD's Interrogatory No. 21:**

With respect to Defendants' response to RRD's Interrogatory No. 21, Defendants explained that we have fully answered RRD's Interrogatory, pursuant to our objections to the imprecise terms "marketed" and "promoted." For instance, Defendants would not view the mere fact that one or more of Defendants' Hardware Products that is compatible with the format produced by a third party software product to be a "promotion." Given the imprecision of "marketed" and "promoted" – and RRD's failure to provide any definition for these terms – Defendants were faced with two options: (1) to object to the terms "marketed" and "promoted" and only identify what was "offered" or "sold" or (2) to object to the definitions, but nevertheless identify the universe of third party products that may be compatible with Defendants' Hardware Products. In the spirit of cooperation, we provided the latter. With Defendants' response, RRD may determine those third party software products that RRD believes Defendants have "offered, sold, marketed, or promoted for use." Thus, Defendants have provided Donnelley with the information it seeks.

Furthermore, RRD's Interrogatory did not request that Defendants specifically delineate the third party products that Defendants "offered" versus those that were "sold," "marketed," or "promoted," but instead asked Defendants to generally identify all such products. While Defendants may have themselves

Jamie Secord
August 15, 2007
Page 2

requested marketing materials or advertisements from RRD, RRD did not object to
these terms, and even if it had done so, the context would be different. Thus,
Defendants have validly objected to the terminology, and have answered RRD's
Interrogatory accordingly.

Due to RRD's imprecision, Defendants further offered, as an alternative, to
amend our response to identify the third party products that Defendants have
"offered" or "sold." RRD rejected this proposal.

Further, as we noted this morning, RRD's position in this case stands in
stark contrast to the position it has taken in the *Tesseron* Suit. As noted in our
August 1st Reply brief, RRD – more than a year-and-a-half into the case – has yet
to identify a single third party product by name, and has never provided any
infringement claim charts for such products. Nor has RRD taken any discovery
from these third party software makers. Should RRD move to compel Defendants
on Interrogatory No. 21, Defendants will highlight the *Tesseron* Suit and RRD's
failure to pursue the third party aspect of this case in a timely manner, and ask the
Court to set a date certain by which RRD must specifically identify such third party
products and provide claim charts.

## Defendants' Requests for Production:

With respect to Defendants' Request for Production No. 56, Defendants
reiterated the relevance of the documents sought by this Request, as was previously
stated in my June 28th and July 13th letters, as well as Defendants' response to
RRD's Interrogatory No. 8. You agreed to check with your client regarding whether
RRD will search for documents dating back to 1990. Defendants can confirm
whether we searched for similar agreements dating back to at least 1990, if you
would like.

Regarding Defendants' Request for Production No. 60, you stated that RRD
does not currently have any documents which (i) RRD has considered, analyzed,
examined, or alleged to be prior art in the *Tesseron* Suit and (ii) have not been
produced in this case. Defendants requested that you provide written confirmation
that RRD will produce any such documents to Defendants as soon as they are
identified by RRD, regardless of whether they have been produced in the *Tesseron*
Suit.

With respect to Defendants' Request for Production No. 61, you expressed a
concern that RRD may presently be unable to produce documents responsive to this
Request under the *Tesseron* Protective Order. You stated that the *Tesseron*
Protective Order requires that RRD be under a court order before producing such
documents in this case. Defendants stated that RRD is presently under two court

Jamie Secord
August 15, 2007
Page 3

orders to produce documents responsive to this Request. In particular, both the Court's Scheduling Order as well as its Order of August 3rd mandate such production by RRD. You indicated that you would take into consideration whether either Order would qualify as a "court order" under the *Tesseron* Protective Order. In the alternative, however, Defendants asked whether RRD would agree to stipulate to (or agree to not oppose) a motion specifically ordering RRD to produce responsive documents in the *Tesseron* Suit. You stated you would inquire about whether RRD would so stipulate (or not oppose).

Finally, regarding Defendants' Requests for Production Nos. 63 and 64, Defendants again explained that RRD's limitation of its search for responsive documents to only those residing with individuals "likely to have knowledge of the Patents in Suit and/or of Defendants' [allegedly] infringing activities" is unreasonable. Defendants noted that under the Federal Rules parties are entitled to seek discovery reasonably calculated to lead to the discovery of relevant documentation. Here, for instance, evidence of knowledge by individuals tasked with purchasing and/or using VDP software, or those tasked with competitive intelligence, is likely to lead to documentation regarding RRD's earliest knowledge of the accused products and their operation. Accordingly, Defendants expressed our belief that both Request Nos. 63 and 64 are reasonable and appropriate as written.

Defendants consider our obligation to meet and confer on these subjects satisfied. Due to the significant time that has elapsed since Defendants first served its Requests for Production on May 1st, Defendants request that you provide by no later than August 20th:

1) confirmation that RRD will agree to search back to 1990 for documents response to Defendants' Request No. 56;

2) confirmation that RRD will produce documents responsive to Request No. 60 as soon as they are identified by RRD, regardless of whether they have been produced in the Tesseron Suit; and

3) confirmation that RRD agrees that it is presently under a "court order" as used in the *Tesseron* Suit to produce responsive documents from the *Tesseron* Suit in this litigation, or that RRD will otherwise agree to stipulate to a motion specifically requiring RRD to produce such documents.

Please let me know if you believe any of the above mischaracterizes our conversation.

Jamie Secord
August 15, 2007
Page 4

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ California ▪ New York ▪ London ▪ Brussels

EXHIBIT D

FROM RL&F                          (FRI)12. 1'06 16:25/ST. 16:23/NO. 4864902209 P  5

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, <br><br> Defendants. | C. A. No. 06-cv-032-JJF |
| CREO, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> R.R. DONNELLEY & SONS COMPANY, <br><br> Counterclaim-Defendants, | |

### CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S SECOND SET OF INTERROGATORIES TO R.R. DONNELLEY & SONS COMPANY (NOS. 11-20)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") direct the foregoing second set of interrogatories to R.R. Donnelley & Sons Company ("RRD") to be answered separately and fully, in writing and under oath, within thirty (30) days of service.

RLF1-3076673-1

## DEFINITIONS AND INSTRUCTIONS

Creo incorporates herein by reference the Definitions and Instructions of Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10). In addition, the following definitions and instructions shall apply:

Q.     "Barco-Xeikon Entity" means Barco Graphics N.V. and/or Xeikon N.V., and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations of either entity, partnerships, or other business entities of both entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

R.     "Barco-Xeikon Components" means the following, either individually and/or in some combination:  (i) the Barco PrintStreamer electronic collation system; (ii) the Barco FastRIP image processor; (iii) the Barco FastRIP X image processor; and (iv) the Xeikon DCP-1 digital press.

S.     "Practice of the Patents in Suit" means any activity by (i) RRD to practice, use, obtain revenues based on the use of, offer services that use, commercialize, offer for sale, promote, sell, distribute, or make any subject matter claimed by the Patents in Suit and/or (ii) any other entity authorized by RRD to practice, use, obtain revenues based on the use of, offer services that use, commercialize, offer for sale, promote, sell, distribute, or make any subject matter claimed by the Patents in Suit.

T.     "Patent Applications" means the applications that led to the issuance of the patents in suit, and all applications relied upon for priority by such applications, either directly or indirectly.

- 2 -

RLF1-3076673-1

## INTERROGATORIES

11.    Describe in detail all agreements between RRD and any Barco-Xeikon Entity, including a detailed description of the terms, conditions. and scope of such agreements.

12.    State the earliest date that RRD acquired, used, received, and/or purchased each Barco-Xeikon Component, and describe all facts and circumstances concerning such first acquisition, use, receipt, and purchase.

13.    For each claim identified in your response to Interrogatory No. 1, identify the earliest date that RRD first offered for sale, advertised, promoted, sold, commercialized, demonstrated, described in a publication, made public, or disclosed the claimed subject matter.

14.    Describe in detail all Practice of the Patents in Suit, including the entity or entities that engaged in such activity, the nature of such activity, the name of such activity, when such activity commenced, and when such activity ended.

15.    State in detail all strategic plans, business plans, and/or marketing plans concerning the Patents in Suit and/or Practice of the Patents in Suit.

16.    Describe in detail all RRD licensing practices, policies, and procedures, whether formal or informal.

17.    Identify all revenues, costs, and profits on a monthly, quarterly, and annual basis associated with Practice of the Patents in Suit, and explain how RRD derived such revenues and profits, either directly or indirectly.

18.    State in detail your contentions as to the earliest date damages should begin to accrue against Creo, including whether RRD was ever obligated to mark, whether RRD was ever obligated to provide notice, the details of how RRD satisfied any duty to mark, and the details of how RRD satisfied any duty to provide notice to Creo.

- 3 -

19.    Identify each person – including the inventors to the Patents in Suit – involved with or knowledgeable about the conception and reduction to practice of the claimed subject matter of the Patents in Suit, and describe person's role and contribution, if any.

20.    Identify each person who owed a duty of disclosure to the United States Patent and Trademark Office during the prosecution of any Patent Application.

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Gregory E. Stuhlman  by  mwk
                              C4566

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company*

Dated: October 31, 2006

- 4 -

RLF1-3076673-1

FROM RL&F                                    (FRI)12. 1'06 16:26/ST. 16.23/NO. 4864902209 P  9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be

served on October 31, 2006, upon the following in the manner indicated:

### BY HAND
Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

### BY FACSIMILE

Bradford J. Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

Dated: October 31, 2006

Matthew W. King (#4566)
king@rlf.com

RLF1-3076673-1

Received  10-31-06  17:21      From-          To-ROPES & GRAY LLP      Page  009

EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

    Plaintiff,

    v.

QUARK, INC., CREO, INC., EASTMAN
KODAK COMPANY, and KODAK
GRAPHIC COMMUNICATIONS
COMPANY,

    Defendants.

C.A No. 06-032-JJF

CREO, INC., EASTMAN KODAK
COMPANY, and KODAK GRAPHIC
COMMUNICATIONS COMPANY,

    Counterclaim-Plaintiffs,

    v.

R.R. DONNELLEY & SONS COMPANY,

    Counterclaim-Defendants.

**CREO, INC.'S, EASTMAN KODAK COMPANY'S,
AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FIRST SET OF
REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS ON
DIRECTED TO R.R. DONNELLEY & SONS COMPANY**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Creo") request that

R.R. Donnelley & Sons Company ("RRD") produce for inspection and copying documents and

things within RRD's possession, custody or control that are responsive to the requests set forth

1

below at the law office of Crowell & Moring LLP, 1001 Pennsylvania Ave , N.W., Washington,

DC 20004-2595 within thirty (30) days of service.

## DEFINITIONS

The following definitions shall apply:

A.     "RRD," "you," or "your" means R.R. Donnelley & Sons Company and includes

all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships,

or other business entities, and the officers, directors, agents, employees, partners, and all other

persons acting or purporting to act on behalf of or who are subject to the direction or control of

any of the foregoing.

B.     "Creo Defendants" means Creo, Inc., Eastman Kodak Company and Kodak

Graphic Communications Company.

C.     "Patents in Suit" means United States Patent Numbers 6,205,452; 6,327,599;

6,844,940; and 6,952,801.

D.     "Patent Applications" means the applications that led to the issuance of the

patents in suit, and all applications relied upon for priority by such applications, either directly or

indirectly.

E.     "Foreign Counterpart" means any foreign patent application that claims the

benefit of or priority to any Patent Application.

F.     "Darwin" means Creo Darwin.

G.     "Variable Digital Printing" means digital printing in which the content of a page

may be varied or in which the number of pages in a document may be varied in a single press

run.

2

H    "Communication" means any transmission of information by one or more persons and/or between two or more persons by any means, including but not limited to telephone conversations, videos, letters, telegrams, teletypes, telexes, telecopies, e-mail, computer linkups, written memoranda, and face-to-face conversations.

I.    "Document" shall be defined as synonymous in meaning and equal in scope to the use of that term in Rule 34(a) of the Federal Rules of Civil Procedure and applicable case law, and shall include, without limitation, documents, things, electronic mail, drawings and information in computer-readable format, and "writings" and "recordings" as defined by Rule 1001 of the Federal Rules of Evidence.  By way of illustration and without limitation, documents include at least the following: originals, drafts and all non-identical copies of memoranda, reports, notes, graphs, laboratory notebooks, correspondence, interoffice communications, intercompany communications, letters, diaries, calendars, photographs, motion pictures, sketches, drawings, promotional material, technical papers, printed publications, patents, and all other writings, as well as all non-paper information storage means such as sound reproductions, computer inputs and outputs, tape, film and computer memory devices.  The term "documents" shall also be construed to include all English language translations of foreign language documents as well as the foreign language documents themselves.

J.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

K.    "Including" means including, without limitation.

3

L.    "Any" shall be read to mean each and every.

M.    The terms "all" and "each" shall be construed as all and each.

N.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

O.    The use of the singular form of any word includes the plural and vice versa.

P.    The terms "refer to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

Q.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

## INSTRUCTIONS

R.    These requests for production shall be deemed to be continuing as specified in Rule 26(e)(2) of the Federal Rules of Civil Procedure.

S.    The documents requested include all documents in RRD's possession, custody ,or control, or in the possession, custody or control of RRD's present or former attorneys, licensees, officers, directors, employees, agents, representatives, consultants, subsidiaries, affiliates, principals or parents, or any investigators or any other person acting on behalf of RRD or under the direction or control of RRD or its attorneys or agents, wherever such documents may be located.

T.    Each request for documents seeks production of each document in its entirety, without abbreviation or expurgation, including all attachments or other matters affixed thereto.

4

To the extent these documents are maintained in both hard copy and magnetic or electronic media form, both forms should be provided.

U.   In the event that RRD claims privilege with respect to any documents requested, RRD shall state the specific ground for each such claim of privilege and shall set forth facts sufficient to enable a court to test the claim of privilege. Such facts must include at a minimum: the identity of each author or communicator of the document; each person to whom such requested document was distributed or communicated; a general description of the document, its nature, contents, date of creation or generation, date of distribution or communication; and, if necessary to understand the claim of privilege, a description of the role or capacity in which each author or communicator and each distributee or recipient was acting at the material times. If the claim of privilege applies only to a portion of the document, produce all portions of the document to which the claim does not apply.

V.   Where any document requested has been destroyed, or is alleged to have been destroyed, state the reasons for its destruction, the names of the persons having any knowledge of its destruction, and the names of the persons responsible for its destruction

W.   Where any requested document is not in RRD's possession, custody, or control, state the name of the persons who have possession, custody, or control of such document. If such document was in RRD's possession, custody, or control in the past but is no longer in RRD's possession, custody, or control, state what disposition was made of it, state the reasons for such disposition, identify any persons having any knowledge of such disposition, and identify the persons responsible for such disposition.

X.   If subsequent to the date RRD's produce documents responsive to these document requests, RRD discovers or receives additional documents that are responsive to these requests,

5

promptly produce all such additional documents to the full extent required by the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Delaware.

### REQUESTS FOR PRODUCTION

1. All documents and things concerning this lawsuit, including all communications between RRD and any person regarding this lawsuit.

2. All documents and things concerning the patents in suit, including all communications between RRD and any person regarding the patents in suit.

3. All documents and things concerning the conception of the claimed subject matter of the patents in suit.

4. All documents and things concerning the reduction to practice of the claimed subject matter of the patents in suit.

5. All documents and things concerning the research or development of the subject matter claimed or disclosed in the patents in suit.

6. All documents and things concerning any commercial embodiments described in the patents in suit, including any source code used to compile any software programs described in the patents in suit.

7. All documents in the files of named inventors of the patents in suit relating to variable digital printing dated prior to 2002.

8. All publications authored or co-authored by at least one of the inventors of the patents in suit relating to variable digital printing.

9. All documents and things concerning any prior art search relating to the patents in suit or the patent applications.

6

10.    All documents and things concerning any decision to file the patent applications.

11.    All documents and things concerning the preparation of the patent applications.

12.    All documents and things concerning prosecution of the patent applications.

13.    All documents concerning any foreign counterparts, including the preparation, filing, prosecution, opposition, or any contested or third-party proceeding of such counterparts.

14.    All prior art to the patents in suit, and all documents and things concerning the same.

15.    All documents and things concerning any publications describing the subject matter disclosed or claimed in the patents in suit.

16.    All documents and things concerning the making of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

17.    All documents and things concerning the sale, offer for sale, commercialization, attempted commercialization, or use of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

18.    All documents and things concerning the advertisement or promotion of any apparatus, product, device, process, method, act, or other instrumentality disclosed or claimed in the patents in suit.

19.    All documents and things concerning industry meetings, expositions, programs, events, seminars and/or presentations concerning the claimed subject matter of the patents in suit

RLF1-3019053-1

20.  All documents and things that refer or relate to whether:

(a)  there was one or more long-felt need(s) for the invention(s) claimed in the patents in suit;

(b)  the art failed to solve the problems which are the subjects of the invention(s) claimed in the patents in suit;

(c)  the invention(s) claimed in the patents in suit satisfied one or more long felt need(s);

(d)  commercial success the invention(s) claimed in the patents in suit; and

(e)  the industry has recognized the significance of the invention(s) of the patents in suit.

21.  All documents and things concerning RRD's purported ownership of the patents in suit.

22.  All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 27, 32, 37, and 42 of the Complaint that "[b]y [Creo's] actions, including the sale of Darwin, Creo has infringed, contributed to infringement of and induced others to infringe, and continues to infringe, contribute to infringement of and induce others to infringe [each of the Patents in Suit]."

23.  All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 28, 33, 38, and 43 of the Complaint that "Creo has been given notice of [each of the Patents in Suit]."

24.  All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 29, 34, 39, and 44 of the Complaint that "Creo's infringement of [each of the Patents in Suit] is, has been, and continues to be willful

8

and deliberate."

25.    All documents and things concerning, supporting, tending to support, refuting, or tending to refute RRD's allegations set forth in paragraphs 30, 35, 40, and 45 of the Complaint that "RRD has sustained damages and suffered irreparable harm as a consequence of Creo's infringement, and will continue to sustain damages and be irreparably harmed unless Creo is enjoined from infringing [each of the Patents in Suit]."

26.    All documents and things concerning construction of the claims of the patents in suit.

27.    All documents and things concerning standards relating to Variable Digital Printing, including ISO 16612-1 and ANSI/CGATS.20-2002 and ISO 16612-1 and ANSI/CGATS.20-2002.

28.    All communications between RRD and any entity concerning ISO 16612-1 or ANSI/CGATS.20-2002, and all documents and things concerning the same.

29.    All documents and things concerning the infringement/noninfringement, validity/invalidity, enforceability/unenforceability, patentability, scope or interpretation of the patents in suit.

30.    All documents and things concerning any oral or written opinions concerning the patents in suit, including opinions concerning the infringement/noninfringement, validity/invalidity, enforceability/ unenforceability, patentability, scope or interpretation of the patents in suit.

31.    All documents and things concerning any royalties collected from RRD from any license related to the patents in suit.

RLF1-3019053-1

32.    All documents and things concerning any discussions, license negotiations, or business negotiations between RRD and any of the Creo Defendants, including discussions and negotiations relating to the patents in suit.

33    All documents concerning licensing activities involving RRD with respect to Variable Digital Printing, including all patent license agreements in the field of Variable Digital Printing.

34.    All communications between RRD and the Creo Defendants regarding the patents in suit.

35.    All draft and final versions of RRD's annual reports, quarterly reports and all other periodic reports filed with the Securities and Exchange Commission ("SEC") that refer or relate to the patent-in-suit, Darwin, or Variable Digital Printing.

36.    All minutes, presentations, materials or any other records of any meetings of RRD's boards of directors, or of any formal or informal committee or group thereof, that refer to the patents in suit or this lawsuit.

37.    All documents and things that refer to RRD's earliest knowledge of Darwin.

38.    All documents and things that refer to RRD's earliest knowledge of the operation of Darwin.

39.    All documents and things concerning the value of the patents in suit.

40.    All documents and things concerning RRD providing actual notice of the patents in suit to Creo.

41.    All documents and things concerning RRD products covered by the claims of the patents in suit.

10

42.    All documents and things concerning marking with the numbers of the patents in suit.

43.    All documents and things concerning the requirements of any person to mark any product with the numbers of the patents in suit.

44.    All documents and things concerning the conduct or performance of any person to mark the product with the numbers of the patents in suit.

45.    All documents and things concerning RRD's policies for policing or monitoring the marking of any person authorized to practice the claims of the patents in suit.

46.    All documents and things that refer to the subject matter of, or the identification of which is sought by, Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10), including without limitation all documents identified or referred to in RRD's responses thereto, and all documents that RRD consulted, or upon which RRD relied, in framing, compiling or preparing its responses.

47.    Documents sufficient to identify, describe, and determine the organizational structure of RRD as defined from 1995 to present, including the identity of their officers and directors.

48.    All documents and things that refer to RRD's policies and practices, whether formal or informal, with respect to document retention or document destruction, including the retention or destruction of electronic mail.

49.    All documents comprising or including English translations of non-English text in any otherwise responsive document.

11

OF COUNSEL:

Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated:  May 26, 2006

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
Attorneys for Defendants
Creo, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served on May 26, 2006, upon the following in the manner indicated:

### BY HAND

Jack Blumenfeld
Rodger D. Smith II
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

### BY FEDERAL EXPRESS

Bradford J Badke
Stuart W. Yothers
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
1251 Avenue of the Americas
New York, NY 10020

Steven A. Kaufman
FISH & NEAVE IP GROUP
ROPES & GRAY LLP
One International Place
Boston, MA 02110

_____
Gregory E. Stuhlman (#4765)

Dated: May 26, 2006

RLF1-3019053-1

EXHIBIT F



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

July 30, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Douglas I. Lewis
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-
JJF)

Dear Doug:

This responds to your July 25 letter regarding RRD's Interrogatory No. 21,
which seeks identification of all "Third Party Software Products" that Defendants
have collectively "offered, sold, marketed, or promoted for use." As noted in
Defendants' objections, the Interrogatory fails to define the terms "marketed" and
"promoted," creating a potential ambiguity. Due to this ambiguity, along with the
functional way in which RRD has defined "Third Party Software Products,"
Defendants provided an answer that was consistent with the broadest possible
reading – essentially identifying all third-party software products that Defendants
might have addressed and/or dealt with over the relevant time period. But in doing
so, Defendants clarified – pursuant to their objection to the undefined terms – that
they should not be bound to any narrower meaning of the undefined terms.

Accordingly, Defendants do not believe that that an amended response is
necessary at this time. Please let me know if you have any questions.

Best regards,

Nathaniel Grow

cc:    Richard McMillan, Jr.