IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY.<br><br>Defendants. | C.A. 06-032-JJF<br><br>**REDACTED - PUBLIC VERSION** |
| EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant. | |

**DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF'S EXPERTS
FROM ACCESSING DESIGNATED INFORMATION**

In this Motion, Defendants seek to preclude Dr. Christopher Vellturo ("Vellturo") and

Mr. Frank Merritt Braswell ("Braswell") – Plaintiff R.R. Donnelley & Sons Co.'s ("Donnelley")

proffered damages and technical experts, respectively – from accessing Confidential or

Attorneys-Eyes-Only information ("Designated Information") under the Stipulated Protective

Order (D.I. 117).

Vellturo should be precluded based on his recent confidential relationship with Defendant

Eastman Kodak Company ("Kodak"), forged when Vellturo served as the designated testifying

economic expert witness for Kodak in a series of patent infringement litigations against Sony

that just concluded earlier this year. Over the course of nearly two years, Vellturo and employees of his closely-held consulting firm gained an intimate understanding of Kodak's modes of operation, patterns of conduct, decision-making process, and other highly-sensitive confidential information that would give Donnelley an unfair advantage in this case. The Court should preclude Vellturo from gaining access to Designated Information because – given his prior confidential relationship with Kodak – he cannot serve as Donnelley's expert, and thus has no need to access Designated Information.[1]

Braswell should be precluded from accessing Designated Information because he develops variable data printing ("VDP") applications – the same field of technology as Donnelley's asserted patents. Indeed, Braswell provides his services to companies that compete in the space with Defendants' products, frequently behind the scenes and without being credited for his contribution. Accordingly, Braswell's use of Designated Information – either inadvertent or advertent – to assist third parties would not be traceable by Defendants. This would make it nearly impossible for this Court to identify – and thus enforce – any improper disclosures by Braswell. Given that Designated Information includes Defendants' source code and other highly-sensitive technical documents, the Court should preclude Braswell's access to Designated Information under the Stipulated Protective Order.

Kodak bases its Motion on the following:

---

1 Defendants have moved to preclude Vellturo's and Braswell's access now as required by Paragraph 8 of the Stipulated Protective Order. (D.I. 117). If Donnelley refuses to withdraw Vellturo and Braswell as experts, and the parties are otherwise unable to resolve this matter by August 20, 2007, Defendants will move to disqualify both Vellturo and Braswell.

Vellturo

1. Vellturo is the President/Manager of Quantitative Economic Solutions, LLC ("QES"), a company that – according to its website – "provides microeconomic-based consulting services." Ex. A. QES's Vice President is Dr. Amy Almeida ("Almeida"). Ex. B. Both Vellturo and Almeida provide economic analysis services to support intellectual property litigation. Including Vellturo and Almeida, QES's website lists a total of seven professional staff members. *Id*

2. On March 8, 2004, Kodak filed suit against Sony Corporation, Sony Corporation of America, and Sony Electronics, Inc. in United States District Court for the Western District of New York for infringement of certain Kodak patents relating to digital camera technology. *See Eastman Kodak Co. v. Sony Corp.*, No. 6:04-cv-6095-MAT-JWF (W.D.N.Y. filed Mar. 8, 2004).

3. On March 31, 2004, Sony Corporation filed suit against Kodak in the United States District Court for the District of New Jersey for infringement of certain Sony patents, which Sony alleged related to digital cameras, sensors, and printer docks. *See Sony Corp. v. Eastman Kodak Co.*, No. 2:04-cv-1506-DMC-PS (D.N.J. filed Mar. 31, 2004). This action was eventually transferred to the United States District Court for the Western District of New York. *See Sony Corp. v. Eastman Kodak Co.*, No. 6:04-cv-6547-MAT-JWF (W.D.N.Y. transferred Oct. 8, 2004).

4. On July 6, 2004, Sony Corporation and Sony Electronics, Inc. filed a second action against Kodak in the United States District Court for the District of New Jersey accusing, *inter alia*, cameras and photofinishing products, printer dock products, medical imaging printing technology, and laser printer technology. *See Sony Corp. v. Eastman Kodak Co.*, No. 2:04-cv-3193-JLL-CCC (D.N.J. filed Jul. 6, 2004). The second New Jersey action remained in New

Jersey until it was dismissed. This Motion uses the term "Sony Litigations" to refer to all of the above-listed actions collectively.

5. The parties to the three Sony Litigations collectively asserted more than 50 patents against each other, and the Sony Litigations were collectively the largest patent litigation in Kodak's history.

6. In early 2005, Kodak's outside counsel retained Vellturo as a damages expert in the Sony Litigations. *See* Ex. C.

REDACTED

7. Vellturo was assisted in the Sony Litigations by Almeida.

REDACTED

8. The Sony Litigations did not settle until approximately January 3, 2007, nearly a year after Donnelley brought the present action.

9. By as early as February 2007, QES's website apparently began listing "Kodak" as a "Selected Client." Ex. D (an archived version of QES's website from Feb. 18, 2007, *available*

*at* http://web.archive.org/web/20070809174523/http://qes-llc.com/clients.htm). QES continues to list "Kodak" as a "Selected Client" to this day. Ex. E.

10. Despite the overlapping pendency in the Sony Litigations and the instant case, on July 26, 2007, Donnelley first provided notice – pursuant to the terms of the Stipulated Protective Order – that it intended to use Vellturo as an expert in this case, and that Donnelley intended to disclose Designated Information to him. Ex. F.

11. Defendants' counsel of record in this case were not involved in the Sony Litigations, and were unaware of Vellturo's involvement in the Sony Litigations. Upon first learning that Vellturo had served as an expert witness in the Sony Litigations, Defendants' counsel of record immediately lodged an objection to Vellturo on August 2, 2007, as provided by Paragraph 8 of the Stipulated Protective Order. Ex. G.

12. On August 9, 2007, as part of the meet and confer process for this Motion, Defendants asked if Donnelley would agree to not work with Vellturo and QES until this Motion has been resolved. Ex. H. Donnelley has taken that request under consideration, but as of the filing of this Motion had not responded.

13. Defendants' Motion – with respect to Vellturo – is based on the underlying principles for the disqualification of experts. "Federal courts have the inherent power to disqualify experts." *Koch Refining Co. v. Jennifer L. Boudreaux MV*, 85 F.3d 1178, 1181 (5th Cir. 1996). In disqualification cases where a first party claims a prior confidential relationship with an expert, courts adopt the following rule:

> First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed?
>
> Second, was any confidential or privileged information disclosed by the first party to the expert?

*Id.* (citing *Mayer v. Dell*, 139 F.R.D. 1, 3 (D.D.C.1991)).

14. Although the party moving for disqualification bears the burden of proof with respect to each of these factors, courts also balance competing policy objectives and concerns for fundamental fairness. *Id.* at 1182; *Cordy v. Sherwin-Williams Co.*, 156 F.R.D. 575, 580 (D.N.J. 1994).

15. Under the first part of the test, courts may focus on whether a confidential relationship existed with respect to the same disputed subject matter as the litigation before the court. But such a confidential relationship can also exist when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of [the retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Koch*, 85 F.3d at 1182 (quoting *Marvin Lumber Co. v. Norton*, 113 F.R.D. 588, 591 (D. Minn. 1986)).

16. The crux of this dispute turns on whether the confidential information that Kodak disclosed to Vellturo and QES, over an extended period of time, is relevant to this litigation. For instance, under the first part of the test, Donnelley apparently does not contest that it was objectionably reasonable for Kodak to believe that a confidential relationship existed. *See* Ex. C (qualifying the nature of confidential knowledge that Vellturo and QES received as not "relevant to this litigation"). Nor does Donnelley contest that Vellturo and QES received confidential information. *Id.*

17. Faced with the preclusion and possible disqualification of Vellturo,

REDACTED

18. It is nearly impossible to imagine a scenario where Vellturo, Almeida, and QES – as a result of their confidential relationship with Kodak and its legal staff – would not gain knowledge of Kodak's "modus operandi, patterns of operations, decision-making process, and the like," all of which would be highly relevant to this litigation. *See Koch*, 85 F.3d at 1182.

19. In considering public policy, a rule that would allow Vellturo to be adverse to Kodak in this case would dampen the free flow of information between parties and their retained experts. Parties would be reluctant to fully share information if they were forced to view their experts as potential turncoats that could, at any moment, switch allegiances. A party's reluctance to fully share information would affect the quality and accuracy of expert reports, upon which courts rely.

20. Moreover, it is fundamentally unfair for Vellturo to tout Kodak as a "Selected Client" on QES's website, while at the same time aligning himself with Donnelley in this matter. Indeed, the motivation behind QES's present listing of Kodak as a "Selected Client" is unclear. Most small consulting companies, such as QES, list brand name companies like Kodak to elevate their overall stature and to legitimize their operations. But here, by listing of Kodak on QES's website, Vellturo is essentially offering his inner knowledge of Kodak's operations to any Kodak adversary willing to pay his fees. The Court should not condone such behavior.

**Braswell**

21. Braswell is president of Systems of Merritt, Inc. ("SMI"). SMI is a small, closely-held company consisting of a "development team [with a] heavy emphasis on printing and prepress." Ex. I. SMI's website lists four "Engineering Staff," including Braswell. In

particular, SMI is in the business of developing commercial applications, including what appear to be VDP applications. *Id.* (describing a project for Wellness Works that prints customized labels for nutritional supplements). SMI also describes at least one project where it "decrypt[ed]" proprietary file formats of a third party. *Id.*

22. On July 27, 2007, Donnelley first provided notice – pursuant to the terms of the Stipulated Protective Order – that it intended to use Braswell as an expert in this case, and that Donnelley intended to disclose Designated Information to him. Ex. J.

23. On August 2, 2007, Defendants objected to Braswell, as provided by Paragraph 8 of the Stipulated Protective Order. Ex. G.

24. Defendants' concerns regarding Braswell primarily involve Defendants' production of highly-sensitive technical documents – including source code – that reveal the inner workings of Defendants' accused products. Braswell and his firm, SMI, are apparently actively engaged in the development of VDP applications for third parties, including companies capable of developing products, or components of products, that compete with Defendants in the VDP field. For instance, Global Graphics – a company that SMI lists as a client – offers a Raster Image Processor (also known as a "RIP"). Both parties agree that this suit generally relates to the VDP field and that RIPs are relevant to an understanding of the issues. Indeed, Defendants have produced confidential documents relating to their proprietary RIPs.

25. Braswell's firm also prides itself on cracking open the intellectual property of other companies. In particular, SMI has worked on at least one project where it "decrypt[ed]" a proprietary file format of a third-party company. It is also apparent from SMI's listing of projects that many – if not most – of SMI's projects are developed behind the scenes, oftentimes without any attribution to SMI. Accordingly, SMI's contributions to a VDP application for one

of Kodak's competitors would likely not be traceable as SMI work. It would thus be nearly impossible for the Court to police any violations of the Stipulated Protective Order by Braswell or SMI.

26. In an effort to resolve this matter, Defendants have suggested that Braswell and SMI agree to refrain from developing any VDP applications during the pendency of this litigation, and for a finite period of time after its conclusion. Ex H. Donnelley has taken that request under consideration, but as of the filing of this Motion had not responded.

For the foregoing reasons, the Court should grant Defendants Motion.

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(202) 624-2500

Dated: August 9, 2007

Frederick L. Cottrell III / Anne Shea Gaza

Frederick L. Cottrell, III (#2555) (#4093)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company and Kodak Graphic Communications Company*

**RULE 7.1.1 CERTIFICATE**

I hereby certify that counsel for the Defendants met and conferred with counsel for Plaintiff on the issues raised in the Motion, but were unable to resolve the issues raised.

Jameson A.L. Tweedie / Anne Shea Gaza
Jameson A.L. Tweedie (#4927) (#4093)

Dated: August 9, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following, who have also been served as noted:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899

I hereby certify that on August 28, 2007, the foregoing was sent to the following non-registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

Douglas I. Lewis
Jamie L. Secord
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL 60603

John G. Hutchinson
Sidley Austin, LLP
787 Seventh Avenue
New York, NY 10019

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

Plaintiff,

v.

CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,

Defendants.

C.A. No. 06-032-JJF

EASTMAN KODAK COMPANY,

Counterclaim-Plaintiff,

v.

R.R. DONNELLEY & SONS COMPANY,

Counterclaim-Defendant,

**ORDER**

WHEREAS, Defendants having moved this Court (the "Motion") for an order precluding R.R. Donnelley & Sons Company's ("RRD") proposed experts, Dr. Christopher Vellturo or Mr. Frank Merritt Braswell, from accessing information designated as confidential or attorneys-eyes-only pursuant to paragraph 8 of the Stipulated Protective Order (D.I. 117);

WHEREAS, the Court having considered the arguments in support of the Motion, and good cause having been shown for the relief sought in the Motion;

IT IS HEREBY ORDERED this _____ day of _________________, 2007 that Defendants' Motion is GRANTED. Accordingly, Plaintiff shall not disclose any designated information to Dr. Christopher Vellturo or Mr. Frank Merritt Braswell.

______________________________
United States District Court Judge

# EXHIBIT A

quantitative economic solutions, LLC

ABOUT THE FIRM | PROFESSIONALS | PRACTICE AREAS | EMPLOYMENT OPPORTUNITIES | CONTACT US

# Microeconomic-based Consulting

**Quantitative Economic Solutions, LLC ("QES")** provides microeconomic-based consulting services to firms in a wide variety of contexts. QES casework includes research and analysis relating to private litigations, including: antitrust, intellectual property, and contract disputes.

QES brings considerable experience and expertise in economic issues germane to Hart-Scott-Rodino merger reviews and related matters around the world. QES provides valuation services and licensing consultations relating to intellectual property and other assets. QES also engages in strategic consulting, with particular emphasis on pricing, product positioning, and competitive dynamics.

As our name implies, QES applies rigorous microeconomic analyses with a particular emphasis on quantitative methods. Econometrics/applied statistics, mathematical simulation, and applied game theoretic modeling often represent important elements of our work product.

Home | About the Firm | Professionals | Practice Areas | Employment Opportunities | Contact Us

Quantitative Economic Solut[illegible] LLC

[illegible] Massachusetts [illegible] 02138 Ph: 617-[illegible] Fax: [illegible] Email: info@qes-llc.com

© 2006 Quantitative [illegible] LLC All rights reserved.

# EXHIBIT B

quantitative economic solutions, LLC

ABOUT THE FIRM | PROFESSIONALS | PRACTICE AREAS | EMPLOYMENT OPPORTUNITIES | CONTACT US

QES Photo Gallery

# QES Professionals

Christopher Vellturo, Ph.D., President/ Manager

**Christopher Vellturo, Ph.D.**

**President/Manager**

Dr. Vellturo received a Ph.D. in Economics from the Massachusetts Institute of Technology and has worked in microeconomic consulting for twenty years. During this time, Dr. Vellturo has performed economic analyses in over 400 projects, across a wide range of industries. He is recognized by legal industry journals as one of the top fifty antitrust economists worldwide. (Curriculum Vitae)

**Amy Almeida, Ph.D.**

**Vice President**

Dr. Almeida specializes in industrial organization, econometrics, and microeconomic theory. She has provided economic analysis in a wide variety of industries. Dr. Almeida's casework has included economic analysis and econometric modeling to estimate competitive effects of mergers and damages assessment in intellectual property and antitrust litigations and arbitrations. Prior to joining Quantitative Economic Solutions, LLC, Dr. Almeida was an associate at PHB Hagler Bailly where she modeled the North American electricity market to assess power plant valuations;

and a manager at Analysis Group, Inc. where she managed intellectual property and antitrust cases. A Ph.D. graduate in Economics from Northwestern University, Dr. Almeida also holds a B.S. in Mathematics from Tufts University and a M.S. in Public Management and Policy from Carnegie Mellon University. (Curriculum Vitae)



**Paul Malherbe, Ph.D.**

**Vice President**

Dr. Malherbe specializes in microeconomics, corporate finance, and econometrics. Dr. Malherbe joined QES in 2004. His casework has included damages assessment in intellectual property litigation, asset valuation in bankruptcy proceedings, and economic analyses of collusion and market foreclosure. He has written on the valuation of patents and assessment of patent damages using finance theory and has modeled investors and entrepreneurs' choice among financial contracts. Prior to joining Quantitative Economic Solutions, LLC, Dr. Malherbe was an assistant professor of economics at Connecticut College and an economic research assistant at Moody's Investors Service. A Ph.D. graduate in Economics from the University of Massachusetts, Dr. Malherbe also holds a B.A. and Law Degree from the University of Cape Town, South Africa. (Curriculum Vitae)



**Sara B. Safriet**

**Analyst**

Ms. Safriet joined QES in January 2005. She has conducted economic analyses pertaining to intellectual property infringement in a variety of industries. Previously, Ms. Safriet conducted Pharmacoeconomic and Outcomes research analyzing the cost-effectiveness of pharmaceuticals and medical devices. Ms. Safriet graduated with a Bachelor of Arts in Economics in 2002 from Wellesley College, where she was inducted into the National Economics Honor Society, Omicron Delta Epsilon. While at Wellesley, Ms. Safriet played Varsity soccer for four years, was voted co-captain as a senior, and spent time in South Africa studying South African history, politics, and

contemporary issues.

**Edward A. McGehee**

**Analyst**

Mr. McGehee has provided economic analyses for intellectual property and antitrust litigations in a variety of industries since joining QES as a Research Analyst in July 2005. He graduated magna cum laude from Williams College in 2005 with a B.A. in Mathematics and Chemistry, receiving Highest Honors in Chemistry for his senior thesis work on dynamical systems. While at Williams, he helped head the college film club and co-captained the college cycling team. These days he enjoys running around Fresh Pond and living in Central Square.

**Eduardo L. Montoya**

**Analyst**

Since joining QES in March 2006, Mr. Montoya has conducted economic evaluations in intellectual property and antitrust litigation. His prior experience includes IT consulting and health economics research, modeling the clinical and economic impact of new pharmaceuticals. Mr. Montoya received a B.A. in 2002 from Harvard University, cum laude in Economics, where he was also an active member of the Harvard/Radcliffe Dramatic Club.

**Angel Marino**

**Operations Manager**

Ms. Marino has a Masters Degree from Emerson College in Communications Industries Management. She joined QES in January 2006. Ms. Marino has over twenty years experience in office operations including project accounting and billing, logistics and communications, information technology, as well as client, vendor, document, and media management. She also has significant years as personal assistant to chief-level executives in a variety of industries, such as internet/intranet and web services, software technology, financial services, and architecture, working with distinguished architect, Moshe Safdie.

Home | About the Firm | Professionals | Practice Areas | Employment Opportunities | Contact Us

**Quantitative Economic Solutions, LLC**
1280 Massachusetts Ave., Cambridge, MA 02138 **Ph:** 617-995-7676 **Fax:** 617-995-7677 **Email:** info@qes-llc.com

[illegible] Quantitative Economic [illegible] All rights reserved.

# EXHIBIT C

SIDLEY AUSTIN LLP
SIDLEY

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D C

ahein@sidley.com
(312) 853-7801

FOUNDED 1866

August 8, 2007

**By Facsimile**

Brian M. Koide
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595

Re: *R.R. Donnelley & Sons Co. v. Creo et al.* (C.A. No. 06-032)

Dear Brian:

This letter responds to Defendants' August 2, 2007, letter objecting to R.R. Donnelley's experts, Christopher Vellturo and Frank Merritt Braswell, receiving Confidential and Attorneys-Eyes-Only Information, as defined in the Stipulated Protective Order. We disagree with your objections for several reasons. Regarding Dr. Vellturo, we believe that the following additional information should assuage Defendants' concerns regarding his past engagement with Kodak. And regarding Mr. Braswell, Defendants' objections are overbroad and, indeed, applicable even to one of the Defendants' own experts. In light of this information, we ask that you kindly reconsider your objections.

In your letter, Defendants objected to Dr. Vellturo serving as an expert witness for R.R. Donnelley because of his past professional engagements, and you have asked for further information regarding Dr. Vellturo's work, specifically with Kodak. Although R.R. Donnelley believes that Defendants have equal access to this information, in the spirit of cooperation we will provide such information. Dr. Vellturo is the President of Quantitative Economic Solutions, LLC ("QES"). In this role, he has performed a wide variety of economic and econometric analyses and has provided expert testimony in a variety of industries.

From what R.R. Donnelley understands, in early 2005, Kodak's outside counsel retained QES as damages experts for two patent cases in New York and New Jersey. The cases related to Sony and Kodak patents on digital cameras. Also from what R.R. Donnelley understands, Dr. Vellturo performed little work for Kodak, and his understanding of Kodak's business is limited to Kodak's conventional and digital camera divisions. His contact at Kodak was Heidi Martinez, who may have further information. These cases ultimately settled on January 3, 2007. Since that time, QES has not provided services for Kodak. Therefore, R.R. Donnelley does not believe that Dr. Vellturo or QES has confidential knowledge from this engagement that is relevant to the

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



present litigation. And so, Dr. Vellturo and QES may properly serve as R.R. Donnelley's experts

Mr. Braswell is President of Systems of Merritt, Inc. ("SMI"), which provides a variety of software development services, including printing and prepress services. Defendants appear to object to R.R. Donnelley's use of Mr. Braswell and SMI's services because (1) it is a small, closely held company and (2) in SMI's normal course of business, some of its work may result in products that compete with Defendants', and SMI could use the confidential information in this case to compete with Defendants. *See* Letter, p.2, dated August 2, 2007, from B. Koide to J. Secord. As to the first of Defendants' contentions, R.R. Donnelley is puzzled as to why Defendants would object on this ground. Indeed, Defendants' own expert, Mr. Weger, is associated with what appears to be a small, closely-held company. Indeed, this is common with experts and hardly grounds where the Court is likely to bar an expert.

As to Defendants' second objection, Section 9 of the Protective Order restricts Attorneys-Eyes-Only or Confidential Information to use in this action only: this information "shall not be used by such...persons...for any business or other purpose...." Mr. Braswell will not use any information he receives inappropriately. Further, as before, Defendants' objections apply with equal force to Defendants' expert, Mr. Weger. Mr. Weger's company, Elara Systems, provides publishing systems and applications for the graphic arts industry, including designers, publishers, and printers. *See* Weger CV, attached to July 9, 2007, letter from N. Grow to J. Secord. Thus, Mr. Weger could, in Defendants' words, "develop products that compete with" R.R. Donnelley's products. *See* Letter, p. 2, dated August 2, 2007, from B. Koide to J. Secord. Therefore, R.R. Donnelley believes that Defendants' objection to Mr. Braswell or SMI receiving information protected by the Stipulated Protective Order is inappropriate.

We hope that this additional information addresses Defendants' concerns. To facilitate a resolution, R.R. Donnelley would like to schedule a meet and confer on August 10, 2007, at 1:00 pm CDT / 2:00 pm EDT to further discuss this matter. Please contact me if you would like to discuss this subject further.

Very truly yours,

Andrew R. Hein

cc: Douglas I. Lewis

CH1 3958657v1

# EXHIBIT D

quantitative economic solutions, LLC

ABOUT THE FIRM | PROFESSIONALS | PRACTICE AREAS | EMPLOYMENT OPPORTUNITIES | CONTACT US

Industry Experience

**Selected Client List**

# Selected Client List

Corporations:

- CSX Corporation
- Apple Computer
- Merck & Co.
- Thomson Corporation
- Medtronic
- Hewlett-Packard
- Novartis
- Kodak

Law Firms:

- Shearman & Sterling
- Jones Day
- Vinson & Elkins
- Ropes & Gray
- Howrey Simon Arnold & White
- Robins Kaplan Miller & Ciresi
- Cooley Godward Kornish
- Latham & Watkins

QES Selected C

Home | About the Firm | Professionals | Practice Areas | Employment Opportunities | Contact Us

**Quantitative Economic Solutions, LLC**

1280 Massachusetts Ave., Cambridge, MA 02138 **Ph:** 617-995-7676 **Fax:** 617-995-7677 **Email:** info@qes-llc.com

Economic Solutions, ... reserved.

http://web.archive.org/web/20070809195539/http://qes-llc.com/clients.htm (2 of 2)8/9/2007 3:56:01 PM

# EXHIBIT E

quantitative economic solutions, LLC

ABOUT THE FIRM | PROFESSIONALS | PRACTICE AREAS | EMPLOYMENT OPPORTUNITIES | CONTACT US

Industry Experience

**Selected Client List**

# Selected Client List

Corporations:

- CSX Corporation
- Apple Computer
- Merck & Co.
- Thomson Corporation
- Medtronic
- Hewlett-Packard
- Novartis
- Kodak

Law Firms:

- Shearman & Sterling
- Jones Day
- Vinson & Elkins
- Ropes & Gray
- Howrey Simon Arnold & White
- Robins Kaplan Miller & Ciresi
- Cooley Godward Kornish
- Latham & Watkins

QES Selected C'

Home | About the Firm | Professionals | Practice Areas | Employment Opportunities | Contact Us

**Quantitative Economic Solutions, LLC**

1280 Massachusetts Ave., Cambridge, MA 02138 **Ph:** 617-995-7676 **Fax:** 617-995-7677 **Email:** info@qes-llc.com

© 2006 Quantitative Economic [illegible] rights reserved.

http://qes-llc.com/clients.htm (2 of 2)8/9/2007 3:27:05 PM

# EXHIBIT F



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsecord@sidley.com
(312) 853-2206

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON
LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

FOUNDED 1866

July 26, 2007

**Via Federal Express**

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-628-5116 (facsimile)

Re: *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

Christopher Vellturo will serve as an expert for Plaintiff R.R. Donnelley & Sons Company in the above-referenced action. Mr. Vellturo anticipates receiving information that Defendants have designated as Confidential or for Attorneys Eyes Only.

Pursuant to Paragraph 8 of the Stipulated Protective Order, enclosed are (1) Exhibit A to that Order executed by Mr. Vellturo and (2) a current *curriculum vitae*.

Please do not hesitate to contact me with any questions.

Sincerely,

Jamie L. Secord

Enclosures

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

Plaintiff,

v.

QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY,

Defendants.

CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY,

Counterclaim-Plaintiffs,

v.

R.R. DONNELLEY & SONS COMPANY,

Counterclaim-Defendant.

C.A. No. 06-cv-032-JJF

UNDERTAKING OF Christopher Velturo
FOR RECEIPT AND USE OF CONFIDENTIAL [OR ATTORNEYS-EYES-ONLY] INFORMATION

STATE OF )
: ss.:
COUNTY OF )

I, Christopher Velturo, being duly sworn, state that:

1. My address is 361 Harvard St Cambridge MA. My present employer is QES LLC and the address of my present employment is 1280 Massachusetts Ave Cambridge MA. My present occupation is President/Manager

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action, any Confidential Information [or Attorneys-Eyes-Only Information], including the substance and any copy, summary, abstract, excerpt, index, or description of such material, that is disclosed to me.

4. I will return all Confidential Information [or Attorneys-Eyes-Only Information] that comes into my possession, and all documents and things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained or from whom I received such material.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

[Signature]

Sworn and subscribed to before me this 25 day of July, 2007.

Angela Marino Fewell
Notary Public

ANGELA MARINO FEWELL
Notary Public
Commonwealth of Massachusetts
My Commission Expires
September 11, 2009



quantitative economic solutions, LLC

1280 Massachusetts Ave
Cambridge, MA 02138
t: 617.995.7676
f: 617.995.7677

# CHRISTOPHER A. VELLTURO
## President

Over the course of his career, Dr. Vellturo has performed a wide variety of economic and econometric analyses and provided expert testimony in the context of mergers and acquisitions, antitrust litigation, intellectual property litigation and numerous other matters spanning a broad array of industries. Dr. Vellturo has testified on economics-related matters in numerous U.S. District Courts, as well as at the Canadian Competition Bureau, and the American Arbitration Association. He has appeared before the U.S. Department of Justice, the Federal Trade Commission, various states' Attorneys General offices, the Federal Reserve Bank Board of Governors, and numerous other regulatory agencies on merger-related issues and other antitrust matters. Dr. Vellturo has also made appearances at hearings before the European Commission, and other antitrust enforcement agencies around the world. To date, he has performed economic analyses in over one hundred merger matters, in excess of seventy antitrust actions and well over one hundred intellectual property actions.

Prior to forming Quantitative Economic Solutions, LLC (QES), Dr. Vellturo was a Principal at Analysis Group/Economics (AG/E) and a Senior Vice President and member of the Board of Directors at National Economic Research Associates (NERA).

Dr. Vellturo has published on a variety of topics, including merger and acquisition-related efficiencies, price discrimination, differentiated product analysis and market definition. His research has appeared in leading academic journals, including *Antitrust*, the *Antitrust Law Journal*, and the *Journal of Economics and Management Strategy*. Dr. Vellturo is a recipient of the Bradley Fellowship in Public Economics and has served as a referee for *American Economic Review* and *Rand Journal of Economics*.

A Ph.D. graduate in Economics from the Massachusetts Institute of Technology, Dr. Vellturo also holds a Sc.B. in Applied Mathematics and Economics from Brown University, where he graduated *magna cum laude* and *Phi Beta Kappa*.

## EDUCATION

1989          Ph.D. in Economics, Massachusetts Institute of Technology
              *Primary Fields:* Econometrics, Industrial Organization
              *Secondary Fields:* Public Finance, Game Theory, Law and Economics

1983          Sc.B. in Applied Mathematics and Economics (*magna cum laude*), Brown
              University

## PROFESSIONAL EXPERIENCE

2002-Present  **Quantitative Economic Solutions, LLC**
              *President/Manager* – Direct research on microeconomic issues in litigation and
              non-litigation matters. Areas of particular focus include: antitrust, regulation,
              and damages assessment in intellectual property and contract matters.

2000-2002     **Analysis Group/Economics**
              *Principal* - Direct research and provide expert testimony on a variety of
              microeconomic issues with particular emphasis on antitrust, intellectual
              property, and mergers and acquisitions. Expert reports and testimony presented
              in U.S. District Court. Presented antitrust economic analyses to Federal Trade
              Commission, U.S. Department of Justice, Federal Reserve Bank Board of
              Governors and the European Commission.

1996-2000     **National Economic Research Associates, Inc.**
              *Senior Vice President* (1999-00)
              *Vice President* (1996-99)

1991-1996     **Cambridge Economics, Inc.**
              *Director* - Directed research and provided expert testimony on a variety of
              microeconomic issues with particular emphasis on antitrust, intellectual
              property, and mergers and acquisitions. Prior expert testimony provided in U.S.
              District Court and before the American Arbitration Association. Presented
              antitrust economic analyses to U.S. Department of Justice, Federal Trade
              Commission (Antitrust Division), state Attorneys General offices, and the Federal
              Reserve Bank Board of Governors.

1989-1991     **National Economic Research Associates, Inc.**
              *Senior Consultant* - Directed and performed research relating to issues of
              antitrust, intellectual property, mergers and regulation.

1987          **Department of Economics, M.I.T.**
              *Teaching Assistant* - Undergraduate econometrics.

1985-1989 **Dean Ann F. Friedlaender, M.I.T.**
*Research Associate* - Participated in research relating to transportation pricing and capital allocation responses to regulatory changes.

1983-1985 **National Economic Research Associates, Inc.**
*Research Associate* - Conducted research on a wide variety of issues including antitrust, railroad rate setting, optimal landfill pricing, and PCB and asbestos abatement strategies.

## AWARDS AND PROFESSIONAL ACTIVITIES

| | |
|---|---|
| 1987-1989 | Recipient, Bradley Fellowship in Public Economics |
| 1986 | M.I.T. Departmental Fellowship |
| 1983 | Phi Beta Kappa, Brown University |
| 1983 | Sigma Xi, Brown University |
| Present | Journal Referee for *American Economic Review* and *Rand Journal of Economics* |
| Present | Member, American Economic Association |
| Present | Member, American Bar Association |

## TESTIFYING HISTORY (PAST FOUR YEARS)

- Testimony before the Texas House of Representatives Committee on Regulated Industries in connection with Senate Bill 896.

- *Rochester Medical Corporation v. C.R. Bard Inc., Tyco International (US) Inc., Tyco Healthcare Group LP, Novation LLC, VHA Inc., Premier Inc., and Premier Purchasing Partners*
U.S. District Court, Eastern District of Texas, Texarkana Division, C.A. No. 504-CV-060.

- *Smith Kline & French Laboratories, Ltd. and SmithKline Beecham Corp. d/b/a GlaxoSmithKline v. Teva Pharmaceuticals USA, Inc.*
U.S. District Court, District of Delaware, Civil Action No. 05-197.

- *Massachusetts Institute of Technology v. Harman International Industries, Inc.*
U.S. District Court, District of Massachusetts, Civil Action No. 05-10990-DPW.

- *Tessera, Inc. v. Micron Technology, Inc., Micron Semiconductor Products, Inc., Infineon Technologies AG, Infineon Technologies Richmond, LP, Infineon Technologies North America Corp., Qimonda AG*
U.S. District Court, Eastern District of Texas, Marshall Division, Civil Action No. 2-05cv-94.

- *Gary D. Carter and Mary Elaine Carter v. CSX Transportation, Inc.*
  U.S. District Court, Western District of Kentucky, Louisville Division, Case No. 3:04-CV-487-S.

- *Anthony Park, Individually on Behalf Of Himself and On Behalf of All Others Similarly Situated v. The Thomson Corporation and Thomson Legal and Regulatory, Inc.*
  U.S. District Court, Southern District of New York, Case No. 05 Civ. 2931 (WHP).

- *Merck & Co., Inc. v Teva Pharmaceuticals USA, Inc.*
  U.S. District Court, District of Delaware, Civil Action No. 04-939.

- *Wavetronix, LLC v. Electronic Integrated Systems, Inc*
  U.S. District Court, District of Utah, Central Division, Civil Action No. 2:05 CV 00073 BJS.

- *Richard Lee Young and Tonja Young v. CSX Corporation, CSX Transportation, Inc., Dick Spatafore, and Bobby Ambrose*
  Circuit Court of Kanawha County, West Virginia, Civil Action No. 03-C-2837.

- *WeddingChannel com Inc v. The Knot, Inc. and The Knot, Inc. v. WeddingChannel.com Inc.*
  U.S. District Court, Southern District of New York, Civil Action No. 03 CV 7369 (RWS).

- *Advanced Technology Materials, Inc. v. Praxair, Inc. and Praxair, Inc. v. Advanced Technology Materials, Inc.* and *Praxair, Inc. and Praxair Technology, Inc. v. ATMI, Inc. and Advanced Technology Materials, Inc.*
  U.S. District Court, Southern District of New York, Civil Action No. 03 CV 5161 (RO) and U.S. District Court, District of Delaware, Civil Action No.: 03-1158-SLR.

- *In the Matter of the Arbitration Between Celanese LTD., et al., and JO Tankers AS, et al.*

- *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc and Medtronic Sofamor Danek U.S.A. and Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek U.S.A. and SDGI Holdings, Inc. v. Cross Medical Products, Inc*
  U.S. District Court, Central District of California, Southern Division, Case No. SACV 03-110 GLT (ANx).

- *Robert Bosch GMBH v. TRW Automotive, Inc., TRW Vehicle Safety Systems Inc., and TRW Automotive U.S. LLC*
  U.S. District Court, District of Arizona, Case No.: CIV-03-0045 PHX FJM.

- *Honeywell International Inc. against The GetPaid Corporation, a/k/a/ GetPaid Software, a/k/a Software Experts, Inc.*
  American Arbitration Association, Case No: 18 133 00073 03.

- *Samsung Electronics Co., Ltd. v. Tessera Technologies, Inc. and Tessera, Inc. and Tessera Technologies, Inc. v. Samsung Electronics Co., Ltd., Samsung Electronics America and Samsung Semiconductor, Inc.*
  U.S. District Court, Northern District of California, Oakland Division, Case No. C 02-05837 CW.

- *Merck & Co., Inc. and Merck Frosst Canada & Co. v. The Minister of Health and Novopharm Ltd.*
  Canada Federal Court, Federal Court File No. T-1627-03.

- *Verizon California Inc., a California Corporation v. Ronald A. Katz Technology Licensing, L.P., a California limited partnership*
  U.S. District Court, Central District of California, Case No. 01 CV-09871 RGK (RCx).

- *Massachusetts Eye and Ear Infirmary v. Novartis Ophthalmics, Inc. and QLT, Inc., QLT, Inc. v. Massachusetts Eye and Ear Infirmary, Evangelos S. Gragoudas, M.D. and Joan W. Miller, M.D., The General Hospital Corporation v. Massachusetts Eye and Ear Infirmary, Evangelos S. Gragoudas, M.D. and Joan W. Miller, M.D.*
  U.S. District Court, District of Massachusetts, Civil Action No. 01-10747-EFH.

- *Milliken & Company v. Mohawk Industries, Inc., et al./ Shaw Industries Group, Inc., et al./ Interface, Inc., et al.*
  U.S. District Court, District of South Carolina, Spartanburg Division, Civil Action Nos. 7-02-3631-20/7-02-3632-20/7-02-3633-2.

- *Torah Soft, Ltd. v. Michael Drosnin*
  U.S. District Court, Southern District of New York, 2000 Civ.: 0676 (JCF).

- *Dresses for Less, Inc., DFL Management Inc., The DFL Apparel Group, an unincorporated association, Allison-Che' Fashions, Inc., Bicci Studio Ltd., Garden City Dresses for Less, Inc., Donald Weiner and Barbara Weiner, individually and derivatively as shareholder of Stella N. Bishop Fashion Corp., and I.S.B. Fashions Corp. v. CIT Group/Commercial Services, Inc. and The Uptown Credit Group, Inc.*
  U.S. District Court for the Southern District of New York, C.A. No. 01 CIV. 2669 (WHP).

- *First Citizens Bank and Trust Company of South Carolina, as Conservator for Alex Compton, a minor and Alex Reid Compton and Lisa Compton, in their individual capacity, as the natural parents of Alex Compton, a minor v. CSX Transportation Inc.*
  U.S. District Court, District of South Carolina, Anderson Division, Civil Action File No. 8-01-4613-20.

- *DePuy AcroMed, Inc. and Biedermann Motech GMBH v. Medtronic Sofamor Danek, Inc., f/k/a Sofamor Danek Group, Inc. and Medtronic Sofamor Danek, U.S.A. Inc.*
  U.S. District Court, District of Massachusetts, Civil Action No. 01-CV-10165 (EFH).

- *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*
  U.S. District Court, District of Delaware, Civil Action No. 01-0048 –JJF.

- *The Toro Company v. White Consolidated Industries, Inc. and WCI Outdoor Products, Inc*
  U.S. District Court, District of Minnesota, Civil Action No. 4-95-656.

## PUBLICATIONS AND PRESENTATIONS

"Differentiated Products" in Issues in Competition Law and Policy, ed. D. Wayne Collins, American Bar Association, *forthcoming*

"When Fraud on the Patent Office Violates Section 2: A Mock Trial." Presented at the 52nd Annual Spring Meeting of the ABA Section of Antitrust Law, Washington, DC, April 1, 2004

"What Drives Consolidation?" Presented at the 28th Semiannual Members Meeting MIT/CRE, Cambridge, MA, May 14, 1998.

"Proving Unilateral Effects and Efficiencies in Merger Cases: A Demonstration." Presented at the 46th Annual Spring Meeting of the ABA Section of Antitrust Law, Washington, DC, April 1, 1998.

"Creating An Effective Diversion: Evaluating Mergers With Differentiated Products," *Antitrust*, Spring 1997.

"Economic Battles in the Antitrust Wars: Network Industries and Their Relevance to Antitrust in the Computer Industry." Presented at the Washington State Bar Association's Thirteenth Annual Antitrust, Consumer Protection and Unfair Business Practices Conference, November 8, 1996.

"Differentiated Products: New Tools for New Methods." Presented at NERA's Seventeenth Annual Antitrust & Trade Regulation Seminar, Santa Fe, NM, July 5, 1996.

"Market Definition Under Price Discrimination" (with J. A. Hausman and G. K. Leonard), Antitrust Law Journal, Vol. 64, No. 2 (Winter 1996).

"Learning-by-Doing in the Context of Antitrust Analysis" (with J. Hausman), April 1995.

"An Economic Analysis of ATM Surcharging," prepared for Southeast Switch Inc., October 5, 1995.

# EXHIBIT G

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Brian M. Koide
202-624-2931
bkoide@crowell.com

August 2, 2007

025140.0000051

VIA FACSIMILE AND U.S. MAIL

Jamie L. Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Jamie:

Under Paragraph 8 of the Stipulated Protective Order, Defendants object to Christopher Vellturo and Frank Merritt Braswell from gaining access to Confidential and Attorneys-Eyes-Only information.

As I mentioned in my letter yesterday, Dr. Vellturo lists "Kodak" as a client on the website of his firm, Quantitative Economic Solutions, LLC ("QES"). QES appears to be a small consulting services firm run primarily by Dr. Vellturo.

Although our investigation is still on-going, we understand that Dr. Vellturo provided services to Eastman Kodak Company in a series of complex patent infringement disputes with Sony, including a multi-year litigation between the two companies in the Western District of New York. Dr. Vellturo provided a substantial amount of services in this matter. In addition to Dr. Vellturo, Dr. Amy Almeida, QES's vice-president, also worked on this matter. We believe that Dr. Vellturo and/or QES employees, including Dr. Almeida, were exposed to confidential Kodak information in providing these services. Under the circumstances, it would improper for Dr. Vellturo to serve as Donnelley's expert, and accordingly he has no need to access protected information in this case.

Defendants also object to Mr. Braswell. Mr. Braswell's firm – Systems of Merritt, Inc. ("SMI") – appears to be a small, closely-held company consisting of a "development team [with a] heavy emphasis on printing and prepress." *See* http://www.systemsofmerritt.com/projects.shtml. In particular, it is apparent that

SMI is in the business of developing commercial applications, including what appear to be variable data printing applications. *Id.* (describing a project for Wellness Works). SMI also describes at least one project where they "decrypt[ed]" proprietary file formats. *Id.* Other SMI projects relate to "page templates" and working with Quark Xtensions. *Id.* Thus, it appears that SMI is a company that has or will likely develop products that compete with Kodak's accused products. For these reasons, we cannot agree to let Mr. Braswell or SMI employees gain access to information protected by the Stipulated Protective Order.

We remain willing to discuss both potential experts with you. Any additional information or assurances that might assist address Kodak's concerns would be helpful. For now, however, Kodak objects to both experts pursuant to Paragraph 8 of the Stipulated Protective Order.

Best regards,

Brian M. Koide

cc: Richard McMillan, Jr.

# EXHIBIT H

1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Brian M. Koide
202-624-2931
bkoide@crowell.com

August 9, 2007

025140.0000051

VIA FACSIMILE AND U.S. MAIL

Andrew R. Hein, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Andrew:

This letter confirms this morning's meet and confer conference, regarding Defendants' objections to RRD's proposed expert witnesses Christopher Vellturo and Frank Braswell. Specifically, during our call Defendants asked RRD to further investigate several issues.

Regarding Dr. Vellturo, Defendants asked that RRD investigate three issues. First, Defendants inquired when RRD first retained Dr. Vellturo and Quantitative Economic Solutions ("QES"). Second, Defendants asked whether RRD planned to use the services of Dr. Almeida, QES's vice president. Defendants also asked whether RRD would agree to not work with Dr. Vellturo or QES until such time as this dispute has been resolved.

With respect to Mr. Braswell, Defendants asked whether Mr. Braswell currently is working on any variable digital printing-related projects. Defendants further inquired as to whether RRD and Mr. Braswell would agree that Mr. Braswell not work on any variable digital printing-related projects both during the pendency of this litigation, as well as for a finite period of time after the conclusion of the litigation. Defendants believe this latter request is reasonable under the circumstances, and would largely assuage our concerns

Defendants await RRD's response on these issues. In the meantime, and given the timing set out in Paragraph 8 of the Stipulated Protective Order, Defendants believe that they have satisfied the duty to meet and confer on these

Andrew R. Hein
August 9, 2007
Page 2

issues, although we remain available to meet and confer after we file our motion today.

Best regards,

Brian M. Koide

cc: Richard McMillan, Jr.

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington, DC ▪ California ▪ New York ▪ London ▪ Brussels

# EXHIBIT I

 Systems of Merritt, Inc.

## Projects and Clients

### Our Focus

As you will see, the development team has a heavy emphasis on printing and prepress, however we also entertain other projects as needs arise. Below is a list of some of our projects and clients.

---

### CT/LW File Processing

This MGI project required the decryption of the proprietary Scitex (new) CT/LW file format, in order to perform custom color processing of the images. The fact that the CT/LW file format was undocumented, made the project more challenging, however we routinely handle a variety of image file formats (jpeg, tiff, etc.) from within Adobe plug-ins or from stand-alone applications which we write.

---

### Acrobat PDF/X-1a File Processing

This project required the application of a special color correction technology to PDF/X-1a files. The Acrobat plug-in was required to read color tables and then color correct each object in the pdf file.

---

### Automatic Label Printing

Our friends at Wellness Works faced a big problem each afternoon as they filled orders of nutritional supplements. Each customer required a separate custom label for each supplement bottle on the order. With hundreds of customers, multiple label sizes and almost two hundred products, printing the labels was an extremely time consuming and tedious manual process.

As an Intuit Developer, we were able to directly access the customer order information from QuickBooks. From the customer order, the label information was determined. Our experience with the PostScript Language allowed us to write code to automatically generate and print the label sheets.

---

### Automated Quark Xpress Layout

Producing hundreds of custom layouts each day is impossible without some kind of automation. This project required reading job files which contained layout commands, and then building the files with a Quark Xtension. Workflow controls (stop, start, redo, approvals, etc.) and file handling were also implemented.

---

## Adobe Illustrator Automation Plug-in

This Illustrator Plug-in saves E-Spec customers enormous amounts of time by automatically saving design files in the proper format. Each time a designer finishes a design, they are required to also save a jpeg version. This means navigating through numerous menus and settings. With the new plug-in, the jpeg version of the file is automatically saved each time the Illustrator design file is saved.

---

## PostScript Analyzer Software

PostScript language files are the lifeblood of a prepress workflow system. In addition to driving imaging devices, they can provide important technical information about the job. The job data is actually carried in the PostScript file itself. With the advent of desktop super computing capability it is now possible to extract this job information from the PostScript file in a timely manner.

The PostScript Analyzer software is an essential piece of a high-volume prepress workflow system. It is designed to keep defective files from entering the system. A defective file is one which may contain runtime (PostScript) errors, or a file which doesn't meet the proper technical specifications. A workflow system which allows faulty or corrupt production files to enter will compromise its effectiveness, efficiency and bottom line cost.

The PostScript Analyzer technology allows the move to a hands-off workflow, necessary for high-volume prepress. Human operators are no longer required to check file characteristics before the file is entered into the production workflow. High-volume workflow systems simply cannot tolerate the cost and inefficiency of manual file checking.

Hallmark

The PostScript Analyzer is a proven concept. Here's what Hallmark has to say:

"Our custom Postscript file analyzer enables Hallmark to use a completely digital workflow process, so we can print high-quality products more efficiently and accurately. The analyzer allows us to validate the digital components within that workflow so we can maintain our high throughput for imposable digital files."

---

## Process Controls for Prepress & Printing

These quality control devices were designed to give added control during the pre-press and printing processes. For more product information:

View these target samples detailing some of the work done for GATF.
Download in PDF format.

Visit the Graphic Arts Technical Foundation (GATF) - click on process controls.

---

## Cross-Platform InDesign Plug-in Manages Yearbook Pictures

# Friesens

Managing lots of templates, clip art, backgrounds and student pictures can be a real problem for the yearbook staff. This InDesign plug-in written for Friesen Yearbooks provides an elegantly useful tabbed palette interface featuring drag-and-drop image thumbnails. A black-and-white mode allows the automatic conversion of color pictures to black & white for panel pages. Additionally, images are automatically scaled, compressed, converted and color corrected according to the requirements of the yearbook manufacturer.

## Yearbook Planning Software.

This cross-platform product helps student plan their yearbook pages. In the past this was done by hand on large paper charts.

## Dual-Platform Yearbook Page Layout Application

The Tempo application was written for Taylor Publishing to interface directly to its production workflow systems. Through the use of page templates, the user could quickly build yearbook pages and spreads. Custom page layouts could also be created by the placement of picture and text areas. It also featued a spelling and hyphenation dictionary, plus the ability to bundle groups of pages for delivery to Taylor. The picture area boxes indicate where Taylor will place scanned photos during production.

The application was designed and written for both PC and Macintosh as a simple-to-use entry-level yearbook design program. The program output was designed to directly drive Taylor's proprietary imaging systems.



## Prepress Workflow Software.

Finding ways to make prepress workflow more efficient is one of our strongest areas of expertise. We have developed a range of technologies for advanced font handling, PostScript file processing and preflight analysis of application files using Adobe plug-in technologies and Quark Xtensions.

---

## Clients Include:



















Pharmacy Care. Naturally.

The above logos and trademarks are the property of their respective owners

---

**Dallas**
**New York - Los Angeles**
**Moscow - London**
**Tokyo - Sydney**

---

**Contact info:**
info@systemsofmerritt.com
338 W. Jefferson St.
Upland, IN 46989 U.S.A.
765.998.2133

Copyright ©2007 Systems of Merritt, Inc

[Home] [Projects] [Engineering Staff]

# EXHIBIT J



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

jsecord@sidley.com
(312) 853-2206

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON
LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D C

FOUNDED 1866

July 27, 2007

**Via Federal Express**

Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595

Re: *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

Frank M. Braswell will serve as an expert for Plaintiff R.R. Donnelley & Sons Company in the above-referenced action. Mr. Braswell anticipates receiving information that Defendants have designated as Confidential or for Attorneys Eyes Only.

Pursuant to Paragraph 8 of the Stipulated Protective Order, enclosed are (1) Exhibit A to that Order executed by Mr. Braswell and (2) a current *curriculum vitae*.

Please do not hesitate to contact me with any questions.

Sincerely,

Jamie L. Secord

Enclosures

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3947044v 1

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

Plaintiff,

v.

QUARK, INC., CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY,

Defendants.

CREO, INC., EASTMAN KODAK COMPANY, AND KODAK GRAPHIC COMMUNICATIONS COMPANY,

Counterclaim-Plaintiffs,

v.

R.R. DONNELLEY & SONS COMPANY,

Counterclaim-Defendant.

C.A. No. 06-cv-032-JJF

UNDERTAKING OF ____________
FOR RECEIPT AND USE OF CONFIDENTIAL [OR ATTORNEYS-EYES-ONLY]
INFORMATION

STATE OF ) Indiana
: ss :
COUNTY OF ) Grant

I, Frank Braswell, being duly sworn, state that:

1. My address is 220 W. McCabe Ave., Upland, IN 46989. My present employer is Systems of Merritt, Inc. and the address of my present employment is 220 W McCabe Ave. Upland, IN 46989. My present occupation is engineer.

2. I have received a copy of the Protective Order in this action. I have carefully read and understand the provisions of the Protective Order.

3. I will comply with all of the provisions of the Protective Order. I will hold in confidence, will not disclose to anyone not qualified under the Protective Order, and will use only for purposes of this action, any Confidential Information [or Attorneys-Eyes-Only Information], including the substance and any copy, summary, abstract, excerpt, index, or description of such material, that is disclosed to me.

4. I will return all Confidential Information [or Attorneys-Eyes-Only Information] that comes into my possession, and all documents and things that I have prepared relating thereto, to counsel for the party by whom I am employed or retained or from whom I received such material.

5. I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order in this action.

[Signature]

Sworn and subscribed to before me this 26 day of July, 2007

Notary Public

LINDA JEFFERIES
Notary Public, State of Indiana
County of Grant
My Commission Expires Mar. 6, 2009

# FRANK MERRITT BRASWELL

Systems of Merritt, Inc.
220 W McCabe Ave. • Upland, Indiana 46989
765 998 2133 phone • 765 998 2133 fax • 765 744 0579 cell
frank@systemsofmerritt.com

## BACKGROUND SUMMARY

Since 1980, broad-based technical experience and project management skills have been developed in several industries including print industry product development, upper atmospheric research, oil exploration research, financial markets analysis and medical records analysis research.

## EDUCATION

- B.S. in Physics & Mathematics with minor in Computer Science, Jacksonville University, 1978. Graduated Summa Cum Laude.
- M.S. Electrical Engineering, University of Illinois, 1981.

  Thesis: *Rocket-Borne Microprocessor-Based Experiment for Investigation of Energetic Particles in the D & E Regions*

## INDUSTRY EXPERIENCE

- Print Industry Contributions – Since the late 1980's numerous contributions have been made in this area, centered around Adobe Systems technologies and products. Books, seminars, commercial software products, and custom software projects have been created to serve the needs of this industry Developed project specifications, customer contracts and managed development of numerous software projects for both PC and Mac platforms.
- Upper Atmospheric and Space Science Instrumentation – Designed, built, programmed and analyzed data from rocket-borne microprocessor experiment at the University of Illinois, 1981. Worked on initial instrumentation hardware gate-array design for SEPS project at Lockheed, 1990.
- Oil Exploration Instrumentation – Designed, built, programmed and tested digital control system for hydraulic vibrator systems used for on-shore and off-shore oil exploration at Conoco, 1981-1985. Received field experience with on-shore and off-shore seismic data gathering, well logging and drilling, in addition to technical training classes in seismic data processing and well logging instrumentation.
- Commercial Product Development – Managed project for hand-held computer Bible at VBI in 1987. Performed hardware design using embedded microprocessor and programmable gate arrays. Supervised software development team. The project was seen through the working prototype phase.
- Expert Witness for Patent Litigation – Served as an expert witness on PostScript language software matters for Harlequin and ECRM in a patent litigation trial, 1997-1998 Reviewed related patents, documentation, software listings, and court testimony to form an opinion on patent validity and infringement issues. Testified during the trial in 1998 Was contacted by Xerox Labs in 2005 regarding possible use as an expert witness in variable data printing matters. Reviewed several patents for them.

- Technical Analysis of Financial Markets – Conducted research on the use of advanced adaptive filtering techniques to study and track the movement of equity markets using the TradeStation platform, 2001-2004.
- Medical Records Analysis – Conducted research on the parsing and analysis of transcribed patient records, Desert Medical Group, 2002-2006. Over 20,000 records were analyzed and converted from Microsoft Word format into Adobe Acrobat pdf format. The analysis results, including information about chief complaint, diagnosis, medications, vitals, care provider, etc., from each record were attached as metadata to the individual pdf files.

PATENT, PUBLICATIONS & SEMINARS

- *Inside PostScript*, Author, Systems of Merritt, Inc. & Peachpit Press, 1989, ISBN 0-938151-10-X, 310 pages. Detailed analysis and documentation of the Adobe PostScript language interpreter.
- *PostScript Interpreter Research Report*, Author, Systems of Merritt, Inc., 1994. Engineering analysis of PostScript language RIP architecture performance. Timing measurements of each PostScript language operator were made and analyzed relative to CPU speed and memory architecture. Comparisons were then made between different PostScript language interpreters.
- PostScript Concepts Seminar, Author and Presenter, 1990 to 2000. One and one half day seminar teaches PostScript language concepts and debugging techniques.
- United States Patent 4,857,919, Method and Apparatus for Indicating the Position of a Variable Differential Transformer.
- *Rocket Measurement of Energetic Particles in the Midlatitude Precipitation Zone*, with H.D. Voss and L.G. Smith, COSPAR Space Research, Bangalore, India, Volume 8, p. 149-152, 1980.
- *Rocket-Borne Microprocessor-Based Experiment for Investigation of Energetic Particles in the D & E Regions*, with L.G. Smith, Aeronomy Report 96, Department of Electrical Engineering, University of Illinois, Urbana, Illinois, Library of Congress ISSN 0568-0581, 1981.

WORK HISTORY

- Systems of Merritt, Incorporated: President, Mobile, Alabama, Dallas, Texas & Upland, Indiana, 1989 to present.
- Taylor University: Assistant Director, Center for Research and Innovation, 2006 to present.
- Taylor Publishing Company: Principle Engineer, Dallas, Texas, 1995 to 1999.
- QMS: Member Technical Staff, Mobile, Alabama, 1987 to 1989.
- VBI: Vice-President Research & Development, Broken Arrow, Oklahoma, 1986 to 1987.
- Conoco: Research Engineer, Ponca City, Oklahoma, 1981 to 1986
- University of Illinois: Research Assistant, Urbana, Illinois, 1978 to 1981.