IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-032 (JJF) |
| ) | |
| CREO, INC., NEXPRESS SOLUTIONS, ) | |
| INC., KODAK VERSAMARK, INC., ) | |
| EASTMAN KODAK COMPANY, and ) | |
| KODAK GRAPHIC COMMUNICATIONS ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF R.R. DONNELLEY & SONS COMPANY'S
OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY**

1.      Plaintiff R.R. Donnelley & Sons Company ("RRD") hereby opposes Defendants' "Motion To Compel Discovery." (D.I. 196.)

2.      Defendants seek to compel RRD to produce documents in response to overly broad requests for production that seek information that is not relevant to the claims or defenses of the parties, and that should be, at least in part, in Defendants' own files.  Indeed, Defendants are seeking all draft or final agreements ever executed or contemplated between RRD and Kodak – or any Kodak predecessor, subsidiary, etc. –with respect to 10 different software products.  Defendants are also seeking all documents from any RRD employee who knew about the accused software products or the operation of such products, regardless of whether the employee knew about the patents-in-suit or Defendants' infringing activities.  RRD has repeatedly informed Defendants of the substantial breadth and irrelevance of their discovery requests and sought compromise to avoid burdening this Court with more discovery disputes.  Yet Defendants have been unwilling to frame their requests in a reasonable manner consistent with Fed. R. Civ. P. 26(b).

*Defendants' Request for Production No. 56: All draft or final agreements, and any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements, between (i) RRD and (ii) any Kodak Entity regarding the use of any of the following software products: Begin, Composer, Darwin, DijiComp, DL-100, DL-1000, FormsMerge, FusionPro, KEEPs, or Mailscape.* (D.I. 196, Ex. C, at 4.)

3.     Defendants' Request for Production No. 56 seeks all draft or final agreements – and any documents or notes relating thereto – ever executed or contemplated between RRD and "any Kodak Entity" regarding 10 different software products. Although Defendants acknowledge that they should already have at least the agreements they are seeking from RRD, they inexplicably claim that "[s]uch documents are not as readily available to Defendants as they are to RRD." (D.I. 196, Ex. E, at 4.) Defendants suggest that RRD's files should be more complete or more easily accessible because RRD should have known "as many as 20 years" ago that the pending litigation would be filed. (D.I. 196, at 5.) Given that the patents-in-suit did not issue until 2001 or later, such an argument lacks merit.

4.     Moreover, Defendants have been unwilling to provide a reasonable time period for Request for Production No. 56. Defendants have said they want *all* agreements between RRD and any Kodak Entity regardless of when the agreements were executed or contemplated. Defendants have stated that some of the agreements they are seeking may date back even to the 1980s. (D.I. 196, Ex. E, at 5.) Yet, as mentioned above, the patents-in-suit did not issue until 2001 or later.

5.     RRD has repeatedly offered to compromise to avoid costly and unnecessary motion practice on Defendants' Request for Production No. 56. Indeed, RRD has offered, and even begun, to undertake a search for final agreements between RRD and Kodak regarding the 10 enumerated software products since 2000 – a full year before the issuance of the earliest patent-in-suit. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 2.)

6.    Despite RRD's willingness to compromise, Defendants have been unwilling to do so, claiming that it does not matter whether Defendants' request seeks information that is relevant to the parties' claims or defenses, and that they are instead entitled to all information "that is reasonably calculated to lead to the discovery of admissible evidence." (D.I. 196, at 9.)  RRD has pointed out to Defendants that the language in Fed. R. Civ. P. 26(b)(1) was amended seven years ago – in 2000 – to require discovery requests to be "relevant to the claim or defense of any party," unless good cause is shown for broader discovery.  (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 2 (citing Advisory Committee Notes to Fed. R. Civ. P. 26(b)(1).)  Defendants have made no effort to establish good cause and have refused to focus their request on documents that relate to the parties' claims or defenses.

7.    Indeed, although Defendants have generally suggested that RRD may have used the listed products before the patents-in-suit issued (D.I. 196, at 3), they have not shown that all of the enumerated products even existed before the filing of the earliest patent application.  Furthermore, Defendants argue that RRD-Kodak contracts may have included contractual provisions "that would restrict or bar RRD from bringing suit against Kodak for the subject matter of this litigation."  (D.I. 196, at 3 n.3.)  Again here, however, Defendants fail to explain how such alleged contracts could be relevant before the technology in the core patent-in-suit was even invented.  Defendants have failed to show good cause for why RRD should search for all RRD-Kodak agreements ever executed or contemplated without regard to the dates of such agreements.

8.    At the very least, RRD respectfully requests that the Court strike the portion of Request for Production No. 56 seeking "documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to" RRD-Kodak agreements,

as opposed to the final agreements themselves, given that Defendants have made no attempt to show how documents, notes, or draft agreements are relevant to the parties' claims or defenses. RRD further requests that the Court set a reasonable time period for the agreements sought.

9.     RRD believes that its proposed compromise for Defendants' Request for Production No. 56 – final agreements between RRD and Kodak regarding the 10 enumerated software products from 2000 to present – is reasonable in scope and time period.

***Defendants' Request for Production No. 60****: All documents that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit, including all documents that refer to any such consideration, analysis, examination, investigation, or allegation.*

***Defendants' Request for Production No. 61****: All documents that are alleged by any party to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit.* (D.I. 196, Ex. C, at 5.)

10.     Defendants' motion with respect to Request for Production Nos. 60 and 61 raises issues that are simply premature. Defendants' requests seek prior art and damages information from *Tesseron, Ltd. v. R.R. Donnelley & Sons Company*, No. 1:06CV2909 (N.D. Ohio) (the "Tesseron Suit"). That lawsuit is still in the early fact discovery stage. Until recently, it was not even clear which products were at issue in that case. Furthermore, plaintiff Tesseron has not yet provided any damages analysis.

11.     RRD has repeatedly informed Defendants that its requests are premature and that RRD is not withholding non-privileged RRD documents sought by Defendants' Request for Production Nos. 60 and 61. (*See, e.g.*, Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.) RRD has further stated that it will produce any non-privileged, responsive documents in accordance with the Federal Rules of Civil Procedure. (*See id.*) Such assurances apparently have not satisfied Defendants.

12.     Defendants also complain that RRD has been unwilling to violate the Protective Order in the Tesseron Suit by producing non-RRD materials, such as documents produced by Tesseron or any potential third parties, that are designated confidential pursuant to the Protective Order in that case.  (*See* D.I. 196, at 5-8.)   Again here, this issue is simply premature since RRD is not currently aware of any non-RRD materials that are responsive to Defendants' Request for Production Nos. 60 and 61.   If RRD identifies such materials in the future, RRD has informed Defendants that it will so notify Defendants.  (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.)   At that time, Defendants may seek permission from Tesseron or any potential third parties for access to such materials covered by the Protective Order.   Or Defendants may move this Court, as contemplated by the Protective Order in the Tesseron Suit, which states in relevant part:

> 20. Other Proceedings.
>
> By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case.  Any person or party subject to this Protective Order who may be subject to a subpoena, motion or court order in another case to disclose information that is designated by another party in this case as CONFIDENTIAL or HIGHLY CONFIDENTIAL in this case shall promptly notify that other party of the subpoena, motion or court order so that it may have an opportunity to appear and be heard on whether such information should be disclosed prior to disclosure.

(*See* Ex. B, Protective Order from Tesseron Suit, at 18.)

13.     Defendants argue that the Protective Order in the Tesseron Suit permits a party to produce information covered by the Order when required to do so pursuant to another court's order, and that this Court's Scheduling Order qualifies as such an order requiring RRD to produce responsive Tesseron or third-party materials covered by the Protective Order in the Tesseron Suit.  (D.I. 196, at 8.)   RRD has asked Defendants to provide it with some legal

authority stating that a general Scheduling Order alone qualifies as the type of court order contemplated by the Protective Order set forth above. (Aug. 15, 2007 Discovery Teleconference.) Defendants have refused to do so. (*Id.*)

14.    Defendants have also argued that this Court's August 3, 2007 Order relating to Defendants' motion to compel RRD to produce certain prior art and damages-related documents from recently acquired companies (namely, Banta and Communicolor) somehow obligates RRD to produce confidential information produced by entirely separate third parties in the Tesseron Suit. (D.I. 196, at 8 n.4.) Neither Defendants' motion related to the August 3, 2007 Order, nor the Court's Order itself, said anything about RRD being required to produce unrelated third-party materials from a separate lawsuit that are covered by a Protective Order issued by a federal court in another jurisdiction.

15.    Defendants have not indicated that they have provided Tesseron or any potential third parties with notice that Defendants are seeking an Order from this Court for access to their confidential materials covered by the Protective Order in the Tesseron Suit. RRD sent Defendants' pending motion to compel to Tesseron's counsel, as required by the Protective Order in the Tesseron Suit. (Ex. C, Letter from B. Frey to K. Kirsch of Sept. 6, 2007.) No third parties in the Tesseron Suit have produced documents at this time; therefore, RRD has not provided notice to any third parties whose documents may be affected by Defendants' motion.

***Defendants' Request for Production No. 63****: All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product.*

***Defendants' Request for Production No. 64****: All documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product.* (D.I. 196, Ex. C, at 5.)

16.    Defendants are seeking documents showing when RRD first learned about the accused software products or the operation of such products. RRD has repeatedly informed

Defendants that RRD would undertake a reasonable search of documents within its possession, custody, or control to look for documents related to RRD's earliest knowledge of the accused software products or the operation of the accused software products, as requested in Defendants' Request for Production Nos. 63 and 64.  (*See, e.g.*, Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.)  The primary dispute with respect to Defendants' Request for Production Nos. 63 and 64 therefore seems to relate to the legally relevant scope of RRD's search, with Defendants arguing that RRD needs to cast a wide net without regard to whether the documents being sought are relevant to the parties' claims or defenses.

17.     As part of its reasonable search, RRD agreed to identify relevant RRD individuals with knowledge relevant to the parties' claims or defenses, such as RRD employees likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities.  (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.)  RRD framed its reasonable search by reviewing legal authority relating to Defendants' equitable defenses, which are the defenses to which Defendants have claimed Request for Production Nos. 63 and 64 relate.  *See* 6-19 Chisum on Patents § 19.05(i).  During the August 15, 2007 discovery teleconference, RRD pointed Defendants' counsel to this authority, which shows that (1) an equitable defense of laches requires "knowledge of infringement" and (2) any alleged delay is measured after the date(s) when the patent(s)-in-suit issued.  *See id.*

18.     Nevertheless, Defendants have insisted that RRD conduct a much broader search of *all* RRD employees who purchase or use software and RRD employees who market competitive activities, regardless of whether they knew or had reason to know of the patents-in-suit or Defendants' infringing activities at issue in this case.  (*See, e.g.,* D.I. 196, at 8.)

Defendants also have not limited their view of an appropriate search to 2001 (when the first patent-in-suit issued) or later.

19.    RRD has repeatedly asked Defendants to provide some legal authority supporting their theory that RRD must conduct a broad search of all purchasing employees and all employees who sell competitive products, but Defendants have refused to do so.  (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 4.)

20.    RRD respectfully requests that this Court limit Defendants' attempt to require RRD to ask hundreds, perhaps even thousands, of employees whether they have ever used variable digital printing or had any knowledge of the accused software products, without regard to whether such employees are likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities.  Such an expansive search simply would not bear fruit relevant to Defendants' defenses.  RRD believes that the search it has proposed – of RRD employees likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities – is reasonable and appropriate in light of the pertinent legal authority.

21.    RRD takes its discovery obligations seriously and has responded to the discovery requests at issue in a reasonable manner consistent with the Federal Rules of Civil Procedure.  Defendants, on the other hand, have declined to appropriately limit the scope of their requests.  RRD therefore respectfully requests that this Court deny Defendants' motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

September 10, 2007
1230594

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on September 10, 2007, upon the following in the manner indicated:

### BY EMAIL AND BY HAND

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

### BY EMAIL

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT A



SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

BEIJING          LOS ANGELES
BRUSSELS         NEW YORK
CHICAGO          SAN FRANCISCO
DALLAS           SHANGHAI
FRANKFURT        SINGAPORE
GENEVA           SYDNEY
HONG KONG        TOKYO
LONDON           WASHINGTON, D.C.

jsecord@sidley.com
(312) 853-2208                     FOUNDED 1866

August 17, 2007

**Via Facsimile and U.S. Mail**
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-628-5116 (facsimile)

Dear Nathaniel:

This letter memorializes the meet and confer the parties held on August 15, 2007.

**Defendants' Response to R.R. Donnelley's Interrogatory No. 21**

As stated our letter of August 13, 2007, R.R. Donnelley has repeatedly requested that Defendants supplement their response to R.R. Donnelley's Interrogatory No. 21, which asks for "all Third Party Software Products that Defendants have offered, sold, marketed or promoted for use with Defendants' Hardware Products since 2001." Defendants objected to the terms "marketed" and "promoted" as "overly broad and ambiguous." In response, Defendants identified products that "may or... may not be compatible with Defendants' Hardware Products," apparently responding to a different interrogatory. In your letter of July 30, 2007 and as you reiterated in our discussion on August 15, 2007, Defendants stand on their objections "marketed" and "promoted" as ambiguous, despite the fact that Defendants have used the same terms in their own interrogatories and document requests and the fact that these are ordinary business terms. Nevertheless, you confirmed on August 15, 2007 that Defendants will not supplement their response.

In light of Defendants' course of action in several previous discovery disputes, we are concerned that Defendants may modify their position after R.R. Donnelley has filed a motion to this regard. We, of course, do not approve of Defendants' attempts to waste R.R. Donnelley's time and resources. Consequently, if this happens, R.R. Donnelley may be forced to seek its costs in preparing its motion.



Nathaniel Grow
August 17, 2007
Page 2

## R.R. Donnelley's Responses to Defendants' Second Set of Requests for Production

Although we have previously discussed Plaintiff R.R. Donnelley & Sons Company's responses to Defendants' Second Set of Requests for Production in letters dated July 6 and 10, 2007 and our telephone conversation of July 10, 2007, we agreed to discuss these issues with you again on August 15, 2007.

*Request No. 56*

As stated in my letters of July 6 and 10, 2007 to you, pursuant to Defendants' Request No. 56, we agreed to discuss with our client whether it would be unduly burdensome to undertake a search for agreements between R.R. Donnelley and Kodak regarding the use of the 10 software products enumerated in Request No. 56 from 2000 to present. We have provided R.R. Donnelley with such agreements that Defendants have produced in this litigation, and R.R. Donnelley is searching for any additional such agreements, including final and draft agreements. To the extent any additional, non-privileged agreements are discovered as a result of a reasonable search, we will produce such documents.

As we discussed on August 15, 2007 and in past communications, we fail to see why agreements between R.R. Donnelley and Kodak regarding the use of the 10 software products enumerated in Request No. 56 created before 2000 are relevant to the claims, counterclaims, or defenses of the parties in this litigation given that the Patents in Suit did not issue until 2001 or later. We have invited Defendants to explain why such documents pre-dating the issuance of the Patents in Suit are possibly relevant to this lawsuit and to provide a reasonable time period.

Defendants on August 15, 2007 stated that they consider the time period of 1990 to present to be reasonable, even though the invention behind the core '599 patent at issue in this case was not reduced to practice until late 1994. Defendants agreed to confirm in writing whether they themselves produced such agreements from 1990 to present. We await such confirmation.

Although during our conferences on August 15 and July 10, 2007 I read to you the current standard of discoverability set forth in Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"), for some reason you still insist upon using the old standard, which changed as a result of a 2000 Amendment. *See* Advisory Committee Notes to Fed. R. Civ. P. 26(b)(1).



Nathaniel Grow
August 17, 2007
Page 3

*Request Nos. 60 and 61*

As I stated in our August 15 and July 10, 2007 conversations, R.R. Donnelley is not withholding non-privileged documents sought in response to Defendants' Request Nos. 60 and 61. Defendants' requests are simply premature, and R.R. Donnelley will produce any non-privileged, responsive documents in accordance with the Federal Rules of Civil Procedure.

Indeed, with respect to Request No. 60, R.R. Donnelley will produce *non-privileged* documents that R.R. Donnelley considers, analyzes, examines, or investigates as prior art, or that R.R. Donnelley alleges to be prior art to the patents-in-suit in the Tesseron Suit.

As for Request No. 61, any dispute regarding the Tesseron Protective Order is also premature given that R.R. Donnelley is not withholding non-privileged, responsive documents. Should we believe that R.R. Donnelley may be precluded at some future point from producing non-R.R. Donnelley materials based upon the Tesseron Protective Order (such as materials designated by Tesseron or a third party pursuant to the Protective Order in the Tesseron Suit), we will so inform Defendants. At that time, Defendants may certainly move the Court for access to materials under that Protective Order.

Defendants have indicated that they may wish to move the Court now on the issue of the Tesseron Protective Order. We will check with our client to see whether R.R. Donnelley is willing to stipulate to such a motion. In the meantime, please let us know whether Defendants intend to put Tesseron and any applicable third parties on notice of any of those entities' information Defendants are seeking from R.R. Donnelley and of the fact that Defendants may move the Court in the District of Delaware on this issue. As we stated during our August 15, 2007 conversation, Paragraph 20 of the Tesseron Protective Order states the party whose documents have been requested must be put on notice of the specifically requested information so that the party has an opportunity to be appear and be heard on whether such information should be disclosed.

*Request Nos. 63 and 64*

Also as stated in our August 15, 2007 conversation and my July 6 and 10, 2007 letters to you, R.R. Donnelley agreed to undertake a reasonable search of documents within its possession, custody, or control to look for documents related to R.R. Donnelley's earliest knowledge of any accused software product or of the operation of any accused software product. As part of its reasonable search, R.R. Donnelley agreed to identify relevant R.R. Donnelley individuals with knowledge relevant to the claims, counterclaims, and defenses of the parties or the subject matter of the action (*i.e.*, those R.R. Donnelley employees likely to have knowledge of the Patents in Suit and/or Defendants' infringing activities).



Nathaniel Grow
August 17, 2007
Page 4


R.R. Donnelley identified relevant individuals in part based on Defendants'
representation that Request Nos. 63 and 64 relate to Defendants' laches defense. According to
our laches research, for a laches defense to be viable, there must be knowledge of infringement.
*See* 6-19 Chisum on Patents § 19.05. Furthermore, any alleged delay is measured after the
date(s) when the Patents in Suit issued. *Id.*

You have indicated that Defendants believe persons who purchase software for
R.R. Donnelley and/or persons who market competitive activities in the marketplace should also
be included in R.R. Donnelley's search. We asked you to tell us how such persons, if they have
not had knowledge of the Patents in Suit and/or of Defendants' infringing activities, could
possibly have information relevant to Defendants' laches defense. We note that we have not yet
received any such authority, and that you declined on August 15, 2007 to provide R.R.
Donnelley with any such authority.

Should Defendants wish to provide us with additional relevance theories or
authority suggesting that R.R. Donnelley's search to date has not been reasonable, we would be
happy to consider such information.

\* \* \*

Please feel free to contact me should you wish to further discuss the issues
addressed in this letter.

Sincerely,

Jamie L. Secord / BFF

Jamie L. Secord

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| TESSERON, LTD.,<br><br>           Plaintiff,<br><br>     vs.<br><br>R.R. DONNELLEY & SONS COMPANY<br><br>       Defendant. | ) <br> ) <br> )   CASE NO. 1:06-CV-02909 <br> ) <br> )   JUDGE CHRISTOPHER A. BOYKO <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## STIPULATED PROTECTIVE ORDER

Whereas pretrial discovery in this action shall necessarily involve the disclosure of trade secrets or confidential research, development, commercial or other information of all parties and of non-parties from whom discovery may be sought;

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, subject to the approval of the Court, the following Protective Order shall govern the exchange of confidential and highly confidential information in this case:

**1. Scope of Protection.**

1.1.   This Protective Order shall govern any record of information, designated pursuant to ¶ 3 of this Protective Order, produced in this action, including all designated deposition testimony and exhibits, all designated testimony taken at and designated exhibits from a hearing or other proceeding, all designated interrogatory answers, documents, electronically stored information and other discovery materials, whether produced informally or in response to interrogatories, requests for admissions, requests for production of documents or other formal

method of discovery, and all copies, extracts. summaries. compilations. designations. and portions thereof.

1.2.   This Protective Order shall also govern any designated record of information produced in this action pursuant to required disclosures under any federal procedural rule or United States District Court for the Northern District of Ohio local rule, and any supplementary disclosures thereto.

1.3.   This Protective Order shall apply to production by the parties and by any non-party from whom discovery may be sought and who desires the protection of this Protective Order.

**2. Definitions.**

2.1.   "CONFIDENTIAL" information. as used herein. means any type or classification of information, so designated, that is nonpublic. proprietary. commercially sensitive, that falls within the term "trade secret," or that is not generally known and that the producing party would not normally reveal to third parties or would cause or require third parties to maintain in confidence.

2.2.   "HIGHLY CONFIDENTIAL" information. as used herein, means, if so designated: (a) any type or classification of information that constitutes or contains computer source code, that relates to computer source code and/or that could reasonably lead to the identification of computer source code; (b) technical information concerning current, unreleased and/or future products; or (c) information that has been maintained by the producing party as confidential and discloses, or is sufficient to discern. the producing party's sales volume. sales units, prices. price structures, discounts, costs, profits, margins, marketing strategies, competitive business plans, and/or the identity of customers and vendors.

2

**3. Designation.**

3.1.    Each party may designate as CONFIDENTIAL any information furnished to the other party during discovery that falls within the definition set forth in ¶ 2.1 of this Protective Order. Further, each party may designate as HIGHLY CONFIDENTIAL any information furnished to the other party during discovery that falls within the definition set forth in ¶ 2.2 of this Protective Order.

3.2.    A designation of any information as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall only be used if the designating party has a reasonable, good-faith belief that such information contains CONFIDENTIAL information or HIGHLY CONFIDENTIAL information as defined herein.

3.3.    Any party may designate any item as CONFIDENTIAL or HIGHLY CONFIDENTIAL by placing or affixing to such item, in a manner that will not interfere with the legibility thereof, a notice identifying the item as CONFIDENTIAL or HIGHLY CONFIDENTIAL.

3.4.    To the extent that any party has, prior to the date that this Order is entered, produced to the other side materials that the producing party has marked with <u>any</u> confidentiality designation, all such materials shall be considered to have been designated under this Order as HIGHLY CONFIDENTIAL until the date that the Protective Order is entered by the Court and then either CONFIDENTIAL or HIGHLY CONFIDENTIAL depending on the designation of the producing party, unless otherwise agreed by the Parties.

3.5.    In the event that the producing party elects to make documents or electronically stored information available for inspection, the producing party need not mark the documents or electronically stored information in advance of the inspection, and all such documents,

3

electronically stored information or other materials shall be treated as HIGHLY

CONFIDENTIAL information until designated otherwise at the time that copies are provided to

the receiving party. Prior to producing the documents or electronically stored information to the

receiving party, the producing party shall mark copies of the selected documents or electronically

stored information with the appropriate designation. Any initial inspection of documents or

electronically stored information provided by a producing party shall not constitute a waiver of

privilege or confidentiality of any document or electronically stored information so inspected.

3.6.    If inspection, measurement, testing, sampling, or photography of a party's or third

party's processes, apparatuses, products, equipment, premises, or other property pursuant to Rule

34, Fed. R. Civ. P., will reveal or disclose information that is CONFIDENTIAL information

and/or HIGHLY CONFIDENTIAL information, the producing party shall advise the party or

parties seeking the discovery in advance that the inspection, measurement, testing, sampling, or

photography will be permitted only on a confidential basis and that the material discovered and

any information derived from that material shall be treated as CONFIDENTIAL information or

HIGHLY CONFIDENTIAL information. It shall be the responsibility of the party conducting

the inspection, measurement, testing, sampling, or photography to affix the confidentiality

legend to any resultant document or electronically stored information that contains

CONFIDENTIAL information or HIGHLY CONFIDENTIAL information, including, but not

limited to, photographs, test results, samples, and notes.

## 4.  Limit On Use And Disclosure Of CONFIDENTIAL Information And Of HIGHLY CONFIDENTIAL Information.

4.1.    Each party and all persons bound by the terms of this Protective Order shall only use

any information, electronically stored information or document designated CONFIDENTIAL or

HIGHLY CONFIDENTIAL in connection with the prosecution or defense of this action and any

4

appellate proceeding related thereto, except by consent of the parties or by order of the Court. No party or other person shall disclose or release any information, electronically stored information or document governed by this Protective Order to any person not authorized pursuant to this Protective Order to receive such information, electronically stored information or document. No party or other person shall use any information governed by this Protective Order other than for purposes of this litigation or any appellate proceeding thereto.

4.2.    It is, however, understood that counsel for a party may give advice and opinions to his or her client based on his or her evaluation of designated CONFIDENTIAL information or HIGHLY CONFIDENTIAL information received by the party, provided that such rendering of advice and opinions shall not reveal the content of such information, except as permitted by this Protective Order or by prior written agreement with counsel for the producing party.

4.3.    The attorneys of record for the parties and other persons receiving information governed by this Protective Order shall exercise reasonable care to ensure that the information, electronically stored information and documents governed by this Protective Order are (a) used only for the purposes specified herein, and (b) disclosed only to authorized persons.

**5. Disclosure of Information Designated CONFIDENTIAL.**

Except as otherwise provided herein, documents, electronically stored information or other information designated CONFIDENTIAL shall be disclosed by the recipient thereof only to:

(a)    outside counsel for the parties, including other lawyers in their firms, and their authorized support personnel (such as outside contract attorneys, paralegals, and secretarial, clerical and administrative staff) as necessarily incident to the litigation of this action;

(b)    the Court and Court personnel, as provided in ¶ 13;

5

        (c)      outside consultants or outside experts and their staffs retained by the parties or their attorneys for purposes of assisting counsel in this action, who first agree to be bound by the terms of this Protective Order, but only in accordance with the provisions of ¶ 7 of this Protective Order (and excluding any current or past independent contractor of any party or personnel employed by a party);

        (d)      in accordance with the provisions of ¶ 7 of this Protective Order, Forrest Gauthier, on behalf of Tesseron, LTD., and Paul Rodriguez and Robert Nieland, in-house counsel for R.R. Donnelley & Sons Co., so long as each provides a signed Confidentiality Undertaking (in the form set forth in Exhibit A hereto);

        (e)      court reporters, videographers, interpreters, translators, and their respective staffs employed in connection with this action; and

        (f)      non-parties specifically retained to assist counsel of record with copying and computer services necessary for document handling, and other litigation support personnel (e.g., graphic designers and animators, and database entry personnel).

**6.  Disclosure of Information Designated HIGHLY CONFIDENTIAL.**

Except as otherwise provided herein, documents, electronically stored information or other information designated HIGHLY CONFIDENTIAL shall be disclosed by the recipient thereof only to:

        (a)      outside counsel for the parties, including other lawyers in their firms, and their authorized support personnel (such as outside contract attorneys, paralegals, secretarial, clerical and administrative staff) as necessarily incident to the litigation of this action;

        (b)      the Court and Court personnel, as provided in ¶ 13;

        (c)      outside consultants or outside experts and their staffs retained by the parties or their attorneys for purposes of assisting counsel in this action, who first agree to be bound by the

6

terms of this Protective Order, but only in accordance with the provisions of ¶ 7 of this Protective

Order (and excluding any current or past independent contractor of any party or personnel

regularly employed by a party);

     (d)    in accordance with the provisions of ¶ 7 of this Protective Order, one designated

in-house counsel for R.R. Donnelley & Sons Co., Mr. Robert Nieland, who R.R. Donnelley &

Sons Co. represents has no role in making competitive business decisions that would be

informed by the type and scope of information that may be produced by Tesseron under the

HIGHLY CONFIDENTIAL designation in this action.  Mr. Nieland shall take reasonably

necessary steps to ensure that all information and documents designated by Tesseron as

HIGHLY CONFIDENTIAL are not seen or reviewed by any unauthorized representative of R.R.

Donnelley & Sons Co.;

     (e)    court reporters, videographers, interpreters, translators, and their respective staffs

employed in connection with this action; and

     (f)    non-parties specifically retained to assist counsel of record with copying and

computer services necessary for document handling, and other litigation support personnel (e.g.,

graphic designers and animators, and database entry personnel).

7.  **Identification of Recipients of Disclosure.**

    7.1.  If any party desires to disclose information designated CONFIDENTIAL or HIGHLY

CONFIDENTIAL to any outside expert or outside consultant pursuant to ¶¶ 5(c) and 6(c) above,

it must first provide written notice to the attorneys for the producing party identifying each such

expert or consultant.  Written notice identifying a proposed expert or consultant shall include the

full name and professional address and/or affiliation of the proposed expert or consultant, an up-

to-date curriculum vitae or resume, and any prior or current employments or consultancies for

any company in the printing industry, a list of the cases in which the expert or consultant has

provided an expert report or testified at deposition. at a hearing, or at trial within the last four (4)

years, and a written Confidentiality Undertaking (in the form set forth in Exhibit A hereto)

signed by the proposed expert or consultant acknowledging and agreeing to be bound by the

terms of this Protective Order.

    7.2.    If any party desires to disclose information designated CONFIDENTIAL or HIGHLY

CONFIDENTIAL to any designated in-house counsel pursuant to ¶¶ 5(d) or 6(d) above, to

substitute a designated in-house counsel for Forrest Gauthier under ¶ 5(d) above, or to substitute

one designated in-house counsel for another, it must first provide written notice to the producing

party identifying each such designated in-house counsel, including the full name and title of each

such designated in-house counsel and a written representation that the in-house counsel meets

the criteria in ¶ 6(d). The parties shall thereafter follow the procedure in ¶ 7.3.

    7.3.    Attorneys for the producing party shall have ten (10) business days from receipt of

notice under ¶ 7.1 or ¶ 7.2 above to object to the disclosure of CONFIDENTIAL information

and/or HIGHLY CONFIDENTIAL information to any of the experts, consultants. or in house

counsel so identified. Any objection to such disclosure must be made in writing, stating

specifically the reasons why the objecting party believes such person should not receive

CONFIDENTIAL information or HIGHLY CONFIDENTIAL information. Any party that fails

to object within ten (10) business days of receiving such notice shall be deemed to have waived

such objection and the parties shall be deemed to have agreed upon disclosure. No

CONFIDENTIAL information or HIGHLY CONFIDENTIAL information may be disclosed to

any proposed expert, consultant, or in house counsel until such time as the parties have agreed

upon disclosure, or in the absence of such agreement, until the Court rules on a timely motion made pursuant to ¶ 7.4 of this Protective Order.

7.4.    The parties shall attempt to resolve any objections under ¶ 7.3 informally within five (5) business days. If the objections cannot be resolved, the party opposing disclosure of the CONFIDENTIAL information and/or HIGHLY CONFIDENTIAL information to the proposed expert, consultant, or in house counsel may move the Court for an Order prohibiting the disclosure or permitting the disclosure only under certain conditions, and shall bear the burden of proof with respect to the propriety of its objection and good cause for prevention of the disclosure. Any such motion must be made within twenty (20) business days of receipt of notice under ¶ 7.1 or ¶ 7.2. If such a motion is made, there shall be no disclosure to the proposed expert, consultant, or in house counsel until the Court has ruled upon the motion, and then only in accordance with the ruling so made. The filing and pendency of such a motion shall not limit, delay or defer any disclosures of CONFIDENTIAL information or HIGHLY CONFIDENTIAL information to persons as to whom no such objection has been made.

7.5.    If a party identifies a person as an expert or consultant pursuant to this Protective Order, no other party shall contact the expert or consultant nor subject the expert or consultant to discovery to inquire into matters arising within the scope of the expert's or consultant's consultation with the identifying party, except as provided under the Federal Rules of Civil Procedure and any applicable local rules.

**8.  Computer Source Code.**

8.1.    Nothing in this Protective Order shall obligate the parties to produce any source code, nor act as an admission that any particular source code is discoverable.

9

8.2.   In addition to the restrictions that apply to material designated HIGHLY
CONFIDENTIAL , the following shall also apply to any source code that is produced by the
parties:

(a) Any computer source code produced by a party may not be electronically
copied or stored by the opposing party or any person acting on its behalf, except as expressly
permitted herein;

(b) Outside counsel, consultants or experts for the receiving party shall access
such material only at the offices of outside counsel for the providing party (upon agreement of
the parties, which shall not be unreasonably withheld, such material shall be made available at
offices of outside counsel if so requested), or such other neutral and secure location as the parties
agree, and such agreement shall not be unreasonably withheld, or as the Court directs, and in a
manner that prevents duplication or unauthorized access, except only as specifically allowed
under ¶ 8.2 of this Protective Order;

(c) Source code shall be accessed only on a secure, non-networked computer that
is sufficiently state-of-the-art (in terms of processor speed, memory, etc.) to support  a review of
the source code, and equipped with a viewing program compatible with the file format in which
the source code is stored;

(d) No electronic copies, other than volatile copies necessarily made in the course
of accessing the source code on the secure non-networked computer, shall be made without the
express consent, in writing, of the providing party . In particular, no electronic copies shall be
made to such computer's hard drive or on any removable storage medium;

(e) Paper copies of source code shall be printed only if an outside counsel,
consultant or expert believes in good faith that the paper copies are reasonably necessary to their

analysis or investigation being performed in connection with this case, to assist in the preparation

of expert reports, to provide evidentiary support for expert reports or to use in court filings, and

any court filings must comply with ¶ 13 below. Each page of any such printed code shall be

marked "SOURCE CODE – HIGHLY CONFIDENTIAL" or similar legend, and maintained in

accordance with this Protective Order. If a receiving party requires such copies of SOURCE

CODE – HIGHLY CONFIDENTIAL information, access to such copies shall be restricted

consistent with the restrictions on material designated SOURCE CODE – HIGHLY

CONFIDENTIAL in this section:

   (f) All electronic media containing source code, printed copies, or any related

notes shall be kept in a secure location under lock and key;

   (g) Any notes concerning such source code shall not be used to circumvent the

restrictions in the above paragraphs against making copies of the source code. Persons viewing

the notes shall do so in a manner consistent with the restrictions on material designated

SOURCE CODE – HIGHLY CONFIDENTIAL identified in this section. Such notes shall be

prominently marked with the legend "SOURCE CODE – HIGHLY CONFIDENTIAL ;"

   (h) The receiving party shall maintain a log of all individuals who have accessed

the code and make the log available for inspection at the request of the producing party. The log

shall include the name of the person who accessed the material, a general description of the code

that was accessed, and the date that the access was made; and

   (i) Nothing in this Protective Order shall be construed to limit how a producing

party may maintain its own source code or material designated SOURCE CODE – HIGHLY

CONFIDENTIAL.

**9. Related Documents.**

The restrictions contained herein on the use of information designated CONFIDENTIAL or HIGHLY CONFIDENTIAL shall apply to (a) portions of documents, electronically stored information, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, electronically stored information, copies, extracts, or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, electronically stored information, copies, extracts, or summaries: (d) deposition testimony designated in accordance with ¶ 10; and/or (e) testimony taken at a hearing or other proceeding that is designated in accordance with ¶ 11.

**10. Designation Of Deposition Transcripts.**

10.1.  Portions of deposition transcripts containing CONFIDENTIAL information and/or HIGHLY CONFIDENTIAL information may be designated as such either on the record during the deposition or by providing, within 30 days following receipt of the official transcripts of the deposition to the reporter and all counsel of record, written notice of the specific pages and lines that contain CONFIDENTIAL information and/or HIGHLY CONFIDENTIAL information.

10.2.  All deposition transcripts not previously designated shall be deemed to be and treated as HIGHLY CONFIDENTIAL for a period of 30 days after receipt of the official transcript of the deposition, and the transcript shall not be disclosed during such time by a non-designating party to persons other than those persons named or approved according to ¶ 6.

10.3.  The designating party shall have the right, before the taking of testimony which the designating party designates as CONFIDENTIAL or HIGHLY CONFIDENTIAL and is subject

to this Protective Order, to exclude from portions of a deposition all persons other than those persons previously qualified to receive such information pursuant to ¶¶ 5 or 6.

**11. Designation Of Hearing Testimony Or Argument.**

Nothing in this Protective Order shall prevent a party from using any CONFIDENTIAL information or HIGHLY CONFIDENTIAL information at a hearing or trial. With respect to testimony elicited during hearings and other proceedings, whenever counsel for any party deems that any question or line of questioning calls for the disclosure of information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL, counsel may designate on the record prior to such disclosure that the disclosure is subject to confidentiality restrictions. Whenever CONFIDENTIAL information and/or HIGHLY CONFIDENTIAL information is to be discussed in a hearing or other proceeding, any party claiming such confidentiality may ask the Court to have excluded from the hearing or other proceeding any person who is not entitled under this Order to receive information so designated.

**12. Disclosure To Author Or Recipient.**

Notwithstanding any other provisions of this Order, during examination at trial, a hearing, or a deposition, any witness may be shown documents, electronically stored information, or other information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL that appears on the face of the document, electronically stored information or other information, or that appears from other information or testimony, to have been drafted, prepared, executed, authored, or received by the witness, or communicated to that witness. Notwithstanding any other provisions of this Order, during examination at trial, a hearing, or a deposition, any employee or representative of a party may be shown documents, electronically stored information, or other information designated as CONFIDENTIAL or HIGHLY

13

CONFIDENTIAL, which were originally created. generated or authored or produced in this

litigation by that party. Any person who is reasonably likely to have had prior legal access to the

document, electronically stored information or the information contained therein may be shown

the document. electronically stored information or other information, provided that the witness

first confirms his or her understanding and agreement to abide by the terms of this Protective

Order by completing and signing a copy of a written Confidentiality Undertaking (in the form set

forth in Exhibit A hereto).

**13. Designation Of Documents Under Seal.**

Any party desiring to use any CONFIDENTIAL information and/or HIGHLY

CONFIDENTIAL information in a filing in this action shall file under seal with the Clerk of the

Court the filing containing the CONFIDENTIAL information and/or HIGHLY

CONFIDENTIAL information pursuant to Local Civil Rule 5.2 of the Local Civil Rules for the

United States District Court for the Northern District of Ohio.

**14. Confidentiality Of A Party's Own Information.**

Nothing herein shall affect the right of the designating party to disclose to its officers,

directors, employees. attorneys, consultants or experts. or to any other person. its own

information. A party is free to do whatever it desires with its own information. Such disclosure

shall not waive the protections of this Protective Order and shall not entitle other parties or their

attorneys to disclose such information in violation of it. unless by such disclosure of the

designating party the information becomes public knowledge. Similarly, the Protective Order

shall not preclude a party from showing its own information to its officers, directors. employees,

attorneys, consultants or experts. or to any other person. even if this information has been filed

under seal by the opposing party.

14

**15. Challenges To Confidentiality.**

This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents, electronically stored information or other discovery materials as that party may consider appropriate. Nor shall any party be precluded from: (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order or should be entitled to a different level of protection than which it was designated; (b) applying to the Court for an Order permitting the disclosure or use of information, electronically stored information or documents otherwise prohibited by this Protective Order; or (c) applying for a further Order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

**16. No Waiver**

16.1.   Neither the taking, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation or to any such action or omission, shall constitute a waiver of a right to seek and obtain protection and/or relief, other than as specified herein, of any claim or defense in this action or any other action including, but not limited to, the claim or defense that any information is or is not proprietary to any party, is or is not entitled to particular protection, or that such information embodies trade secrets of any party. The procedures set forth herein shall not affect the rights of the parties to object to discovery on grounds other than those related to trade secrets or proprietary information claims, nor shall it relieve any party of the necessity of proper response to discovery devices.

15

16.2.  Nothing in this Protective Order shall be deemed a waiver of the attorney-client, work product or other privilege or immunity, or of the right of any party to this action to oppose production of any information, electronically stored information or documents as being outside the scope of discovery authorized by the Federal Rules of Civil Procedure or otherwise.

16.3.  Inadvertent production of a privileged, confidential or highly confidential document or electronically stored information or a document or electronically stored information immune from discovery as work product within the meaning of Rule 26, Fed. R. Civ. P. does not constitute a waiver of such privileged, confidential, highly confidential, or immune status.  No party shall be held to have waived any rights by such inadvertent production.  If a party inadvertently produces documents, electronically stored information or other information that it considers privileged or otherwise protected from disclosure, in whole or in part, or learns of the production of documents, electronically stored information or other information containing that it believes to be privileged or otherwise protected from disclosure, the party may retrieve such documents, electronically stored information or other information as follows:

(a)  The party shall give written notice to all other parties of the claimed privilege or other protection from disclosure, as well as the factual basis for asserting it.

(b)  Any party who has received the document, electronically stored information or other information at issue shall promptly return all copies to the producing party upon receiving such written notice.  In the event that only part of a document or electronically stored information is claimed to be privileged or otherwise protected from disclosure, the party giving notice shall also furnish to the other parties who have received the document or electronically stored information a redacted copy of such document, removing only the part(s) thereof claimed to be privileged or protected.

16

      (c)     The provisions of subparagraphs (a) and (b) above are without prejudice to any other rights any party may have with respect to challenging or defending any claim of privilege or protection from disclosure.

**17. Prohibition On Prosecution Related Activities.**

      No individual who obtains access subject to this Protective Order to Defendant's HIGHLY CONFIDENTIAL information shall give advice, participate, supervise or assist in the prosecution of any patents claiming variable printing subject matter for Tesseron, Ltd. or Forrest Gauthier, or any assignee or successor of interest or related entity thereof, either directly or indirectly, for a period of five (5) years from the conclusion of this litigation. No individual who obtains access subject to this Protective Order to Plaintiff's HIGHLY CONFIDENTIAL information shall give advice, participate, supervise or assist in the prosecution of any patents claiming variable printing subject matter for R.R. Donnelley, or any assignee or successor of interest or related entity thereof, either directly or indirectly, for a period of five (5) years from the conclusion of this litigation.

**18. Prior or Public Knowledge.**

      This Protective Order shall not apply to information that is or was available to the public prior to disclosure. The restrictions contained in this Protective Order shall not apply to information (a) that is or was available to the public other than by an act or omission of the party to whom such disclosure is made, (b) that is legitimately and independently acquired from a source not subject to this Protective Order, or (c) that has been independently developed by or for the party without the use of, or reference to, the other party's CONFIDENTIAL information or HIGHLY CONFIDENTIAL information.

17

**19. Limitation Of Protective Order.**

This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege or work product immunity, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure. Furthermore, nothing in this Protective Order shall obligate any party or non-party to produce any CONFIDENTIAL information or HIGHLY CONFIDENTIAL information governed by this Protective Order to any other party that it is not otherwise required to produce under the Federal Rules of Civil Procedure or any other applicable local rule.

**20. Other Proceedings.**

By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a subpoena, motion or court order in another case to disclose information that is designated by another party in this case as CONFIDENTIAL or HIGHLY CONFIDENTIAL in this case shall promptly notify that other party of the subpoena, motion or court order so that it may have an opportunity to appear and be heard on whether such information should be disclosed prior to disclosure.

**21. Non-Party Material.**

The terms of this Protective Order, as well as the terms of any protective order that may be entered into between a discovering party and a third party for the production of information to the discovering party, are applicable to CONFIDENTIAL information and/or HIGHLY CONFIDENTIAL information provided by a non-party. Information provided by a non-party in

connection with this action and designated CONFIDENTIAL and/or HIGHLY

CONFIDENTIAL pursuant to the terms of this Protective Order shall be protected by the

remedies and relief provided by this Protective Order.

**22. Return Of CONFIDENTIAL Information or HIGHLY CONFIDENTIAL Information.**

Within sixty (60) days following final termination of this action, including all appeals,

unless otherwise agreed to in writing by an attorney of record for the designating party, each

party shall assemble and return, or destroy and certify destruction of, all materials containing

information designated as CONFIDENTIAL and/or HIGHLY CONFIDENTIAL, including all

copies, extracts and summaries thereof, to the party from whom the designated material was

obtained, except (a) any documents, electronically stored information or copies which contain,

constitute or reflect attorney work product or attorney-client privilege communications, and (b)

archive copies of pleadings, motion papers, deposition transcripts, correspondence, expert reports

and written discovery responses, which may be retained by counsel subject to a continuing

obligation to protect all such material pursuant to this order. If any party has disclosed

information designated CONFIDENTIAL or HIGHLY CONFIDENTIAL to any expert,

consultant or designated in-house counsel pursuant to ¶¶ 5 or 6 above, it shall collect and return,

or destroy and certify destruction of, all such materials at the same time.

**23. Waiver Or Termination Of Order.**

No part of the restrictions imposed by this Protective Order may be waived or terminated,

except by written stipulation executed by counsel of record for each designating party, or by an

Order of the Court for good cause shown. The restrictions provided for herein shall not

terminate upon the conclusion of this action, but shall continue until further Order of this Court.

19

**24. Modification Of Order; Prior Agreements.**

This Protective Order may be modified. and any matter related to it may be resolved, by written stipulation of the parties without further Order of the Court. This Protective Order supersedes any agreements between the parties regarding the confidentiality of particular information entered into before the date of this Protective Order.

**25. Section Captions.**

The title captions of each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the Order.

**26. Disclosure to Unauthorized Person; Violations.**

If CONFIDENTIAL information or HIGHLY CONFIDENTIAL information is disclosed to any person other than those entitled to disclosure in the manner authorized by this Protective Order. the party responsible for the disclosure shall immediately upon learning of such disclosure inform the designating party in writing of all pertinent facts relating to such disclosure and shall make every effort to prevent further disclosure to the unauthorized person(s). Notwithstanding the foregoing, counsel of record are responsible for employing reasonable measures to control. consistent with this Protective Order. duplication of. access to, and distribution of CONFIDENTIAL information and HIGHLY CONFIDENTIAL information.

Stipulated by the parties this 13th day of June, 2007:

/s/ Steven M. Auvil
Steven M. Auvil (0063827)
sauvil@bfca.com
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH 44114-2378
(216) 363-4500
(216) 363-4588 (Fax)

John G. Hutchinson
jhutchinson@sidley.com
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10919
Telephone: (212) 839-5398
Facsimile: (212) 839-5599

Douglas I. Lewis
dilewis@sidley.com
Jamie L. Secord
jsecord@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (Fax)

*Counsel for Defendant*
R.R. Donnelley & Sons Company

/s/ David H. Wallace (by permission)
David H. Wallace (0037210)
dwallace@taftlaw.com
Stephen M. O'Bryan (0009512)
sobryan@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, OH 45202-3957
(216) 241-2838
(216) 241-3707 (Facsimile)

L. Clifford Craig (0024859)
ccraig@taftlaw.com
Kevin W. Kirsch (*Pro Hac Vice*)
kkirsch@taftlaw.com
TAFT, STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
(513) 381-0205 (Facsimile)

*Counsel for Plaintiff Tesseron, Ltd.*

It is so ORDERED, by the undersigned, this 14th day of JUNE, 2007.

Christopher A. Boyko
JUDGE CHRISTOPHER A. BOYKO

# EXHIBIT C



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| ONE SOUTH DEARBORN | BRUSSELS | NEW YORK |
| CHICAGO, IL 60603 | CHICAGO | SAN FRANCISCO |
| (312) 853 7000 | DALLAS | SHANGHAI |
| (312) 853 7036 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |

bfrey@sidley.com
(312) 853-7294

FOUNDED 1866

September 6, 2007

**Via Facsimile and U.S. Mail**

Kevin W. Kirsch
Taft, Stettinus & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Facsimile (513) 381-0205

Re:    *Tesseron, Ltd. v. R.R. Donnelley & Sons Company*, No. 1:06-CV-02909 (N.D. Ohio)

Dear Kevin:

Attached is a Motion to Compel we received from the Defendants in *R.R. Donnelley & Sons Company v. Creo, Inc. et al.*, No. 06-032-JJF (D. Del.). Defendants in that case seek R.R. Donnelley to produce, among other things, documents produced by Tesseron in the present litigation which may have been designated CONFIDENTIAL or HIGHLY CONFIDENTIAL by Tesseron. R.R. Donnelley informs Tesseron of this fact to satisfy its obligations under Section 20 of the Protective Order in the present case.

This Motion will be heard by Judge Farnan in the United States District Court for the District of Delaware on September 21, 2007 at 10:00 a.m.

Sincerely,

Benedict F. Frey

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CH1 3875048v.1