IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

     Plaintiff,

     v.

CREO, INC., NEXPRESS SOLUTIONS,
INC., KODAK VERSAMARK, INC.,
EASTMAN KODAK COMPANY, and
KODAK GRAPHIC COMMUNICATIONS
COMPANY,

     Defendants.

C.A. No. 06-32-JJF

**REDACTED - PUBLIC VERSION**

EASTMAN KODAK COMPANY,

     Counterclaim-Plaintiff,

     v.

R.R. DONNELLEY & SONS COMPANY,

     Counterclaim-Defendant.

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANTS' ANSWER TO PLAINTIFF'S INTERROGATORY NUMBER 21

Plaintiff R.R. Donnelley & Sons Co.'s ("RRD") motion should be denied because

Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak

Company, and Kodak Graphics Communications Company ("Defendants") have answered the

interrogatory in question and objected to two hopelessly broad terms. In fact, Defendants have

responded to Interrogatory 21 in the broadest way possible, while still preserving their objections

to overly-broad and ambiguous, undefined terms. (Attached hereto as Exhibit A.)

In particular, Defendants lodged objections to two undefined terms – "marketed" and "promoted" – as overly-broad and ambiguous. Some of Defendants' Hardware Products are compatible (to varying degrees) with Third Party Software Products (as both terms are defined by RRD). As noted in Defendants' response, Defendants contend that such compatibility – in and of itself – does not constitute "market[ing]" or "promot[ion]." But – recognizing that RRD might not share the same view of these undefined terms – Defendants went out of their way to identify the compatible Third Party Software in the answer, while still preserving their objections. *See* Ex. A. Defendants provided RRD with a complete list of all variable data printing ("VDP") software products produced by third parties which are compatible with Defendants' hardware products. *See id.* at 4-5. Included in their response, Defendants also identified those Third Party Software Products that Defendants have sold or offered to sell.[1] Defendants thus gave RRD all the information it sought in its Interrogatory. Accordingly, this motion is unnecessary and should be denied.[2]

---

[1]    RRD wrongly states that Defendants did not answer Interrogatory No. 21 with respect to "offered" or "sold" – both of which Defendants did not object as being vague or ambiguous. Defendants' answer includes those Third Party Software Products that have been offered and sold.

[2]    Perhaps a motivation behind RRD's motion is to mask its own delay in advancing its Third Party Software Product theory of the case. Over 20 months into this litigation, RRD persists in asserting an unsupportable and undeveloped theory of indirect patent infringement involving software products developed by non-parties to this suit.

RRD has already accused nine of Defendants' own products of direct or indirect infringement. RRD has specifically accused the following software products: Darwin, Composer, DL-100, DL-1000 and FusionPro. RRD has also specifically accused the following hardware products: Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing Systems, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press. With respect to RRD's Third Party Software Product indirect infringement theory, RRD has never identified any "Third Party Software Products." More than a year and a half into the case, with essentially less than a month of fact discovery remaining, RRD has not accused -- in formal discovery or otherwise – a single specific "Third Party Software Product" of infringement. Indeed, RRD's most-recent contention

(continued...)

RRD's only attempt to advance its theory of indirect liability has been limited to this single Interrogatory – served 15 months after RRD filed suit – ambiguously seeking the identity of all "Third Party Software Products" that Defendants have "offered, sold, marketed, or promoted for use…." Realizing that time is running out to develop its theory before the close of fact discovery, RRD now asserts that Defendants have hindered RRD by failing to correctly answer RRD's broadly-worded Interrogatory. However, Defendants have given RRD all the information requested in the Interrogatory, by providing a list of all third-party software products which Defendants may have "offered, sold, marketed, or promoted for use." *See* Ex. A at 4-5. It is now up to RRD to use this belatedly-sought information for whatever undefined theory of the case it may wish to pursue.

Defendants also note that they have already provided more information than required by the recent ruling in the *Tesseron* case – a VDP patent infringement case in which RRD stands accused of infringement. *Tesseron, Ltd. v. R. R. Donnelley & Sons Co.*, 2007 WL 2034286 (N.D. Ohio Jul. 10, 2007).

As noted previously in related issues, *see* D.I. 166 at 5-7, the *Tesseron* case involves the same technical field (variable data printing), and one of the same parties (RRD), who is represented by the very same counsel (Sidley Austin LLP) as in the present case. In an ironic twist, however, RRD stands accused of patent infringement in the *Tesseron* case, and has resisted Tesseron's attempts to inquire about third-party software products used by RRD internally.

---

(continued)

interrogatory response (attached hereto as Exhibit B) merely makes a passing reference that Defendants indirectly infringe " (REDACTED)
Ex. B at 4.

The *Tesseron* court summarized the issue presented as follows:

> Tesseron seeks discovery of the Donnelley's [sic] systems not now identified or accused of infringement. Tesseron bases its request on an assumption that Donnelley cannot generate its end product without using an infringing system. Donnelley opposes this discovery as irrelevant to the claims presented and overly burdensome. Should the Court order discovery of unidentified and unaccused systems without further specification of the systems in question and of the components, characteristics, or elements allegedly causing infringement?

2007 WL 2034286 at *1.

The discovery requests in *Tesseron* were as equally as broad as those that RRD has asserted here and are based on the similar definition "Variable Data Printing Systems:"

> Variable Data Printing System: Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

*Id.* at *2.

Like this case, Tesseron and RRD agreed that certain specifically identified accused products fell within the scope of discovery. But RRD – having had the tables turned from the role of patentee to one of accused infringer – predictably cried foul when Tesseron sought discovery on products that they could not specifically name or accuse. *See* Ex. C at 2 (arguing that "Tesseron's patent claims . . . are nowhere near as broad as its discovery requests" and characterizing the discovery requests as "imprecise and overreaching discovery that would require RRD to expend vast and unnecessary resources in time and money").

The *Tesseron* court – having completed a thorough analysis of the case law – formulated the following rule:

> Although under the standards of Civil Rule 26(b)(1) discovery of unidentified and unaccused systems is theoretically possible, certain threshold requirements must be satisfied to permit such discovery to go forward. Specifically, the party seeking such discovery must first identify with requisite specificity the type of

product or system at issue. Second, the party must also identify with specificity the component, characteristic, or element of the product or system that the claimants believes [sic] will render the product or system infringing.

Absent satisfaction of these threshold requirements, the discovery request will fail to be sufficiently relevant to a pending claim or defense and the burden and expense of producing the discovery may well outweigh its likely benefit.

*Tesseron*, 2007 WL 2034286, at *3-4. Applying this rule, the *Tesseron* court held that RRD need not respond to the discovery as framed. *Id.* at *5.

Here, as noted previously, RRD has not identified any Third Party Software Product, nor has RRD provided specificity as to how the Third Party Software Products infringe. D.I. 166 at 4 (noting failure to identify even a single Third Party Software Product by name or provide any claim charts for such products).

Thus, applying the Tesseron precedent that RRD advocated, RRD would not be entitled to a response to Interrogatory No. 21. However, Defendants have provided a thorough response to RRD's Interrogatory, and RRD's "dispute" in essence boils down to the fact that Defendants have not provided RRD with even more information about the Third Party Software. Defendants have simply answered the question that RRD posed and, accordingly, RRD's Motion was moot before it was filed and should be denied.

- 5 -

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500


Dated:  September 10, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., NexPress Solutions, Inc., Kodak*
*Versamark, Inc., Eastman Kodak Company*
*and    Kodak    Graphic    Communications*
*Company*

- 6 -

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants. | C. A. No. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant, | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSE TO R.R. DONNELLEY & SONS THIRD SET OF INTERROGATORIES**

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure and the Court's

January 4, 2007 Order, Creo, Inc., NexPress Solutions, Inc., Kodak VersaMark, Inc., Eastman

Kodak Company, and Kodak Graphic Communications Company ("Defendants") provide the

following response to the Third Set of Interrogatories to Defendants Creo, Inc., Eastman Kodak

Company, and Kodak Graphics Communications Company ("the Interrogatories") propounded

by R.R. Donnelley & Sons Company ("RRD"):

1

## I.     GENERAL RESPONSES

Defendants' responses to the Interrogatories are made to the best of Defendants' current employees' present knowledge, information, and belief. Said responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendants' recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.     Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2.     Defendants reserve the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.     GENERAL OBJECTIONS

Defendants make the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.     Defendants object generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine. Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2     Defendants object to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in

2

any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement, expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

3.    Defendants object to all instructions, definitions, and interrogatories to the extent they seek information not currently in Defendants' possession, custody, or control, or refer to persons, entities, or events not known to Defendants, on the grounds that such instructions, definitions, or interrogatories seek to require more of Defendants than any obligation imposed by law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Defendants an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

4.    Defendants object to all instructions, definitions, and interrogatories to the extent they rely on the term "Defendants' Hardware Products." As defined, the term "Defendants' Hardware Products" is vague and ambiguous, to the extent it includes "successor" hardware products. "Successor" hardware products are undefined in the interrogatories, and therefore vague and ambiguous. Accordingly, Defendants will only answer the interrogatories with regards to the hardware products specifically identified in the interrogatories.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 21

Identify all Third Party Software Products that Defendants have offered, sold, marketed, or promoted for use with Defendants' Hardware Products since 2001 and, for each Third Party Software Product identified, provide the name, owner, version, and year that Defendants offered, sold, marketed, or promoted the Third Party Software Product.

3

## RESPONSE TO INTERROGATORY NO. 21

Defendants object to this Interrogatory to the extent that it seeks information related to Third Party Software Products that are not relevant to the claims or defenses of any party or the subject matter of the action. In particular, RRD has yet to identify even a single specific Third Party Software Product in its pleadings, discovery, or correspondence. Defendants also object to the term "owner" as ambiguous with respect to Third Party Software Products. When providing ownership information concerning a Third Party Software Product, Defendants will supply information sufficient to describe a manufacturer and/or distributor, to the best of Defendants' knowledge and information. Defendants further object to the undefined terms "marketed" or "promoted" as overly broad and ambiguous. Defendants are aware that Third Party Software Products exist that are, to varying degrees, compatible with Defendants' products. By identifying such Software Products below, Defendants are not asserting that they sell, offer to sell, market, or promote each of these products, but are merely indicating that Defendants believe such products may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products. Subject to the foregoing general and specific objections, Defendants respond by identifying the following Third Party Software Products since 2001:

| Name and Version (to the extent the version number is known) | Manufacturer and/or Distributor | Year |
|---|---|---|
| AUTOGRAPH | Document Sciences Corporation | 2006 to 2007 |
| DesignMerge Pro | Meadows Publishing Solutions | 2007 to 2007 |
| Dialogue | Exstream Software | 2006 to 2007 |
| DIRECTSMILE Connectivity Suite | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Document | DirectSmile | 2006 to 2007 |
| DIRECTSMILE Generator | DirectSmile | 2006 to 2007 |
| DOC1 | Group1 Software Europe Ltd. | 2006 to 2007 |
| .EDIT | Pageflex | 2004 to 2007 |
| FUSE | L2 Solutions | 2006 to 2007 |
| IPM System | Techno Design BV | 2006 to 2007 |
| iWay Prime | Press-Sense | 2006 to 2007 |
| Media Manager | Factotum Media | 2007 to 2007 |

4

| Mpower | Pageflex | 2004 to 2007 |
|--------|----------|--------------|
| NEWLEAF | PrintSoft | 2006 to 2007 |
| Open Print | Sefas Innovation | 2006 to 2007 |
| OPUS | Elixir Technologies Corporation | 2006 to 2007 |
| Papyrus | ISIS | 2006 to 2007 |
| pdfExpress | Lexigraph Software | 2006 to 2007 |
| PERSONA | Pageflex | 2006 to 2007 |
| Personal Effect | XMPie | 2003 to 2007 |
| Personalizer-X, v3.1 | TechnoDesign BV | 2002 to 2007 |
| PlanetPress, v 4, v 5, v 6 | Objectif Lune | 2005 to 2007 |
| PReS | PrintSoft | 2006 to 2007 |
| PrintNet T | GMC Software Technology | 2003 to 2007 |
| PrintShop Mail, v 1 – v5 | Atlas Software | 2002 to 2007 |
| Proform Designer | Lytrod Software,Inc. | 2007 to 2007 |
| Remake | Sefas Innovation | 2006 to 2007 |
| STOREFRONT | Pageflex | 2007 to 2007 |
| VIP | Emtex | 2006 to 2007 |
| VITESSE | Elixir Technologies Corporation | 2006 to 2007 |
| XPRESSION | Document Sciences Corporation | 2006 to 2007 |

Defendants reserve the right to supplement its response to this interrogatory at

appropriate times in this litigation.

As to objections only,

Frederick L. Cottrell, III (#2555)
  cottrell@rlf.com
Jameson A. L. Tweedie (#4927)
  tweedie@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,*
*NexPress Solutions, Inc., Kodak*
*VersaMark, Inc., Eastman Kodak*
*Company, and Kodak Graphic*
*Communications Company*

OF COUNSEL:
Richard McMillan, Jr.
  rmcmillan@crowell.com
Jeffrey D. Sanok
  jsanok@crowell.com
Brian M. Koide
  bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated:  June 21, 2007

5

RLF1-3168968-1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2007, I served the foregoing on counsel as follows:

**BY HAND DELIVERY AND ELECTRONIC MAIL**

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-4169
dilewis@sidley.com
jsecord@sidley.com

John G. Hutchinson
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY  10019
(212)839-5398
jhutchinson@sidley.com

Jameson A.L. Tweedie(#4927)
tweedie@rlf.com

# EXHIBIT

# B

**REDACTED**

# EXHIBIT
# C

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL  60603
(312) 853 7000
(312) 853 7030 FAX

dilowie@sidley.com
(312) 853-4109

BEIJING        GENEVA       SAN FRANCISCO
BRUSSELS       HONG KONG    SHANGHAI
CHICAGO        LONDON       SINGAPORE
DALLAS         LOS ANGELES  TOKYO
FRANKFURT      NEW YORK     WASHINGTON, DC

FOUNDED 1866

**SIDLEY**

June 4, 2007

Honorable William H. Baughman
United States District Court for the North District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1846

Re:     Tesseron, Ltd., v. R.R. Donnelley & Sons Company, 1:06-CV-2909 (N.D. Ohio)

Dear Judge Baughman:

R.R. Donnelley & Sons Co. ("RRD") submits this letter in response to Tesseron Ltd.'s counsel's May 30, 2007 letter to Judge Boyko ("Ltr."), ostensibly seeking a discovery conference but in reality moving to compel. Ex. A, Ltr. at 1.

### A. Introduction

Tesseron asks the Court to allow it unbridled discovery with no relationship to the issues in this case or its infringement allegations. Indeed, Tesseron seeks to have RRD root around a large, global company with multiple businesses and over 500 locations worldwide, expending vast amounts of time and money, to collect, process, and produce documents so that it can determine whether it has a patent infringement claim.

In a patent case, discovery is limited to products or systems accused of infringement, and the plaintiff cannot use discovery to determine if it has an infringement claim against particular products or systems. *Honeywell Intern. Inc. v. Audiovox Comm, Corp.,* 2005 WL 3988905 at *1, n. 2 (D. Del. 2005). A patentee must have a reasonable basis to bring an infringement claim, and only identified products or systems can logically meet that standard. *View Eng'g, Inc. v. Robotic Vision Sys.,* 208 F. 3d 981, 984 (Fed. Cir. 2000). Here, Tesseron has identified only two systems – an EFI Fiery Controller and a system disclosed in a 1995 RRD patent – but seeks much broader discovery.

To be clear, the parties' primary dispute does not relate to discovery about these identified systems. Rather, the parties dispute whether Tesseron can take discovery about other, unnamed and unaccused systems. Tesseron seeks broad discovery of "any and all documents" relating to any system (and its components) that can produce "variable and/or personalized content." Indeed, Tesseron even seeks "any and all documents" relating to any system "capable" of such functionality. Tesseron's definition is so broad that it includes, for example, the personal

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

SIDLEY AUSTIN LLP
# SIDLEY|

Judge William H. Baughman
June 4, 2007
Page 2

computer, printer and software that produced this letter (*i.e.*, a system and its components that can produce "variable and/or personalized content," such as the content in this letter).

Tesseron's patent claims, however, are nowhere near as broad as its discovery requests.[1] It is extremely unlikely that Tesseron will accuse every system falling within its requests (and every component thereof) of infringing – or even most of them. And, importantly, complying with Tesseron's imprecise and overreaching discovery would require RRD to expend vast and unnecessary resources in time and money.

RRD has met and conferred with Tesseron and explained why its discovery requests are grossly overbroad. Tesseron is uninterested, however, in focusing its discovery on its actual claims and the accused systems it has identified (*i.e.*, the EFI Fiery Controller and the system disclosed in a 1995 RRD patent). Instead, turning discovery into a quest for a claim, Tesseron's discovery requests seek voluminous documents having no relation to this case. RRD could not casually agree to produce such irrelevant documents at great expense to itself. RRD simply had no choice but to object to Tesseron's overbroad and unduly burdensome discovery requests.

The discovery dispute here is therefore two-fold: (1) whether Tesseron can force RRD to expend substantial resources searching for documents relating to unidentified and unaccused systems; and (2) if so, whether Tesseron has appropriately defined the scope of such a search. Because Tesseron can take discovery only with respect to the identified and accused products and because the discovery Tesseron seeks is hopelessly imprecise and overbroad, the Court should deny Tesseron's request that RRD be ordered to comply with Tesseron's discovery requests.

B. Background

Tesseron filed this suit last December claiming that RRD infringes four Tesseron patents. Although Tesseron describes the patents-in-suit as "pioneering" (Ltr. at 2), variable printing existed long before Tesseron filed its first patent application, especially as "variable printing" is described by the definition Tesseron uses in its discovery requests. Indeed, as the face of Tesseron's patents shows, the Patent Office cited numerous prior art references against the patents-in-suit. Ex. C-F, U.S. Patents No. 5,729,665; 5,937,153; 6,381,028; and 6,687,016 (the "patents-in-suit"). During prosecution of the patents-in-suit, Tesseron had to amend its claims repeatedly before the Patent Office would allow the patents-in-suit. *See e.g.*, Ex. G, Amendment A ('665 patent file history) (amending claims to include additional elements); Ex. H, Amendment B ('665 patent file history) (adding claim limitations). Moreover, in obtaining

---

[1] To show patent infringement, Tesseron must prove that an RRD system contains every single feature described in at least one of its patent claims. *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 n. 3 (Fed. Cir. 1989) (citing the all elements rule).

## SIDLEY
SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 3

the patents-in-suit, Tesseron argued to the Patent Office that its patents had limited scope in many areas. *See e.g.*, Ex. G, Amendment A at 9-18 (arguing for narrower scope of page description code and variable data bit map; among others); Ex. H, Amendment B at 7-12 (arguing that the graphics state must be reserved and must be applied to variable data). And although RRD is still seeking details, Tesseron's predecessor sued Scitex under at least one of the patents-in-suit and lost, indicating that the patents-in-suit are far more limited that Tesseron now asserts. Ex. I, *Varis Corp. v. SCITEX Digital Inc.*, No. 3:99-cv-00336 (S.D. Ohio), Order of Feb. 13, 2002 (entering finding of non-infringement and dismissing plaintiff's claims).

In its Complaint, Tesseron did not identify any RRD systems or activities that supposedly infringe the patents-in-suit, thereby taking generous advantage of notice pleading. When on February 20, 2007, Tesseron served its initial disclosures, it again failed to identify any accused RRD systems or activities.

Tesseron served discovery requests on April 5, 2007 and once again failed to identify any accused RRD systems or activities. Instead of identifying particular accused systems and seeking discovery about those systems, Tesseron sought essentially every document (*i.e.*, "any and all documents") relating to "variable data printing systems," which it defined to include any system (or component of such a system) even "capable" of creating "variable and/or personalized content." As explained below, this imprecise and overbroad definition encompasses numerous systems that Tesseron cannot possibly intend to accuse of infringing, including systems unrelated to its claims, prior art, and licensed systems.

On May 10, 2007, RRD served its objections to Tesseron's discovery requests. Up to that time, months after filing suit, Tesseron still had not identified a single RRD system or activity of infringing. Tesseron's discovery requests were so grossly inappropriate that RRD had no choice but to object to the requests in their entirety. In other words, Tesseron's complete failure to identify a single allegedly infringing system more than justified RRD's refusal to produce every document relating to any system "capable" of "variable and/or personalized" printing as Tesseron sought.

On the same day, May 10, 2007,[2] Tesseron responded to RRD's interrogatory seeking Tesseron's infringement allegations with two claim charts finally identifying systems that allegedly infringe the patents-in-suit: (1) an EFI Fiery Controller and (2) a system disclosed in an RRD patent filed in 1995. After receiving this information, RRD informed Tesseron that the only EFI Controller it uses for variable printing was purchased from Tesseron's licensee, Xerox, and has asked for Tesseron's license with Xerox. RRD has also asked Tesseron whether it intends to maintain its infringement claim against this system. With regard to the system

---

[2] RRD received this response on May 14, 2007, the following Monday.

SIDLEY|

Judge William H. Baughman
June 4, 2007
Page 4

described in the RRD patent, RRD informed Tesseron (both recently and in July 2004 in
response to letters from Tesseron) that it does not currently use this system.

     Importantly, after receiving Tesseron's accusations relating to these two systems,
RRD agreed to supplement its discovery responses. *See* Ex. J, RRD's counsel's May 23, 2007
letter to Tesseron Ltd.'s counsel. Given that Tesseron should have identified these systems far
earlier, RRD needed some time to investigate and therefore offered to provide supplemented
discovery responses 30 days after receiving Tesseron's identification of these accused systems.

### C. Tesseron Cannot Take Discovery About Unnamed And Unidentified Systems That It Has Not Accused of Infringing.

     The parties' dispute does not relate to Tesseron's right to discovery about the two
systems that Tesseron belatedly identified as allegedly infringing the patents-in-suit. Rather,
RRD disputes Tesseron's right to seek, as summarized in the title of one section in its letter to the
Court, "Discovery on All Variable-data Printing Systems and Services Used by R.R. Donnelley."
Ltr. at 4 (emphasis added). Such discovery is inappropriate because it seeks documents far in
excess of what is relevant to the claims or defenses of either party.

     As an initial matter, Tesseron bears the burden of showing that it seeks relevant
discovery. *Hughes v. Guanciale*, 2006 WL 689114 at *1 (S.D. Ohio 2006). Tesseron has made
no attempt to do this beyond its conclusory and implausible statement that everything RRD does
infringes. Nonetheless, even if Tesseron could be said to have satisfied its burden, RRD shows
herein why the information requested is not relevant and why Tesseron's discovery should be
limited. *See id.*

     Only discovery relating to identified accused systems is relevant to the parties'
claims or defenses. *See* Fed. R. Civ. P. 26(b)(1).[3] To accuse a system of patent infringement,

---

[3] Tesseron's discovery is inappropriate for numerous other reasons as well. For example,
although the statute of limitations prohibits Tesseron from obtaining damages before December
4, 2000, it seeks "[a]ny and all documents relating to the design or operation of Defendant's
variable data printing systems since January 1, 1993, including but not limited to any and all
software code." Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Document
Request No. 10 at 17 (April 5, 2007) (emphasis added). Other requests have similarly
inappropriate dates. *See e.g., id.* at Document Requests No. 12, 19, 20, 21, 23, 24, 25 and 26.
Other requests seek "any and all documents" when a far smaller set would accomplish the
allowed purpose. *See e.g., id.* at Document Requests No. 12 (seeking "any and all documents
relating to the gross number of finished pages produced"); Plaintiff's Document Request No. 19
(seeking "any and all documents which constitute or relate to an organizational chart" for
Defendant).

SIDLEY

SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 5

Tesseron must have analyzed it and have a reasonable basis to believe it infringes. *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000) ("Before filing counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.").

        For this reason, courts have repeatedly refused to order discovery beyond the systems accused of infringement. Exactly describing what Tesseron seeks to do here, one court stated that "[a] party may not obtain documents in order to discover whether it has a cause of action." *Caliper Techs. Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 558 (N.D. Cal. 2003) (denying patentee's request for production of sales documents relating to products other than the accused products for failure to show relevance). Indeed, the Federal Circuit has held that a "district court correctly refused to allow [the patentee] to conduct 'fishing expeditions in hopes of finding products that might be infringing' to oppose summary judgment." *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000) (citation omitted) (upholding the district court's grant of summary judgment of non-infringement and refusal to allow additional discovery into other products because patentee failed to show the relevance of supplementing discovery requests to seek discovery relating to additional products).

        And in a case quite similar to this one, the court in *Honeywell Intern., Inc. v. Audiovox Comms.*, 2005 WL 3988905 (D. Del. 2005), refused to order discovery when, after the plaintiff identified a few of defendants' cell phone models as infringing, the plaintiff sought broad discovery on all defendants' cell phone models to force the defendants to demonstrate their cell phones were not infringing. The court denied such broad discovery and expressed its disapproval of plaintiff's attempt to force defendants to produce documents on all of their products without having analyzed them. *Id.* at *1.

        Conversely, the cases that Tesseron cites are off-point and do not mandate, or even suggest, that Tesseron can take broad discovery about systems it has not accused of infringing. *See* Ltr. at 5. Unlike Tesseron, the plaintiff in *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815 (E.D. Texas 2006), had identified the accused website. The parties' dispute related to which features of that website corresponded to the patent claims and the requisite level of detail in the patentee's infringement allegations. Similarly, the patentee in *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005), had identified the accused products. There too, the parties' dispute related to the level of detail in the patentee's infringement allegations.[4] Finally, in *Pierce v. Submarine Signal Co.*, 25 F. Supp. 862 (D. Mass.

_____

[4] Both cases were in the Eastern District of Texas whose local rules require the patentee to provide Preliminary Infringement Contentions ("PICs"). Indeed, those local rules expressly require the patentee to identify the "accused instrumentality." *See* Ex. L, E.D. Texas P.R. 3-1(b).

**SIDLEY** | SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 6

1939), an early case after the adoption of the Federal Rules, the plaintiff had identified the accused product – a "Dorsey Fathometer."

Lacking the law, Tesseron appeals to an imagined practicality. Tesseron claims that "in infringement cases involving non-public information such as software cases, there is a pragmatic limitation on the ability of a plaintiff to provide detailed assertions at preliminary stages of the litigation, when the plaintiff does not have the necessary access to non-public information which is needed to make such assertions." Ltr. at 5. First, Tesseron confuses "detailed assertions" about identified, accused systems with identifying the accused systems in the first place. As in the Eastern District of Texas cases Tesseron cites, courts do not require detail about infringement allegations before discovery; they do, however, require identifying the accused systems. *See* Ex. L, E.D. Texas P.R. 3-1(b); Ex. M, N.D. Cal. LR 3-1(b). Second, Tesseron must offer more than general statements before the rules allow it to force RRD to expend vast resources collecting documents; Tesseron must actually bring a system into the case and certify that it has a reasonable basis to assert infringement. *See View Eng'g*, 208 F. 3d at 984. For any systems it cannot identify, Tesseron clearly has not performed the required analysis.

Tesseron then accuses RRD of being insufficiently public in its business practices. Tesseron defends its request for broad, unfettered discovery because RRD is supposedly "extremely protective concerning disclosure of its variable-data printing systems and services" and that "information concerning R.R. Donnelley's variable-data printing systems and services is not available to the public." Ltr. at 5. First, RRD would have a tough time selling its services if no one knew about them. Indeed, RRD's services are described on its website – which contrary to Tesseron's allegations, is "available to the public." *See* http://www.rrdonnelley.com (*e.g.*, menus for Segments, Services, Tools). Second, like most companies in the printing industry, RRD uses RIPs[5] and presses from well-known vendors, such as HP, Xerox, Scitex, etc. Some of these companies publicly announce when companies such as RRD purchase their equipment. *See e.g.*, Ex. N, HP news release, July 25, 2002, *available at* http://h30267.www3.hp.com/country/us/en/news/1003829.html?jumpid=reg_R1002_USEN (announcing that RRD purchased an HP press). At the least, Tesseron could identify the equipment it has a reasonable basis to believe infringes.

Tesseron simply fails to satisfy its burden in a motion to compel, asking RRD and the Court to simply accept that it has a reasonable basis to believe that nearly everything RRD does infringes – even though Tesseron cannot identify why or how. Ltr. at 4. Tesseron could

---

The Northern District of California has a similar rule. *See* Ex. M, N.D. Cal. Local Rule 3-1(b).
[5] "RIP" is an acronym for raster image processor. A RIP converts data describing a printed page into a map of the dots of ink actually comprising that page. (A raster is a single line of these dots.) A press needs this map of dots, commonly referred to as a bitmap, to print the page.

SIDLEY

Judge William H. Baughman
June 4, 2007
Page 7

have done much more research and actually developed a list of accused systems. Has Tesseron analyzed any vendors' systems (e.g., HP, etc.)? Does it believe any infringe? Does it agree that any do not infringe and therefore can be easily excluded? Without the hint of an infringement analysis and with no infringement allegations with respect to these unidentified systems, the law does not require RRD to undertake an expensive and wasteful search for documents relating to systems not accused of infringing.

   D. Because They Rely on An Overbroad Definition of "Variable Data Printing Systems," Tesseron's Discovery Requests Are Imprecise and Indiscriminately Overbroad.

        As explained above, the Court should limit Tesseron's discovery to systems actually accused of infringing. But in any case, the discovery Tesseron seeks is overbroad, encompassing "any and all documents" relating to any "variable data printing system" – which Tesseron defines to include vast portions of RRD's business. Tesseron's discovery requests are so broad and imprecise it cannot possibly satisfy its burden to show that such discovery seeks relevant information. *See Hughes*, 2006 WL 689114 at *1. Indeed, Tesseron offers its overbroad requests with the admitted goal of searching for an infringement claim. Ltr. at 5.

        Specifically, Tesseron seeks discovery of "any and all documents" relating to any "variable data printing system," which it defines as follows:[6]

        Variable Data Printing System:  Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Definition K at 4.

---

[6] Sample requests include Document Request No. 10, "[a]ny and all documents relating to the design or operation of Defendant's variable data printing systems since January 1, 1993, including but not limited to any and all software code" and No. 11, "[a]ny and all variable data print job source files utilized by Defendant since March 17, 1998." Ex. K, Plaintiff's First Set of Interrogatories and Document Requests at 17. Note too that both requests seek documents far pre-dating the six year statute of limitations in patent cases, which prohibits Tesseron from collecting damages on activities before December 4, 2000. Other requests using this definition or definitions derived from it include Nos. 12, 14, 15, 16, 19, 20, 21, 23, 24, 25, 26, 28, and 29. Ex. K.

# SIDLEY

<small>SIDLEY AUSTIN LLP</small>

Judge William H. Baughman
June 4, 2007
Page 8

Tesseron's patent claims are nowhere near as broad as this definition, with one exemplary claim, claim 1 of U.S. Patent No. 5,729,665, reproduced in the footnote below and the remainder in Exhibits C-F.[7]  To prove patent infringement, Tesseron must prove that an accused RRD system contains every element of a patent claim.  *See Johnston v. IVAC Corp.*, 885 F.2d 1574, 1578 n. 3 (Fed. Cir. 1989).  As the Court can see, Tesseron's definition of "variable data printing system" ignores most of the specific and required elements recited in its claims. Systems that lack even one element of Tesseron's claims cannot infringe and, therefore, should not be the subject of the requested discovery.

For this reason, Tesseron is extremely unlikely to accuse many common examples of "variable and/or personalized content" in the printing business, although it nonetheless seeks discovery about them.  For example, Tesseron's definition sweeps in systems for printing addresses on preprinted documents, such as magazines.  In most cases, magazines are printed without any variable or personalized content after which each copy is overprinted with each subscriber's name and address.  Similar systems are also used to add "personalized" information to preprinted form letters.  Similarly, Tesseron's definition of "variable data printing system" describes volume check or bill printing because each check or bill has "variable and/or personalized content" even if the system printing such documents has no relation, even in Tesseron's view, to its patent claims, or may have been in use for years before the patents-in-suit were filed.

---

[7] 1. A method for generating multiple bit maps suitable for high-speed printing or plate-making comprising the steps of:
(a) generating a page description code representing a template, said page description code defining at least one variable data area and said page description code further defining a graphics state corresponding to said variable data area, said graphics state including at least one attribute which controls the appearance of variable data in said variable data area;
(b) executing said page description code to generate a bit map of said template, and during said execution, identifying said variable data area defined by said page description code and reserving said graphics state corresponding to said variable data area upon said identification;
(c) retrieving variable data;
(d) associating said variable data with said graphics state corresponding to said variable data area;
(e) applying said graphics state corresponding to said variable data area to said variable data to generate a variable data bit map; and
(f) merging said variable data bit map with said bit map of said template;
wherein said graphics state corresponding to said variable data area is applied repeatedly to variable data to generate a multitude of variable data bit maps without the need to repeat said executing step (b).

SIDLEY | SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 9

Tesseron's definition, moreover, is so broad and imprecise that it includes any letter typed on a personal computer – with the addressee's name and address being "personalized content" – and any systems or components of systems used to produce that letter. Similarly, every email any RRD employee has ever sent or received contains "personalized content" in its address information and, likely, content. Tesseron's definition even covers word processing mail merges, which are indisputably prior art. Although it seeks literally every document relating to these systems, Tesseron is extremely unlikely to accuse such systems of infringing.

Indeed, Tesseron's discovery is even broader than these examples illustrate. Tesseron seeks discovery (and of every single document) relating to any system "<u>capable by itself or in conjunction with a printing or imaging device</u>" of printing "variable and/or personalized content." In other words, any RRD equipment not used to print "variable and/or personalized content," but that could be so used, falls within Tesseron's discovery requests, and Tesseron wants full discovery relating to that equipment.[8] Beyond the reasons stated above, such discovery is clearly inappropriate because a system does not infringe simply because it is capable of infringing. *See High Tech Med. Instruments, Inc. v. New Image Indus., Inc.* 49 F.3d 1551, 1555 (Fed. Cir. 1995) ("[T]hat a device could have been made to do something else does not of itself establish infringement.")[9]

Although it seeks vast and broad discovery, Tesseron offers no support that it has a good faith infringement claim that is correspondingly broad. Although Tesseron makes the blanket statement "that most, if not all, of the variable-data printing systems and services used by R.R. Donnelley infringe one or more claims of each of the patents-in-suit" (Ltr. at 1), it offers no proof, and in fact, Tesseron's claims of ignorance as to RRD's systems belie this assertion. *See* Ltr. at 5-6.[10] Similarly, although Tesseron tries to reassure the Court that it seeks "discovery aimed at obtaining information and documents concerning the full range of infringing systems and services used by R.R. Donnelley" (Ltr. at 6), Tesseron really seeks indiscriminate discovery

---

[8] One example would be a digital press not used for variable printing.

[9] Actually, that is not all. Tesseron seeks broad discovery of any system (or component thereof) capable of "variable and/or personalized content <u>at any stage of the production or generation</u>." Tesseron's overreaching discovery therefore seeks every single document about any equipment anywhere in the production chain when some other piece of equipment in that chain is capable of "variable and/or personalized content." Such discovery is simply far beyond what the Federal Rules allow.

[10] Indeed, it appears doubtful that Tesseron has done any pre-suit investigation of RRD's alleged infringement at all. RRD has requested documents relating to this investigation. Ex. K, Plaintiff's First Set of Interrogatories and Document Requests, Document Request No. 8 at 17; Defendant's Ltr. So far, Tesseron has refused to produce such documents. *See* Ex. B, Defendant's Response to Plaintiff's Document Request No. 8 at 16 (objecting to request as premature, vague and ambiguous, overly broad and unduly burdensome).

SIDLEY AUSTIN LLP
# SIDLEY|

Judge William H. Baughman
June 4, 2007
Page 10

about every system (and every component thereof) within RRD that is even "capable" of producing "variable and/or personalized content." As explained above, this discovery encompasses material far in excess of what could be fairly characterized as relevant to this case – *i.e.*, what systems could, even in Tesseron's view, contain each and every element of Tesseron's patent claims.[11]

Producing "any and all documents" relating to every system capable of producing "variable and/or personalized content," when they are not even accused of infringement, would be excessively expensive and wasteful. In a related context, the Federal Circuit noted that "[a] patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). RRD would have to search vast portions of an extremely large company to comply. RRD has more than 50,000 employees worldwide and hundreds of presses that perform variable digital printing in various locations around the country. Tesseron makes no attempt to narrow its discovery by, for example, defining the characteristics that RRD's systems would need to fall within its view of the patents-in-suit or offering specifics about what it is really interested in, such as a list of vendors or which of their specific products that it has a reasonable basis to believe infringe. Nor does Tesseron identify particular RRD services that it believes infringe. Nor has Tesseron attempted to exclude prior art systems[12] or systems that it cannot possibly intend to accuse of infringement because they clearly lack elements of its claims. And amazingly, Tesseron seeks broad discovery even on systems that it has licensed. *See* Section E.

Tesseron's discovery requests are so egregiously improper, and its overbroad definition of "variable data printing system" so pervasive, that RRD had no option but to object *in toto*. Indeed, at the time of RRD's objections, Tesseron had not accused a single RRD system of infringing. Tesseron then, during the meet and confer process, refused to engage in any discussion of the proper scope of discovery, instead demanding the inappropriately broad discovery sought in its discovery requests. *See* Ex. J, RRD's counsel's May 23, 2007 letter to Tesseron Ltd.'s counsel; Ex. O, Tesseron Ltd.'s counsel's May 24, 2007 letter to RRD's counsel. Tesseron has made no effort to modify its discovery requests or the above definition of "variable

---

[11] Consistent with its other unsupported statements, Tesseron argues that "[w]here, as here, the plaintiff has good reason to believe that the defendant is violating the plaintiff's patent rights, a broader latitude is allowed in compelling disclosure by the defendants," citing *Pierce*, which, as explained above, says no such thing. Ltr. at 4-5 (emphasis omitted). But what is Tesseron's "good reason to believe" RRD is infringing? Tesseron has offered no evidence – whether claim charts, proof of research done, or anything else – showing that it has any reason to believe that RRD is violating its patent rights.

[12] If Tesseron's claims cover the prior art, they are invalid.

**SIDLEY** SIDLEY AUSTIN LLP

Judge William H. Baughman
June 4, 2007
Page 11

data printing system." The Court should reject Tesseron's request for inappropriately broad and burdensome discovery.

### E. Tesseron's Discovery Requests Are Also Overbroad and Unduly Burdensome Because They Make No Attempt to Exclude Licensed Systems.

Tesseron has also made no attempt to exclude licensed systems, further making its discovery requests improper. To the contrary, Tesseron unabashedly seeks broad discovery of virtually every document even remotely related to systems Tesseron itself has licensed without regard to RRD's expenditures to collect and to produce those documents.

By its own admission, Tesseron has licensed Canon, Xerox, and GMC under the patents-in-suit. *See* Ex. B, Plaintiff's Response to Defendant's Interrogatory No. 5 at 8-9. To date, Tesseron has not produced its licenses with these companies, although RRD has asked for them. Nonetheless, Tesseron's licenses are extremely likely to apply to these companies' customers' – *i.e.*, RRD's – use of their products.

Indeed, RRD purchased the only accused system that it currently uses – an EFI Fiery Controller – from Xerox. RRD provided Tesseron its purchase order for this unit, showing that it was purchased from Xerox. But RRD has quite properly refused to expend resources searching for and producing "any and all documents" relating to this system as it appears to be licensed. RRD has asked Tesseron to state whether it intends to maintain its infringement claims against this system but received no answer.

But that is not all. Tesseron's predecessor in interest, Varis, lost a patent infringement suit against Scitex in 2002. RRD uses many Scitex products. Tesseron, however, cannot accuse Scitex products of infringing the patents that were asserted in that prior suit and is apparently enjoined from doing so. *See* Ex. I, *Varis Corp. v. SCITEX Digital Inc.*, No. 3:99-ov-00336 (S.D. Ohio), Order of Feb. 13, 2002 (enjoining plaintiff from asserting that Scitex infringed patent-in-suit). Consistent with its blanket approach to discovery, Tesseron's discovery requests make no such distinction, leaving RRD to pay the bill for Tesseron's indiscriminate discovery.

### F. Conclusion

Tesseron's discovery requests would require RRD, a large, global multi-faceted company with numerous locations, to expend unreasonable resources searching for and producing documents utterly unrelated to this case. Tesseron should be allowed discovery only with respect to systems for which it has a reasonable basis to believe infringe and which it has identified as such. The Court should deny Tesseron's overbroad request for further discovery.

SIDLEY

Judge William H. Baughman
June 4, 2007
Page 12


Sincerely,

Douglas I. Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2007, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following,

who have also been served as noted:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on September 12, 2007, the foregoing was sent to the following non-

registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

Douglas I. Lewis                         John G. Hutchinson
Jamie L. Secord                          Sidley Austin, LLP
Sidley Austin, LLP                       787 Seventh Avenue
One South Dearborn Street                New York, NY   10019
Chicago, IL   60603

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com