IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-032 (JJF) |
| CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF R.R. DONNELLEY & SONS COMPANY'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS' ANSWER TO PLAINTIFF'S INTERROGATORY NUMBER 21**

1.     In opposing R.R. Donnelley & Sons Company's ("RRD") motion to compel Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company ("Defendants") to answer RRD's Interrogatory No. 21, Defendants fail to admit that they never answered the Interrogatory propounded to them.  Defendants instead chose to stand on their objections to the terms "marketed" and "promoted" as supposedly ambiguous terms and provided a response to a different question.

2.     Rather than admit that they have not answered Interrogatory No. 21, Defendants argue that (a) because RRD has not identified Third Party Software Products in this case and (b) because RRD succeeded in opposing a motion to compel production in a separate and unrelated case, Defendants should not have to respond to Interrogatory No. 21.  Neither argument bears any relation to the issue pending in this motion or excuses the fact that Defendants still have not answered the question posed in Interrogatory No. 21.  R.R. Donnelley

is entitled to a responsive answer to this Interrogatory because it seeks information that is relevant to the case.

**Interrogatory No. 21 seeks information relevant to the case.**

3.     The information requested by Interrogatory No. 21 goes to a central dispute between the parties with respect to the damages in this case.  Damages in this case will be based on a reasonable royalty assessed against the infringing products.  The seminal case setting forth the factors typically considered in such analysis is *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (D.C.N.Y. 1970).  It is clear that there will be significant disagreement between the parties concerning what that royalty should be, and what the royalty base will be for determining damages.  To the extent that Defendants sell, or offer to sell, Third Party Software Products that infringe the patents in suit, those sales may impact the royalty base.

4.     The evidence developed to date indicates that Defendants sell the accused Software Products in connection with the accused Hardware Products.  It is also clear, however, that Defendants sell some of the accused Hardware Products with compatible software made by third parties.  The information requested by Interrogatory No. 21 is important to allow R.R. Donnelley to assess the extent to which Defendants sell their own software with the accused Hardware Products and if third party software is sold, what software is sold.[1]  This information is fundamental to understanding how defendants structure and implement the sale of these

---

[1]     Defendants response that certain software is "compatible" does not address the central question – is it actually sold by the defendants with the accused Hardware Products?

products, and to analyzing the damages claims.[2]  At a basic level, it is important for allowing R.R. Donnelley to verify the percentage of sales where accused Software and Hardware Products are sold together.

5.    In addition to the need to get the core information needed to analyze the way in which defendants sell these products, the requested information goes to several of the *Georgia-Pacific* factors.  For example, the requested information is relevant to *Georgia-Pacific* factor 8 – the commercial success and current popularity of the infringing product.  (*Georgia-Pacific,* 318 F. Supp. at 1120.)  Defendants will undoubtedly argue that sales of Hardware Products with Third Party Software Products is evidence that the accused Software Products are not popular, or does not drive sales of the Hardware Products, and thus this evidence should tend to decrease the royalty rate.  R.R. Donnelley must be allowed discovery about which such Third Party Software Products are being used, and how Defendants market them.

6.    The requested information is also relevant to *Georgia-Pacific* factor 9, the existence of alternative technologies to the accused products.  (*Georgia-Pacific,* 318 F. Supp. at 1120.)  R.R. Donnelley is entitled to discover the other software products sold with the accused Hardware Products to assess the impact, if any, that these products might have on the royalty rate under this factor should Defendants attempt to present evidence that these software products do not infringe the patents in suit.

7.    The requested discovery is also relevant to complete R.R. Donnelley's investigation of the extent and nature of direct infringement by defendants.  Selling, and offering for sale, infringing software can be acts of direct infringement.  R.R. Donnelley is entitled to

---

[2]    R.R. Donnelley is willing to withdraw the present Motion if Defendants agree that all of Defendants' sales of accused Hardware Products are properly part of the royalty base for determining damages.

know which of these software products are actually being sold with the accused Hardware Products. The information is important not only to the damages case, as discussed above, but also to liability issues. Without knowing which of these Third Party Software Products are sold with the accused Hardware Products, it is difficult for R.R. Donnelley to plan for completing discovery on infringement. It is a waste of time and effort to develop information concerning Third Party Software Products that, while compatible, are not sold by Defendants.

**Defendants have not answered Interrogatory No. 21.**

8.     RRD asked Defendants in Interrogatory No. 21 to identify all "Third Party Software Products" that Defendants have "offered, sold, marketed, or promoted for use…" (D.I. 199, Ex. A, at 7.) Despite the straightforward nature of the Interrogatory, Defendants objected to the terms "marketed" and "promoted" as "overly broad and ambiguous." (D.I. 199, Ex. B, at 4.) Yet Defendants themselves have used the terms "marketed" and "promoted" in discovery requests they have propounded to RRD. (D.I. 199 at 4.) As a result, they cannot plead ignorance as to the meaning of such plain, ordinary terms.

9.     Furthermore, Defendants did not object to the terms "offered" or "sold." In responding to Interrogatory No. 21, however, Defendants did not identify any Third Party Software Products that they offered or sold. Indeed, Defendants expressly stated that they "are not asserting that they sell, offer to sell, market or promote" the Third Party Software Products that they list. (D.I. 199, Ex. B, at 4.)

10.     Defendants incorrectly state that they "identified those Third Party Software Products that Defendants have sold or offered to sell." (D.I. 216 at 2.) Instead, Defendants identified those products which "may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products." (D.I. 199, Ex. B, at 4.) While Defendants

contend that their "answer includes those Third Party Software Products that have been offered and sold," this does not mean that they have *identified* the Third Party Software Products that have been offered or sold. RRD cannot determine from Defendants' response which or how many Third Party Software Products on the list were offered or sold by Defendants, if any.

11. Instead of identifying Third Party Software Products that they "offered, sold, marketed or promoted," Defendants' response appears to address a different Interrogatory. Defendants identified products that "may (or, depending on their configuration, may not) be compatible with Defendants' Hardware Products." (D.I. 199, Ex. B, at 4.) RRD did not ask Defendants to identify which products are compatible with Defendants' Hardware Products. RRD asked Defendants to identify which products they actually "offered, sold, marketed or promoted." The mere fact that a Third Party Software Product may be compatible with Defendants' Hardware Products tells RRD nothing about whether Defendants actually "offered, sold, marketed, or promoted" the product for use with Defendants' Hardware Products.

12. Moreover, in their Response, Defendants did not even affirmatively identify which Third Party Software Products actually are compatible with Defendants' Hardware Products. Instead, Defendants list products that *"may or… may not"* be compatible with Defendants' Hardware Products. (D.I. 199, Ex. B, at 4.) Thus, it could well be the case that none of the identified products are even compatible with Defendants' Hardware Products.[3]

13. In short, despite Defendants' assertions that they "went out of their way to identify the compatible Third Party Software," Defendants did not answer the question that RRD

---

[3]     Defendants conveniently edit the language of their response in their opposition to RRD's Motion to Compel, stating that they provided a list of all Third Party Software Products "which Defendants *may have* offered, sold, marketed, or promoted for use." (D.I. 216 at 3.)

asked.  Defendants have not identified which Third Party Software Products they "offered, sold, marketed or promoted" for use with Defendants' Hardware Products.  This is the question RRD asked, and this is the question to which Defendants should be required to respond.

**Unlike the requested discovery in _Tesseron_, Interrogatory No. 21 is not overly broad or unduly burdensome.**

14.    Defendants spend over two pages of their five page brief discussing a discovery dispute in a different case.  Defendants attempts to import a ruling in _Tesseron, Ltd. v. R.R. Donnelley & Sons Co._, 2007 WL 2034286 (N.D. Ohio Jul. 10, 2007), in which the plaintiff Tesseron sought to obtain discovery from R.R. Donnelley, the defendant in that case.  Defendants assert that because the _Tesseron_ court held that R.R. Donnelley need not respond to Tesseron's discovery requests, that Defendants need not respond to R.R. Donnelley's discovery requests in this case.

15.    Yet _Tesseron_ is completely different from this case.  There is no "ironic twist" that RRD is involved in both cases, as Defendants contend.  (D.I. 216 at 3.)   In _Tesseron_, the plaintiff requested _all_ documents related to "Variable Data Printing Systems" – including design, development, operation, use, marketing, and sale of those systems.  (Tesseron's First Set of Interrog. and Requests to Inspect, Ex. A.)  Tesseron then defined "Variable Data Printing Systems" to include not just any system which did variable digital printing, but any system or component "capable by itself or in conjunction" with other devices of generating documents containing "some variable and/or personalized content."  (_Id._ at 4.)

16.    Were R.R. Donnelley forced to comply with these discovery requests, it would have needed to produce each and every document related in any way to any system with the capability of generating some kind of variable content on a document, even if not used for

variable digital printing.  Judge Boyko agreed that Tesseron's requests "encompass[] a broad spectrum of technology and, as Donnelley points out, includes many systems that cannot conceivably infringe on any of Tesseron's patents."  (*Tesseron,* 2007 WL 2034286 at *5.)  As Judge Boyko determined, "[a]lthough Tesseron is not necessarily limited to discovery of the two accused systems identified, it must narrow the scope of the systems to be targeted."  (*Id.*)

17.    Conversely, Interrogatory No. 21 seeks narrowly focused information. R.R. Donnelley has merely requested a list of all Third Party Software Products which Defendants have "offered, sold marketed or promoted."  (D.I. 199, Ex. A, at 7.)  This is a discrete, finite, specific and small set of information.

18.    As such, the Interrogatory is not overly broad or unduly burdensome to Defendants.  It would not be difficult for Defendants to identify which Third Party Software Products they have "offered, sold, marketed or promoted" with their own Hardware Products. And Defendants would have records of any of the offers for sale, sales, marketing and promotion of any Third Party Software Products.

19.    For the reasons stated above, Plaintiff's Motion to Compel Defendants' Answer to Plaintiff's Interrogatory Number 21 (D.I. 199) should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
 *Attorneys for Plaintiff*
 *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

September 14, 2007
1234744

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 14, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Frederick L. Cottrell III
Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on September 14, 2007, upon the following in the manner indicated:

**BY EMAIL AND BY HAND**

Frederick L. Cottrell III
Richards Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
cottrell@rlf.com

**BY EMAIL**

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
rmcmillan@crowell.com

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TESSERON, LTD., | ) | |
| | ) | **CASE NO. 1:06-CV-02909** |
| Plaintiff, | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| vs. | ) | |
| | ) | |
| R.R. DONNELLEY & SONS COMPANY, | ) | **PLAINTIFF'S FIRST SET OF** |
| | ) | **INTERROGATORIES AND** |
| Defendant. | ) | **REQUESTS TO INSPECT** |
| | ) | **DOCUMENTS, ELECTRONICALLY** |
| | ) | **STORED INFORMATION AND** |
| | ) | **TANGIBLE THINGS PROPOUNDED** |
| | ) | **UPON DEFENDANT, R.R.** |
| | ) | **DONNELLEY & SONS COMPANY** |

Plaintiff, Tesseron Ltd. ("Plaintiff") hereby serves its First Set of Interrogatories and Requests to Inspect Documents, Electronically Stored Information and Tangible Things Propounded Upon Defendant, R.R. Donnelley & Sons Company ("Defendant") to be answered separately and fully pursuant to the provisions of Rules 26, 33 and 34 of the Federal Rules of Civil Procedure.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall apply to these Interrogatories and Requests to Inspect Documents, Electronically Stored Information and Tangible Things.

**A.    Document(s):**        "Document" shall refer to any writing or recording of any kind, including without limitations, the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including without limitations, whether printed, recorded, or reproduced by an mechanical or electronic process, or written or reproduced by hand, correspondence, communications, memoranda, circulars, notes, items, notations, working papers, summaries, diaries, ledgers, statistics, letters, telegrams, telexes, minutes, contracts, agreements, leases, subleases, reports, opinions, records, test results, logs, studies, checks, insurance policies, insurance binders, mortgages, statements, receipts, returns, newspapers, magazines, pamphlets, brochures, papers, books, manuals, accounts, financial statements or reports, interoffice and intra-office communications, notebooks, plans, drawings, sketches, amps, notations of any conversations (including, without limitation, telephone calls, meetings interview, conferences, and other communications), bulletins, printed matter, computer printouts, emails, certificates, forms, teletypes, telesales, invoices, worksheets, graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures), electronic, mechanical or electric records, or representations of any kind (including, without limitation, tapes, cassettes, discs, emails, back-up files, recordings, and other computer memories), and all drafts, alterations, modifications, changes, and amendments of any of the foregoing. **The term "Document" shall include Electronically Stored Information (as defined herein) and Tangible Things.**

**B.**     <u>**Electronically Stored Information or ESI:**</u>     "Electronically Stored Information" or "ESI" shall refer to electronically stored information, and includes both active and residual ESI kept in the ordinary course of business. Residual ESI includes, but is not limited to, deleted files, overwritten files, file fragments, or other data found in ambient space on electronic storage media. Active ESI includes, but is not limited to, information readily available and accessible to computer users through existing file management programs.

**C.**     <u>**Plaintiff:**</u>     Shall refer to Tesseron, Ltd. and its representatives, employees, officers, assigns or agents.

**D.**     <u>**Defendant:**</u>     Shall refer to R.R. Donnelley & Sons Company, and any parent, subsidiary, related or affiliated company or business entity controlled by, partially or wholly, or operated by R.R. Donnelley & Sons Company or on its behalf, or predecessors thereof, and the representatives, employees, officers, assigns and agents of each.

**E.**     <u>**Person:**</u>     Shall mean and include a corporation, partnership or other business association or entity, natural person, or any government or governmental body, commission, board or agency.

**F.**     <u>**Complaint:**</u>     Shall refer to the Complaint filed by Plaintiff on or about December 4, 2006.

**G.**     <u>**Answer:**</u>     Shall refer to the Answer filed by Defendant on or about January 16, 2007.

**H.**     <u>**Counterclaim:**</u>     Shall refer to Counterclaim filed by Defendant on or about January 16, 2007.

**I.**    **Donnelley:**    Shall refer to, Defendant, R.R. Donnelley & Sons Company as defined above.

**J.**    **Kodak Litigation:**    Shall refer to the action filed by Donnelley in the United States District Court for the District of Delaware (Wilmington), styled *R.R. Donnelley & Sons Co. v. Quark, Inc., et al.*, bearing Case No. 1:06-CV-00032-JJF.

**K.**    **Variable Data Printing System:**    Shall refer to any system, as well as all component parts thereof, including software and source-code, capable by itself or in conjunction with a printing or imaging device, of producing or generating documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

**L.**    **Variable Data Print Job:**    Shall refer to any use of a Variable Data Printing System to produce or generate documents or images, or digital representations of documents or images, containing or utilizing some variable and/or personalized content at any stage of the production or generation.

**M.**    **Variable Data Print Job Source Files:**    Shall refer to machine readable files used in the production of variable data print jobs, including but not limited to all templates, job tickets, database schema, database record layouts and page description language files, but excluding the actual database data and excluding images.

## INSTRUCTIONS FOR INTERROGATORIES

1.    Defendant is required to answer each of the following Interrogatories in writing and under oath within thirty (30) days after the date of service, pursuant to the Rule 33 of the Federal Rules of Civil Procedure.  These shall be considered continuing Interrogatories, and Defendant shall file supplemental answers in accordance with Rule

26 of the Federal Rules of Civil Procedure if Donnelley obtains, directly or indirectly, further information of the nature sought herein between the time of answering these Interrogatories and the time of trial.

2.      In responding to these Interrogatories, Defendant is to obtain and furnish all information available to Defendant or any of its partners, representatives, officers, employees, agents, investigators, contractors, or attorneys, and to obtain and furnish all information that is in its possession or under the control of any of its partners, representatives, officers, employees, agents, investigators, contractors, or attorneys.

3.      Diligent inquiry should be undertaken to obtain answers to these Interrogatories that are as specific and responsive as possible.  Defendant's answers must communicate all information in its possession, whether based on personal knowledge or derived from others, unless an Interrogatory indicates otherwise.  In each instance where information from others is provided, Defendant should indicate the name and address of the source of its knowledge or information.

4.      Each Interrogatory is to be answered separately.  The fact that investigation is continuing or that discovery is not complete shall not be used as an excuse for failure to answer each Interrogatory.  The omission of any name, fact, or other item of information from the answers shall be deemed a representation that such name, fact, or item is not known to Donnelley, its counsel, or other representative at the time of the service of the answers to these Interrogatories.

5.      If any document identified in Defendant's answers to these Interrogatories is no longer in the possession, custody, or control of Donnelley, state:

        a.      When such document was made;

b.  What was done with the document;

c.  The identity and address of the current custodian of the document;

d.  The person who made the decision to transfer or dispose of the document; and

e.  The reasons for the transfer or disposition.

6.  Where, after diligent inquiry, Defendant cannot furnish exact information in response to an Interrogatory, Defendant is to supply estimated or approximated information. Where Defendants uses an estimate or approximation, identify it as such and explain the basis on which Defendant made the estimate or approximation and the reason Defendant cannot furnish exact information.

7.  If, after diligent inquiry, Defendant cannot fully answer any Interrogatory, Defendant should provide as complete an answer as possible. State the reason for Defendant's inability to answer fully, and give any information, knowledge, or belief which Defendant has regarding the unanswered portion of the Interrogatory.

8.  Where anything has been deleted from a document identified in response to an Interrogatory:

a.  Specify the nature of the material deleted;

b.  Specify the reason for the deletion; and

c.  Identify the person responsible for the deletion.

9.  If any information or any document (or portion of a document) requested by any Interrogatory is withheld pursuant to a claim of privilege, identify such information or document as privileged and state the legal and factual basis for the claim of privilege. In the case of documents as to which a privilege is asserted, state:

a.   The title of the document;

b.   The nature of the document (e.g., interoffice memorandum, correspondence, report);

c.   The author or sender;

d.   The addressee;

e.   The date of the document;

f.   The name of each person to whom the original or a copy was shown or circulated;

g.   The names appearing on any circulation list relating to the document;

h.   The basis on which privilege is claimed; and

i.   A summary statement of the subject matter of the document in sufficient detail to permit the court to rule on the propriety of the objection.

10.   If an objection is made to any Interrogatory, state the basis of the objection and answer separately and fully every Interrogatory or portion thereof to which no objection is made.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**      Identify each and every person who participated in the preparation of the responses to these interrogatories and all other discovery requests propounded by Plaintiff.

**ANSWER:**

**INTERROGATORY NO. 2:**          Identify each and every person whom Defendant believes may have knowledge of the subject matter of any of the allegations in the Complaint, or admissions, denials, defenses and/or averments in Defendant's Answer or Defendant's Counterclaim, and state in detail such knowledge each such person has.

    **ANSWER:**

**INTERROGATORY NO. 3:**          On a claim-by-claim basis, state all facts that support Defendant's contention, made in its Counterclaim, that "[o]ne or more claims of the '665, '153, '028, or '016 patents are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. § 101, *et seq.*, including without limitation the requirements in 35 U.S.C. §§ 101, 102, 103, and/or 112."

    **ANSWER:**

**INTERROGATORY NO. 4:**        On a claim-by-claim basis, state all facts which

support Defendant's contention, made in its Counterclaim, that "[t]he '665, '153, '028, or

'016 patents are unenforceable for, among other things, inequitable conduct."

>    **ANSWER:**

**INTERROGATORY NO. 5:**        On a claim-by-claim basis, state all facts that

support Defendant's contention, made in its Counterclaim, that "R.R. Donnelley has not

infringed, directly, literally, by equivalence, by inducement, contributorily or otherwise,

any valid claim of the '665, '153, '028, or '016 patents."  Include in your answer each

element or limitation of each claim of the patents-in-suit that is not present in

Defendant's variable data print systems, or practiced by Defendant in connection with its

variable data print jobs.

>    **ANSWER:**

**INTERROGATORY NO. 6:**        State the total annual gross revenue which

Defendant has received for variable data print jobs on a monthly basis from March 17,

1998 to the present broken out by system, state how the amount was calculated, identify

all of the documents the persons responding to this interrogatory referred to in calculating

such revenue, and for each system state the manufacturer.

**ANSWER:**

**INTERROGATORY NO. 7:**     State the total number of finished pages produced in

connection with variable data print jobs on a monthly basis from March 17, 1998 to the

present, identify all of the variable data printing systems used to perform such variable

data print jobs by manufacturer and correlate the numbers of finished pages with the

identified variable data printing systems, and identify all of the documents the persons

responding to this interrogatory referred to in calculating the number of such pages

and/or the identity of such variable data printing systems.

**ANSWER:**

**INTERROGATORY NO. 8:**     Identify each and every person responsible for

design or development of Defendant's proprietary variable data printing systems from

January 1, 1993 to the present, including any and all component parts thereof and any

related software, and for each describe in detail their role in such design or development efforts.

**ANSWER:**

**INTERROGATORY NO. 9:**   Identify each and every person responsible for the sale and marketing of Defendant's variable data print jobs from January 1, 1993 to the present, and for each detail their role in such sale and marketing efforts.

**ANSWER:**

**INTERROGATORY NO. 10:**   Identify by name, title and job description each employee who (a) serves as an officer of Donnelley or (b) who has a supervisory function with respect to the design and/or development of Defendant's variable data printing systems and/or variable data print jobs.

**ANSWER:**

## INSTRUCTIONS FOR REQUESTS TO INSPECT DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS

1.      These requests cover all documents, ESI, and other tangible things in Donnelley's possession, custody, or control, wherever located, including documents, ESI, and other tangible things in the possession of its representatives, subcontractors, officers, employees, agents, investigations, contractors, attorneys, or other persons directly or indirectly employed or retained by Donnelley, or anyone else acting on its behalf or otherwise subject to its control. They shall be deemed continuing requests, and Donnelley shall produce any supplemental materials of the nature sought herein which it obtains, directly or indirectly, or to which it gains access, following any production in response to these requests for production.

2.      Responsive hard copy documents should be produced in TIFF format. Responsive ESI should be produced in native form. With respect to responsive tangible items, once they are identified, inspection can be arranged at a mutually agreeable date and time.

3.      In responding to the requests, Donnelley should consult every potential source of documents, ESI, and other tangible things in its possession or control, or to which it has access, including documents, ESI, and other tangible things in the possession of its experts, consultants, and agents.

4.      Items produced in response to these requests should be organized or labeled to indicate the request to which such items are responsive.

5.      Where anything has been deleted or redacted from a document or ESI produced in response to a request:

    a.      Specify the nature of the material deleted or redacted;

    b.      Specify the reason for the deletion or redaction;

    c.      Identify the person responsible for the deletion; and

    d.      Indicate on the document or ESI where material has been deleted.

If ESI is redacted based on privilege, the redacted ESI should be produced in a single page TIFF format that has been processed with OCR, so that it is searchable, and all related metadata must be produced in a metadata load file.

6.      If any material responsive to any of these requests was, but is no longer, in your possession or custody or subject to your control, please provide the following information for each such item:

    a.      Identify and describe the material;

    b.      Specify whether such material is missing, lost, destroyed or otherwise disposed, or in the possession, custody, or control of another;

    c.      State the date of such loss, destruction, disposal, or other disposition of material;

    d.      Explain the circumstances of such loss, destruction, disposal, or other disposition of material; and

    e.      Identify the persons who authorized or have knowledge of such loss, destruction, disposal, or other disposition of material.

7.      If any item (or portion of an item) is withheld from production pursuant to a claim of privilege, identify such item (or portion thereof) as privileged and state the legal and factual basis for the claim of privilege. In the case of documents or ESI as to

which a privilege is asserted, state:

   a.  The title of the document or ESI;

   b.  The nature of the document or ESI (*e.g.*, interoffice memorandum,

       correspondence, report);

   c.  The author or sender;

   d.  The addressee;

   e.  The date of the document or ESI;

   f.  The name of each person to whom the original or a copy was

       shown or circulated;

   g.  The names appearing on any circulation list relating to the

       document or ESI;

   h.  The basis on which privilege is claimed; and

   i.  A summary statement of the subject matter of the document or ESI

       in sufficient detail to permit the court to rule on the property of the

       objection.

  8.  If an objection is made to any request or portion of a request, identify the request or portion thereof to which an objection is made, state the basis of the objection, and produce all items responsive to the non-objectionable portion of the request.

  9.  Defendant is requested to respond to these Requests to Inspect Documents, Electronically Stored Information and Tangible Things Propounded Upon Defendant, R.R. Donnelley & Sons Company within thirty (30) days of service hereof. Defendant is further requested to produce the Documents, Electronically Stored Information and Tangible Things requested herein for inspection and/or copying, at the

offices of Taft, Stettinius & Hollister LLP, 3500 BP Tower, 200 Public Square,

Cleveland, Ohio 44114, or some other place mutually agreed to by counsel for all parties,

within sixty (60) days of service hereof.

## REQUESTS TO INSPECT
## DOCUMENTS, ELECTRONICALLY STORED
## INFORMATION AND TANGIBLE THINGS

**REQUEST NO. 1:**   Any and all documents relied upon in responding to this First Set

of Requests for Production of Documents.

   **RESPONSE:**

**REQUEST NO. 2:**      Any and all documents identified in the responses to this First

Set of Requests for Production of Documents.

   **RESPONSE:**

**REQUEST NO. 3:**   Any and all documents which may be used as exhibits or

demonstrative evidence at any trial or hearing in this action.

   **RESPONSE:**

**REQUEST NO. 4:**   Any and all documents relating to Plaintiff, Varis Corporation, Image Sciences Corporation, Cincinnati Print, Print Research Technologies, vLogix, or Forrest Gauthier.

  **RESPONSE:**

**REQUEST NO. 5:**   Any and all documents relating to the patents-in-suit.

  **RESPONSE:**

**REQUEST NO. 6:**   Any and all documents relating to the subject matter of the allegations in the Complaint and/or Counterclaim, or the admissions, averments or denials in the Answer.

  **RESPONSE:**

**REQUEST NO. 7:**   Any and all documents which give rise to, relate to, support or refute Defendant's affirmative defenses, including but not limited to the defenses of non-infringement, invalidity, inequitable conduct, laches, estoppel, waiver, acquiescence and failure to state a claim upon which relief may be granted.

  **RESPONSE:**

**REQUEST NO. 8:**   Any and all documents relating to any opinions concerning possible infringement or non-infringement of the patents-in-suit.

    **RESPONSE:**

**REQUEST NO. 9:**   Any and all documents relating to any opinions concerning the possible validity or invalidity and/or enforceability or unenforceability of the patents-in-suit.

    **RESPONSE:**

**REQUEST NO. 10:**       Any and all documents relating to the design or operation of Defendant's variable data printing systems since January 1, 1993, including but not limited to any and all software code.

    **RESPONSE:**

**REQUEST NO. 11:**       Any and all variable data print job source files utilized by Defendant since March 17, 1998.

    **RESPONSE:**

**REQUEST NO. 12:**    Any and all documents relating to the gross annual number of finished pages produced by any person using Defendant's variable data printing systems since March 17, 1998.

**RESPONSE:**

**REQUEST NO. 13:**    Any and all documents relating to any communications between Defendant and Plaintiff, Varis Corporation, Image Sciences Corporation, Cincinnati Print, Print Research Technologies, vLogix, and/or Forrest Gauthier concerning the subject matter of the patents-in-suit.

**RESPONSE:**

**REQUEST NO. 14:**    Any and all documents relating to any business plans and/or strategic plans for marketing of variable data printing systems or variable data print jobs.

**RESPONSE:**

**REQUEST NO. 15:**    Any market studies or competitive intelligence purchased, commissioned or done by Defendant relating to the variable data industry in general, or the market for variable data printing systems and/or software, or variable data print jobs.

**RESPONSE:**

**REQUEST NO. 16:** Any documents or information which describe third-party competitive offerings of variable data printing systems or software, or variable data print jobs that are competitive with Defendant's products or services.

 **RESPONSE:**

**REQUEST NO. 17:** Any and all documents produced by or on behalf of Donnelley in the Kodak Litigation.

 **RESPONSE:**

**REQUEST NO. 18:** Any and all documents constituting a discovery response served by or on behalf of Donnelley in the Kodak Litigation, including but not limited to the responses referenced in the Notices of Service filed under ECF Docket Nos. 42, 55 and 84.

 **RESPONSE:**

**REQUEST NO. 19:**     Any and all documents which constitute or relate to any organizational chart for all or any part of Defendant's business at any time since March 17, 1998.

**RESPONSE:**

**REQUEST NO. 20:**     Any and all written job descriptions for any position at Defendant which currently has or has had responsibility for the design of any Defendant's variable data printing systems at any time since March 17, 1998, or the design and/or operation of Defendant's variable data print jobs.

**RESPONSE:**

**REQUEST NO. 21:**     Any and all documents which reference or relate in any way to the methodology employed by Defendant in connection with any variable data print jobs at any time since January 1, 1993.

**RESPONSE:**

**REQUEST NO. 22:**     Any and all discovery requests propounded on Donnelley in the Kodak Litigation.

**RESPONSE:**

**REQUEST NO. 23:**        Produce monthly financial statements for sales of variable data print jobs for the period from January 1, 1993 to the present.

    **RESPONSE:**


**REQUEST NO. 24:**        Produce reports, schedules and/or data summaries sufficient to disclose the incremental profits in the aggregate and per page or other unit from sales of variable data print jobs from March 17, 1998 to the present.

    **RESPONSE:**


**REQUEST NO. 25:**        Produce reports, schedules and/or data summaries sufficient to disclose the fixed costs in the aggregate and per finished page or other unit relating to the sales of variable data print jobs from March 17, 1998 to the present.

    **RESPONSE:**


**REQUEST NO. 26:**        Produce reports, schedules and/or data summaries sufficient to disclose the variable costs in the aggregate and per finished page or other unit directly relating to the sales of variable print jobs from March 17, 1998 to the present.

    **RESPONSE:**

**REQUEST NO. 27:**    Produce all documents produced to Defendant by any third party pursuant to any subpoena issued in the Kodak Litigation.

**RESPONSE:**

**REQUEST NO. 28:**    Produce all documents which evidence, or refer or relate to, Defendant's conception of the proprietary technologies and methods employed by Defendant to produce variable data print jobs.

**RESPONSE:**

**REQUEST NO. 29:**    Produce all documents which evidence, or refer or relate to, Defendant's reduction to practice of the proprietary technologies and methods employed by Defendant to produce variable data print jobs.

**RESPONSE:**

Respectfully submitted,


David H. Wallace (0037210)
*dwallace@taftlaw.com*
Stephen M. O'Bryan (0009512)
*sobryan@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
3500 BP Tower
200 Public Square
Cleveland, OH  45202-3957
(216) 241-2838
(216) 241-3707 (Facsimile)

L. Clifford Craig (0024859)
*craigc@taftlaw.com*
Kevin W. Kirsch
*kirsch@taftlaw.com*
TAFT, STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
(513) 381-2838
(513) 381-0205 (Facsimile)

*Counsel for Plaintiff Tesseron, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served this 5th day of April, 2007 via electronic and regular U.S. Mail upon the following counsel for Defendant:

Steven M. Auvil                          *Counsel for Defendant*
sauvil@bfca.com
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
200 Public Square
2300 BP Tower
Cleveland, OH  44114-2378

Douglas I. Lewis
dilewis@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

Jamie L. Secord
jsecord@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

John G. Hutchinson
jhutchinson@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019

_____
David H. Wallace (0037210)

STATE OF OHIO          )
                               )    ss:
COUNTY OF CUYAHOGA   )               **VERIFICATION**

I, _____, being first duly sworn, state that the foregoing

answers to Interrogatories are true to the best of my knowledge and belief.

R.R. DONNELLEY & SONS COMPANY

By: _____

Its: _____

Sworn to and subscribed in my presence this ____ day of _____, 2007.

_____
Notary Public