IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

R.R. DONNELLEY & SONS COMPANY,

     Plaintiff,

     v.

CREO, INC., NEXPRESS SOLUTIONS,
INC., KODAK VERSAMARK, INC.,
EASTMAN KODAK COMPANY, and
KODAK GRAPHIC COMMUNICATIONS
COMPANY,

     Defendants.

C.A. No. 06-032-JJF

**REDACTED - PUBLIC VERSION**

EASTMAN KODAK COMPANY,

     Counterclaim-Plaintiff,

     v.

R.R. DONNELLEY & SONS COMPANY,

     Counterclaim-Defendant,

## MOTION FOR RULE 26(c)(1) PROTECTIVE ORDER

Plaintiff R.R. Donnelley & Sons Company ("RRD") seeks to improperly take depositions

on fourteen Rule 30(b)(6) topics relating to the defenses asserted by Defendants Eastman Kodak

Company, Kodak Graphic Communications Company, Creo, Inc., NexPress Solutions, Inc., and

Kodak Versamark, Inc. (collectively "Kodak"). By its Motion, Kodak seeks a protective order to

quash because the fourteen topics (i) fail to satisfy Rule 30(b)(6)'s "reasonable particularity"

requirement by broadly seeking all "factual bases allegedly supporting, refuting, or relating to

Defendants" defenses; and (ii) constitute improper contention interrogatories. The bases for this Motion are as follows:

1.    Rule 26(c) provides that upon "motion by a party or by the person from who discovery is sought ... the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). To prevail, the movant must demonstrate good cause for the protective order. *Id*

2.    Donnelley's Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("Deposition Notice") seeks testimony regarding the factual bases for each defense asserted by Kodak in this litigation. Ex. A (Topics 1-13 and 15). For instance, Topic 5 seeks "[t]he factual bases allegedly supporting, refuting, or relating to Defendants' defense of invalidity, including but not limited to" allegations in Defendants' Answer and contention interrogatory response on invalidity. *Id* at 5. Donnelley crafts the scope of the thirteen other topics similarly. *Id* at 4-6, 9.

3.    In its Objections, Kodak noted that the fourteen contention deposition topics failed to "define the subject matter to be discussed at the deposition with 'reasonable particularity,' as required by Rule 30(b)(6)." Ex. B (Topics 1-13 and 15).

4.    Other courts have rejected similarly-worded 30(b)(6) topics for failing to comply with the "reasonable particularity" requirement:

> Rule 30(b)(6) requires a party to identify the matters on which examination is requested with "reasonable particularity." Fed.R.Civ.P 30(b)(6). Tyco's general reference to "the validity of the patents-in-suit" is not specific enough to allow K-C to reasonably prepare a witness to testify. There are numerous grounds on which patents can be found invalid. Presumably, Tyco has several in mind, since it has asserted invalidity as an affirmative defense. Tyco should narrow its request to specific areas that may be relevant. K-C should not have to give its employees a course on patent law in preparation for a Rule

30(b)(6) deposition. Yet, that is what preparing a designee on topic # 5 would require. K-C's motion for a protective order will therefore be granted.

*Kimberly-Clark Corp. v. Tyco Healthcare Retail Group*, 2007 WL 601837, at *3 (E.D. Wis. Feb. 23, 2007); *accord Sheehy v. Ridge Tool Co.*, 2007 WL 1548976, at *4 (D. Conn. May 24, 2007) (granting protective order when plaintiff noticed 30(b)(6) deposition for person "most knowledgeable as to the subject Complaint" after reasoning that "while a simple notice pleading suffices to commence an action, it does not, in this case, satisfy the 'reasonable particularity' of Rule 30(b)(6).") [1]

5. Moreover, Defendants noted that the contention topics were unduly burdensome and duplicative, as all the information sought by the each of the contention topics had already been provided to Donnelley in Defendants' interrogatory responses. *Id*; *see Heron v. Potter*, 2006 WL 3703693, at *1 (D. Del. Oct. 23, 2006) (noting that, in addition to failing to satisfy the "reasonable particularity" requirement, "[p]laintiff has other discovery tools available to determine the relevant facts that may support its contention"). In particular, Donnelley had already served contention interrogatories covering the exact same scope sought by each of the contention deposition topics, with Kodak having provided its most-recent supplemental response to each interrogatory in April 2007. Ex. D. As but one example of the duplicative nature of the interrogatories and deposition topics, below is Donnelley's Interrogatory No. 2 compared with Topic 2 of Donnelley's Deposition Notice:

---

[1]    During the meet-and-confer conference for this Motion, Donnelley was unable to provide any credible explanations for why Topics 1-13 and 15 satisfied Rule 30(b)(6)'s "reasonable particularity" requirement. Donnelley's only response was that Topic 15 specifically identified individual software titles. Ex. C at 1. Topic 15, however, expressly notes that its scope is "not limited to" the products named therein. Thus, none of the topics at issue in this motion define the scope of the deposition with "reasonable particularity," as required under the Rule.

- **Interrogatory No. 2:** State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent, or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations. Ex. D at 4.

- **Topic 2:** The factual bases allegedly supporting, refuting, or relating to Defendants' defense that Defendants have not directly infringed any claim of the patents in suit, including but not limited to the allegations set forth in Paragraph 42 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 2 and any supplements thereto. Ex. A at 4.[2]

6.     Kodak noted in its Objections that such contention-based depositions are improper, citing to three cases: *SmithKline Beecham Corp. v. Apotex Corp*, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004); *Joint Stock Society v Heublien, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D. Del. May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A. No. 95-21-SLR, tr. at 11 (Oral Ruling D. Del. Dec. 7, 1995). *See* Ex. B at 3-15, 19.

7.     In particular, the situation presented here is analogous to that considered by the court in *SmithKline Beecham*. There, defendant sought Rule 30(b)(6) deposition testimony regarding plaintiff's contentions, despite the fact that plaintiff was willing to provide this information through interrogatory responses. The *SmithKline Beecham* court noted that under the law, "a party may properly resist a Rule 30(b)(6) deposition on the grounds that the

---

[2]     Kodak 30(b)(6) witnesses have already testified regarding the operation of its accused products, and thus, Donnelley is effectively trying to get a second bite at the apple by including catch-all topics in its Deposition Notice.

information sought is more appropriately discoverable through contention interrogatories." 2004

WL 739959, at *2. The court framed the issues:

> Whether contention interrogatories are more appropriate than Rule
> 30(b)(6) depositions 'will be a case by case factual determination.' In
> making this determination we will be guided by 'which device would
> yield most reliably and in the most cost-effective, least burdensome
> manner information that is sufficiently complete to meet the needs of the
> parties and the court in a case like this '

*Id.* at *3 (citing *United States v. Taylor*, 166 F.R.D. 356, 363 n.7 (M.D.N.C. 1996) and

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991),

*overruled on other grounds by* 765 F.Supp. 611 (N.D. Cal. 1991)).

    8.    Here, as in *SmithKline Beecham*, Donnelley seeks 30(b)(6) deposition testimony

regarding Kodak's contentions. As Kodak noted in its Objections, the identification of factual

bases supporting its various defenses was usually conducted by Kodak's counsel; the

identification of such factual bases is thus inextricably intertwined with Kodak's legal

contentions themselves. Under such circumstances, "[i]t would be very difficult for a non-

attorney witness to answer such questions at a deposition." *SmithKline Beecham*, 2004 WL

739959, at *3.[3]

    9.    On September 17, 2007, counsel for Kodak and Donnelley held a meet-and-

confer conference to discuss these issues. Ex. C. During this meet-and-confer, Donnelley stated

that the 30(b)(6) deposition topics were motivated by Kodak's "sparse" contention interrogatory

responses. This statement took Kodak by surprise, considering that Donnelley had never before

---

[3]    Unlike in *SmithKline Beecham*, where the plaintiff was allowed to avoid the contention-
based depositions simply on the promise of providing contention interrogatory responses, here
Kodak has already identified the factual bases for each of its defenses, pursuant to Donnelley's
interrogatories. Moreover, Kodak will continue to amend its interrogatory responses, as
necessary, pursuant to the Federal Rules of Civil Procedure.

expressed a concern that Kodak's current supplemental interrogatory responses, served almost half a year ago (in April 2007), were insufficient. Indeed, during the meet-and-confer, Donnelley was unable to identify any correspondence identifying the perceived deficiencies in Kodak's responses, nor could Donnelley identify any such deficiencies during the teleconference. *Id* at 2.

10.    Therefore, Topics 1-13 and 15 of Donnelley's Deposition Notice suffer from multiple flaws. First, the Topics fail to define the scope of the depositions with "reasonable particularity." Further, the Topics are unduly burdensome on Kodak, in light of the fact that Kodak has previously provided Donnelley with the information sought in the depositions via contention interrogatory responses.

11.    Kodak thus has shown the requisite good cause required by Rule 26(c) and respectfully moves for a protective order quashing Topics 1-13 and 15 of the Deposition Notice.[4] *See* Fed. R. Civ. P. 26(c)(1). A Form of Order is attached hereto.

---

[4]    Pursuant to Local Rule 30.2, the filing of this motion stays the depositions until the motion is ruled upon by the Court.

*Of Counsel*:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500

Dated:  September 20, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,
NexPress Solutions, Inc., Kodak Versamark,
Inc., Eastman Kodak Company and Kodak
Graphic Communications Company*

RLF1-3203283-1

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for the defendants has discussed the subject of the foregoing motion with counsel for plaintiffs, and that the parties have not been able to reach agreement on the issues raised in the motion.

_____
Jameson A.L. Tweedie (#4927)

September 20, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2007, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following,

who have also been served as noted:

**BY HAND DELIVERY**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on September 25, 2007, the foregoing was sent to the following non-

registered participants in the manner indicated:

**BY FEDERAL EXPRESS**

Douglas I. Lewis                          John G. Hutchinson
Jamie L. Secord                           Sidley Austin, LLP
Sidley Austin, LLP                        787 Seventh Avenue
One South Dearborn Street                 New York, NY   10019
Chicago, IL   60603

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>      Defendants. | C.A. No. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>      v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>      Counterclaim-Defendant, | |

## ORDER

Pursuant to Fed. R. Civ. P. 26(c)(2) and Local Rule 30.2, the Court quashes the

Topics 1-13 and 15 of R.R. Donnelley's Notice of Deposition of Defendants Pursuant to

Federal Rule of Civil Procedure 30(b)(6) (served on August 23, 2007), and rules that the

depositions on such topics will not proceed.

SO ORDERED this ___ day of _____ 2007.

_____
United States District Court Judge

RLF1-3203283-1

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 06-032 (JJF) |
| | ) |
| CREO, INC., NEXPRESS SOLUTIONS, | ) |
| INC., KODAK VERSAMARK, INC., | ) |
| EASTMAN KODAK COMPANY AND | ) |
| KODAK GRAPHIC COMMUNICATIONS | ) |
| COMPANY, | ) |
| | ) |
| Defendants | ) |
| | ) |
| _____ | ) |
| | ) |
| EASTMAN KODAK COMPANY, | ) |
| | ) |
| Counterclaim-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| R.R. DONNELLEY & SONS COMPANY, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

**R.R. DONNELLEY'S NOTICE OF DEPOSITION OF DEFENDANTS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6), Fed. R. Civ. P., plaintiff

R.R. Donnelley & Sons Company ("R.R. Donnelley") will take the deposition upon oral

examination of defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman

Kodak Company, and Kodak Graphic Communications Company (collectively "Defendants") on

the topics set forth in the attached Schedule A, through one or more of its officers, directors, or

managing agents, or other persons who consent to testify on Defendants' behalf, commencing on

September 24, 2007 at 9:30 a.m. R.R. Donnelley requests that Defendants identify in writing at

least five (5) business days in advance of the deposition the person(s) designated by Defendants, the job title of each such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will take place at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, Wilmington, DE 19899-1347 beginning on the date and time specified above. The deposition will be taken before an officer authorized to administer oaths by the laws of the United States and will be recorded by stenographic and/or videographic means. The deposition will continue from day to day until completed.

At least five (5) business days in advance of the scheduled deposition or 30 days from service of this Notice, whichever is earlier, Defendants are requested to produce all documents and things referenced in or related to the topics in Schedule A to the extent not previously produced.

You are invited to attend.

MORRIS NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

August 23, 2007
1219579

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Plaintiff*
*R.R. Donnelley & Sons Company*

## SCHEDULE A

### DEFINITIONS AND INSTRUCTIONS

A.    "Creo" means Creo, Inc. and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

B.    "Kodak" means Eastman Kodak Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, including, but not limited to, Kodak Versamark, Inc., NexPress Solutions, Inc., Creo, and KGCC and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

C.    "KGCC" means Kodak Graphic Communications Company and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the directions or control of any of the foregoing.

D.    "Defendants" means Creo, Kodak, and KGCC, collectively.

E.    The term "document" is synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including documents in electronic form, and physical objects and things within the meaning of that Rule, such as research and development samples, prototypes, production samples and the like. A draft or non-identical copy is a separate document within the meaning of this term.

F.    The term "thing" refers to any physical specimen or tangible item in the possession, custody, or control of Defendants.

G.    The term "concerning" means relating to, referring to, regarding, discussing, describing, evidencing, constituting, supporting, or refuting.

H.    "The '452 patent" means United States Patent No. 6,205,452.

I    "The '599 patent" means United States Patent No. 6,327,599.

J.    "The '940 patent" means United States Patent No. 6,844,940.

K.    "The '801 patent" means United States Patent No. 6,952,801.

L.    The "patents-in-suit" shall refer to the '452 patent, the '599 patent, the '940 patent, and the '801 patent, collectively.

M.    "Person" and the derivative forms thereof, including the plural and possessive forms, refers to any natural person or any entity, including any business, corporation, partnership, limited partnership, firm, association, organization, club, joint venture, unincorporated entity, government unit or entity, or any other legal entity, and any officers, agents, representatives, employees, directors, or attorneys of any such person.

N.    The terms "referring to," "relating to," "related to," and "that relate(s) to" mean, without limitation, constituting, comprising, containing, discussing, embodying, reflecting, evidencing, identifying, mentioning, stating, or referring to the particular subject matter identified.

O.    The term "including" does not limit the scope of a request. It is to be construed as meaning all such documents including, but not limited to those types of documents specifically identified.

2

P.    The singular shall include the plural and the plural shall include the singular.

Q.    The term "Defendants' Software Products" means Creo Darwin (for both QuarkXPress and Adobe InDesign), Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, Composer, and any other software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing.

R.    The term "Defendants' Hardware Products" means any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing, including but not limited to the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

S.    The term "Variable Digital Printing" refers to digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied.

T.    The term "Third Party Software Products" means any software product meant to enable Variable Digital Printing and not included in Defendants' Software Products.

U.    The term "Amended Answer" means Defendants' Answer to Amended Complaint and Affirmative Defenses of Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company and Counterclaim of Counterclaim-Plaintiff Eastman Kodak Company, filed January 31, 2007.

V.    All documents related to the topics in Schedule A shall be produced to R.R. Donnelley in the same file or organizational environment in which they were maintained.

3

For example, a document that is part of a file, docket, or other grouping, should be physically produced together with all other documents from said file, docket, or other grouping responsive to said request, in the same order or manner of arrangement as the original. A document that is stapled, clipped or otherwise bound should be produced in the same manner as the original.

W.    The request for documents and things related to the topics in Schedule A shall be deemed to be continuing and, in accordance with Fed. R. Civ. P. 26(e), if, after responding to the request, Defendants acquire knowledge or information regarding additional information responsive to the request, Defendants shall provide R.R. Donnelley with a statement of such additional information.

## TOPICS

1.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense that R.R. Donnelley has failed to state a claim upon which relief may be granted, including but not limited to the allegations set forth in Paragraph 42 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 1 and any supplements thereto.

2.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense that Defendants have not directly infringed any claim of the patents in suit, including but not limited to the allegations set forth in Paragraph 43 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 2 and any supplements thereto.

3.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense that Defendants have not indirectly infringed any claim of the patents in suit, including but not limited to the allegations set forth in Paragraph 44 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 3 and any supplements thereto.

4.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of estoppel, including but not limited to the allegations set forth in Paragraph 45 of their

4

Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 4 and any supplements thereto.

5.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of invalidity, including but not limited to the allegations set forth in Paragraph 46 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 5 and any supplements thereto

6.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of laches, including but not limited to the allegations set forth in Paragraph 47 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 6 and any supplements thereto.

7.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of equitable estoppel, including but not limited to the allegations set forth in Paragraph 48 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 7 and any supplements thereto.

8.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of waiver, including but not limited to the allegations set forth in Paragraph 49 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 8 and any supplements thereto.

9.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of prosecution laches, including but not limited to the allegations set forth in Paragraph 50 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 9 and any supplements thereto.

5

10.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of license and/or implied license, including but not limited to the allegations set forth in Paragraph 51 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 10 and any supplements thereto.

11.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of unclean hands, including but not limited to the allegations set forth in Paragraph 52 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 11 and any supplements thereto.

12.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of 35 U.S.C. §§ 286 and/or 287, including but not limited to the allegations set forth in Paragraph 53 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 12 and any supplements thereto.

13.    The factual bases allegedly supporting, refuting, or relating to Defendants' defense of inequitable conduct, including but not limited to the allegations set forth in Paragraphs 54-63, inclusive, of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 17 and any supplements thereto.

14.    The following topics related to the CS400 data prep software and the CS400 controller:

     a.    The design, operation, functionality, features, structure, performance, and technical characteristics of CS400 data prep software.

     b.    Any consideration, examination, analysis, or test conducted on the CS400 data prep software or the CS400 controller that relates in any way to determining whether that product infringes the patents-in-suit.

6

c.    The conception, design, development, and commercialization of the CS400 data prep software.

d.    The content of Defendants' documentation for the CS400 data prep software and the CS400 controller (in any form, including hard copy and online documentation), including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

e.    Instructions provided to users of CS400 data prep software and CS400 controller.

f.    The content and intent of Defendants' marketing and promotional materials for the CS400 data prep software and the CS400 controller.

g.    Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of the CS400 data prep software and the CS400 controller.

h.    The output produced by the CS400 data prep software, including but not limited to the organization and formatting of static and variable data in such output.

i.    Defendants' sales, both in units and dollars amounts, revenue, costs, and profits relating to the CS400 data prep software and the CS400 controller.

j.    The design, operation, functionality, features, structure, performance, and technical characteristics of the CS400 data prep software as they relate to Variable Digital Printing.

7

k.   The conception, design, development, and commercialization of CS400 data prep software relating to Variable Digital Printing.

l.   The content of Defendants' documents for the CS400 data prep software and the CS400 controller (in any form, including hard copy and online documentation) relating to Variable Digital Printing, including but not limited to user's guides, reference manuals, product manuals, product description, technical articles, and the like.

m.   Instructions provided to users of the CS400 data prep software and the CS400 controller relating to Variable Digital Printing.

n.   The content and intent of Defendants' marketing and promotional materials for the CS400 data prep software and the CS400 controller, as they relate to Variable Digital Printing.

o.   Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of the CS400 data prep software and the CS400 controller, as they relate to Variable Digital Printing.

p.   The identification of, meaning of, and use of data stored by CS400 data prep software, including but not limited to temporary data (whether written to a file or not) used in Variable Digital Printing and data stored in databases or in files (including but not limited to the Prime base database) during Variable Digital Printing.

q.   The identity and location of all documents and things concerning the foregoing topics.

8

r.    The identity and location of all persons knowledgeable about the foregoing topics.

15.    The factual basis for Defendants' claims that the patents-in-suit are invalid, including but not limited to (1) any such allegations supported by, refuted by, or relating to products produced by, distributed by, developed by, or used by Defendants or (2) any such allegations relating to Begin, DijiComp, Catalogic, Kodak Ektaprint, Forms Merge, Printstreamer, Access, FoxPro, IBM Graphical Data Display Manager, and Paradox.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 23, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger

I also certify that copies were caused to be served on August 23, 2007, upon the following in the manner indicated:

### BY EMAIL & HAND

Frederick L. Cottrell III
Richards Layton & Finger
One Rodney Square
920 N. King Street
Wilmington, DE 19801

### BY EMAIL

Richard McMillan, Jr.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>      v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>    Defendants. | C.A. No. 06-32-JJF |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>      v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendant. | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S,
EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS
COMPANY'S RESPONSES AND OBJECTIONS TO
R.R. DONNELLEY'S (FOURTH) NOTICE OF DEPOSITION OF DEFENDANTS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak

Company, and Kodak Graphic Communications Company ("Defendants") respond and object to

R.R. Donnelley & Sons Company's ("RRD") (Fourth) Notice of Deposition of Defendants

Pursuant to Federal Rule of Civil Procedure 30(b)(6), served on August 23, 2007 ("Deposition

Notice").

To the extent Defendants agree to produce a witness for any of the topics below, Defendants will work with RRD to identify a mutually acceptable date or date(s) and location or location(s). Defendants will use their best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications and objections set forth below. Defendants, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed. Defendants reserve all objections, in this or any other proceeding, with respect to the relevance, materiality, admissibility and privilege of any deposition topics or responses to the topics.

Defendants will supplement their document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Defendants do not intend to produce additional documents in response to this Notice

I.    GENERAL OBJECTIONS TO TOPICS AND REQUESTS FOR PRODUCTION

Defendants make the following objections, whether or not separately set forth, in response to each of the topics:

1.    Defendants object to the Deposition Notice to the extent it fails to provide a reasonable time frame limitation. To the extent Defendants agree to produce a witness for any of the topics below, Defendants will produce testimony regarding events since 2001.

II.    SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

**TOPIC NO. 1**

The factual bases allegedly supporting, refuting, or relating to Defendants' defense that R.R. Donnelley has failed to state a claim upon which relief may be granted, including but not limited to the allegations set forth in Paragraph 42 of their Amended Answer and Defendants' Response to R R Donnelley's Interrogatory No 1 and any supplements thereto

## RESPONSE TO TOPIC NO. 1

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No 1 Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense that R.R. Donnelley has failed to state a claim upon which relief may be granted." This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense

Additionally, the topic is unduly burdensome and duplicative because all information requested by this topic has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No 1 Moreover, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges. Finally, this is an improper, contention-based deposition topic. *See, e g., SmithKline Beecham Corp v Apotex Corp*, 2004 WL 739959 (E D. Pa. Mar 23, 2004) *See also Joint Stock Society v Heublein, Inc*, C A No 95-749-RRM, tr. at 51 (Oral Ruling D Del. May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc*, C A. No 95-21-SLR, tr at 11 (Oral Ruling D Del Dec 7, 1995).

## TOPIC NO. 2

The factual bases allegedly supporting, refuting, or relating to Defendants' defense that Defendants have not directly infringed any claim of the patents in suit, including but not limited to the allegations set forth in Paragraph 43 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No 2 and any supplements thereto

## RESPONSE TO TOPIC NO. 2

Defendants object to the topic as stated because it is overly broad and fails to define the

- 3 -

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6)  For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No 2  Further, the topic seeks testimony regarding factual bases "relating to

Defendants' defense that Defendants have not directly infringed any claim of the patents in suit."

This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the

defense  Moreover, RRD has already taken 30(b)(6) depositions on a nearly identical topics,

including Topics 1 and 4 of RRD's Second 30(b)(6) Notice and Topic 1 of RRD's Third 30(b)(6)

Notice  These topics relate to the output produced by Defendants' Software Products, the

design, operation, functionality, features, structure, performance, and technical characteristics of

Defendants' Software Products, and the identification of, meaning of, and use of data stored by

Defendants' Software Products, respectively.  The subject matter of these topics is substantially

the same as the subject matter sought by this topic

Additionally, all information requested by this topic has previously been produced to

RRD as part of Defendants' response to RRD's Interrogatory No 2  Moreover, the identification

of such factual bases relating to this defense was conducted by Defendants' counsel, making

such identification protected by the attorney-client and attorney work product privileges

Finally, this is an improper, contention-based deposition topic. *See, e g , SmithKline Beecham

Corp v Apotex Corp* , 2004 WL 739959 (E D Pa Mar 23, 2004). *See also Joint Stock Society

v Heublein, Inc* , C A. No. 95-749-RRM, tr. at 51 (Oral Ruling D Del May 1, 1996);

*Discovision Associates v Disc Manufacturing, Inc* , C A No 95-21-SLR, tr at 11 (Oral Ruling

D. Del Dec. 7, 1995)

- 4 -

## TOPIC NO. 3

The factual bases allegedly supporting, refuting, or relating to Defendants' defense that Defendants have not indirectly infringed any claim of the patents in suit, including but not limited to the allegations set forth in Paragraph 44 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 3 and any supplements thereto

## RESPONSE TO TOPIC NO. 3

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No. 3. Further, the topic seeks testimony regarding factual bases "relating to

Defendants' defense that Defendants have not indirectly infringed any claim of the patents in

suit." This is vague; Defendants are unable to determine which facts RRD may believe "relate"

to the defense. Moreover, RRD has already taken 30(b)(6) depositions on a nearly identical

topics, including Topics 1 and 4 of RRD's Second 30(b)(6) Notice and Topic 1 of RRD's Third

30(b)(6) Notice. These topics relate to the output produced by Defendants' Software Products

and Third Party Software Products, the design, operation, functionality, features, structure,

performance, and technical characteristics of Defendants' Software Products, and the

identification of, meaning of, and use of data stored by Defendants' Software Products and Third

Party Software Products, respectively  Additionally, Topics 8 and 9 of RRD's Second 30(b)(6)

Notice relate to the content and intent of Defendants' marketing and promotional materials for,

and promotion or sales by Defendants or Defendants' Software Products and Third Party

Software Products  The subject matter of these topics is substantially the same as the subject

matter sought by this topic

Further, to date RRD has refused to provide any information about its allegations that

Defendants have indirectly infringed the patents in suit, despite repeated requests by Defendants

RRD has failed to provide such information as requested in Defendants' Interrogatory No. 1

RRD has also failed to specifically identify the Third Party Software Products it alleges to be at

issue, despite numerous requests from Defendants  To the extent Defendants have identified

factual bases, this information has previously been produced to RRD as part of Defendants'

response to RRD's Interrogatory No. 3.

Furthermore, the identification of such factual bases relating to this defense was

conducted by Defendants' counsel, making such identification protected by the attorney-client

and attorney work product privileges. Finally, this is an improper, contention-based deposition

topic. *See, e g*, *SmithKline Beecham Corp v Apotex Corp*, 2004 WL 739959 (E.D. Pa. Mar.

23, 2004)  *See also Joint Stock Society v Heublein, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral

Ruling D. Del. May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A. No. 95-

21-SLR, tr. at 11 (Oral Ruling D. Del. Dec. 7, 1995).

## TOPIC NO. 4

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of
estoppel, including but not limited to the allegations set forth in Paragraph 45 of their Amended
Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 4 and any supplements
thereto

## RESPONSE TO TOPIC NO. 4

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No. 4  Further, the topic seeks testimony regarding factual bases "relating to

Defendants' defense of estoppel." This is vague; Defendants are unable to determine which facts

- 6 -

RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to

RRD as part of Defendants' response to RRD's Interrogatory No. 4  Moreover, the identification

of such factual bases relating to this defense was conducted by Defendants' counsel, making

such identification protected by the attorney-client and attorney work product privileges.

Finally, this is an improper, contention-based deposition topic. *See, e g , SmithKline Beecham*

*Corp  v  Apotex Corp* , 2004 WL 739959 (E D. Pa. Mar. 23, 2004). *See also Joint Stock Society*

*v  Heublein, Inc* , C A. No  95-749-RRM, tr. at 51 (Oral Ruling D. Del  May 1, 1996);

*Discovision Associates v  Disc Manufactui ing, Inc* , C.A. No  95-21-SLR, tr  at 11 (Oral Ruling

D  Del. Dec  7, 1995).

## TOPIC NO. 5

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of
invalidity, including but not limited to the allegations set forth in Paragraph 46 of their Amended
Answer and Defendants' Response to R R  Donnelley's Interrogatory No  5 and any supplements
thereto

## RESPONSE TO TOPIC NO. 5

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6)  For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No. 5  Further, the topic seeks testimony regarding factual bases "refuting or

relating to Defendants' defense of invalidity."  This is vague; Defendants are unable to determine

which facts RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to

RRD as part of Defendants' response to RRD's Interrogatory No  5  Moreover, the identification

of such factual bases relating to this defense was conducted by Defendants' counsel, making

such identification protected by the attorney-client and attorney work product privileges.

Finally, this is an improper, contention-based deposition topic. *See, e g*, *SmithKline Beecham*

*Corp v Apotex Corp*, 2004 WL 739959 (E.D Pa. Mar. 23, 2004). *See also Joint Stock Society*

*v Heublein, Inc*, C A. No. 95-749-RRM, tr at 51 (Oral Ruling D Del. May 1, 1996);

*Discovision Associates v. Disc Manufacturing, Inc*, C.A. No. 95-21-SLR, tr at 11 (Oral Ruling

D Del. Dec 7, 1995)

## TOPIC NO. 6

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of
laches, including but not limited to the allegations set forth in Paragraph 47 of their Amended
Answer and Defendants' Response to R.R Donnelley's Interrogatory No 6 and any supplements
thereto.

## RESPONSE TO TOPIC NO. 6

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No 6. Further, the topic seeks testimony regarding factual bases "relating to

Defendants' defense of laches." This is vague; Defendants are unable to determine which facts

RRD may believe "relate" to the defense. Moreover, to date RRD has refused to produce

documents relevant to Defendants' defense of laches, making the identification of all factual

bases for this defense impossible *See* Defendants' Motion to Compel (D I. 196) (describing

RRD's improper objections to Defendants' Requests for Production 63 and 64) To the extent

Defendants have identified factual bases, this information has previously been produced to RRD

as part of Defendants' response to RRD's Interrogatory No 6

- 8 -

Furthermore, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges. Finally, this is an improper, contention-based deposition topic. *See, e g , SmithKline Beecham Corp v Apotex Corp* , 2004 WL 739959 (E.D. Pa. Mar. 23, 2004) *See also Joint Stock Society v Heublein, Inc* , C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D. Del. May 1, 1996); *Discovision Associates v Disc Manufactuing, Inc* , C.A. No. 95-21-SLR, tr. at 11 (Oral Ruling D. Del. Dec. 7, 1995)

## TOPIC NO. 7

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of equitable estoppel, including but not limited to the allegations set forth in Paragraph 48 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory no. 7 and any supplements thereto.

## RESPONSE TO TOPIC NO. 7

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No. 7. Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense of equitable estoppel." This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense. Moreover, to date RRD has refused to produce documents relevant to Defendants' defense of equitable estoppel, making the identification of all factual bases for this defense impossible. *See* Defendants' Motion to Compel (D.I. 196) (describing RRD's improper objections to Defendants' Requests for Production 63 and 64). To the extent Defendants have identified factual bases, this information has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No. 7.

Furthermore, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges  Finally, this is an improper, contention-based deposition topic  *See, e g , SmithKline Beecham Corp  v  Apotex Corp* , 2004 WL 739959 (E.D  Pa  Mar. 23, 2004)  *See also Joint Stock Society v  Heublein, Inc* , C A  No  95-749-RRM, tr. at 51 (Oral Ruling D  Del  May 1, 1996); *Discovision Associates v  Disc Manufacturing, Inc* , C A  No  95-21-SLR, tr. at 11 (Oral Ruling D  Del  Dec  7, 1995).

## TOPIC NO. 8

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of waiver, including but not limited to the allegations set forth in Paragraph 49 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No  8 and any supplements thereto

## RESPONSE TO TOPIC NO. 8

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6)  For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No  8  Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense of waiver "  This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense.  Moreover, to date RRD has refused to produce documents relevant to Defendants' defense of waiver, making the identification of all factual bases for this defense impossible.  *See* Defendants' Motion to Compel (D I. 196) (describing RRD's improper objections to Defendants' Requests for Production 60, 63 and 64).  To the extent Defendants have identified factual bases, this information has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No  8.

- 10 -

Furthermore, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges  Finally, this is an improper, contention-based deposition topic. *See, e g*, *SmithKline Beecham Corp v. Apotex Corp*, 2004 WL 739959 (E D. Pa. Mar. 23, 2004). *See also Joint Stock Society v Heublein, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D Del May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A. No 95-21-SLR, tr. at 11 (Oral Ruling D Del. Dec. 7, 1995).

## TOPIC NO. 9

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of prosecution laches, including but not limited to the allegations set forth in Paragraph 50 of their Amended Answer and Defendants' Response to R R Donnelley's Interrogatory No 9 and any supplements thereto.

## RESPONSE TO TOPIC NO. 9

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6)  For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No 9  Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense of prosecution laches." This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No. 9  Furthermore, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges  Finally, this is an improper, contention-based deposition topic. *See, e g.*, *SmithKline*

- 11 -

*Beecham Corp v Apotex Corp*, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004). *See also Joint*

*Stock Society v Heublein, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D. Del. May 1,

1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A. No. 95-21-SLR, tr. at 11 (Oral

Ruling D. Del. Dec. 7, 1995).

## TOPIC NO. 10

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of
license and/or implied license, including but not limited to the allegations set forth in Paragraph
51 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No.
10 and any supplements thereto.

## RESPONSE TO TOPIC NO. 10

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No. 10. Further, the topic seeks testimony regarding factual bases "relating to"

Defendants' defense of license and/or implied license." This is vague; Defendants are unable to

determine which facts RRD may believe "relate" to the defense.

Moreover, to date RRD has refused to produce documents relevant to Defendants'

defenses of license and implied license, making the identification of all factual bases for this

defense impossible. *See* Defendants' Motion to Compel (D.I. 196) (describing RRD's improper

objections to Defendants' Requests for Production 60). To the extent Defendants have identified

factual bases, this information has previously been produced to RRD as part of Defendants'

response to RRD's Interrogatory No. 10.

Furthermore, the identification of such factual bases relating to this defense was

conducted by Defendants' counsel, making such identification protected by the attorney-client

- 12 -

and attorney work product privileges. Finally, this is an improper, contention-based deposition topic  *See, e g , SmithKline Beecham Corp v Apotex Corp* , 2004 WL 739959 (E.D. Pa. Mar 23, 2004). *See also Joint Stock Society v Heublein, Inc* , C A No. 95-749-RRM, tr at 51 (Oral Ruling D. Del. May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc* , C A No. 95-21-SLR, tr at 11 (Oral Ruling D Del Dec 7, 1995)

## TOPIC NO. 11

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of unclean hands, including but not limited to the allegations set forth in Paragraph 52 of their Amended Answer and Defendants' Response to R R. Donnelley's Interrogatory No. 11 and any supplements thereto

## RESPONSE TO TOPIC NO. 11

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6)  For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No. 11  Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense of unclean hands " This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No 11  Moreover, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges. Finally, this is an improper, contention-based deposition topic  *See, e g , SmithKline Beecham Corp v. Apotex Corp* , 2004 WL 739959 (E D. Pa. Mar. 23, 2004). *See also Joint Stock Society v Heublein, Inc* , C.A. No 95-749-RRM, tr at 51 (Oral Ruling D Del. May 1,

- 13 -

1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A No 95-21-SLR, tr at 11 (Oral

Ruling D Del Dec 7, 1995)

## TOPIC NO. 12

The factual bases allegedly support, refuting, or relating to Defendants' defense of 35
U.S.C. §§ 286 and/or 287, including but not limited to the allegations set forth in Paragraph 53 of
their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No 12 and
any supplements thereto

## RESPONSE TO TOPIC NO. 12

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6) For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to

Interrogatory No. 12 Further, the topic seeks testimony regarding factual bases "relating to

Defendants' defense of 35 U.S.C. §§ 286 and/or 287" This is vague; Defendants are unable to

determine which facts RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to

RRD as part of Defendants' response to RRD's Interrogatory No 12. Moreover, the

identification of such factual bases relating to this defense was conducted by Defendants'

counsel, making such identification protected by the attorney-client and attorney work product

privileges. Finally, this is an improper, contention-based deposition topic *See, e.g., SmithKline*

*Beecham Corp v Apotex Corp*, 2004 WL 739959 (E.D. Pa. Mar 23, 2004) *See also Joint*

*Stock Society v Heublein, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D. Del May 1,

1996); *Discovision Associates v Disc Manufacturing, Inc*, C.A. No 95-21-SLR, tr at 11 (Oral

Ruling D Del Dec 7, 1995)

- 14 -

## TOPIC NO. 13

The factual bases allegedly supporting, refuting, or relating to Defendants' defense of inequitable conduct, including but not limited to the allegations set forth in Paragraphs 54-63, inclusive, of their Amended Answer and Defendants' Response to R.R Donnelley's Interrogatory No 17 and any supplements thereto.

## RESPONSE TO TOPIC NO. 13

Defendants object to the topic as stated because it is overly broad and fails to define the subject matter to be discussed at the deposition with "reasonable particularity," as required by Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes, but is "not limited to" the allegations set forth in Defendants' Amended Answer and Response to Interrogatory No 17. Further, the topic seeks testimony regarding factual bases "relating to Defendants' defense of inequitable conduct." This is vague; Defendants are unable to determine which facts RRD may believe "relate" to the defense

Additionally, all information requested by this topic has previously been produced to RRD as part of Defendants' response to RRD's Interrogatory No 17. Moreover, the identification of such factual bases relating to this defense was conducted by Defendants' counsel, making such identification protected by the attorney-client and attorney work product privileges. Finally, this is an improper, contention-based deposition topic. *See, e g , SmithKline Beecham Corp v Apotex Corp* , 2004 WL 739959 (E.D. Pa Mar 23, 2004). *See also Joint Stock Society v Heublein, Inc* , C.A No. 95-749-RRM, tr at 51 (Oral Ruling D Del. May 1, 1996); *Discovision Associates v Disc Manufacturing, Inc* , C.A. No 95-21-SLR, tr at 11 (Oral Ruling D Del Dec 7, 1995).

## TOPIC NO. 14

The following topics related to the CS400 data prep software and the CS400 controller:

– 15 –

TOPIC NO. 14(a)

The design, operation, functionality, features, structure, performance, and technical characteristics of CS400 data prep software

TOPIC NO. 14(b)

Any consideration, examination, analysis, or test conducted on the CS400 data prep software or the CS400 controller that relates in any way to determining whether that product infringes the patents-in-suit.

TOPIC NO. 14(c)

The conception, design, development, and commercialization of the CS400 data prep software

TOPIC NO. 14(d)

The content of Defendants' documentation for the CS400 data prep software and the CS400 controller (in any form, including hard copy and online documentation), including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like

TOPIC NO. 14(e)

Instructions provided to users of CS400 data prep software and CS400 controller

TOPIC NO. 14(f)

The content and intent of Defendants' marketing and promotional materials for the CS400 data prep software and the CS400 controller.

TOPIC NO. 14(g)

Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of the CS400 data prep software and the CS400 controller

TOPIC NO. 14(h)

The output produced by the CS400 data prep software, including but not limited to the organization and formatting of static and variable data in such output.

TOPIC NO. 14(i)

Defendants' sales, both in units and dollar amounts, revenue, costs, and profits relating to the CS400 data prep software and the CS400 controller.

RLF1-3199549-2

## TOPIC NO. 14(j)

The design, operation, functionality, features, structure, performance, and technical characteristics of the CS400 data prep software as they related to Variable Digital Printing.

## TOPIC NO. 14(k)

The conception, design, development, and commercialization of CS400 data prep software relating to Variable Digital Printing.

## TOPIC NO. 14(l)

The content of Defendants' documentation for the CS400 data prep software and the CS400 controller (in any form, including hard copy and online documentation) relating to Variable Digital Printing, including, but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like.

## TOPIC NO. 14(m)

Instructions provided to users of the CS400 data prep software and the CS400 controller relating to Variable Digital Printing

## TOPIC NO. 14(n)

The content and intent of Defendants' marketing and promotional materials for the CS400 data prep software and the CS400 controller, as they relate to Variable Digital Printing

## TOPIC NO. 14(o)

Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of the CS400 data prep software and the CS400 controller, as they relate to Variable Digital Printing.

## TOPIC NO. 14(p)

The identification of, meaning of, and use of data stored by CS400 data prep software, including but not limited to temporary data (whether written to a file or not) used in Variable Digital Printing and data stored in databases or in files (including but not limited to the Prime base database) during Variable Digital Printing

## TOPIC NO. 14(q)

The identify and location of all documents and things concerning the foregoing topics

### TOPIC NO. 14(r)

The identify and location of all persons knowledgeable about the foregoing topics.

### RESPONSE TO TOPIC NO. 14

Defendants object to this topic and its subparts as unduly burdensome and untimely. CS400 is not an accused product in this litigation; RRD has not named CS400 in its Amended Complaint, nor has RRD identified CS400 with corresponding claim charts in response to Defendants' Interrogatory No 1. This Topic, consisting of 18 subparts, is unduly burdensome on Defendants; such an extensive 30(b)(6) deposition topic is not the proper discovery method for the investigation of an unaccused product

Further, Defendants object to the timing of this Topic generally, and particularly note that RRD has waived the right to accuse CS400 of infringement. This deposition notice represents the first time RRD has mentioned CS400, after over 18 months of litigation. RRD has already taken a 30(b)(6) deposition of Defendants' witness(es) most knowledgeable of the Versamark business unit's products, including CS400, on the understanding that RRD had identified all accused products produced by Versamark. Defendants therefore object to this Topic to the extent it requires Defendants to redesignate individuals already deposed in this litigation.

Moreover, Defendants object that a substantial number of the subparts to Topic 14 are duplicative of both one another, and of other 30(b)(6) topics served by RRD. Certain subparts are also overly broad, and if read literally would encompass many aspects of the products in question having nothing to do with this lawsuit, in violation of Rule 30(b)(6)'s requirement that topics be identified with "reasonable particularity." Further, Certain subparts are vague to the extent they rely on ambiguous, undefined terms. Finally, certain subparts seek information protected from disclosure by the attorney-client and/or attorney work product privilege;

- 18 -

Defendants will not produce a witness to testify to such topics

TOPIC NO. 15

The factual basis for Defendants' claims that the patents-in-suit are invalid, including but not limited to (1) any such allegations supported by, refuted by, or relating to products produced by, distributed by, developed by, or used by Defendants or (2) any such allegations relating to Begin, DijiComp, Catalogic, Kodak Ektaprint, Forms Merge, Printstreamer, Access, FoxPro, IBM Graphical Data Display Manager, and Paradox.

RESPONSE TO TOPIC NO. 15

Defendants object to the topic as stated because it is overly broad and fails to define the

subject matter to be discussed at the deposition with "reasonable particularity," as required by

Rule 30(b)(6). For instance, the topic states that the subject matter of the deposition includes,

but is "not limited to (1) any such allegations support by, refuted by, or relating to products

produced by, distributed by, developed by, or used by Defendants.. ." This is vague; Defendants

are unable to determine which facts RRD may believe "relate" to the defense. Further, this

clause fails to specifically identify the products to be discussed at the deposition.

Additionally, all information requested by this topic has previously been produced to

RRD as part of Defendants' response to RRD's Interrogatory No. 5. Moreover, the identification

of such factual bases relating to this defense was conducted by Defendants' counsel, making

such identification protected by the attorney-client and attorney work product privileges

Finally, this is an improper, contention-based deposition topic *See, e g , SmithKline Beecham*

*Corp v Apotex Corp* , 2004 WL 739959 (E.D. Pa. Mar. 23, 2004) *See also Joint Stock Society*

*v Heublein, Inc* , C A No. 95-749-RRM, tr at 51 (Oral Ruling D Del. May 1, 1996);

*Discovision Associates v Disc Manufacturing, Inc* , C.A. No 95-21-SLR, tr at 11 (Oral Ruling

D. Del Dec 7, 1995)

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(212) 624-2500


Dated: September 12, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., NexPress Solutions, Inc., Kodak*
*Versamark, Inc., Eastman Kodak Company*
*and Kodak Graphic Communications*
*Company*

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2007, I served the foregoing on counsel as follows:

### BY HAND DELIVERY & ELECTRONIC MAIL

Jack B. Blumenfeld, Esq
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

### BY FEDERAL EXPRESS & ELECTRONIC MAIL

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-4169
dilewis@sidley.com
jsecord@sidley.com

John G. Hutchinson
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY 10019
(212)839-5398
jhutchinson@sidley.com

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

RLF1-3162707-1

EXHIBIT C



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

September 17, 2007

025140 0000051

VIA FACSIMILE AND U.S. MAIL

Jamie Secord
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
       Kodak Graphic Communications Co., (D. Del.) (Civil Action No. 06-032-
       JJF)*

Dear Jamie:

I write to confirm today's meet and confer teleconference regarding RRD's
Fourth 30(b)(6) deposition notice.

### Topics 1-13 and 15

The primary dispute between the parties relates to whether a 30(b)(6)
deposition is the proper discovery mechanism for these contention topics. You
confirmed our understanding that RRD is limiting these contention topics to factual
bases underlying Defendants' defenses. We noted, however, that this is largely a
distinction without a difference, as the factual bases supporting a given defense are
largely inextricably intertwined with the defense itself. We also asked you to
identify any authority for your position, and – except for a general reference to the
Federal Rules – you were not able to provide any such support.

Moreover, you had no response to why RRD deemed these topics to be
satisfactory under Rule 30(b)(6)'s reasonable particularity requirement. You
asserted that Topic 15 specifically identified individual software titles, but even the
scope of that topic is "not limited to" the products named by RRD. Thus, Topic 15
suffers the same flaws as Topics 1-13.

Finally – over 5 months after Defendants served their current supplemental
interrogatory responses – RRD now for the first time expresses a concern that the
factual bases provided in some of Defendants' interrogatory responses were

Jamie Secord
September 17, 2007
Page 2

"sparse." Yet you were unable to identify any correspondence from RRD identifying perceived deficiencies in Defendants' most-recent interrogatory responses, nor did you identify any such deficiencies during our call. The parties agreed that they have satisfied their obligation to meet and confer regarding these topics.

<u>Topic 14</u>

In response to our objections, you noted that RRD would be willing to provide Defendants with claim charts for CS400 prior to the deposition(s) for Topic 14, possibly as much as two weeks in advance. Defendants said that we would consider this position, and stated that we hope to have a response to your proposal by Wednesday the 19th.

Please let me know if any of the above fails to accurately summarize our conversation.

Best regards,

Nathaniel Grow

cc:   Richard McMillan, Jr.

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>      Defendants. | CIVIL ACTION No. 06-cv-032-JJF<br><br>**REDACTED - PUBLIC VERSION** |
| EASTMAN KODAK COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>      v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>      Counterclaim-Defendant, | |

## CREO, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FOURTH SUPPLEMENTAL RESPONSE TO R.R. DONNELLEY & SONS COMPANY'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 33 and 26(e) of the Federal Rules of Civil Procedure, Creo, Inc.,

Eastman Kodak Company, and Kodak Graphic Communications Company ("Defendants")

provide the following fourth supplemental response to the First Set of Interrogatories to

Defendants Creo, Inc., Eastman Kodak Company, and Kodak Graphics Communications

Company ("the Interrogatories") propounded by R.R. Donnelley & Sons Company ("RRD"):

1

## I.    GENERAL RESPONSES

Defendants' responses to the Interrogatories are made to the best of Defendants' current employees' present knowledge, information, and belief. These responses are at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Defendants' recollection, are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from its further discovery or investigation.

1.    Defendants reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent hearing or proceeding of this or any other action for any purpose whatsoever of these responses.

2    Defendants reserve the right to object on any ground at any time to such other or supplemental interrogatories as RRD may at any time propound involving or relating to the subject matter of the Interrogatories.

## II.    GENERAL OBJECTIONS

Defendants make the following general objections, whether or not separately set forth, in response to each of the Interrogatories:

1.    Defendants object generally to the Interrogatories insofar as they seek information protected by the attorney-client privilege and/or the work-product doctrine. Such information shall not be produced in response to any interrogatory, and any inadvertent response thereto shall not be deemed a waiver of any privilege with respect to such information or of any work-product doctrine which may attach thereto.

2.    Defendants object to the introductory definitions and instructions to the Interrogatories to the extent the definitions and instructions purport to enlarge, expand, or alter in

2

any way the plain meaning and scope of any specific interrogatory, on the ground that such enlargement, expansion, or alteration renders the interrogatory vague, ambiguous, unintelligible, unduly broad, and uncertain.

      3.      Defendants object to all instructions, definitions, and interrogatories to the extent they seek information not currently in Defendants' possession, custody, or control, or refer to persons, entities, or events not known to Defendants, on the grounds that such instructions, definitions, or interrogatories seek to require more of Defendants than any obligation imposed by law, would subject to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose upon Defendants an obligation to investigate or discover information or materials from third parties or sources who are equally accessible to RRD.

## III.    SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

### INTERROGATORY NO. 1

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 46 of their Answer that "RRD has failed to state a claim upon which relief may be granted," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the persons most knowledgeable about the factual bases for those allegations.

### SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1

Subject to the foregoing general objections, RRD has failed to state a claim upon which relief can be granted for direct and indirect infringement of the asserted patents with respect to many of Defendants' products. RRD broadly and vaguely alleges that Kodak has infringed the asserted patents by performing actions, "which *include but are not limited to* (i) the making, using, offering to sell, and selling of one or more of the Kodak Software; (ii) the sale of one or more Digital Presses...; (iii) marketing and encouraging its customers to purchase, install, and use infringing third party software packages ...; and (iv) providing and supporting its Variable

3

Print Specification ('VPS') ...." *See* Amended Complaint ¶¶ 23, 28, 33, and 38 (emphasis added).    Given that Defendants offer a multitude of diverse products and services, and collectively employ tens of thousands of employees worldwide, the above generic reference to unlimited and unspecified actions, which do not involve the specifically-named products alleged to directly or indirectly infringe RRD's patents, is not sufficient to satisfy proper notice pleading requirements under the Rules.

## INTERROGATORY NO. 2

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 47 of their Answer that "Creo has not directly infringed any claim of the '452 patent, the '599 patent, the '940 patent or the '801 patent (collectively "Patents in Suit"), either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software Products, the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 2

Defendants object to this interrogatory because it is overly broad and unduly burdensome to the extent it seeks information defined by the term "Defendants' Software Products," which is broadly defined to include "any other software product designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing." The term Variable Digital Printing is also broadly defined by RRD as "digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied." (RRD's 1st Interrogs. at 5.)    RRD has admitted, however, that this broad definition encompasses technologies completely unrelated to the subject matter of this suit, such as "the ink jet printer sitting in many homes today." (D.I. 35 at 2.)    In contrast, the Amended Complaint specifically identifies only "Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer" (hereinafter "Kodak Software") as infringing

4

its patents.   Yet RRD still seeks discovery on improper and overly broad subject matter. Defendants also object to this interrogatory as overbroad to the extent it seeks a response with respect to claims that RRD does not assert.

Defendants additionally object to this interrogatory as premature in view of the Court's Scheduling Order of February 15, 2007.   Under that Order, the parties are not required to exchange proposed claim constructions until June 1, 2007.  Subject to the foregoing general and specific objections, Defendants respond as follows.

With respect to the asserted apparatus claims, the Kodak Software does not contain all elements of the asserted claims, either literally or by equivalence

With respect to the asserted method claims, Defendants do not directly infringe by selling, offering to sell, or making the Kodak Software in the United States and/or importing the software into the United States.  As a matter of law, method claims can only be directly infringed by a "use," not through the sale, offer for sale, manufacture, or importation of software that allegedly performs the steps.  Defendants also contend that Kodak Software does not infringe the asserted method claims, either literally or by equivalence, because when used, Kodak Software does not perform each step of the asserted method claims, for at least the reasons discussed below.

Although Defendants are not able at this juncture to fully itemize all grounds on which they should be found not to directly infringe the asserted claims of the patents in suit (once the terms of those claims are properly construed), Defendants nevertheless set forth the following preliminary bases for their non-infringement positions and reserve the right to update these bases once the Court issues its claim construction ruling.

5

In addition, with respect to the Kodak NexTreme DL-100 Variable Data Software and Kodak NexTreme DL-1000 Variable Data Software, Defendants are not in possession, custody or control of the source code for these products. Defendants also do not have detailed information regarding the functionality of these products. Accordingly, Defendants' responses with respect to these products are preliminary and, to a large extent, are based on current information and belief.

The Kodak Software does not directly infringe independent claim 1 of the '599 patent, or any claims depending from claim 1, for at least the reasons provided below:

| Claim 1 of the '599 Patent | Non-Infringement Position |
|---|---|
| 1. An apparatus for controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | Kodak Software is not an apparatus for controlling an electronic press. |
| [a] first means for developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | When installed on a computer, Kodak Software does not perform the function of developing a template file using the same or equivalent structure as shown in Figs. 3-5 and corresponding descriptions. When installed on a computer, Kodak Software does not develop a template file defining pages that will be printed from fixed information and variable information. |
| [b] a database having entries therein each representing variable information to be printed; | Kodak Software does not have a database wherein each entry represents variable information to be printed. |
| [c] second means responsive to the first developing means for developing a master page file from the template file wherein the master page file defines the fixed information; and; | When installed on a computer, Kodak Software does not perform the function of developing a master page file from a template file using the same or equivalent structure as shown in Figs. 5 & 10 and corresponding descriptions. When installed on a computer, Kodak Software does not develop a master page file. |

6

| Claim 1 of the '599 Patent | Non-Infringement Position |
|---|---|
| [d] means responsive to the database and the first and second developing means for converting the template file and the database into press commands specifying sequence and content of page production by the press. | When installed on a computer, Kodak Software does not perform the function of converting a template file and a database into press commands using the same or equivalent structure as shown in Figs. 5 & 11 and corresponding descriptions.<br><br>When installed on a computer, Kodak Software does not utilize press commands. |

In operation, Kodak Software does not directly infringe independent claim 11 of the '599 patent, or any claims depending from claim 11, for at least the reasons provided below:

| Claim 11 of the '599 Patent | Non-Infringement Position |
|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | In operation, Kodak Software does not control an electronic press. |
| [a] developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | In operation, Kodak Software does not perform the step of developing a template file defining pages that will be printed from fixed information and variable information. |
| [b] assembling a database having entries therein each representing variable information to be printed; | In operation, Kodak Software does not perform the step of assembling a database wherein each entry represents variable information to be printed. |
| [c] developing a master page file from the template file wherein the master page file defines the fixed information; and; | In operation, Kodak Software does not perform the step of developing a master page file.<br><br>In operation, Kodak Software does not perform the step of developing a master page file from a template file. |
| [d] converting the template files[,] the database and the master page file into press commands specifying sequence and content of page production by the press. | In operation, Kodak Software does not utilize press commands.<br><br>In operation, Kodak Software does not perform the step of converting a template file, a database, and a master page file into press commands. |

The Kodak Software does not directly infringe independent claim 1 of the '940 patent, or any claims depending from claim 1, for at least the reasons provided below:

| Claim 1 – '940 Patent | Non-Infringement Position |
|---|---|
| 1. An apparatus for controlling an electronic press, comprising: | Kodak Software is not an apparatus for controlling an electronic press. |
| means for developing first and second sets of template data representing associated first and second templates, respectively, each set of template data having master data representing a reusable object to be printed and position data representing a position on a page at which a variable object is to be printed; and | When installed on a computer, Kodak Software does not perform the function of developing template data using the same or equivalent structure as shown in Figs. 3-5 and corresponding descriptions. When installed on a computer, Kodak Software does not develop template data defining pages that will be printed from master data representing reusable objects and position data representing variable objects. |
| means responsive to the developing means and to a database having a number of entries representing variable objects for causing the electronic press to print output pages with the reusable object and the variable objects wherein the causing means comprises means for separating the master data from the position data for each set of template data in preparation for rasterization. | When installed on a computer, Kodak Software does not perform the function of causing an electronic press to print output pages by separating master data from position data using the same or equivalent structure as shown in Figs. 5 & 10 and corresponding descriptions. When installed on a computer, Kodak Software does not have a database having a number of entries representing variable objects. When installed on a computer, Kodak Software does not cause an electronic press to print output pages by performing the function of separating master data from position data using the same or equivalent structure as shown in Figs. 5 & 10 and corresponding descriptions. When installed on a computer, Kodak Software does not separate master data from position data for each set of template data in preparation for rasterization. |

In operation, Kodak Software does not directly infringe independent claim 11 of the '940 patent, as well as any claims depending from claim 11, for at least the reasons provided below:

| Claim 11 of the '940 Patent | Non-Infringement Position |
|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | In operation, Kodak Software does not control an electronic press. |
| [a] developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | In operation, Kodak Software does not perform the step of developing a data set of master data.<br><br>In operation, Kodak Software does not develop data sets representing templates defining pages that will be printed from master data representing reusable objects and position data representing variable objects. |
| [b] developing a database having a number of entries each of which represents a variable object; and; | In operation, Kodak Software does not perform the step of developing a database wherein each entry represents a variable object. |
| [c] causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | In operation, Kodak Software does not perform the act of causing an electronic press to print output pages by separating master data from position data. Nor does Kodak Software act in accordance with or equivalent to Figs. 5 & 10 and corresponding descriptions.<br><br>In operation, Kodak Software does not separate master data from position data for each data set in preparation for rasterization. |

In operation, Kodak Software does not directly infringe independent claim 1 of the '452

patent, or any claims depending from claim 1, for at least the reasons provided below:

| Claim 1 of the '452 Patent | Non-Infringement Position |
|---|---|
| 1. A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | In operation, Kodak Software does not perform the step of developing a template page file of master data. |

9

| Claim 1 of the '452 Patent | Non-Infringement Position |
|---|---|
| (b) selecting areas of the page for the variable graphics information; | |
| (c) specifying graph parameters; and | |
| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | In operation, Kodak Software does not perform the act of causing a display device to display pages in accordance with or in a manner equivalent to Figs. 5, 9 & 10 and corresponding descriptions. |

In operation, Kodak Software does not literally infringe claim 1 of the '801 patent, as well as any claims depending from claim 1, for at least the reasons provided below:

| Claim 1 – '801 Patent | Kodak's Proposed Constructions |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | In operation, Kodak Software does not assemble books. |
| (A) storing a first number of pages; | In operation, Kodak Software does not perform the step of storing a first number of pages. |
| (B) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | In operation, Kodak Software does not perform the step of specifying a set of pagination information by indicating whether a stored page is to be selectively included in a book. |
| (C) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | In operation, Kodak Software does not perform the step of specifying a set of pagination information by indicating whether a stored page is to be selectively included in a book. |
| (D) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | In operation, Kodak Software does not perform the step of determining whether a stored page is to be assembled into the first book. In operation, Kodak Software does not perform the step of determining whether a stored page is to be assembled into a first book based on a first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number. |

10

| Claim 1 – '801 Patent | Kodak's Proposed Constructions |
|---|---|
| (E) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | In operation, Kodak Software does not perform the step of determining whether a stored page is to be assembled into a book. In operation, Kodak Software does not perform the step of determining whether a stored page is to be assembled into a second book based on a second set of pagination information wherein a third number of stored pages to be assembled into the second book is less than the second number and no greater than the first number. |
| (F) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | |
| (G) producing the first and second books in a single press run. | |

Defendants contend that for at least the reasons given above, Kodak Software does not directly infringe the asserted claims of the patents in suit when properly construed.

Persons knowledgeable about these facts include, but are not limited to, Ronen Cohen, Ron Peleg, Ronit Konfidan, Nardi Jaacobi, Gershon Alon, Roger Parrett, John Desautels, William Sullivan, the named inventors of the patents in suit, and unnamed individuals of Datalogics, Inc. and Printable Technologies, Inc.

Defendants reserve the right to supplement their response to this interrogatory after receipt of RRD's claim construction and infringement contentions, after the Court's order on claim construction, and at other appropriate times in this litigation.

## INTERROGATORY NO. 3

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 48 of their Answer that "Creo has not indirectly infringed any claim of the Patents in Suit, either literally or under the doctrine of equivalents," including, but not limited to, claim charts that set forth each claim element that allegedly is not met by Defendants' Software

11

Products and Third Party Software Products suitable for the use with Defendants' Hardware Products (including, but not limited to, software products made or developed by XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream), the reasons each such element is not met (both literally and under the doctrine of equivalents) and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 3

Defendants object to this interrogatory because it is overly broad and unduly burdensome to the extent it (i) seeks information defined by the terms "Defendants' Software Products," "Defendants' Hardware Products" and "Third Party Software Products" and (ii) references XMPie, Atlas Software, Datalogics, GMC Software, Pageflex, PrintSoft, and Extream. The Amended Complaint only references "Kodak Software," which is defined as including "Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer." Further, the only hardware referenced in the Amended Complaint as allegedly "intended for use with infringing software" are "Digital Presses," which are defined in the Amended Complaint as including "the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers: CS150, CS300, CS 340, CS400, and CS600." Moreover, Defendants object to being required to answer Interrogatories relating to the operation of the Third Party Software Products given the absence of any specific allegations by RRD concerning such products. Defendants also object to this interrogatory as a premature contention interrogatory given that the Court has yet to construe the claims.

Subject to the foregoing general and specific objections, Defendants respond by incorporating by reference their response to Interrogatory No. 2 with respect to the Kodak Software. Defendants further respond that they cannot — as a matter of law — be found liable

12

for inducing infringement under 271(b) before becoming aware of the patents in suit and without having an affirmative intent to cause direct infringement. As a result, Defendants cannot be held liable for inducing infringement when Defendants are not in possession or control of information sufficient to explain how an accused product functions. Defendants did not intentionally engage in conduct or otherwise take action to induce infringement of the patents in suit by users of Kodak Software or Digital Presses, as those terms are defined in the Amended Complaint.

Likewise, Defendants are not liable for contributory infringement under 271(c) prior to first becoming aware of the patents in suit. Defendants are also not liable for indirect infringement to the extent that no single entity practices each of the steps or elements of the patents in suit, and thus, directly infringes. Finally, the Kodak Software and Digital Presses identified in the Amended Complaint are capable of substantial, noninfringing uses.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen, Ron Peleg, Ronit Konfidan, Nardi Jaacobi, Gershon Alon, Leonid Khain, Eli Shalhon, Benny Shimshoni, Roger Parrett, John Desautels, William Sullivan, William Schweinfurth, John Peck, and the named inventors of the patents in suit.

Defendants reserve the right to supplement their response to this interrogatory after receipt of RRD's claim construction and infringement contentions, after the Court's order on claim construction, and at other appropriate times in this litigation.

## INTERROGATORY NO. 4

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 49 of their Answer that "RRD is estopped from alleging that Creo infringes the claims of the Patents in Suit under the doctrine of prosecution history estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

13

## RESPONSE TO INTERROGATORY NO. 4

Subject to the foregoing general objections, Defendants respond as follows:

The documents and communications on which Defendants intend to rely include the patents in suit, prior art of record, prosecution histories of the patents in suit, and the prosecution histories of patents related thereto. The prosecution histories include numerous arguments and narrowing amendments that limit the scope of the asserted claims through argument-based estoppel and/or amendment-based estoppel. Ultimately, whether prosecution history estoppel applies will depend on the claim construction and any range of equivalents asserted by RRD. It is premature at this time, with a *Markman* hearing scheduled for September 2007, to speculate how RRD will attempt to read the claims and whether RRD will take a position that contradicts the prosecution histories. To date, however, Defendants have identified at least the following actions taken by RRD in the prosecution history, which may form estoppels.

### U.S. Patent No. 6,952,801

- Supplementary Amendment dated May 18, 2000 in U.S. Application Ser. No. 08/802,337 at 2-3 (claim amendments) & 4-5 (arguments to distinguish claims over prior art).

- Amendment A dated November 4, 2002 at 6-7 (arguments to distinguish claims over prior art).

- Amendment B dated March 28, 2003 at 2-3 (claim amendments) & 4 (remarks re claim amendments)

- Amendment C dated September 8, 2003 at 4-6 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated March 4, 2004 at 1-5 (remarks re prior art).

14

- Amendment D dated March 8, 2004 at 2-5 (claim amendments) & 6-7 (arguments to distinguish claims over prior art).

- Amendment E dated Jul 26, 2004 at 2-5 (claim amendments) & 6-8 (arguments to distinguish claims over prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 1 of the '801 patent:

| Claim Language | Estoppel |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | Amendment D (amendment) |
| (A) storing a first number of pages; | Amendment B (amendment; argument); Amendment C (argument) |
| (B) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment D (amendment); Amendment E (amendment) |
| (C) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment E (amendment) |
| (D) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment D (amendment); Amendment E (amendment; argument) |
| (E) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | Amendment A (argument); Amendment B (amendment; argument); Amendment C (argument); Amendment E (amendment; argument) |
| (F) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | Amendment C (argument); Amendment D (amendment; argument); Amendment E (amendment; argument) |
| (G) producing the first and second books in a single press run. | Amendment D (amendment; argument); Amendment E (amendment; argument) |

15

### U.S. Patent No. 6,844,940

- Preliminary Amendment dated January 12, 2004 at 3-6 (claim amendments) & 7 (remarks).

- Supplemental Preliminary Amendment dated March 29, 2004 at 2-5 (claim amendments) & 6 (remarks).

- Petition to Make Special Under MPEP § 708.02 dated March 29, 2004 at 1-4 (arguments to distinguish claims over prior art).

- Request for Reconsideration of Petition to Make Special dated June 10, 2004 at 1-4 (arguments to distinguish claims over prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 11 of the '940 patent:

| Claim Language | Estoppel |
|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | |
| developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | Supplemental Preliminary Amendment (amendment) |
| developing a database having a number of entries each of which represents a variable object; and | Supplemental Preliminary Amendment (amendment) |
| causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | Petition to Make Special (argument); Request for Reconsideration (argument) |

### U.S. Patent No. 6,327,599

- Amendment A dated November 11, 1996 at 2 (claim amendments) & 3 (remarks).

- Amendment B dated May 19, 1997 at 1-3 (claim amendments) & 4-8 (arguments to distinguish claims over prior art).

16

- Amendment C dated November 19, 1997 at 1-2 (claim amendments) & 2-4 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated December 17, 1997 at 1-2 (remarks re prior art).

- Response After Final Rejection dated April 30, 1998 at 1 (claim cancellations and remarks).

- Amendment D dated April 2, 2001 at 1 (claim amendments) & 2-5 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated June 20, 2000 at 1-2 (remarks re prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 11 of the '599 patent:

| Claim Language | Estoppel |
|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | Amendment A (amendment; argument) |
| developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | |
| assembling a database having entries therein each representing variable information to be printed; | |
| developing a master page file from the template file wherein the master page file defines the fixed information; and | Amendment B (argument) |
| converting the template files the database and the master page file into press commands specifying sequence and content of page production by the press. | Amendment B (amendment; argument); Amendment D (argument) |

17

## U.S. Patent No. 6,205,452

- Amendment "A" dated January 7, 2000 at 2-3 (claim amendments) & 3-8 (arguments to distinguish claims over prior art).

- Response dated June 27, 2000 at 1-7 (arguments to distinguish claims over prior art).

- Supplemental Information Disclosure Statement dated July 20, 2000 at 1-2 (remarks re prior art).

Defendants have identified at least the following estoppels with respect to the limitations of asserted claim 1 of the '452 patent:

| Claim Language | Estoppel |
|---|---|
| 1  A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | Amendment A (argument) |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | |
| (b) selecting areas of the page for the variable graphics information; | Amendment A (argument); Response (argument) |
| (c) specifying graph parameters; and | |
| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | Amendment A (argument); Response (argument) |

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit and those individuals involved in the prosecution of the patents in suit,

18

including William E. McCracken, G. Christopher Braidwood, Danielle M. Holmes, Trevor B.

Joike, Mark G. Hanley, and Erin J. Fox.

Defendants reserve the right to supplement their response to this interrogatory after

receipt of RRD's claim construction and infringement contentions, after the Court's order on

claim construction, and at other appropriate times in this litigation.

**INTERROGATORY NO. 5**

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 50 of the Answer that "[o]ne or more claims of the Patents in Suit are invalid under
the patent laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35
U.S.C. §§ 101, 102, 103, and 112," including, but not limited to, an identification of all facts,
documents, prior art (with references to specific portions of the prior art by page, line, figure, or
description in claim chart format), activities, and alleged motivation or suggestion to combine
references.

**RESPONSE TO INTERROGATORY NO. 5**

Defendants object that this interrogatory is overly broad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to

this interrogatory as premature in that RRD has yet to reveal its claim construction and

infringement contentions, the Court has yet to construe the claims and expert reports are not yet

due. Defendants also object to this interrogatory as unduly burdensome to the extent it seeks

"identification of *all* facts, documents, prior art ..., activities, and alleged motivation or

suggestion to combine references," and "references to specific portions of the prior art by page,

line, figure, or description in claim chart format." Defendants will respond to the extent required

by the Federal Rules of Civil Procedure

Subject to the foregoing general and specific objections, Defendants respond as follows:

This response is based on information currently available to Defendants, including

Defendants' present understanding of RRD's claim construction and infringement contentions.

Defendants reserve the right to assert claim construction positions that are inconsistent with the claim construction positions relied on here. Defendants further reserve the right to supplement their response to this interrogatory—such as by identifying new prior art and/or identifying new portions of the cited prior art—in support of its defenses as this case progresses including, for example, at such time after the Court issues its claim construction.

### U.S. Patent Nos. 6,327,599

Claims 1 and 11 of the '599 patent may be invalid under 35 U.S.C. § 102(f) because James L. Warmus and Mark G. Dreyer did not invent the subject matter to be patented. Defendants contend that individuals associated with Barco Graphics, including Paul Notredame, may have invented all, or a portion, of the claimed subject matter.

Claims 1 and 11 of the '599 patent may be invalid under 35 U.S.C. § 102(b) as anticipated by a variable printing application called "DijiComp," which was developed and used by a subsidiary of Kodak in the 1980s and 1990s, and which was marketed and sold as Begin Software. To the extent the asserted claims are interpreted to read on Darwin as RRD has contended in its responses to Defendants' Interrogatory No. 1, the asserted claims must also read on the prior art DijiComp application, rendering the claims invalid. *See, e.g.,* DijiComp PC Design, dated May 3, 1993 (K00004908-K00005098; K00557682-K00557885; K01200862-K01201061).

Claims 1 and 11 of the '599 patent also may be invalid under 35 U.S.C. § 102(b) as anticipated by one or more of (i) U.S. Patent No. 4,649,513 to Martin *et al.*, which issued on March 10, 1987, and (ii) Kodak's Forms Merge Software Package (Forms Merge), which was developed and commercialized by Eastman Kodak in at least 1987 and 1988. *See, e.g.,* User's Guide to Forms Merge, dated March 3, 1988 (K01863184-K01863213). The claim charts,

20

below, identify exemplary portions of each prior art reference that are sufficient to support

Defendant's contention that each element of the asserted claims may be disclosed therein:

| Claim 1 of the '599 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 1. An apparatus for controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | *See, e.g.,* User's Guide to Forms Merge at 1. | *See,* e.g., '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 1 & 3. |
| first means for developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | Forms Merge includes means for developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page. *See, e.g.,* User's Guide to Forms Merge at 1 & 3-7. | The '513 patent discloses means for developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page. *See, e.g.,* '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |
| a database having entries therein each representing variable information to be printed; | Forms Merge includes a database having entries therein representing information to be printed. *See, e.g.,* User's Guide to Forms Merge at 7. | The '513 patent discloses a database having entries therein representing information to be printed. *See, e.g.,* '513 patent, col. 6, 48 to col. 7, l. 8 & Fig. 4. |
| second means responsive to the first developing means for developing a master page file from the template file wherein the master page file defines the fixed information; and | Forms Merge includes a second means responsive to the first developing means for developing a master pages file from the template file. *See, e.g.,* User's Guide to Forms Merge at 10. | The '513 patent discloses a second means responsive to the first developing means for developing a master pages file from the template file. *See,* e.g., '513 patent, col. 11, l. 29 to col. 14, l. 41; col. 27, ll. 12-16 & Fig. 5. |

| means responsive to the database and the first and second developing means for converting the template file and the database into press commands specifying sequence and content of page production by the press. | Forms Merge includes means responsive to the database and the first and second developing means for converting the template file and the database into press commands specifying the sequence and content of page production by the press. *See, e g*, User's Guide to Forms Merge at 10. | The '513 patent discloses means responsive to the database and the first and second developing means for converting the template file and the database into press commands specifying the sequence and content of page production by the press. *See, e g*, '513 patent, Figs. 7 and 18a-b and accompanying text. |

| Claim 11 of the '599 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 11. A method of controlling an electronic press wherein the press includes a controller responsive to press commands, comprising: | *See, e g*, User's Guide to Forms Merge at 1. | *See*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 1 & 3. |
| [a] developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page; | In operation, Forms Merge includes developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page. *See, e g*, User's Guide to Forms Merge at 1 & 3-7. | The '513 patent discloses a program performing the step of developing a template file defining pages to be printed with fixed information common to all of the pages and variable information unique to each page. *See, e.g.*, '513 patent col. 6, l. 48 to col 8, l. 61 & Figs. 5 & 6. |
| [b] assembling a database having entries therein each representing variable information to be printed; | In operation, Forms Merge includes assembling a database containing variable data to be merged with fixed information for printing. *See, e g*, User's Guide to Forms Merge at 7-8. | The '513 patent discloses a program that assembles a database storing variable information to be printed. *See, e g*, col. 6, 48 to col. 7, l. 8 & Fig. 4. |

22

| [c] developing a master page file from the template file wherein the master page file defines the fixed information; and | In operation, Forms Merge converts the fixed information from the template file to a master page file defining the fixed information. *See, e g ,* User's Guide to Forms Merge at 10. | The '513 patent discloses a program that develops a master page file defining fixed information from the template file. *See, e g ,* '513 patent, col. 11, l. 29 to col. 14, l. 41; col. 27, ll. 12-16 & Fig. 5. |
| --- | --- | --- |
| [d] converting the template files[,] the database and the master page file into press commands specifying sequence and content of page production by the press. | In operation, Forms Merge converts the template files, the variable data and the master page file into commands specifying sequence and content of page production. *See, e g ,* User's Guide to Forms Merge at 10. | The '513 patent discloses a program that converts the template files, variable data and the master page file into commands specifying the sequence and content of page production. *See, e g ,* '513 patent, Figs. 7 & 18a-b, and accompanying description. |

Defendants also assert that claims 1 and 11 of the '599 patent may be obvious under 35 U.S.C. § 103(a) in view of a combination of one or more of the following prior art: (i) DijiComp, (ii) Forms Merge, (iii) U.S. Patent No. 4,649,513, (iv) the prior art of record cited on one or more of the patents in suit, and/or (v) one or more of the references set forth below. The identified prior art is directed to variable printing systems that create a template file and merge variable data for printing. Defendants contend that claims 1 and 11 may have been obvious to a person having ordinary skill in the art in view of the combined teachings.

In addition to the prior art of record cited on the patents in suit, Defendants have identified the following prior art as being potentially relevant, either alone or in combination with other references, to the invalidity of claims 1 and 11 under 35 U.S.C. §§ 102 and 103(a):

- U.S. Patent Nos. 4,417,322; 4,445,795; 4,454,576; 4,470,120, 4,470,129; 4,649,513; 4,651,278; 4,809,220; 4,826,333; 4,860,219; 4,870,611; 4,878,085; 4,903,229; 4,939,670; 4,944,614; 5,091,868; 5,104,245; 5,144,693; 5,563,998; 5,563,999; 6,049,390; 6,330,073.

23

- Begin Software for High Speed Printing Systems (6/22/1994)

- Scitex Begin User's Guide (7/1/1995)

- Scitex Begin Reference Manual (7/1/1995)

- Scitex Catalogic Overview (8/23/1994)

- RR Donnelly Catalog Publishing System - Discussed in Retail Advertising and Catalogs, Seybold Special Report, vol. 2, no. 8 (4/29/1994)

- Specification PostScript Extension for Xeikon Variable Data System (7/1/1996)

- Adobe Technical Note #5113, published March 31, 1992.

- Interpress, The Source Book (published 1988).

- TrueForm User Guide. Adobe Systems, 1989.

- PostScript Language Reference Manual, Second Edition.    Adobe Systems Incorporated, 1990.

- Guide to Document Processing, Kodak Ektaprint 1392 Printer, Model 24. June, 1991.

## U.S. Patent No. 6,844,940

Claims 1, 2, 7-12 and 17-22 of the '940 patent may be invalid under 35 U.S.C. § 102(f) because James L. Warmus and Mark G. Dreyer did not invent the subject matter to be patented. Defendants contend that individuals associated with Barco Graphics, including Paul Notredame, may have invented all, or a portion, of the claimed subject matter.

Claims 1, 2, 7-12 and 17-22 of the '940 patent may be invalid under 35 U.S.C. § 102(b) as anticipated by a variable printing application called "DijiComp," which was developed and used by a subsidiary of Kodak in the 1980s and 1990s, and which was marketed and sold as Begin Software. To the extent the asserted claims are interpreted to read on Darwin as RRD has

24

contended in its responses to Defendants' Interrogatory No. 1, the asserted claims must also read on the prior art DijiComp application, rendering the claims invalid. *See, e.g.*, DijiComp PC Design, dated May 3, 1993 (K00004908-K00005098; K00557682-K00557885; K01200862-K01201061).

Claims 1, 2, 7-12 and 17-22 of the '940 patent may be invalid under 35 U.S.C. § 102(b) as anticipated by one or more of (i) U.S. Patent No. 4,649,513 to Martin *et al.*, which issued on March 10, 1987, and (ii) Kodak's Forms Merge Software Package (Forms Merge), which was developed and commercialized by Eastman Kodak in at least 1987 and 1988. *See, e.g.*, User's Guide to Forms Merge, dated March 3, 1988 (K01863184-K01863213). The claim charts, below, identify exemplary portions of each prior art reference that are sufficient to support Defendant's contention that each element of the asserted claims may be disclosed therein:

| Claim 1 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 1. An apparatus for controlling an electronic press, comprising: | *See, e.g.*, User's Guide to Forms Merge at 1. | *See, e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 1 & 3. |
| means for developing first and second sets of template data representing associated first and second templates, respectively, each set of template data having master data representing a reusable object to be printed and position data representing a position on a page at which a variable object is to be printed; and | Forms Merge includes means for developing first and second sets of template date representing associated first and second templates, respectively, each set of template data representing a reusable object to be printed and position data representing a position on a page at which a variable object is to be printed. *See, e.g.*, User's Guide to Forms Merge at 1-7, 10 & 27. | The '513 patent discloses means for developing first and second sets of template date representing associated first and second templates, respectively, each set of template data representing a reusable object to be printed and position data representing a position on a page at which a variable object is to be printed. *See, e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61; col. 11, l. 29 to col. 14, l. 41; col. 27, ll. 12-16 & Figs. 5 & 6. |

| | | |
|---|---|---|
| means responsive to the developing means and to a database having a number of entries representing variable objects for causing the electronic press to print output pages with the reusable object and the variable objects wherein the causing means comprises means for separating the master data from the position data for each set of template data in preparation for rasterization. | Forms Merge includes means responsive to the developing means and to a database having a number of entries representing variable objects for causing the electronic press to print output pages with the reusable objects and the variable objects wherein the causing means comprises means for separating the master data from the position data for each set of template data in preparation for rasterization. *See, e.g.*, User's Guide to Forms Merge at 7 & 10. | The '513 patent discloses means responsive to the developing means and to a database having a number of entries representing variable objects for causing the electronic press to print output pages with the reusable objects and the variable objects wherein the causing means comprises means for separating the master data from the position data for each set of template data in preparation for rasterization. *See, e.g.*, col. 6, 48 to col. 7, l. 8 & Figs. 4, 7, 18a-b, and accompanying text. |

| Claim 2 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 2. The apparatus of claim 1, wherein the causing means includes means for converting the sets of template data and the database into commands for the electronic press specifying sequence and content of page production. | Forms Merge includes means for converting template data and variable data into commands specifying the sequence and content of page production. *See, e.g.*, User's Guide to Forms Merge at 10. | The '513 patent discloses means for converting template data and variable data into commands specifying the sequence and content of page production. *See, e.g.*, 513 Patent at Figs. 7 & 18a-b and accompanying text. |

| Claim 7 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 7. The apparatus of claim 1, wherein the first set of template data and the second set of template data are different so that the first and second template pages are different. | Forms Merge may be used with two different templates. *See, e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses using multiple templates. *See, e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

26

| Claim 8 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 8. The apparatus of claim 7, wherein the master data of the first and second sets of template data are different such that the reusable objects of the first and second template pages are different. | Forms Merge may be used with two different sets of master data. *See, e.g.*, User's Guide to Forms Merge at 1. | The '513 discloses use of two different sets of master data. *See, e.g.*, '513 patent col. 13, l. 32 to col. 14, l. 2. |

| Claim 9 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 9. The apparatus of claim 1, wherein the master data of the first and second sets of template data are identical, and a position of the master data in the first template page differs from a position of the master data in the second template page. | Forms Merge may be used with two different templates. *See, e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses use of two different templates. *See*, '513 patent, col. 11, l. 29 to col. 14, l. 41; col. 27, ll. 12-16 & Fig. 5. |

| Claim 10 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 10. The apparatus of claim 1, wherein the variable objects of the first and second sets of template data are identical, and the position of the variable object in the first template page differs from the position of the variable object in the second template page. | Forms Merge may be used with two different templates. *See, e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses use of two different templates. *See*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

| Claim 11 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 11. A method of controlling an electronic press, the method comprising the steps of: | *See, e.g.*, User's Guide to Forms Merge at 1. | *See*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 1 & 3. |

27

| [a] developing first and second data sets representing associated first and second templates, respectively, each data set having master data representing reusable objects to be printed and position data representing a position on a page at which a variable object is to be printed; | In operation, Forms Merge includes developing multiple templates having master data representing reusable objects to be printed and position data representing a position on the page at which a variable object is to be printed. *See, e.g.*, User's Guide to Forms Merge at 1-7 and 27. | The '513 patent discloses a program performing the step of developing multiple templates having master data representing resusable objects to be printed and position data representing a position on the page at which a variable object is to be printed. *See, e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6; col. 11, l. 29 to col. 14, l. 41; col. 27, ll. 12-16 & Fig. 5. |
|---|---|---|
| [b] developing a database having a number of entries each of which represents a variable object; and | In operation, Forms Merge includes developing a database storing variable objects. *See, e.g.*, User's Guide to Forms Merge at 7. | The '513 patent discloses a program performing the step of developing a database storing variable objects. *See, e.g.*, '513 patent, col. 6, 48 to col. 7, l. 8 & Fig. 4. |
| [c] causing the electronic press to print output pages with the reusable objects and variable objects by separating the master data from the position data for each data set in preparation for rasterization. | In operation, Forms Merge causes the printing of output pages with reusable objects and variable objects by separating master data from position data in preparation for rasterization. *See, e.g.*, User's Guide to Forms Merge at 10. | The '513 patent discloses the step of causing the printing of output pages with reusable objects and variable objects by separating master fata from position data in preparation for rasterization. *See, e.g.*, Figs 7, 18a-b and accompanying text. |

| Claim 12 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 12. The method of claim 11, wherein the step of causing includes the step of converting the data sets and the database into page sequence commands for the electronic press specifying sequence and content of page production. | In operation, Forms Merge discloses the step of converting the data sets and the database into page sequence commands specifying sequence and content of page production. *See, e.g.*, User's Guide to Forms Merge at 10. | The '513 patent discloses the step of converting the data sets and the database into page sequence commands specifying sequence and content of page production. *See, e.g.*, Figs. 7, 18a-b and accompanying text. |

28

| Claim 17 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 17. The method of claim 11, wherein the first data set and the second data set are different so that the first and second templates are different. | Forms Merge may be operated using different templates. *See*, *e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See*, *e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

| Claim 18 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 18. The apparatus of claim 17, wherein the master data of the first and second data sets are different such that the reusable objects of the first and second templates are different. | Forms Merge may be operated using different templates. *See*, *e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See*, *e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

| Claim 19 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 19. The apparatus of claim 11, wherein the master data of the first and second data sets are identical, and a position of the master data in the first template differs from a position of the master data in the second template. | Forms Merge may be operated using different templates. *See*, *e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See*, *e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

| Claim 20 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 20. The apparatus claim 11, wherein the variable objects of the first and second data sets are identical, and the position of the variable object in the first template differs from the position of the variable object in the second template | Forms Merge may be operated using different templates. *See*, *e.g.*, User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See*, *e.g.*, '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

29

| Claim 21 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 21. The apparatus of claim 11, wherein the variable objects of the first and second data sets are different. | Forms Merge may be operated using different templates. *See, e g,* User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See, e g,* '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

| Claim 22 of the '940 Patent | Forms Merge | U.S. Patent No. 4,649,513 |
|---|---|---|
| 22. The apparatus of claim 21, wherein the position of the variable object in the first template is the same as the position of the variable object in the second template. | Forms Merge may be operated using different templates. *See, e g,* User's Guide to Forms Merge at 1. | The '513 patent discloses using different templates. *See, e.g.,* '513 patent col. 6, l. 48 to col. 8, l. 61 & Figs. 5 & 6. |

Defendants also assert that claims 1, 2, 7-12 and 17-22 of the '940 patent may be obvious under 35 U.S.C. § 103(a) in view of a combination of one or more of the following references: (i) DijiComp, (ii) Forms Merge, (iii) U.S. Patent No. 4,649,513, (iv) the prior art of record cited on one or more of the patents in suit, and/or (v) one or more of the references listed below. Each of the identified prior art is directed to a variable printing system that creates a template file and merges variable data for printing. Defendants contend that claims 1, 2, 7-12 and 17-22 may have been obvious to a person having ordinary skill in the art in view of the combined teachings.

In addition to the prior art of record cited on one or more of the patents in suit, Defendants have identified the following prior art as being potentially relevant, either alone or in combination with other references, to the invalidity of asserted claims 1, 2, 7-12 and 17-22 under 35 U.S.C §§ 102 and 103(a):

- U.S. Patent Nos. 4,417,322; 4,445,795; 4,454,576; 4,470,120, 4,470,129, 4,649,513; 4,651,278; 4,809,220; 4,826,333; 4,860,219; 4,870,611; 4,878,085;

4,903,229; 4,939,670; 4,944,614; 5,091,868; 5,104,245; 5,144,693; 5,563,998; 5,563,999; 6,049,390; 6,330,073.

- Begin Software for High Speed Printing Systems (6/22/1994)

- Scitex Begin User's Guide (7/1/1995)

- Scitex Begin Reference Manual (7/1/1995)

- Scitex Catalogic Overview (8/23/1994)

- RR Donnelly Catalog Publishing System - Discussed in Retail Advertising and Catalogs, Seybold Special Report, vol. 2, no. 8 (4/29/1994)

- Specification PostScript Extension for Xeikon Variable Data System (7/1/1996)

- Adobe Technical Note #5113, published March 31, 1992.

- Interpress, The Source Book (published 1988).

- TrueForm User Guide. Adobe Systems, 1989.

- PostScript Language Reference Manual, Second Edition. Adobe Systems Incorporated, 1990.

- Guide to Document Processing, Kodak Ektaprint 1392 Printer, Model 24. June, 1991.

### U.S. Patent No. 6,205,452

Defendants assert that claims 1, 2, 7-10, 12 and 14 of the '452 patent may be invalid under 35 U.S.C. § 102(b) because, on information and belief,

### *REDACTED*

*REDACTED*

Defendants also assert that each of claims 1, 2, 7-10, 12 and 14 of the '452 patent may be invalid under 35 U.S.C. § 102(b) and/or § 103(a) in view of at least the following prior art:

1. The Admitted Prior Art disclosed in the Background Art section of the '452 patent which includes, among other prior art references, *Warmus*, et al, U.S. patent application Ser. No. 08/802,337, filed February 11, 1997, and *Vinberg, et al*, U.S. Patent No. 4,800,510.

2. Microsoft Access 7.0 (also known as Microsoft Access 95), is a relational database management system released in 1995. In addition to the Microsoft Access 7.0 software itself, the prior art listed below provide further documentary evidence of the relevant features of Microsoft Access 7.0:

   • Browne, Allen & Alison Balter, *Essential Access 95*, 1995. K01114235-0001 to K01114235-0523.

   • Balter, Alison, *Mastering Access 95 Development, Premier Edition*, 1996. K01104499-K01102313.

   • Getz, Ken & Paul Litwin, *Microsoft Access 95 How-To*, 1996. K01114238-0001 to K01114238-0789.

32

- Barker, F. Scott, *Access 95 Power Programming*, 1996.   K0109980-K01100732.

- Homer, Alex, *The Beginner's Guide to Access 95*, 1996.   K01095441-K01096119.

- Simpson, Alan & Elizabeth Olson, *Mastering Microsoft Access for Windows 95*, 1996. K01101279-K01102313.

- Cassel, Paul, *Teach Yourself Access 95 in 14 Days*, 1995. K001097988-K01098669

- Gifford, Dwayne, et al, *Access 95 Unleashed*, 1996. K01103503-K01104498.

- Schneider, Bob, *Using Access 95: The Fast and Easy Way to Learn*, 1995. K01097585-K01097987.

- Litwin, Paul, *Microsoft Access 95 Developer's Handbook*, 1996. K01104499-K01106079.

- Microsoft Access Language Reference. Microsoft 1995.

3. Paradox for Windows, Version 5.0 (Paradox 5.0), is a relational database management system released in 1994 by Borland Software Corporation. In addition to the Paradox 5.0 software itself, the following prior art further evidences the relevant features of Paradox 5.0:

- Salcedo, Greg & Martin W. Rudy, *Paradox 5 For Windows Power Programming Secrets*, 1995. K01114236-0001 to K01114236-933.

- Ageloff, Roy, *Comprehensive Paradox 5 for Windows*, 1995. K01114234-0001 to K01114234-586.

33

- Ageloff, Roy, *Introductory Paradox 5 0 for Windows*, 1995. K01100945-K01101278.

- Prestwood, Mike, *What Every Paradox 5 For Windows Programmer Should Know, Second Edition,* 1994. K01114237-0001 to K01114237-1246.

- Wagner, Richard, et al., *Inside Paradox 5 For Windows*, 1994

- Robinson, Celeste, *Paradox 5.0 for Windows Handbook*, 1994. K01102314-K01102953.

- Jones, Edward C., *Paradox 5.0 for Windows Power Toolkit*, 1995. K01102954-K01103502.

- Chalnick, Leon, et al., *Killer Paradox 5 for Windows*, 1994. K01106080-K01107309.

- Anderson, Derek, et. al, *Using Paradox 5 for Windows*, 1994. K01098670-K01099879.

- Weingarten, Jan, *Paradox 5 for Windows Illustrated*, 1995. K01100733-K01100944.

- Borland Paradox for Windows, Version 5.0: ObjectPAL Quick Reference. Borland Software, 1994.

- Borland Paradox for Windows, Version 5.0: Workgroup Desktop Guide. Borland Software, 1994.

- Borland Paradox for Windows, Version 5.0: Guide to ObjectPAL. Borland Software, 1994

- Borland Paradox for Windows, Version 5.0: User's Guide. Borland Software, 1994 ("Paradox 5.0 User's Guide").

The claim charts, below, provide an exemplary illustration of how the '452 patent may be anticipated and/or rendered obvious by each of Access 7.0, Paradox 5.0 and the Admitted Prior Art:

| Claim 1 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 1. A method of controlling a display device to display variable graphics information in graph format, wherein the variable graphics information is provided in a database having a number of fields, each of which represents variable information or variable graphics information, the method comprising the steps of: | Access 7.0 is a relational database management system capable of generating database reports for display on a display device, the generated reports including charts that vary depending on data stored in the database. *See, e.g.,* "Sales by Category" Report, Northwind Traders Sample Database. | Paradox 5.0 is a relational database management system capable of generating database reports for display on a display device, the generated reports including charts that vary depending on data stored in the database. *See, e.g.,* Paradox 5.0 User's Guide at pp. 431-525. | It was known in the prior art to preprocess variable graphics information for use in the prior art variable printing systems. *See, e.g.,* '452 patent, col. 1, l. 23 to col. 3, l. 50. |
| (a) developing template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information; | In Access 7.0, a report template, including fixed information and placeholders for variable information, may be developed using Access 7.0 Report Designer or Report Wizard features. *See, e.g.,* "Sales by Category" Report, Northwind Traders Sample Database | In Paradox 5.0, the Report Designer, Quick Report and Report Expert features allow the development of a report template including fixed information and placeholders representing an area of a page for variable information. | It was known in the prior art systems to develop template page files, each page file having master data representing fixed information and placeholders representing an area of a page for variable information. See, e.g., '452 Patent, col. 1, l. 23 to col. 3, l. 50. |

| (b) selecting areas of the page for the variable graphics information; | Access 7.0 Report Designer allows the user to insert a chart at a user-selected location in the report template. | Paradox 5.0 Report Designer allows the user to insert a graph placeholder at a user-selected location in the report template. | It was known in the prior art systems to preprocess variable graphics as variable image files for merging with template page files at the location of a corresponding image placeholder. *See, e.g.,* '452 patent, col. 1, l. 23 to col. 3, l. 50. |
|---|---|---|---|
| (c) specifying graph parameters; and | In Access 7.0, after the user inserts a chart, the user is prompted to specify graph parameters for the accompanying chart, including chart type, chart layout, and axis scale. | In Paradox 5.0, after the user inserts a graph placeholder in a report template, the user is prompted to specify graph parameters for the corresponding graph, including graph type, titles and labels. | It was known in the prior art for users to input graph format parameters. *See, e.g.,* '452 patent, col. 1, l. 23 to col. 3, l. 50 |

36

| (d) causing the display device to display the pages with the fixed information, selected variable information from the database, and selected variable graphics information from the database, wherein the selected variable graphics information is displayed according to the specified graph parameters. | In Access 7.0, the user may run a report for printing on a printer or for display on the monitor through the "Preview" report option. The displayed report pages will display the fixed information from the report template, and variable information from the Access 7.0 database. The chart placeholder will be converted into a chart in accordance with the corresponding parameters and variable information from the Access 7.0 database. The chart may be generated by Microsoft Graph 5.0 via object linking and embedding. | In Paradox 5.0, the user may preview a report on the screen, or send the report to a printer. The displayed report pages will display the fixed information from the report template, and variable information retrieved from the Paradox 5.0 database.<br><br>The graph placeholder will be converted into a graph in accordance with the graph parameters and variable information from the Paradox 5.0 database. | It was known in the prior art systems to cause the display device to display pages with fixed information and selected variable information from the database, including variable image files representing preprocessed variable graphics information in accordance with specified graph parameters. '452 patent, col. 1, l. 23 to col. 3, l. 50. |
|---|---|---|---|

| Claim 2 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 2. The method of claim 1, wherein the step of causing the display device to display the pages with the selected variable graphics information from the database further comprises executing a graph file to generate a graph | Access 7.0 stores chart parameters in a graph object, which may be a Microsoft Graph 5.0 object. The graph information is passed to Microsoft Graph 5.0 to generate the graph. | Paradox 5.0 graph data is stored in a graph object embedded in the report template. The graph object is executed to generate the graph. | Admitted prior art inherently executed a graph file to generate a graph. |

| Claim 7 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 7. The method of claim 1, wherein the template page files are creating using QuarkXPress®. | Access 7.0 includes template page files. | Paradox 5.0 includes template page files. | It was known in the prior art systems to use QuarkXPress to generate a template page file. |

| Claim 8 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 8. The method of claim 1, wherein the step of specifying the graph parameters comprises prompting a user to specify the graph type, scaling, labels and other graph parameters. | Access 7.0 includes prompts for the user to specify graph type, scaling, labels and other graph parameters. | Paradox 5.0 includes prompts for the user specify graph type, scaling, labels and other graph parameters. | Admitted prior art inherently prompts user to specify graph parameters. |

| Claim 9 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 9. The method of claim 8, further comprising the step of assigning a default value for each graph parameter that the user does not select. | Access 7.0 assigns default values to graph parameters. | Paradox 5.0 assigns default values to graph parameters. | Admitted prior art inherently assigns default values to graph parameters. |

38

| Claim 10 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 10. The method of claim 1, wherein the step of causing the display device to display the pages further comprises the steps of: | Access 7.0 causes the display device to display report pages in preview mode. | Paradox 5.0 causes the display device to display report pages in preview mode. | Prior art systems discloses causing the display device to display the pages. |
| determining if a page file contains an area selected for variable graphics information; and<br><br>if a page file contains an area selected for variable graphics information, saving the specified graph parameters and selected fields from the database representing variable graphics information, and executing a graph file to generate a graph using the specified graph parameters and selected database fields. | Access 7.0 stores chart parameters in a graph object that defines the chart. The graph information is passed to an external program called Microsoft Graph 5.0 to generate the graph | Paradox 5.0 graph data is stored in a graph object embedded in the report template. The graph object is executed to generate the graph. | Admitted prior art inherently includes determining area of page for variable graphics information and saving corresponding parameters. |

| Claim 12 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 12. The method of claim 1, wherein the display device is a demand printer which prints the pages. | Access 7.0 allows a user to print reports including variable graphs. | Paradox 5.0 allows a user to print reports including variable graphs. | It was known in the admitted prior art to use a demand printer which prints the pages. |

| Claim 14 of the '452 Patent | Access 7.0 | Paradox 5.0 | Admitted Prior Art |
|---|---|---|---|
| 14. The method of claim 1, wherein the variable graphics information is displayed as a bar chart and the step of causing the display device to display the pages with selected variable graphics information further comprises the steps of:<br><br>(i) generating a bar chart at the selected area on the page, wherein the chart includes a bar for each database field representing variable graphics information and each bar corresponds to a maximum value of the database entries representing variable graphics information; and<br><br>(ii) analyzing each database field representing variable graphics information and covering a portion of the bar corresponding to that field based on a comparison of the value of that field with the maximum value. | Access 7.0 charts in include bar chart types. | Paradox 5.0 graphs include bar graph types. | Admitted prior art discloses bar graphs as variable graphics information. |

Defendants also assert that each of the claims 1, 2, 7-10, 12 and 14 of the '452 patent may be obvious under 35 U.S.C. § 103(a) in view of a combination of one or more of the following references: (i) Access 7.0, (ii) Paradox 5.0, (iii) the Admitted Prior Art, (iv) the prior art of record cited in one or more the patents in suit, and/or (v) the prior art set forth in the list below. These references, alone or in combination, disclose systems and methods for developing a report template including fixed, variable and variable graphics information, generating a graph in accordance with stored data and graph parameters, and displaying the resulting pages.

40

In addition to the prior art of record in the patents in suit, Defendants have identified the following prior art as being potentially relevant, either alone or in combination with other prior art, to the invalidity of claims 1, 2, 7-10, 12 and 14 of the '452 patent under 35 U.S.C. §§ 102 and 103(a):

- U.S. Patent Nos. 4,723,209; 4,847,785; 4,852,019; 5,237,498; 5,245,535; 5,440,745; 5,937,708

- Japanese Patent Publication Nos. JP H08-44802; JP H08-115178; JP H09-16791; JP H08-171649

- Microsoft FoxPro Relational Database Management System for Windows, Versions 2.5 (1993) and 2.6 (1994)

- Microsoft FoxPro Relational Database System for Windows, Developer's Guide. Microsoft Corporation, 1993. K01097033-K01097584.

- Holzgang, David A, *Understanding Postscript, For Postscript Levels 1 & 2*, 1992.

- Mueller, John & Wallace Wang, *OLE For Dummies*, 1995. K01096120-K01096483.

- Wickham-Jones, Tom, *Mathematica Graphics*, 1994.

- *Your "Un" Official Guide to using OLE Automation with Microsoft Office and Microsoft BackOffice*. Microsoft, 1995.

- Microsoft Office 95 Data Access Reference. Microsoft, 1995.

- IBM Graphical Data Display Manager (GDDM).

Defendants also assert that the claims of the '452 patent may be invalid under 35 U.S.C. § 112 for indefiniteness, lack of written description and/or lack of enablement, in that the claims require "causing" things to occur without adequate description or explanation. In addition, claim

41

7 may be invalid under 35 U.S.C. § 112 for being indefinite as to the scope and meaning of the trademarked term QuarkXPress®.

### U.S. Patent No. 6,952,801

Defendants assert that claims 1, 3-5, 12, 13, 15-17, 24 & 25 of the '801 patent may each be invalid under 35 U.S.C. § 112, first or second paragraphs, on the ground that one or more of the following claim limitations recited in independent claim 1 is indefinite and/or that the specification does not enable, provide a written description of, or disclose the best mode for practicing one or more of the following claim limitations:

(C) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book;

(D) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number;

(E) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number;

(F) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information;

(G) producing the first and second books in a single press run.

In the event that the claims are ultimately found to be in compliance with 35 U.S.C. § 112, Defendants also assert that each of the asserted claims 1, 3-5, 12, 13, 15-17, 24 & 25 of

42

the '801 patent me be invalid under 35 U.S.C. § 102(b) and/or § 103(a) in view of at least the following prior art:

- The prior art of record cited in the patents in suit.

- Interpress, The Source Book (published 1988). Interpress is a page description language (PDL) developed by Xerox.

- U.S. Patent Nos. 4,498,150; 4,709,348; 5,136,316; 5,436,196; 5,442,732; 5,448,691; 5,495,561

- JP H06-180494

The claim charts, below, provide an exemplary illustration of how claims 1, 3-5, 12, 13, 15-17, 24 & 25 of the '801 patent may be anticipated and/or rendered obvious in view of one or more U.S. Patent Nos. 5,390,354 (de Heus), 5,907,836 (Sumita), 5,346,196 (Nussbaum), 5,535,677 (Fannin) and 5,442,732 (Matysek). During the prosecution of the '801 patent before the United States Patent and Trademark Office, RRD argued that the pending claims were allowable over the prior art cited by the Examiner because, in part, none of the cited references "discloses or suggests the step of producing such first and second books in a single press run." The PTO, however, did not consider U.S. Patent No. 5,442,732 to Matysek, or other prior art, which discloses that it was known in the prior art to store multiple print jobs (e.g., first and second books), which are then sent to the printer as an individual print job.

43

| Claim 1 of the '801 Patent | Prior Art |
|---|---|
| 1. A method of assembling first and second different books, the method comprising the steps of: | *See, e.g.,* de Heus. |
| (A) storing a first number of pages; | *See, e g,* Sumita.<br><br>*See, e g.,* Matysek, cols. 1-2. |
| (B) specifying a first set of pagination information including an indication of whether a stored page is to be selectively included in the first book; | *See, e g,* de Heus, col. 3, l. 25 to col. 4, l. 14. |
| (C) specifying a second set of pagination information including an indication of whether a stored page is to be selectively included in the second book; | *See, e g,* de Heus, col. 3, l. 25 to col. 4, l. 14. |
| (D) determining whether a stored page is to be assembled into the first book based on the first set of pagination information wherein a second number of stored pages to be assembled into the first book is less than the first number; | *See, e g,* de Heus, col. 3, l. 25 to col. 4, l. 14;<br><br>*See also* Sumita, Fig. 143.<br><br>*See also* Nussbaum, cols. 1-3. |
| (E) determining whether a stored page is to be assembled into the second book based on the second set of pagination information wherein a third number of stored pages to be assembled into the second book is different than the second number and no greater than the first number; | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14.<br><br>*See also* Sumita, Fig. 143.<br><br>*See also* Nussbaum, cols. 1-3 |
| (F) generating page description language instructions for production of the first and second books in accordance with the first and second sets of pagination information; and | *See, e g,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

44

| (G) producing the first and second books in a single press run. | *See, e.g.,* Fannin, cols. 1-2. <br><br> *See, e.g.,* Matysek, cols. 1-2. |
| --- | --- |

| Claim 3 of the '801 Patent | Prior Art |
| --- | --- |
| 3. The method of claim 1, further comprising the step of analyzing press commands directed to production of the first book to determine whether the page is to be assembled into the first book. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 4 of the '801 Patent | Prior Art |
| --- | --- |
| 4. The method of claim 1, further comprising the step of generating a pagination file having data representative of the first set of pagination information. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 5 of the '801 Patent | Prior Art |
| --- | --- |
| 5. The method of claim 1, further comprising the step of deriving a maximum number of pages for the first book based on the pagination information. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 12 of the '801 Patent | Prior Art |
| --- | --- |
| 12. The method of claim 1, further comprising the step of delivering page description language instructions to an electronic press to print the first book. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 13 of the '801 Patent | Prior Art |
| --- | --- |
| 13. The method of claim 1, wherein the step of specifying the first set of pagination information comprises the step of providing a user interface for entry of the pagination information | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 15 of the '801 Patent | Prior Art |
|---|---|
| 15. The method of claim 1, further comprising the step of analyzing press commands directed to production of the second book to determine whether the page is to be assembled into the second book. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 16 of the '801 Patent | Prior Art |
|---|---|
| 16. The method of claim 1, further comprising the step of generating a pagination file having data representative of the second set of pagination information. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 17 of the '801 Patent | Prior Art |
|---|---|
| 17. The method of claim 1, further comprising the step of deriving a maximum number of pages for the second book based on the pagination information. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 24 of the '801 Patent | Prior Art |
|---|---|
| 24. The method of claim 1, further comprising the step of delivering page description language instructions to an electronic press to print the second book. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

| Claim 25 of the '801 Patent | Prior Art |
|---|---|
| 25. The method of claim 1, wherein the step of specifying the second set of pagination information comprises the step of providing a user interface for entry of the pagination information. | *See, e.g.,* de Heus, col. 3, l. 25 to col. 4, l. 14. |

Persons knowledgeable of these facts with respect to Defendants' response to Interrogatory No. 5 include Timothy Donahue, Pat McGrew, John Desautels, Paul Notredame, unknown individuals of Hewlett-Packard, and unknown individuals of Quark, Inc. The prior art, and documents describing the prior art, speak for themselves.

46

## INTERROGATORY NO. 6

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 51 of their Answer that "RRD's claim for damages accruing prior to the filing of the Complaint is barred, in whole or part, by the doctrine of laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 6

Subject to the foregoing general objections, Defendants respond by incorporating its

response to Interrogatory Nos. 7, 8, 10, 11, and 14. Defendants further respond that the doctrine

of laches precludes RRD from any alleged damages that may have been incurred due to

Defendants' actions prior to the time that RRD filed and served its Complaint on January 17,

2006.

*REDACTED*

RRD thus delayed in bringing suit against

Defendants by waiting over 4 years from the issuance of the '599 and '452 patents,

*REDACTED*                to file suit.

During this period, RRD did, and continued to do, regular business with Defendants. At no point

during this delay did RRD provide Defendants with any indication that it ever intended to file

suit for patent infringement.   Given the circumstances, RRD's delay was unreasonable and

inexcusable.

47

Due to RRD's delay in bringing suit, Defendants have suffered substantial prejudice. By way of example, due to RRD's delay, Defendants may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, the destruction of third-party documents, and the unreliability of memories of long past events. With respect to business prejudice, Defendants have continued to invest in and develop the accused software products during this delay period

Persons knowledgeable of these facts include, but are not limited to, William E. McCracken, Joseph Guiliano, Ronen Cohen, Gershon Alon, Ronny Fogel, James Katerberg, John Desautels, Roger Parrett, John Peck, William Scheinfurth, Venkat Purushotham, Nachum Shamir, and James Langley.

Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 7

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 52 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of equitable estoppel," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 7

Subject to the foregoing general objections, Defendants respond by incorporating its responses to Interrogatories Nos. 6, 8, 10, 11, and 14. Defendants further respond that RRD engaged in misleading conduct during both its business relationships with Defendants, and its participation in various standards-making bodies.

48

*REDACTED*

RRD thus delayed in

bringing suit against Defendants by waiting over 4 years from the issuance of the '599 and '452

patents,                          *REDACTED*

to file suit. During this period, RRD did, and continued to do, regular business with

Defendants. At no point during this delay did RRD provide Defendants with any indication that

it ever intended to file suit for patent infringement. Given the circumstances, RRD's conduct

was misleading.

Further, RRD engaged in misleading conduct while participating in the CGATS.20

standard-making process. Specifically, during the CGATS.20 standard-making process, RRD

filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in

Conjunction With an American National Standard." K00388563-K00388565. In this document,

RRD stated that it would "provide a license under any [of the above-listed] patents to the

producer and/or user of any [products complying with an American National Standard Institute

(ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any

unfair discrimination." K00388564. Moreover, at no time during the course of the CGATS.20

standard-making process did RRD indicate that it intended to assert its patents against

Defendants, or any other entities. RRD's filing of the Patent Holder Statement and subsequent

silence regarding its litigation intentions during the CGATS.20 standards-making process was

misleading.

49

Defendants relied on RRD's misleading conduct when deciding to continue to invest in and develop the accused software products. Defendants now face material prejudice as a result of RRD's misleading conduct. In particular, due to RRD's misleading conduct, Defendants may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, the destruction of third-party documents, and the unreliability of memories of long past events. Defendants may also experience material economic prejudice, as a result of Defendants' continuing investment in and development of the accused software products.

Persons knowledgeable of these facts include, but are not limited to, William E. McCracken, Joseph Guiliano, Riyaz Asaria, Mary Abbott, Timothy Donahue, Ronen Cohen, Gershon Alon, Ronny Fogel, James Katerberg, John Desautels, Roger Parrett, John Peck, William Scheinfurth, Venkat Purushotham, Nachum Shamir, and James Langley

Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 8

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 53 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of waiver," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 8

Subject to the foregoing general objections, Defendants respond by incorporating by reference its response to Interrogatories Nos. 6-7, 10, 11, and 14.

RRD voluntarily and intentionally relinquished its rights against Defendants with respect to the patents in suit, when it failed to pursue litigation against Defendants for more than 4 years

after the issuance of the '599 and '452 patents.

***REDACTED***

During this period, RRD did, and continued to do, regular business with Defendants.   RRD's silence and inaction constituted a waiver of any allegations of infringement of the patents in suit.

RRD also waived its right to pursue claims of infringement of the patents in suit against Defendants by virtue of its participation on the CGATS.20 standard-making committee. Specifically, during the CGATS.20 standard-making process, RRD filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National Standard." K00388563-K00388565.  In this document, RRD stated that it would "provide a license under any [of the above-listed] patents to the producer and/or user of any [products complying with an American National Standard Institute (ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564.  Moreover, at no time in the course of the CGATS.20 standard-making process did RRD indicate that it intended to assert its patents against Defendants or any other entities. Therefore, RRD has waived the right to seek more than a license under reasonable terms and conditions for the patents in suit.

Finally, RRD has waived its right to pursue patent infringement claims against Defendants by virtue of agreements signed by RRD with Scitex.

***REDACTED***

51

*REDACTED*

Scitex was
subsequently acquired by Versamark, which was then acquired itself by Kodak;

*REDACTED*

    Persons knowledgeable of these facts include, but are not limited to, Riyaz Asaria, Paul Lovern, Jim Gibson, Chloma Jarrett, Michael Spaul, William E. McCracken, Timothy Donahue, Mary Abbott, Ronen Cohen, Gershon Alon, and Ronny Fogel.

    Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 9

    State in detail all factual and legal bases for Defendants' allegations set forth in paragraph 54 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of prosecution laches," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 9

    Defendants object that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing general and specific objections, Defendants respond that at least claims of the '599 patent, '940 patent and '801 patent are barred by the doctrine of prosecution laches.

RLF1-3138885-1

In the prosecution of the '599 patent, a Notice of Allowability issued on May 12, 1998, but RRD delayed the issuance of the allowed claims for over three and a half years by withdrawing the patent application from issue and filing successive Continued Prosecution Applications. *See* RRD004598-RRD004815. The delay was unreasonable and inexcusable, and Defendants will experience material economic prejudice as a result of its continued investment in and development of the Kodak Software during the period of delay without knowledge of RRD's intention to patent the subject matter of the '599 patent claims.

Regarding the '940 patent and '801 patent, RRD filed the earliest application to which these patents in suit claim on their face priority on June 7, 1995. The application that led to the issuance of the '801 patent was filed almost six years later; the application that led to the issuance of the '940 patent was filed 8 1/2 years later. RRD's delay in prosecuting these applications is unreasonable and unexplained and Defendants will experience material economic prejudice as a result of its continued investment in and development of the Kodak Software during the period of delay without knowledge of RRD's intention to patent the subject matter of the '940 and '801 patent claims.

Persons knowledgeable of these facts include, but are not limited to, the named inventors of the patents in suit, persons involved in the prosecution of the patents in suit, Ronen Cohen, Ron Peleg, Nardi Jaacobi, Gershon Alon, Roger Parrett, John Desautels, William Schweinfurth, John Peck, and William Sullivan.

Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

53

**INTERROGATORY NO. 10**

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 55 of their Answer that "RRD's claims are barred, in whole or part, by the doctrines of license and/or implied license," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

**RESPONSE TO INTERROGATORY NO. 10**

Subject to the foregoing general objections, Defendants incorporate by reference its response to Interrogatory Nos. 6, 7, 8, 11, and 14. Defendants respond that there are two methods by which RRD has effected an implied license to Defendants.

First, RRD has granted Defendants an implied license to the patents in suit through equitable estoppel. The Kodak Software was developed to be compatible with the CGATS.20 standard. As further detailed in Defendants' responses to Interrogatory No. 7, RRD disclosed the existence of the patents in suit and/or their applications in RRD's "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National Standard" to CGATS.20. K00388563-K00388565. In the statement, RRD represented that it would provide a license to the patents in suit "under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564.

*REDACTED*

Having relied on RRD's conduct, Defendants will be materially prejudiced by its continued investment in and development of the accused software products if RRD is allowed to proceed with its infringement claims.

Second, an implied license arose from the course of conduct between RRD and Defendants. RRD has used and had access to various technologies produced by Defendants,

54

including those of Scitex. Scitex was purchased by Versamark and has since been acquired by

Kodak.

***REDACTED***

The reasonable expectations of the parties and the

dictates of fairness and equity support an implied license when RRD and its assigns acquiesced

in the development of this variable data software.

Persons knowledgeable of these facts include, but are not limited to, Ronen Cohen,

Gershon Alon, Ronny Fogel, Timothy Donahue, Paul Lovern, Jim Gibson, Chloma Jarrett,

Michael Spaul, Riyaz Asaria, Mary Abbott, and unknown representative(s) of RRD.

Defendants reserve the right to supplement their response to this interrogatory at

appropriate times in this litigation.

## INTERROGATORY NO. 11

State in detail all factual and legal bases for Defendants' allegations set forth in
Paragraph 56 of their Answer that "RRD's claims are barred, in whole or part, by the doctrine of
unclean hands," including, but not limited to, the identification of all documents and
communications on which Defendants rely to support their contention and the identity of the
persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 11

Subject to the foregoing general objections, Defendants incorporate by reference its

response to Interrogatory Nos. 6, 7, 8, 10, and 14.

RRD engaged in unconscionable and inequitable conduct during the prosecution of the

patents in suit. Specifically, RRD deceived the Patent and Trademark Office ("PTO"), by

55

withholding material prior art references and other information known to RRD. By way of example, such withheld material includes the over 50 prior art references that were not disclosed by RRD to the PTO during the prosecution of the '599 patent, but were subsequently identified during the prosecution of the '452 patent. Moreover, RRD failed to disclose material information known to RRD regarding commercial activities and other disclosures of Barco Graphics and Xeikon that occurred prior to the filing dates of the patents in suit. Further, RRD intentionally deceived the PTO by "burying" material references during the prosecution of the patents in suit, and by submitting only selected excerpts of cited references while withholding from the PTO non-cumulative material information disclosed elsewhere in the cited references.

RRD is also engaged in unconscionable and inequitable conduct in light of its participation on the CGATS.20 standard-making committee. Specifically, during the CGATS.20 standard-making process, RRD filed a "Statement of Patent Holder Concerning the Use of Patented Device or Design in Conjunction With an American National Standard." K00388563-K00388565. In this document, RRD stated that it would "provide a license under any [of the above-listed] patents to the producer and/or user of any [products complying with an American National Standard Institute (ANSI)], as needed, under reasonable terms and conditions that are demonstrably free of any unfair discrimination." K00388564. Moreover, at no time in the course of the CGATS.20 standard-making process did RRD indicate that it intended to assert its patents against Defendants or any other entities. Therefore, it is inequitable and unconscionable for RRD to now seek more than a license under reasonable terms and conditions for the patents in suit.

By engaging in such unconscionable and inequitable conduct, RRD claims are barred by the doctrine of unclean hands.

56

Persons knowledgeable of these facts include, but are not limited to, persons involved in the prosecution of the patents in suit, Ronen Cohen, Gershon Alon, Ronny Fogel, Charles Cornelius, Paul Notredame, Rob Haak, Karel Tavernier, Grant Miller, Stefaan De Smedt, Francois Kremer, Brian L. Michaelis, Yves Vanhauwaert, Mary Lee Schneider, Ronnie Sarkar, Stella Shaw, Jim Turner, Barb Schetter, Jack Oberhill, Daryl P. Jones, Timothy Donahue, Riyaz Asaria, and Mary Abbott.

Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 12

State in detail all factual and legal bases for Defendants' allegations set forth in Paragraph 57 of their Answer that "RRD's alleged damages are barred or limited, in whole or part, by 35 U.S.C. §§ 286 and/or 287," including, but not limited to, the identification of all documents and communications on which Defendants rely to support their contention and the identity of the persons most knowledgeable about the factual bases for those allegations.

## RESPONSE TO INTERROGATORY NO. 12

Defendants object that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this interrogatory as premature to the extent that discovery remains ongoing. Further, it is premature at this time, given that Defendants' rebuttal expert report including its damages analysis is not due under the Court's Rule 16 Scheduling Order until November 6, 2007. Subject to the foregoing general and specific objections, Defendants respond that RRD has failed to mark products and/or services as required by 35 U.S.C. § 287. Moreover, RRD has failed to provide actual notice to the extent it has failed to charge infringement of specific patents in suit against a specific Kodak accused product and/or service. In particular, RRD has failed to provide any actual notice of any product except for the Amended Complaint's references to "Kodak

57

Software," which is defined as including "Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer," and "Digital Presses," which are defined as including "the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers:  CS150, CS300, CS 340, CS400, and CS600." With respect to 35 U.S.C. § 286, RRD is barred from recovering any damages resulting from any infringement committed more than six years prior to the filing of the Complaint on January 17, 2006.

Persons knowledgeable of these facts include, but are not limited to, unknown representative(s) of RRD.

Defendants reserve the right to supplement their response to this interrogatory at appropriate times in this litigation.

## INTERROGATORY NO. 13

Identify and quantify all revenue and profit on a monthly, quarterly, and annual basis derived or earned by defendants, broken down by product, in connection with each of the Defendants' Software Products and Defendants' Hardware Products (beginning with the first receipt by Defendants of any such revenue) and explain how Defendants derive that revenue and profit, either directly or indirectly.

## RESPONSE TO INTERROGATORY NO. 13

Defendants object that this interrogatory is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  In particular, Defendants object to the interrogatory to the extent it seeks revenue and profit "beginning with the first receipt by Defendants of any such revenue."  Such "first receipt" predates any notice (if any) provided by RRD and/or the issue dates of the patents in suit.  Defendants also object that this interrogatory is overly broad and unduly burdensome and not relevant to the claim or defense of

58

any party or the subject matter of the action. In particular, Defendants object to the interrogatory as seeking information defined by the "Defendants' Software Products" and "Defendants' Hardware Products." The Amended Complaint only references "Kodak Software," which is defined as including "Darwin, Kodak NexTreme DL-100 Variable Data Software, Kodak NexTreme DL-1000 Variable Data Software, and Composer," and "Digital Presses," which are defined as including "the NexPress 2100 Plus Digital Production Color Press, the NexPress 2500 Digital Production Color Press, the NexStation digital press controller, the Kodak Versamark V-Series Printing System, the Kodak Versamark D-Series Printing System, and the following digital press controllers: CS150, CS300, CS 340, CS400, and CS600." Subject to the foregoing general and specific objections, Defendants will respond to this interrogatory by producing business records with financial data as early as March 2001, to the extent the financial data exists, for "Kodak Software" and "Digital Presses," as those terms are defined in the Amended Complaint. Defendants will also produce summaries of financial information, to the extent it exists. To date, Defendants have produced the following documents responsive to this interrogatory:

K00001484-K00001484, K00003328-K00003344, K00005108-K00005109,
K00006655-K00006664, K00012563-K00012658, K00015737-K00015740,
K00015882-K00015883, K00015946-K00015949, K00015950-K00015953,
K00017845-K00017869, K00018364-K00018365, K00019098-K00019099,
K00019100-K00019101, K00019556-K00019564, K00019565-K00019575,
K00022203-K00022208, K00022272-K00022288, K00022479-K00022479,
K00022926-K00022927, K00025360-K00025360, K00025747-K00025749,
K00026103-K00026104, K00026109-K00026110, K00026356-K00026356,
K00029598-K00029598, K00029599-K00029600, K00029601-K00029601,
K00029639-K00029640, K00029715-K00029715, K00030453-K00030455,
K00030478-K00030479, K00030480-K00030481, K00035544-K00035544,
K00035589-K00035589, K00035606-K00035607, K00036240-K00036241,
K00036832-K00036832, K00036835-K00036835, K00037697-K00037713,
K00037714-K00037727, K00037728-K00037741, K00037933-K00037941,
K00037942-K00037952, K00038552-K00038567, K00038927-K00038927,
K00039645-K00039645, K00039668-K00039669, K00039996-K00039996,

59

K00042629-K00042663, K00042664-K00042664, K00046065-K00046065,
K00046515-K00046518, K00046519-K00046522, K00046557-K00046558,
K00046564-K00046565, K00046566-K00046567, K00046610-K00046615,
K00047051-K00047055, K00047096-K00047100, K00047132-K00047136,
K00048486-K00048496, K00048497-K00048507, K00048754-K00048766,
K00048788-K00048788, K00049239-K00049243, K00049244-K00049252,
K00049253-K00049263, K00049287-K00049291, K00049292-K00049296,
K00049315-K00049335, K00049372-K00049393, K00049394-K00049394,
K00050160-K00050165, K00050196-K00050201, K00050332-K00050363,
K00050364-K00050370, K00050969-K00050971, K00050972-K00050973,
K00051160-K00051173, K00051867-K00051867, K00051910-K00051918,
K00051919-K00051925, K00052008-K00052018, K00053562-K00053572,
K00053629-K00053635, K00054282-K00054504, K00056739-K00056744,
K00058365-K00058367, K00058443-K00058447, K00058448-K00058453,
K00061286-K00061304, K00061305-K00061341, K00062219-K00062251,
K00064613-K00064624, K00066093-K00066118, K00066119-K00066131,
K00066132-K00066157, K00066158-K00066179, K00066180-K00066207,
K00066208-K00066234, K00066235-K00066261, K00066262-K00066287,
K00066288-K00066300, K00068366-K00068368, K00068369-K00068371,
K00069475-K00069696, K00069697-K00069925, K00070277-K00070420,
K00070421-K00070499, K00071477-K00071822, K00073008-K00073082,
K00073310-K00073387, K00073565-K00073748, K00074419-K00074491,
K00074492-K00074577, K00075089-K00075093, K00076595-K00076596,
K00076597-K00076600, K00078622-K00078691, K00078745-K00078746,
K00078747-K00078748, K00082420-K00082464, K00082713-K00082737,
K00083027-K00083082, K00083111-K00083123, K00084233-K00084318,
K00085489-K00085494, K00085518-K00085534, K00086267-K00086271,
K00087549-K00087554, K00088084-K00088123, K00088124-K00088158,
K00090230-K00090250, K00090929-K00090936, K00093677-K00093690,
K00127004-K00127012, K00127013-K00127023, K00127077-K00127077,
K00140943-K00140943, K00153430-K00153430, K00153431-K00153431,
K00153432-K00153433, K00154784-K00154788, K00154789-K00154793,
K00154846-K00154847, K00154916-K00154918, K00154919-K00154921,
K00154950-K00154950, K00154966-K00154972, K00155091-K00155092,
K00155093-K00155117, K00155118-K00155152, K00155176-K00155177,
K00155195-K00155196, K00155201-K00155207, K00155208-K00155214,
K00155215-K00155215, K00155216-K00155218, K00155219-K00155219,
K00155220-K00155220, K00155221-K00155279, K00155283-K00155296,
K00155297-K00155297, K00155298-K00155298, K00155299-K00155310,
K00155311-K00155312, K00155313-K00155336, K00155337-K00155367,
K00155368-K00155378, K00155379-K00155389, K00155427-K00155460,
K00155477-K00155478, K00155479-K00155479, K00155480-K00155480,
K00155481-K00155489, K00155544-K00155551, K00155564-K00155565,
K00155636-K00155654, K00155771-K00155779, K00156024-K00156031,
K00156173-K00156174, K00156191-K00156225, K00156376-K00156448,
K00156755-K00156810, K00157592-K00157624, K00157657-K00157672,

60

K00158100-K00158121, K00169460-K00169532, K00169626-K00169647,
K00170948-K00171023, K00176673-K00176697, K00176698-K00176722,
K00176723-K00176747, K00176748-K00176760, K00176761-K00176785,
K00176786-K00176810, K00176819-K00176843, K00176844-K00176868,
K00194119-K00194132, K00194397-K00194397, K00195415-K00195415,
K00195716-K00195717, K00196779-K00196783, K00199371-K00199374,
K00202010-K00202010, K00202981-K00202981, K00203567-K00203577,
K00203578-K00203588, K00208168-K00208176, K00208177-K00208187,
K00213644-K00213648, K00215973-K00216048, K00231063-K00231063,
K00231073-K00231073, K00231089-K00231089, K00231093-K00231093,
K00276267-K00276267, K00285606-K00285646, K00285655-K00285664,
K00285665-K00285705, K00285940-K00285980, K00332715-K00332716,
K00333703-K00333704, K00333883-K00333883, K00335356-K00335360,
K00336946-K00336947, K00336958-K00336959, K00340223-K00340223,
K00340632-K00340632, K00344628-K00344644, K00344653-K00344669,
K00352212-K00352213, K00353387-K00353395, K00353396-K00353404,
K00353794-K00353804, K00354615-K00354619, K00355572-K00355576,
K00355998-K00355998, K00356039-K00356043, K00356258-K00356266,
K00356448-K00356452, K00357134-K00357138, K00359610-K00359626,
K00361061-K00361071, K00361072-K00361080, K00361137-K00361141,
K00363895-K00363896, K00366300-K00366340, K00371203-K00371218,
K00374725-K00374733, K00374734-K00374744, K00416831-K00416831,
K00418111-K00418111, K00419250-K00419257, K00419289-K00419363,
K00419384-K00419457, K00420476-K00420487, K00420693-K00420693,
K00421067-K00421140, K00425078-K00425085, K00455482-K00455482,
K00458961-K00458985, K00458986-K00459010, K00459011-K00459035,
K00459036-K00459048, K00459049-K00459073, K00459074-K00459098,
K00459107-K00459131, K00459132-K00459156, K00459653-K00459666,
K00459667-K00459680, K00459681-K00459694, K00459695-K00459708,
K00460015-K00460025, K00460026-K00460036, K00460037-K00460047,
K00460280-K00460290, K00465902-K00465909, K00466516-K00466520,
K00469079-K00469090, K00469114-K00469125, K00469130-K00469141,
K00469142-K00469153, K00469487-K00469498, K00469948-K00469959,
K00471562-K00471577, K00473662-K00473673, K00474450-K00474463,
K00474464-K00474477, K00475165-K00475175, K00475176-K00475186,
K00475651-K00475666, K00477736-K00477747, K00483967-K00483974,
K00483975-K00483986, K00484314-K00484325, K00484503-K00484510,
K00485078-K00485082, K00490539-K00490609, K00491064-K00491103,
K00491104-K00491143, K00491144-K00491217, K00491259-K00491266,
K00493983-K00493990, K00494852-K00494868, K00495505-K00495511,
K00503221-K00503231, K00503232-K00503242, K00504903-K00504918,
K00526068-K00526089, K00555535-K00555537, K00595173-K00595192,
K00612305-K00612365, K00616038-K00616038, K00684340-K00684340,
K00707179-K00707239, K00709869-K00709870, K00709881-K00709881,
K00717759-K00717759, K00717760-K00717760, K00717763-K00717765,
K00753081-K00753100, K00788946-K00788946, K00815693-K00817167,

RLF1-3138885-1

K00887843-K00887846, K00888261-K00888264, K00888265-K00888268,
K00888278-K00888281, K00888374-K00888376, K00888377-K00888379,
K00921810-K00921812, K00921834-K00921834, K00921838-K00921838,
K00921866-K00921868, K00921869-K00921871, K00924744-K00924746,
K00961495-K00961501, K00986846-K00986856, K00987256-K00987294,
K00987723-K00987725, K00990028-K00990040, K01004918-K01004929,
K01004931-K01004942, K01005465-K01005465, K01005466-K01005471,
K01005472-K01005472, K01005473-K01005478, K01009205-K01009205,
K01009206-K01009206, K01009208-K01009208, K01019983-K01019983,
K01083220-K01083221, K01084559-K01084560, K01094655-K01094665.

Persons knowledgeable of these facts include, but are not limited to, Gershon Alon,

Ronen Cohen, Benny Shimshoni, Eli Shalhon, Chris O'Connor, Roger Parrett, John Desautels,

John Peck, William Schweinfurth, and David Beck.

Defendants reserve the right to supplement their response to this interrogatory at

appropriate times in this litigation.

As to objections only,

_____

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,*
*NexPress Solutions, Inc., Kodak*
*VersaMark, Inc., Eastman Kodak*
*Company, and Kodak Graphic*
*Communications Company*

OF COUNSEL:
Richard McMillan, Jr.
  rmcmillan@crowell.com
Jeffrey D. Sanok
  jsanok@crowell.com
Brian M. Koide
  bkoide@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Dated: April 13, 2007

62

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2007, I served the foregoing on counsel as follows:

## BY HAND AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

## VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

Douglas I. Lewis
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-4169
dilewis@sidley.com

John G. Hutchinson
SIDLEY AUSTIN, LLP
787 Seventh Avenue
New York, NY  10019
(212)839-5398
jhutchinson@sidley.com

Jamie L. Secord
SIDLEY AUSTIN, LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-2206
jsecord@sidley.com

Gregory E. Stuhlman(#4765)
stuhlman@rlf.com