IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>    Defendants. | C.A. No. 06-32-JJF |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendant. | |

**KODAK'S REPLY IN SUPPORT OF ITS MOTION FOR RULE 26(c)(1) PROTECTIVE
ORDER AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION TO COMPEL**

The disputed Rule 30(b)(6) deposition topics requested by Plaintiff R.R. Donnelley &

Sons Co. ("RRD") fail for three independent reasons.[1]  First, they provide none of the

"reasonable particularity" required by Rule 30(b)(6).  Second, they seek essentially a detailed

description of *counsel's* theories of defense, requesting that the Kodak defendants produce "fact"

---

[1] Kodak files this reply in support of its motion for a protective order, D.I. 228, and in opposition
to plaintiff's cross-motion to compel, D.I. 237.  Both motions will be heard on November 9,
2007 at 10:00 a.m.

witnesses to explain the mixed issues of law and fact upon which each of Kodak's defenses in this case depend. Such a request is directly contrary to authority in this Court that "contention depositions" are not useful. Third, to the extent they seek legitimate fact discovery, they are cumulative and duplicative of a great amount of deposition testimony already taken from individual and 30(b)(6) witnesses who have already been interrogated at great length.

What is really going on here is that RRD is dissatisfied with its deposition discovery and Kodak's interrogatory responses on these very same topics, and--rather than challenge those interrogatory responses directly or seek appropriate depositions--now seeks to engage in the totally unwieldy process of requiring Kodak to educate a "fact" witness regarding "all facts" bearing on "all" of Kodak's defenses--an impossible task in the context of this complex dispute. Kodak has served full and complete interrogatory responses, and continues to supplement those responses as new information is received. A further supplementation, in the normal course, will be filed in the next two weeks. Extensive depositions are ongoing. RRD has or will have full opportunity to notice and examine all relevant witnesses on all relevant topics, but should do so in normal fashion. In the meantime, however, RRD's attempt at a broad overuse of Rule 30(b)6) should be denied.

## ARGUMENT

### A.  RRD's 30(b)(6) Deposition Lacks Reasonable Particularity, Invades the Province of Counsel, and Improperly Duplicates Deposition Testimony Already Taken or Scheduled

At this late stage in discovery[2], now is not the time to embark on an exercise seeking Kodak's "contentions" under the guise of a wholly duplicative and very unwieldy 30(b)(6)

---

[2] Fact discovery closes on November 2, 2007.

deposition structure totally lacking in reasonable particularity. Yet, for the following reasons, that is precisely what RRD is attempting to do.

1.  Topics 1-13 and 15 of RRD's notice[3] fail to satisfy Rule 30(b)(6)'s "reasonable particularity" standard. RRD's cross-motion asserts that RRD must only "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." D.I. 237 at 4 (citing *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000)). Although RRD pays lip service to *Prokosch*, it ignores wholesale the opinion's underlying holding that in order "to allow [Rule 30(b)(6)] to effectively function, the requesting party must take care to designate, *with painstaking specificity*, the particular subject areas that are intended to be questioned." *Id* (emphasis added). RRD has failed to do so.

2.  Rather than identify the subject matter to be covered at the deposition with "painstaking specificity," Topics 1-13 instead broadly encompass all unspecified facts "supporting, refuting, or relating to" Kodak's defenses, "including but not limited to" the allegations made in Kodak's Amended Answer and Interrogatory responses.[4]  Such nearly limitless topics make it impossible for Kodak to identify and prepare the most suitable deponent.

3.  Indeed, RRD seemingly conceded the fact that at least Topic 5 is overbroad, both when drafting the deposition notice and when focusing the bulk of its attention in the cross-

---

[3]   A copy of the Notice of Deposition was attached to Defendants' Motion for Rule 26(c)(1) Protective Order as Exhibit A.

[4]   By way of example, Topic 5 of RRD's Fourth 30(b)(6) deposition notice broadly seeks: "The factual bases allegedly supporting, refuting, or relating to Defendants' defense of invalidity, including but not limited to the allegations set forth in Paragraph 46 of their Amended Answer and Defendants' Response to R.R. Donnelley's Interrogatory No. 5 and any supplements thereto." D.I. 228, Ex. A at 5.

motion to Topic 15. A comparison between Topics 5 and 15 of RRD's notice is instructive in this regard. Both Topic 5 and Topic 15 seek deposition testimony regarding the bases for Kodak's defense that the patents-in-suit are invalid. *Compare* D.I. 228, Ex. A at 5 ("The factual bases allegedly supporting, refusing, or relating to Defendants' defense of invalidity, including but not limited to the allegations set forth in" Kodak's Answer and interrogatory response), *with* D.I. 228 Ex. A at 9 ("The factual basis for Defendants' claims that the patents-in-suit are invalid, including but not limited to...any such allegations relating to Begin, DijiComp, Catalogic, Kodak Ektaprint, Forms Merge, Printstreamer, Access, FoxPro, IBM Graphical Data Display Manger, and Paradox."). Whereas Topic 5 fails to specifically identify any of the subject matter to be discussed at the deposition, Topic 15 attempts to more narrowly define the scope by identifying some prior art specifically by name. However, because both Topics 5 and 15 include the "including but not limited to" language, they are ultimately equally as broad.

4.    In its cross-motion, RRD attempts to downplay the scope of Topics 1-13 by stating that "RRD just wants the facts that Defendants believe support their defenses." D.I. 237 at 6. However, such a limitation does not cure the defects of Topics 1-13; as discussed *infra* (pages 5-7), in a complex patent case the facts underlying a contention cannot so easily be divorced from the contention itself. Indeed, the facts Kodak believes support its defenses were, as in most cases, largely identified and consolidated through investigation by Kodak's outside litigation counsel. By way of example, Kodak employees are generally not aware of the factual bases supporting Kodak's defenses of failure to state a claim (Topic 1), prosecution laches (Topic 9), or time limitations on damages (Topic 12).[5] Preparing a witness for such topics would

---

[5]    Indeed, many of the underlying facts supporting such defenses lie with RRD itself.

require Kodak's counsel to decide which facts are the most relevant, and then accordingly transfer counsel's knowledge to the witness on the relevant facts.

5.     Although RRD largely focuses its attention in the cross-motion to Topic 15, that topic also fails to satisfy the reasonable particularity requirement. While Topic 15 does identify some specific Kodak products by name, the topic also "includ[es] but [is] not limited to" any allegations relating to any unnamed products used by Kodak. With regards to the third party software products named in the topic (such as the Printstreamer, Access, and Paradox), the factual investigation supporting Kodak's invalidity defense was conducted by outside litigation counsel, meaning that Kodak employees are generally unaware of the facts supporting Kodak's defense with regards to these products.

6.     As noted in Kodak's Motion for Protective Order, the situation presented here is closely analogous to the facts considered in *SmithKline Beecham Corp. v Apotex Corp.*, 2004 WL 739959 (E.D. Pa. Mar. 23, 2004), a case wholly-ignored in RRD's cross-motion. In *SmithKline Beecham*, the court held that testimony regarding the "bases for [SmithKline's] allegations in its complaints filed in these consolidated actions that Alphapharm infringes" were more appropriately discovered via interrogatories than 30(b)(6) deposition testimony. *Id* at *4.

7.     Courts in this District have similarly disallowed contention-based 30(b)(6) depositions, when the information was more appropriately obtained via contention interrogatories or other means. *Discovision Associates v. Disc Manufacturing, Inc.*, C.A. No. 95-21-SLR, tr. at 11 (Oral Ruling D. Del. Dec. 7, 1995) (holding that contention deposition topics seeking the bases for allegations of patent infringement were improper, and instead requiring that the information be discovered via contention interrogatory); *Joint Stock Society v. Heublein, Inc*, C.A. No. 95-749-RRM, tr. at 51 (Oral Ruling D. Del. May 1, 1996). Here, RRD has had ample

5

opportunity to explore Kodak's defenses and contentions through interrogatory responses, document production, fact depositions and expert reports and depositions. There is simply no need for a Rule 30(b)(6) contention deposition.

8.    In its cross-motion, RRD attempts to distinguish such case law by stating that it only seeks testimony regarding "the facts underlying Defendants' defenses," not Kodak's contentions themselves. D.I. 237 at 6. This is a distinction without a difference. In a complex patent case, the "factual bases" supporting a party's contentions cannot simply be divorced from the legal context in which those facts are identified and considered. Relevant "underlying" facts are typically identified by counsel based on the applicable legal principles. Thus, the contentions and supporting facts are inherently intertwined.

9.    The Northern District of California has recognized that in complex patent litigations the "factual bases" underlying legal contentions cannot simply be separated from the contentions themselves. *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991), *rev'd in part on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991).[6] There, a party sought 30(b)(6) deposition testimony regarding "the bases for the contentions made and for the positions taken (including all affirmative defenses)...." *Id.* at 287. The *McCormick-Morgan* court refused to allow the depositions, requiring that the discovery must be taken via contention interrogatory. In so holding, the court explained that:

> In a patent case like this, the bases for contentions do not consist
> exclusively of relatively straightforward facts or evidence, as might be

---

[6]    In seeking a protective order, McCormick-Morgan noted the unfairness of requiring "a 30(b)(6) witness set forth in full detail every item of evidence and every aspect of legal argument or authority that had any tendency to help support any position (factual or legal) MMI was taking in the litigation," and that in a complex patent litigation "by far the most reliable and complete discovery vehicle for setting forth the bases (in evidence, events, and law) for a party's contentions and positions would be a set of [contention interrogatory] responses." *Id.* at 287.

true, by contrast, in a case arising out of a traffic accident. In other words, to set forth the bases for contentions in this case, it is not enough to describe real world facts and events, even in considerable detail. Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions. … Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and describing the relationships that serve as the bases for a given parties' contentions, is something best done by patent lawyers, and best done after at least most other discovery has been completed. After all, in cases like these, a substantial part of "the bases for contentions" really consists of *quasi-legal argument*.

*Id.* at 287.

10.    Here, preparing a witness to discuss the "factual bases" underlying Kodak's various defenses would require Kodak's counsel to make determinations of which facts are most relevant, based on the underlying case law and the patents in suit. In many cases, Kodak's counsel would then have to teach the 30(b)(6) designee the relevant facts, since the facts were investigated and identified by counsel. Such a process is wholly-improper, and is one reason that courts have consistently required that the discovery of such facts be taken by interrogatory, rather than 30(b)(6) deposition.

**B. RRD has already received the requested information via Kodak's interrogatory responses and /or depositions**

11.    Not surprisingly, RRD's cross-motion glosses over the fact that Kodak has already provided RRD with detailed interrogatory responses regarding all the contentions for which RRD seeks deposition testimony. For nearly six months after Kodak's service of the current supplemental interrogatory responses, RRD never raised any issues regarding the specificity of the topics in question. Recognizing that the information it seeks is more properly

7

obtained via contention interrogatory than 30(b)(6) deposition, however, RRD now asserts its noticed 30(b)(6) depositions are necessary because Kodak's responses to RRD's interrogatories "contain little factual detail." D.I. 237 at 7.

12.    Moreover, the breadth of the proposed topics makes quite clear that RRD's real motive here is to simply get a "second bite of the apple" in deposing relevant witnesses. This again is wholly improper. RRD has already taken a substantial number of both individual and Rule 30(b)(6) depositions. To date, RRD has taken the depositions of seven witnesses, covering more than 25 hours and ten 30(b)(6) deposition topics across three business units. Reaching the end of discovery, RRD has thus deposed (or will soon depose) the witnesses that RRD believes have relevant knowledge, in their individual and/or 30(b)(6) capacity. RRD's belated 30(b)(6) strategy is simply an attempt to double-dip. RRD's notice seeks to gain additional deposition testimony that is directly duplicative of the depositions already taken by RRD.

13.    For instance, Topics 2 and 3 – dealing with Kodak's contentions regarding direct infringement and indirect infringement, respectively – cover topics for which RRD has already taken substantial 30(b)(6) deposition testimony. RRD has deposed Kodak Rule 30(b)(6) witnesses regarding topics including, *inter alia*, the design, operation, functionality, features, structure, performance, and technical characteristics of the accused software, the output produced by the accused software, and the conception, development, commercialization, marketing, and promotion of the accused software. *See* Ex. E at 4-6. Through Topics 2 and 3, RRD is thus simply seeking a second bite at the apple regarding Kodak's non-infringement positions.[7]

---

[7]    RRD will also presumably cover these topics at length during the deposition of Kodak's technical expert witness, meaning that RRD is seeking three different depositions regarding Kodak's non-infringement positions.

8

14.    To the extent that RRD believed its existing deposition structure missed capturing relevant facts, RRD could have supplemented its existing depositions in a much less burdensome and more appropriate manner. With respect to Kodak's invalidity contentions, for instance, RRD could easily have noticed a 30(b)(6) deposition at any time regarding the design, operation, and functionality of Kodak's prior art software such as Begin, DijiComp, and Forms Merge; Kodak would have willingly designated a witness or witnesses for such a topic. Similarly, if RRD wanted to "probe" into the facts supporting Kodak's defense of laches, it could have noticed a 30(b)(6) deposition identifying the specific issues to be discussed.[8] Kodak could then have identified and prepared an appropriate witnesses.

15.    Instead, RRD has elected to seek wide-ranging deposition testimony duplicative of depositions already taken by RRD. Requiring Kodak to designate witnesses for Topics 1-13 and 15 at this late date will require Kodak to redesignate witnesses already deposed by RRD. RRD should not be allowed to redepose the same Kodak witnesses regarding the same issues a second time. Such an approach is both inefficient and unduly burdensome.

## CONCLUSION

16.    RRD's Rule 30(b)(6) topics are untimely, lack particularity, invade the province of counsel, and are cumulative and burdensome in light of discovery already taken. Accordingly, Kodak respectfully requests that the Court deny RRD's cross-motion to compel, and instead grant Kodak's motion for a protective order.

---

[8]    During the meet and confer conference, RRD was unwilling to so limit the scope of any of its deposition topics.

9

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500


Dated:  October 23, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants*
*Creo, Inc., NexPress Solutions, Inc., Kodak*
*Versamark, Inc., Eastman Kodak Company*
*and  Kodak  Graphic  Communications*
*Company*

10

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2007, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following, who have also been served as noted:

### BY HAND DELIVERY

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on October 23, 2007, the foregoing was sent to the following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

Douglas I. Lewis
Jamie L. Secord
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL   60603

John G. Hutchinson
Sidley Austin, LLP
787 Seventh Avenue
New York, NY   10019

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY, <br><br> Defendants. | C.A. 06-32-JJF |
| EASTMAN KODAK COMPANY, <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> R.R. DONNELLEY & SONS COMPANY, <br><br> Counterclaim-Defendant. | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S RESPONSES AND OBJECTIONS TO R.R. DONNELLEY'S SECOND NOTICE OF DEPOSITION OF DEFENDANTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

Defendants Creo, Inc., Nexpress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company (collectively, "Defendants") hereby respond to R.R. Donnelley & Sons Company's ("RRD") Second Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) (hereinafter, "Deposition Notice")

Regarding the Deposition Notice, Defendants will work with RRD to identify a mutually acceptable date or date(s) and location or location(s)  Defendants will use their best efforts to produce witnesses who can testify on the designated topics, subject to the qualifications set forth below  Defendants, however, cannot anticipate all the questions that RRD may ask, particularly where the designated topics are broadly framed.  Defendants reserve all objections, in this or any other proceeding, with respect to the relevance, materiality, and admissibility of any deposition topics or responses to the topics

Defendants will supplement their document production pursuant to Federal Rule of Civil Procedure 26(e), but otherwise Defendants do not intend to produce additional documents

## I.    GENERAL OBJECTIONS TO TOPICS AND REQUESTS FOR PRODUCTION

Defendants make the following objections, whether or not separately set forth, in response to each of the topics:

1.    Defendants object to the Deposition Notice to the extent it fails to provide a reasonable time frame limitation.  Defendants will produce testimony regarding events since 2001.

2.    Defendants object to the Deposition Notice to the extent it fails to identify "Defendants' Software Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "Defendants' Software Products" includes any "software product designed, marketed, sold, offered for sale, made, used or imported by Defendants intended to enable Variable Digital Printing."  The term "Variable Digital Printing" is also broadly defined by RRD as "digital printing in which the content of a page may be varied or in which the number of pages in a document may be varied "  RRD's definition for "Defendants' Software Products" is overly broad, vague and ambiguous,

and fails to properly place Defendants on notice of all software products to be covered at the deposition. RRD has, itself, admitted that this broad definition encompasses technologies completely unrelated to the subject matter of this suit, such as "the ink jet printer sitting in many homes today." (D.I. 35 at 2.) Defendants will only prepare and produce a witness or witnesses to testify regarding software products specifically identified by RRD, and only then insofar as Defendants have knowledge regarding products that they did not design and/or develop. To date, RRD has only specifically identified Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro.

3.    Defendants object to the Deposition Notice to the extent it fails to identify "Defendants' Hardware Products" with "reasonable particularity" as required by Rule 30(b)(6). As defined in RRD's Amended Notice of Deposition dated November 10, 2006, "Defendants' Hardware Products" include "any press or substantially similar hardware designed, marketed, sold, offered for sale, made, used, or imported by Defendants for use in Variable Digital Printing." This definition is vague and ambiguous, and fails to properly place Defendants on notice as to all hardware products to be covered at the deposition. Defendants will only prepare and produce a witness or witnesses to testify regarding hardware products specifically identified by RRD. To date, RRD has only specifically identified the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press.

4.    Defendants object to the Deposition Notice to the extent it fails to identify "Third Party Software Products" with "reasonable particularity" as required by Rule 30(b)(6). As

defined in RRD's Amended Notice of Deposition dated November 10, 2006, "'Third Party Software Products' means any software product meant to enable Variable Digital Printing." This definition is overly broad, as Defendants cannot possibly identify, let alone prepare witnesses to testify about, all software products intended by third party producers "to enable Variable Digital Printing." Defendants also cannot be expected to produce a witness or witnesses to testify as to software products which Defendants did not design and/or develop. Moreover, the definition of "Third Party Software Products" is vague and ambiguous, and fails to properly place Defendants on notice as to all software products to be covered at the deposition. The Deposition Notice has not specifically identified any "Third Party Software Products." Therefore, Defendants object and will not prepare or produce a witness or witnesses for any topic to the extent it includes "Third Party Software Products."

## II.    SPECIFIC OBJECTIONS AND RESPONSES TO TOPICS AND REQUESTS FOR PRODUCTION

### TOPIC NO. 1

The output produced by Defendants' Software Products and by Third Party Software Products, including but not limited to the organization and formatting of static and variable data in such output.

### RESPONSE TO TOPIC NO. 1

Defendants object to the topic as stated because it is overly broad and, if read literally, would encompass many aspects of the products in question having nothing to do with this lawsuit. Rule 30(b)(6) requires that topics be identified with "reasonable particularity." To the extent that Topic No. 1 does not do so, Defendants object and will not prepare or produce a witness or witnesses as to such topic.

Subject to the foregoing general and specific objections, Defendants will produce a witness or witnesses to testify to the output produced by Darwin Desktop for QuarkXPress,

Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and Fusion Pro, as they relate to Variable Digital Printing, insofar as Defendants have knowledge regarding products that they did not design and/or develop.

## TOPIC NO. 2

Defendants' inbound and outbound patent licenses relating to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 2

Defendants object to the topic to the extent it seeks testimony regarding any responsive information protected from disclosure by the attorney-client and/or attorney work product privileges.

Subject to the foregoing general and specific objections, Defendants will produce a witness or witnesses to testify to Defendants' inbound and outbound patent licenses relating to Variable Digital Printing, to the extent such licenses exist.

## TOPIC NO. 3

Defendants' sales, both in units and dollar amounts, revenue, costs, and profits relating to Defendants' Software Products and Defendants' Hardware Products.

## RESPONSE TO TOPIC NO. 3

Subject to the foregoing general objections, Defendants will produce a witness or witnesses to testify regarding Defendants' sales, revenue, costs, and profits relating to Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the

Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, to the extent and in the manner in which such information is maintained by Defendants.

## TOPIC NO. 4

The design, operation, functionality, features, structure, performance, and technical characteristics of Defendants' Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 4

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the design, functionality and features of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro, as they relate to Variable Digital Printing, insofar as Defendants have knowledge.

## TOPIC NO. 5

The conception, design, development, and commercialization of Defendants' Software Products relating to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 5

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the conception, development and commercialization of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, and FusionPro, insofar as Defendants have knowledge. This topic otherwise is duplicative of Topic No. 4.

## TOPIC NO. 6

The content of Defendants' documentation for Defendants' Software Products and Defendants' Hardware Products (in any form, including hard copy and online documentation) relating to Variable Digital Printing, including but not limited to user's guides, reference manuals, product manuals, product descriptions, technical articles, and the like

## RESPONSE TO TOPIC NO. 6

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the users' guides, reference manuals and product manuals for Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, relating to Variable Digital Printing, insofar as Defendants have knowledge.

## TOPIC NO. 7

Instructions provided to users of Defendants' Software Products and Defendants' Hardware Products relating to Variable Digital Printing

## RESPONSE TO TOPIC NO. 7

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the instructions provided to users of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, related to Variable Digital Printing, insofar as Defendants have knowledge

## TOPIC NO. 8

The content and intent of Defendants' marketing and promotional materials for Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 8

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the marketing and promotional materials for Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, as they relate to Variable Digital Printing.

## TOPIC NO. 9

Promotion or sales by Defendants, including actions and representations made by Defendants' salespersons, of Defendants' Software Products, Defendants' Hardware Products, and Third Party Software Products as they relate to Variable Digital Printing.

## RESPONSE TO TOPIC NO. 9

Subject to the foregoing objections, Defendants will produce a witness or witnesses to testify regarding the sales of Darwin Desktop for QuarkXPress, Darwin Desktop for InDesign (Macintosh), Darwin Desktop for InDesign (Windows), Darwin Pro for QuarkXPress, Darwin Pro for InDesign (Macintosh) and Darwin Pro for InDesign (Windows), DL-100, DL-1000, Composer, FusionPro, the Kodak Versamark V-Series Printing Systems, the Kodak Versamark D-Series Printing System, the Kodak NexPress 2100 Plus Digital Production Color Press, and the Kodak NexPress 2500 Digital Production Color Press, as they relate to Variable Digital Printing

RLF1-3142429-1

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com

OF COUNSEL:
Richard McMillan, Jr
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500


Dated: April 23, 2007

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendant and
Counterclaim-Plaintiff Eastman
Kodak Company and Defendants Creo, Inc,
NexPress Solutions, Inc, Kodak Versamark,
Inc, and Kodak Graphic Communications
Company*

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2007, I served the foregoing on counsel as follows:

**BY HAND AND ELECTRONIC MAIL**

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

| | | |
|---|---|---|
| Douglas I. Lewis | John G. Hutchinson | Jamie L. Secord |
| SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP |
| One South Dearborn Street | 787 Seventh Avenue | One South Dearborn Street |
| Chicago, IL  60603 | New York, NY  10019 | Chicago, IL  60603 |
| (312) 853-4169 | (212)839-5398 | (312) 853-2206 |
| dilewis@sidley.com | jhutchinson@sidley.com | jsecord@sidley.com |

Gregory E. Stuhlman(#4765)
stuhlman@rlf.com