**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) C.A. No. 06-cv-032-JJF<br>CREO, INC., NEXPRESS SOLUTIONS, )<br>INC., KODAK VERSAMARK, INC., )<br>EASTMAN KODAK COMPANY, and )<br>KODAK GRAPHIC COMMUNICATIONS )<br>COMPANY, )<br>)<br>Defendants. )<br>)<br>EASTMAN KODAK COMPANY, )<br>)<br>Counterclaim-Plaintiff, )<br>)<br>v. )<br>)<br>R.R. DONNELLEY & SONS COMPANY, )<br>)<br>Counterclaim-Defendant. )<br>) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION TO COMPEL

1. Plaintiff R.R. Donnelley ("RRD") submits this reply in support of its Cross-Motion to Compel.[1] RRD's Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6) dated August 23, 2007 seeks basic information about the facts that supposedly support Defendants' defenses.

---

[1] Defendants moved for a protective order to quash RRD's Notice of Deposition. (D.I. 228). In addition to opposing Defendants' motion for a protective order, RRD cross-moved to compel Defendants to produce a witness (or witnesses) on the topics at issue.

2. In refusing to produce a witness to testify about these facts, Defendants have yet again refused to provide basic discovery in this case. Although Defendants attempt to complicate the issue, the dispute here is very simple. RRD seeks a Rule 30(b)(6) deposition to obtain the basic facts underlying Defendants' defenses -- *e.g.*, how Defendants allegedly relied on RRD's alleged delay in bringing suit, Defendants' alleged prejudice from such alleged delay, how Defendants allegedly relied on RRD's allegedly misleading conduct in a standard-making process, and how Defendants allegedly believed that an implied license had arisen from their course of conduct with RRD. Moreover, Defendants' invalidity defense relies on Defendants' own products as allegedly prior art. Although Defendants undoubtedly have witnesses with knowledge about those products, they refuse to provide witnesses who can testify about how these systems operate and when they were created and sold.

3. Defendants' excuse for refusing to provide this basic discovery is that RRD's topics lack reasonable particularity. But the reasonable particularity standard requires only that RRD identify the subject matter of the deposition such that Defendants can identify and prepare a witness. There cannot be any dispute that RRD's topics meet this standard. Moreover, RRD cannot define these topics with any more particularity without additional discovery from Defendants – whose interrogatory responses offered no detail to guide RRD.

4. Defendants also excuse their refusal to provide knowledgeable witnesses by claiming that RRD's deposition topics seek Defendants' contentions. RRD does not seek Defendants' contentions. RRD seeks the basic facts underlying Defendants' defenses, most of which are absent from Defendants' interrogatory answers. Moreover, RRD should be permitted to get behind Defendants' interrogatory responses by cross-examining knowledgeable fact

witnesses.  Put simply, RRD should be permitted to learn what facts Defendants intend to use to support their defenses.

5.      Finally, Defendants try to use an as-yet not served supplement to their interrogatory responses to prevent RRD from taking a deposition about the facts underlying their defenses.  Defendants cannot hold back the supposed facts that support their defenses until the final hour of discovery, which ends on November 2, 2007, especially when most of those facts have been in Defendants' possession throughout discovery.  RRD should be permitted to investigate those facts through other discovery means such as by deposition.  RRD should not be forced simply to accept Defendants' interpretation of these facts without further discovery or cross-examination.

6.      RRD's motion to compel should be granted for the reasons discussed in its opening brief and below.

**RRD's Topics Are Sufficiently Particular And Cannot Be Made More Particular**

7.      Defendants' first excuse for refusing to provide discovery is that Topics 1-13 and 15 are not "reasonably particular."  Under Rule 30(b)(6), RRD must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent."  *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000).  RRD's notice must identify "the matters which will be inquired into at the depositions."  *Mitsui & Co. v. P.R. Water Res. Auth.,* 93 F.R.D. 62, 66 (D.P.R. 1981).  Once RRD has "specifically notified [Defendants] as to the specific areas of exploration," Defendants are "obligated to produce a deponent who has been suitably prepared to respond to questioning within that scope of inquiry."  *Prokosch*, 193 F.R.D. at 638.

8.  This does *not* mean, as Defendants suggest, that RRD must particularize its topics to a level of detail beyond what is reasonably available to RRD. *Prokosh*'s "underlying holding" is not that the requesting party must designate subject areas with "painstaking specificity," as Defendants argue. (D.I. 249 at 3.) Rather, the requesting party must make "a conscientious effort to focus its intended inquiry, the subject areas which were both temporally and factually relevant to its claims in this matter." *Prokosch*, 193 F.R.D. at 639. RRD's topics much be specific enough to inform Defendants "of the matters which will be inquired into at the depositions." *Mitsui*, 93 F.R.D. at 66.

9.  Defendants certainly can identify the facts about which RRD wishes to depose Defendants' witnesses. For example, Topic 15 lists specific software programs that Defendants identified in their interrogatory responses as potential prior art (without explaining why or how they operate).[2] RRD cannot be any more specific because Defendants have included virtually no detail about these products in its discovery responses, failing to identify how they work, what portions of them are allegedly relevant to Defendants' invalidity defense, or what actions (*e.g.*, sales, public use) make them prior art. Defendants' few claim charts simply assert that these allegedly prior art products have each claim element without explaining how or where. *See, e.g.,* D.I. 237, Ex. A, at 27-28.

10. Indeed, many of the products are Defendants' own products. Defendants have far more knowledge of those products than RRD and certainly know more than they have

---

[2]  Topic 15 asks Defendants to designate an individual to testify about "[t]he factual basis for Defendants' claims that the patents-in-suit are invalid, including but not limited to (1) any such allegations supported by, refuted by, or relating to products produced by, distributed by, developed by, or used by Defendants or (2) any such allegations relating to Begin, DijiComp, Catalogic, Kodak Ektaprint, Forms Merge, Printstreamer, Access, FoxPro, IBM Graphical Data Display Manager, and Paradox." (D.I. 228, Ex. A, at 9.)

4

provided RRD in discovery. RRD seeks the facts that Defendants will rely on for their invalidity defense. Defendants should be compelled to provide whatever factual information they have about this alleged prior art.

11. Topics 1-13 are similarly specific enough to inform Defendants "of the matters which will be inquired into at the depositions." *Mitsui*, 93 F.R.D. at 66. These topics seek testimony about the facts underlying Defendants' thirteen affirmative defenses. (D.I. 228, Ex. A, at 4-6.) "[I]t would seem reasonable to expect that a party that asserts that certain defenses are available to it would be able to provide a witness to testify to the factual bases for those defenses." *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994). Defendants' interrogatory responses provide little detail about most of these defenses, in some cases, doing little more than identifying the elements of the defense and baldly asserting that those elements are present. *See, e.g.,* D.I. 237, Ex. A, at 47-48.

12. In arguing that RRD's topics are not reasonably particular, Defendants single out specific phrases that they claim make otherwise reasonably particular topics unparticular. For instance, Defendants acknowledge that "Topic 15 attempts to more narrowly define the scope by identifying some prior art specifically by name." (D.I. 249 at 4.) But Defendants still refuse to designate an individual for Topic 15 because the topic contains the phrase "including but not limited to." (D.I. 249 at 4.) If Defendants objected to the phrase "including but not limited to," they should have objected to that phrase and designated an individual for deposition subject to this objection. It is improper to refuse to designate *any* witness because the topic supposedly contains a single allegedly objectionable phrase.

13. RRD's topics are also not as broad as Defendants suggest. Defendants state that "Topics 1-13 … broadly encompass all unspecified facts 'supporting, refuting, or

5

relating to' Kodak's defenses, 'including but not limited to' the allegations made in Kodak's Amended Answer and Interrogatory responses. Such nearly limitless topics make it impossible for Kodak to identify and prepare the most suitable deponent." (D.I. 249 at 3.) This argument is simply wrong because the topics are limited to the *facts* "supporting, refuting, or relating to" Defendants' affirmative defenses. Because Defendants presumably know the facts supporting, refuting or relating to their affirmative defenses, these topics are not "nearly limitless" but rather highly constrained -- to the facts surrounding Defendants' good faith affirmative assertion of their defenses.

    14.  Moreover, it is fundamentally unfair for Defendants to object to Topics 1-13 and 15 as not being defined with reasonable particularity when any facts that could further narrow the topics are in the sole possession and control of Defendants. Thus far, the sole source of RRD's knowledge of the facts underlying Defendants' affirmative defenses, including the operation of the software products Defendants identified as prior art, has been Defendants' responses to RRD's interrogatories on the subject. And these interrogatory responses contain little more than a recitation of the elements of the defense and a bald assertion that the elements are present. *See, e.g.,* D.I. 237, Ex. A, at 47-48.

    15.  Indeed, even Defendants' own arguments fail to support their position. In providing a topic that Defendants consider to be reasonably particular, Defendants argue that "RRD could easily have noticed a 30(b)(6) deposition at any time regarding the design, operation, and functionality of Kodak's prior art software such as Begin, DijiComp, and Forms Merge; Kodak would have willingly designated a witness or witnesses for such a topic." (D.I. 249 at 9.) This hypothetical topic is, however, *less* particular than the topic that RRD actually served. If RRD had served this topic, Defendants would have had to prepare an

6

individual with knowledge on the entire scope of "design, operation, and functionality" of Defendants' alleged prior art software, regardless of the features of those products that are relevant in this case.

**RRD Properly Seeks Underlying Facts Through Deposition Topics**

16.  Defendants also argue that RRD seeks an improper contention deposition. (D.I. 228 at 2.) RRD is not seeking Defendants' contentions, legal theories or positions, nor does RRD seek to have a witness apply the facts to the law. Rather, RRD seeks the *facts underlying* Defendants' defenses.

17.  Defendants wrongly contend that this is a "distinction without a difference" because the two cannot be separated "[i]n a complex patent case." (D.I. 249 at 6.) For support, Defendants cite to *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991). Not only was this case reversed on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991), but the Court recognized the limitations of contention interrogatories:

> We also feel constrained to acknowledge that in many settings and cases contention interrogatories yield precious little useful information, in part because the lawyers who craft the responses seem to assume that it is their professional responsibility to be as stingy and self-serving in the answers they write as a strained view of the English language and the proper bounds of legal ethics permit. That apparent fact of litigation life makes us pause, to say the least, before ruling, even in the limited circumstances of this case, that the most appropriate vehicle for disclosing the kind of information and argument at issue here is a sensibly crafted set of contention interrogatories.

134 F.R.D. at 287. Defendants' interrogatory responses here were crafted "to be as stingy and self-serving in the answers they write as a strained view of the English language and the proper bounds of legal ethics permit." *See id.*

18.  Moreover, even though this is a patent infringement suit, Defendants can easily separate its contentions from the facts underlying them. For example, Topic 15 asks for

facts, *inter alia*, relating to how the alleged prior art works and why it is supposedly prior art. RRD is not asking for a witness to compare the supposed prior art with the patent claims.

19. RRD cited several cases supporting its right to take the Rule 30(b)(6) deposition sought here. Defendants, however, ignored every single one. *See AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994) ("[I]t would seem reasonable to expect that a party that asserts that certain defenses are available to it would be able to provide a witness to testify to the factual bases for those defenses."); *Omega Patents, LLC v. Fortin Auto Radio,* 2006 WL 2038534, *2 (M.D. Fla. 2006) (ordering defendants to designate a corporate witness on topics relating to the factual bases for defendants' defenses and counterclaims and ordering a second deposition at the defendants' expense upon determining that the designated individual was unprepared to address those topics); *United States Equal Employment Opportunity Comm'n v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 436 (D. Nev. 2006) (requiring defendants to designate a corporate witness on the factual bases for defenses because it would not raise privilege issues or cause undue burden).

20. Defendants' citation to *SmithKline Beecham Corp. v. Apotex Corp.* does not change this result. Unlike the instant dispute, that case relates to admitted contention deposition topics (*e.g.*, disclosures in a patent, interpretation of a patent file history, the bases for certain infringement contentions (2004 WL 739959 at *1-4 (2004 E.D. Pa.))), not topics seeking facts, as here. Similarly, *Discovision Associates v. Disc Manufacturing, Inc.*, also cited by Defendants, involved contention topics. C.A. No. 95-21-SLR, tr. at 11 (Oral Ruling D. Del. Dec. 7, 1995) ("I don't believe it makes sense, and I believe that entitlement to discovery is always limited by good sense, and that contention depositions make no sense this early on, but that contention interrogatories do.").

**RRD's Topics Are Not Cumulative of Prior Discovery**

21. Defendants also argue that Rule 30(b)(6) deposition testimony on the facts underlying Defendants' defenses would be cumulative of discovery already sought on these issues. (D.I. 249 at 7.) Yet Defendants' discovery responses to date on the facts underlying their defenses are sparse in detail and contain only the selected facts Defendants chose to include. Rather than attempting to get a "second bite of the apple," as Defendants argue, RRD is trying to get a *first* bite of the apple -- to discover the facts underlying Defendants' defenses. If Defendants want to rely only on the "facts" cited in their April 13, 2007 interrogatory responses, RRD is willing to forego the noticed deposition.

22. Defendants' responses to RRD's interrogatories do not explain the factual bases for Defendants' affirmative defenses. For example, Topic 15 asks Defendants to designate an individual to testify about "[t]he factual basis for Defendants' claims that the patents-in-suit are invalid, including but not limited to (1) any such allegations supported by, refuted by, or relating to products produced by, distributed by, developed by, or used by Defendants or (2) any such allegations relating to Begin, DijiComp, Catalogic, Kodak Ektaprint, Forms Merge, Printstreamer, Access, FoxPro, IBM Graphical Data Display Manager, and Paradox." (D.I. 228, Ex. A, at 9). Instead, Defendants' interrogatory response merely lists prior art references without explaining how Defendants understand the alleged prior art products to work or the facts making them prior art. In those few instances where Defendants provided claim charts, the claim charts merely restate the claim language and do not identify what features or operation of the alleged prior art supposedly satisfies the claim element. *See, e.g.,* D.I. 237, Ex. A, at 28.

23. In many other cases, Defendants provide no claim charts or explanations of why their own software programs are alleged prior art. For instance, the only information Defendants have identified with respect to their Scitex Begin and DijiComp products is a citation

9

to those program's users guides and manuals, which are hundreds of pages long and not at the level of detail necessary to analyze Defendants' invalidity allegations. (D.I. 237, Ex. A, at 20, 24.) Defendants do not provide claim charts showing what features of Scitex Begin and DijiComp supposedly correspond to the patents in suit. In short, Defendants have not provided any explanation of how they believe these products operate, nor have Defendants explained what features of these products make them allegedly invalidating prior art.

24.     Moreover, RRD should be permitted to investigate beyond the carefully chosen "facts" Defendants chose to include in their interrogatory responses. For example, as explained in RRD's cross-motion to compel, Defendants have asserted a defense of laches and claim that they have suffered evidentiary and economic prejudice. Defendants merely state in their interrogatory response that "Defendants may be unable to present a full and fair defense on the merits because of the loss of records and other evidence, the inability to find material witnesses having knowledge of past events, the destruction of third-party documents, and the unreliability of memories of long past events." (D.I. 237, Ex. A, at 48.) This opens the door to a number of questions that can only be properly addressed through further questioning, including what "material witnesses" would have had knowledge of these past events, what third party documents were destroyed and by whom, and whose memory is unreliable and what he or she knew. The answers to these questions are not found in Defendants' interrogatory responses.

25.     Defendants incorrectly state that "RRD's notice seeks to gain additional deposition testimony that is directly duplicative of the depositions already taken by RRD." (D.I. 249 at 8.) While Defendants identified several individuals in their interrogatory responses as being knowledgeable about Defendants' affirmative defenses, none of the identified witnesses deposed thus far has had any pertinent knowledge. For instance, Defendants identified Gershon

Alon as knowledgeable of the facts underlying Defendants' defense of license or implied license. (D.I. 237, Ex. A, at 55.) When RRD asked Mr. Alon about his knowledge at deposition, he replied, "I don't have much knowledge about the facts here." (D.I. 237, Ex. C, at 131.) Similarly, Defendants identified William Sullivan as knowledgeable of the facts underlying Defendants' defense of prosecution laches. (D.I. 237, Ex. A, at 53.) When RRD asked Mr. Sullivan about his knowledge on this subject as described in RRD's Interrogatory No. 9, he responded, "This is in legal jargon talking about a lot of the different claims, and I'm not familiar with all those." (D.I. 237, Ex. E, at 113.) In short, asking questions of individuals identified in Defendants' interrogatory responses regarding their knowledge of Defendants' affirmative defenses has proven inefficient, ineffectual, and wasteful. This is exactly the kind of situation Rule 30(b)(6) was meant to address. *See* Fed. R. Civ. P. 30(b)(6), Advisory Committee Notes on 1970 Amendment ("The new procedure … will curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it.").

**Defendants Cannot Prevent a Deposition Because They Intend to Supplement Their Interrogatories**

26.     Defendants also attempt to avoid a Rule 30(b)(6) deposition by claiming that they will supplement their interrogatories "in the next two weeks" following October 23 (D.I. 249 at 2), which will likely be the final day of discovery, November 2, 2007. As noted above, Defendants have thus far provided little to no detail about the facts underlying their affirmative defenses, including their knowledge of how their own software products operate. Moreover, Defendants appear to have withheld their supplemental interrogatory answers and the facts allegedly supporting their defenses until the final day of discovery even though most of those facts were likely in Defendants' possession throughout discovery.

27. If Defendants supplement their interrogatory responses regarding the facts underlying their affirmative defenses without allowing RRD a deposition on Topics 1-13 and 15, RRD will improperly be limited to the facts as Defendants present them without having the opportunity to develop related facts or to cross-examine persons knowledgeable about those facts.

28. Furthermore, Defendants cannot refuse to designate an individual for deposition under Rule 30(b)(6) simply because they would prefer to supplement their interrogatory responses instead. "Nothing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory. An attempt to so limit a Rule 30(b)(6) deposition is not warranted. Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

## CONCLUSION

For these reasons, Defendants should be compelled to produce a 30(b)(6) witness (or witnesses) on Topics 1-13 and 15 of RRD's Notice of Rule 30(b)(6) Deposition. These topics are sufficiently particular to identify the sought-after information and properly seek the factual bases underlying Defendants' defenses. These topics also seek information that RRD has been unable to obtain through other methods of discovery, and that is readily available to Defendants.

Alternately, if Defendants truly believe their April 13, 2007 interrogatory responses are sufficiently detailed, RRD asks the Court to preclude Defendants from adding in any manner to their current responses to Interrogatory Nos. 1-12 and 17, including any new

and/or additional facts, conclusions, or nuances. Any later disclosure with no opportunity for deposition would unfairly prejudice RRD.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY  10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
(312) 853-7000

November 2, 2007

1305615

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 2, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on November 2, 2007, upon the following in the manner indicated:

### BY EMAIL AND BY HAND

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

### BY EMAIL

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

*/s/ Rodger D. Smith II (#3778)*
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com