IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>    Defendants. | C.A. No. 06-032-JJF<br><br>REDACTED PUBLIC VERSION |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendant, | |

## <u>MOTION TO COMPEL DISCOVERY</u>

The Kodak Defendants ("Kodak") move to compel Plaintiff R.R. Donnelley & Sons Company's ("RRD") response to four Interrogatories and two Requests for Production, all of which relate to Kodak's equitable defenses, including laches. To date, RRD has stonewalled Kodak's attempts to obtain this discovery by propounding unfounded arguments and objections.

To provide context, RRD is a long-standing customer of Kodak. The Kodak-RRD relationship – which continues to this day – has been forged over the course of at least three decades. RRD currently purchases tens of millions of dollars worth of goods and services per

year from Kodak. Many of the Kodak-RRD dealings have related to variable data printing, which RRD claims to be the subject matter of this litigation. Thus, it is not surprising that the evidence collected to date demonstrates that RRD was consciously aware of at least two of the accused products for many years before filing suit. By way of example, the record shows that in May 2000                               REDACTED

                                               Ex. A at K02458096. Nearly six years later,

RRD filed this suit. Similarly,

                                     REDACTED

Ex. B.[1]

        Despite the existence of such pertinent evidence, RRD has obstructed all attempts by Kodak to obtain discovery on issues related to its equitable defenses. In light of RRD's position, Kodak has been left with no choice but to seek the Court's intervention. Specifically, Kodak moves for an Order compelling RRD to fully answer Kodak's Interrogatory Nos. 24, 25, 26, and 27. Kodak also moves for an Order compelling RRD to produce all documents responsive to Kodak's Request for Production Nos. 63 and 64, from all individuals properly identified in response to Interrogatory No. 26, as RRD previously agreed it would do. The bases for this motion are as follows:

---

[1]

                                     REDACTED

**Interrogatory Nos. 24, 25, and 27**

      1.     On October 3, 2007, Kodak served its Fourth Set of Interrogatories on RRD, including Interrogatory Nos. 24, 25, and 27:

- Interrogatory No. 24: Identify RRD's earliest knowledge of each Accused Software Product.

- Interrogatory No. 25: Describe RRD's understanding, prior to bringing suit, of how each Accused Software Product performs Variable Digital Printing, including the source of such knowledge and when such understanding was first gained.

- Interrogatory No. 27: Describe in detail RRD's first purchase, acquisition, and/or use of any Accused Software Product, including the date of such first purchase, acquisition, or use and the circumstances relating to the same.

Ex. C at 2. Kodak seeks this information for several reasons. First, the information is highly relevant to Kodak's equitable defenses, including laches, equitable estoppel, unclean hands, and waiver. Moreover, RRD's earliest knowledge of the accused products is also relevant to the issue of whether RRD should be allowed to assert infringement under the doctrine of equivalents. Indeed, if RRD possessed knowledge of the accused software products during the prosecution of some or all of the patents in suit, any "alleged equivalent" in the accused software products was eminently foreseeable by RRD; accordingly, the doctrine of equivalents would not apply. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368 (Fed. Cir. 2007) (rejecting the doctrine of equivalents when the alleged equivalent was foreseeable during the prosecution of the patent in suit).

      2.     RRD served its response to Kodak's Fourth Set of Interrogatories on November 2, 2007, refusing to provide a substantive answer to Interrogatory Nos. 24, 25, or 27. Ex. D at 4-5, 8. RRD's position is primarily based on a fallacious dichotomy, in which RRD asserts that its knowledge of the accused products arising prior to the issuance of the first patent in suit is

irrelevant, while its knowledge acquired after the issuance of the first asserted patent is privileged. Ex. F at 2. Both positions stand in stark contrast to the established case law in this area and common sense.

3.    With respect to knowledge of the accused products predating the issuance of the patents in suit, courts have recognized that – for purposes of the defense of laches – such knowledge is relevant to whether the patentee had constructive knowledge of the products once the patents issued. *See R2 Medical Systems, Inc. v. Katecho, Inc.*, 931 F. Supp. 1397, 1409-10 (N.D. Ill. 1996) (finding that disregarding such pre-issuance knowledge "would be contrary to laches' equitable character"). As noted above, such knowledge is also relevant to the applicability of the doctrine of equivalents, which RRD appears to assert in its technical expert report.

4.    Equally without merit is RRD's assertion that all of its knowledge of the accused software products arising after the issuance of the first patent in suit is privileged. Neither the attorney-client privilege nor work product doctrine attach to underlying facts, such as the date upon which RRD first became knowledgeable of the accused software products. "A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994).

5.    RRD's objections also wrongly assert that the Interrogatories seek information for which the "Court has already denied a motion" to compel – a reference to the Court's September 21, 2007 Order. Ex. D at 4-5, 8. The Court's September 21st Order related to Kodak's August 23rd motion to compel RRD's production of related documents. D.I. 196. In issuing its Order, the Court did not rule on the relevance or propriety of Interrogatory Nos. 24, 25, and 27, but

rather simply declined to compel RRD's production of documents. The Court did not address the relevance of the information sought here. Therefore, the Court's September 21st Order does not justify RRD's refusal to respond to Kodak's Interrogatories.

6.      Kodak has attempted to resolve this issue with RRD, but RRD is ultimately unwilling to provide a substantive answer to these Interrogatories. Exs. E, F, G, H.

## Interrogatory No. 26 and Request for Production Nos. 63 and 64

7.      During the briefing of Kodak's August 23rd motion, RRD asserted that it would produce documents responsive to Kodak's Request for Production Nos. 63 and 64 (Ex. I) from individuals "likely to have knowledge of the Patents in Suit and/or Defendants' [allegedly] infringing activities." D.I. 217 at 7 (Ex. J). While the Court denied Kodak's motion on September 21st, RRD has never disclaimed its promise to produce documents from this group of individuals.

8.      After RRD made that promise, Kodak served Interrogatory No. 26, which sought the identity of those individuals from whom RRD had promised to produce documents. Ex. C at 2 (requesting that RRD "[i]dentify all individuals, including both full name and position/title, 'likely to have knowledge of the Patents in Suit and/or Defendants' infringing activities,' as alleged on page 7 of RRD's Opposition to Defendants' Motion to Compel Discovery (D.I. 217)").

9.      In its response to Interrogatory No. 26,

REDACTED

- 5 -

REDACTED

*Id* at 7.

10.    Kodak wrote to RRD on December 5, 2007, addressing, *inter alia*, the deficiencies in RRD's response to Interrogatory No. 26. Ex. E at 2-3. In the letter, Kodak identified 28 additional current or former RRD employees who either admitted during deposition that they were aware of the patents in suit, or were named on documentation produced by RRD indicating the same. *Id.*

REDACTED

*Id*

11.    As Kodak noted in its December 5th letter, the omission of these individuals from RRD's response is especially troubling in light of the fact that RRD has attested to limiting its search for documents responsive to Request for Production Nos. 63 and 64 to this group of individuals. *See* Ex. J at 7.

REDACTED

Now that Kodak has identified such individuals, RRD should supplement its Interrogatory response and document collection efforts accordingly

12.    In subsequent correspondence, RRD has refused to supplement its response to Interrogatory No. 26 to reflect any of the individuals identified by Kodak, nor has RRD agreed to supplement its document collection efforts. Ex. F at 3. RRD has instead attempted to justify its list of individuals likely to have knowledge of the patents in suit on the basis of an unsupportable distinction between individuals with *awareness* of the patents and those with *knowledge* of the patents. *Id.* RRD has not explained what it perceives to be the difference between the two synonymous terms.

- 6 -

13.    In the same correspondence, RRD has also attempted to justify its list of individuals with knowledge of Kodak's allegedly infringing activities. *Id.* Specifically, RRD has suggested that information predating the issuance of the first patent in suit – including Exhibits A and B – is not relevant. *Id.* However, as noted above, such knowledge is highly relevant to not only Kodak's equitable defenses – including that of laches – but also the applicability of the doctrine of equivalents.

14.    The parties held a meet and confer to discuss these issues on December 18, 2007, but were unable to resolve their differences. Ex. H.

15.    RRD should be required to abide by the representations it made to this Court during the briefing of Kodak's earlier motion to compel. Specifically, RRD should amend its response to Interrogatory No. 26 to reflect the 28 individuals identified by Kodak, and should – as promised – produce all documents responsive to Request for Production Nos. 63 and 64 in the possession, custody, or control of the individuals "likely to have knowledge of the Patents in Suit and/or Defendants' [allegedly] infringing activities." *See* Ex. J at 7.

**Conclusion**

16.    RRD has thus unjustifiably refused to provide Kodak with information highly relevant to Kodak's equitable defenses. Because RRD is unwilling to provide the information to which Kodak is entitled, Kodak has been left with no choice but to seek the Court's intervention on this issue.

17.    WHEREFORE, Kodak respectfully asks the Court to order that RRD comply with its discovery obligations by providing full, substantive responses to Interrogatory Nos. 24, 25, 26, and 27. Kodak also moves for an Order compelling RRD to produce all documents

- 7 -

responsive to Request for Production Nos. 63 and 64 from all individuals properly identified in

response to Interrogatory No. 26. A form of order is attached hereto.

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
(212) 624-2500

Dated: December 19, 2007

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE 19899
(302) 651-7700
*Attorneys for Defendants Creo, Inc.,
NexPress Solutions, Inc., Kodak Versamark,
Inc., Eastman Kodak Company and Kodak
Graphic Communications Company*

- 8 -

## RULE 7.1.1 CERTIFICATE

I hereby certify that counsel for the defendants has discussed the subject of the foregoing motion with counsel for plaintiffs, and that the parties have not been able to reach agreement on the issues raised in the motion.

Jameson A.L. Tweedie

December 19, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, I electronically filed the foregoing with the

Clerk of Court using CM/ECF which will send notification of such filing(s) to the following,

who have also been served as noted:

**BY HAND DELIVERY & E-MAIL**

Jack B. Blumenfeld, Esquire
Rodger D. Smith, II, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE   19899

I hereby certify that on December 21, 2007, the foregoing was sent to the following non-

registered participants in the manner indicated:

**BY E-MAIL**

Douglas I. Lewis                          John G. Hutchinson
Jamie L. Secord                           Sidley Austin, LLP
Sidley Austin, LLP                        787 Seventh Avenue
One South Dearborn Street                 New York, NY   10019
Chicago, IL   60603

_/s/Frederick L. Cottrell, III_____
Frederick L. Cottrell, III (#2555)
Cottrell@rlf.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>      Plaintiff,<br><br>      v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>      Defendants. | C.A. No. 06-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>      Counterclaim-Plaintiff,<br><br>      v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>      Counterclaim-Defendant, | |

## ORDER

Pursuant to Fed. R. Civ. P. 33, Local Rule 37.1, and paragraph 5 of the Rule 16 Scheduling Order, defendants/counterclaim-plaintiff ("Kodak") move for an order compelling Plaintiff to fully answer Interrogatory Nos. 24, 25, 26, and 27. Kodak also moves for an Order compelling RRD to produce all documents responsive to Request for Production Nos. 63 and 64 from all individuals properly identified in response to Interrogatory No. 26.

RLF1-3237025-1

IT IS HEREBY ORDERED this _____ day of _____ 2008 that

Kodak's Motion is granted.

_____
United States District Court Judge

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

Exhibit C

**EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants. | C. A. No. 06-cv-032-JJF |
| EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendants, | |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S FOURTH SET OF INTERROGATORIES TO R.R. DONNELLEY & SONS COMPANY (NOS. 24-29)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company and Kodak Graphic Communications Company ("Defendants") direct the foregoing fourth set of interrogatories to R.R. Donnelley & Sons Company ("RRD") to be answered separately and fully, in writing and under oath, within thirty (30) days of service.

## DEFINITIONS AND INSTRUCTIONS

Defendants incorporate herein by reference the Definitions and Instructions of Defendants' First, Second, and Third Sets of Interrogatories to R.R. Donnelley & Sons Company (Nos. 1-10, 11-20, and 21-23, respectively). In addition, the following definitions and instructions shall apply:

U.    "Accused Software Product" means Scitex Digital Printing Inc.'s Darwin (including all versions sold by Kodak, Creo, or Scitex), Composer, CS400, DL-100, DL-1000, and/or FusionPro.

V.    "Kodak Software" means Begin, DijiComp, FormsMerge, and/or KEEPs.

## INTERROGATORIES

24.    Identify RRD's earliest knowledge of each Accused Software Product.

25.    Describe RRD's understanding, prior to bringing suit, of how each Accused Software Product performs Variable Digital Printing, including the source of such knowledge and when such understanding was first gained.

26.    Identify all individuals, including both full name and position/title, "likely to have knowledge of the Patents in Suit and/or Defendants' infringing activities," as alleged on page 7 of RRD's Opposition to Defendants' Motion to Compel Discovery (D.I. 217).

27    Describe in detail RRD's first purchase, acquisition, and/or use of any Accused Software Product, including the date of such first purchase, acquisition, or use and the circumstances relating to the same.

28.    Explain in detail RRD's contentions as to why RRD "is not obligated or required to license the patents-in-suit -- either individually or in some combination -- on reasonable and/or non-discriminatory bases," as stated in its Response to Interrogatory No. 6 of Defendants' First

- 2 -

Set of Interrogatories.

29.    Describe in detail any purchase, acquisition, and/or use of by RRD, and/or sales or offers to sell to RRD, any Kodak Software prior to October 29, 1997, including the date of such purchase, acquisition, use, sale and/or offer to sell.

OF COUNSEL:

Richard McMillan, Jr.
Jeffrey D. Sanok
Brian M. Koide
Clyde Findley
Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(212) 624-2500

Dated:  October 3, 2007

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jameson A.L. Tweedie (#4927)
tweedie@rlf.com
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, DE  19899
(302) 651-7700
*Attorneys for Defendants
Creo, Inc., NexPress Solutions, Inc., Kodak
Versamark, Inc., Eastman Kodak Company
and Kodak Graphic Communications
Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2007, I served the foregoing on counsel as follows:

**BY HAND DELIVERY & E-MAIL**

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

**BY FEDERAL EXPRESS & E-MAIL**

Douglas I. Lewis                    John G. Hutchinson
Jamie L. Secord                     SIDLEY AUSTIN, LLP
SIDLEY AUSTIN, LLP                  787 Seventh Avenue
One South Dearborn Street           New York, NY 10019
Chicago, IL 60603                   (212)839-5398
(312) 853-4169                      jhutchinson@sidley.com
dilewis@sidley.com
jsecord@sidley.com

Jameson A.L. Tweedie (#4927)
tweedie@rlf.com

# EXHIBIT D

# REDACTED

# EXHIBIT E



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

December 5, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Benedict Frey, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

> Re: *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-JJF)

Dear Ben:

I write to address the deficiencies in RRD's recent responses to Defendants' Interrogatories. First, in its responses to Defendants' Third and Fourth Set of Interrogatories, as well as its supplemental response to Interrogatory No. 6, RRD uses the term "R.R. Donnelley," without ever defining the term. In light of the Court's August 3rd Order, Defendants assume that all references to "R.R. Donnelley" includes "all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control or any of the foregoing," as defined in Definition B. Please clarify if this is not the case, and update RRD's responses to these Interrogatories no later than Friday December 7th.

**Interrogatory No. 13:**

On July 2nd, RRD supplemented its response to Interrogatory No. 13, noting that "[f]or U.S. Patent No. 6,205,452, the investigation is ongoing." RRD has not since supplemented its answer to reflect the earliest date that RRD first offered for sale, advertised, promoted, sold, commercialized, demonstrated, described in a publication, made public, or disclosed the claim subject matter of the '452 Patent. Please do so no later than Friday December 7th.

Benedict Frey
December 5, 2007
Page 2


## Interrogatory Nos. 24 and 25:

RRD has refused to provide a substantive response to Defendants' Interrogatory Nos. 24 and 25, instead electing to stand on improper objections. For instance, RRD objects to both Interrogatories as seeking "information protected by the attorney-client privilege and/or work-product doctrine." As you know, the attorney-client privilege and work-product doctrine only attach to communications with counsel and legal analysis conducted by counsel; the privilege does not attach to underlying facts, such as the date upon which RRD first knew of each Accused Software Product. Moreover, RRD improperly invokes the Court's September 21st ruling, which has no bearing on RRD's obligation to answer these Interrogatories; indeed, the Court's ruling addressed only document collection.

In light of RRD's refusal to answer Interrogatory Nos. 24 and 25, RRD is precluded from later asserting facts within the scope of these two Interrogatories. Should RRD wish to provide a supplemental response to these Interrogatories, RRD should do so no later than Friday December 7th.

## Interrogatory No. 26:

In Interrogatory No. 26, Defendants asked RRD to identify all individuals "likely to have knowledge of the Patents in Suit and/or Defendants' [allegedly] infringing activities," as RRD used that term on page 7 of RRD's Opposition to Defendants' Motion to Compel Discovery (D.I. 217). RRD's response is woefully incomplete, failing to identify individuals with both knowledge of the Patents in Suit and of Defendants' allegedly infringing activities. By way of example, RRD did not identify any of the following individuals as likely having knowledge of the Patents in Suit: Keith Adams, Mike Allen, Dell Bishop, Charles Cornelius, Bill Davis, Laura Deeghan, Bob Gill, Kaarin Gordin, John Greco, Russell Fling, Steve Grupe, Stephen C. Johnson, Janet Jones, Dan Knotts, John Michaelis, George McConnaghy, Rhonda McQueen, Grant Miller, Dennis Oblak, Mary Lee Schneider, Jim Standerfer, Bob Stolz, Stella G. Shaw, Matthew Sigman, Jon Ward, Lewis Waltman, Seth Zeitlin, and Wally Zoglauer. All of these individuals either admitted during deposition that they were aware of the Patents in Suit and/or were named on documentation produced by RRD indicating the same. *See, e.g.,* Fling Deposition Tr. at 69:22 – 70:6; Miller Deposition Tr. at 45-48; RRD018215-RRD018219; RRD036080-RRD036090; RRD036108; RRD036109-RRD036110; RRD038286; RRD042685-RRD042702; RRD042707-RRD042715; RRD049729; RRD088536-RRD088538; RRD245526; RRD245537; RRD255660; RRD256955-RRD256958.

Benedict Frey
December 5, 2007
Page 3

RRD also failed to identify all individuals likely to have knowledge of Defendants' allegedly infringing activities. For instance, Russell Fling testified during his deposition that he was aware of Darwin in 1998 and believed that it wrote a VPS file with both fixed and variable information. *See* Fling Deposition Tr. at 74:6 – 75:2. Similarly, Scitex Digital Printing provided John Michaelis, then RRD's director of Global Technology, with information describing Composer in May 2000. K02458096. At a minimum, both of these individuals should be listed as having knowledge of Defendants' allegedly infringing activities.

RRD's omission of all of these individuals is especially troubling in light of the fact that RRD has attested to limiting its search for documents responsive to certain Requests for Production to individuals it believed were "likely to have knowledge of the Patents in Suit *and/or* Defendants' [allegedly] infringing activities." *See, e.g.*, D.I. 217 at 7 (emphasis added). Therefore, please update RRD's response to Interrogatory No. 26 by Friday December 7th to reflect these individuals' knowledge. Please also confirm whether you have searched for responsive documents from all of these individuals, and confirm that RRD will do so immediately to the extent it has not done so already.

**Interrogatory No. 27:**

RRD has also stood on improper objections in refusing to provide a substantive response to Defendants' Interrogatory No. 27. As noted above, the attorney-client privilege and work-product doctrine do not attach to underlying facts, such as those sought here. The date of RRD's first purchase, acquisition, and/or use of any Accused Software Product in no way implicates privileged information. Moreover, the Court's September 21st ruling again has no bearing on RRD's obligation to answer this Interrogatory; indeed, the Court's ruling addressed a different subject (RRD's earliest knowledge of the accused software), and only then considered RRD's document collection obligations. RRD's refusal to provide a substantive answer to this Interrogatory is all the less defensible in light of the fact that RRD has agreed to provide an answer to the substantially similar Interrogatory No. 29 (discussed below).

Therefore, Defendants request that RRD supplemental its response to this Interrogatory immediately, providing the date of RRD's first purchase, acquisition, and/or use of any Accused Software Product, and the details relating to the same. Please provide this supplemental response no later than Friday December 7th.

**Interrogatory No. 29:**

In its response to Interrogatory No. 29, RRD states that "it has no knowledge of any such purchase, acquisition, and/or use by R.R. Donnelley of Kodak software

Benedict Frey
December 5, 2007
Page 4

prior to October 29, 1997, other than the activities referred to in RRD047877 to RRD047880." In so responding, RRD appears to premise its answer on Federal Rule of Civil Procedure 33(d); however, RRD's answer does not cite Rule 33(d), nor does it suggest that the burden of deriving or ascertaining the answer to this Interrogatory is substantially the same for Defendants as for RRD. Therefore, please provide a supplemental answer "[d]escrib[ing] in detail any purchase, acquisition, and/or use of by RRD, and/or sales or offers to sell to RRD, any Kodak Software prior to October 29, 1997, including the date of such purchase, acquisition, use, sale and/or offer to sell," no later than Friday December 7th.

Additionally, in its response to Interrogatory No. 29, RRD stated that it "will conduct a reasonable search of purchasing records ... for agreements relating to Begin, DijiComp, Forms Merge, and KEEPs from 1992 to October 29, 1997." Please provide Defendants with an update of the status of this search no later than Friday December 7th.

Sincerely,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT F



SIDLEY AUSTIN LLP
**SIDLEY**

SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

BEIJING
BRUSSELS
CHICAGO
DALLAS
FRANKFURT
GENEVA
HONG KONG
LONDON

LOS ANGELES
NEW YORK
SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

bfrey@sidley.com
(312) 853-7294

FOUNDED 1866

December 7, 2007

**Via Facsimile and U.S. Mail**
Mr. Nathaniel Grow
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
202-628-5116 (facsimile)

    Re:    *R.R. Donnelley & Sons Company v. Creo, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company*, No. 06-032-JJF (D. Del.)

Dear Nathaniel:

        I write in response to your letter of December 5 regarding the alleged deficiencies in RRD's responses to Defendants' Interrogatories.

        As an initial point, throughout this litigation, RRD has taken the same approach as Defendants in undertaking a reasonable search for documents responsive to discovery requests. RRD has identified relevant individuals with potential knowledge and searched for documents within those individuals' possession. (*See* D.I. 148, Ex. U at 2.) Indeed, Defendants have done the same, agreeing to "make a good-faith effort to conduct a reasonable search of documents" by "identifying -- to the best of Creo's ability -- relevant Creo individuals with knowledge... and searching documents of [sic] within the possession of those individuals." *See* Defendants' Second Supp. Resp. to R.R. Donnelley's First RFP, dated Jan. 19, 2007, at 4. Although you refer to the Court's August 3, 2007 Order in your letter, that Order did not define "R.R. Donnelley" as you have suggested or require RRD to conduct a search for documents without regard to the reasonableness of the search.

**Interrogatory No. 13:**

        RRD's investigation regarding the earliest date that it first offered for sale, advertised, promoted, sold, commercialized, demonstrated, described in a publication, made public, or disclosed the claimed subject matter of the '452 patent remains ongoing. Once its investigation has concluded, RRD will supplement this Interrogatory accordingly.

**Interrogatory Nos. 24, 25 and 27:**

        Interrogatory Nos. 24 and 25 seek information on exactly the same subject matter as Defendants' Requests For Production Nos. 63 and 64, respectively, and Defendants' Rule

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships

CHI 4084295v.1



Nathaniel Grow
December 7, 2007
Page 2


30(b)(6) Topics 15 and 16, respectively. All three forms of discovery requests seek information relating to RRD's earliest knowledge of the Accused Products in suit and RRD's pre-filing understanding of how the Accused Products operate. RRD objected to all three methods of discovery requests seeking this information because Defendants have not demonstrated that this information is relevant to the claims or defenses of the Parties in this action or reasonably calculated to lead to the discovery of admissible evidence.

RRD's earliest knowledge of the Accused Products and its pre-filing understanding of how those products operate is irrelevant to the extent that its knowledge or understanding pre-dates December 4, 2001, the date the first patent-in-suit issued. *See* 6-19 Chisum on Patents § 19.05(i). To the extent that RRD's knowledge and understanding of the Accused Products post-dates December 4, 2001, such information is protected by the attorney-client privilege and/or work-product doctrine and is not discoverable.

The Court has already agreed with RRD's positions on the subject matter requested in Interrogatory Nos. 24 and 25. Indeed, in its September 21, 2007 Order, the Court rejected Defendants' motion to compel RRD to produce documents relating to the same subject matter requested in Interrogatory Nos. 24 and 25. Defendants' attempts to discover the same information through other discovery methods suffers the same infirmities.

Furthermore, RRD notes that, subject to and without waiving any of its objections, RRD has designated a Rule 30(b)(6) witness on Topics 15 and 16. As we have previously informed you, RRD cannot contemplate any information related to such Topics that is not protected by the attorney-client privilege and/or work-product doctrine; however, we have stated that RRD would consider specific issues and/or questions that Defendants may raise related to these Topics.

Interrogatory No. 27 is even further removed from the realm of relevant information to this case. The Interrogatory seeks to discover RRD's first purchase or use of the Accused Products. RRD's mere purchase or use of Accused Products is meaningless unless RRD had both knowledge of the patents-in-suit and knowledge of Defendants' allegedly infringing activities, which necessarily must have occurred after the first issuance of the patents-in-suit. *See* 6-19 Chisum on Patents § 19.05(i). Again here, Defendants have not even attempted to demonstrate why this information is relevant to the claims or defenses of the Parties.

**Interrogatory No. 26:**

As the result of a reasonable search, RRD has identified all individuals with knowledge of some or all of the "Patents in Suit and/or Defendants' infringing activities," as requested in Interrogatory No. 26.

CHI 4084295v.1



Nathaniel Grow
December 7, 2007
Page 3

        In your December 5 letter, you mention 28 individuals that you contend should have been included in RRD's response to Interrogatory No. 26 because they were aware of the patents-in-suit or were listed on RRD's documentation indicating their awareness. Interrogatory No. 26, however, did not request information about individuals' *awareness* of the "Patents in Suit and/or Defendants' infringing activities." Simply because certain individuals may have been aware of the filing of or existence of the patents-in-suit does not mean that they had *knowledge* of the patents-in-suit. Additionally, simply because certain individuals were referenced in documents that indicate that they were aware of the filing or of existence of the patents-in-suit does not mean that they had knowledge of the patents-in-suit.

        To the extent that Defendants now claim that Interrogatory No. 26 inquired about awareness rather than or in addition to knowledge, the Interrogatory was vague and ambiguous. *See* RRD's Gen. Obj. No. 9 to Defs.' Fourth Set of Interrogs.

        Furthermore, Defendants suggest that RRD should have identified additional individuals who were aware of Defendants' infringing activities. By way of examples, Defendants describe certain information that pre-dates the issuance of the first patent-in-suit. Please explain how individuals could be aware of infringing activities before the issuance of the asserted patent claims.

**Interrogatory No. 29:**

        In responding to Interrogatory No. 29, RRD referred to information contained within the Bates label range RRD047877-RRD047880. In accordance with Rule 33(d) of the Federal Rules of Civil Procedure, RRD did not need to expressly cite Rule 33(d) in its answer.

        Finally, regarding RRD's "reasonable search of purchasing records... for agreements relating to Begin, DijiComp, Forms Merge, and KEEPs from 1992 to October 29, 1997," no responsive documents have yet been discovered, although RRD's reasonable search continues.

                                        Sincerely,

                                        Benedict Frey

CHI 4084295v 1

# EXHIBIT G



Nathaniel Grow
202-624-2709
ngrow@crowell.com

December 12, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Benedict Frey, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and Kodak Graphic Communications Co.,* (D. Del.) (Civil Action No. 06-032-JJF)

Dear Ben:

I write in response to your December 7th letter regarding deficiencies in RRD's Interrogatory responses.

As an initial matter, you appear to have misunderstood Defendants' concern with RRD's use of the term "R.R. Donnelley." Defendants' concern is not with RRD's document collection efforts – as your December 7th letter implies – but rather RRD's use of the term "R.R. Donnelley" in its responses to Defendants' Third and Fourth Set of Interrogatories, as well as its supplemental response to Interrogatory No. 6.[1] As noted in my December 5th letter, Defendants' Interrogatories define "RRD" to include "all parent, subsidiary, sister, predecessor, or successor companies, corporations, partnerships, or other business entities, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control or any of the foregoing." *See* Definition B, Defendants' First Set of Interrogatories (incorporated by reference in Defendants' Third and Fourth Set of Interrogatories). Because RRD

---

[1] With respect to document collection, however, your December 7th letter clearly misinterprets the Court's August 3rd Order, in which the Court granted Defendants' motion seeking the production of all "documents in the possession, custody, or control of, or naming, discussing, or referring to, Plaintiff's subsidiary, successor, and predecessor entities." D.I. 148.

Benedict Frey
December 12, 2007
Page 2

did not define the term "R.R. Donnelley" in its Interrogatory responses, Defendants assume that RRD's use of that term comports with Defendants' Definition B. Please let me know if this is not the case.

## Interrogatory No. 13:

In your December 7th letter, you stated that RRD is still investigating the earliest date it first offered for sale, advertised, promoted, sold, commercialized, demonstrated, described in a publication, made public, or disclosed the claimed subject matter of the '452 patent. Defendants served Interrogatory No. 13 on October 31, 2006; RRD has therefore had well over a year to complete its investigation. Moreover, as you are well aware, fact discovery in this case closed over a month ago, on November 2, 2007. RRD's delay in answering this Interrogatory is thus entirely improper.

## Interrogatory Nos. 24 and 25:

In light of RRD's continued refusal to answer Interrogatory Nos. 24 and 25, RRD is now precluded from later asserting facts within the scope of these two Interrogatories.

Moreover, your letter of December 7th continues to misinterpret the relevant case law. As noted in my December 5th letter, attorney-client privilege and the work-product doctrine do not attach to underlying facts, such as the date upon which RRD first knew of each Accused Software Product. RRD has never addressed this point. Further, RRD has failed to cite authority for its proposition that its knowledge or understanding of the Accused Products pre-dating December 4, 2001 is irrelevant; your December 7th letter only cites to 6-19 Chisum on Patents § 19.05(i). No such section exists. Presumably, RRD intended to cite to 6-19 Chisum on Patents § 19.05[2][a][i], entitled "Knowledge of Infringement." However, this section deals with computing the time period by which RRD's delay will be measured; it does not assert that knowledge of an accused product pre-dating the patent issue date is irrelevant. Indeed, such knowledge is highly relevant, evidencing the fact that RRD already knew of Defendants' allegedly infringing activities as of the date its first asserted patent issued.

## Interrogatory No. 26:

With respect to Interrogatory No. 26 – seeking the identification of all individuals likely to have knowledge of the Patents in Suit and/or Defendants' allegedly infringing activities – RRD attempts to distinguish between individuals with "awareness" of the patents in suit, and those with "knowledge" of the patents in suit. This distinction, however, is nonsensical, running contrary to the

Benedict Frey
December 12, 2007
Page 3

conventional meaning of these words. Therefore, Defendants fail to understand why RRD believes it can avoid adding the individuals identified in my December 5th letter to its response on this ground.

RRD also continues to improperly refuse to add individuals identified by Defendants as having knowledge of Defendants' allegedly infringing activities. As noted above with respect to Interrogatory Nos. 24 and 25, knowledge of an accused product pre-dating the first issued patent is highly relevant, evidencing the fact that RRD already knew of Defendants' allegedly infringing activities as of the date its first asserted patent issued.

Therefore, Defendants maintain that RRD should not only add the individuals identified in my December 5th letter to its response to Interrogatory No. 26, but RRD should also search for responsive documents from all such individuals, as it previously stated it would. RRD's continued refusal to do so violates both the Federal Rules of Civil Procedure, as well as the spirit of the Court's September 21st Order.

## Interrogatory No. 27:

RRD's response merely addressed the relevance of its first purchase, acquisition, and/or use of any Accused Software Product to the issue of laches. This information, however, is also relevant to a number of other issues.[2] For instance, RRD's purchase, acquisition, or use of the accused products is relevant to Defendants' other equitable defenses, including equitable estoppel, unclean hands, and waiver. Such information is also relevant to damages-related issues.

## Interrogatory No. 29:

In regards to Interrogatory No. 29, RRD again asserts that its search for relevant information is ongoing. Although fact discovery closed on November 2nd, RRD fails to explain why its search has not been completed, let alone what it still has left to search. RRD's unjustified delay in completing its search is entirely improper.

Defendants request a meet and confer on these issues. Please let me know RRD's availability on December 13th or 14th.

---

[2] To the extent this information is relevant to the issue of laches, RRD's objections fail for the same reasons discussed in relation to Interrogatory Nos. 24 and 25 above.

Benedict Frey
December 12, 2007
Page 4

Sincerely,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT H



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ■ p202 624-2500 ■ f202 628-5116

Nathaniel Grow
202-624-2709
ngrow@crowell.com

December 18, 2007

025140.0000051

**VIA FACSIMILE AND U.S. MAIL**

Benedict Frey, Esquire
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603

Re:    *R.R. Donnelley & Sons Co. v. Creo, Inc., Eastman Kodak Co., and
Kodak Graphic Communications Co.*, (D. Del.) (Civil Action No. 06-032-
JJF)

Dear Ben:

I write to confirm this morning's meet and confer.

First, RRD confirmed that it was not drawing any corporate distinctions
through its use of the term "R.R. Donnelley" in its responses to Kodak's Third and
Fourth Set of Interrogatories, nor in its supplemental response to Interrogatory No.
6. In particular, we understand that R.R. Donnelley & Sons Co. is not withholding
from its Interrogatory responses any information that is within the corporate
knowledge of related entities in the RRD family.

Second, RRD agreed to provide a substantive supplemental response to
Kodak's Interrogatory No. 13 no later than January 4, 2008. This supplemental
response will identify and describe the circumstances surrounding the earliest date
that RRD commercialized the claimed subject matter of the '452 patent.

Third, with respect to Kodak's Interrogatory Nos. 24 through 27, RRD
maintained its position as described in its December 7th letter. RRD suggested,
however, that it would consider any case law that Kodak could provide in support of
its position. Among other authorities, with respect to the relevance of RRD's
knowledge of the accused products predating the issuance of the first asserted
patent, Kodak can direct RRD to *R2 Medical Systems, Inc. v. Katecho, Inc.*, 931 F.
Supp. 1397, 1409-10 (N.D. Ill. 1996), which concluded that pre-issuance knowledge
is relevant to the issue of laches. Kodak would further note that RRD's earliest

Benedict Frey
December 18, 2007
Page 2

knowledge of the accused products is also relevant to the issue of whether RRD should be allowed to assert infringement under the doctrine of equivalents. Such knowledge would implicate the foreseeability of any alleged equivalents. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368 (Fed. Cir. 2007) (rejecting the doctrine of equivalents when the alleged equivalent was foreseeable during the prosecution of the patent in suit).

Fourth, RRD agreed to finish its investigation into Kodak's Interrogatory No. 29 no later than January 11, 2008. RRD also agreed to provide a supplemental response to Interrogatory No. 29 at that time, reflecting RRD's completed investigation.

Finally, RRD raised the issue of Kodak's noticed deposition of Paul Notredame. Kodak again reiterated that – in light of Mr. Notredame's health problems – Kodak had hoped to avoid taking Mr. Notredame's deposition; however, Mr. Notredame's deposition became necessary in light of the deposition testimony of Mr. Grant Miller. RRD requested that Kodak provide the date that Kodak had first contacted Mr. Notredame. Kodak fails to understand how this information is relevant; Kodak is willing to reconsider this position, however, should RRD provide case law demonstrating the relevance of this information, or establishing that Kodak is obligated to disclose this information.

Please let me know if you believe that any of the above fails to accurately represent this morning's teleconference.

Sincerely,

Nathaniel Grow

cc:    Richard McMillan, Jr.

# EXHIBIT I

ALLSTATE LEGAL 800-222-0510    EDRH1    RECY-CLED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CREO, INC., NEXPRESS SOLUTIONS,<br>INC., KODAK VERSAMARK, INC.,<br>EASTMAN KODAK COMPANY, and<br>KODAK GRAPHIC COMMUNICATIONS<br>COMPANY,<br><br>    Defendants. | C. A. No. 06 -032-JJF |
| EASTMAN KODAK COMPANY,<br><br>    Counterclaim-Plaintiffs,<br><br>    v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>    Counterclaim-Defendants, |  |

**CREO, INC.'S, NEXPRESS SOLUTIONS, INC.'S, KODAK VERSAMARK, INC.'S, EASTMAN KODAK COMPANY'S, AND KODAK GRAPHIC COMMUNICATIONS COMPANY'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO R.R. DONNELLEY & SONS COMPANY (NOS. 50-67)**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Creo, Inc., NexPress

Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic

Communications Company ("Defendants") direct the following second set of requests that R.R.

Donnelley & Sons Company ("RRD") produce for inspection and copying documents and things

within RRD's possession, custody or control that are responsive to the requests set forth below at

the law office of Crowell & Moring LLP, 1001 Pennsylvania Ave., N.W., Washington, DC 20004-2595 within thirty (30) days of service.

## DEFINITIONS AND INSTRUCTIONS

Defendants incorporate herein by reference the Definitions and Instructions of Creo, Inc.'s, Eastman Kodak Company's, and Kodak Graphic Communications Company's First Set of Requests for Production of Documents and Things to R.R. Donnelley & Sons Company. In addition, the following definitions and instructions shall apply:

Y.    "Accused Software Product" means any apparatus, product, device, process, method, act, or other instrumentality produced, designed, manufactured, or sold by Defendants and identified by RRD in response to Interrogatory No. 1 in the Defendants' First Set of Interrogatories.

Z.    "Barco-Xeikon Entity" means Barco Graphics N.V. and/or Xeikon N.V., and includes all parent, subsidiary, sister, predecessor, or successor companies, corporations of either entity, partnerships, or other business entities of either entity, and the officers, directors, agents, employees, partners, and all other persons acting or purporting to act on behalf of or who are subject to the direction or control of any of the foregoing.

AA.    "Barco-Xeikon Components" means all versions of the following, either individually and/or in some combination:   (i) the Barco PrintStreamer electronic collation system; (ii) the Barco FastRIP image processor; (iii) the Barco FastRIP/X image processor; and (iv) the Xeikon DCP-1 digital press.

BB.    "Barco Suit" means *R.R. Donnelley & Sons, Co. v. Barco NV and Barco Graphics, Inc.*, No. 00-CV-03708 (N.D. Ill. filed June 19, 2000).

-2-

CC.    "Covered Lines of Business" means any activity, apparatus, process, product, device, method, act, technology, platform, solution, or service that RRD alleges, believes, or otherwise considers to fall within the scope of the subject matter claimed by any of the Patents in Suit, including any activity identified by RRD in response to Interrogatory Nos. 21 or 22.

DD.    "Kodak Entity" means Eastman Kodak Company, Kodak Graphics Communications Company, Creo, Inc., Nexpress Solutions, Inc., Kodak Versamark, Inc., or Scitex Digital Printing, Inc., or any of their predecessors or successors in interest.

EE.    "Tesseron Suit" means *Tesseron Ltd. V. R.R. Donnelley & Sons Company*, Civil No. 1:06-cv-02909-CAB (N.D. Ohio filed Dec. 4, 2006).

## REQUESTS FOR PRODUCTION

50.    All documents regarding the settlement, resolution, or conclusion of the Barco Suit.

51.    All communications between any Barco-Xeikon Entity and RRD, including any communication received by or sent from counsel for any Barco-Xeikon Entity or RRD, regarding the inventorship, validity, invalidity, enforceability, unenforceability, ownership, conception, or reduction to practice of the Patents in Suit and/or U.S. Patent No. 5,963,968, and all documents that reference, discuss, consider, analyze, investigate, or examine any such communication.

52.    All draft or final agreements between RRD and any Barco-Xeikon Entity concerning (a) any Barco-Xeikon Component, (b) the Patents in Suit, or (c) the Barco Suit, including but not limited to all draft or final agreements identified by RRD when responding to Interrogatory No. 11 in the Defendants' Second Set of Interrogatories.

53.     All strategic, business, competitive, or marketing plans, reports, studies, summaries, analyses, or presentations which discuss, analyze, address, or mention any Covered Lines of Business for which RRD is claiming lost profits.

54.     Documents that summarize, memorialize, describe, outline, or define RRD's patent licensing practices, policies, and procedures, whether formal or informal, including documents identified by RRD when responding to Interrogatory No. 11 in the Defendants' Second Set of Interrogatories.

55.     Documents most closely and accurately showing RRD's revenues, costs, and profits on a monthly, quarterly, and annual basis generated by or resulting from any Covered Lines of Business since 2000.

56.     All draft or final agreements, and any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements, between (i) RRD and (ii) any Kodak Entity regarding the use of any of the following software products: Begin, Composer, Darwin, DijiComp, DL-100, DL-1000, FormsMerge, FusionPro, KEEPs, or Mailscape.

57.     All plans, reports, studies, summaries, analyses, or presentations discussing, considering, or reporting the prices charged by RRD, or any factors affecting the determination of the prices charged, for any Covered Lines of Business.

58.     For each calendar year from 2000 to present, documents most closely and accurately showing both (i) the number of print jobs, orders or contracts processed, serviced or completed by RRD in any Covered Lines of Business (including, if available, both the total number of pages printed and the total number of orders, contracts or jobs processed or completed), and (ii) the total number of all print jobs, orders, or contracts processed, serviced or

-4-

completed by RRD on digital presses (including, if available, both the total number of pages printed and the total number of orders, contracts or jobs processed, serviced or completed).

59.    All documents demonstrating, discussing, summarizing, analyzing, reporting, or referring to any competition for all Covered Lines of Business, including but not limited to lost jobs, contracts, or revenue.

60.    All documents that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit, including all documents that refer to any such consideration, analysis, examination, investigation, or allegation.

61.    All documents that are alleged by any party to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit.

62.    All documents and things related to any communication between RRD and any Kodak Entity regarding the Patents in Suit.

63.    All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product.

64.    All documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product.

65.    All documents and things concerning RRD providing actual notice of the Patents in Suit to any Kodak Entity.

66.    All documents discussing, describing, estimating, analyzing, computing, or otherwise reporting the value or estimated value of the Patents in Suit.

67.    All documents and things that refer to the subject matter of, or the identification of which is sought by, the Defendants' Second Set of Interrogatories (Nos. 11-20), or Third Set

RLF1-3145381-1

of Interrogatories (Nos. 21-23), including without limitation all documents identified or referred

to in RRD's responses thereto, and all documents that RRD consulted or upon which RRD

relied, in framing, compiling or preparing its responses.


OF COUNSEL:


Richard McMillan, Jr.
rmcmillan@crowell.com
Jeffrey D. Sanok
jsanok@crowell.com
Brian M. Koide
bkoide@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2500

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Gregory E. Stuhlman (#4765)
stuhlman@rlf.com
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendants*


Dated: May 1, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2007, I served the foregoing on counsel as follows:

### BY HAND AND ELECTRONIC MAIL

Jack B. Blumenfeld, Esq.
Rodger D. Smith, II, Esq.
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

### VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

| | | |
|---|---|---|
| Douglas I. Lewis | John G. Hutchinson | Jamie L. Secord |
| SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP | SIDLEY AUSTIN, LLP |
| One South Dearborn Street | 787 Seventh Avenue | One South Dearborn Street |
| Chicago, IL 60603 | New York, NY 10019 | Chicago, IL 60603 |
| (312) 853-4169 | (212)839-5398 | (312) 853-2206 |

Gregory E. Stuhlman(#4765)
stuhlman@rlf.com

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| R.R. DONNELLEY & SONS COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-032 (JJF) |
| CREO, INC., NEXPRESS SOLUTIONS, | ) | |
| INC., KODAK VERSAMARK, INC., | ) | |
| EASTMAN KODAK COMPANY, and | ) | |
| KODAK GRAPHIC COMMUNICATIONS | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF R.R. DONNELLEY & SONS COMPANY'S
## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY

1.    Plaintiff R.R. Donnelley & Sons Company ("RRD") hereby opposes

Defendants' "Motion To Compel Discovery." (D.I. 196.)

2.    Defendants seek to compel RRD to produce documents in response to

overly broad requests for production that seek information that is not relevant to the claims or

defenses of the parties, and that should be, at least in part, in Defendants' own files. Indeed,

Defendants are seeking all draft or final agreements ever executed or contemplated between

RRD and Kodak – or any Kodak predecessor, subsidiary, etc. –with respect to 10 different

software products. Defendants are also seeking all documents from any RRD employee who

knew about the accused software products or the operation of such products, regardless of

whether the employee knew about the patents-in-suit or Defendants' infringing activities. RRD

has repeatedly informed Defendants of the substantial breadth and irrelevance of their discovery

requests and sought compromise to avoid burdening this Court with more discovery disputes.

Yet Defendants have been unwilling to frame their requests in a reasonable manner consistent

with Fed. R. Civ. P. 26(b).

***Defendants' Request for Production No. 56:*** *All draft or final agreements, and any documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to such agreements, between (i) RRD and (ii) any Kodak Entity regarding the use of any of the following software products: Begin, Composer, Darwin, DijiComp, DL-100, DL-1000, FormsMerge, FusionPro, KEEPs, or Mailscape.* (D.I. 196, Ex. C, at 4.)

3.  Defendants' Request for Production No. 56 seeks all draft or final agreements – and any documents or notes relating thereto – ever executed or contemplated between RRD and "any Kodak Entity" regarding 10 different software products. Although Defendants acknowledge that they should already have at least the agreements they are seeking from RRD, they inexplicably claim that "[s]uch documents are not as readily available to Defendants as they are to RRD." (D.I. 196, Ex. E, at 4.) Defendants suggest that RRD's files should be more complete or more easily accessible because RRD should have known "as many as 20 years" ago that the pending litigation would be filed. (D.I. 196, at 5.) Given that the patents-in-suit did not issue until 2001 or later, such an argument lacks merit.

4.  Moreover, Defendants have been unwilling to provide a reasonable time period for Request for Production No. 56. Defendants have said they want *all* agreements between RRD and any Kodak Entity regardless of when the agreements were executed or contemplated. Defendants have stated that some of the agreements they are seeking may date back even to the 1980s. (D.I. 196, Ex. E, at 5.) Yet, as mentioned above, the patents-in-suit did not issue until 2001 or later.

5.  RRD has repeatedly offered to compromise to avoid costly and unnecessary motion practice on Defendants' Request for Production No. 56. Indeed, RRD has offered, and even begun, to undertake a search for final agreements between RRD and Kodak regarding the 10 enumerated software products since 2000 – a full year before the issuance of the earliest patent-in-suit. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 2.)

6.    Despite RRD's willingness to compromise, Defendants have been unwilling to do so, claiming that it does not matter whether Defendants' request seeks information that is relevant to the parties' claims or defenses, and that they are instead entitled to all information "that is reasonably calculated to lead to the discovery of admissible evidence." (D.I. 196, at 9.) RRD has pointed out to Defendants that the language in Fed. R. Civ. P. 26(b)(1) was amended seven years ago – in 2000 – to require discovery requests to be "relevant to the claim or defense of any party," unless good cause is shown for broader discovery. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 2 (citing Advisory Committee Notes to Fed. R. Civ. P. 26(b)(1).) Defendants have made no effort to establish good cause and have refused to focus their request on documents that relate to the parties' claims or defenses.

7.    Indeed, although Defendants have generally suggested that RRD may have used the listed products before the patents-in-suit issued (D.I. 196, at 3), they have not shown that all of the enumerated products even existed before the filing of the earliest patent application. Furthermore, Defendants argue that RRD-Kodak contracts may have included contractual provisions "that would restrict or bar RRD from bringing suit against Kodak for the subject matter of this litigation." (D.I. 196, at 3 n.3.) Again here, however, Defendants fail to explain how such alleged contracts could be relevant before the technology in the core patent-in-suit was even invented. Defendants have failed to show good cause for why RRD should search for all RRD-Kodak agreements ever executed or contemplated without regard to the dates of such agreements.

8.    At the very least, RRD respectfully requests that the Court strike the portion of Request for Production No. 56 seeking "documents or notes reporting, discussing, summarizing, or otherwise memorializing any negotiations related to" RRD-Kodak agreements,

3

as opposed to the final agreements themselves, given that Defendants have made no attempt to show how documents, notes, or draft agreements are relevant to the parties' claims or defenses. RRD further requests that the Court set a reasonable time period for the agreements sought.

9.    RRD believes that its proposed compromise for Defendants' Request for Production No. 56 – final agreements between RRD and Kodak regarding the 10 enumerated software products from 2000 to present – is reasonable in scope and time period.

*Defendants' Request for Production No. 60: All documents that RRD considers, analyzes, examines, or investigates as prior art, or that RRD alleges to be prior art to any of the patents in suit in the Tesseron Suit, including all documents that refer to any such consideration, analysis, examination, investigation, or allegation.*

*Defendants' Request for Production No. 61: All documents that are alleged by any party to support or refute, in whole or part, Tesseron's claim for damages in the Tesseron Suit. (D.I. 196, Ex. C, at 5.)*

10.    Defendants' motion with respect to Request for Production Nos. 60 and 61 raises issues that are simply premature. Defendants' requests seek prior art and damages information from *Tesseron, Ltd. v. R.R. Donnelley & Sons Company*, No. 1:06CV2909 (N.D. Ohio) (the "Tesseron Suit"). That lawsuit is still in the early fact discovery stage. Until recently, it was not even clear which products were at issue in that case. Furthermore, plaintiff Tesseron has not yet provided any damages analysis.

11.    RRD has repeatedly informed Defendants that its requests are premature and that RRD is not withholding non-privileged RRD documents sought by Defendants' Request for Production Nos. 60 and 61. (*See, e.g.*, Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.) RRD has further stated that it will produce any non-privileged, responsive documents in accordance with the Federal Rules of Civil Procedure. (*See id.*) Such assurances apparently have not satisfied Defendants.

4

12.     Defendants also complain that RRD has been unwilling to violate the Protective Order in the Tesseron Suit by producing non-RRD materials, such as documents produced by Tesseron or any potential third parties, that are designated confidential pursuant to the Protective Order in that case. (*See* D.I. 196, at 5-8.) Again here, this issue is simply premature since RRD is not currently aware of any non-RRD materials that are responsive to Defendants' Request for Production Nos. 60 and 61. If RRD identifies such materials in the future, RRD has informed Defendants that it will so notify Defendants. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.) At that time, Defendants may seek permission from Tesseron or any potential third parties for access to such materials covered by the Protective Order. Or Defendants may move this Court, as contemplated by the Protective Order in the Tesseron Suit, which states in relevant part:

> 20. Other Proceedings.
>
> By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that such information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a subpoena, motion or court order in another case to disclose information that is designated by another party in this case as CONFIDENTIAL or HIGHLY CONFIDENTIAL in this case shall promptly notify that other party of the subpoena, motion or court order so that it may have an opportunity to appear and be heard on whether such information should be disclosed prior to disclosure.

(*See* Ex. B, Protective Order from Tesseron Suit, at 18.)

13.     Defendants argue that the Protective Order in the Tesseron Suit permits a party to produce information covered by the Order when required to do so pursuant to another court's order, and that this Court's Scheduling Order qualifies as such an order requiring RRD to produce responsive Tesseron or third-party materials covered by the Protective Order in the Tesseron Suit. (D.I. 196, at 8.) RRD has asked Defendants to provide it with some legal

authority stating that a general Scheduling Order alone qualifies as the type of court order contemplated by the Protective Order set forth above.    (Aug. 15, 2007 Discovery Teleconference.) Defendants have refused to do so. (*Id.*)

14.    Defendants have also argued that this Court's August 3, 2007 Order relating to Defendants' motion to compel RRD to produce certain prior art and damages-related documents from recently acquired companies (namely, Banta and Communicolor) somehow obligates RRD to produce confidential information produced by entirely separate third parties in the Tesseron Suit. (D.I. 196, at 8 n.4.) Neither Defendants' motion related to the August 3, 2007 Order, nor the Court's Order itself, said anything about RRD being required to produce unrelated third-party materials from a separate lawsuit that are covered by a Protective Order issued by a federal court in another jurisdiction.

15.    Defendants have not indicated that they have provided Tesseron or any potential third parties with notice that Defendants are seeking an Order from this Court for access to their confidential materials covered by the Protective Order in the Tesseron Suit. RRD sent Defendants' pending motion to compel to Tesseron's counsel, as required by the Protective Order in the Tesseron Suit. (Ex. C, Letter from B. Frey to K. Kirsch of Sept. 6, 2007.) No third parties in the Tesseron Suit have produced documents at this time; therefore, RRD has not provided notice to any third parties whose documents may be affected by Defendants' motion.

*Defendants' Request for Production No. 63: All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product.*

*Defendants' Request for Production No. 64: All documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product.* (D.I. 196, Ex. C, at 5.)

16.    Defendants are seeking documents showing when RRD first learned about the accused software products or the operation of such products. RRD has repeatedly informed

Defendants that RRD would undertake a reasonable search of documents within its possession, custody, or control to look for documents related to RRD's earliest knowledge of the accused software products or the operation of the accused software products, as requested in Defendants' Request for Production Nos. 63 and 64. (*See, e.g.*, Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.) The primary dispute with respect to Defendants' Request for Production Nos. 63 and 64 therefore seems to relate to the legally relevant scope of RRD's search, with Defendants arguing that RRD needs to cast a wide net without regard to whether the documents being sought are relevant to the parties' claims or defenses.

17.    As part of its reasonable search, RRD agreed to identify relevant RRD individuals with knowledge relevant to the parties' claims or defenses, such as RRD employees likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 3.) RRD framed its reasonable search by reviewing legal authority relating to Defendants' equitable defenses, which are the defenses to which Defendants have claimed Request for Production Nos. 63 and 64 relate. *See* 6-19 Chisum on Patents § 19.05(i). During the August 15, 2007 discovery teleconference, RRD pointed Defendants' counsel to this authority, which shows that (1) an equitable defense of laches requires "knowledge of infringement" and (2) any alleged delay is measured after the date(s) when the patent(s)-in-suit issued. *See id.*

18.    Nevertheless, Defendants have insisted that RRD conduct a much broader search of *all* RRD employees who purchase or use software and RRD employees who market competitive activities, regardless of whether they knew or had reason to know of the patents-in-suit or Defendants' infringing activities at issue in this case. (*See, e.g.*, D.I. 196, at 8.)

Defendants also have not limited their view of an appropriate search to 2001 (when the first patent-in-suit issued) or later.

19.    RRD has repeatedly asked Defendants to provide some legal authority supporting their theory that RRD must conduct a broad search of all purchasing employees and all employees who sell competitive products, but Defendants have refused to do so. (*See* Ex. A, Letter from J. Secord to N. Grow of Aug. 17, 2007, at 4.)

20.    RRD respectfully requests that this Court limit Defendants' attempt to require RRD to ask hundreds, perhaps even thousands, of employees whether they have ever used variable digital printing or had any knowledge of the accused software products, without regard to whether such employees are likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities. Such an expansive search simply would not bear fruit relevant to Defendants' defenses. RRD believes that the search it has proposed – of RRD employees likely to have knowledge of the patents-in-suit and/or of Defendants' infringing activities – is reasonable and appropriate in light of the pertinent legal authority.

21.    RRD takes its discovery obligations seriously and has responded to the discovery requests at issue in a reasonable manner consistent with the Federal Rules of Civil Procedure. Defendants, on the other hand, have declined to appropriately limit the scope of their requests. RRD therefore respectfully requests that this Court deny Defendants' motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Jamie L. Secord
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

September 10, 2007
1230594

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2007, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on September 10, 2007, upon the following in the manner indicated:

### BY EMAIL AND BY HAND

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

### BY EMAIL

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

> _/s/ Rodger D. Smith II (#3778)_
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com