**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| R.R. DONNELLEY & SONS COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CREO, INC., NEXPRESS SOLUTIONS, INC., KODAK VERSAMARK, INC., EASTMAN KODAK COMPANY, and KODAK GRAPHIC COMMUNICATIONS COMPANY,<br><br>Defendants.<br><br>EASTMAN KODAK COMPANY,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>R.R. DONNELLEY & SONS COMPANY,<br><br>Counterclaim-Defendant. | C.A. No. 06-cv-032-JJF |

**R.R. DONNELLEY & SONS COMPANY'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL**

Defendants[1] seek to compel RRD to answer interrogatories seeking RRD's employees' knowledge of the Accused Software Products and their operation without regard to whether those employees had any knowledge or responsibility relating to the patents in suit. Defendants, however, asked for the *same information* before in two document requests (Nos. 63 and 64), and the Court, on September 21, 2007, denied Defendants' motion to compel RRD to

---

[1] Defendants Creo, Inc., NexPress Solutions, Inc., Kodak Versamark, Inc., Eastman Kodak Company, and Kodak Graphic Communications Company will be collectively referred to as "Defendants." Plaintiff R.R. Donnelley & Sons Company will be referred to as "RRD."

produce documents responsive to these two document requests. (D.I. 196.) Because Defendants' interrogatories ask for the same information as their previously rejected document requests, the Court should similarly deny Defendants' motion.

The reasons that Defendants now provide do not compel a different result. Defendants argue that their interrogatories are relevant to their laches defense – the same argument they unsuccessfully made in the last motion – and to their foreseeability defense to the doctrine of equivalents. But the cases Defendants cite do not support their position.

In further support, RRD makes the following arguments:

## I. The Court Has Already Denied Defendants' Request

1. On September 21, 2007, the Court denied Defendants' motion to compel RRD to produce documents responsive to Document Request Nos. 63 and 64. (D.I. 196.) Eight business days later, Defendants served the four interrogatories now before the Court. (D.I. 233.)

2. These interrogatories ask for the same information as the document requests that the Court rejected. Comparing the four interrogatories to the rejected document requests shows this:

| Current Interrogatories | Previously Rejected Document Request |
|---|---|
| **Interrogatory No. 24**: Identify RRD's earliest knowledge of each Accused Software Product. | **Denied Document Request No. 63**: All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product. |
| **Interrogatory No. 25**: Describe RRD's understanding, prior to bringing suit, of how each Accused Software Product performs Variable Digital Printing, including the source of such knowledge and when such understanding was first gained. | **Denied Document Request No. 64**: All documents and things that indicate or refer to RRD's earliest knowledge of the operation of any Accused Software Product. |

| Current Interrogatories | Previously Rejected Document Request |
|---|---|
| **Interrogatory No. 26**: Identify all individuals, including both full name and position/title, "likely to have knowledge of the Patents in Suit and/or Defendants' infringing activities," as alleged on page 7 of RRD's Opposition to Defendants' Motion to Compel Discovery. | **Denied Document Request No. 63**: All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product. |
| **Interrogatory No. 27**: Describe in detail RRD's first purchase, acquisition, and/or use of any Accused Software Product, including the date of such first purchase, acquisition, or use and the circumstances relating to the same. | **Denied Document Request No. 63**: All documents and things that indicate or refer to RRD's earliest knowledge of any Accused Software Product. |

3.  Defendants cannot and do not contend that these interrogatories are substantively different from the document requests that the Court has already held were improper. *See* Defs.' Br. at 4-5 (D.I. 265). The parties fully briefed this issue in September, and the Court denied Defendants' earlier motion. (D.I. 196.) For the same reasons, the Court should deny this discovery again.

## II. Defendants' Motion Argues The Same Issues As Before, And The Case Law Still Does Not Support Their Motion

4.  Because the substance underlying this motion is the same as Defendants' earlier motion, the same issues are present and the same law applies.

### A. Interrogatory Nos. 24 and 27

5.  Defendants ask for the details regarding RRD's earliest knowledge of and purchase, acquisition, and use of the Accused Software Products, arguing that this information is relevant to their laches defense and foreseeability defense under the doctrine of equivalents. As RRD showed in its prior Opposition, such information is not relevant to Defendants' laches

3

defense. It is also not relevant to Defendants' foreseeability defense. The interrogatories are also unduly burdensome.

6. Defendants argue that RRD's earliest knowledge and purchase of the accused products is relevant to Defendants' laches defense. *See* Defs.' Br. at 4 (D.I. 265). But laches requires "knowledge of infringement," which means a person must have knowledge of *both* the patents in suit and the Accused Software Products. *See* 6-19 Chisum on Patents § 19.05[2]; *A.C. Aukerman Co. v. R.L. Chaides Const'n Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc); *see also* RRD's Sept. 10 Opp'n, D.I. 217 at 7-8. Defendants' interrogatories, however, do not ask for this information.

7. Defendants instead want RRD to search for the individual in a very large company having the earliest knowledge of each Accused Software Product and for RRD's first purchase and use of each Accused Software Product. Unless the individual with earliest such knowledge also knew about the patents in suit, an unlikely event in a company whose business involves using such software, this information is utterly irrelevant.[2]

8. Defendants also argue that Interrogatory Nos. 24 and 27 seek information relevant to a "foreseeability" defense to infringement under the doctrine of equivalents.[3] But RRD's subjective knowledge of the accused products or their workings – at any time – is not

---

[2] RRD could not even know about this unlikely event until it finished the burdensome search of the entire company for the individual with the earliest such knowledge.

[3] The doctrine of equivalents allows a court to find infringement when an accused product or process is the substantial equivalent of the patented invention. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 732 (2002). But during prosecution, an applicant may lose the ability to argue infringement under the doctrine of equivalents by amending its patent claims, unless certain exceptions apply. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1377 (Fed. Cir. 2007). One exception is if the equivalent was "unforeseeable at the time of the application." *Id*. (quoting *Festo*, 535 U.S. at 740-41). Of course, an accused infringer argues the opposite (that the equivalent was foreseeable) to try to defeat infringement.

relevant to Defendants' foreseeability defense.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 493 F.3d 1368, 1379-80 (Fed. Cir. 2007).  Only the objective state of the art is relevant to "foreseeability."  *Id*.  Defendants therefore seek to have RRD conduct an expensive and burdensome search for information not at all related to their foreseeability defense.

9. These interrogatories are also unduly burdensome because they ask RRD to search the entire company for whomever may have the first knowledge of or first purchased, acquired, or used Defendants' Accused Software Products, including people having no responsibility for or knowledge of the patents in suit.  *See* RRD's Sept. 10 Opp'n, D.I. 217 at 7-8; *see also* Defs.' Sept. 17 Reply, D.I. 223 at 4-6.  RRD would have to ask thousands of employees whether and when they first had any knowledge of or first purchased, acquired, or used the Accused Software Products, even if these employees had no knowledge of the patents in suit.  This search would be pointless because it would yield nothing relevant to Defendants' defenses.  *See* RRD's Sept 10 Opp'n, D.I. 217 at 7-8.

### B.  Interrogatory No. 25

10. Defendants ask for RRD's knowledge, prior to bringing suit, of how each Accused Software Product performs Variable Digital Printing.  There are two categories of knowledge responsive to this interrogatory:  (a) pre-lawsuit knowledge of the Accused Software Products not relating to the patents in suit, and (b) pre-lawsuit knowledge analyzing the Accused Software Products with respect to the patents in suit.  The first category of knowledge is not relevant, and the second is privileged.

11. RRD's pre-suit understanding of the Accused Software Products not relating to the patents in suit is irrelevant to laches.  Laches requires knowledge of infringement – *i.e.*, knowledge of the Accused Software Products, knowledge of the patents in suit, and a

5

belief that the Accused Software Products infringe. *See* 6-19 Chisum on Patents § 19.05[2]; *A.C. Aukerman Co. v. R.L. Chaides Const'n Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).

12. The second category relates to RRD's pre-suit knowledge of the Accused Software Products' operation as applied to the patents in suit. This category seeks information relating solely to RRD's attorneys' pre-suit analysis of the Accused Software Products' infringement. This information is both work product and attorney-client privileged.

C. **Interrogatory No. 26**

13. Interrogatory No. 26 asks RRD to identify people "likely to have knowledge of the Patents in Suit and/or Defendants' infringing activities." In response to this interrogatory, RRD identified the people with knowledge relevant to the patents in suit and Defendants' infringing activities. Defendants therefore have received a proper response to this interrogatory.

14. But Defendants, as in their prior motion, want RRD to identify anyone at the company having any knowledge of Defendants' Accused Software Products, even if those individuals had no knowledge of the patents in suit. *See* Defs.' Br. at 6 (D.I. 265); *see also* Defs.' Sept. 17 Reply, D.I. 223 at 5-6. This information is neither relevant nor discoverable for the reasons explained above.

15. As their sole support, Defendants quote one line (out of context) in RRD's prior Opposition brief, despite the fact that RRD's brief opposed Defendants' attempt to get the information that Defendants now claim RRD agreed to provide. *See* RRD's Sept. 10 Opp'n, D.I. 217 at 7. RRD never agreed to Defendants' interpretation, as RRD's entire September Opposition brief shows.

16. In its prior opposition, RRD argued that "(1) an equitable defense of laches requires 'knowledge of infringement' and (2) any alleged delay is measured after the date(s) when the patent(s)-in-suit issued." *See* RRD's Sept. 10 Opp'n, D.I. 217 at 7. Because laches requires such knowledge of infringement, RRD opposed Defendants' request for documents relating to any employee with knowledge of the Accused Software Products. But RRD "agreed to identify relevant RRD individuals with knowledge relevant to the parties' claims or defenses, such as RRD employees likely to have knowledge of the patents in suit and/or of Defendants' infringing activities." *See* RRD's Sept. 10 Opp'n, D.I. 217 at 7. In other words, RRD agreed to identify people knowledgeable about both the patents in suit and the Accused Software Products – *i.e.*, knowledgeable about "infringing activities."

17. RRD never agreed, especially given that it was simultaneously arguing the opposite in its prior Opposition, to identify every RRD employee with any knowledge of the Accused Software Products. RRD would have to query every individual in every plant, every salesperson, and every other employee to identify anyone with any knowledge of the Accused Software Products. Indeed, RRD argued in its prior Opposition that making such a search would be burdensome and would produce no relevant information. *See* RRD's Sept. 10 Opp'n, D.I. 217 at 8.

## **CONCLUSION**

For the foregoing reasons, RRD respectfully requests that the Court deny Defendants' Motion to Compel.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II (#3778)*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com
  *Attorneys for Plaintiff*
  *R.R. Donnelley & Sons Company*

OF COUNSEL:

John G. Hutchinson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5398

Douglas I. Lewis
Andrew R. Hein
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

January 11, 2008

1381973

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 11, 2008, he caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.

I also certify that copies were caused to be served on January 11, 2008, upon the following in the manner indicated:

**BY EMAIL AND BY HAND**

> Frederick L. Cottrell III
> Richards Layton & Finger, P.A.
> One Rodney Square
> 920 N. King Street
> Wilmington, DE  19801
> cottrell@rlf.com

**BY EMAIL**

> Richard McMillan, Jr.
> Crowell & Moring LLP
> 1001 Pennsylvania Avenue, N.W.
> Washington, DC  20004-2595
> rmcmillan@crowell.com

> */s/ Rodger D. Smith II (#3778)*
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> rsmith@mnat.com